Mary Joanne Dowd
ARENT FOX LLP
1050 Connecticut Avenue NW
Washington, DC 20036
(202) 857-6059

Attorney for JJF Management Services, Inc.

Hearing Date and Time: June 3, 2009 at 11:00 am (ET)
Response Date: May 26, 2009 at 4:00 pm (ET)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

In re

CHRYSLER LLC, *et al.*,

        Debtors.

Chapter 11

Case No. 09-50002 (AJG)

(Jointly Administered)

------------------------------------------------------------ x

**OBJECTION AND JOINDER OF JJF DEALERSHIPS TO
OMNIBUS MOTION OF DEBTORS AND DEBTORS IN POSSESSION
FOR AN ORDER, PURSUANT TO SECTIONS 105, 365 AND 525 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 6006, (A) AUTHORIZING THE
REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH
<u>CERTAIN DOMESTIC DEALERS AND (B) GRANTING CERTAIN RELATED RELIEF</u>**

    JJF Management Services, Inc. and Fitzgerald Auto Mall, Inc., Lakeforest Chrysler-Jeep, Inc., Colonial Dodge, Inc., Wheaton Dodge City, Inc., and Fitzgerald Motors, Inc. (collectively, "<u>JJF</u>" or the "<u>JJF Dealerships</u>"), by its counsel, Arent Fox LLP, hereby objects to the Omnibus Motion of Debtors and Debtors in Possession for an Order Pursuant to Sections 105, 363 and 525 of the Bankruptcy Code and Bankruptcy Rule 6006, (A) Authorizing the Rejection of Executory Contracts and Unexpired Leases with Certain Domestic Dealers and (B) Granting Certain Related Relief (the "<u>Dealer Rejection Motion</u>") [Docket No. 780].

    JJF joins in the Objection to the Dealer Rejection Motion filed by the Dealer Committee (the "<u>Dealer Committee Rejection Objection</u>") [Docket No. 2001], of which Committee the JJF

Dealerships are members, and the Objection to the Dealer Rejection Motion filed by Jim Boast Dodge, Inc. (the "Jim Boast Objection") [Docket No.1973].

## PRELIMINARY STATEMENT

1.   The Debtors[1] are moving to summarily reject, without any pretense of complying with Federal Rule of Bankruptcy Procedure 6006, or Dealer Laws,[2] 789 dealership franchise agreements, including its five dealership franchise agreements with JJF.  The Debtors, as Chapter 11 debtors in possession, are obligated, pursuant to 28 U.S.C. § 959(b), to comply with Dealer Laws, and in particular, with respect to the JJF Dealerships, the Dealer Laws of the States of Maryland and Florida.  The Debtors have not done so.

2.   The Debtors have not met their burden of showing that the wholesale rejection of 789 dealer agreements, or the agreements relating to JJF Dealerships, is a proper exercise of their business judgment.  To the contrary, the record reflects that there will be no meaningful operational cost savings by rejection, and that Chrysler brand loyalty and service, as well as revenue, will be damaged, and that substantial and unnecessary claims against the estate will be created.  Rejection is neither a sound exercise of business judgment nor in the best interest of the estates.

3.   Moreover, the equities favor the Affected Dealers.  Rejection hurts the owners, employees, customers, vendors, and the communities of the Affected Dealers.  There is no

---

[1] The Debtors are: Chrysler LLC; Chrysler Aviation Inc.; Chrysler Dutch Holding LLC; Chrysler Dutch Investment LLC; Chrysler Dutch Operating Group LLC; Chrysler Institute of Engineering; Chrysler International Corporation; Chrysler International Limited, LLC; Chrysler International Services, S.A.; Chrysler Motors LLC; Chrysler Realty Company LLC; Chrysler Service Contracts Inc.; Chrysler Service Contracts Florida, Inc.; Chrysler Technologies Middle East Ltd.; Chrysler Transport Inc.; Chrysler Vans LLC; DCC 929, Inc.; Dealer Capital, Inc.; Global Electric Motorcars, LLC; NEV Mobile Service, LLC; NEV Service, LLC; Peapod Mobility LLC; TPF Asset, LLC; TPF Note, LLC; and Utility Assets LLC.

