Hearing Date and Time: June 3, 2009 at 10:00 a.m., E.T.
Response Deadline: May 26, 2009 at 4:00 p.m., E.T.

JONES DAY
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Corinne Ball
Veerle Roovers
Nathan Lebioda

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Robert W. Hamilton
David G. Heiman

JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Telephone: (404) 521-3939
Facsimile: (404) 581-8330
Jeffrey B. Ellman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                              :
In re                                         :   Chapter 11
                                              :
Chrysler LLC, *et al.*,                       :   Case No. 09-50002 (AJG)
                                              :
            Debtors.                          :   (Jointly Administered)
                                              :
---------------------------------------------------------------x

# OBJECTION TO CRAIN CDJ, LLC'S MOTION FOR CONTINUANCE OF HEARING ON DEBTORS' OMNIBUS MOTION TO AUTHORIZE THE REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH CERTAIN DOMESTIC DEALERS

ATI-2374692v6

TO THE HONORABLE ARTHUR J. GONZALEZ,
UNITED STATES BANKRUPTCY JUDGE:

    Chrysler LLC ("<u>Chrysler</u>") and each of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") hereby object to Crain CDJ, LLC's Motion for Continuance of Hearing on Debtors' Omnibus Motion to Authorize the Rejection of Executory Contracts and Unexpired Leases With Certain Domestic Dealers (the "<u>Motion for Continuance</u>"), filed by Crain CDJ, LLC ("<u>Crain</u>") on May 22, 2009.  In support of this Objection, the Debtors respectfully represent as follows:

## Background Related to the Motion for Continuance

    1.  On May 3, 2009, the Debtors filed the Motion for (I) an Order (A) Approving Bidding Procedures and Bidder Protections for the Sale of Substantially All of the Debtors' Assets and (B) Scheduling a Final Sale Hearing and Approving the Form and Manner of Notice Thereof; and (II) an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures, and (C) Granting Certain Related Relief [Docket No. 190] (the "<u>Sale Motion</u>").

    2.  On May 14, 2009, the Debtors filed their First Omnibus Motion of Debtors and Debtors in Possession for an Order, Pursuant to Sections 105, 365 and 525 of the Bankruptcy Code and Bankruptcy Rule 6006, (A) Authorizing the Rejection of All Executory Contracts and Unexpired Leases With Certain Domestic Dealers and (B) Granting Certain Related Relief [Docket No. 780] (the "<u>Rejection Motion</u>").  By the Rejection Motion, the Debtors are seeking to reject all Dealership Agreements and related Ancillary Agreements with 789 Affected Dealers (as such terms are defined in the Rejection Motion), pursuant to

section 365 of title 11 of the United States Code (the "Bankruptcy Code"). Crain is identified in the Rejection Motion as an Affected Dealer whose Dealership Agreements and Ancillary Agreements the Debtors are seeking to reject.

### The Motion for Continuance

3. By the Motion for Continuance, Crain requests a 90-day continuance of the hearing on the Rejection Motion (the "Rejection Hearing"). (See Motion for Continuance at p. 5.) Crain contends that this lengthy requested continuance is necessary and appropriate so that Crain may conduct discovery, the scope and other parameters of which Crain does not specify in any meaningful detail. (See Motion for Continuance at ¶¶ 7, 14.) Crain argues, without citation to legal authority, that due process rights mandate the continuance. (See id. at ¶¶ 9, 14.)

### The Debtors' Objection to the Motion for Continuance

4. For the reasons below, there is no basis for any continuance of the Rejection Hearing, let alone a continuance for 90 days (which would be more than triple the entire lifespan of these chapter 11 cases to date), and the Court should deny the Motion for Continuance.

*The Decision Whether to Grant the*
*Continuance Is Entirely Within the Court's Discretion*

5. Whether a request for a continuance should be granted is a question within the sound discretion of the Bankruptcy Court. In re Litwok, 246 B.R. 1, 10 (E.D.N.Y. 2000) (citing Wachovia Bank of Georgia v. Apex Tech of Georgia, 144 B.R. 649, 652 (S.D.N.Y. 1992).). A decision denying a continuance should only be overturned upon a showing of an abuse of discretion. Id. When the basis for the requested continuance is discovery-related, the factors the Court may consider include the extent to which the additional evidence sought would

- 3 -

ATI-2374692v6

be valuable enough to warrant the delay in adjourning the proceedings, and whether the requesting party acted with proper diligence in seeking to obtain the additional evidence.  Id.

