UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

In re                                                                :        Chapter 11
                                                                        :
CHRYSLER LLC, *et al.*,                                  :        Case No. 09 B 50002 (AJG)
                                                                        :
                        Debtors.                              :        (Jointly Administered)
                                                                        :
_____:

OPINION AND ORDER REGARDING EMERGENCY ECONOMIC
STABILIZATION ACT OF 2008 AND TROUBLED ASSET RELIEF PROGRAM

On April 30, 2009 (the "Petition Date"), Chrysler LLC ("Chrysler") and 24 of its domestic direct and indirect subsidiaries (collectively with Chrysler, the "Original Debtors") filed for protection under title 11 of the United States Code (the "Bankruptcy Code"). On May 1, 2009, an Order was entered directing that the Original Debtors' cases be jointly administered for procedural purposes, pursuant to Rule 1015(a) of the Federal Rules of Bankruptcy Procedure. On May 19, 2009, Alpha Holding LP[1] ("Alpha" and with the Original Debtors, the "Debtors") filed a petition for relief under title 11 of the Bankruptcy Code. On May 26, 2009, an order (the "Alpha Order") was entered directing the joint administration of Alpha's bankruptcy case with the cases of the Original Debtors.[2] The Debtors continue to operate their respective businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On May 5, 2009, an Official Committee of Unsecured Creditors (the "Creditors' Committee") was formed.

---

[1]Alpha is a holding company that conducts no business other than holding capital stock of Chrysler Canada Inc. and Chrysler Mexico Holding S.de R.L de C.V.

[2]In addition, the Alpha Order provided that, to the extent applicable, (a) any order that previously had been entered in the jointly administered Original Debtors' cases was applicable to Alpha, *nunc pro tunc*, to the date that Alpha filed its bankruptcy petition, and (b) that future orders entered in the Debtors cases would apply to Alpha.

There is no dispute that the Indiana State Teachers Retirement Fund, Indiana State Police Pension Trust, and the Indiana Major Move Construction (the "Indiana Funds") are parties in interest in this bankruptcy case under § 1109(b).  *See* 11 U.S.C. § 1109(b) ("A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.").  The Indiana Funds are creditors in this case and may be heard on the issues they raised.  *See In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983).  But standing under § 1109(b) is "generally interpreted broadly to allow parties in interest an opportunity to appear and be heard in proceedings that affect their interests." *Asbestos Settlement Tr. v. Porth Auth. of N.Y & N.J. (In re Celotex Corp.*), 377 B.R. 345, 350 (Bankr. M.D. Fla. 2006).  However, standing to be heard under § 1109(b) does not automatically impart upon the Court the ability to adjudicate all issues raised by parties in interest.  *Allen v. Wright*, 468 U.S. 737, 750-51 (1984) ("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.") (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  Rather, the Indiana Funds must still satisfy the prerequisites of standing that are attendant to any attempt to have a federal court adjudicate a dispute.

*Standing Under the Emergency Economic Stabilization Act of 2008*

In late 2008, Congress promulgated the Emergency Economic Stabilization Act of 2008 ("EESA") Pub L. NO. 110-343, 122 Stat. 3765 (Oct. 3, 2008) (codified at 12 U.S.C. §§ 5201 *et seq.*), which established the Troubled Asset Relief Program ("TARP").  TARP authorizes the Secretary of the Treasury (the "Secretary") to purchase troubled assets to restore confidence in

the economy and stimulate the flow of credit.  The Indiana Funds have raised the issue that the U.S. Treasury has exceeded its Congressional grant of authority under EESA by providing financing under TARP to New CarCo Acquisition LLC (the "New Chrysler") to facilitate the acquisition of the Debtor's assets pursuant to the § 363 sale.  Specifically, the Indiana Funds claim that the U.S. Treasury cannot use funds under TARP to finance the transaction because Congress prescribed the scope of EESA to permit the Secretary to purchase "troubled assets from any financial institution . . . ." 12 U.S.C. § 5211(a)(1).

