**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
In re : Chapter 11
:
Old Carco LLC : Case No. 09-50002 (AJG)
(f/k/a Chrysler LLC), *et al.*, :
: (Jointly Administered)
Debtors. :
:
---------------------------------------------------------------x

**ORDER, PURSUANT TO SECTIONS 105, 363 AND 365 OF THE
BANKRUPTCY CODE, APPROVING PROCEDURES TO SELL
CERTAIN *DE MINIMIS* ASSETS, FREE AND CLEAR OF LIENS, CLAIMS
AND ENCUMBRANCES, AND TO PAY MARKET RATE COMMISSIONS AND FEES
IN CONNECTION WITH SUCH SALES WITHOUT FURTHER COURT APPROVAL**

This matter coming before the Court on the Motion of Debtors and Debtors in Possession, Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, for an Order Approving Procedures to Sell or Transfer Certain *De Minimis* Assets, Free and Clear of Liens, Claims and Encumbrances, and to Pay Market Rate Broker Commissions in Connection With Such Sales Without Further Court Approval (the "Motion"),[1] filed by the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"); objections to the Motion having been filed by (a) the Treasurer of Wayne County, Michigan, the Treasurer of Oakland County, Michigan and the Treasurer for the City of Detroit, (b) the Michigan Department of Environmental Quality, (c) the Ohio Attorney General and (d) the State of Missouri (collectively, the "Objections"); the Court having reviewed the Motion and the Objections and having considered the statements of counsel with respect to the Motion at a hearing before the Court

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

CLI-1720539v7

(the "Hearing"); the Debtors having determined, in consultation with the Official Committee of Unsecured Creditors in these cases (the "Creditors' Committee") and in response to the Objections, to modify the proposed order sought by the Motion; and the Court having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and the Hearing was sufficient under the circumstances, (d) a sound business purpose exists to grant the relief requested herein and (e) there is good cause to waive the ten-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d);

    IT IS HEREBY ORDERED THAT:

    1.    The Motion is GRANTED as set forth herein.

    2.    Any Objections or responses to the Motion that have not been withdrawn, waived or settled prior to the entry of this Order are hereby OVERRULED.

    3.    The Debtors are authorized to consummate, without further Court approval, arms'-length sales (each, a "Private Sale") or public auctions (each, an "Auction"), including real and personal property (the "De Minimis Assets"), outside of the ordinary course of business when the purchase price for a Private Sale is $10 million or less, or the book value of assets to be sold at Auction is equal to or less than $10 million, for each transaction or in the aggregate for a related series of transactions; provided, however, that under no circumstances shall the Debtors consummate a Private Sale to an insider (as defined in the Bankruptcy Code) without the prior consent of the Creditors' Committee or an order of the Court.  Any sales of De Minimis Assets shall be free and clear of all liens, claims and encumbrances, pursuant to section 363(f) of the Bankruptcy Code, with any such liens, claims and encumbrances attaching to the net sale proceeds with the same force, validity, priority, perfection and effect as such liens

had on the property immediately prior to the sale. All such sales shall be subject to the Sale Notice Procedures (as such term is defined below) and other terms of this Order.

4. The Debtors hereby are authorized to pay, without further Court approval, market rate broker commissions (the "Broker Commissions") and auction fees (the "Auction Fees" and, together with the Broker Commissions, the "Commissions") for brokers and auctioneers utilized in connection with any sales of De Minimis Assets upon satisfaction of the disclosure and other requirements provided herein (including obligations to consult with the Creditors' Committee).

5. Except with respect to sales of real property located in Michigan, Missouri and Ohio, Private Sales of De Minimis Assets for consideration that is less than $1 million, and Auctions where the book value of such assets is less than or equal to $1 million in the aggregate, may be consummated by the Debtors (in consultation with the Creditors' Committee) without further notice and hearing. Private Sales of De Minimis Assets for more than $1 million but less than $10 million, and Auctions where the book value of such assets is more than $1 million but less than or equal to $10 million and any sales of real property located in Michigan, Missouri and Ohio, are approved subject to the following notice procedures (the "Sale Notice Procedures"):

> (a) The Debtors will serve a notice of each Proposed Sale (the "Sale Notice") on: (i) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"); (ii) counsel to the Creditors' Committee; (iii) counsel to the DIP Lender; (iv) counsel to the administrative agent for the First Lien Prepetition Lenders; (v) any known holder of Other Liens asserted against the specific assets to be sold; (vi) the proposed purchaser if the transaction is to be completed by Private Sale (the "Proposed Purchaser"); (vii) any known interested party in the De Minimis Assets proposed to be sold; (viii) with respect to any Proposed Sales involving real property located in Michigan, Missouri or Ohio, the state environmental agency for the applicable state in which such real property is located; (ix) with respect to any Proposed Sales involving (A) real property or (B) personal property to be sold for more than $1 million but less than $10 million, and Auctions where the book value of such assets is

more than $1 million but less than or equal to $10 million, located in Oakland County, Michigan, Wayne County, Michigan or Detroit, Michigan, counsel to such entities; and (x) if applicable, the nondebtor counterparties to all executory contracts or unexpired leases that the Debtors propose to assume and assign or reject in connection with such Proposed Sale (collectively, the "Sale Notice Parties").  The Sale Notice will be served on the Sale Notice Parties by facsimile or e-mail, if possible, and by overnight mail.

