| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | **NOT FOR PUBLICATION** |

………………………………………………..x
In re                                                                  :         Chapter 11
                                                                           :
Old Carco LLC                                                :         Case No. 09-50002 (AJG)
(f/k/a Chrysler LLC), et al.,                             :
                                                                           :         (Jointly Administered)
                                      Debtors.         :
                                                                           :
………………………………………………..x

**OPINION GRANTING JOINT MOTION OF DEBTORS AND DEBTORS IN POSSESSION AND CHRYSLER GROUP LLC FOR AN ORDER ENFORCING AUTOMATIC STAY AND PROVISIONS OF (A) ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH AND RELATED PROCEDURES AND (III) GRANTING RELATED RELIEF; AND (B) ORDER, PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6006, (A) AUTHORIZING THE REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH CERTAIN DOMESTIC DEALERS AND (B) GRANTING CERTAIN RELATED RELIEF**

Before this Court is a joint motion of Old Carco LLC f/k/a Chrysler LLC ("Old Carco") and its affiliated debtors and debtors in possession (collectively with Old Carco, the "Debtors") and Chrysler Group LLC ("New Chrysler") for an order enforcing automatic stay and provisions of (a) order (1) authorizing the sale of substantially all of the Debtors' assets free and clear of all liens, claims, interests and encumbrances, (2) authorizing the assumption and assignment of certain executory contracts and unexpired leases in connection therewith and related procedures, and (3) granting related relief; (the "Sale Order") and (b) order (1) authorizing the rejection of executory contracts and unexpired leases with certain domestic dealers, and (2) granting certain related relief (the "Rejection Order"). A hearing was held in this matter on August 28, 2009. The Court

assumes the parties' familiarity with the facts set forth in the Sale Order, the Rejection Order and related opinions, respectively.

In connection with Debtors' Chapter 11 case, Debtors and Debtor subsidiaries, Fiat S.p.A. and New Chrysler entered into an agreement as of April 30, 2009 (as amended and collectively with other ancillary and supporting documents, the "Purchase Agreement") which provided, among other things, that (a) Old Carco would transfer the majority of its operating assets to New Chrysler; and (b) in exchange for those assets, New Chrysler would assume certain of Debtors' liabilities and pay to Debtors $2 billion in cash (collectively with the other transactions contemplated by the Purchase Agreement, the "Fiat Transaction").

After having been rejected as authorized dealers for the Debtors as part of the Fiat Transaction, the following dealers have commenced actions in state courts or administrative bodies seeking a variety of relief against New Chrysler (the "Subject Actions," or the "Subject Action"). These dealers are: Boucher Imports, Inc.; Braeger Chrysler Jeep, Inc.; Chilson Inc.; Quaden Motors, Inc. (a/k/a John Quanden Dodge, Inc.); Johnson Motors of St. Croix Falls, Inc.; Lakeland Pontiac-GMC-Jeep, Inc. (a/k/a Lakeland Oldsmobile-Pontiac-GMC); Mueller Chrysler, Inc.; Wolf's Motor Car Company, Inc. (jointly as the "Wisconsin Dealers"); Spitzer Autoworld Sheffield, LLC ("Spitzer"); and Crain CDJ, LLC ("Crain") (collectively, the "Dealers").

**Jurisdiction**

For the reasons as set forth by Movants, this Court has core jurisdiction under 28 U.S.C. §157(b) to interpret and enforce the Sale Order and the Rejection Order.

