| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------X<br>In re:                                                           :<br>                                                                     :<br>OLD CARCO LLC                                      :<br>(f/k/a CHRYSLER LLC), *et al.*,               :<br>                                                                     :<br>                    Debtors.                                :<br>------------------------------------------------------------X | FOR PUBLICATION<br><br>Chapter 11<br><br>Case No. 09-50002 (SMB) |

## MEMORANDUM DECISION DENYING MOTION TO ENFORCE PRIOR ORDERS AND PREVENT FURTHER VIOLATIONS

**A P P E A R A N C E S:**

KLESTADT & WINTERS, LLP
570 Seventh Avenue, 17th Floor
New York, New York 10018

      Sean C. Southard, Esq.
      Maeghan J. McLoughlin, Esq.
          Of Counsel

      and

BROOKS WILKINS SHARKEY & TURCO, PLLC
401 S. Old Woodward, Suite 400
Birmingham, Michigan 48009

      Herbert C. Donovan, Esq.
      Michael R. Turco, Esq.
          Of Counsel

*Attorneys for TRW Automotive US, LLC and
TRW Automotive Holdings Corp.*

OLSHAN FROME WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022

      Michael S. Fox, Esq.
      Fredrick J. Levy, Esq.
      Nicole C. Barna, Esq.
          Of Counsel

*Attorneys for Rhonda Masquat*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

Prior to bankruptcy, the plaintiff Rhonda Masquat commenced a class action against Old Carco LLC f/k/a Chrysler LLC ("Chrysler") relating to a defect in its vehicles. Chrysler and Masquat subsequently entered into a stipulation pursuant to which Chrysler agreed to relief from the stay, Masquat agreed to limit any recovery to insurance coverage and Masquat otherwise waived the class's claims against the estate. Discovering that there is no insurance, Masquat intends to use any judgment against Chrysler as a predicate to sue the manufacturer of the defective component, TRW Automotive US, LLC and TRW Automotive Holdings, Corp. (collectively, "TRW").

TRW has moved to prevent Masquat from using the judgment as the predicate to sue TRW, and seeks a declaration that the use of the judgment for that purpose is void as violative of the stipulation and the confirmation order. For the reasons that follow, the Court denies the motion but with certain limitations noted at the end of this decision.

## BACKGROUND

At all relevant times, Chrysler was engaged in the business of manufacturing and selling motor vehicles. Between 1993 and 2004, Chrysler sold vehicles that included a power rack and pinion steering system known as a "center take off" system. (*Motion of TRW Automotive US, LLC and TRW Automotive Holdings, Corp. to Enforce and Prevent Further Violation of Prior Orders of This Court*, dated August 9, 2013 ("*TRW Motion*"), Ex. A, at 6-7 ("*First Amended Petition*") (ECF Doc. # 8201).) TRW manufactured the steering system and sold it to Chrysler

2

pursuant to purchase agreements dated 1987, 1994 and 2000 (collectively, the "Agreements").[1] (*Opposition of Rhonda Masquat to Motion of TRW Automotive USAA [sic] LLC and TRW Automotive Holdings, Corp. to Enforce and Prevent Further Violation of Prior Orders of This Court*, dated August 20, 2013 ("*Masquat Opposition*"), at ¶¶ 9-10 (ECF Doc. # 8207).)

The Agreements, which are governed by Michigan law, imposed insurance and indemnification obligations on TRW that ran in favor of Chrysler. First, TRW was required to "provide . . . comprehensive general liability . . . insurance in amounts and coverages sufficient to cover all claims hereunder." (*Id.*, Ex. 3, at ¶ 11(a); *accord* Ex. 4, at ¶ 11(a); Ex. 5, at ¶ 10.) Second, two of the Agreements required TRW to name Chrysler as an additional insured under the policies. (*Id.*, Ex. 3, at ¶ 11(a); *accord* Ex. 4, at ¶ 11(a).) Third, each of the policies required TRW to "defend, indemnify, and hold Chrysler harmless against all claims, liabilities, losses, damages and settlement expenses in connection with any breach by Seller of these general conditions or for injury or death of any person and damage or loss of any property" resulting from TRW's omission or negligence. (*Id.*, Ex. 3, at ¶ 11(b); *accord* Ex. 4, at ¶ 11(b); Ex. 5, at ¶ 10.) Thus, TRW had the duty to procure appropriate insurance and name Chrysler as an additional insured (in two of the Agreements) (collectively, the "TRW Insurance Obligations") and indemnify Chrysler (the "TRW Indemnity Obligation").

