| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>----------------------------------------------------------------X<br>In re:                                                                          :<br>                                                                                        :<br>OLD CARCO LLC                                                    :<br>(f/k/a CHRYSLER LLC), *et al*.,                             :<br>                                                                                        :<br>                              Debtors.                               :<br>----------------------------------------------------------------X | FOR PUBLICATION<br><br>Chapter 11<br><br>Case No. 09-50002 (SMB)<br><br>(Jointly Administered) |

**MEMORANDUM DECISION DENYING MOTION TO
ENFORCE SALE ORDER WITHOUT PREJUDICE**

**A P P E A R A N C E S:**

SULLIVAN & CROMWELL LLP
Attorneys for Chrysler Group LLC
125 Broad Street
New York, NY 10004

 Brian D. Glueckstein, Esq.
 Mark U. Schneiderman, Esq.
 Oded Zaluski, Esq.
  Of Counsel

LISA MADIGAN
Illinois Attorney General
Attorney for Illinois Department of Employment
 Security
100 W. Randolph Street
Chicago, IL 60601

 James D. Newbold
 Assistant Attorney General
  Of Counsel

GREGORY F. ZOELLER
Illinois Attorney General
Attorney for Indiana Department of Workforce
 Development
302 W. Washington Street, IGCS Fifth Floor
Indianapolis, IN 46204

 Maricel E.V. Skiles
 Assistant Attorney General
  Of Counsel

BILL SCHUETTE
Illinois Attorney General
Attorneys for Michigan Unemployment Insurance
  Agency
Labor Division
P.O. Box 30736
Lansing, MI 48909

      Dennis Raterink
      Peter Kotula
      George Constance
      Assistant Attorneys General
          Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

Chrysler Group LLC ("New Chrysler") seeks an order of this Court enforcing the Sale Order[1] pursuant to which it purchased substantially all of the assets of Old Carco LLC f/k/a Chrysler LLC and Chrysler Motors LLC (collectively, "Old Carco") free and clear of all liens, claims, interests, encumbrances and successor liability. (*Motion for Enforcement of the Court's Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief*, dated October 18, 2013 ("*Motion*") (ECF Doc. # 8218).) The issue is whether the Sale Order prevents the relevant agencies within the states of Michigan, Illinois and Indiana (collectively, the "States") from using Old Carco's experience rating to determine New Chrysler's unemployment insurance tax rate.

---

[1] The Sale Order refers to the *Order (I) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief*, dated June 1, 2009. (ECF/Main Case Doc. # 3232.)

The Court does not reach the merits of the *Motion*. The Tax Injunction Act, 28 U.S.C. § 1341, deprives this Court of subject jurisdiction to provide the declaratory and/or injunctive relief that New Chrysler seeks, and it must pursue its arguments before the appropriate state *fora.*

## BACKGROUND

**A.    The Bankruptcy and the Sale**

On April 30, 2009, Old Carco filed a chapter 11 petition in this Court.[2] In a well-publicized transaction, Old Carco entered into a Master Transaction Agreement ("MTA") under which it agreed to sell substantially all of its assets free and clear of all claims and liabilities (other than "Assumed Liabilities"), whenever arising, to New Carco Acquisition LLC, later renamed Chrysler Group LLC ( *i.e.*, New Chrysler). *See Shatzki v. Abrams*, No. 1:09cv02046 LJO DLB, 2010 WL 148183, at *1 (E.D. Cal. Jan. 12, 2010); *Cooper v. Daimler AG*, No. 1:-09-CV-2507-RWS, 2009 WL 4730306, at *1 (N.D. Ga. Dec. 3, 2009); *Ricks v. New Chrysler Group, LLC (In re Old Carco LLC)*, Adv. No. 12-09801 (SMB), 2013 WL 1856330, at *2 (Bankr. S.D.N.Y. May 2, 2013). The transaction closed on June 10, 2009 (the "Closing Date"), Old Carco ceased operations and New Chrysler took over the operations of the "Chrysler" automotive business. *Ricks*, 2013 WL 1856330, at *2.

The Sale Order is a comprehensive document, but only a few of its provisions are germane. Initially, the Sale Order defined "Claims" broadly.[3] In addition to the rights to payment identified in § 101(5),[4] "Claims" under the Sale Order included:

---

[2]    Numerous affiliates filed petitions and "Old Carco" refers to all of the debtors.

[3]    Bankruptcy Code § 101(5) states:
(5) The term "claim" means–

3

> liabilities, encumbrances, rights, remedies, restrictions and interests and encumbrances of any kind or nature whatsoever whether arising before or after the Petition Date, . . . including all claims or rights based on any successor or transferee liability, . . . (collectively, "Claims") (other than certain liabilities that are expressly assumed or created by the Purchaser, as set forth in the Purchase Agreement or as described herein (collectively, the "*Assumed Liabilities*").

(Sale Order at p. 2) (footnote omitted).

The Sale Order then enjoined a host of persons and entities, including, "governmental, tax and regulatory authorities," from asserting "against the Purchaser or their successors in interest any Claim arising from, related to or in connection with the ownership, sale or operation of any Asset prior to the Closing, except for Assumed Liabilities." (Sale Order at ¶ 12.) With certain exceptions that are not relevant, neither the Purchaser, its successors, assigns nor its affiliates would be liable for any Claim that "is assertable against the Debtors or is related to the Purchased Assets prior to the Closing Date," and "[t]he Purchaser shall not be deemed . . . to . . . be a legal successor, or otherwise be deemed a successor to the Debtors . . . ." (Sale Order at ¶ 35.) Except for the Assumed Liabilities, New Chrysler would not be liable for any claims or

---

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

4   Bankruptcy Code § 101(5) states:

(5) The term "claim" means–

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

obligations arising from or related to the purchased assets, including "successor or vicarious liabilities . . . [for] any obligations of the Debtors or their affiliates arising prior to the Closing, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing of the Sale Transaction." (Sale Order at ¶ 39.)

The MTA and the Sale Order were binding and inured "to the benefit of, the Debtors, their estates, their creditors, the Purchaser, the respective affiliates, successors and assigns of each, and any affected third parties," (Sale Order at ¶ 49), and the Court retained jurisdiction "to interpret, implement and enforce the terms and provisions of this Sale Order. (*Id.* at ¶ 59.) The sale closed on June 10, 2009 (the "Closing Date"), and by order dated April 23, 2010, the Court confirmed Old Carco's *Second Amended Joint Plan of Liquidation*. (ECF Doc. # 6875.)

B.    **Unemployment Insurance Tax Liabilities**

1.    **Introduction**

All states require in-state employers to pay unemployment taxes as part of a federal-state scheme. *See* Federal Unemployment Tax Act ("FUTA"), 26 U.S.C. §§ 3301–3311. If a state's unemployment program meets applicable federal requirements, it receives a share of funds from the United States Government Unemployment Trust Fund. To be eligible for federal funds, the Secretary of Labor must certify under 26 U.S.C. § 3304 that the law has been approved under FUTA. If the employer is located in a certified state with approved laws, it will be entitled to credits against FUTA taxes for taxes it paid under state unemployment tax laws. During the

relevant period (2009-2013), the state unemployment insurance programs in Michigan, Indiana and Illinois were approved and certified in accordance with federal law.[5]

The computation of an employer's state unemployment tax rate attempts to match the predicted amount of unemployment benefits to be paid in the coming year with the funding necessary to pay those benefits. Steven J. Boyajian, *The Transfer of Unemployment Insurance Experience Rates*, AM. BANKR. INST. J. 24, 24 (Sept. 2013). The prediction relies on the employer's historical claims experience typically for the preceding thirty-six months. In this case, each of the states computed a portion of the unemployment tax rate by dividing the benefits charged against the employer during the prior thirty-six months (or more) by the taxable wages for FUTA purposes during the same period. Thus, the greater the number of past unemployment insurance benefits paid to discharged workers, the higher the tax obligation going forward. This historical component will be referred to as the Experience Rating.

A new employer with no prior experience receives a relatively low tax rate. If, however, the new employer is deemed a "successor" to an old employer, the old employer's Experience Rating will be "transferred" to the new employer and used by the state in computing the new employer's unemployment insurance tax rate. The Michigan Unemployment Insurance Agency ("Michigan"), the Indiana Department of Workforce Development ("Indiana") and Illinois Department of Employment Security ("Illinois") determined that New Chrysler was a successor

---

[5] *See* Federal-State Unemployment Compensation Program: Certifications for 2013 Under the Federal Unemployment Tax Act, 78 Fed. Reg. 67,200, 67,200 (Nov. 8, 2013); Federal-State Unemployment Compensation Program: Certifications for 2012 Under the Federal Unemployment Tax Act, 77 Fed. Reg. 66,482, 66,482 (Nov. 5, 2012); Federal-State Unemployment Compensation Program: Certifications for 2011 Under the Federal Unemployment Tax Act, 76 Fed. Reg. 68,790, 68,790 (Nov. 7, 2011); Federal-State Unemployment Compensation Program: Certifications for 2010 Under the Federal Unemployment Tax Act, 75 Fed. Reg. 68,001, 68,003 (Nov. 4, 2010); Federal-State Unemployment Compensation Program: Certifications for 2009 Under the Federal Unemployment Tax Act, 74 Fed. Reg. 57,200, 57,202 (Nov. 4, 2009).

to Old Carco, and transferred Old Carco's Experience Rating to New Chrysler for the purpose of determining the New Chrysler's unemployment tax rate. (*Motion* at ¶ 2.) As a result, between June 10, 2009 and June 30, 2013, New Chrysler paid more than $50 million above what it would have paid if New Chrysler had been treated as a new employer. (*Id.* at ¶ 6.) The circumstances surrounding the determination of New Chrysler's unemployment tax rate are discussed immediately below.

### 2. Michigan

Under Michigan law, when a "transfer of business" occurs, "the commission shall assign the transferor's experience account, or a pro rata part of the account, to the transferee." MICH. COMP. LAWS § 421.22(c)(1). On June 3, 2009, New Chrysler submitted a UIA Employer e-Registration form to Michigan.[6] New Chrysler represented that it had acquired 90% of Old Carco's assets and Michigan business (products/services) and 100% of its organization (employees/payroll/personnel) and Michigan trade (customers/accounts). (*UIA Employer e-Registration* at 3.) New Chrysler also stated that it was conducting the Michigan business that it acquired. One week later, New Chrysler submitted a *Manual Employer Registration Questionnaire* (*Michigan Questionnaire*)[7] in which it stated that it had acquired 100% of the Old Carco's assets, organization, trade and Michigan business. (*Michigan Questionnaire* at 1.) It reiterated that it was conducting the business it had acquired, and although ownership was new, Old Carco's officers and management leaders would have similar roles in the transferee. (*Id.*)

---

[6]   A copy of the UIA Employer e-Registration is annexed as Exhibit 5 to the *State of Michigan Unemployment Insurance Agency's Memorandum of Law in Support of Its Objections to Chrysler Group LLC's Motion for Enforcement of the Court's Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief*, dated Nov. 20, 2013 ("*Michigan Memo*"). (ECF Doc. # 8241.)

[7]   A copy of the *Michigan Questionnaire* is annexed as Exhibit 6 to the *Michigan Memo*.

7

Michigan issued its *Determination of Termination of Employer Status* on July 27, 2007.[8] Based on New Chrysler's submissions, Michigan found that New Chrysler was a successor to Old Carco. As a result, the latter's Experience Rating was transferred to New Chrysler, and instead of a new employer tax rate of 2.7%, Michigan assessed a tax rate of 10.2%. (*Motion* at 19.) Michigan reassessed the tax rate annually, and the Tax Rate Determination for each year indicates that the "chargeable benefits component" of the tax determination (*i.e.* claims charged divided by wages paid) considered the benefit charges and taxable payroll for the preceding 60 months for the 2010 and 2011 calendar year determinations and 48 months for the 2012 determination. (*Declaration of Steven E. Grob in Support of Chrysler Group LLC's Motion for Enforcement of the Court's Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief*, dated Oct. 18, 2013 ("*Grob Declaration*"), Ex. E (ECF Doc. # 8219).) Starting in 2013, the reach back period was only 36 months, and the computation of the "chargeable benefits component," the most significant factor in determining the tax rate, no longer considered Old Carco's history.

The *Determination of Termination of Employer Status* became final unless New Chrysler submitted a written application for review and redetermination within thirty days failing which New Chrysler would be foreclosed from protesting the determination. (*Determination of Termination of Employer Status*.) New Chrysler did not file a timely protest. Instead, on February 25, 2010, it submitted a letter to Michigan seeking to rescind the *Questionnaire* and

---

[8] A copy of the *Determination of Termination of Employer Status* is attached as Exhibit 8 to the *Michigan Memo*. Michigan simultaneously terminated Old Carco as an employer. (*Michigan Memo*, Ex. 7.)

8

redetermine its tax rate (the "*Michigan Redetermination Request*").[9] Between then and December 2012, New Chrysler and Michigan exchanged several communications, requests for more information and submissions, all relating to New Chrysler's contention that it was not a successor to Old Carco. (*See Denial of Request for Reconsideration and Redetermination*, dated May 16, 2013 ("*Michigan Denial*"), at 3-5).)[10] New Chrysler's submissions did not mention the Sale Order or argue that it precluded Michigan's determination that it was a successor to Old Carco.

On May 16, 2013, Michigan denied New Chrysler's request to redetermine its unemployment tax rate on two independent grounds. First, it lacked jurisdiction to entertain New Chrysler's late protest because New Chrysler had failed to show good cause as required by Michigan law. (*Id.* at 7-8.) Second, even if it had jurisdiction, the evidence demonstrated that New Chrysler was a successor to Old Carco. (*Id.* at 8-19.) The *Michigan Denial* informed New Chrysler that the determination would become final unless New Chrysler filed a written appeal before an Administrative Law Judge within 30 days. (*Id.* at 19.)

New Chrysler appealed the denial of its request for reconsideration on June 14, 2013. (*Appeal of Denial of Request for Reconsideration and Redetermination* ("*Michigan Appeal*").)[11] In addition to asserting that it had shown good cause and was not a successor on the merits, New Chrysler argued, for the first time, that the Sale Order enjoined Michigan from assessing

---

[9] A copy of the *Michigan Redetermination Request* is annexed as Exhibit 9 to the *Michigan Memo*.

[10] A copy of the *Michigan Denial* is annexed as Exhibit 10 to the *Michigan Memo*.

[11] A copy of the *Michigan Appeal* is annexed as Exhibit 11 to the *Michigan Memo*.

unemployment taxes based on Old Carco's Experience Rating.  (*Michigan Appeal* at 4-5.)  This appeal is pending.  (*Motion* at ¶ 21.)

### 3.    Indiana

Indiana law provides with exceptions not relevant that when an "employer transfers all or a portion of the employer's trade or business (including the employer's workforce) to another employer . . . the successor employer shall . . . assume the position of the predecessor with respect to all the resources and liabilities of the predecessor's experience account."  IND. CODE § 22-4-10-6(a).  New Chrysler filed a *Report to Determine Status* and *Report of Transfer – Complete Sale* on the Closing Date stating that it had acquired a "complete" organization, listed the same business address as Old Carco, characterized the transfer as an "ACQUISITION," and in the "Remarks" section of the form, failed to check the box next to "Bankruptcy or other proceedings."  New Chrysler also filed a *Report of Transfer – Complete Sale* that contained most of the same information.[12]

Based upon these submissions, Indiana determined that New Chrysler was a successor to Old Carco, and assumed the latter's employment experience.  (*Notice of Complete Disposition of Business to Disposer*, dated Aug. 4, 2009.)[13]  The form advised New Chrysler and Old Carco that they had 15 days to file a written protest, which neither did.  Accordingly, the determination that

---

[12]     A copy of the *Report to Determine Status* and *Report of Transfer – Complete Sale* is annexed as Exhibit 1 to the *Objection to Chrysler Group LLC's Motion for Enforcement of the Court's Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief*, filed Nov. 21, 2013 and amended Dec. 20, 2013 ("*Indiana Objection*").  (ECF Doc. # 8267.)  The *Report of Transfer – Complete Sale* signed by the same person as the *Report to Determine Status* and *Report of Transfer – Complete Sale*.  A copy of Old Carco's filing is annexed as Exhibit 2 to the *Indiana Objection*.

[13]     A copy of the *Notice of Complete Disposition of Business to Disposer* is annexed as Exhibit 3 to the *Indiana Objection*.

New Chrysler was a successor under Indiana law became final. As a result of the determination, Indiana assessed a 5.6% unemployment insurance tax rate instead of the new employer rate of 2.7%. (*Motion* at ¶ 22.) Because Indiana uses three years of prior experience, the last tax year for which it considered Old Carco's Experience Rating was 2013. (*See Grob Declaration*, Ex. K.)

New Chrysler did not protest the 2009 decision until three-and-one-half years later. By letter dated March 12, 2013, it argued that the Sale Order precluded the transfer of Old Carco's Experience Rating to New Chrysler.[14] It also contended that New Chrysler was not a successor under Indiana law and the transfer of the Experience Rating violated the "fresh start" policy of the Bankruptcy Code. Based on its arguments, it sought refunds in connection with the unemployment insurance taxes it paid for the years 2009 through 2012, and requested a tax rate recalculation for 2013. The protest remains pending.

### 4. Illinois

Under Illinois law, "[w]henever any employing unit succeeds to substantially all of the employing enterprises of another employing unit, then in determining contribution rates for any calendar year, the experience rating record of the predecessor prior to the succession shall be transferred to the successor." 820 ILL. COMP. STAT. 405/1507(A). New Chrysler filed a *Report to Determine Succession* on the Closing Date stating that it had acquired 100% of Old Carco's operations, employees, assets and business.[15] Illinois issues an *Annual Contribution Rate*

---

[14] A copy of the March 12, 2013 protest letter is annexed as Exhibit 4 to the *Indiana Objection*.

[15] A copy of the *Report to Determine Succession* is annexed as Exhibit B to the *Objection of Illinois Department of Employment Security to Motion of Chrysler Group LLC for Enforcement of Sale Order [Dkt. No. 3232]*, filed Nov. 21, 2013 and amended Dec. 20, 2013 ("*Illinois Objection*") (ECF Doc. # 8270).

11

*Determination* each year, and has assessed Chrysler the maximum tax rate each for 2009 through 2013 in whole or in part due to Old Carco's Experience Rating.[16] Each *Annual Contribution Rate Determination* advised New Chrysler that if it wanted to protest the determination, it had to file a written protest within 15 days using the pre-printed form that accompanied the *Annual Contribution Rate Determination*.

New Chrysler did not file any protest until January 2013. By letter dated January 31, 2013, New Chrysler raised the same three issues it raised with Indiana—the effect of the "free and clear" provisions of the Sale Order, state law and the Bankruptcy Code's "fresh start" policy—to argue that Illinois incorrectly determined that it was a successor to Old Carco. In addition, New Chrysler sought a refund of the excess unemployment insurance taxes paid during 2009 through 2012 and a recalculation of the 2013 tax rate. This matter remains pending.

**C.    New Chrysler's Motion**

New Chrysler filed the *Motion* seeking a determination that the Sale Order prevented the States from transferring Old Carco's Experience Rating to New Chrysler. It argues that the Experience Rating is an "interest" that was cut off by the "free and clear" provisions of the Sale Order, and the Sale Order prevented the States from treating New Chrysler as Old Carco's successor even if New Chrysler is a successor under each State's law.

The States have raised a host of objections to the *Motion*, including jurisdictional objections (sovereign immunity, lack of bankruptcy jurisdiction under 28 U.S.C. § 1334, the Tax Injunction Act), objections relating to the validity of the Sale Order (lack of consent, lack of

---

[16]    Copies of the *Annual Contribution Rate Determination* for the years 2009 through 2013 are annexed, respectively as Exhibits C through G to the *Illinois Objection*.

adequate protection, the Experience Rating is not an "interest") as well as abstention, laches and collateral estoppel. Because the jurisdictional objection based on the Tax Injunction Act is dispositive, I begin and end there.[17]

## DISCUSSION

The Tax Injunction Act, 28 U.S.C § 1341, provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

The Tax Injunction Act is intended to prevent a federal court from interfering with ordinary procedural requirements imposed under state law and obstructing and avoiding potential damage to a state's budget particularly where the taxpayer faces the risk of insolvency. *United States v. Grace Brethren Church*, 457 U.S. 393, 410 (1982); *see Tully v. Griffin, Inc.*, 429 U.S. 68, 73 (1976) (The Tax Injunction Act "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations.") Although styled as an anti-injunction provision, the Tax Injunction Act also prohibits actions for declaratory relief. *Grace Brethren Church*, 457 U.S. at 408.

While some courts have described it as a rule of abstention, *United Taconite, L.L.C. v. Minnesota (In re Eveleth Mines, L.L.C.)*, 318 B.R. 682, 688 (B.A.P. 8th Cir. 2004), the Tax

---

[17] If I were to reach the other jurisdictional challenges, I would reject them. Sovereign immunity does not bar the *Motion* because the application to enforce the Sale Order is ancillary to the Court's *in rem* jurisdiction to issue the Sale Order. *See Central Virginia Community College v. Katz*, 546 U.S. 356, 371 (2006); *Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 437 B.R. 88, 99 (S.D.N.Y. 2010), aff'd, 448 F. Appx. 134 (2d Cir. 2011). Furthermore, the Court retains bankruptcy jurisdiction under 28 U.S.C. § 1334 to interpret its prior sale order even when the dispute involves non-debtor third parties. *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 229-30 (2d Cir.2002); *Moelis & Co. LLC v. Wilmington Trust FSB (In re Gen. Growth Props., Inc)*, 460 B.R. 592, 598 (Bankr. S.D.N.Y. 2011) ("A bankruptcy court always has jurisdiction to interpret its own orders. It does not matter that the State Court Action is purportedly between two non-debtors . . . .") (internal citations omitted); *Morgan Olson, LLC v. Frederico (In re Grumman Olson Indus., Inc.)*, 445 B.R. 243, 249 (Bankr. S.D.N.Y. 2011), aff'd, 467 B.R. 694 (S.D.N.Y. 2012).

13

Injunction Act deprives the federal court of subject matter jurisdiction. *Arkansas v. Farm Credit Servs. of Cent. Ark.*, 520 U.S. 821, 825 (1997) ("[T]he Tax Injunction Act as a 'jurisdictional rule' and a 'broad jurisdictional barrier.'") (citation omitted); *Grace Brethren Church*, 457 U.S. at 396 (The Tax Injunction Act "deprived the District Court of jurisdiction to hear these challenges."); *Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 737 F.3d 228, 230 (2d Cir. 2013) (Tax Injunction Act deprived District Court of subject matter jurisdiction to hear plaintiff's challenge to Vermont's Electrical Energy Generating Tax); *Baltimore Cty., Maryland v. Hechinger Liquidation Trust* (*In re Hechinger Inv. Co. of Delaware, Inc.*), 335 F.3d 243, 247 n.1 (3d Cir. 2003) (Alito, J.) ("[A] determination that the Tax Injunction Act precludes a suit deprives the federal courts of subject matter jurisdiction over that action.") The burden rests on the party invoking the Court's subject matter jurisdiction to show facts to overcome the jurisdictional bar of the Tax Injunction Act. *Eveleth Mines*, 318 B.R. at 690; *see Chase Manhattan Bank, N.A. v. City & Cty. of San Francisco*, 121 F.3d 557, 560 (9th Cir. 1997) ("[B]ecause Chase has not shown it lacks a plain, speedy and efficient remedy under state law, the district court properly dismissed this suit as barred by the [Tax Injunction Act]."), *cert. denied*, 524 U.S. 945 (1998). Michigan and Indiana raised the Tax Injunction Act as a bar to the *Motion*, and although Illinois did not, an objection to subject matter jurisdiction cannot be waived. *Hechinger*, 335 F.3d at 247 n.1. Accordingly, the same issue applies to each of the States.

It is beyond cavil that the Tax Injunction Act extends to the collection of state unemployment taxes. *See Grace Brethren Church*, 457 U.S. at 411 (Tax Injunction Act deprives federal court of jurisdiction to declare California unemployment tax provision unconstitutional or issue an injunction against state authorities unless the tax payer lacked a "plain, speedy and

14

efficient remedy" in the state courts). In *Victory Markets, Inc. v. N.Y.S. Unemployment Insurance* (*In re Victory Markets, Inc.*), 263 B.R. 9 (Bankr. N.D.N.Y. 2000), the bankruptcy court faced the question squarely, and concluded that the Tax Injunction Act prevented the bankruptcy court from enjoining a state from transferring the debtor's Experience Rating to the purchaser at a bankruptcy sale. *Id.* at 17.

New Chrysler argues that *Victory Markets* is inapposite, citing *In re Tougher Indus., Inc.*, No. 06-12960, 2013 WL 1276501 (Bankr. N.D.N.Y. Mar. 27, 2013) in support. There, the debtor sold its assets "free and clear of all liens, claims, encumbrances and interests, including, but not limited to: . . . (ii) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Assets prior to the Closing." *Id.* at *2. The same bankruptcy court (but a different judge) held that the Tax Injunction Act did not deprive it of jurisdiction to construe the sale order as it related to the transfer of the debtor's Experience Rating because unlike *Victory Markets*, the order in *Tougher* transferred the debtor's assets free and clear of "'any interest in such property' pursuant to a sale under § 363(f)." *Id.* at *6.

New Chrysler also cites *In USA United Fleet Inc.*, 496 B.R. 79 (Bankr. E.D.N.Y. 2013), which relied on *Tougher* (in part) to reject a similar jurisdictional challenge by New York. There, the bankruptcy court concluded that it had jurisdiction to interpret, implement and enforce its own sale order, observed that the Tax Injunction Act was not relevant at the time of the sale, implied that § 363(f) was the type of specific bankruptcy provision that permitted the court to determine the state tax liability of the non-debtor buyer (citing *Hechinger*) and expressed the concern that state's position would allow it to sit out the sale hearing and then use the Tax Injunction Act as a shield to undermine the bankruptcy court's core jurisdiction to interpret its sale order. *Id.* at 84.

With respect, I disagree with *Tougher* and *USA United Fleet*. Neither the merits of the purchaser's position nor the existence of a "free and clear" sale order nor the bankruptcy court's jurisdiction to interpret and enforce its own sale order affect the jurisdictional analysis under the Tax Injunction Act. *United Taconite, L.L.C. v. Minnesota* (*In re Eveleth Mines, L.L.C.*), 318 B.R. 682, 688 (B.A.P. 8th Cir. 2004), is directly on point. There, the debtor was a mining company engaged in the production of taconite. United purchased the debtor's assets, and the sale order provided that United

> shall not assume, and shall be deemed not to have assumed, . . . any taconite production tax attributable to taconite ore or iron sulfides mined by Debtor, to the mining of such taconite ore or iron sulfides by Debtor, or to the iron ore concentrate produced by Debtor that has been or may in the future be assessed by a Taxing authority for any period pursuant [to applicable Minnesota law].

*Id.* at 685.

Similar to the case with Experience Ratings, applicable Minnesota law calculated current taxes by looking back to the prior three-year average of the total production of the facility. *Id.* at 686. Following the sale, the Minnesota taxing authority assessed taxes against United based, in part, on the debtor's three-year average of its total production. *See id.* at 686. United argued that it had purchased the debtor's assets free and clear of any production tax that was based on the debtor's production, and that consequently, Minnesota's formula resulted in an overcharge of $5.4 million during the relevant three-year period. *Id.* at 686-87. United moved before the bankruptcy court to enjoin Minnesota from collecting the tax from United that was calculated in whole or in part based on the debtor's prior operations. *Id.* at 686.

The court agreed that bankruptcy jurisdiction authorized the lower court to interpret its own sale order. *Id.* at 687. Viewing the Tax Injunction Act as a rule of abstention rather than jurisdiction, the court observed, however, that the issue was not whether the bankruptcy court

16

had jurisdiction to enforce the sale order, but whether it should abstain from exercising it in deference to the state tax procedures. *Id.* at 688; *cf. McCrory Corp. v. Ohio*, 212 B.R. 229, 233 (S.D.N.Y. 1997) (collateral effects on the bankruptcy case do not prevent the application of the Tax Injunction Act). Concluding that none of the bankruptcy exceptions to the Tax Injunction Act were applicable, and specifically, Bankruptcy Code § 363(f) did not override the provisions of the Tax Injunction Act,[18] *Eveleth Mines*, 318 B.R. at 688-90, the court held that the relief sought by United would restrain the manner in which Minnesota assessed and collected the taconite production tax, and consequently, was barred by the Tax Injunction Act. *Id.* at 690.

Chrysler responds that the States' invocation of the Tax Injunction Act constitutes a collateral attack on this Court's subject matter jurisdiction to interpret and enforce its own Sale Order (*Chrysler Group LLC's Omnibus Reply in Support of Its Motion for Enforcement of the Court's Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief*, dated Dec. 9, 2013, at ¶ 24 (ECF Doc. # 8528)), and Michigan objected but did not raise jurisdictional issues or the Tax Injunction Act, its objections were consensually resolved and the objection was withdrawn. (*Id.* at ¶ 25.) The Court agrees that it has bankruptcy jurisdiction to interpret and enforce the Sale Order, but the States have

---

[18] A *specific* provision of the Bankruptcy Code that permits the bankruptcy court to adjudicate a state tax claim or enjoin the tax assessment or collection activities by the state is an exception to the jurisdictional bar imposed by the Tax Injunction Act. *Goldberg v. Ellett* (*In re Ellett*), 254 F.3d 1135, 1148 (9th Cir. 2001), *cert. denied*, 534 U.S. 1127 (2002). The *Eveleth* Court catalogued several of these specific provisions, including 11 U.S.C. §§ 362(a), 505(a), 507(a), 523(a)(1), 524, and 1146(c) (now § 1146(a)), but concluded that nothing in § 363(f) contained a specific grant to determine the tax liability of a non-debtor. *Eveleth Mines*, 318 B.R. at 688. As noted, *USA United Fleet* reached the opposite conclusion relying on a quote from *Hechinger* that did not address Bankruptcy Code § 363(f).

raised three jurisdictional hurdles, and bankruptcy jurisdiction is only one. If the States are procedurally barred from arguing their positions because they failed to raise their jurisdictional arguments at the time of the Sale Motion or object to the proposed order, Chrysler can raise this argument in the state administrative or judicial process to the extent Chrysler is not procedurally barred from doing so. But the merit of Chrysler's argument does not affect the Court's conclusion that it lacks jurisdiction to entertain it.

Finally, the sole exception stated in the Tax Injunction Act—the absence of a "plain, speedy and efficient remedy" in state court—does not apply. First, Chrysler does not contend that the States do not provide a "plain, speedy and efficient" remedy, and has, therefore, failed to sustain its burden of proof. Second, the States provide the type of remedies that satisfy the Tax Injunction Act. "On its face, the 'plain, speedy and efficient remedy' exception appears to require a state-court remedy that meets certain minimal *procedural* criteria." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512 (1981). A remedy is "plain, speedy and efficient" if the taxpayer has the right to maintain a suit to recover the tax (if already paid), assert his federal rights and secure review by the Supreme Court. *Rosewell*, 450 U.S. at 513; *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300-30 (1943). The Supreme Court has admonished the lower courts that the exception must be narrowly construed. *Grace Brethren Church*, 457 U.S. at 413; *Amos v. Glynn Cty. Bd. of Tax Assessors*, 347 F.3d 1249, 1255 (11th Cir. 2003); *see Tully*, 429 U.S. at 74 (1976). Moreover, a party's failure to properly invoke the state remedy does not invalidate the remedy's plainness, speediness or efficiency. *Locklear v. Remington*, 77 F. Appx. 594 (3d Cir. 2003) ("The state remedies are not deficient . . . merely because [the taxpayer] failed to use the remedies properly and/or suffered adverse decisions in state court."); *Sacks Bros. Loan Co. v. Cunningham*, 578 F.2d 172 (7th Cir. 1978) ("[T]he application of Section

18

1341 depends on whether a state remedy was at some time available to the taxpayer and the taxpayer's failure to win in state court or to use the remedy properly does not negate the existence of the remedy."); *Aluminum Co. of Am. v. Dep't of Treasury of State of Mich.*, 522 F.2d 1120, 1125 (6th Cir. 1975) ("A number of courts have squarely faced the issue of whether a "plain, speedy and efficient remedy" which has been allowed to lapse satisfies the Tax Injunction Act. These courts have unanimously concluded that failure to utilize a remedy does not render that remedy insufficient under s 1341."); *see Ford Motor Credit Co. v. La. Tax Comm'n*, 440 F.2d 675, 677 (5th Cir. 1971).

In this case, each State's procedure is substantially similar, and involves a three step process: an administrative determination of the contribution rate by the appropriate State agency, *see* MICH. COMP. LAWS §§ 421.21(a)(2), 421.32a(1); IND. CODE §§ 22-4-11.5-7, 22-4-11.5-8; 820 ILL. COMP. STAT. 405/1509; eventually, a hearing before an administrative law judge or a person with similar powers, *see* MICH. COMP. LAWS § 421.33(1); IND. CODE § 22-4-32-1; 820 ILL. COMP. STAT. 405/2200; and ultimately, judicial review. MICH. COMP. LAWS § 421.38; IND. CODE § 22-4-32-9; 820 ILL. COMP. STAT. 405/2205. Although the administrative law judge's findings of fact are accorded substantial weight and in some cases preclusive weight, his conclusions of law are reviewed *de novo*. *See Jenkins v. Unemployment Ins. Agency/Director*, No. 309625, 2013 WL 967782, at *1 (Mich. Ct. App. Mar. 7, 2013 )("We also review *de novo* the interpretation of the meaning of a court order."); *Boulder Acquisition Corp. v. Unemployment Ins. Appeals of Ind. Dep't of Workforce Dev.*, 976 N.E.2d 1282, 1285 (Ind. Ct. App. 2012) ("We apply a *de novo* standard of review to questions of law and will not defer to the LALJ's legal conclusions."); *Cohen Furniture Co. v. State Dept. of Emp't Sec.*, 718 N.E.2d 1058, 1061 (Ill. App. Ct. 1999) ("[A]dministrative agencies are not entitled to such deference on questions of law

which are subject to *de novo* review."). Furthermore, the reviewing court is empowered to authorize the payment of a refund to the employer. *See Seligman & Assocs., Inc. v. Michigan Emp't Sec. Comm'n*, 417 N.W.2d 480, 483 (Mich. Ct. App. 1988); *Boulder Acquisition*, 976 N.E.2d at 1289; *Marco v. Doherty*, 657 N.E.2d 1165, 1168-69 (Ill. App. Ct. 1995). Thus, each State provided a "plain, speedy and efficient remedy" that allowed New Chrysler to argue before a state court that the Sale Order precluded the State from calculating its unemployment insurance tax rate based on Old Carco's Experience Rating and to recover a refund based on an incorrect assessment.

Accordingly, the Court concludes that the Tax Injunction Act deprives it of subject matter jurisdiction to decide the *Motion*. Submit order.

Dated: New York, New York
       February 19, 2014

                                         /s/ *Stuart M. Bernstein*
                                         STUART M. BERNSTEIN
                                         United States Bankruptcy Judge