UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                      :
                                                            :    Chapter 11
OLD CARCO LLC                                               :
(f/k/a CHRYSLER LLC), *et al.*,                             :    Case No. 09-50002 (SMB)
                                                            :
                    Debtors.                                :    (Jointly Administered)
------------------------------------------------------------X

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING INTERPRETATION OF SALE ORDER**

**A P P E A R A N C E S:**

SULLIVAN & CROMWELL LLP
*Counsel for FCA US LLC* (f/k/a Chrysler Group LLC)
125 Broad Street
New York, NY 10004

      Brian D. Glueckstein, Esq.
      Mark S. Geiger, Esq.
          Of Counsel

GREGORY F. ZOELLER
Indiana Attorney General
*Attorney for Indiana Department of Workforce Development*
302 W. Washington Street, IGCS Fifth Floor
Indianapolis, IN 46204

      Maricel E.V. Skiles
      Heather Crockett
      Assistant Attorneys General
          Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

      On or about June 1, 2009, FCA US LLC f/k/a Chrysler Group ("New Chrysler")

purchased substantially all of the assets of the debtors (collectively, "Old Chrysler"). The terms

of the sale are embodied in the *Sale Order*[1] and the relevant agreements. The question before the

---
[1]     *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Lines, Claims, Interest and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory*

Court is whether the *Sale Order* prohibits Indiana[2] from using Old Chrysler's Experience Rating, a historical figure used to calculate an employer's unemployment insurance tax rate, to determine New Chrysler's tax liability.[3] The Court previously ruled that the *Sale Order* barred Indiana from using Old Chrysler's Experience Rating unless the "police and regulatory" exception located in paragraph 23 of the *Sale Order* negated the prohibition. *In re Old Carco LLC*, 538 B.R. 674, 677 (Bankr. S.D.N.Y. 2015) ("*Chrysler II*"). The Court concluded that paragraph 23 was ambiguous and ordered a trial to determine the parties' intent. *Id*.

The Court conducted a trial on April 15, 2016. It heard the testimony of two witnesses and received several documents in evidence. Following the trial, it also received post-trial briefing from Indiana[4] and New Chrysler.[5] For the reasons that follow, the Court concludes that paragraph 23 of the *Sale Order* does not provide an exception to the free and clear provisions of

---

*Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief*, dated June 1, 2009 ("*Sale Order*") (ECF Doc. # 3232).

[2]    Michigan and Illinois were also parties to this litigation in the past, but have settled with New Chrysler.

[3]    *Motion for Enforcement of the Court's Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Lines, Claims, Interest and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief*, dated Oct. 18, 2013 (ECF Doc. # 8218).

[4]    *See Post-Trial Brief in Support of Indiana Department of Workforce Development's Position on Chrysler Group LLC's Motion for Enforcement of the Court's Order (I) Authorizing the Sale of* Substantially *All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief*, filed Apr. 29, 2016 ("*Indiana Post-Trial Brief*") (ECF Doc. # 8472). Indiana's post-trial materials also included factual submissions that were not offered at trial. The Court has not considered these submissions because they go outside the trial record.

[5]    *See Post-Trial Brief Of FCA US LLC in Further Support of Its Motion For Enforcement of the Court's Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests And Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases In Connection Therewith And Related Procedures and (III) Granting Related Relief*, dated Apr. 29, 2016 (ECF Doc. # 8471).

the *Sale Order*, and the *Sale Order*, therefore, bars Indiana from using Old Chrysler's Experience Rating to calculate New Chrysler's unemployment insurance tax rate.

## BACKGROUND

The factual and legal background to this dispute is set forth in the Court's prior decisions, *In re Old Carco LLC*, 505 B.R. 151 (Bankr. S.D.N.Y. 2014) ("*Chrysler I*"), *rev'd and remanded*, 14-CV-2225 (JMF), 2014 WL 6790781 (S.D.N.Y. Dec. 1, 2014) and *Chrysler II*, 538 B.R. at 677. Briefly, Old Chrysler sold substantially all of its assets to New Chrysler pursuant to the June 1, 2009 *Sale Order* and the parties' Master Transaction Agreement, as amended. The *Sale Order* included numerous provisions to the effect that the sale was free and clear of claims and interests and exonerated New Chrysler from successor liability. Paragraph 23 of the *Sale Order*, however, contained an exception to the free and clear/successor liability provisions:

> Nothing in this Sale Order or in the Purchase Agreement releases, nullifies or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Sale Order.

(*Sale Order* at ¶ 23.)

Shortly after the sale, New Chrysler succeeded to Old Chrysler's operations in several states, including Indiana. As an employer, New Chrysler was obligated to pay unemployment insurance taxes. Its tax rate was determined based on Old Chrysler's claims paying experience, *i.e.*, its Experience Rating. In a motion filed in October 2013 (the "*Enforcement Motion*"), New Chrysler contended that the use of Old Chrysler's Experience Rating violated the free and clear/successor liability provisions of the *Sale Order*. In *Chrysler II,* the Court agreed, unless paragraph 23 provided an exception that allowed Indiana to use Old Chrysler's Experience Rating. The trial followed.

The Court received the written declaration of Andrew Dietderich, Esq.[6] as his direct testimony without objection. (Tr. at 4:12-16.)[7] Dietderich, a partner at Sullivan & Cromwell LLP, served (with other S & C partners) as lead counsel to New Chrysler in connection with the sale and had the primary responsibility on behalf of New Chrysler with respect to the *Sale Order*. (*Dietderich Declaration* at ¶ 1.) One of his "top priorities" was to ensure that New Chrysler preserved the broadest protections available to prevent exposure to liabilities arising from the actions of Old Chrysler. (*Id.* at ¶ 8.)

The police and regulatory exception in paragraph 23 did not appear in the draft order submitted with the sale motion, but was subsequently requested by the United States Department of Justice ("DOJ"). (*Id.* at ¶ 10; *see* FCA 2 at FCA-UI-00000006 (email sent on May 29, 2009 at 4:08 p.m.).) Douglas Mintz, Esq., an attorney at Cadwalader Wickersham & Taft LLP, which represented the United States Treasury, (*see* Tr. at 11:8-11), advised Old Chrysler's counsel that the DOJ sought to include the language that would eventually become paragraph 23 in the *Sale Order*. (FCA 2 at FCA-UI-00000006 (email sent on May 29, 2009 at 4:08 p.m.).)[8] The suggested language read:

> ORDERED that nothing in this Order or in the Sale Agreement (i) releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statues [*sic*] or regulations that any entity would be subject to as an owner or operator of property after the date of entry of this Order, or (ii) should be construed to give the Purchaser any more protection against any government unit than it is otherwise entitled.

---

[6]   *Declaration of Andrew G. Dietderich in Support of FCA's Motion to Enforce the Sale Order*, dated Apr. 8, 2016 ("*Dietderich Declaration*") (ECF Doc. # 8462).

[7]   "Tr." refers to the transcript of the trial conducted on April 15, 2016. (ECF Doc. # 8469.)

[8]   "FCA __" refers to New Chrysler's exhibits that were admitted into evidence at trial.

Dietderich objected to the language in (ii) but consented to the language in (i). (*Id.* at FCA-UI-00000005 (email sent on May 30, 2009 at 1:09 p.m.).) Tara La Morte, an Assistant United States Attorney, agreed to the deletion of (ii). (*Id.* at FCA-UI-00000003 (email sent on May 30, 2009 at 1:52 p.m.).) The remainder of the emails related to modification of language in an unrelated provision in the *Sale Order* dealing with New Chrysler's obligations under the National Traffic and Motor Vehicle Safety Act. (*Id.* (email sent on May 30, 2009 at 2:24 p.m.).) There was no follow-up conversation and no other communication regarding what became paragraph 23. (*Id.* at ¶ 11; Tr. at 11:2-6.)

Dietderich understood the police and regulatory exception to encompass the types of liabilities imposed on an "owner or operator" under CERCLA and other environmental or similar statutes for acts or omissions that occurred pre-closing. (*Id.* at ¶ 16.) It did not otherwise limit the protections of section 363(f) of the Bankruptcy Code or the injunction against the imposition of unassumed liabilities owed to governmental, tax or regulatory authorities. (*Id.* at ¶ 17.) Furthermore, the DOJ did not mention state unemployment taxes or experience ratings in the context of the added language, (*id.* at ¶ 15), and Dietderich would not have agreed to language that expanded New Chrysler's post-closing liabilities beyond its status as owner or operator of Old Chrysler's property. (*Id.* at ¶ 19.)

On cross-examination, Dietderich reiterated his understanding of paragraph 23. The issue of the police and regulatory exception often arises in bankruptcy sales transactions, and CERCLA is the best example but not the only example. Instead, the police and regulatory exception applies to current conditions on the property that require remediation by the owner or operator regardless of who is responsible for the condition or when it arose. (Tr. at 9:14-21.)

5

"[I]t's things like that where the liability exists because of a condition, and the liability is then tagged to the owner or the operator. That's what I had in mind." (*Id.* at 10:2-5.)

Jeannette Vargas, an Assistant United States Attorney, and lead counsel for the DOJ in the chapter 11 case, (*id.* at 16:21-23), also testified regarding her reason for insisting on the inclusion of paragraph 23. The language is a "standard carve-out" or "standard fix" inserted into sale orders in any major chapter 11 case. (*Id.* at 17:21-25.) It is intended to ensure that a purchaser of property in a bankruptcy sale must still comply with applicable rules and regulations even if the basis for the purchaser's obligation or liability arose from conduct prior to the sale. (*Id.* at 18:10-19.) The carve-out was not limited to environmental laws such as CERCLA and also covered other laws, such as the Americans with Disabilities Act (the "ADA"), the Fair Housing Act, land use restrictions and Title VII. Purchasers of property in a bankruptcy sale could not ignore rules and regulations that apply to property owners and operators merely because their bankrupt sellers had. (*Id.* at 18:20-19:12.)

An example she gave illustrated her reason for requesting the clause. If the ADA required an owner or operator of property to install a ramp, the purchaser of the property free and clear of existing claims and interests had to comply with the ADA requirement even if the seller hadn't. (*Id.* at 18:24-19:3.) The provision addressed common sense safety issues: "It's essentially a safety provision to ensure that it is clear, which should be evidence [*sic*] anywhere, that just because you purchased your property through a bankruptcy proceeding, you now get to ignore applicable rules and regulations that apply to you as owner." (*Id.* at 19:4-8.)

On cross-examination, Vargas added that the language was not intended to implicate "run of the mill" successor liability issues. (*Id.* at 27:13-21.) "It's intended to make sure that people

6

don't think that they can violate the law, create a public hazard, violate public safety, or do any number of things simply because they purchased property in bankruptcy." (*Id.* at 28:9-12.) This was the consistent view of the DOJ in other chapter 11 cases, (*id.* at 23:14-25, 24:1-5), but to the best of her knowledge, this understanding was not communicated directly to counsel for New Chrysler. (*Id.* at 21:18-22:16.) Finally, Vargas stated that it was her view that even if New Chrysler had exited the automobile business or closed down the plants it had purchased from Old Chrysler it could still be liable under paragraph 23. (*Id.* at 27:23-28:12.)[9]

## DISCUSSION

In *Chrysler II*, the Court ruled that the *Sale Order* should be construed in accordance with the New York rules governing the interpretation of contracts. *Chrysler II*, 538 B.R. at 681. The goal of contract interpretation is to effectuate the intent of the parties as manifested by the language used in the contract. *Steiner v. Lewmar, Inc.*, 816 F.3d 26, 34 (2d Cir. 2016); *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 598 (2d Cir. 2005). Because paragraph 23 is ambiguous, *Chrysler II*, 538 B.R. at 692, the Court ordered the trial to receive extrinsic evidence of the parties' intent.

When considering extrinsic evidence, courts generally limit their inquiry to objective manifestations of intent. *Maverick Tube Corp.*, 595 F.3d at 467 ("As a general matter, the objective of contract interpretation is to give effect to the *expressed* intentions of the parties.") (emphasis in original); *see Chesapeake Energy Corp. v. Bank of New York Mellon Trust Co.*,

---

[9]    The trial transcript, at 27:24, misstates the identity of the questioner. The Court, not Mr. Glueckstein, posed the hypothetical to Vargas about whether paragraph 23 would continue to obligate New Chrysler even if it discontinued Old Chrysler's automobile business or shut down Old Chrysler's plants.

7

*N.A.*, 957 F. Supp. 2d 316, 341 (S.D.N.Y. 2013) ("*Chesapeake I*"), *rev'd on other grounds and remanded,* 773 F.3d 110 (2d Cir. 2014). "[W]here a contract is ambiguous and one or both parties to the contract seek to introduce their own unexpressed subjective intentions, courts will not rely on such evidence to resolve that ambiguity." *Chesapeake I*, 957 F. Supp. 2d at 341 n. 24 (collecting cases). In "rare" instances, however, where "both parties in a contract dispute have a contemporaneous understanding that, although unexpressed, is harmonious, that understanding may inform the meaning of an ambiguous contract." *Id.*; *accord Baladevon, Inc. v. Abbott Labs., Inc.*, 871 F. Supp. 89, 98-99 (D. Mass. 1994) (construing Massachusetts law) ("[T]he Court concludes that the undisputed evidence as to both the contracting parties' subjective intent controls the interpretation of the ambiguous contract terms."); RESTATEMENT (SECOND) OF CONTRACTS § 201(1) ("Where the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning."); E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 7.9 (3d ed. 2004) (where parties share a common meaning, prevailing view is that their subjective understanding controls).

The Court is presented with such a case. A police and regulatory exception limited to "owners or operators" is a phrase of art commonly used and well understood by experienced bankruptcy professionals involved in sales transactions. Although the attorneys representing New Chrysler and the DOJ did not discuss the meaning of paragraph 23, they shared a common understanding of its self-evident purpose; a buyer of property under a "free and clear" sale order cannot escape the responsibility to remediate a condition that violates safety or similar laws even if the condition pre-existed the sale. Dietderich, an experienced bankruptcy transaction lawyer, used the example of CERCLA. The seller may have contaminated the property, but the buyer is still responsible for cleaning it up, and the "free and clear" language does not free the buyer from

8

that obligation. Vargas, also an experienced bankruptcy lawyer, agreed and provided the example of property acquired through a sale that does not comply with the ADA because it does not have a ramp. The buyer must build the ramp notwithstanding a "free and clear" sale order. Given their mutual understanding of a commonly used phrase, it is not surprising that they included it in the *Sale Order* without discussion.[10]

Indiana's interpretation of paragraph 23 ignores critical limiting language. Paragraph 23 does not exempt all police and regulatory statutes and regulations. It exempts only those "police and regulatory statutes or regulations that any entity would be subject to as the *owner or operator* of property after the date of entry of this Sale Order." (Emphasis added.) The limitation is consistent with its purpose – to ensure the remediation of unsafe or non-compliant pre-existing conditions on physical property acquired through a bankruptcy sale.[11]

---

[10]    Neither Dietderich nor Vargas discussed or understood paragraph 23 to permit a governmental unit to impose Old Chrysler's Experience Rating on New Chrysler.

[11]    Indiana's post-trial submission appears to argue that the Court should consider New Chrysler's post-sale conduct in interpreting paragraph 23. Specifically, New Chrysler applied for successorship status in 2009, obtained the benefits of that status and did not raise the *Sale Order* until 2013. (*Indiana Post-Trial Brief* at 5.) While Indiana has discussed New Chrysler's post-sale conduct in the context of an historical discussion, it did not argue in its pre-trial submissions following remand that the post-sale conduct was relevant to the interpretation of the *Sale Order* generally or paragraph 23 in particular. (*See Supplemental Memorandum in Further Support of Indiana Department of Workforce Development's Objection to Chrysler Group LLC's Motion for Enforcement of the Court's Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests And Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief*, filed Jan. 30, 2015 (ECF Doc. # 8367); *Trial Brief in Support of Indiana Department of Workforce Development's Position on Chrysler Group LLC's Motion for Enforcement of the Court's Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief*, filed Apr. 13, 2016 (ECF Doc. # 8466).) In addition, Indiana did not submit evidence of New Chrysler's post-sale conduct at trial or question Dietderich as to why New Chrysler did not raise the *Sale Order* until 2013 if it believed in 2009 that it prohibited the use of Old Chrysler's Experience Rating. Accordingly, the Court considers the argument to have been waived as to the interpretation of the *Sale Order*.

9

The transfer of Old Chrysler's Experience Rating does not arise from the unsafe or non-compliant physical condition of Old Chrysler's property; it arises from New Chrysler's status as a "successor employer." While the acquisition of substantially all of the seller's assets is one way that a buyer may become a successor employer under Indiana law, *see* IND. CODE §§ 22-4-7-2(a), 22-4-10-6(a)(2), it is not the only way. The buyer can also become a successor employer merely by acquiring the seller's organization, trade or business without acquiring substantially all its assets. *See id.*, § 22-4-10-6(a)(2), (3) ([W]hen . . . . an employer acquires the organization, trade, or business, or substantially all the assets of another employer; or . . . an employer transfers all or a portion of the employer's trade or business (including the employer's workforce) to another employer as described in IC 22-4-11.5-7 . . . the successor employer shall…assume the position of the predecessor with respect to all the resources and liabilities of the predecessor's experience account. . . .").

Two examples illustrate this distinction. If New Chrysler had acquired Old Chrysler's business but not its manufacturing facilities, and instead, built or used its own manufacturing facilities, it would still be a successor employer under Indiana law but not be an "owner or operator" responsible for remediating Old Chrysler's property. Conversely, if it acquired Old Chrysler's assets but shut down the business, it would not be a successor employer but would be responsible for remediating unsafe or non-compliant conditions as an "owner or operator" of Old Chrysler's property.

Finally, the discussion in Indiana's post-trial memo that the Indiana unemployment tax statutes and regulations were enacted pursuant to the state's police and regulatory powers misses the point. The Court is charged with interpreting the *Sale Order* under the usual rules that govern the interpretation of contracts, a point Indiana concedes. (*Indiana Post-Trial Brief* at 2

10

("The interpretation of paragraph 23 of the *Sale Order* is rooted in contract law.") "[T]he mutual understanding of the parties prevails even where the contractual term has been defined differently by statute or administrative regulation." RESTATEMENT (SECOND) OF CONTRACTS § 201, cmt. c. New Chrysler and the DOJ shared a mutual understanding of the purpose that the language of paragraph 23 was intended to accomplish. There is no evidence that they selected the "police and regulatory" phrase with Indiana's laws in mind.

Accordingly, the Court concludes that paragraph 23 is not an exception to the *Sale Order* that permits Indiana to transfer Old Chrysler's Experience Rating to New Chrysler, and for the reasons explained in *Chrysler II*, the use of Old Chrysler's Experience Rating therefore violated the successor liability/free and clear provisions of the *Sale Order*. This does not, however, end the matter. When this dispute was returned to this Court following the remand from the District Court, I decided to initially address the meaning of the *Sale Order* and leave any other issues for another day.

The Court has now decided the meaning of the *Sale Order*, but Indiana has raised other issues that must also be decided before this dispute can finally be put to rest.[12] It is possible that some or all of these issues were decided or subsumed within the prior decisions of this Court and the District Court. To resolve the dispute, the Court directs Indiana, in the first instance, to identify by letter to the Court and New Chrysler within seven days of the date of this decision the issues that remain undecided in connection with *Enforcement Motion*. New Chrysler should

---

[12] *See Objection to Chrysler Group LLC's Motion for Enforcement of the Court's Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief*, filed Dec. 20, 2013 (ECF Doc. # 8267.)

11

respond within seven days of the receipt of Indiana's letter whether it agrees that an issue remains undecided or explain when, where and how it was decided. Upon receipt of these submissions, the Court may decide the balance of the *Enforcement Motion* on the existing papers or schedule further proceedings.

The foregoing constitutes the Court's findings of fact and conclusions of law.

So Ordered.

Dated: New York, New York
       May 4, 2016

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge