## Exhibit B

## Michigan Decision

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITIZENS INSURANCE COMPANY
OF AMERICA,

        Plaintiff,

        v.

FCA US LLC and COREPOINTE INSURANCE
COMPANY (f/k/a CHRYSLER INSURANCE
COMPANY),

        Defendants.

_____/

Case No. 15-14393
HON. TERRENCE G. BERG

**OPINION AND ORDER DENYING WITHOUT PREJUDICE
DEFENDANT FCA US LLC'S MOTION TO DISMISS (DKT. 4)
AND TRANSFERRING CASE TO THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

Plaintiff Citizens Insurance Company of America is suing Defendants[1] to try

to recover the no-fault insurance benefits it was assigned to pay in 2009 to the

victim of an auto accident. (Dkt. 1-2, pp. 6-15.) Defendant FCA US LLC ("FCA")

removed this case to federal court on December 18, 2015[2] (Dkt. 1), and filed a

---

[1] The docket indicates that there are three defendants in this matter: FCA US LLC, Corepointe
Insurance Company ("Corepointe"), and Chrysler Insurance Company. Defendants Corepointe and
Chrysler, however, are in fact the same entity. (*See* Dkt. 1, p. 1; Dkt. 1-2, ¶ 2). Defendant Corepointe
was formerly known as Chrysler Insurance Company, having changed its name in 2011. (Dkt. 1-2, ¶
47.) Consequentially, the Court has corrected the caption and will refer only to Defendant Corepointe
in this opinion. The Clerk of Court will be directed to correct the docket accordingly.

[2] Under the unanimity rule, the consent of all defendants is required before an action is removed. 28
U.S.C. § 1446(b)(2)(A); *Loftis v. UPS, Inc.*, 342 F.3d 509, 516 (6th Cir. 2003). However, it appears
that Defendant Corepointe has not joined in the removal of this case. Defendant FCA, the removing
party, filed the motion to dismiss and its counsel appeared at the hearing in this matter, but no
lawyer has appeared on behalf of the remaining defendant. Because no party has raised this issue,
however, it is waived. See 28 U.S.C. § 1447(c); *see also Page v. City of Southfield*, 45 F.3d 128, 133
(6th Cir. 1995) ("technical defects in the removal procedure, such as a breach of the rule of

motion to dismiss Plaintiff's complaint on January 12, 2016 pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 4). In its motion to dismiss, Defendant FCA argues that the sale order entered by the United States Bankruptcy Court for the Southern District of New York—allowing the sale of Chrysler Motors' assets to Defendant FCA "free and clear" of successor liability claims—bars Plaintiff's claims against it in this case. (Dkt. 4, pp. 14-15.)

Defendant FCA's motion to dismiss was fully briefed as of February 12, 2016. (*See* dkts. 4, 8, 9.) A hearing on the motion was held on April 25, 2016 in Detroit, Michigan.[3] (Dkt. 14.) Only Plaintiff and Defendant FCA appeared. At the hearing, the parties were given the opportunity to be heard on the issue of whether this case should be transferred to the United States District Court for the Southern District of New York. No party objected to transferring this case, and both agreed that the bankruptcy court had retained jurisdiction over its sale order. The parties also

---

unanimity, may not be raised sua sponte, and must be raised by a party within thirty days of removal or they are waived").

[3] Plaintiff and Defendant FCA were represented at the hearing. Defendant Corepointe failed to appear. No attorney for Defendant Corepointe has made an appearance in this matter or responded to any motion. At the hearing, counsel for Defendant FCA explained that Defendant FCA was not related to Defendant Corepointe and speculated that Defendant Corepointe had not appeared because it was not involved in the Chrysler bankruptcy, but no attorney could explain why Defendant Corepointe had not entered an appearance or responded to any motion. Because the Court will transfer this case and thus be divested of subject matter jurisdiction over it, and because there is no reason to also transfer the claims against Defendant Corepointe, the state law claim for reimbursement (Count I) against Defendant Corepointe will be remanded to the Wayne County Circuit Court in Michigan where, prior to removal, Plaintiff's case against them had been pending since 2014. *See Citizens Insurance Co. of America v. Corepointe Insurance Co. et al.*, Wayne Co. Cir. Ct. Case No. 14-016005. Defendant Corepointe did not join in in Defendant FCA's petition for removal, has not filed an appearance, and has not responded to any motions; therefore remand of the claims against it (Count I) is appropriate.

presented their arguments on the allegations raised in Plaintiff's proposed sur-reply.[4]

For the reasons stated below, Defendant FCA's motion will be **DENIED WITHOUT PREJUDICE**, and the claims against it (Count II) will be **SEVERED** from those against Defendant Corepointe and **TRANSFERRED** pursuant to 28 U.S.C. § 1412 and Federal Rule of Bankruptcy Procedure 1014(a) to the United States District Court for the Southern District of New York for referral to the bankruptcy court of that District. Finally, Plaintiff's state law claims (Count I) against Defendant Corepointe will be **REMANDED** pursuant to 28 U.S.C. § 1334(c)(1) to the Wayne County Circuit Court for further proceedings.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In 1983, Ruth Russell was injured in a car accident and her no-fault benefits (the "Russell benefits") were initially paid by American Motors Corporation. (Dkt. 1-2, p. 7, ¶¶ 5-6.) Chrysler Motors[5] subsequently bought American Motors Corporation in 1987 and assumed responsibility for paying the Russell benefits. (*Id.* at ¶¶ 6, 24.) When Chrysler Motors declared bankruptcy in 2009, payment of the

---

[4] On March 21, 2016, Plaintiff filed a sur-reply (Dkt. 11) to Defendant FCA's motion to dismiss. The sur-reply was stricken on March 22, 2016 because it was filed without leave of court. On March 28, 2016, Plaintiff filed a motion for leave to file a sur-reply (Dkt. 13) and Defendant FCA objected by filing a response two days later (Dkt. 14). Because Defendant FCA's reply raised no new arguments that might have justified a sur-reply, and because Plaintiff's motion appeared to rest on arguments peripheral to the question of the effect that the bankruptcy court sales order has on Plaintiff's claims, Plaintiff's motion for leave to file a sur-reply was denied by text-only order on April 4, 2016. Plaintiff sought reconsideration of that denial order on April 19, 2016, only a few business days before the hearing in this matter. (Dkt. 15.) Accordingly, the Court denied Plaintiff's motion, but stated in its order that the parties would be allowed to address the issues presented in Plaintiff's proposed sur-reply on the record at the hearing. (Dkt. 16.) The parties did so, and the Court will take these arguments into account in determining the outcome of Defendant FCA's motion to dismiss.

[5] According to Defendant FCA, Chrysler Motors includes the Chrysler Corporation (1925-1998), Daimler-Chrysler AG (1998-2007), and Chrysler LLC (2007-2009) or Old Carco Liquidation Trust.

Russell benefits was assigned to Plaintiff by the Michigan Assigned Claims Plan

pursuant to MCL § 500.3172(1). (*Id.* at ¶ 7.) Plaintiff alleges that the Russell

benefits were assigned to Plaintiff on June 17, 2009 because Ruth Russell received a

letter dated June 17, 2009 from the Michigan Secretary of State informing her of

the assignment decision. (Dkt. 8-2, p. 2.) Since the assignment, Plaintiff has paid

benefits to Russell arising out of the 1983 car accident. (Dkt. 1-2, p. 8, ¶ 10.)

## A. The Chrysler Bankruptcy and Sale Order

On April 30, 2009, Chrysler Motors filed for bankruptcy protection in the

United States Bankruptcy Court for the Southern District of New York, Case No.

09-50002. As part of the bankruptcy proceeding, Chrysler Motors entered into a

purchase agreement with Defendant FCA and Chrysler Group (the "purchasers")

that provided that Chrysler Motors would sell substantially all of its operating

assets to the purchasers. (*See* dkt. 4-2.) The bankruptcy court issued a sale order on

June 1, 2009, closing on June 10, 2009, that approved the purchase agreement and

held that "[a]s of the closing of the Sale Transaction," the purchasers were vested

with all right, title and interest in and to the purchased assets, "free and clear of all

Claims other than Assumed Liabilities."[6] (*Id.* at ¶ GG.)

The bankruptcy court also ordered that, except for the Assumed Liabilities,

the purchasers would have no liability for any claim "that (a) arose prior to the

---

[6] Under the terms of the sale order, Defendant FCA voluntarily assumed liability for only three
kinds of claims: (1) repair warranty for the repair and/or replacement of parts under warranties that
accompanied the purchase of new vehicles or when acquired under extended warranties, (2) Lemon
Law claims for vehicles manufactured by Chrysler Motors in the five years prior to June 10, 2009,
the closing date of the sale, and (3) product liability arising from accidents. *In re Old Carco LLC*, 492
B.R. 392, 396-98 (Bankr. S.D.N.Y. 2013).

Closing Date," and would not be deemed to be "a legal successor, or otherwise be

deemed a successor to the Debtors" as a result of any action taken in connection

with the purchase agreement. (*Id.* at p. 40, ¶ 35.) Moreover, the bankruptcy court

ordered that, with the exception of the Assumed Liabilities:

> [t]he Purchaser shall not have any successor, derivative or vicarious liabilities of any kind or character for any Claims, including, but not limited to, on any theory of successor or transferee liability, *de facto* merger or continuity, environmental, labor and employment, products or antitrust liability, whether known or unknown as of the Closing now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

(*Id.* at pp. 40-41, ¶ 35.) The bankruptcy court expressly retained jurisdiction to

resolve all matters relating to the implementation, enforcement, and interpretation

of its sale order in the sale order itself (*Id.* at p. 49, ¶ 59) and in paragraph 9 of its

final decree of the bankruptcy case issued on July 29, 2015.

## B. Defendant FCA's Removal of this Case and Motion to Dismiss

On December 17, 2014, Plaintiff filed a lawsuit in Wayne County Circuit

Court against Defendant Corepointe Insurance Company (f/k/a Chrysler Insurance

Company) ("Corepointe") asking for reimbursement of the no-fault benefits Plaintiff

has paid to Russell. (Dkt. 8, p. 8.) Plaintiff filed an amended complaint in state

court adding Defendant FCA on November 16, 2015. (*Id.*) Defendant FCA then

timely removed the case to this Court on December 18, 2015. (Dkt. 1.)

In its amended complaint, Plaintiff alleges that Defendant Corepointe "has

been assigned to handle claims on behalf of Chrysler Motors subsequent to Chrysler

Motors' bankruptcy." (Dkt. 1-2, ¶ 9.) Moreover, Defendant FCA "has been assigned

and/or assumed liabilities for its predecessor in interest, Chrysler Holding, LLC".
(*Id.* at ¶ 19.) Plaintiff claims that "upon exiting bankruptcy, FCA, then known as
Chrysler Holding, became liable for payment of no-fault benefits to or on behalf of
Ruth Russell as a result of the 1983 motor vehicle accident, due to Chrysler's
acquisition of AMC." (*Id.* at ¶ 49.) As "a successor in interest to Chrysler Holding,"
Plaintiff alleges that Defendant FCA "is statutorily obligated to reimburse Plaintiff"
for its administration and payment of the Russell benefits. (*Id.* at ¶ 59.)

Defendant FCA filed a motion to dismiss Plaintiff's Complaint pursuant to
Federal Rule of Civil Procedure 12(b) on January 12, 2016. (Dkt. 4.) Defendant FCA
argues that the sale order issued by the bankruptcy court on June 1, 2009 bars
Plaintiff's claims. (*Id.* at 13-14.) According to Defendant FCA, Plaintiff cannot
impute Chrysler Motors' liability to Defendant FCA in light of "the explicit language
of the Sale Order and the subsequent applications of the language by the
Bankruptcy Court to dismiss similar claims" (*Id.* at 14.)

Plaintiff responded on February 3, 2016, arguing that it has an independent
right of recovery under Michigan's No-Fault Act, and that the sale order does not
bar its claims because it was not assigned the Russell benefits until June 17, 2009 –
after the sale order was issued by the bankruptcy court – and because this is not a
tort action but rather a statutory action for reimbursement and indemnification.
(Dkt. 8, pp. 11-12.) In its reply brief, Defendant FCA asserts that it is only
responsible for the liabilities it purchased or was assigned with it acquired Old
Carco's assets and these liabilities do not include tort or insurance liabilities. (Dkt.

9, p. 1.) Accordingly, Defendant FCA contends that the fact that Plaintiff was assigned the Russell benefits after the sale order makes no difference. (*Id.*)

Over a month after Defendant FCA's motion was fully briefed, Plaintiff filed a sur-reply without leave of court. (*See* dkts. 9, 11.) As a result, the Court struck Plaintiff's sur-reply and subsequently denied leave. (Dkts. 12, 13, 16.) The Court, however, permitted both parties to address the arguments presented in Plaintiff's proposed sur-reply on the record at the hearing held in this matter on April 25, 2016. In those arguments, Plaintiff alleges that there was an ultra vires transfer of $17 million from Chrysler Motors to Chrysler Insurance Company (n/k/a Defendant Corepointe Insurance Company), a subsidiary, on or about May 7, 2009. On or about that date, Plaintiff asserts that Chrysler Motors obligated Chrysler Insurance Company to assume paying on any outstanding policy claims related to its employee company cars, policy claims that would have included the Russell benefits, and the $17 million created a reserve fund to offset the payment of those claims. The alleged transfer, according to Plaintiff, was not approved by the bankruptcy court or considered in the sale order. Defendant FCA contests this theory, and argues that the $17 million was defaulted through the bankruptcy, not transferred.

## II. DISCUSSION

Defendant FCA's position is that the sale order approved by the bankruptcy court bars the claims against it in this case because these claims are based on a theory of successor liability. Plaintiff contests this point, and alleges that an ultra vires transfer between Chrysler Motors and the subsidiary insurance company now

09-50002-mg   Doc 8490-2   Filed 08/26/16   Entered 08/26/16 17:39:55   Exhibit B -
4:15-cv-14393-TGB-MJH   Doc 28   Filed 05/11/20   Pg 8 of 19   Pg ID 736
Michigan Decision   Pg 9 of 20

known as Defendant Corepointe occurred during the bankruptcy proceeding. Because the threshold question in this case would require the Court to interpret and enforce a sale order over which the bankruptcy court has expressly retained jurisdiction, the Court will transfer this case to the Southern District of New York for referral to the bankruptcy court of that District.

At the hearing, the Court asked whether the parties had any objection to transferring this case. Plaintiff had no objection. Defendant FCA, while not objecting to such a transfer, noted that a transfer was unnecessary because it believed the issue was decided *Wolff v. Chrysler Group LLC (In re Old Carco LLC )*, 2010 Bankr. LEXIS 6320, (Bankr. S.D.N.Y. July 30, 2010). In *Wolff*, the bankruptcy court rejected the plaintiff's argument that a 2007 signed but unenforced draft settlement agreement between the plaintiff and Chrysler Motors survived the 2009 sale order. *See id.* at * 20-44. According to Defendant FCA, *Wolff* establishes that only certain assumed liabilities survived the asset sale, and Plaintiff's claims are not one of those assumed liabilities. (Dkt. 9, p. 2.)

Plaintiff maintains that this matter is distinguishable. According to Plaintiff, the sale order addresses the type of liability at issue in *Wolff* but does not address the type of liability at issue here – Plaintiff is asserting a statutory right to reimbursement. (*See* dkt. 8, pp. 9, 11-12.) Moreover, Plaintiff's cause of action, unlike that of the *Wolff* plaintiff, allegedly did not accrue until after the sale order had been approved and the sale itself had closed. (*Id.* at 12.) Finally, Plaintiff has also raised the question of whether there was an ultra vires transfer of $17 million

during the bankruptcy that the sale order did not address and the bankruptcy plan
did not approve. Because *Wolff* is arguably distinguishable, the Court will consider
whether to transfer this case rather than reach the merits of Defendant FCA's
motion to dismiss.

## A. Jurisdiction Under 28 U.S.C. § 1334

Before it can transfer a case, this Court must determine whether it has
subject matter jurisdiction. Defendant FCA removed this case to this Court on the
basis that it is sufficiently connected to the Chrysler bankruptcy case to create
federal jurisdiction under 28 U.S.C. § 1334(b) and thus removal is permitted under
28 U.S.C. § 1452(a). Under § 1334(b), the federal district courts "shall have original
but not exclusive jurisdiction of all civil proceedings arising under title 11, or
arising in or related to cases under title 11." Pursuant to § 1452(a), a party may
remove a case to the district court for the district where the action is pending if
proper jurisdiction exists under § 1334.

Defendant FCA asserts that federal jurisdiction exists under § 1334(b)
because this action constitutes a "core proceeding" that "arises under, arises in, and
is related to" the Chrysler bankruptcy. (Dkt. 1, ¶¶ 16-27.) According to Defendant
FCA, this action is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(N) because
it involves interpreting and enforcing the sale order, an order "approving the sale of
property". (*Id.* at ¶ 27.) Plaintiff does not challenge these assertions.

Whether a proceeding is "core" or "non-core" depends on whether it "arises
under" title 11, "arises in" a title 11 case, or is "related to" a title 11 case.

Proceedings that "arise under" title 11 or "arise in" a title 11 case are deemed "core."

Proceedings that are merely "related to" a title 11 case are deemed "non-core."

*Amedisys, Inc. v. Nat'l Century Fin. Enters., Inc. (In re Nat'l Century Fin. Enters.,*

*Inc.),* 423 F.3d 567, 574 (6th Cir. 2005). The distinction between these different

types of proceedings has been established by the Sixth Circuit as follows:

> The phrase "arising under title 11" describes those proceedings that involve a
> cause of action created or determined by a statutory provision of title 11, and
> "arising in" proceedings are those that, by their very nature, could arise only
> in bankruptcy cases. Conversely, if the proceeding does not invoke a
> substantive right created by federal bankruptcy law and is one that could
> exist outside of the bankruptcy, then it is not a core proceeding.

*Mich. Emp't Sec. Com'n v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930

F.2d 1132, 1144 (6th Cir.1991) (internal citations omitted).

While the terms "core" and "non-core" are not defined by statute, Congress

has enumerated a list of fifteen proceedings that qualify as "core" under 28 U.S.C. §

157(b)(2) to aid in the determination. Section 157(b)(2)(N) specifies that "orders

approving the sale of property other than property resulting from claims brought by

the estate against persons who have not filed claims against the estate" are "core

proceedings". *See* 28 U.S.C. §§157(a) and (b)(2)(N). In this case, Plaintiff's claims are

viable only if it is established that Defendants assumed liability for the Russell

benefits under the sale order. Because answering this threshold question involves

interpreting and enforcing the sale order, this action constitutes a "core proceeding"

that "arises in" the bankruptcy case and the Court concludes that federal

jurisdiction is proper under § 1334(b).

Other courts have found likewise on similar facts. *See, e.g., In re Millenium Seacarriers, Inc.,* 458 F.3d 92, 95 (2d Cir. 2006) (holding that an adversary proceeding requiring the bankruptcy court to enforce its sale order is a core proceeding); *In re Allegheny Health Educ. & Research Found.,* 383 F.3d 169, 176 (3d Cir. 2004) (holding that the bankruptcy court "correctly determined that the suit was a core proceeding because it required the court to interpret and give effect to its previous sale orders"); *Powell v. FCA US LLC,* No. 3:15-CV-393-WHA, 2015 WL 5014097, at *1 (M.D. Ala. Aug. 21, 2015) (action requiring interpretation of scope of Chrysler sale order as applied to plaintiff's claims was core proceeding); *Martin v. Chrysler Group, LLC,* No. 6:12–cv–00060, 2013 WL 5308245, at *4 (N.D. Ga. Sept. 20, 2013) (holding that jurisdiction existed under section 1334(b) because plaintiffs' claims "would not exist 'but for' the [Chrysler] Sale Order"); *Quesenberry v. Chrysler Group LLC,* No. 12–48–ART, 2012 WL 3109431, at *4 (E.D. Ky. July 31, 2012) (the interpretation and enforcement of the Chrysler sale order is a core proceeding); *Wolff,* 2010 Bankr. LEXIS 6320 (proceeding involving interpretation of Chrysler sale order is core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N)).

## B. Eligibility for Transfer under 28 U.S.C. § 1412

As a core proceeding, this case is eligible to be transferred under 28 U.S.C. § 1412. Section 1412 permits a district court to transfer "a case or proceeding under title 11 to a district court for another district in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. The procedural counterpart to § 1412 is Federal Rule of Bankruptcy Procedure 1014(a). The 2007 Amendments to

Bankruptcy Rule 1014(a)(1) and (2) expressly authorize a court, on its own motion, to transfer a case filed in a proper district and to dismiss or transfer a case filed in an improper district respectively, either in the interest of justice or for the convenience of the parties. Fed. R. Bankr. P. 1014(a). "Ultimately, the decision to transfer venue of a case under title 11 is committed to the discretion of the court." *Matter of Emerson Radio Corp.*, 173 B.R. 490, 495 (D.N.J. 1994), *aff'd in In re Emerson Radio Corp.*, 52 F.3d 50 (3rd Cir. 1995); *see* 28 U.S.C. § 1412.

With respect to whether this district is the appropriate forum for the adjudication of this case, the parties do not address or otherwise contest this issue in their briefs. As noted above, subsection (a)(1) of Bankruptcy Rule 1014 provides that even if a case is properly venued, it may still be transferred. As the Sixth Circuit has clarified, "a case that is properly venued in the first instance could be transferred to another district (even one where the case could not originally have been brought) in accordance with § 1412 and Rule 1014(a)(1)." *Thompson v. Greenwood*, 507 F.3d 416, 422, (6th Cir. 2007). Subsection (a)(2) of the rule states that where the case is improperly venued, it may be dismissed *or* transferred to any other district. *See id.* ("where a bankruptcy case is brought in an improper venue, and an interested party timely objects, the court must either dismiss it or transfer it to a jurisdiction of proper venue in accordance with § 1406.") In short, whether venue in this district is proper or not, the Court has the authority to transfer this case sua sponte to the Southern District of New York either in the interest of justice or for the convenience of the parties.

In this case, the interests of justice strongly favor transferring this case to
the district where the bankruptcy took place. Factors to be considered include
whether transferring venue would promote the efficient administration of the
bankruptcy estate, judicial economy, timeliness and fairness. *See In re Barrington
Spring House*, LLC, 509 B.R. 587, 604 (Bankr. S.D. Ohio 2014). In particular, courts
have considered: (1) whether transfer would promote the economic and efficient
administration of the bankruptcy estate; (2) whether the interests of judicial
economy would be served by the transfer; (3) whether the parties would receive a
fair trial; (4) the willingness and ability of the parties to participate in the case; (5)
the plaintiff's choice of forum; (6) the effect of a transfer on the enforceability of a
judgment; and (7) whether either forum has an interest in having the controversies
resolved within its borders. *See In re Enron Corp*, 317 B.R. 629, (Bankr. S.D.N.Y.
2004); *In re Enron Corp.*, No. 01-3626, 2002 WL 32153911, at * 3-4 (Bankr. S.D.N.Y.
Apr. 12, 2002); *In re Gurley*, 215 B.R. 703, 709 (Bankr. W.D. Tenn. 1997) (internal
citations omitted). Of these many factors, the most important consideration is
whether the transfer would promote the "economic and efficient administration of
the estate." *Matter of GEX Kentucky, Inc.*, 85 B.R. 431, 435 (Bankr. N.D. Ohio
1987).

On balance, these factors support the conclusion that a transfer would be in
the interests of justice. As a threshold matter, the bankruptcy court expressly
retained jurisdiction over all matters relating to the implementation, enforcement
and interpretation of its sale order. Failing to transfer this case to the bankruptcy

court that approved that order would run the risk of inconsistent interpretations

that could unravel the order's "free and clear" transfer of assets to Defendant FCA.

Transfer of an action requiring the interpretation of the sale order, even after the

final decree was entered, as many courts have found, will permit the bankruptcy

court to resolve issues pertaining to the interpretation and enforcement of its sale

order, including the validity of claims alleged by Plaintiff. *E.g., Powell*, 2015 WL

5014097, at \*6 (transferring case involving interpretation of the sale order

approximately one month after the final decree was entered in Chrysler

bankruptcy); *Quesenberry*, 2012 WL 3109431, at \* 4-5; *Clark v. Chrysler Grp. LLC,*

No. 10–3030, 2010 WL 4486927, at \*3 (E.D. Pa. Nov. 5, 2010); *Carpenter v. Chrysler

LLC,* No. 5:10–CV–289–R (W.D. Okla. May 17, 2010), ECF No. 20; *Wolff v. Chrysler

Grp.,* No. 5:10–CV–34–PA–DTB (C.D. Cal. Feb. 22, 2010), ECF No. 17; *Shatzki v.

Abrams,* No. 1:09–CV–02046–LJO–DLB, 2010 WL 148183, at \*3 (E.D. Cal. Jan. 12,

2010); *Cooper v. Daimler AG,* No. 1:09–CV–2507–RWS, 2009 WL 4730306, at \*4

(N.D. Ga. Dec. 3, 2009); *Monk v. Daimler AG,* No. 1:09–CV–2511–RWS, 2009 WL

4730314, at \*5 (N.D. Ga. Dec. 3, 2009); *Doss v. Chrysler Grp. LLC,* No. 09–2130,

2009 WL 4730932 (D. Ariz. Dec. 7, 2009) (transferring a similar action against

Chrysler Group under § 1404 in the interests of justice and for the convenience of

the parties).

As for the remaining factors, the Court finds that, on balance, they do not

weigh in opposition to a transfer. Because the bankruptcy court is in the best

position to interpret and enforce the sale order, judicial economy weighs in favor of

transfer. Moreover, there is no indication that the parties would not be able to
receive a fair trial before the bankruptcy court or that a judgment from the
bankruptcy court in New York would not be enforceable by Plaintiff here in
Michigan. In addition, the parties indicated at the April 25, 2016 hearing in this
matter that they do not object to a transfer and agree that the bankruptcy court has
retained jurisdiction over the sale order. Finally, although Michigan has an interest
in determining reimbursement of service insurers under its no-fault insurance
scheme, the reimbursement issue is subordinate to the threshold question of
whether the sales order, as interpreted, allows such a claim to be made, and
therefore this factor also weighs in favor of a transfer.

The bankruptcy court that oversaw the Chrysler bankruptcy proceeding has
expressly retained jurisdiction over the sale order in the sale order itself and in its
final decree, and has continued to exercise that jurisdiction since the sale order was
issued and the sale closed. *See, e.g., In re Old Carco LLC,* 538 B.R. 674, 677 (Bankr.
S.D.N.Y. 2015) (the sale order bars Indiana and Illinois from using Old Chrysler's
Experience Rating to compute New Chrysler's unemployment insurance tax rate;
interests in property cut off by sale order not limited to in rem interests); *In re Old
Carco LLC,* 492 B.R. 392, 395 (Bankr. S.D.N.Y. 2013) (sale order does not bar
claims concerning vehicles manufactured or sold by New Chrysler after the closing
or injuries resulting from the breach of any duties that arose under non-bankruptcy
law after the closing); *Wolff,* 2010 Bankr. LEXIS 6320 (dismissing claims against

Chrysler Group because Chrysler Group did not assume such liabilities in the sale
order).

A court has special expertise regarding the meaning of its own order, and
therefore its interpretation is entitled to deference. *See Travelers Indem. Co. v.
Bailey*, 557 U.S. 137, 151 n. 4 (2009). Moreover, it is well-established that a court
has jurisdiction to enforce its own orders. *Id.* at 151 ("the Bankruptcy Court plainly
had jurisdiction to interpret and enforce own prior orders."); *see also Local Loan
Co. v. Hunt*, 292 U.S. 234, 239 (1934) ("That a federal court of equity has
jurisdiction of a bill ancillary to an original case or proceeding in the same court,
whether at law or in equity, to secure or preserve the fruits and advantages of a
judgment or decree rendered therein, is well settled."); *In re Millenium Seacarriers*,
Inc., 419 F.3d 83, 97 (2d Cir. 2005); *In re Te-Kon Travel Court, Inc.*, 424 B.R. 775,
777 (Bankr. W.D. Mich. 2010) (Bankruptcy court retained jurisdiction, even after
Chapter 11 plan had been confirmed, to enforce and interpret its own orders, and
could hear mortgage lenders' motion to enforce settlement agreement incorporated
in plan.); *In re Wireman*, 364 B.R. 297, 299 (Bankr. N.D. Ohio 2007) ("bankruptcy
courts retain jurisdiction to enforce and interpret their own orders.").

Accordingly, the claims (Count II) against Defendant FCA will be severed
and transferred and those against Defendant Corepointe (Count I) will be
remanded. Although the Court recognizes that a decision to transfer a case is not to
be taken lightly, the threshold question in this matter is one best left to the
bankruptcy court that issued the sale order. The parties provided no compelling

reason as to why this Court is in a better position to interpret and enforce the sale

order than the bankruptcy court that issued it.

    With regard to the state law claims in Count I against Defendant Corepointe,

this defendant did not consent to, nor entered any appearance in this case,

responded to any motions, or asserted any defenses related to the Chrysler

bankruptcy or the sale order. Consequently, there would be no point in transferring

the state law claims against this defendant along with those against Defendant

FCA. Moreover, the state law claims against Defendant Corepointe should not

remain in federal court. Accordingly, Plaintiff's claims against Defendant FCA

(Count II) will be severed[7] and transferred to the Bankruptcy Court for the

Southern District of New York, while, pursuant to 28 U.S.C. § 1334(c)(1)[8], Plaintiff's

state law claims against the remaining defendant (Count I) will be remanded to

Wayne County Circuit Court "in the interest of justice, . . . comity with State courts,

. . . [and] respect for State law".

---

[7] Pursuant to Federal Rule of Civil Procedure 21, "[t]he court may also sever any claim against a
party." "As with any case in federal court, [the severed action] may be transferred under appropriate
circumstances.... Indeed, the fact that a claim might be subject to transfer to a more appropriate
venue is a valid reason to order severance." 4-21 *Moore's Federal Practice-Civil* § 21.06.

[8] 28 U.S.C. § 1334(c)(1) states in relevant part that "nothing in this section prevents a district court
in the interest of justice, or in the interest of comity with State courts or respect for State law, from
abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a
case under title 11." Moreover, "[a]ny decision to abstain or not to abstain made under subsection (c)
(other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable
by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by
the Supreme Court of the United States under section 1254 of this title." 28 U.S.C. § 1334(d).

### III.   CONCLUSION

Because Corepointe Insurance Company and Chrysler Insurance Company were erroneously docketed as separate defendants when they are in fact one entity, the Clerk of Court is directed to correct the docket to name Defendant FCA US LLC and Defendant Corepointe Insurance Company (f/k/a Chrysler Insurance Company) only.

For the reasons stated above, the claims (Count II) against Defendant FCA US LLC are hereby **SEVERED** from those against Defendants Corepointe Insurance Company (f/k/a Chrysler Insurance Company) and **TRANSFERRED** pursuant to 28 U.S.C § 1412 and Federal Rule of Bankruptcy Procedure 1014(a)(2) to the United States District Court for the Southern District of New York for referral to the bankruptcy court. The Clerk of Court is directed to take the appropriate steps to effect the transfer.

Consequently, Defendant FCA's Motion to Dismiss (Dkt. 4) is **DENIED WITHOUT PREJUDICE**.

Moreover, the claims (Count I) against Defendant Corepointe Insurance Company (f/k/a Chrysler Insurance Company) are hereby **REMANDED** to the Wayne County Circuit Court for further proceedings. The Clerk of Court is directed to take the appropriate steps to effect the transfer.

**SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: May 11, 2016

**Certificate of Service**

I hereby certify that this Order was electronically submitted on May 11, 2016, using the CM/ECF system, which will send notification to each party.

By: s/A. Chubb
Case Manager