Anthony O. Egbase (SBN: 181721)
Victoria T. Orafa (SBN: 265037)
A.O.E. LAW & ASSOCIATES, INC.
350 S. Figueroa Street, Suite 189
Los Angeles, California 90071
Tel: (213)620-7070      Fax: (213)620-1200

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

|  |  |
|---|---|
| LYNN GRIMSTAD, an individual, and on behalf of all others similarly situated, and MARA MANUEL, an individual, and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br><br>     -vs-<br><br><br>FCA US, LLC, a Michigan Limited Liability Company; and DOES 1 through 300,000 inclusive,<br><br>       Defendant. | **Case No.: 8:16-CV-00763-JVS-E**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT FCA US, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**[CLASS ACTION]**<br><br>Date: July 11, 2016<br>Time: 1:30pm<br>Judge: James V. Selna<br>Courtroom: 10C |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

  PLEASE TAKE NOTICE that Plaintiffs Lynn Grimstad and Mara Manuel, will and hereby do Oppose Defendant FCA US, LLC's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint set for hearing July 11, 2016 at 1:30pm in Courtroom

10C of the above captioned Court, located at 411 West Fourth St. Room 1053, Santa Ana, CA 92701.

The Opposition will be based upon the grounds that:

1) Plaintiffs have alleged sufficient facts necessary to maintain each and every cause of action, and this Court has jurisdiction to hear each and every cause of action.

The Opposition will be based on the attached memorandum of points and authorities, the exhibits, on the First Amended Verified Complaint filed in the instant action, and on the papers and records on file and on such other evidence as may be presented prior to or at the hearing of this motion.

Dated: June 16, 2016

**A.O.E. LAW & ASSOCIATES**

Victoria Orafa, Esq.
Attorney for Plaintiff and Proposed Class
Members

**PLAINTIFFS OPPOSITION TO DEFENDANT FCA US, LLC'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES.................................................... 1

I.    INTRODUCTION....................................................................................................1

II.   STANDARD OF REVIEW....................................................................................2

III.  ARGUMENT.......................................................................................................2

A. PLAINTIFFS ALLEGED THAT THEIR VEHICLES WERE SUBJECT TO THE RECALL, THAT DEFENDANT PERFORMED IT ON THEIR VEHICLES, AND THAT THEY SUFFERED DAMAGES AS A RESULT……………..…2

B. PLAINTIFFS HAVE VERY SPECIFICALLY ALLEGED THEIR INJURIES, THE DIMUNITION IN VALUE TO THEIR VEHICLES, AND THE ASSOCIATED LOSS OF USE THEY HAVE SUFFERED………………..…5

C. DEFENDANT IS NOT EXEMPT FROM ALL OF ITS ACTIONS TAKEN UNDER THE MANDATE OF THE NHTSA, NOR ARE SAID ACTIONS PRIVILEGED WITHIN ANY LEGAL PROCEEDING…………………………7

D. FRAUD HAS BEEN PLED ALLEGING THE PARTICULAR MISCONDUCT BY DEFENDANT, AND PROVIDING WRITTEN EVIDENCE OF SAID MISREPRESENTATION PUBLISHED BY DEFENDANT………..…………9

E. PLAINTIFFS CAUSES OF ACTION ARE NOT BARRED BY THE ECONOMIC LOSS DOCTRINE AS NONE ARE BASED UPON CONTRACT……………………………………………………………..14

F. PLAINTIFFS HAVE PROPERLY ALLEGED CONVERSION, AS DEFENDANTS INTERFERENCE WAS SO SUBSTANTIAL AS TO RENDER PLAINTIFFS TRANSFER CASES COMPLETELY INOPERABLE………………………………………………………..16

G. PLAINTIFFS HAVE PROPERLY PLED FACTS SUPPORTING DEFENDANTS EXCLUSIVE KNOWLEDGE OF THE RECALL IT DESIGNED, AND ITS ASSOCIATED FUNCTION…………………………..18

H. PLAINTIFFS DO NOT SEEK DAMAGES UNDER A BREACH OF CONTRACT THEORY AND ARE NOT PRECLUDED FROM ALLEGING PROMISSORY ESTOPPEL IN ANY EVENT………………………..…………21

Case 1:16-cv-09123-WHP   Document 25   Filed 08/15/16   Page 4 of 34

I. PLAINTIFFS HAVE PROPERLY PLED ALLEGATIONS TO MAINTAIN A CAUSE OF ACTION FOR UNFAIR AND DECEPTIVE BUSINESS PRACTICES……………………………………………………………..22

J. PLAINTIFFS HAVE SUFFICIENTLY PLED FACTS TO SUPPORT STRICT LIABILITY & BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY, *BUT AGREE TO DISMISS SAID CAUSES OF ACTION, ONLY*…………………………………………………………………………*24*

K. PLAINTIFFS CAUSE OF ACTION FOR DECLARATORY RELIEF DOES NOT CONFLICT WITH ANY NHTSA MANDATE, NOR IS IT DUPLICATIVE…………………………………………………………..2

IV.    CONCLUSION……………………………………………………...…………25

**TABLE OF CONTENTS & AUTHORITIES**

# TABLE OF AUTHORITIES

## Statutes

Cal. Civ. Code 47(b)…………………………………………………………………8
Federal Rules of Civil Procedure Rule 12(b)6……………………………………….2


## Case Law

*Aas v. Superior Court*, 24 Cal.4th 627, 643 (2000)………………………………………14
*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868(2009)………2
*Baggett v. Hewlett-Packard Co*., 582 F.Supp.2d 1261 (2007)…………………………15
*Balistreri v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir.1988)…………………2
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)………………………………………………………………………………………2
*Casden Builders Inc. v. Entre Prises USA*, Inc., 2010 WL 2889496 (C.D. Cal 2010)….14
*Chiarella v. United States*, 445 US 222, 227 (1980) citing *In Cady, Roberts & Co*., 40 S. E. C. 907, 911…………………………………………………………………….…18, 20
*City of Amsterdam v. Daniel Goldreyer, Ltd*., 882 F.Supp. 1273, 1281 (E.D.N.Y.1995)…………………………………………………………………….………17, 18
*Deutsch v. Flannery*, 823 F.2d 1361, 1366 (9th Cir. 1987)………………………………..10
*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)………………………………………………………………………….…………………2
*eBay, Inc. v. Bidder's Edge, Inc*., 100 F. Supp. 2d 1058, 1070 - Dist. Court, ND California (2000) ………………………………………………………………………..17
*Erickson v. Pardus*, U.S. 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)….………2
*Falk v. General Motors Corp*., 496 F. Supp. 2d 1088 - Dist. Court, ND California (2007) ……………………………………………………………………………………18
*Gray v. Toyota Motor Sales* No 12-55362 (9th Cir. Feb 5, 2014)……………..………21
*Hagberg v. Cal Fed. Bank* FSB 7 Cal.Rptr.3d 803 (2004)………………………..……..8
*Huntair, Inc. v. Gladstone*, 774 F.Supp.2d 1035, 1044 (N.D.Cal.2011)…………..…..12
*In re Apple & AT & TM Antitrust Litig*., 596 F.Supp.2d 1288, 1310 (N.D.Cal.2008)…12
*LiMandri v. Judkins*, 52 Cal.App.4th 326, 337, 60 Cal.Rptr.2d 539 (1997…………..18
*Marcus v. Apple, Inc*. 2015 WL 1743381 (N.D. Cal. 2015)…………………………..…21
*McKell v. Washington Mutual, Inc*., 142 Cal.App.4th 1457, 1491, 49 Cal.Rptr.3d 227 (2006)………………………………………………………………………………………17
*Moore v. Regents of the Univ. of Cal*., 51 Cal.3d 120, 137, 271 Cal.Rptr. 146, 793 P.2d 479 (1990)………………………………………………………………………………16
*Murray v. Laborers Union Local No. 324*, 55 F. 3d. 1445 (9th. Cir. 1995)……………16
*Natomas Gardens Inv. Group, LLC v. Sinadinos*, 710 F. Supp. 2d 1008………………16

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal.App.4th 384, 395, 58 Cal.Rptr.3d 516 (2007) ……………………………………..17

*Shahata v. W Steak Waikiki*, LLC 721 F.Supp.2d 968, 981-982 (2010)……………...22

*Sharma v. BMW of N. America, LLC*  2014 WL 2795512 (N.D. Cal. 2014)…..……15, 16

*Spates v. Dameron Hosp. Ass'n* 114 Cal. App. 4th 208, 221 (2003) ………………....16

*Steinhart v. Barkela*, Dist. Court, ND California (2012) No. C-11-03497 EDL……..…8

*Tae Hee Lee v. Toyota Motor Sales U.S.A. Inc*. 992 F. Supp. 2d at 962, 973 (2014)…….6

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc*. 117 F. Supp. 3d 1092 (C.D.Cal 2015)…………………………………………………………….2, 9, 11, 12, 16

*United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp*., 660 F.Supp.2d 1163, 1180 (C.D.Cal.2009…………………………………………………………...…14

*United States ex rel. Lee v. SmithKline Beecham, Inc*.,245 F.3d 1048, 1051 (9th Cir.2001)……………………………………………………………………..9, 10

*Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003)……………..….11

*Waldrup v. Countrywide Financial Corp*., No. 2:13–cv–08833–CAS (CWx), 2014 WL 3715131, at *5 (C.D.Cal. July 23, 2014)…………………………………………..12

*Wilson v. Hewlett-Packard Co*., 668 F 3d 1136, 1145, 1147 (9th Cir. 2012)……..…19

*Wool v. Tandem Computers, Inc*., 818 F.2d 1433, 1439 (9th Cir. 1987)……..………10

*Zaslow v. Kroenert* (1946) 29 Cal.2d 541, 551–552……………………………………17

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION I.

As of July of 2013, Defendant FCA US discovered a defect in the Final Drive Control Module ("FDCM") of its Jeep Grand Cherokees model years 2005 through 2010, and Jeep Commanders model years 2006 through 2010. ("WK & XK Model Vehicles"). The defect originates from a hardware susceptibility to a stress fracture. Defendant claimed that this malfunction may result in a condition whereby the vehicles will "unintentionally… shift into neutral position without input from the driver." (See Service Bulletin as Ex. 1 to the First Amended Complaint "FAC").

In the intended prevention of this issue, Defendant issued a recall notice. (As Exhibit 2 to the FAC). Rather than replace the FDCM model itself with a revised model, Defendant opted for a relatively inexpensive option, and it implemented a software update to upload to the existing, fracture prone, FDCMs ("the N23 Recall"). The software update, designed by Defendant, causes the FDCM to disable itself after receiving data which is typical of its repeated routine function. Plaintiffs are informed and believe that the purpose of this design, was to cause the disablement of any potentially fractured or defective FDCMs, thereby preventing inadvertent neutral shifting or 'roll-aways' of the vehicles. In performing this recall, Defendant has saved itself millions of dollars in the cost of replacing the FDCM in the WK & XK Model Vehicles.

As a by-product of this disablement however, the N23 Recall also disabled the four wheel drive low gear capability, four wheel lock capability, and transfer case neutral shift capability of all WK & XK Model Vehicles 'updated' by the Recall.

The original manufacturer of the WK & XK Model Vehicles, Old Carco, LLC filed for Bankruptcy on April 30, 2009, and its assets were purchased by Chrysler Group LLC in June 1, 2009 (which thereafter merged with Fiat S.P.A., and was later renamed FCA US , LLC in December of 2014). ***Plaintiffs causes of action arise from the July***

*2013 recall implemented by Defendant FCA US, LLC, not from the purported defect from the manufacturer, Old Carco.*

## STANDARD OF REVIEW II.

A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *UMG Recordings, Inc. v. Global Eagle Entertainment, Inc*. 117 F. Supp. 3d 1092, 1102 (C.D.Cal 2015) citing *Balistreri v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir.1988). Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868(2009)

"[O]rdinary pleading rules are not meant to impose a great burden upon a plaintiff." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005). "*Specific facts are not necessary*; *the statement need only `give the defendant fair notice of what the ... claim is and the grounds upon which it rests.*'" *Erickson v. Pardus*, U.S. 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) emphasis added.)

## ARGUMENT III.

## A. PLAINTIFFS ALLEGED THAT THEIR VEHICLES WERE SUBJECT TO THE RECALL, THAT DEFENDANT PERFORMED IT ON THEIR VEHICLES, AND THAT THEY SUFFERED DAMAGES AS A RESULT

Defendant contends that "Plaintiffs do not plead that their vehicles have been subjected to the Recall N23," or "that their vehicles have ever performed in any way other than exactly how they were designed to perform." (See Defendant's "Motion to Dismiss" Plaintiffs' First Amended Class Action Complaint, Pg 2, Lines 5-8). A cursory review of the FAC will reveal that Defendant's assertions are false. Plaintiff states clearly that "Defendant performed a service recall on Plaintiffs', and Class members'

vehicles, known as the N23 Recall," thus Plaintiffs alleged that their vehicles were subject to the recall. (FAC Pg 11, ¶ 72, see FAC generally, see also ex. Pg 12, ¶ 82, Pg 13, ¶ 90 & 93, Pg 17, ¶, 124, Pg 19 ¶ 136 & 137). Plaintiff states "Defendant disabled Plaintiffs', and Class members' four wheel drive low gear… four wheel drive lock…" and "transfer case neutral capability of their WK Model Vehicle's upon performing its N23 Recall." Thus, Plaintiffs have alleged that their vehicles no longer perform as designed. (FAC Pg 11, ¶ 74-76, see FAC generally, see also ex. Pg 12, ¶ 82, 85, 86, Pg 13, ¶ 89, 90, 93, Pg 16 ¶ 112. Pg 19 ¶ 136, 137).

Defendant further complains that Plaintiffs do not allege that the injuries sustained have "prevented them from using their vehicles, changed the manner in which they use their vehicles, or that they personally have experienced any loss of any vehicle function." (See Defendant's Motion to Dismiss Pg 2, Lines 22-23). First, as addressed immediately supra, Plaintiffs have very clearly and specific alleged a loss of vehicle function, throughout the FAC. Second, none of these issues are relevant to any of Plaintiffs' causes of action. Plaintiffs must allege that they sustained damage, which they have. Defendant has failed to cite any authority that Plaintiffs must allege how said damage has affected their personal experiences. Plaintiffs' damages are based on interference and diminution in value, not loss of enjoyment or inconvenience. These are facts best addressed by discovery, but more likely simply not relevant.

Defendant contends that "Plaintiffs do not allege if or when they received the Recall notice." First, Plaintiffs do make such an allegation regarding issuance of the Recall Notice, following July of 2013. (See FAC Pg 4 ¶ 20, Pg 5 ¶ 24). Second, again, this fact is not necessary to maintain any of Plaintiff's causes of action.

Defendant contends that Plaintiffs fail to allege whether the "Recall N23 failed to correct the inadvertent transfer case shift to neutral." First, Plaintiffs have admit that the N23 Recall corrects the issue with the inadvertent neutral shift by disabling the FDCM (See FAC Pg 5 ¶ 30), yet this is completely irrelevant with respect to Plaintiffs' causes of

action. Plaintiffs' causes of action arise from the damages caused by the N23 Recall itself, not from the original manufacturing defect. An important semantic distinction to make here is that while Plaintiffs' acknowledge that the N23 Recall corrected the inadvertent neutral shift, it did not "fix" or "repair" Plaintiffs' vehicles, but rather simply completely disabled a major component.

Similarly, Defendant complains that Plaintiff failed to allege whether its vehicles were serviced following the P73 Customer Satisfaction Notification. Contrary to this assertion, Plaintiffs do allege this, and in fact they allege said service was ineffective. (See FAC Pg 6, ¶ 37-38). Moreover, the P73 Customer Satisfaction Notice and services performed following it, are completely irrelevant with respect to Plaintiffs' FAC.

Defendant further complains that Plaintiffs complaint fails to specify which causes of action is seeks to include in its Nationwide Class, versus its Statewide Class. Yet, Defendant fails to cite any authority which would tend to require this distinction in the FAC. Plaintiff rather relies on Federal Rules of Civil Procedure "FRCP" Rule 23(c)(1)(B), which dictates such distinction must be made in the Order on the Motion to Certify the Class. Thus, this issue will be addressed in Plaintiffs' Motion to Certify.

Defendant asserts that "Plaintiffs plead no facts as to when or where they purchased their vehicles." Following the trend supra, Plaintiffs did in fact plead such a fact. As Defendant acknowledges, Plaintiffs have plead the year, make and model of their vehicle. Thus, from the additional allegation that "Plaintiffs Lynn Grimstad and Mara Manuel purchased their WK Model Vehicle new from Defendant," it can reasonably be inferred that Plaintiffs purchased their vehicle in 2006, from a Chrysler dealership. Yet again, this is completely irrelevant with respect to all of Plaintiffs actions. Specific details with respect to the actual day, and address of the dealer are issues for discovery. To plead such facts would burden the judicial process.

Defendant then complains that Plaintiffs have failed to apprise them of where the recall was performed, and when and where their vehicles displayed loss of functions.

Again, Plaintiffs have pled such facts, and these facts are irrelevant in that they are not necessary to support any of Plaintiffs' actions. Plaintiffs have alleged that they reside in California, that Defendant conducts business in California, and that "Plaintiffs' injuries were caused by Defendant in the State of California," thus venue is proper. (FAC Pg 4, ¶ 19). Plaintiff then allege that their vehicle was disabled several months after the Recall. (FAC Pg 12 ¶ 80). It is even likely Plaintiffs do not know the exact nature of the date of injury, as it was not until the mass consensus and Defendant's technician's revealed the cause of the injury that Plaintiffs learned the cause of their vehicles disablement. (FAC Pg 15 ¶ 103). Defendant's grievance that it is unable to find only one Plaintiff in its records is irrelevant to the instant Motion, and again an issue for discovery.

## B. PLAINTIFFS HAVE VERY SPECIFICALLY ALLEGED THEIR INJURIES, THE DIMUNITION IN VALUE TO THEIR VEHICLES, AND THE ASSOCIATED LOSS OF USE THEY HAVE SUFFERED

Defendant asserts that Plaintiffs' FAC is defective in that it has failed to allege specific situational instances where the loss of use of certain functions in their vehicles (as alleged), has occurred. First, Plaintiff has pled such specific occurrences, second, Defendant cites no applicable authority to support its contention. Defendant relies on *Barakezyan v. BMW of N. America* and *Tae Hee Lee* in support of its contention that Plaintiffs must allege more than a diminution in value, however, these cases are not applicable. The citation offered from *Barakezyan* is inapplicable as Plaintiffs causes of action do not arise from an "insufficient performance" by Defendant, in that Plaintiffs do not allege simply that Defendant's performance was not 'up to par.' Plaintiffs allege rather that Defendant's performance was only destructive, and moreover that it was fraudulently intended to be destructive to save itself from liability at minimal costs. *Tae Hee Lee* is not applicable either, as Defendant neglected to cite that the Court in said case only listed 'selling the vehicle at a loss' as one example in support of its main proposition that a claimant must at least plead "any other facts that plausibly demonstrate

any diminished value in their vehicles," listing also as an example, that an allegation that claimants "stopped using their vehicles," would be sufficient. *Tae Hee Lee v. Toyota Motor Sales U.S.A. Inc*. 992 F. Supp. 2d at 962, 973 (2014).

As an initial matter, with respect to damages, Plaintiffs did in fact allege that their vehicles have been sold at a loss. "***Plaintiffs*** are in possession, own, or ***sold at a loss, vehicles which became adversely affected by a recall.***" (FAC Pg 2 ¶ 2, emphasis added). Thus, Plaintiffs meet even the selective criteria for adequately pleading damages set forth by Defendant. More significantly, Plaintiffs allege the specific inability to use their vehicles, analogous with the example provided in *Tae Hee Lee*. "Plaintiffs …have been damaged ***by being unable to use*** of the low gear function of their transfer cases...." (FAC Pg 16, ¶ 115 emphasis added.)

Plaintiffs go beyond this pleading standard, alleging particularly that "Defendant … perform[ed] unneeded services to said vehicles, in purported attempts to fix the issues causes by the FDCM, to no avail, ***as added cost and time to Plaintiffs*** and the members of the Plaintiffs' classes." (FAC Pg 18 ¶ 132, emphasis added). Thereby alleging that Plaintiffs have incurred unnecessary expense in needless repairs attempting to fix the injuries caused by Defendant.

With respect to allegations concerning the loss of practical uses arising from the specific allegations of the limited features of their vehicles, and specifically which features have been disabled, Plaintiffs allege: "Plaintiffs …are, in need of a vehicle which has the traction and torque which can be delivered only by a transfer case capable of shifting into four wheel lock, and four wheel locker." "Plaintiffs …are, in need of a vehicle which has the ability to shift its transfer case into neutral, so that it may be towed behind a recreational vehicle, such as a motorhome."  (FAC Pg 29, ¶ 211, 212.) Thus Plaintiffs have apprised Defendant that as a result of losing the ability to control their transfer cases, Plaintiffs can no longer use their vehicles for driving situations requiring

additional torque, additional traction, and Plaintiffs can no longer tow their vehicle behind their motorhome. Similarly, Plaintiffs allege that that they have been

"*deprived of the use of the low gear function, four wheel lock function, and neutral shift function of their transfer cases.*" (FAC Pg 30, ¶ 222, emphasis added.) Further with respect to "any other facts" demonstrating a diminution in value to their vehicles, Plaintiffs have thereby also specified the cause of said diminution.

With respect to actual dates and times when Plaintiffs have not been able to use such features, *requiring a party to plead when and where they have not been able to do, that which they can no longer do, is superfluous if not absurdly paradoxical.*

## C. DEFENDANT IS NOT EXEMPT FROM ALL OF ITS ACTIONS TAKEN UNDER THE MANDATE OF THE NHTSA, NOR ARE SAID ACTIONS PRIVILEGED WITHIN ANY LEGAL PROCEEDING

Defendant asserts that Plaintiffs claims are based on its representation that it would repair their vehicles free of charge. (Thereby neglecting to consider all of Plaintiffs allegations that it fraudulently concealed the nature of its actions, and that Plaintiffs would not have delivered their vehicles to Defendant had they been properly informed, and further neglecting to consider that many of Plaintiffs causes of action are independent of any representations or omissions made by Defendant). (FAC Pg 18, ¶ 133, and respectively, 1st, 2nd, 7th, 8th, 9th, 10th, and 11th causes of action in the FAC generally). From this selectively limited and incorrect statement, Defendant goes on to suggest that by virtue of the fact that its N23 Recall Notice was mandated by the National Highway Safety Administration ("NHTSA"), that first the representations therein are somehow privileged under Cal. Civ. Code Section 47(b), as if made in some legal proceeding, and further that its actions taken pursuant to said notice are somehow completely privileged and exempt no matter how reckless or fraudulent. Plaintiff avers that if such a standard were set, Defendant would be shielded from all liability no matter

how reckless, or fraudulent its mandated recalls were conducted, or regardless of how much damage they cause.

Defendant's reliance on *Steinhart v. Barkela* is misguided. In *Steinhart*, with respect to a written report of criminal activity offered to a police officer, the Court reviewed that a Cal. Civ. Code 47(b) "privilege applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation." It specifically found however, that "conduct beyond just a report" is not privileged. First, said case does not relate to reports mandated by the NHTSA on auto-manufacturers. Second, in the instant case, Plaintiffs seek redress not for the statements made in the N23 Recall Statement alone, but for Defendant's associated conduct. *Steinhart v. Barkela*, Dist. Court, ND California (2012) No. C-11-03497 EDL. Similarly, that Court in *Hagberg v. Cal Fed. Bank* FSB 7 Cal.Rptr.3d 803 (2004) found that *criminal* reports to authorities are privileged, thus said case is not applicable here either.

Plaintiffs are not suing Defendant for libel on the basis that it made the statement in the N23 Recall Notice. Plaintiffs' suit arises from the conduct which occurred following said statement. Said statement was only a representation preceding the wrongful conduct, and not even necessary to maintain Plaintiffs' Fraud, and Fraudulent concealment causes of action given Defendants concealment of the nature of the Recall.

Cal. Civ. Code 47(b) provides that a publication is privileged "in any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure." While it is unclear under which subsection Defendant avers it is entitled to privilege for its statements, evidently it is not 47(b)(1) or (2). With respect to 47(b)(3), Defendants have failed to show how an NHTSA instruction would be considered an "official proceeding," nor has it shown that its actions were

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF**
**PLAINTIFFS' OPPOSITION DEFENDANT FCA US, LLC'S TO MOTION TO DISMISS**

conducted under Part 3 of the Cal. Code of Civ. Procedure. Thus, Defendants argument of privilege fails for this reason as well.

## D. FRAUD HAS BEEN PLED ALLEGING THE PARTICULAR MISCONDUCT BY DEFENDANT, AND PROVIDING WRITTEN EVIDENCE OF SAID MISREPRESENTATION PUBLISHED BY DEFENDANT

Defendant contends that Plaintiffs FAC does not apprise it of the particular misconduct well enough for it to defend against the allegations. Defendant contends that Plaintiffs do not specify whether said representations were made to them, nor "where and when" they received the document making such representation. (See Defendant's Motion to Dismiss, Pg 7, Lines 19-21). Defendant relies on a citation in the case of *UMG Recordings, Inc. v. Global Eagle Entertainment, Inc*. 117 F. Supp. 3d 1092, 1108 (C.D.Cal 2015), from *United States ex rel. Lee v. SmithKline Beecham, Inc*.,245 F.3d 1048, 1051 (9th Cir.2001). Defendants citation that an allegation of fraud must include "the names of the employees or agents… or at a minimum identify them by their titles and/or job responsibilities," comes from the *UMG Recordings* Court's reference to the Court's ruling in *In Unites States ex rel. Lee*. In said case, the Court found that the "broad claim had no factual support — [Claimant] did not specify the types of tests implicated in the alleged fraud, identify the [Respondent's] employees who performed the tests, or provide any dates, times, or places the tests were conducted." In summary, it was evident that the claimant had failed to apprise the responding party of the exact nature of the grievances alleged, such that it would have been difficult for it to respond. Said case, as well as *UMG Recordings*, are totally distinguishable from the instant case. In *UMG Recordings* the Court found that "Counterclaimants fail[ed] to allege any false representation or promise. They merely plead that plaintiffs' 'representations and promises were false when they were made,' and that they 'knew [their] representations were false when they were made.'" *UMG Recordings, Inc.* 117 F. Supp. 3d at 1109.

In the instant case, Plaintiffs plead the misrepresentation with such specificity that they provided a quote of Defendant's false statement, as well as a copy of the document published by Defendant, to Plaintiffs, containing said specific false statement.

> "On or after July of 2013, Defendant, via its N23 Recall notice, communicated to Plaintiffs …that there existed a dangerous condition with their WK Model Vehicles' FDCMs, which could potentially "cause the transfer case to shift into neutral position without input from the driver." (See Defendant's Service Bulletin attached as Exhibit 1 [to the FAC]). ***Defendant represented to Plaintiffs, and Class members, via its N23 Recall Notice (sample Notice attached as Exhibit 2 [to the FAC]) that it would "repair" their vehicles free of charge. Defendants representation to Plaintiffs and Class members was false.*** The true facts were as follows: Defendant represented to Plaintiffs and proposed Class members that it would repair their WK Model Vehicles, while only intending to gain access to said vehicles in order to disable the functionality of their FDCMs. Defendant sought to gain access to Plaintiffs' and proposed Class members' WK Model Vehicles FDCMs to save itself from liability in the event that said vehicles might shift into neutral. Defendant uploaded software to disable the WK Model Vehicles' FDCMs to save itself the substantial cost of actually repairing the purported defective FDCMs." (FAC Pg 14, ¶ 95-98 emphasis added).

While Plaintiffs acknowledge that they have not yet pled the specific name of the person who published the N23 Recall Notice, Plaintiffs rely on the ruling on *Wool v. Tandem Computers*, and *Deutsch v. Flannery*, where the Courts found that "Rule 9(b) may be relaxed to permit discovery in a limited class of corporate fraud cases where the evidence of fraud is within a defendant's exclusive possession." *United States ex rel. Lee* 245 F.3d at 1052, relying on *Wool v. Tandem Computers, Inc*., 818 F.2d 1433, 1439 (9th Cir. 1987) and *Deutsch v. Flannery*, 823 F.2d 1361, 1366 (9th Cir. 1987). Here, it seems evident that the N23 Recall statement was implemented, authorized, and published to approximately 300,000 proposed vehicle owners via an agent with the actual authority to make statements on behalf of Defendant. It would further be impractical to require Plaintiffs to know the name of said agent, as this information is currently in the exclusive possession of Defendant, and would feasibly only be obtainable through discovery. It

follows that Plaintiffs are not required by any applicable precedent to plead specific names, and Plaintiffs have pled with extreme particularity the actual misrepresentation, as well as its origin, so that Defendant knows the nature of the allegations against it, and moreover it should easily be able to pinpoint the source of said statement.

FRCP Rule 9(b) dictates, with respect to pleading fraud, that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." As the Court specified on *Vess v. Ciba-Geigy Corp. USA*, "'Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge [.]'" *UMG Recordings, Inc.* 117 F. Supp. 3d at 1106, relying on *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003). Here, as argued supra, Plaintiffs have pled specific facts to apprise Defendants of the specific misrepresentation, in the specific recall noted, quoting the specific statement, and have even gone so far as to explain why the statement was untrue, and why Defendants intended to make said statement untruthfully. (See FAC Pg 14, ¶ 95-98).

In accordance with the FRCP Rule 9(b) requirements for allegations regarding frame of mind, there are some things which can only be plead on information and belief, requiring speculation into the mindset of opposing parties. With respect to Defendant's malice, knowledge, and intent, Plaintiffs have pled:

> "As Defendant is exclusively responsible for the design and implementation of recalls… Defendant could not have implemented the N23 Recall without having itself, or through its agents, designed and programmed the updated software implemented via said Recall, and in so doing, Defendant was aware of the nature of the software and its intended use and impact on the functionality and safety of the affected WK Model Vehicles." "Defendant, in designing and testing the N23 Recall software update, represented to Plaintiffs and proposed Class members that it would repair their WK Model Vehicles, while in fact intending to disable the functionality of their FDCMs…" "Plaintiffs are informed and believe that Defendant consciously made false

representations …to induce the Plaintiffs and proposed Class members to deliver access to their WK Model Vehicles…." "…by virtue the fact that Defendant … continues to install its N23 Recall software, which …has the known effect of disabling the FDCM, …the Defendant maliciously intended to defraud Class members, in order to gain access to their vehicles, to limit its potential liability…." (FAC Pg 15, ¶ 102, 104, 107, 108).

It follows that Plaintiffs have not only sufficiently alleged the specific misrepresentations made by Defendant, but it has addressed the basis for its allegations concerning Defendant's intent as well.

Further, Plaintiffs allegations are not exclusive to representations made by Defendant, as Plaintiff has alleged fraudulent omissions by Defendant as well. "Where a fraudulent omission is at issue, the requirements of Rule 9(b) are relaxed, but not eliminated." *UMG Recordings, Inc.* 117 F. Supp. 3d at 1107, relying on *Waldrup v. Countrywide Financial Corp*., No. 2:13–cv–08833–CAS (CWx), 2014 WL 3715131, at *5 (C.D.Cal. July 23, 2014), see also *Huntair, Inc. v. Gladstone*, 774 F.Supp.2d 1035, 1044 (N.D.Cal.2011) (" Rule 9(b) standard is somewhat relaxed when a claim rests on an alleged fraudulent omission because 'a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act'" *Id*. See also *In re Apple & AT & TM Antitrust Litig*., 596 F.Supp.2d 1288, 1310 (N.D.Cal.2008) ("'Where the claim is one of fraud by omission ..., the pleading standard is lowered on account of the reduced ability in an omission suit 'to specify the time, place, and specific content' relative to a claim involving affirmative misrepresentations'"). *Id*.

With respect to Defendant's omissions and failure to disclose relevant facts, upon which Plaintiffs detrimentally relied, Plaintiffs allege:

"….Defendant knew [the N23 Recall] would effectively disable the FDCM of the WK Model Vehicles during the course of its repeated routine function. …Defendant concealed the detrimental impact… that the uploading of this software would have on the functionality and safety of the WK Model Vehicles." "Defendant failed to disclose this material fact, after representing that it would repair Plaintiffs vehicles, in order mislead Plaintiffs and Class

members and to provide Defendant access to their WK Model Vehicles." (FAC Pg 17-18, ¶ 126-128).

Similarly, Plaintiffs allege:

> "Defendant's disclosure of the inadvertent neutral condition, while intentionally failing to disclose that the N23 Recall would completely disable the [Vehicle's features], was deceptive and caused harm to Plaintiffs …by concealing from them, or failing to disclose to them, the loss of vehicle functionality and safety that would result following the alleged repair…" "[This fact] …was only known to Defendant, as it had exclusive knowledge of, and exclusive access to the updated software." "Defendant knew that the disabling nature of the N23 Recall software would not be readily known by Plaintiffs or Class members, as the FDCM needs to run through a certain number of routine cycles before it disables itself." "Defendant actively concealed the disabling nature of the N23 Recall software, stating to the media that the problems WK Model Vehicle owners were experiencing were unrelated, or a 'coincidence.'" (FAC Pg 18, ¶ 128-131).

Thus, Plaintiffs have alleged not only the specific misrepresentations made by Defendant, but it has alleged the specific omissions in their N23 Recall Notice, tending to cause Plaintiffs to rely, surrender their vehicles to Defendant, and suffer accordingly. It follows that for this reason as well Plaintiffs are subject to the relaxed pleading standard for their causes of action for Fraud and Fraudulent Concealment.

With respect to Defendant's assertion that Plaintiffs allegations are that Defendant would "'repair' the FDCM software on Plaintiffs' vehicles so that those vehicles would no longer unintentionally experience a transfer [case] shift into neutral," that assertion is false. The FAC does not limit its statement with respect to Defendant's promise to repair the vehicles, nor does the N23 Recall Notice. It states only that it will repair their vehicles (less inclusive is more inclusive). (See ex. FAC Pg 6 ¶ 33). Irrespective, Defendants assertion is of no consequence given the allegations that Defendants concealed the detrimental effects of said "repair." Moreover, the pleading standard does not require Plaintiffs to "establish" that representations by Defendant were false, only to

13

plead it plausibly. (See Defendant's Motion to Dismiss, Pg 11, Lines 16-17, and FAC Pg 14, ¶ 97, 98, respectively, as allegations regarding false statements by Defendant).

## E. PLAINTIFFS CAUSES OF ACTION ARE NOT BARRED BY THE ECONOMIC LOSS DOCTRINE AS NONE ARE BASED UPON CONTRACT

As Defendant acknowledges, the original manufacturer of the WK & XK Model Vehicles, was Old Carco, LLC. Defendant FCA US, LLC purchased Old Carco's assets in June 1, 2009.  It follows that as Plaintiffs vehicles were manufactured prior to Defendant's acquisition, it did not enter into any contract with Plaintiffs. More significantly, Plaintiffs causes of action do not arise from any contract, nor has any contract been alleged with Defendant. Defendant even contends that contractual liability between Plaintiffs and its predecessor do not extend to it, by virtue of a Bankruptcy Court Sale Order. (See Defendant's Motion to Transfer generally). As the economic loss doctrine "generally bars tort claims based on contract breaches, 'thereby limiting contracting parties to contract damages,' it is highly inappropriate for Defendant to make the argument that Plaintiffs cannot seek remedies in tort, indicating preclusion by a contract rule. *UMG Recordings, Inc.* 117 F. Supp. 3d at 1103, relying on *United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp*., 660 F.Supp.2d 1163, 1180 (C.D.Cal.2009) citing *Aas v. Superior Court*, 24 Cal.4th 627, 643 (2000).

Accordingly, Defendant's reliance on *Casden Builders Inc. v. Entre Prises USA*, *Inc*. is misguided. In *Casden Builders*, the "Plaintiffs and [Defendant] entered into an agreement whereby [Defendant] would design and install the indoor climbing wall," thus, it was an action based in contract. The Court found, "The economic loss doctrine prohibits recovery in tort of damages against manufacturers for purely economic loss claimed to be caused by a defective product." *Casden Builders Inc. v. Entre Prises USA*, Inc., 2010 WL 2889496 (C.D. Cal 2010). The ruling in *Casden Builders* is in no way applicable to the instant case. The injury producing events alleged in the Complaint arise from a Recall administered and implemented by Defendant FCA US, LLC, not from a

manufacturing defect created by its predecessor, Old Carco, LLC. (See FAC Pg 4 ¶ 20, see also FAC generally).

Similarly, Defendant's reliance on *Baggett v. Hewlett-Packard Co*. is misguided. The case of Baggett involved allegations that Hewlett-Packard's printers would indicate that the toner needed to be replaced, before such a need existed. The Court found that the economic loss doctrine, which limits a purchaser's recovery to breach of contract, barred plaintiff's trespass to chattel and conversion causes of action. *Baggett v. Hewlett-Packard Co*., 582 F.Supp.2d 1261 (2007). *Baggett* is distinguishable from the instant case for the same reason argued supra. In *Baggett*, the alleged harm occurred at the time of purchase, the printers were allegedly defective at the time of sale. While Plaintiffs vehicles suffered from a 'roll-away' condition at the time of sale, that is completely irrelevant to their causes of action. Plaintiffs causes of action are not based on said purported manufacturing defect, but rather the damages caused by a recall issued by the manufacturers successor, in a purported attempt to fix said defect. Thus, contract-privity is irrelevant to Defendant's alleged wrong-doing.

For the reasons argued supra, Defendant's reliance on *Ladore v. Sony Comp. Enter. Am*., *LLC*, *Sharma v. BMW of N. America, LLC*, and *Opperman v. Path* is misguided as well. Defendant cites *Opperman*, where strict liability and negligence claims were dismissed because, according to Defendant, "'[p]urely economic damages to a plaintiff which stem from disappointed expectations from a commercial transaction must be addressed through contract law.'" (Defendant's Motion to Dismiss Pages 12-13, Lines 26-27 & 1-2). Thus, as Defendants alleged wrongdoing does not arise from any commercial transaction, but rather its interference with Plaintiffs' vehicles years after purchase, said precedent is not applicable. In *Sharma*, plaintiff sued on the basis that at the time of purchase, her vehicle was defective, causing her to incur costs of repair. The negligence claim was thus barred because her suit was again, based in contract, which limits her recovery to contract damages, if not personal injury damages. *Sharma v. BMW*

15

*of N. America, LLC* 2014 WL 2795512 (N.D. Cal. 2014). The instant case is again distinguishable because Plaintiffs' damages did not exist at the time of purchase, did not stem from a contractual transaction, but were rather physically caused thereafter by Defendant. "'The economic loss rule states that there is no liability in tort for economic loss caused by negligent performance of a contract.'" *UMG Recordings, Inc.* 117 F. Supp. 3d at 1103 citing Restatement Third of Torts Economic Harm, § 3 (2012). It follows that personal injury damages would not be required. Thus, Plaintiffs causes of action are not subject to the economic loss doctrine.

## F. PLAINTIFFS HAVE PROPERLY ALLEGED CONVERSION, AS DEFENDANTS INTERFERENCE WAS SO SUBSTANTIAL AS TO RENDER PLAINTIFFS TRANSFER CASES COMPLETELY INOPERABLE

Defendants reliance on *Murray v. Laborers Union Local No. 324* is misguided, and erroneous. First, the facts of said case are in no way analogous to the instant case, and second, the standard which it sets forth is not exclusive as to the more typical and applicable standard. *Murray v. Laborers Union Local No. 324,* 55 F. 3d. 1445 (9th. Cir. 1995). In Murrays, the case dealt with title to union dues. It would be a far stretch to apply said ruling here, and moreover, it was not stated as an exclusive definition. *Spates v. Dameron Hosp. Ass'n* 114 Cal. App. 4th 208, 221 (2003) cited by Defendant offers a more applicable definition, "defendant's conversion [of plaintiff's property] by a wrongful act …and damages." (Defendants Motion to Dismiss, Pg 13, Lines 10-12.)

A more binding and applicable standard is set out in *Natomas Gardens Inv. Group*, "conversion is the wrongful exercise of dominion over personal property of another. "*Natomas Gardens Inv. Group, LLC v. Sinadinos*, 710 F. Supp. 2d 1008, 1019 - Dist. Court, ED California (2010) relying on *Moore v. Regents of the Univ. of Cal*., 51 Cal.3d 120, 137, 271 Cal.Rptr. 146, 793 P.2d 479 (1990). "A cause of action for conversion requires allegations of [a] plaintiff's ownership or right to possession of property; [the] defendant's wrongful act toward or disposition of the property, interfering

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
PLAINTIFFS' OPPOSITION DEFENDANT FCA US, LLC'S TO MOTION TO DISMISS

with [the] plaintiff's possession; and damage to [the] plaintiff. [citation]." *Id.* citing *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal.App.4th 384, 395, 58 Cal.Rptr.3d 516 (2007) quoting *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1491, 49 Cal.Rptr.3d 227 (2006).

With respect to the above standards, there is no requirement for Defendant to have exercised ownership over Plaintiffs vehicles. Only for Plaintiffs to own the damaged property, for Defendant to have wrongfully exercised control over it, thereby causing damage. In the FAC, Plaintiffs have easily satisfied each of said elements. (See FAC Pg 11 ¶ 71 as to Plaintiffs ownership, FAC Pg 13 ¶ 93 regarding Defendants "substantial[] interference with [Plaintiffs] use and possession of these vehicles," and *Id.* regarding damage.) Conversion is typically regarded as a similar cause of action to that of trespass to chattel, with the interference being substantial. See *Zaslow v. Kroenert* (1946) 29 Cal.2d 541, 551–552. With respect to the interference being substantial, not only have the Plaintiffs alleged a complete loss of use of all of the electronically actuated features of their transfer case, but they have alleged that the defect caused by the N23 Recall is "un-repairable by conventional means." (See FAC Pg 11, ¶ 74-76 & Pg 13 ¶ 92). Thus, the N23 Recall has irreparably caused the transfer case to operate as a passive mechanism, and it follows that such interference is at least "substantial."

While Defendant argues that Plaintiffs offered their vehicles to Defendant voluntarily, this is irrelevant for two reasons. First, Plaintiffs delivered their vehicles for the FDCM to be "repaired," not "disabled," and did not consent to such disablement. (FAC Pg 11, ¶ 79). Second, consent is negated when it is given under false pretenses, or as a result of the misrepresentations by Defendant. (See FAC cause of action for Fraud generally). "One who uses a chattel with the consent of another is subject to liability in trespass for any harm to the chattel which is caused by or occurs in the course of any use exceeding the consent." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1070 - Dist. Court, ND California (2000) citing *City of Amsterdam v. Daniel Goldreyer,*

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
PLAINTIFFS' OPPOSITION DEFENDANT FCA US, LLC'S TO MOTION TO DISMISS

*Ltd.*, 882 F.Supp. 1273, 1281 (E.D.N.Y.1995) Thus, Plaintiffs have properly plead a cause of action for conversion, and have not negated the elements by virtue of the fact that Defendant exceeded the scope of consent in causing damage to Plaintiffs' vehicles.

## G. PLAINTIFFS HAVE PROPERLY PLED FACTS SUPPORTING DEFENDANTS EXCLUSIVE KNOWLEDGE OF THE RECALL IT DESIGNED, AND ITS ASSOCIATED FUNCTION

Defendant's restatement of the law supporting a duty to disclose is limited in focus. As the Court in *Falk* found, a duty to disclose can arise from not only "a fiduciary relationship with the plaintiff," or "when the defendant had exclusive knowledge of material facts not known to the plaintiff," but also "when the defendant actively conceals a material fact from the plaintiff," or "***when the defendant makes partial representations but also suppresses some material fact***." *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088 - Dist. Court, ND California 2007 (emphasis added) citing *LiMandri v. Judkins*, 52 Cal.App.4th 326, 337, 60 Cal.Rptr.2d 539 (1997). Similarly, as the Court in *Chiarella* found, "[a]n affirmative duty to disclose material information … has been traditionally imposed on corporate `insiders,' particularly officers, directors, or controlling stockholders. We, and the courts have consistently held that insiders must disclose material facts which are known to them by virtue of their position but which are not known to persons with whom they deal and which, if known, would affect their … judgment." *Chiarella v. United States*, 445 US 222, 227 (1980) citing *In Cady, Roberts & Co.*, 40 S. E. C. 907, 911.

As an initial matter, as argued in great detail supra, Plaintiffs have alleged on numerous occasions that their vehicles were subject to the N23 recall, and that said recall was performed on their vehicles. (FAC Pg 11, ¶ 72, see FAC generally, see also ex. Pg 12, ¶ 82, Pg 13, ¶ 90 & 93, Pg 17, ¶ 124, Pg 19 ¶ 136 & 137). Plaintiffs have further alleged that Defendant had exclusive knowledge of the detrimental effects of the N23 Recall. (See FAC Pg 18 ¶ 129).

Defendant relies on *Grodzitsky v. American Honda Motor Co., Inc*. which relied on a Ninth Circuit opinion in *Wilson v. Hewlwtt-Packard Co*, in support of its contention that Plaintiffs have not sufficiently pled that Defendant had exclusive knowledge of the detrimental effects of its recall. Defendant's assertion fails to consider several very specific sets of facts alleged in the FAC regarding its exclusive knowledge. As a review of the standard set for in *Wilson*, the Court found the claimants allegations to be insufficient because they made only a "generalized assertion that the Laptops' alleged 'inadequate Design for Reliability' put HP on notice that the Laptops 'were and are seriously defective,' but reference neither the specific defect alleged in the complaint nor HP's knowledge of that defect." *Wilson v. Hewlett-Packard Co*., 668 F 3d 1136, 1145, 1147 (9th Cir. 2012). The Court found the generalized allegation of exclusive knowledge could not stand with no facts alleged that anything had "alerted HP to the defect." *Id*. at 1147. Thus, the Court found insufficiency not only because no facts were provided to support the generalized assertion that the defendant had exclusive knowledge, but they failed to allege even "the specific defect."

The facts alleged in the instant case are thorough to support the allegation that Defendant had exclusive knowledge of the defects caused by the N23 Recall in several different respects. First, and contrary to the case in *Wilson*, Plaintiffs have not only specified the "specific defect," but they have related it to Defendants' recall, the service instruction for said recall, they have explained exactly which computer module in the car is affected, specifically and electronically how it is affected, and how the detrimental effects of the recall present themselves in the vehicle. (See FAC Pg 5, ¶ 27, 29, 32). Second, Plaintiffs allege that "As Defendant is exclusively responsible for the design and implementation of recalls of the WK Model Vehicles, Defendant could not have implemented the N23 Recall without having itself, or through its agents, designed and programmed the updated software implemented via said Recall, and in so doing, Defendant was aware of the nature of the software and its intended use and impact on the

functionality and safety of the affected WK Model Vehicles," thereby identifying the reason and source of Defendants' exclusive knowledge, prior to its implementation. (FAC Pg 15, ¶ 102).

Third, irrespective of said logic, **after** performing the recall, "Defendant's agents and service technicians have [admit] to Plaintiffs that the N23 Recall is in fact what disables the FDCM in the WK Model Vehicles," yet, as alleged, to this day Defendant **continues** to implement the defective recall. (FAC Pg 15, ¶ 103, 108). Thus, Defendants agents have even admit knowledge of the defect, and given that it continues to perform the recall, without having disclosed, and without disclosing its detrimental effects, it continues to administer it with said knowledge. Moreover, Plaintiffs plead that "Defendant actively concealed the disabling nature of the N23 Recall software, stating to the media that the problems WK Model Vehicle owners were experiencing were unrelated, or a 'coincidence.'" Thus, as pled, Defendants became aware of the detrimental effects of its recall via the media, yet it failed to disclose this adverse consequence to the vehicle owners, and continues to do so. (FAC Pg 18 ¶ 131). Thus, for both of these reasons as well, Plaintiffs have pled facts that Defendant actively concealed said detrimental facts towards Plaintiffs and all of the WK Model vehicle owners alike.

Further, Plaintiffs FAC also meets the fourth option criteria for alleging facts supporting a duty to disclose set out in *Chiarella*, supra, in that Defendant disclosed certain material facts, while failing to disclose others. "Defendant's disclosure of the inadvertent neutral condition, while intentionally failing to disclose that the N23 Recall would completely disable the ...WK Model Vehicle's transfer cases, was deceptive and caused harm to Plaintiffs ... by concealing from them, or failing to disclose to them, the loss of vehicle functionality and safety that would result following the alleged repair to the WK Model Vehicles." (FAC Pg 18, ¶ 128). It follows that Plaintiffs FAC meets the pleading standard for this reason as well.

Defendant's reliance on *Marcus v. Apple Inc*. and *Herremans v. BMW* in its finding that claimants had failed to sufficiently allege knowledge should not be persuasive here. As said cases did not allege facts supporting a duty to disclose akin to the specific facts alleged in the instant case. To illustrate, in *Marcus*, the court noted that the allegations were limited to the assumption that the defendant should have had knowledge of the defects because of anonymous consumer complaints online. *Marcus v. Apple, Inc*. 2015 WL 1743381 (N.D. Cal. 2015). Similarly, Defendant's reliance on

Regardless of Plaintiffs' specific and factually supported allegations concerning Defendant's exclusive knowledge, Defendant cannot reasonably assert that it is excluded from its duty to disclose the detrimental effects of its recall simply because its recall, by its total disabling nature, has prevented the inadvertent neutral shift for which it was intended. (See Defendant's Motion to Dismiss Pg 11, Lines 13-17). To set the precedent that such behavior was acceptable, would be akin to a finding that an auto-manufacturer need not disclose that its recall will completely disable a driver's vehicle, so long as it accomplishes its singular intention of curing a safety-defect, because of course, if a vehicle cannot be driven, such a defect would no longer pose a threat. Defendant's reliance on precedent that omissions do not constitute active concealment is misguided, as it fails to consider the condition set forth in *Gray v. Toyota Motor Sales* to said precedent. In Gray, the Court noted that an omission does not constitute active concealment "**unless** a **safety issue** is present or there has been some **affirmative misrepresentation.**" *Gray v. Toyota Motor Sales* No 12-55362 (9th Cir. Feb 5, 2014). In the instant case, as argued in much greater detail supra, Plaintiffs have alleged Defendant's affirmative representation, such that it would "repair" Plaintiffs vehicles as opposed to disabling them, and further, Plaintiffs have alleged that the loss of use of the transfer case function is a safety concern. (FAC Pg 14, ¶ 96, 97 & Pg 15 ¶ 102, 108).

## H. PLAINTIFFS DO NOT SEEK DAMAGES UNDER A BREACH OF CONTRACT THEORY AND ARE NOT PRECLUDED FROM ALLEGING PROMISSORY ESTOPPEL IN ANY EVENT

Defendant inappropriately blurs the precedent with respect to a cause of action for promissory estoppel and legal remedies. Defendant relies on *Shahata v. W Steak Waikiki, LLC*. As Defendant summarizes, a case where the district court's finding was affirmed "finding that promissory estoppel claim was not **necessary** because plaintiff sought damages for breach of contract." (Defendant's Motion to Dismiss Pg 16, Line 17, emphasis added). Defendant cites further cases to the same, none of which are applicable to the instant case. The case of *Shahata*, as Defendant concedes, dealt with a contract and contract remedies, the instant case does not. Defendant has failed to show, or even failed to argue that the instant case is based in contract, because it is not. Further, the district court in *Shahata*, while acknowledging that "promissory estoppel is an equitable remedy," did not dismiss said cause of action, even despite the claimant's alternatively pled breach of contract claim. *Shahata v. W Steak Waikiki*, LLC 721 F.Supp.2d 968, 981-982 (2010) Thus, Defendant has failed to cite any authority proving that Plaintiffs claim for promissory estoppel will not stand, let alone as at least an alternative theory.

## I. PLAINTIFFS HAVE PROPERLY PLED ALLEGATIONS TO MAINTAIN A CAUSE OF ACTION FOR UNFAIR AND DECEPTIVE BUSINESS PRACTICES

Plaintiffs' allegation that "as a … result of the acts and omissions addressed herein… Defendant was able to unfairly compete with other automobile manufacturers and sellers because it was able to charge lower prices," is best put into context by Plaintiffs concurrent allegations that "Defendant has saved itself millions of dollars in the cost of replacing the FDCM in the WK Model Vehicles," and that "Defendant has saved itself from potential liability" from inadvertent roll-aways. (See FAC Pg 23 ¶ 173 & Pg 22 ¶ 164-165). In essence, Plaintiffs allegations are tantamount to an argument that as Defendant has opted to disable components in Plaintiffs' vehicles, via a recall mandated by NHTSA, to mimic compliance and save itself from liability, Defendant has unfairly saved itself the cost of proper repairs, thereby giving itself an unfair advantage in the market (as other manufacturers must incur the expense of fair & legal compliance).

With respect to Defendant's assertion that Plaintiffs FAC fails to adequately allege unfair or unlawful practices, or fraud, based on the arguments in its Motion to Dismiss generally, Defendant has shown supra why all of said arguments fail. (See also, FAC Pg 14, ¶ 95-98).

Similarly, Plaintiffs have alleged facts tantamount to an allegation that Defendant's conduct was violative of public policy (as argued supra, with respect to unfair competition in the face of NHTSA compliance), and to the alternative standard, Plaintiffs have made abundant factual allegations supporting the fact that Defendant's conduct was unethical, oppressive, unscrupulous, or substantially injurious to the consumers. Defendant's conduct was unethical as it made the representation that it would "repair" Plaintiffs' vehicles in order to gain "access" to their vehicles, "in order to disable the functionality of their vehicles, and specifically did so to save itself from liability." (FAC Pg 22, ¶ 167, 168, Pg 23 ¶ 170). Along these lines, Plaintiffs further allege that Defendant "knew" that the N23 Recall would disable Plaintiffs' transfer cases, as opposed to repairing them. (See FAC Pg 14 ¶ 101). With respect to the alternative theory, that the conduct must be "substantially injurious" to consumers, Plaintiffs have pled specific facts showing said injuries, as argued in more detail supra. (See also FAC Pg 2 ¶ 2, Pg 16, ¶ 115, Pg 18 ¶ 132, Pg 29, ¶ 211, 212, Pg 30, ¶ 222.)

Finally, Defendant's purported summary of the facts alleged in the FAC is not supported by the FAC itself, it is presumed more likely a summary of Defendant's position, and it should thus be disregarded as factually unsupportable. Defendant contends that Plaintiffs allege that it conducted a "free repair" which caused "some unintended effects," and that it "undertook a customer service action (CSN) and offered additional free repairs to address the unintended effects." (Defendant's Motion to Dismiss Pg 18 Lines 6-8). First, there are no allegations in the FAC to support the above quotes from Defendant's summary. Nowhere do Plaintiffs allege that Defendant's performance was in fact a "repair," on the contrary, Plaintiffs alleged it disabled their

vehicles. (FAc Pg 11, ¶ 74-76). Nowhere do Plaintiffs allege Defendant's conduct was unintended, to the contrary, Plaintiffs allege an intent to deceive. (FAC Pg 15, ¶ 102, 104). Finally, Plaintiffs allege that the P73 customer satisfaction notification was ineffective, and further that Defendant's agents acknowledged this. (FAC Pg 6, ¶ 36, 37).

## J. PLAINTIFFS HAVE SUFFICIENTLY PLED FACTS TO SUPPORT STRICT LIABILITY & BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY, *BUT AGREE TO DISMISS SAID CAUSES OF ACTION, ONLY*

Plaintiffs maintain that they have alleged all facts necessary to support causes of action for strict liability, and breach of implied warranty of merchantability. Consistent with the trend supra, Plaintiffs maintain that the precedent upon which Defendant relies has been taken out of context, is not exclusive, and is not applicable or relevant to the instant case. Plaintiffs aver that as the breach arises from the recall, and not the date of manufacture, they are not barred from asserting said causes of action by the applicable statute of limitations.

However, in in the interests of economy and for clarity, Plaintiffs will and hereby do agree to dismiss the ninth and tenth causes of action, for Strict Products Liability, and for Breach of Implied Warranty of Merchantability respectively, without prejudice, from the FAC. (See concurrently filed Request for Dismissal of Ninth and Tenth Causes of Action Without Prejudice). This way, there can be no confusion that Plaintiffs causes of action are strictly limited to acts of Defendant FCA US, LLC in its implementation of the N23 Recall, and have nothing to do with its predecessor, nor any manufacturing defects.

## K. PLAINTIFFS CAUSE OF ACTION FOR DECLARATORY RELIEF DOES NOT CONFLICT WITH ANY NHTSA MANDATE, NOR IS IT DUPLICATIVE

Defendant has failed to cite any authority which would tend to deprive this Court of jurisdiction to determine whether Defendant's actions are legal, or which would deprive Plaintiffs the right to be heard, regardless of non-exclusive irrelevant administrative processes. Contrary to Defendant's assertion, Plaintiffs have not

'attacked' the findings of NHTSA, Plaintiffs are perfectly amenable to the NHTSA findings. Plaintiffs only seek redress for the actions Defendant has independently taken, whether said actions arise from mandates by the NHTSA is incidental. Thus, the precedent cited by Defendant in *Adams v. Resolution Trust Corp*. is in no way applicable. Plaintiffs wish for the NHTSA mandate to remain in place, they only seek that Defendant act fairly and legally with respect to action it takes independently. It follows that there is absolutely no support for Defendant's assertion that Plaintiffs seek for this Court to "overrule" or in any way interfere with NHTSA mandate requiring Defendant to implement a safety-recall. (Defendant's Motion to Dismiss Pg 23, Line 9).

Defendant is further incorrect in its assertion that Plaintiffs seek redress for only past-wrongs, as it has been alleged that Defendant continues to administer the N23 Recall, and continues to charge proposed class members for its futile repair attempts. (See FAC Pg 31, ¶ 230, Pg 22, ¶ 162, Pg 18, ¶ 132). Further, Plaintiffs cause of action for declaratory relief is not duplicative, as no other cause of action can remedy the incorrect statements published by Defendants, nor rectify the incorrect information disseminated. Moreover, a judicial declaration of the inadequacy of the recall would provide a basis for alternate independent relief.

## CONCLUSION IV.

For the reasons argued supra, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss in its entirety. Alternatively, Plaintiffs request this Court grant leave to amend the FAC, as all causes of action can be cured by by amendment.

Dated: June 20, 2016            **A.O.E. LAW & ASSOCIATES**

_____

Victoria Orafa, Esq.
Attorney for Plaintiff and Proposed Class
Members

25

## CERTIFICATE OF SERVICE

     I hereby certify that on June 20, 2016 I electronically filed the foregoing document using the CM/ECF system, which will send notification of said filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

Dated: June 20, 2016             **A.O.E. LAW & ASSOCIATES**

                                   Victoria Orafa, Esq.
                                   Attorney for Plaintiff and Proposed Class Members

# PROOF OF SERVICE

STATE OF CALIFORNIA                    )
                                       ) ss.
COUNTY OF LOS ANGELES )

     I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen (18) years and am not a party to the within action; my business address is: 350 S. Figueroa Street, Suite 189, Los Angeles, CA 90071.

     On **June 20, 2016**, I served the following document described as **PLAINTIFFS' OPPOSITION TO DEFENDANT FCA US, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT,** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes, at Los Angeles, addressed as follows:

## PLEASE SEE ATTACHED SERVICE LIST

**__X_ (BY REGULAR MAIL)**:  I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at Los Angeles, California.  I am "readily familiar" with firm's practice of collection and processing correspondence for mailing.  It is deposited with U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

__X__ (FEDERAL): I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

     EXECUTED on **June 20, 2016** at Los Angeles, California.


                        /s/ Aliyah Guidry
                        Aliyah Guidry

1  Rowena Santos
2  rsantos@thompsoncoburn.com
   THOMPSON COBURN LLP
3  2029 Century Park East, 19th Floor
4  Los Angeles, CA 90067

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**28**
**PROOF OF SERVICE**