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Dealer Rejection Motion.

2

dispute but that the closing of dealerships will result in the loss of jobs; the only issue is the magnitude.

4. Finally, the Debtors have grossly overreached in their request for injunctive relief against the Affected Dealers and Government Entities. Their request fails for procedural, jurisdictional and substantive reasons.

## BACKGROUND

### A. The JJF Dealerships

5. The JJF Dealerships consist of one Chrysler-Jeep franchise (Lakeforest Chrysler Jeep, Inc.) and three Dodge franchises (Colonial Dodge, Inc., Wheaton Dodge City, Inc., and Fitzgerald Auto Mall, Inc.) in Maryland and one Chrysler-Jeep franchise (Fitzgerald Motors, Inc.) in Florida. See Declaration of John J. Fitzgerald, Jr. ¶ 2, attached hereto as **Exhibit A** (the "Fitzgerald Declaration").

6. John J. "Jack" Fitzgerald, the president of the JJF Dealerships, has over fifty years experience in selling cars and has operated Chrysler dealerships for over forty years. Id. ¶¶ 2-3. Mr. Fitzgerald has been an authorized seller of Chrysler products since 1966. Id. ¶¶ 2 and 5.

7. Mr. Fitzgerald currently employs approximately 1000 employees, with a total annual payroll of approximately $51 million. Id. at ¶ 8. Approximately 752 of these employees are employed at the JJF Dealerships. Id. Approximately $30 million of annual payroll is attributable to the JJF Dealerships. Id.

8. Currently, there are approximately 100 new Chrysler vehicles in stock at the JJF Dealerships and approximately $1.1 million worth of Chrysler parts. Id. at ¶ 9.

9. All of the JJF Dealerships are financially viable and profitable, are well capitalized and have access to commercial bank floor plan financing. Id. at ¶ 10.

**B.     The Chapter 11 Cases**

10.     On April 30, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors remain in possession of their assets as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

11.     On May 19, 2009, the Committee of Chrysler Affected Dealers (the "Dealer Committee"), of which the JJF Dealerships are members, filed an objection to the Sale Motion (the "Dealer Committee Sale Objection") [Docket No. 1045] in which JJF Management joined [Docket No. 1226]. In the Dealer Committee Sale Objection, the Dealer Committee asserted, *inter alia*, that (i) the Sale Transaction is an impermissible sub rosa plan of reorganization, (ii) approval of the Sale Motion will require this Court to approve the Dealer Rejection Motion in violation of the Affected Dealers' due process rights, (iii) rejection of the subject dealer agreements is not in the best interest of the Debtors' estates or an exercise of their sound business judgment, (iv) the Dealer Laws are not automatically preempted and that the Debtors should be required to comply with their obligations under 28 U.S.C. § 959 as well as all applicable Federal and State laws, and (v) the Court should not proscribe the limits of potential rejection claims that could be asserted by the Affected Dealers. In addition, on May 21, 2009, the Dealer Committee filed a supplement to the Dealer Committee Sale Objection [Docket No. 1488] and, thereafter, on May 25, 2009, the Dealer Committee filed the Dealer Committee Rejection Objection asserting many of the arguments set forth in the Dealer Committee Sale Objection.

**JOINDER AND OBJECTION**

12.     JJF Management hereby joins in and fully incorporates in this Objection all arguments set forth in the Dealer Committee Rejection Objection and the Jim Boast Objection.

4

# ARGUMENT

### A. The Debtors Failure To Comply With Bankruptcy Rule 6006 Warrants Denial Of The Requested Relief

13.     The Debtors fail to comply with the requirements of Bankruptcy Rule 6006. First, the Debtors do not comply with Bankruptcy Rule 6006(f)(6), which provides that a motion to reject an executory contract shall be limited to no more than 100 executory contracts or unexpired leases.  Fed. R. Bankr. P. 6006(f)(6).  Notwithstanding the requirements of this rule, the Debtors are seeking to reject 789 executory contracts.  The Debtors do not provide any legal authority to support a contravention of the requirements of this rule.  Indeed, to the extent the Debtors sought to proceed in violation of the Bankruptcy Rules, the Debtors should have sought relief to do so before filing the Rejection Motion.

14.     Moreover, Bankruptcy Rule 6006(a) provides that a hearing to consider a motion to reject executory contracts shall be a contested matter governed by Bankruptcy Rule 9014.  See Fed. R. Bankr. P. 6006(a).  The Debtors, however, are trying to coerce each and every one of the 789 Affected Dealers into one omnibus hearing, which will curtail the ability of an Affected Dealer to adequately present its case and challenge the Debtors' unjustified decisions. Permitting the Debtors to proceed in this manner will result in an unjustified deviation from the Federal Rules of Bankruptcy Procedure.  Such deviation should not be permitted.

### B. The Debtors Must Comply With The Requirements Of The Dealer Laws

15.     The Debtors are attempting to both reject and terminate its dealership agreements with the JJF Dealerships with only 19 days notice, which is contrary to the laws of the States of Maryland and Florida, which both require at least 90 days notice of termination.  See FLA. STAT. § 320.641(1) and MD. CODE. ANN., TRANSP. § 15-209.

5

16.     The Debtors argue that Section 365 of the Bankruptcy Code preempts all Dealer Laws, such as those enacted by Florida and Maryland. See Rejection Motion ¶¶ 49, 56. The Debtors are wrong in their argument and this Court should not enter an Order finding wholesale preemption of the Dealer Laws. See In re Kennise Diversified Corp., 34 B.R. 237, 245 (Bankr. S.D.N.Y. 1983). Indeed, the Debtors ignore 28 U.S.C. § 959(b), which requires a debtor to comply with "the valid laws of the State in which such property is situated . . . ." 28 U.S.C. § 959(b). Congress did not intend for the Bankruptcy Code to pre-empt all state laws. See Midatlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot., 474 U.S. 494, 506 (1986). See, also In re Synergy Dev. Corp., 140 B.R. 958, 959 (Bankr. S.D.N.Y. 1992) ("A chapter 11 debtor 'is not *pro tanto* excused by virtue of its bankruptcy from complying with valid and enforceable state and local regulations. By virtue of 28 U.S.C. § 959(b), it is required to obey them.'"); Saravia v. 1736 18th St., N.W., L.P., 844 F.2d 823, 827 (D.C. Cir. 1988) (holding that a debtor must demonstrate that the provisions of Section 365 are unduly impeded by applicable State law in order to preempt contrary State law provisions);

17.     The Debtors cite numerous cases supporting their contention that this Court can enter an Order pre-empting the Dealer Laws. The cases cited by the Debtors, however, do not deal directly with Section 959(b). Thus, the Debtors should not be entitled to such unjustified relief. The Debtors should be required to comply with the laws of Florida and Maryland and furnish the required 90 days notice prior to termination of the dealer agreements relating to the JJF Dealerships. To do otherwise will deny the JJF Dealerships their State law and due process rights and violate the Debtors' obligations under Section 959(b) to comply with applicable state law.

**C.      The Debtors' Decision to Reject the Rejected
          Dealer Agreements Is Not Supported By Sound Business Judgment**

        i.      The Business Judgment Standard Has Not Been Satisfied

18.     In addition to the foregoing infirmities, the Debtors fail to satisfy their burden of proof under Section 365 of the Bankruptcy Code. Section 365 of the Bankruptcy Code permits a debtor to reject executory contracts as long as the debtor demonstrates that the decision to reject is within its sound business judgment. 11 U.S.C. § 365; Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1099 (2d Cir. 1993). "To meet the business judgment test, the debtor in possession must 'establish that rejection will benefit the estate.'" In re Helm, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006) (internal citation omitted). Indeed, "[t]he main purpose of Section 365 is to allow a debtor to reject executory contracts in order to relieve the estate of burdensome obligations . . . ." In re Chateaugay Corp., 10 F.3d 944, 954 (2d Cir. 1993).

19.     As discussed in greater detail in the Dealer Committee Rejection Objection and the Jim Boast Objection, the statements made by the Debtors in the Dealer Rejection Motion and the Second Grady Declaration contain numerous unsubstantiated and conclusory statements and do not demonstrate that the decision to reject is an exercise of the Debtors' reasonable business judgment that will relieve the estates of burdensome obligations. For example, the Debtors assert that the existing dealer network is a substantial cost to the Debtors. See Dealer Rejection Motion ¶15; Grady Declaration ¶ 16. Nowhere in the Dealer Rejection Motion or the Second Grady Declaration do the Debtors provide an actual amount (or even an estimated amount) of the alleged substantial cost or savings. See also Deposition Transcript of Peter Grady, p. 77, which is attached hereto as **Exhibit B**. The Debtors fail to provide such information because the dealer network does not cost the Debtors money; rather, the Debtors make a profit on each dealership

7

from the fees the dealers pay them, which are paid over and above profits from the sales of cars and parts.  See Fitzgerald Declaration ¶¶ 12-13.  Steven Landry, Executive Vice-President of Sales and Marketing for North America admitted as much during his recent deposition.  See Deposition Transcript of Steven Landry (the "Landry Transcript"), pp. 34-35, lns 24-23, 2-3.  A copy of excerpts from the Landry Transcript is attached hereto as **Exhibit C**.

20. Moreover, rejection of the JJF agreements will create a substantial post-petition administrative expense claim against the estates and very significant breach of contract unsecured claims.  The Debtors did not take such potential claims into account when determining whether to assume or reject the various dealership agreements.  See Landry Transcript, p. 154-155, lns 19-25, 2.

21. The Debtors' decision to reject the Rejected Dealer Agreements will also negatively impact the purchasers of the Debtors' products.  The Domestic Dealer Network is the primary interface between the Debtors and the consumer.  The termination of the Affected Dealers, however, may destroy the existing relationship between the Debtors and their consumers.  Many consumers rely on their local dealer for repeat car purchases as well as service of their existing vehicles.  In the case of the JJF Dealerships, many of the customers purchasing Chrysler products are customers that previously purchased Chrysler products.  See Fitzgerald Declaration ¶¶ 14 and 16-17.  Rejection of the dealer agreements causes a customer to lose a point of contact with Chrysler and the customer will then have to either transact business with another Chrysler dealer or shift their business to another brand.  The Debtors, however, do not appear to take the foregoing into account and the failure to do so is a failure of the Debtors to exercise their reasonable business judgment.

8

        ii.       The Decision To Reject Is Inequitable

22.      Here, the Debtors' decision to reject the Rejected Dealer Agreements appears to be based on the Debtors' whim and will result in an inequitable result. The Debtors provide no evidence to substantiate their decision to reject the 789 dealership agreements; rather, the Debtors rely on unstated criteria to support their decision. The closing of the affected dealerships, including the JJF Dealerships, will damage the owners, employees, customers, vendors and communities. This inequitable result should not be permitted.

**D.    The Debtors' Request Violates Due Process
And Impermissibly Extends The Protections Of The Bankruptcy Code**

23.      The Debtors are also seeking this Court's approval of certain procedures to enjoin an Affected Dealer's actions should the Debtors believe that such a dealer is engaging in conduct that is inconsistent with the relief sought in the Dealer Rejection Motion. Specifically, the Debtors are asking this Court to establish procedures to enjoin and potentially sanction Affected Dealers that, in the Debtors' opinion, undertake alleged Unauthorized Conduct. Pursuant to the Debtors' proposed procedures, the Debtors shall have the power to file (but not serve on the Affected Dealer) a notice of such Unauthorized Conduct and seek entry of an Order to Show Cause, on only five days notice, which could result in, inter alia, sanctions for contempt for violating a Court order. See Dealer Rejection Motion ¶ 69.

24.      The Bankruptcy Rules set forth clear and specific procedures for enjoining an act that a debtor believes is injurious to its property. See Fed. R. Bank. 7001 and 7065. See, also Wedgewood Inv. Fund, Ltd. v. Wedgewood Realty Group, Ltd. (In re Wedgewood Realty Group, Ltd.), 878 F.2d 693, 701-702 (3d Cir. 1989) (holding that for a party to take advantage of the Bankruptcy Court's equitable injunctive powers, the movant must properly move and satisfy the requirements under Rule 7065); In re Orfa Corp. of Philadelphia, et al., 170 B.R. 257, 267

9

(E.D. Pa. 1994) (same and citing Wedgewood Realty); Grundy Nat'l Bank v. Looney (In re Looney), 823 F.2d 788, 792 (4th Cir. 1987) (reversing bankruptcy judges' decision to enjoin acts due to lack of compliance with notice procedures).

25.   To the extent that the Debtors believe an Affected Dealer is engaged in Unauthorized Conduct, the Debtors should seek to enjoin such acts pursuant to the procedures set forth in the Bankruptcy Rules.  The Debtors provide no compelling reason, other than their own convenience, to circumvent the established Bankruptcy Rules.  Indeed, such a circumvention of these rules (i.e., entering an Order to Show Cause against an Affected Dealer that may not be subject to this Court's jurisdiction) is inequitable and may violate the due process of Affected Dealers.

26.   The Debtors further request that the Remaining Dealers be afforded the protections under Section 525 of the Bankruptcy Code.  Section 525 is designed to prevent government from frustrating the "fresh start" policy of the Bankruptcy Code.  See Betty Own Schools, Inc. v. U.S. Dep't of Educ. (In re Betty Owen Schools, Inc.), 195 B.R. 23, 29 (Bankr. S.D.N.Y. 1996).  The fresh start policy of the Bankruptcy Code applies to debtors, not third parties with whom a debtor happens to do business, such as the Remaining Dealers.  The Debtors cite no legal support for the extension of section 525 to the Remaining Dealers as there is absolutely no justification for this expansive relief.  See, e.g., Dealer Rejection Motion ¶ 59.  Accordingly, this requested relief should not be granted.

## CONCLUSION

27.   The Debtors should not be allowed to obtain unjustified expedited relief to the detriment of 789 dealers, many of whom, such as the JJF Dealerships, are profitable dealers with long-standing Chrysler customer relationships.  Notwithstanding the Debtors' allegations

regarding the unprecedented nature of these cases, this Court should apply bankruptcy and applicable non-bankruptcy law when considering the requested relief. When such an analysis is made, it is clear that the Debtors have failed to demonstrate that the decision to reject the Rejected Dealer Agreements is an exercise of their sound business judgment that will benefit their estates. Moreover, the Debtors are also asking this Court to approve extraordinary relief and extend the Bankruptcy Code and applicable non-bankruptcy law beyond its boundaries so that the Debtors can effectuate the Sale Transaction with undue haste. These actions should not be permitted and the Dealer Rejection Motion should be denied.

## **WAIVER OF MEMORANDUM OF LAW**

28.     Since this Objection and Joinder presents no new or novel issues of law and the authorities relied upon are fully set forth herein, JJF respectfully requests that the Court waive the requirement set forth in LBR 9013-1 that a separate memorandum of law be filed in support of this Objection and Joinder.

**[Remainder of Page Intentionally Left Blank]**

WHEREFORE, JJF respectfully requests that this Court enter an Order denying the Dealer Rejection Motion and granting such other and further relief as this Court deems just and appropriate.

Dated: Washington, DC
       May 26, 2009

ARENT FOX LLP
Attorney for JJF Management Services, Inc., Fitzgerald Auto Mall, Inc., Lakeforest Chrysler-Jeep, Inc., Colonial Dodge, Inc., Wheaton Dodge City, Inc. and Fitzgerald Motors, Inc.

          */s/ Mary Joanne Dowd*
By:  Mary Joanne Dowd, Esq.
     Caroline Turner English, Esq.
     Jeffrey N. Rothleder, Esq.
     1050 Connecticut Avenue NW
     Washington, D.C. 20036
     (202) 857-6059
     (202) 857-6395 (Fax)