*Ample Discovery Has Been Available to Crain, and the Debtors*
*Are Willing to Make Reasonable Attempts to Provide Crain With*
*Certain Discovery Without Any Need For A Continuance*

6. In connection with the Sale Motion and Rejection Motion, the Debtors have made a tremendous amount of information available in response to requests from a variety of interested parties.  In particular, since May 20, 2009, the Debtors have produced nearly 350,000 pages of documents and have made thirteen witnesses available for depositions (collectively, the "Available Information"), including Mr. Peter Grady — the declarant whose testimony the Debtors submitted in direct support of the Rejection Motion when the Debtors filed it.  (See Ex. B to Rejection Motion.)  Mr. Grady, for example, was deposed on May 25, 2006, for approximately six hours.  The primary parties receiving the Available Information and guiding much of the development of the subject matter of the discovery include the so-called "Committee of Chrysler Affected Dealers," the group of "Certain Affected Dealers" and JJF Management Services, Inc.  In total, these three parties (collectively, the "Affected Dealer Group") represent nearly half of all Affected Dealers and primarily are interested in the proposed rejection of their Dealership Agreements.[1]  Individual dealer representatives also have been invited to participate in the foregoing, and some have done so.

7. Much of the documentation constituting the Available Information was compiled by the Debtors prior to the filing of the Sale Motion and the Rejection Motion in an

---

[1] The Affected Dealer Groups purport to represent approximately 332 of the Affected Dealers.  (But see Verified Statement of Squire, Sanders & Dempsey L.L.P. Pursuant to Fed. R. Bankr. P. 2019 [Docket No. 1839] (identifying only six actual members of this committee).)  The Affected Dealer Group has filed extensive objections to the Sale Motion and Rejection Motion (see Docket No. 1045, 1071 and 1186) and has served written discovery on the Debtors, including a portion of the (a) nearly 217 document requests and 17 interrogatories served on the Debtors and (b) Rule 30(b)(6) notices identifying ten individuals for depositions on 67 topics for examination, including certain topics relevant only to Dealer issues.

effort to provide detailed information on the very topics Crain now seeks to discover. For example, the Available Information includes documents detailing: (a) presentations, discussions and negotiations with Chrysler dealers and/or Fiat regarding the elimination of dealerships in the United States (including, but not limited to, documents relating to "Project Genesis"); (b) discussions or negotiations regarding the possible consolidation of partial line dealerships with full line dealerships; and (c) possible financing arrangements between Chrysler dealerships and Chrysler Financial and/or GMAC.

8. In addition, the Debtors have gone to great lengths to identify additional factual and legal issues raised in the extensive objections to the Sale Motion and the Rejection Motion filed by the Affected Dealer Group, and to provide documentation and witness testimony relevant to such issues.

9. Importantly, Crain filed a joinder to the objection of the Committee of Chrysler Affected Dealers. See Docket No. 1671. Accordingly, Crain appears to concede that its interests are aligned with parties who already have been receiving the very information Crain contends can only be discovered via a 90-day postponement of the Rejection Hearing. Subject to Crain entering into an appropriate agreement regarding confidentiality, the Debtors are willing to provide Crain with the documents produced among the Available Information, as well as any other written information that can reasonably be produced before the Rejection Hearing with respect to Crain's Dealership Agreements in particular.

10. With such access to the documentary Available Information and more than a full week for review and preparation, and given the depositions that have occurred as described above, Crain cannot demonstrate any extraordinary impairment of its ability to oppose the Rejection Motion at the Rejection Hearing. Absent such a showing, Crane's due process rights

are not violated and there is no need for any continuance of the Rejection Hearing.  See Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964) ("it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel").

11. Critically and tellingly, Crain already has filed an extensive objection to the Rejection Motion.  (See Docket No. 1651.)  Also significantly, Crain has stated its intent to seek to call witnesses at the Rejection Hearing.  (See Motion to Continue at ¶ 13.)  Crain therefore has demonstrated through its own conduct thus far that it is well capable of addressing the Rejection Motion and preparing for the Rejection Hearing without any continuance, let alone a 90-day continuance.

***The Debtors Have Provided Full Due Process to Crain***
***Through Extended Notice of the Proposed Rejection***

12. As a matter of procedure, the case management order entered in these cases (the "CMO") provides that a matter may be considered by this Court at any omnibus hearing if interested parties are provided with at least fourteen days notice (seventeen days if served by U.S. mail).  (See Case Management Order [Docket No. 661] at ¶ 10(a).)  The Rejection Motion was filed on May 14, 2009, served that day by overnight delivery, and scheduled for hearing on June 3, 2009, thus providing a total of twenty days notice.  The Debtors therefore more than satisfied the CMO and provided Crain and the other Affected Dealers with six days of additional time that the CMO otherwise did not obligate the Debtors to provide.

13. Accordingly, nothing more is required of the Debtors, and the timing of the Rejection Hearing is reasonable and in compliance with the CMO.[2]  To the extent Crain

---

[2] Crain, by contrast, did not comply with the CMO in setting the response deadline or hearing for the Motion for Continuance.  The Debtors, however, have filed this Objection within Crain's self-created deadline.

- 6 -

ATI-2374692v6

argues that the procedures established in these chapter 11 cases are subject to an inherent right to discovery, Crain is legally mistaken.  See Batagiannis v. West Lafayette Comm. School Corp., 454 F.3d 738, 742 (7th Cir. 2006) ("There is no constitutional right to discovery even in criminal prosecutions.") (citing Wardius v. Oregon, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973).)

*There Are Practical Exigencies That Militate Against The*
*Requested Delay of the Court's Consideration of the Rejection Motion*

14.    As a practical matter, derailing the Rejection Hearing for the requested 90 days would likely result in a spectrum of adverse consequences that outweigh Crain's individual desire for a leisurely and unspecified discovery detour.

15.    First, with the general public identification of the Affected Dealers having become widespread in connection with the Debtors' filing of the Rejection Motion and the extensive media attention it has generated, the requested three-month delay of the Rejection Motion could be expected to generate significant confusion among consumers, the Affected Dealers themselves and other interested parties.  Questions, issues and possible disputes could arise concerning the consequences of the postponement and the day-to-day implications during the interim.

16.    Second, delaying the relief requested in the Rejection Motion could result in Affected Dealers attempting to assert claims against the Debtors' estates in connection with events and circumstances that might arise during the delay.  Though the merits of any such claims would remain to be examined, the potential prejudice to the Debtors from the possibility of such claims being asserted and possibly prevailing contributes to the equities weighing against a continuance.

17.    Third, as Crain and the other Affected Dealers are well aware from the Debtors' communications and information made available to them, the Debtors and applicable

- 7 -

interested parties have been designing and planning for potential logistical programs to address various practical issues associated with the anticipated rejections of the Dealership Agreements; e.g., the potential reallocation of parts and vehicle inventories from the Affected Dealers to dealers whose agreements the Debtors are not rejecting. A lengthy postponement of the Rejection Hearing could cause significant interference with, or have other adverse impacts upon, this reallocation planning and similar logistical issues associated with the rejections.

18. For all of the foregoing reasons, the Debtors object to the Motion for Continuance and request that this Court: (a) enter an order denying the relief sought by Crain in the Motion for Continuance; and (b) grant such other and further relief as the Court deems proper.

ATI-2374692v6

| | |
|---|---|
| Dated: May 26, 2009<br>New York, New York | Respectfully submitted,<br><br>/s Corinne Ball<br>Corinne Ball<br>Veerle Roovers<br>JONES DAY<br>222 East 41st Street<br>New York, New York  10017<br>Telephone:  (212) 326-3939<br>Facsimile:  (212) 755-7306<br><br>David G. Heiman<br>JONES DAY<br>North Point<br>901 Lakeside Avenue<br>Cleveland, Ohio  44114<br>Telephone:  (216) 586-3939<br>Facsimile:  (216) 579-0212<br><br>Jeffrey B. Ellman<br>JONES DAY<br>1420 Peachtree Street, N.E.<br>Suite 800<br>Atlanta, Georgia  30309<br>Telephone:  (404) 521-3939<br>Facsimile:  (404) 581-8330<br><br>ATTORNEYS FOR DEBTORS AND<br>DEBTORS IN POSSESSION |

ATI-2374692v6