As a threshold inquiry, the Court must determine whether the Indiana Funds have standing to challenge the actions of the U.S. Treasury pursuant to EESA and TARP.  *See Warth*, 422 U.S. at 498 ("In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III.  This is the threshold question in every federal case, determining the power of the court to entertain the suit.").  In a hearing before the United States District Court for the Southern District of New York (the "District Court"), the District Court found that the Indiana Funds have standing to raise and be heard on the motions before the District Court, namely, the Indiana Funds' (1) Motion to Withdraw the Reference and (2) Motion for a Stay.  Nowhere in the District Court's opinion or the transcript of the hearing, referenced by the District Court in its opinion, did the District Court reach the issue of the Indiana Funds' standing under EESA.  Rather, the District Court found that TARP and EESA needed to be interpreted.  Interpretation of those statutes necEESArily requires a determination of whether the parties have standing to have the issues adjudicated.  *See e.g., Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (a "court

3

must be sure of its own jurisdiction before getting to the merits.") (citing *Steel Co. v. Citizens For Better Environment*, 523 U.S. 83, 88-89 (1998)).

The issue of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Bennett v. Spear*, 520 U.S. 154, 162 (1997). The Supreme Court's standing jurisprudence has established three prerequisite elements to constitutional standing: (1) the plaintiff must have suffered an "injury in fact," which is actual or imminent, and that is a concrete and particularized invasion of a legally protected right; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, not merely speculative, that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted). These elements must be shown to satisfy the "case or controversy" requirement of Article III. Further, there are judicially-proscribed prudential limitations to standing, one of which is "the plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Bennett,* 520 U.S. at 162 (internal citations omitted).

The Court finds that the Indiana Funds do not have standing under EESA to challenge the actions of the U.S. Treasury's pursuant to TARP in connection with this case. With respect to their secured claims, the Indiana Funds cannot allege an injury in fact for two reasons. First, in the "Opinion and Order Granting Debtor's Motion Seeking Authority to Sell, Pursuant to 11 U.S.C. § 363, Substantially All of the Debtors' Assets," (the "Sale Opinion") issued contemporaneously with this Opinion and Order, the Court found that the Indiana Funds are bound, under the Collateral Trust Agreement, by the Administrative Agent's agreement to

consent to the sale under § 363(f)(2) and to receive $2 billion upon the release of the collateral. The Administrative Agent agreed to the disposition of the collateral as set forth under the terms of the § 363 sale. Therefore the Indiana Funds are bound by that action and cannot allege an injury. Second, even if the Indiana Funds were not bound by the Administrative Agent's actions, in the Sale Opinion the Court found that the value of the collateral at issue was no greater than $2 billion, *i.e.*, the same amount the first lien senior secured lenders are receiving under the transaction approved pursuant to the Sale Opinion. Therefore, the Indiana Funds will receive the pro-rata distribution of the value of the collateral and cannot allege injury in fact.

Further, even if the Indiana Funds had an injury in fact with respect to their secured claim, the Indiana Funds cannot show the alleged injury is fairly traceable to the U.S. Treasury's use of TARP funds. If a non-governmental entity were providing the funding in this case, the Indiana Funds would be alleging the same injury, *i.e.*, interference with their collateral. In this light, it is not the actions of the lender that the Indiana Funds are challenging but rather the transaction itself. Specifically, the Indiana Funds' alleged injury is not fairly traceable to the U.S. Treasury's actions because the Indiana Funds would suffer the same injury regardless of the identity of the lender. For these reasons, the Court finds that the Indiana Funds do not have standing under EESA to challenge the actions of the U.S. Treasury pursuant to TARP.

Turning to the unsecured deficiency claim of the Indiana Funds, the Court finds that the Indiana Funds have similarly failed to show any injury in fact. In view of the fact that the face value of liens on the collateral exceeds the value of the collateral itself, all holders of unsecured claims are receiving no less than what they would receive under a liquidation. Therefore, there

5

is no injury with respect to the unsecured deficiency claim of the Indiana Funds. *See* 11 U.S.C. § 1129(a)(7)(A)(ii).

Further, as explained and for the reasons set forth above, even if an injury could be shown with respect to the Indiana Funds' unsecured claim, it is not fairly traceable to the actions of the U.S. Treasury under EESA and TARP.

Because the Indiana Funds do not have standing, the Court does not reach the merits of any of the TARP and EESA issues raised by the Indiana Funds.

Accordingly, it is hereby

ORDERED, the Indiana Funds lack standing to challenge the U.S. Treasury's actions under EESA and TARP; and it is further

ORDERED, any request for relief related to the issues regarding EESA and TARP is denied.

Dated: New York, New York
      May 31, 2009

                                      **s/Arthur J. Gonzalez**
                                      UNITED STATES BANKRUPTCY JUDGE