If the transaction is to be completed by a Private Sale, the Sale Notice will specify:  (i) the assets to be sold; (ii) the identity of the Proposed Purchaser (including a statement indicating whether the Proposed Purchaser is an "insider" as defined in section 101(31) of the Bankruptcy Code); (iii) the proposed cash sale price and other consideration to be exchanged; (iv) the primary economic terms and conditions of the Proposed Sale; (v) a copy of any documentation executed in contemplation of the transaction; and (vi) the identities of any parties holding or asserting liens on other interests or potential interests in the property.  If the transaction is to be completed by Auction, the Sale Notice will specify:  (i) the assets to be sold; (ii) the date, time and place of the Auction; (iii) the minimum acceptable bid (the "Minimum Bid"); (iv) any terms and conditions of sale to be imposed at the Auction; and (v) a copy of any documentation executed or to be executed in contemplation of the transaction (including any lead bid).

In addition, any Sale Notice will specify:  (i) the identities of any parties holding or asserting liens or other interests or potential interests in the property; (ii) the executory contracts and unexpired leases, if any, that the applicable Debtor or Debtors propose to be assumed and assigned or rejected as part of the Proposed Sale; (iii) for any assumption and assignment of an executory contract or unexpired lease, the amounts required to cure any defaults pursuant to section 365(b) of the Bankruptcy Code (collectively, the "Cure Claims"), and a statement regarding the adequate assurance of future performance by the purchaser, consistent with section 365 of the Bankruptcy Code; and (iv) an affidavit of the broker or auctioneer, if any, pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), that identifies the broker or auctioneer and the amount of the proposed Commissions and contains the disclosures required by Bankruptcy Rule 2014.  The Debtors may, but are not required to, file a copy of the Sale Notice with the Court.

(b) The Sale Notice Parties will have until 5:00 p.m. (prevailing New York Time) on the tenth business day following the service of the Sale Notice (the "Objection Deadline") to object to the Proposed Sale and the payment of any Commissions.  Any such objection (an "Objection") must be: (i) made in writing, stating the objection with specificity; and (ii) filed with the Court and served on counsel to the Debtors and the other Sale

    Notice Parties so as to be received by the Objection Deadline. The Objection Deadline and required service addresses will be identified in the Sale Notice.

(c)  If no Objection is properly filed and served by the Objection Deadline, the Debtors (having previously consulted with the Creditors' Committee) will be authorized, without further notice and without further Court approval to: (i) either (A) for De Minimis Assets to be sold by Private Sale, consummate the Proposed Sale in accordance with the terms and conditions of the underlying contract or contracts or (B) for De Minimis Assets to be sold at Auction, conduct the Auction and sell the assets at the Auction, provided, however, that no sale at an Auction may be completed for consideration below the Minimum Bid identified in the applicable Sale Notice;[2] and (ii) take such other actions as are necessary to close the transaction and collect the proceeds of such sale, including, without limitation, payment of any Commissions, and assumption and assignment or rejection of the executory contracts and unexpired leases described in the Sale Notice and payment of the Cure Claims proposed in such notice.

(d)  If a Sale Notice Party files and serves an Objection to the Proposed Sale by the Objection Deadline, the Debtors and such objecting party will use good faith efforts to resolve the objection consensually. If the Debtors and the objecting Sale Notice Party are unable to resolve the objection, the Debtors will not consummate the proposed transaction without first obtaining Court approval of such Proposed Sale, including the payment of any Commissions, upon notice and a hearing; provided, however, that, with the agreement of the Proposed Purchaser, the Debtors may consummate any portion of the Proposed Sale that is not a subject of the Objection.

(e)  Any valid and enforceable liens on the property to be sold shall attach to the net proceeds of the Proposed Sale in the same priority as existed prior to such sale and subject to any claims and defenses that the Debtors may possess with respect thereto. To the extent not inconsistent with the Final DIP Order or other orders of the Court providing access to financing or cash collateral, net sale proceeds shall be held for distribution in a segregated account, subject to distribution under a chapter 11 plan, or other appropriate order of the Court.

(f)  If the sale transaction is to be completed by a Private Sale, to the extent that a competing bid is received for the purchase of De Minimis Assets in

---

[2] If no Notice Party files an Objection to the Minimum Bid proposed for an Auction, or any such Objections are resolved so that the Auction may proceed, the Debtors may (in consultation with the Creditors' Committee) sell the applicable De Minimis Asset at the Auction for any price above the Minimum Bid, even if the sale price exceeds $10 million.

CLI-1720539v7     -5-

    a particular Proposed Sale after service of the Sale Notice that, in the Debtors' sound business judgment in consultation with the Creditors' Committee, materially exceeds the value of the purchase price contained in the Sale Notice, then the Debtors may file and serve an amended Sale Notice for the Proposed Sale to the subsequent bidder pursuant to the Sale Notice Procedures, even if the proposed purchase price exceeds $10 million.

 (g) The relevant Debtor or Debtors may consummate a Proposed Sale prior to the expiration of the applicable Objection Deadline if the Debtor or Debtors obtain each Notice Party's written consent to the Proposed Sale. The applicable Proposed Sale, including the assumption and assignment or rejection of executory contracts and unexpired leases proposed in connection with the sale, will be deemed final and fully authorized by the Court upon either (i) for a Private Sale, (A) the expiration of the Objection Deadline without the assertion of any Objections or (B) the written consent of all Notice Parties; or (ii) for a sale by Auction, (A) the expiration of the Objection Deadline without the assertion of any Objections or the written consent of all Notice Parties and (B) the Debtors' acceptance of a qualifying bid equal to or in excess of the Minimum Bid at the Auction.

 (h) If the sale transaction is completed at an Auction, the applicable Debtor or Debtors will file with the Court and serve upon the Notice Parties a report of the results of the Auction within ten days after the conclusion of the Auction.

  6. On July 30, 2009, and on the last business day of each calendar month thereafter, the Debtors shall file and serve upon counsel to the Creditors' Committee a report containing the following information concerning Reportable Sales (as defined below) made during the prior calendar month: (a) a description of the assets actually sold; (b) the buyer(s) for each such transaction; and (c) for each sale, the total consideration actually received. "<u>Reportable Sales</u>" means Proposed Sales that have not been described in a Sale Notice and involve the sale of De Minimis Assets for consideration that is greater than $250,000.

  7. Upon the closing of a Private Sale or Auction, the Debtors may (a) assume any executory contract or unexpired lease to be assigned to a Proposed Purchaser or other non-Debtor third party as a part of the Proposed Sale and provide for the payment of the Cure Claims

disclosed in the Sale Notice (either directly or by the Proposed Purchaser consistent with the terms of the Proposed Sale) and (b) reject any executory contract or unexpired lease identified for rejection in the Sale Notice. No executory contract or unexpired lease shall be assumed absent concurrent assignment to a Proposed Purchaser or other non-Debtor third party. The nondebtor parties to any executory contracts or unexpired leases are hereby barred from asserting any further cure claims in respect of such executory contracts or unexpired leases after the objection period for a Proposed Sale has passed.

8. The ten-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) is hereby waived with respect to each Proposed Sale conducted in accordance with this Order, and the Debtors may close Proposed Sales as set forth herein without reference to such stay.

9. Nothing in the Sale Notice Procedures or otherwise provided in this Order shall prevent the Debtors, in their sole discretion, from seeking Court approval of any Proposed Sale upon notice and a hearing or, if necessary to comply with a condition on a sale imposed by a purchaser, to submit a separate order to the Court along with a notice of presentment to be entered without need for a hearing on the matter.

10. Sales of De Minimis Assets conducted in accordance with this Order shall be deemed to be arm's-length transactions entitled to the protections of section 363(m) of the Bankruptcy Code.

11. All purchasers shall take De Minimis Assets sold by the Debtors pursuant to the authority granted in this Order "as is" and "where is" without any representations or warranties from the Debtors as to quality or fitness for either their intended purposes or any particular purposes.

12. The Debtors (in consultation with the Creditors' Committee) and their respective officers, employees and agents are authorized to perform all obligations, take whatever actions may be necessary or appropriate and issue, execute and deliver whatever documents may be necessary or appropriate to implement and effectuate any disposition of De Minimis Assets.

13. Each and every federal, state and local government agency or department is hereby directed to accept any and all documents and instruments necessary or appropriate to consummate the disposition of De Minimis Assets. The registrar or recorder of deeds (or other similar recording agency) is hereby directed to accept and include a certified copy of this Order along with any other appropriate conveyance documents used to record and index the transfer of any De Minimis Assets in the appropriate public records.

14. Pursuant to the terms of the DIP Financing Agreement and Final DIP Order, the DIP Lender holds valid, duly perfected security interests in and liens upon the De Minimis Assets. Nothing contained herein shall be deemed a waiver by the DIP Lender of any required approval or disapproval of any sale, whether pursuant to this Order or otherwise.

15. No further orders of this Court are necessary to effectuate the terms set forth herein for the transactions contemplated herein.

16. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated: New York, New York
      June 18, 2009                  **s/ Arthur J. Gonzalez**
                                        UNITED STATES BANKRUPTCY JUDGE