**Dealers**

*Wisconsin Dealers*

The Wisconsin Dealers have commenced an action against New Chrysler in the Dane County Circuit Court, State of Wisconsin (the "Wisconsin Civil Action") claiming that New Chrysler has an obligation to comply with Wis. Stat. §218.0116(1)(i)2 which provides, "If there is a change in a manufacturer, importer or distributor, a motor vehicle dealer's franchise granted by the former manufacturer, importer or distributor shall continue in full force and operation under the new manufacturer, importer or distributor unless a mutual agreement of cancellation is filed with the department of transportation between the manufacturer, importer or distributor and the dealer." The Wisconsin Dealers seek (1) a judicial order temporarily enjoining New Chrysler to continue the Chrysler, Jeep and/or Dodge franchises granted the Wisconsin Dealers by Old Carco while the action is pending; (2) a declaratory judgment that the Wisconsin Dealers have the right to have their Chrysler, Jeep and/or Dodge franchises continued by New Chrysler, until such time as those franchises are canceled or discontinued in accordance with Wis. Stat. §§218.0114(7) and 218.0116(1)(i); (3) a judgment permanently enjoining New Chrysler from violating that right; and (4) a judgment awarding the Wisconsin Dealers any pecuniary loss caused by New Chrysler's alleged violation of Wis. Stat. §218.0116(1)(i)2.

The Wisconsin Dealers also filed an administrative complaint (the "Wisconsin Administrative Action") against New Chrysler with the Division of Hearings and Appeals, State of Wisconsin and the Wisconsin Department of Transportation pursuant to Wis. Stat. §218.0114(7)(d).

Both actions have been removed by New Chrysler to the United States District Court for the Western District of Wisconsin and are presently pending in that court.

*Spitzer*

Spitzer has filed a protest with the Ohio Motor Vehicle Dealer Board ("OMVDB") claiming that (1) although Spitzer's franchise agreement was rejected by the Debtors, the franchise was never terminated under Ohio law; and (2) New Chrysler cannot set up the franchise dealership, Tomko Chrysler-Jeep, located about four miles away from the Spitzer location because Spitzer was the only party under Ohio law that had the right to a franchise located in that market.

*Crain*

Crain has filed a complaint before the Arkansas Motor Vehicle Commission claiming that New Chrysler violated Ark. Code Ann. §23-112-403(a)(2)(P)(i) which states that it shall be unlawful "[t]o fail to continue in full force and operation a motor vehicle dealer franchise agreement, notwithstanding a change, in whole or in part, of an established plan or system of distribution or ownership of the manufacturer of the motor vehicles offered for sale under the franchise agreement." Crain claims that Old Carco's rejection of Crain's franchise agreement did not terminate the contract and sought an order from the Arkansas Motor Vehicle Commission directing New Chrysler to continue the franchise agreement with Crain.

**Sale Order**

The Sale Order enjoined Dealers from pursuing any successor/transferee liabilities against New Chrysler. On June 1, 2009, this Court entered the Sale Order authorizing the sale of substantially all of the Debtors' assets pursuant to 11 U.S.C. §363.

4

Numerous objections were heard throughout the three-day evidentiary hearing on the Fiat Transaction, including the opposition to the "free and clear" provisions of the proposed sale order with respect to the successor/transferee liability asserted by both tort plaintiffs and multiple groups of dealers. The Court made the finding that the "free and clear" nature of the sale, including the assumption of only a designated subset of the Debtors' dealer agreements, was imperative to the consummation of the Fiat Transaction. (Sale Opinion at pp. 16-17). The Sale Order stated

> The Debtors may sell the Purchased Assets free and clear of all Claims because, in each case where a Claim is not an Assumed Liability, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Except as provided in this Sale Order, the assumption and assignment of each of the Assumed Agreements is also free and clear of all Claims other than the payment of Cure Costs. (Sale Order at ¶ W, p. 17).

The term "Claims" was defined broadly, providing that the Fiat Transaction was to be

> free and clear of liens, claims (as such term is defined by section 101(5) of the Bankruptcy Code), liabilities, encumbrances, rights, remedies, restrictions and interests and encumbrances of any kind or nature whatsoever whether arising before or after the Petition Date, whether at law or in equity, including all claims or rights based on any successor or transferee liability, all environmental claims, all change in control provisions, all rights to object or consent to the effectiveness of the transfer of the Purchased Assets to the Purchaser or to be excused from accepting performance by the Purchaser or performing for the benefit of the Purchaser under any Assumed Agreement and all rights at law or in equity (collectively, "Claims")….

Sale Order at pp. 2-3.

The only reasonable interpretation of the above paragraph in the Sale Order is that the term "Claims" encompasses all that was defined collectively in the paragraph and not limited to only claims as defined by section 101(5) of the Bankruptcy Code. Thus, Dealers are erroneous in arguing that the Sale Order bars assertion of claims against New

5

Chrysler only if they fall within the definition of a claim under section 101(5) of the Bankruptcy Code.

Paragraphs 28, 29, 38 and 39 of the Sale Order clearly prohibited any successor or transferee liabilities against New Chrysler. Regardless of the Wisconsin Dealers' contention to the contrary, the Wisconsin Civil Action and the Wisconsin Administrative Action are essentially successor/transferee liability claims. Similarly, the claimed rights under the Ohio Revised Code § 4517.54 that Spitzer relies and the claimed rights under the Arkansas Motor Vehicle Commission Act that Crain relies are also essentially successor/transferee liability claims because the provisions of these statutes are based on the Debtors' prior ownership of the assets purchased by New Chrysler.

The Sale Order further specified that the assets purchased by New Chrysler "shall be free and clear of all Claims except for Assumed Liabilities," and the Claims include any rights that the Dealers may have against New Chrysler under state laws in connection to the Fiat Transaction. (Sale Order at p. 9). Since the Court found that a crucial condition of the Fiat Transaction was that New Chrysler would assume only the dealer agreements that the Debtors elected to assume, the Subject Actions against New Chrysler pursuant to state franchise laws are enjoined by the Sale Order.

None of the Dealers appealed the Sale Order and provisions barring any claims against New Chrysler relating to the rejected dealer agreements as part of the Fiat Transaction. The free and clear provisions were appealed by other parties and the Second Circuit affirmed both the Sale Order and the Sale Opinion. Indiana State Police Pension Trust v. Chrysler LLC (In re Chrysler LLC), 2009 U.S. App. LEXIS 17441 at 41 (2d Cir. Aug. 5, 2009). The Sale Order is a final order for which all appellate remedies have been

6

exhausted and the Dealers are enjoined from pursing Subject Actions in violation of that Order and its injunction provisions.

### Rejection Order and Rejection Opinion

The Subject Actions are prohibited because the state franchise laws are preempted by the Bankruptcy Code to the extent that the enforcement of such laws conflict with the terms of the Sale Order or the impact of the rejection of the rejected agreements. Numerous objecting parties, including the Dealers, participated in hearings held before this Court with respect to the Debtors' Motion for Court Order Authorizing the Rejection of All Executory Contracts and Unexpired Leases with Certain Domestic Dealers. Following the hearing, the Court entered the Rejection Order and subsequently issued an opinion regarding the motion, (the "Rejection Opinion"). The Dealers did not appeal the Rejection Order and did not take any action after the Rejection Opinion was issued. The only appeal of the Rejection Order has been voluntarily dismissed, so the Rejection Order is a final order for which all appellate remedies have been exhausted.

Paragraph 5 of the Rejection Order expressly provided that the rejected dealers "shall have no further rights (direct, indirect, contractual or otherwise) to act as an Authorized Dealer…." (Rejection Order at p. 5). Paragraph J of the Rejection Order stated, "To the extent that any Dealer Laws conflict with the terms of this Order or the impact of the rejection of the Rejection Agreements under the Bankruptcy Code and applicable case law, such laws are preempted by the Bankruptcy Code, pursuant to the Supremacy Clause of the United States Constitution." The "Dealer Laws" referenced in that paragraph of the Rejection Order are inclusive of the so-called "blocking statutes" as explained in the Court's subsequent Rejection Opinion. In the Rejection Opinion, the

Court distinguished between the narrow exception to the abandonment power under §554 for state laws or regulations that are "reasonably calculated to protect the public health or safety from imminent and identifiable harm," versus state laws and regulations that are concerned with protecting economic or commercial interests. (Rejection Opinion at p. 29). The "Dealer Laws," including the so-called "blocking statutes" as discussed in the Rejection Opinion are no different from the state statutes that are the basis of the Subject Actions at issue here. Consistent with this Court's prior findings, the state statutes relied on by the Dealers do not fall within the narrow "public safety" exception because they are concerned with protecting economic and commercial interest of state franchisees and are therefore preempted by the Bankruptcy Code.

The Subject Actions are in direct conflict with the terms of the Rejection Order because the Dealers are seeking to burden New Chrysler with the obligation of either continuing the previously rejected dealer agreements or suffering other unfavorable consequences as a result of the rejected dealer agreements. The Rejection Order ended the Dealers' right to act as authorized dealers while the Wisconsin, Ohio, and Arkansas statutes resurrect precisely those rights and compel New Chrysler, the successor/transferee of Debtors, to resume the dealer agreements. As there is a direct conflict between the Rejection Order and the statutes under which the Subject Actions are based, the state statutes are preempted under the Rejection Order and the Dealers are enjoined under the Sale Order from bringing any actions pursuant to these statutes in any court.

Further, Crain argues that it filed its protest as any citizen of Arkansas could have and, therefore, such action is not precluded by the Sale Order or the Rejection Order.

However, the Court finds that under the Sale Order and the Rejection Order, as discussed previously herein, the relief actually sought by Crain cannot be pursued because such action is precluded.  Crain is seeking to have the Arkansas Motor Vehicle Commission enforce a state statute that it knew was preempted as a so-called "blocking statute" by the Rejection Order as discussed in the Rejection Opinion.  Both the Rejection Order and the Rejection Opinion found that, in their business judgment, the Debtors' rejection of the agreements was necessary and appropriate to consummate the Fiat Transaction and transfer to the purchaser, New Chrysler, a smaller, more effective, and more profitable dealer network without disruption while limiting the Debtors' potential postpetition obligations to the rejected dealers.  Since the actions undertaken by Crain and the Dealers pursuant to the so-called "blocking statutes" would undermine and frustrate the benefit achieved through the rejection process, such statutes were preempted and the Subject Actions precluded.

### Res Judicata and Collateral Estoppel

For the reasons set forth by Movants, the Dealers are precluded from challenging the Sale Order and the Rejection Order based upon principles of res judicata and collateral estoppel.

### Automatic Stay Violation

The issue of whether the Subject Actions violated the automatic stay is not reached by this Opinion and Order and will be addressed by a separate opinion and order.

**Sanctions**

The issue of sanctions against the Dealers for violations of the Sale Order and the Rejection Order regarding the Subject Actions is not reached by this Opinion and Order and will be addressed by a separate opinion and order.

**Conclusion**

In conclusion, by their actions, each of the Dealers is seeking, directly or indirectly, to compel New Chrysler, among other things, to assume the burdens and obligations of its respective dealer agreement that was rejected by the Debtors and is, therefore, barred by the Sale Order and the Rejection Order.

The Motion is GRANTED to the extent set forth herein. All Objections related to the relief granted by the Court, to the extent not otherwise resolved as set forth herein or on the record of the Hearing, are OVERRULED.

NOW, THEREFORE, IT IS HEREBY

ORDERED that injunctive relief is granted to the Debtors and New Chrysler, whereby each of the Dealers shall withdraw its respective Subject Action by September 10, 2009; and it is further

ORDERED that any of the Dealers who does not withdraw its respective Subject Action by September 10, 2009 shall be subject to a sanction of $10,000.00 per day thereafter, payable to the Court, until full compliance; and it is further

ORDERED that the Dealers are enjoined from pursuing any future action against New Chrysler with respect to any rejected dealer agreements; and it is further

ORDERED that this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that this Court shall retain jurisdiction to resolve all matters relating to the implementation, enforcement and interpretation of this Opinion and Order; and it is further

ORDERED, that this Opinion and Order shall be served by Debtors upon all of the rejected dealers.

Dated: New York, New York
      August 31, 2009

                                    **s/Arthur J. Gonzalez**
                                    UNITED STATES BANKRUPTCY JUDGE