On January 28, 2005, Masquat filed a class action against Chrysler in the Oklahoma state court (the "Litigation"). (*See TRW Motion*, Ex. A.) The complaint centered on Chrysler's sale

---

[1] Copies of the Agreements are attached as Exhibits 3, 4 and 5 to the *Reply Brief of TRW Automotive U.S., LLC and TRW Automotive Holdings Corp. in Support of Motion to Enforce and Prevent Further Violation of Prior Orders of this Court*, dated Aug. 23, 2013 ("*TRW Reply*"). (ECF Doc. # 8209.)

3

of vehicles with the defective steering system, (*id.*, at pp. 7-14 of 33), and asserted two counts: breach of express warranty and breach of implied warranty. (*Id.*, at pp. 14-15 of 33.)[2] The proposed class consisted of all entities and adult persons residing in the United States or the District of Columbia who had purchased or leased at least one model year 1993-2001 automobile marketed as the Dodge Intrepid, Eagle Vision, Chrysler New Yorker, Chrysler LHS, Chrysler Concorde or Chrysler 300M. The proposed class expressly excluded any person who had suffered personal injuries from a steering system failure. (*See id.*, at p. 5 of 33.) The trial court certified the class with some additional exclusions, approved the appointment of Masquat as class representative, and Oklahoma Supreme Court affirmed. *Masquat v. DaimlerChrysler Corp.*, 195 P.3d 48, 51, 58 (Okla. 2008).

The debtors (collectively "Chrysler") filed chapter 11 petitions in this Court on April 30, 2009. The bankruptcy automatically stayed the Litigation, and Masquat moved for relief from the automatic stay. According to her motion, she sought to continue the action against Chrysler as a nominal defendant in order to access certain insurance that Masquat believed covered Chrysler's liability. (*Motion of Rhonda Masquat for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362*, dated Nov. 19, 2009, at ¶¶ 1-2.)[3] She maintained that the manufacturer of the steering system, who she did not name, had acquired insurance coverage for Chrysler and was required to name Chrysler as an additional insured relating to claims connected with the manufacture of defective parts. (*Id.* at ¶¶ 10-11.)

---

[2] Masquat filed an amended complaint on June 28, 2005. (*See TRW Motion*, Ex. A.) The only difference appears to be the addition of an allegation relating to equitable tolling.

[3] A copy of the stay relief motion is annexed as Exhibit 2 to the *Masquat Opposition*.

Chrysler did not respond to the motion, and instead, the parties entered into a stipulation that resolved it. (*See Stipulation and Agreed Order Granting Rhonda Masquat, as Class Representative, Limited Relief from the Automatic Stay*, dated Jan, 6, 2010 (the "*Stipulation*").) [4] The *Stipulation* modified the automatic stay to the limited extent of allowing the class plaintiffs and "any insurer under any Policy" to prosecute or defend against the Litigation. (*Id.* at ¶ 1.) It permitted the class plaintiffs to enforce any judgment or settlement only by pursuing the proceeds of the Policy (defined as the insurance policy procured by the supplier of the steering system that named Chrysler as an additional insured and covered the claims asserted in the Litigation), (*id.* at ¶¶ 2, D), but Chrysler represented that it was not in possession of any Policy and could not represent that a Policy existed. (*Id.* at ¶ E.) The *Stipulation* expressly prohibited the class plaintiffs from enforcing any judgment or settlement from, or imposing any costs, expenses or other burdens on Chrysler, the estate or its property, and the class plaintiffs waived and agreed not to file any claim against the Chrysler estate relating to the Litigation. (*Id.* at ¶ 3.) Finally, the *Stipulation* could not be modified, altered, amended or vacated without the prior written consent of all parties. (*Id.* at ¶ 7.)

Chrysler subsequently confirmed its Second Amended Joint Plan of Liquidation (the "Plan"). (*Order Confirming Second Amended Joint Plan of Liquidation of Debtors and Debtors in Possession, as Modified*, dated Apr. 23, 2010 ("*Confirmation Order*") (ECF Doc. # 6875).) [5] The *Confirmation Order* included the following pertinent provisions:

---

[4] A copy of the *Stipulation* is annexed as Exhibit 3 to the *Masquat Opposition*.

[5] Excerpts of the *Confirmation Order* are annexed as Exhibit 4 to the *Masquat Opposition*. A copy of the *Plan* is attached as an exhibit to the *Confirmation Order* docketed on the Court's electronic filing system.

5

1.    The property of the estate vested in the Liquidating Trust created under the plan free and clear of any claims, liens, encumbrances, charges and other interests of creditors except as otherwise provided in the plan or the Confirmation Order. (*Confirmation Order*, at ¶ 23.)

2.    Chrysler did not receive a discharge under its liquidation plan, *see* 11 U.S.C. § 1141(d)(3), but all holders of claims were enjoined, *inter alia*, from commencing, conducting or continuing any action or proceeding against Chrysler, the Chrysler estate or the Liquidation Trust (or its Trustee). (*Confirmation Order*, at ¶ 26; *accord Plan* at 13.)

3.    Neither the Plan nor the *Confirmation Order* affected "any relief granted in any order of the Bankruptcy Court lifting, terminating, annulling, modifying or conditioning the automatic stay imposed in these cases pursuant to section 362(a) of the Bankruptcy Code." (*Id.* at ¶ 29.)

The Plan became effective on April 30, 2010, (*Notice of (A) Entry of Order Confirming Second Amended Joint Plan of Liquidation of Debtors and Debtors in Possession, as Modified and (B) Occurrence of Effective Date*, dated May 1, 2010 (ECF Doc. # 6980)), and the automatic stay terminated on that date. *See* 11 U.S.C. § 362(c)(2)(C).[6] The net effect of the *Confirmation Order*, as concerns this case, was to bar any litigation against Chrysler except to the extent permitted by the *Stipulation*.

Masquat's inquiry regarding available insurance revealed that TRW had not added Chrysler as an additional insured on its liability policies but that the policies permitted TRW "to agree that a customer will have 'additional insured' status." However, it appears that TRW's policies did not cover the allegations made in the class action. (*TRW Reply*, Ex. 2.) As a result, Masquat filed a declaratory judgment action against TRW in the United States District Court for the Western District of Oklahoma seeking a declaration that TRW was obligated to indemnify Chrysler for any judgment obtained in the class action litigation. (*TRW Motion*, Ex. B, at ¶ 9.)

---

[6]    Section 362(c)(2)(C) provides that the stay continues until "the time a discharge is granted or denied." Chrysler confirmed a plan of liquidation and was not entitled to a discharge under 11 U.S.C. § 1143(d)(3). Once the Plan went effective, the discharge was effectively denied.

The District Court dismissed the declaratory judgment action without prejudice in an order dated October 31, 2012. (*Id.*, Ex. C.) It held that under Michigan law, Masquat had to establish the liability of Chrysler in the state court litigation before asserting a claim for indemnity. (*Id.*, Ex. C at 3-4.)

Following the dismissal, Masquat informed TRW that she intended to proceed with the Litigation to judgment, then recommence her declaratory judgment action, and ultimately, seek recovery from TRW. (*Id.*, Ex. D.) Masquat subsequently filed a motion for summary judgment in Oklahoma state court. (*TRW Motion*, Ex. E ("*Plaintiff's Motion for Summary Judgment on All Claims and Brief in Support*").) Chrysler was no longer defending the class action, and the state court granted the motion on October 2, 2013, concluding that Chrysler had breached its express and implied warranties under Michigan law (the "Litigation Order"). (*Letter* dated Oct. 10, 2013 from Herbert C. Donovan, Esq. to Hon. Stuart M. Bernstein, Ex. A, at pg. 15 of 17 (ECF Doc. # 8215-1).)

After Masquat moved for summary judgment in the state court, but before the state court granted the motion, TRW made the instant motion in this Court for injunctive and declaratory relief. It argued that the *Stipulation* modified the stay only to the extent of permitting Masquat to recover a judgment against Chrysler for the sole purpose of enforcing that judgment against available insurance, not third parties, and this was the only exception to the injunction in the *Confirmation Order*. According to TRW, Masquat should, therefore, be enjoined from prosecuting the Litigation as a prerequisite to asserting a claim against TRW, and any judgment rendered for that purpose is void. In addition, the claims that Masquat intends to assert against TRW are derived from the TRW Indemnity Obligation and the breach of the TRW Insurance

7

Obligations and belong to the Liquidating Trust. Finally, TRW maintained that Masquat's state law theories of liability lacked merit.

In response, Masquat questioned TRW's standing, argued that TRW should not be able to profit from its own failure to procure insurance that protected Chrysler, the breach of the TRW Insurance Obligations transformed TRW into a self-insurer and "merely alters the source of recovery contemplated in the Relief Stay Order from the actual 'policies' of insurance to TRW itself as a self-insured entity," (*Masquat Opposition* at ¶ 42), the *Confirmation Order* did not discharge Chrysler, but in any case, Masquat could pursue Chrysler as a nominal defendant in order to recover from someone other than Chrysler, and TRW was liable under Michigan law. Lastly, if the *Stipulation* precluded recovery against TRW, the Court should modify it as a matter of equity and based on mutual mistake.[7]

## DISCUSSION

**A.     Standing**

The party invoking federal jurisdiction bears the burden of establishing its standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To have standing in bankruptcy court, a party must meet three requirements: (1) Article III's constitutional requirements, (2) federal court prudential standing requirements, and (3) the "party in interest" requirements under

---

[7]     The Court denied this aspect of the motion from the bench. The Liquidating Trust was not a party to TRW's motion, and in addition, the Court would not grant relief requested in opposition papers without a formal motion. Moreover, the *Stipulation* cannot be changed except through a writing signed by the parties. Finally, Masquat's argument that the *Stipulation* was the product of the mutual mistake that TRW had procured insurance to cover Chrysler, (*Masquat Opposition* at ¶¶ 60-62), is belied by Chrysler's representation in the *Stipulation* that it was not in possession of any Policy and could not represent that a Policy existed.

Bankruptcy Code § 1109(b).[8] *Motor Vehicle Cas. Co. v. Thorpe Insulation Co.* (*In re Thorpe Insulation Co.*), 677 F.3d 869, 884 (9th Cir. 2012); *see Parker v. Motors Liquidation Co.* (*In re Motors Liquidation Co.*), 430 B.R. 65 (S.D.N.Y. 2010) ("Contrary to Parker's contention, section 1109(b) of the Bankruptcy Code does not satisfy or replace the constitutional and prudential limitations on standing. Rather, a party must establish both."); *In re Quigley Co.*, 391 B.R. 695, 703 (Bankr. S.D.N.Y. 2008) ("A 'party in interest' 'must still satisfy the general requirements of the standing doctrine.'") (quoting *Southern Boulevard, Inc. v. Martin Paint Stores* (*In re Martin Paint Stores*), 207 B.R. 57, 61 (S.D.N.Y. 1997)); *cf. Savage & Assocs., P.C. v. K & L Gates LLP* (*In re Teligent, Inc.*), 640 F.3d 53, 60 n.3 (2d Cir. 2011) ("Because we agree that K & L Gates was not a 'party in interest,' we do not reach the constitutional or prudential questions.")

Constitutional, or Article III standing, "imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To qualify for standing under Article III, "a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008).

"[P]rudential standing encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall

---

[8] Bankruptcy Code § 1109(b) provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

within the zone of interests protected by the law invoked.'" *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)); *accord Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002). Prudential limitations on standing are especially important in bankruptcy proceedings which often involve numerous parties who may seek to assert the rights of third-parties for their own benefit. *Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 843 F.2d 636, 644 (2d Cir. 1988) ("The prudential concerns limiting third-party standing are particularly relevant in the bankruptcy context. Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself.")

"Party in interest," as used in 11 U.S.C. § 1109(b), is not defined in the Bankruptcy Code. *Krys v. Official Comm. of Unsecured Creditors of Refco, Inc.* (*In re Refco, Inc.*), 505 F.3d 109, 117 (2d Cir. 2007); *Roslyn Sav. Bank v. Comcoach Corp.* (*In re Comcoach Corp.*), 698 F.2d 571, 573 (2d Cir. 1983). It has been interpreted to mean that "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains." *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir.1992); *accord In re Global Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011). "Whether or not someone is a party in interest must be read against the purposes of Chapter 11, which are to 'preserv[e] going concerns and maximiz[e] property available to satisfy creditors.'" *See Teligent*, 640 F.3d at 61 (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999)); *accord Comcoach Corp.*, 698 F.2d at 573; *Martin Paint Stores*, 207 B.R. at 61. Generally, a party in interest must have a financial or legal stake in the outcome of the particular matter. *See Teligent*, 640 F.3d at 60-61.

10

TRW has failed to demonstrate prudential standing. Initially, TRW's reliance on 11 U.S.C. § 362(k) is misplaced. Section 362(k) allows an *individual* injured by a willful violation of the automatic stay to recover damages from the violator. Here, the automatic stay terminated over three years ago, a corporation such as TRW cannot rely on 11 U.S.C. § 362(k), *see Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc.* (*In re Chateaugay Corp.*), 920 F.2d 183, 186-87 (2d Cir. 1990), and TRW is not seeking damages.

Nor has TRW demonstrated prudential standing to assert that the *Confirmation Order* bars the Litigation or the further proceedings contemplated by Masquat. By its terms, the injunction protects the "Debtor, its Estate, the Liquidation Trust, the Liquidation Trustee or the Litigation Manager, or the respective Assets or property of the foregoing, including the Liquidation Trust Assets." (*Confirmation Order* at ¶ 26.) It does not shield TRW from lawsuits, Masquat's pursuit of TRW does not affect any of the entities or interests that are shielded by the injunction, and TRW has not asserted claims in this motion that are within the zone of interests secured by the injunction.

Finally, TRW has failed to show that it has prudential standing to assert its claims under the *Stipulation*. When parties enter into a stipulation, the agreement is enforceable as a contract." *In re Royster Co.*, 132 B.R. 684, 687 (Bankr. S.D.N.Y. 1991); *accord National City Bank v. Enron Creditors Recovery Corp.* (*In re Enron Creditors Recovery Corp.*), No. 09 Civ. 4168(RJS), 2011 WL 1345254, at *4 (S.D.N.Y. Mar. 31, 2011), *aff'd* 461 F. App'x 11 (2d Cir. 2012). Under general contract rules, a non-party to a contract who is not an intended beneficiary cannot enforce the contract or recover for its breach. *See Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 52 (2d Cir. 2012) (quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 248 (2d Cir. 2002)); *Schmalfeldt v. North Pointe Ins. Co.*, 670 N.W.2d 651,

654 (Mich. 2003) ("A person is a third-party beneficiary of a contract only when that contract establishes that a promisor has undertaken a promise directly to or for that person.") (discussing Michigan law); *cf. Calderon v. Wambua*, No. 74 Civ. 4868(LAP), 2012 WL 1075840, at *7 (S.D.N.Y. Mar. 28, 2012) ("[A] proposed intervenor has standing to enforce a consent decree as an intended beneficiary despite not being an original named Plaintiff.") The non-party's inability to enforce the contract equates to a lack of prudential standing. *Deutsche Bank Nat'l Trust Co. v. F.D.I.C.*, 717 F.3d 189, 194 (D.C. Cir. 2013) ("Appellants lack prudential standing to enforce the terms of the Agreement because they were neither parties nor intended third-party beneficiaries to this contract."); *Pegasus Satellite Television, Inc. v. DirecTV, Inc.*, 318 F. Supp. 2d 968, 977 (C.D. Cal. 2004) ("Pegasus is not a third-party beneficiary to the DBS Agreement. Since Pegasus has not presented any other basis which would confer it standing to assert these claims, the prudential doctrine of standing precludes Pegasus' declaratory relief claims against DirecTV.")

TRW was neither a party to nor an intended beneficiary of the *Stipulation*. Instead, its motion asserts the rights of the Liquidating Trust, and the Liquidating Trust is in the best position to assert its own rights based on any breach of the *Stipulation.* Since TRW has failed to demonstrate prudential standing, it is unnecessary to consider whether it has demonstrated Article III standing or that it is a "party in interest" under 11 U.S.C. § 1109(b).

**B.     The Merits**

Even if TRW had standing, its application would fail on the merits. TRW primarily relied on 11 U.S.C. § 362(k) as the basis for relief, but it is inapplicable. In addition, the injunction in the *Confirmation Order* does not bar litigation against TRW. Furthermore, the *Stipulation* permitted Masquat to sue Chrysler as a nominal defendant and recover a judgment.

Moreover, Chrysler did not receive a discharge, and as a result and with the exceptions noted at the end of this opinion, the judgment that has or will be entered in connection with the Litigation Order will not be void. *See* 11 U.S.C. § 524(a)(1) (stating, *inter alia*, that the effect of the discharge under Bankruptcy Code 1141 is to void any judgment that determines the personal liability of the debtor on a discharged debt). TRW nevertheless argues that the *Stipulation* prevents Masquat from using the judgment as a predicate for any purpose other than pursuing insurance. As concerns Chrysler, that is certainly correct.

But TRW's hyperliteral reading of the *Stipulation* ignores its purpose. The relief granted in the *Stipulation* is typical in bankruptcy cases. It reduces the debtor to the status of a nominal party and frees the estate from the need to defend the lawsuit or pay a judgment. The plaintiff waives her claims against the estate, and agrees to limit her recovery *against the estate* to available insurance.

This was precisely what the *Stipulation* was designed to accomplish; it allowed Masquat to obtain a judgment against Chrysler as a nominal defendant, but limited the class's rights against the Chrysler estate. (*See Stipulation* at ¶ 3 ("The Plaintiffs shall not engage in any efforts to collect any amount from, impose any costs or expenses on or otherwise burden Old Carco, the other Debtors or their respective bankruptcy estates and properties.").) It did not affect Masquat's rights against anyone who was not protected by the automatic stay in the first instance. The automatic stay never prevented Masquat from suing TRW, and the *Stipulation* did not grant this protection or prevent Masquat from using the judgment for a purpose that did not concern Chrysler or its estate. Accordingly, the *Stipulation* does not prevent Masquat from proceeding to judgment against Chrysler as a nominal defendant or using that judgment as a predicate to assert the class's rights against TRW under non-bankruptcy law.

13

Notwithstanding this conclusion, it is important to state the limited scope of this ruling. Masquat may pursue any claims against TRW based on TRW's direct liability to the class under state law, presumably Michigan law. The Court offers no view on those claims except to reiterate that TRW was not a third-party beneficiary under the *Stipulation*, a conclusion necessary to the determination that TRW lacked prudential standing. However, the claims arising in *Chrysler's* favor by virtue of TRW's alleged breach of the TRW Insurance Obligations and its duties under the TRW Indemnity Obligation vested in the Liquidating Trust free and clear of any claims. Masquat cannot assert the Liquidating Trust's claims against TRW; it can only assert its own claims. This does not mean that Masquat is precluded from arguing that TRW owed contractual duties to Chrysler, or breach them. If those duties (or breaches) gave rise to independent obligations owed by TRW directly to Masquat under non-bankruptcy law, Masquat is free to pursue them.

Finally, the Litigation Order exceeds the relief granted to Masquat in the *Stipulation*. It impliedly requires Chrysler to set up a notice and claims administration and expressly directs Chrysler to undertake the "identification of all current owners as set forth in the class definition." The imposition of these duties and obligations on Chrysler is directly contrary to the *Stipulation* and the *Confirmation Order*, and is not enforceable against Chrysler.

Settle order on notice.

Dated: New York, New York
       November 8, 2013

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge