Anthony O. Egbase (SBN: 181721)
Victoria T. Orafa (SBN: 265037)
A.O.E. LAW & ASSOCIATES, INC.
350 S. Figueroa Street, Suite 189
Los Angeles, California 90071
Tel: (213)620-7070      Fax: (213)620-1200

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| LYNN GRIMSTAD, an individual, and on behalf of all others similarly situated, and MARA MANUEL, an individual, and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br><br>                    -vs-<br><br><br>FCA US, LLC, a Michigan Limited Liability Company; and DOES 1 through 300,000 inclusive,<br><br>                    Defendant. | **Case No.: 8:16-CV-00763-JVS-E**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT FCA US, LLC'S MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**[CLASS ACTION]**<br><br>Date: July 11, 2016<br>Time: 1:30pm<br>Judge: James V. Selna<br>Courtroom: 10C |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs Lynn Grimstad and Mara Manuel, will and hereby do Oppose Defendant FCA US, LLC's Motion to Transfer set for hearing July 11, 2016 at 1:30pm in Courtroom 10C of the above captioned Court, located at 411 West Fourth St. Room 1053, Santa Ana, CA 92701.

PLAINTIFFS OPPOSITION TO DEFENDANT FCA US, LLC'S MOTION TO TRANSFER

The Opposition will be based upon the fact that:

1) The injury producing events alleged in the Complaint arise from a Recall administered and implemented by Defendant FCA US, LLC, not from a manufacturing defect created by its predecessor, Old Carco, LLC.

2) The injury producing events alleged in the Complaint occurred on and after July 2013, subsequent to the Bankruptcy filing by Old Carco in April of 2009, and even subsequent to confirmation of the plan in April of 2010.

3) Assuming arguendo that the timing of the allegations did not reveal that the instant causes of action are only proper against Defendant FCA US, LLC, the Bankruptcy Court is an improper forum as this is a "non-core proceeding," and the causes of action are not reasonably associated with any issues in Bankruptcy.

4) A transfer of the California resident's claims to a New York Bankruptcy Court, where they will be unrepresented, is not only extraordinarily inconvenient within the meaning of 28 U.S.C. 1412, but it may also effectively deprive Plaintiffs of adequate representation.


The Opposition will be based on this Notice, on the attached memorandum of points and authorities, the exhibits, on the First Amended Verified Complaint filed in the instant action, and on the papers and records on file and on such other evidence as may be presented prior to or at the hearing of this motion.

Dated:  June 13, 2016                    **A.O.E. LAW & ASSOCIATES**

_____
Victoria Orafa, Esq.
Attorney for Plaintiff and Proposed Class
Members

PLAINTIFFS OPPOSITION TO DEFENDANT FCA US, LLC'S MOTION TO TRANSFER

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................................. 1

I.    INTRODUCTION…………………………………………………………1

II.   ARGUMENT………………………………………………………..…..3

   A. PLAINTIFF'S CAUSES OF ACTION ARE BASED ON DEFENDANT'S JULY
      2013 RECALL, NOT A MANUFACTURING DEFECT, THUS OLD CARCO
      AND ITS BANKRUPTCY ARE ABSOLUTELY IRRELEVANT…………..3

   B. PLAINTIFFS' CAUSES OF ACTION ARISE FROM DEFENDANT'S
      ACTIONS NECESSITATED BY 49 U.S.C. 30116 - 30120, UNDER WHICH IT
      ACKNOWLEDGES IT IS BOUND TO COMPLY, AND IT IS THUS
      LIABLE.................................................................................8

   C. ALLEGATIONS UNDERLYING PLAINTIFFS' CLAIMS……………..……9

   D. NO COURT HAS MADE ANY ORDER THAT DEFENDANT SHALL BE
      IMMUNE TO LIABILITY FOR ITS OWN ACTIONS…………………………9

   E. THE BANKRUPTCY COURT LACKS JURISIDICTION TO HEAR THIS
      MATTER AS IT IS A NON-CORE PROCEEDING, AND IN NO WAY
      RELATED TO DEFENDANT'S PREDECESSOR'S SALE ORDER…...…….11

   F. TRANSFER OF THIS CASE TO BANKRUPTCY COURT WOULD BE
      IMPROPER AS IT MAKES NO CLAIMS AGAINST THE OLD CARCO
      ESTATE & AS IT WOULD BE EXTRAORIDINARILY INCONVENIENT
      WITHIN THE MEANDING OF 28 U.S.C. 1412………………………………13

III.  CONCLUSION…………………………………………………...…………17

# TABLE OF AUTHORITIES

## <u>Statutes</u>

28 U.S.C. 157(b)(1)……………………………………………..………11

28 U.S.C. 157(c)(1)……………………………………………..………..11

28 U.S.C. 1412…………………………………………………….…13, 14

Cal. Business & Professions Code 17200…………………………..…………11


## <u>Case Law</u>

*In re Goodman*, 991 F 2d 613, 617 (9th Cir. 1993)……………………………..……11

*In re Harris Pine Mills*, 44 F, 3d 1431, 1435-1436 (9th Cir. 1995)……………………..11

*In re Kold Kist Brands, Inc*. 158 B.R. 175, 178 (C.D. Cal. 1993)……………….…….11

*Stern v. Marshall* 131 S. Ct. 2594, 2611 (2011)……………………….………………11

*Quesenberry et al v. Chrysler Group, LLC* et al, No. 7:2012cv00048 - Doc 7 (E.D. Ky. 2012)………………………………………………………..………………12

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION I.

This is a ***recall-defect*** class action. Plaintiffs' specify recall-defect as ***the causes of action are based on a defect in a recall which Defendant itself implemented, and not a manufacturing defect*** for which its predecessor, Old Carco, may be liable.

Plaintiffs allege that Defendant recalled class vehicles, and knowingly performed a software patch to disable their four wheel low/ lock and transfer case neutral capability, rather than correct a physical susceptibility to fractures in their computers (which could cause an inadvertent roll-away condition). Plaintiffs' causes of action seek redress for damages caused by the recall, not for the vehicles' manufacturing defects.

As of July of 2013, Defendant FCA US discovered a defect in the Final Drive Control Module ("FDCM") of its Jeep Grand Cherokees model years 2005 through 2010, and Jeep Commanders model years 2006 through 2010, specially optioned and equipped with the Quadra-Drive II or Quadra-Trac II, four wheel drive systems ("WK & XK Model Vehicles"). The defect originates from a hardware defect in the FDCM, whereby the circuit board will suffer from a stress fracture. Defendant claimed that this malfunction may result in a condition whereby the WK & XK Model Vehicles will "unintentionally … shift into neutral position without input from the driver." (See Defendant's Service Bulletin as Exhibit 1 to the First Amended Complaint "FAC").

In the intended prevention of this potential issue, Defendant issued a recall notice to WK & XK Model Vehicle owners. (See sample notice attached as Exhibit 2 to the FAC). Rather than replace the affected hardware in the FDCM, or replace the FDCM model itself with a revised model, Defendant opted for a relatively inexpensive option, and it designed, developed, and implemented a software update to upload to the existing, fracture prone, FDCMs (implemented as "the N23 Recall").

The N23 Recall, was designed, and did effectively disable the WK & XK Model Vehicle's FDCMs during the course of its repeated routine function. The FDCM is a

1

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF**
**PLAINTIFFS' OPPOSITION DEFENDANT FCA US, LLC'S TO MOTION TO TRANSFER**

self-contained computing instrument, and it evaluates data received from sensors in the vehicle, via real-time data. The software update, designed by Defendant, causes the FDCM to disable itself after receiving data which is typical of its repeated routine function. Plaintiffs are informed and believe that the purpose of this design, was to cause the disablement of any potentially fractured or defective FDCMs, thereby preventing inadvertent neutral shifting or 'roll-aways' of the WK and XK Model Vehicles. In performing this recall, Defendant has saved itself millions of dollars in the cost of replacing the FDCM in the WK & XK Model Vehicles.

As a by-product of this disablement however, the N23 Recall also disabled the four wheel drive low gear capability, four wheel lock capability, and transfer case neutral shift capability of all WK & XK Model Vehicles 'updated' by the Recall.

Plaintiffs sue on the basis that Defendant represented that it would "repair [Plaintiffs'] vehicle[s] free of charge," yet, it only sought to gain access to Plaintiffs' WK & XK Model Vehicles, in order to disable the functionality of Plaintiffs' vehicles, to save itself from liability in the event that Plaintiffs' vehicles might shift into neutral. (See sample N-23 Recall Notice attached as Exhibit 2 to the FAC). Defendant, via its N23 Recall, thereby converted Plaintiffs' specially optioned and equipped four wheel drive low gear capability, and four wheel lock vehicles, into a lesser equipped static all-wheel drive vehicle, without giving notice of these adverse effects, and without obtaining permission, authority, or consent for this conversion from Plaintiffs and the Class of other similarly situated purchasers of the WK & XK Model Vehicles.

The original manufacturer of the WK & XK Model Vehicles, Old Carco, LLC filed for Bankruptcy on April 30, 2009, and its assets were purchased by Chrysler Group LLC in June 1, 2009 (which thereafter merged with Fiat S.P.A., and was later renamed FCA US , LLC in December of 2014). ***Plaintiffs causes of action arise from the July 2013 recall implemented by Defendant FCA US, LLC, not from the purported defect from the manufacturer, Old Carco.***

# ARGUMENT II.

## A. PLAINTIFF'S CAUSES OF ACTION ARE BASED ON DEFENDANT'S JULY 2013 RECALL, NOT A MANUFACTURING DEFECT, THUS OLD CARCO AND ITS BANKRUPTCY ARE ABSOLUTELY IRRELEVANT

Defendants assertion that the "Sale Order bars civil claims against FCA US... which arise of FCA US's actions in fulfilling duties imposed by the Safety Act" is not supported by the Sale Order itself. (See Defendant's "Memorandum" in Support of its Motion to Transfer  Page 1, Lines 17-20 in Contrast with the Sale Order Page 47-48, Ex. 2 to Defendant's Request for Judicial Notice (RJN), Para 35). The Sale Order itself limits Defendant's liability from actions arising from claims that existed "(a) prior to the Closing Date (b) relates to the production of vehicles prior to the Closing Date or (c) or otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing Date." (Sale Order Page 47, Ex. 2 in Defendant's RJN, Para 35). This limitation may be relevant in the event Plaintiffs elected to bring a cause of action for the purported manufacturing defect itself, yet they have not, and that is not what this suit is about. Plaintiffs do not sue for injuries resulting for injuries resulting from inadvertent neutral shifts, or "roll aways" caused by the purported defective FDCMs. Plaintiffs in fact have not had said experience, and in fact Plaintiffs do not even have knowledge that the FDCMs are defective from the manufacturer. Any allegations of defects in the FDCMs are based entirely on Defendant's representation that said units are defective and in need of their N23 Recall. (See FAC Page 5, Para 23). Plaintiffs' causes of action are based rather exclusively on the N23 Recall itself, Defendants' money-saving intentions with respect to the N23 Recall, and the problems caused by the N23 Recall; said recall was again implemented in July of 2013 by Defendant FCA US, LLC, not its predecessor, and thus its predecessor's bankruptcy is absolutely irrelevant. (See FAC generally, or Page 14, Para 95-100).

The Sale Order further holds that Defendant shall not be deemed to be (a) "a legal successor" (with exceptions) (b) "merged with or into Debtors" (c) or be a "continuation" of "Debtor" or its "enterprise." (Sale Order Page 47, Ex. 2 in the RJN, Para 35). This limitation is again of no relevance to the causes of action asserted in Plaintiffs' suit. Plaintiffs' suit is based exclusively on injuries arising from the N23 Recall, implemented in July of 2013 (See FAC Page 14, Para 95) by Defendant FCA US, LLC, not its predecessor. Moreover Plaintiffs' causes of action are not even, under any theory, assertable against Defendants' predecessor Old Carco, as the actions which are alleged to have caused Plaintiffs injuries arose following its dissolution. Thus, Plaintiffs' causes of action are not, and could not be contingent upon any theory of successor liability with respect to Defendants' predecessor, Old Carco.

As Plaintiffs causes of action (trespass to chattel, conversion, fraud, fraudulent concealment, negligent misrepresentation, promissory estoppel, unfair and deceptive business practices, negligence, strict products liability, breach of implied warranty of merchantability, and declaratory relief) all arise from the July 2013 recall implemented by Defendant FCA US, LLC, not from the purported defect from the manufacturer, Old Carco, it follows that as it was Defendant that implemented the injury producing recall, and Defendant that continues to implement this recall, the causes of action asserted by this suit are appropriately against it, and the bankruptcy of its predecessor is of no consequence.

*Allegations Generally*

As alleged in the FAC, Defendant FCA US, LLC's actions arise following its discovery of "a defect in the Final Drive Control Module ("FDCM") of its WK Model Vehicles," in "July of 2013." (FAC Page 4, Para 20.) "Rather than replace the affected hardware in the FDCM, or replace the FDCM model itself with a revised model, Defednatn opted for a relatively inexpensive option, and it designed, developed, and implemented a software update to upload to the existing, fracture prone FDCMs" (the

4

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
PLAINTIFFS' OPPOSITION DEFENDANT FCA US, LLC'S TO MOTION TO TRANSFER**

N23 Recall) (FAC page 5 Para 25). "The software update, designed by Defendant, intentionally causes the FDCM to disable itself after receiving date which is typical of its repeated routine function." (FAC page 5 Para 27). Thus, it is apparent in reviewing the FAC that the alleged injurious conduct occurred by Defendant itself, not its predecessor, on and after July of 2013, years after execution of the Bankruptcy Court Sale Order (executed June 1, 2009).

Accordingly, the causes of action in the FAC allege injurious conduct by Defendant itself, alleging problems with a recall, not a manufacturing defect, occurring years after execution of the Sale Order:

*Trespass to Chattel & Conversion*

As alleged in the FAC, "Defendant substantially interfered with Plaintiffs' and Class members' WK Model Vehicles when it performed the N23 Recall on said vehicles and diminished their value as a result. (FAC Page 11 Para 73, see also Page 13 Para 93).

*Fraud & Fraudulent Concealment*

As alleged in the FAC, "The software update to the FDCM, or the N23 Recall, was designed, and did effectively disable the WK Model Vehicle's FDCM during the course of its repeated routine function." "Defendant, in designing and testing the N23 Recall software update, knew that it would disable the WK Model Vehicle's FDCM, as opposed to 'repairing' it." (FAC Page 14, Para 100-101). "The N23 Recall service consisted of uploading updated software into Plaintiffs vehicles, which Defendant knew would effectively disable the FDCM of the WK Model Vehicles during the course of its repeated routine function.   Upon information and belief, Defendant concealed the detrimental impact, or the extent of the detrimental impact, that the uploading of this software would have on the functionality and safety of the WK Model Vehicles." (FAC Page 17, Para 126).

///////

///

*Negligent Misrepresentation*

As alleged in the FAC, "Plaintiffs aver that, even if Defendant believed that its N23 Recall would in fact repair the FDCM of Plaintiffs' and Class members' WK Model Vehicles, that it had no basis for believing said representation was true when Defendant made it." (FAC Page 19, Para 139).

*Promissory Estoppel*

As alleged in the FAC, "Defendant promised Plaintiffs, and Class members, via its N23 Recall Notice … that it would "*repair*" their vehicles free of charge." (FAC Page 20, Para 148).

*Unfair and Deceptive Business Practices*

As alleged in the FAC, "Rather than replace the purportedly fracture prone hardware in the FDCM, or replace the FDCM model itself with a revised model, Defendant opted for a relatively inexpensive option, and it designed, developed, and implemented a software update to upload to the existing FDCMs." "The software update to the FDCM, or the N23 Recall, was designed, and did effectively disable the WK Model Vehicle's FDCM during the course of its repeated routine function." (FAC Page 22, Para 158, 159).

*Negligence*

As alleged in the FAC, "Defendant, in installing the N23 Recall software, which caused the FDCM to disable the WK Model Vehicles' four wheel drive low gear capability, four wheel lock capability, and transfer case neutral shift capability, breached their duty to Plaintiffs and Class members to properly repair their vehicles." (FAC Page 25, Para 186).

*Declaratory Relief*

As alleged in the FAC, "An actual controversy regarding the disabling of the four wheel drive low gear capability, four wheel lock capability, and transfer case neutral

shift capability of WK Model Vehicles in relation to the N23 Recall software, has arisen between Defendant and Plaintiffs." (FAC Page 30, Para 228).

_Strict Products Liability & Breach of Implied Warranty of Merchantability_

The only causes of action alleged which could, if misconstrued, by argued to relate to Defendants predecessor are the ninth and tenth causes of action, for Strict Products Liability, and for Breach of Implied Warranty of Merchantability respectively. Such causes of action is typically alleged as to design defects from the manufacturer, yet in the instant case, they are alleged as to Defendants' delivery of defective vehicles from their service department, following the July 2013 Recall, not from defects relating to the date of original manufacture. (See FAC Page 27, Para 198-199, and Page 29, Para 215-218). "In performing the N23 Recall, Plaintiffs and Class members' WK Model Vehicles left Defendant's service departments with a defective software which would inevitably render the [features] disabled and inoperable." (FAC Page 27, Para 199). "Defendant… was a reputable servicer… and was in the business of repairing said vehicles…" and "as a consequence of Defendants installation of the N23 Recall software… Defendants disabled [the functionality] of Plaintiff's vehicles." (FAC Page 29, Para 216, 218).

However, in an abundance of caution, Plaintiffs will and hereby do agree to dismiss the ninth and tenth causes of action, for Strict Products Liability, and for Breach of Implied Warranty of Merchantability respectively, without prejudice. (See concurrently filed Request for Dismissal of Ninth and Tenth Causes of Action Without Prejudice). This way, there can be absolutely no confusion that Plaintiffs causes of action are strictly limited to acts of Defendant FCA US, LLC itself, in its implementation of the N23 Recall, which occurred several years after its predecessor's bankruptcy confirmation, and further having nothing to do with its predecessor, nor directly arising from any manufacturing defect of the vehicles.

## B. PLAINTIFFS' CAUSES OF ACTION ARISE FROM DEFENDANT'S ACTIONS NECESSITATED BY 49 U.S.C. 30116 - 30120, UNDER WHICH IT ACKNOWLEDGES IT IS BOUND TO COMPLY, AND IT IS THUS LIABLE

Defendant acknowledges that via the Sale Order, it has agreed to assume its predecessor's obligations arising under 49 U.S.C. 30116 through 30120 of the NTMVSA (National Traffic and Motor Vehicle Safety Act), to essentially remedy safety defects in its vehicles. Defendant notes that it "'shall not otherwise be liable for ***any failure by Debtors*** to comply with the provisions of the NTMVSA.'" (Defendant's Memorandum Page 3, Lines 23-24 quoting Sale Order Page 28, Ex. 2 of Defendant's RJN, Article EE, emphasis added). It then goes on to note that the Bankruptcy Court retainer jurisdiction to enforce said terms.

Said jurisdiction would absolutely be applicable if the instant suit sought redress for Defendant's predecessor's failure to comply with the NTMVSA prior to entry of the Sale Order, yet again, that is not what this case is about. Plaintiffs seek redress for Defendant's actions necessitated by their obligation to perform under the NTMVSA, after entry of the Sale Order. Plaintiffs suit makes absolutely no claims that Defendant's predecessor failed to act, as all of Defendant's injury producing actions occurred after entry of the Sale Order (July of 2013). Defendant's assertion that it should have a "free pass" or somehow be exempt from all liability for all of ***its own*** actions is not supportable by the Sale Order, or by any law. To the contrary, if this Court were to set the precedent that all of Defendant's actions, in their purported attempt to comply with the NTMVSA regulations, are somehow exempt from liability, there would be no limit to the extent of harm for which Defendant would not be accountable. Defendant could implement the most reckless, inexpensive recalls imaginable, causing spontaneous combustion of their vehicles and countless deaths, yet be exempt from their own reckless actions (actions which are now completely divorced from the predecessor). The Sale Order of course made no such rulings. It only limited Defendants liability for past harms,

or past omissions, as it stated specifically that Defendant shall not be "liable for any failure by Debtors to comply." It follows that as Plaintiffs' suit does not address past harms or past omissions (i.e. a failure by Debtors / Defendant's predecessor) but rather seeks to address the actions of Defendant's themselves, the Sale Order is completely irrelevant to the instant case.

## C. ALLEGATIONS UNDERLYING PLAINTIFFS' CLAIMS

Defendant's statement that "the defect is purportedly one involving 'hardware' versus 'software,'" demonstrates a lack of understanding with respect to the allegations in the Complaint, if not designed to distract from the actual issues in the complaint. Plaintiffs' causes of action do not arise from a physical "hardware" defect in the FDCM, but from the software defect implemented by Defendant alone, to purportedly remedy said hardware defect. (See FAC Page 5, Para 25).

## D. NO COURT HAS MADE ANY ORDER THAT DEFENDANT SHALL BE IMMUNE TO LIABILITY FOR ITS OWN ACTIONS

Defendant further claims in a footnote to its Motion that the "Bankruptcy Court has repeatedly found that for civil claims brought by private individuals that do not involve vehicle accidents, the only liabilities which FCA US assumed are those meeting the Sale Order's criteria for a "Lemon Law," relying on Exhibits 3 and 4 in its Request for Judicial Notice. (See Defendant's Memorandum Page 3, FN. 5).

Defendant's interpretation of the Sale Order is absolutely erroneous. In reviewing the "Opinion Regarding Chrysler Group LLC's Motion to Dismiss the Amended Complaint" as Exhibit 3 to Defendant's Request for Judicial Notice, it can be seen that said action relates to "a failure to repair certain alleged defects in Plaintiffs' 2003 Dodge Vehicle." (See Id., Ex. 3, Page 60 of Defendant's RJN, Para 2). Plaintiffs concede that such an action would be within the jurisdiction of the Sale Order, as it relates to a manufacturing defect by Defendant's predecessor. This instant action is completely

distinguishable as again, it does not seek redress for the manufacturing defect by Defendant's predecessor, but by the harms caused by a recall Defendant implemented itself.

Contrary to Defendant's assertion that it is liable "only" for claims involving vehicle accidents and manufacturing issues falling under a "Lemon Law," the Court made no such all-encompassing universal order. (See Defendant's Memorandum Page 3, FN. 5). In its Opinion in *Tulacro v. Chrysler Group LLC*, it relied on the Sale Order in specifying the extent of Defendant's liability with respect to manufacturing defects, but said opinion related only to manufacturing defects, not recalls implemented by Defendant itself. Defendant "'did not assume any other claims for breach of [a Debtor] warranty relating to a vehicle manufactured before the Closing Date.'" ("Opinion Regarding Chrysler Group LLC's Motion to Dismiss the Amended Complaint" as Ex. 3, Page 63, oo Defendant's RJN, Para 1, citing Para 19 of the Sale Order). The Court's Opinion was very specific in that it was limiting Defendant's liability as to manufacturing defects *prior* to the Closing Date. It follows that it made no such order, and Defendant will be able to cite no such order, that it is immune from liability for all of its own actions.

Nearly identically, the Order in *Tatum v. Chrysler Group LLC*, as Ex. 4, Pg 71 of Defendant's RJN, Para 7, limits Defendant's liability with respect to "breach of warranty claims for vehicles sold prior to the Closing Date," or in other words, claims arising from Old Carco's manufacturing defects. There is again no ruling in said Order which would tend to exonerate Defendant for all actions it takes, after the Closing Date, which are simply related to its obligations to perform under the NTMVSA.

It follows that the Sale Order and the Bankruptcy Court's limitations on Defendant's liability with respect to manufacturing defects which occurred prior to the Closing Date, are absolutely irrelevant with respect to Plaintiffs causes of action for

Defendant's injury producing recall. Moreover, no court has made any order that Defendant is exempt from all liability with respect to its actions after the Sale Order.

## E. THE BANKRUPTCY COURT LACKS JURISIDICTION TO HEAR THIS MATTER AS IT IS A NON-CORE PROCEEDING, AND IN NO WAY RELATED TO DEFENDANT'S PREDECESSOR'S SALE ORDER

Bankruptcy Courts have the authority to hear and determine "core" proceedings, but cannot make determinations in "non-core" proceedings. 28 U.S.C. 157(b)(1), (c)(1). *Stern v. Marshall* 131 S. Ct. 2594, 2611 (2011). "Core proceedings" are actions that have no existence beyond bankruptcy. *In re Kold Kist Brands, Inc*. 158 B.R. 175, 178 (C.D. Cal. 1993). The Ninth Circuit has held that "core-proceedings" arise from causes of action which are either determined by the bankruptcy code, or created by it. *In re Harris Pine Mills*, 44 F, 3d 1431, 1435-1436 (9th Cir. 1995). It follows that "non-core" proceedings, such as the instant case, arise from causes of action completely independent of the bankruptcy code. The Court in *In re Goodman* held that a Court can determine, sua sponte, whether a proceeding is a "core" or "non-core" proceeding. It should consider whether the causes of action (1) exist independently of Title 11, (2) depend upon state law for resolution, (3) existed prior to the filing of the relevant bankruptcy petition, and (4) were significantly affected by the filing of the bankruptcy case. *In re Goodman*, 991 F 2d 613, 617 (9th Cir. 1993).

With respect to the first element set forth in *In re Goodman*, the instant action arises from causes of action existing completely and entirely independent from Title 11. Plaintiffs' causes of action are based entirely on common law principles, with the exception of its seventh cause of action for unfair and deceptive business practices. Thus, Plaintiffs' action fails to meet the first element for classification as a core-proceeding. With respect to the second element, Plaintiffs aforementioned seventh cause of action, arises under California law, specifically Business and Professions Code 17200, et seq. Thus, Plaintiffs' action fails to meet the second element for classification as a

core-proceeding. Third, as argued ad nauseum supra, Plaintiffs causes of action arise from a recall implemented by Defendant, not a manufacturing defect caused by its predecessor. It follows that Plaintiffs causes of action did not exist prior to the filing of Old Carco's bankruptcy petition, and thus fails to meet the third element to be classified as a core proceeding as well. As to the fourth element, Plaintiffs causes of action are absolutely in no way related to, or governed by the Old Carco bankruptcy, as again, they arise from the actions of Defendant, not its predecessor, and Defendant has failed to point to any Bankruptcy Court Orders exempting it from all injury producing events occurring after the Sale Order.

Defendant argues that the instant action is a "core-proceeding" based on the findings in *In re Old Caro* and *Quesenberry v. Chrysler Group*. (See Defendant's Memorandum Page 7, Lines 4-8). First said cases are completely distinguishable and in no way applicable to the instant case). The case of *In re Old Carco* dealt with a settlement the aggrieved party had with Old Carco, arising from causes of action based on manufacturing defects and "'Lemon Law(s).'" The complaint was not alleged against Defendant FCA US, LLC, but its predecessor, Old Carco; the acts as alleged were caused by Old Carco, not Defendant, and the Complaint and settlement both occurred prior to the filing of Old Carco's Bankruptcy, thus said case was absolutely relevant to said Bankruptcy, and in no way analogous to the instant case. (See "Opinion Granting Defendant's Motion to Dismiss" as Ex. 7, Page 63 of Defendant's RJN, Para 2). The case of *Quesenberry* is no different, it again, involved a manufacturing defect caused by Defendant's predecessor. (An issue with a 2005 Jeep radiator cap). Said case did not contain exclusive allegations with respect to Defendant, and its acts, directly (as opposed to the instant case). *Quesenberry et al v. Chrysler Group, LLC* et al, No. 7:2012cv00048 - Doc 7 (E.D. Ky. 2012). Thus, the ruling in said case again offers no relevant guidance.

It follows that the instant action is a "non-core" proceeding, the Bankruptcy Court has no jurisdiction over it, and it should not be transferred to Bankruptcy Court.

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
PLAINTIFFS' OPPOSITION DEFENDANT FCA US, LLC'S TO MOTION TO TRANSFER**

### F. TRANSFER OF THIS CASE TO BANKRUPTCY COURT WOULD BE IMPROPER AS IT MAKES NO CLAIMS AGAINST THE OLD CARCO ESTATE & AS IT WOULD BE EXTRAORIDINARILY INCONVENIENT WITHIN THE MEANDING OF 28 U.S.C. 1412

As Defendant notes, section 28 U.S.C. 1412 may be considered when determining whether a case could be transferred to a bankruptcy court. It states "a district court may transfer a case or proceeding under title 11 to district court for another district, in the interest of justice or for the convenience of the parties."

In the instant case, as argued ad nauseum supra, the causes of action asserted have nothing to do with Defendant's predecessor, nor does it seek redress for manufacturing defects existing before its Bankruptcy. The instant case alleges only that Defendant directly caused damage to Plaintiff's vehicles by virtue of its N23 Recall, which was implemented post-bankruptcy. It follows that there is no argument to be made that transferring this case to a New York Bankruptcy Court will be in the interests of justice.

*Convenience of the Parties.*

Consideration must then turn to the second factor regarding transfer under 28 U.S.C. 1412, whether said transfer would be convenient for the parties. First, none of the parties in this case reside in New York, nor are the injury producing events alleged to have occurred in New York, nor are Plaintiffs represented by counsel in New York. Plaintiffs likely do not have the means to travel to New York, and will likely be unable to find representation there. It follows that this case will likely proceed unopposed if transferred, which would be more than extraordinarily inconvenient, but even extremely unfair as to Plaintiffs' interests. Thus, there is no reasonably supportable argument that this case should be transferred to a New York Bankruptcy Court in the interest of convenience.

It follows that as there is no justification to transfer this case in the interests of justice, and as it would be extremely inconvenient, possibly debilitating for the parties,

Defendant has failed to show that this case meets the criteria of 28 U.S.C. 1412 for a transfer.

*Nature of Action.*

Defendant further contends that transfer is appropriate for the Bankruptcy Court to determine whether Plaintiffs claims relate to manufacturing defects (which is in no conceivable way the case, as argued supra), or whether "Plaintiffs' claims are barred because they arise out of FCA US's assumed duties owed to the NHTSA which limits FCA US's obligations to only that agency." (See Defendant's Memorandum Page 8, Lines 1-2). In said statement, Defendant relies on *Ayres v. Gen. Motors Corp.*, stating "the Motor Vehicle Safety Act… confers no private cause of action to enforce its provisions." (See Id. FN. 6)

As argued in more detail supra, Defendant has failed to cite any authority, or quote any specific provision in the Sale Order which would tend to immunize it from liability for its own actions taken in a purported attempt to comply with the NTMVSA (such as in issuing recalls). If the Bankruptcy Court were to set the precedent that all of Defendant's actions, in their purported attempt to comply with the NTMVSA regulations, are somehow exempt from liability, there would be no limit to the extent of reckless harm for which Defendant would not be accountable. Second, the footnote on which Defendant relies seems to indicate that Plaintiffs have brought suit to enforce a provision of the NTMVSA. This is not the case, and there is nothing in the FAC to support this proposition. Plaintiffs seek only damages for their injuries caused by Defendant's defective recall, as well as injunctive relief to prevent Defendant from causing further harm via said defective recall. Plaintiffs do not seek force Defendant to comply with the NTMVSA by addressing any manufacturing defects. If an injunction were to issue, preventing Defendant from further implementing its defective recall, that may cause the NHTSA to take such action by causing Defendant to implement an effective recall, but that would be completely incidental and divorced from Plaintiffs' causes of action. Thus,

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
PLAINTIFFS' OPPOSITION DEFENDANT FCA US, LLC'S TO MOTION TO TRANSFER

again, Defendant's liability is not limited for its own actions, and Plaintiffs' do not seek to enforce any provision of the NTMVSA, nor to force Defendant to repair any manufacturing defect.

*Interests of Justice.*

Defendant cites *In re Fountain Vill. Dev.* which sets out a standard for reviewing whether a transfer would be in the interests of justice. Considering whether the transfer would affect "economical and efficient administration of the bankruptcy estate, …judicial efficiency," "the ability to receive a fair trial," the state's interest in having local controversies decided within its borders," "enforceability of any judgment," and "plaintiff's choice of forum."  Noting a presumption in favor of where the bankruptcy case is pending. (Defendant's Memorandum Page 9, Lines 7-12).

Defendant argues again that the case arises from manufacturing defects existing before it existed, and the Bankruptcy Court has ruled that aside from its assumption of duties, it would "not otherwise be liable." As argued supra, this case does not seek redress for manufacturing defects, but for a recall performed by Defendant itself years after its predecessor dissolved. As also argued supra, the Bankruptcy Court's statement regarding a limitation on liability dealt only with the manufacturing defects of Defendant's predecessor, not recalls performed by Defendant itself. The Bankruptcy Court did not give Defendant a free pass to act recklessly in performing its recalls, exonerating it from all liability. It follows that as the injury producing events have nothing to do with Old Carco, they thus have nothing to do with its Bankruptcy, and it follows that there is nothing relevant in this action for the Bankruptcy Court to interpret.

With respect to the element cited by Defendant, first, transferring this case to the Bankrutpcy Court will do nothing to affect administration of the estate, as Plaintiffs do not seek redress against Old Carco, nor its estate. With respect to judicial efficiency, as argued, the estate of Old Carco has nothing to do with this case (as is evident from the allegations in the complaint, seeking redress for a recall implemented by Defendant only,

see FAC generally, or Page 14, Para 95-100) and thus transferring this case to Bankruptcy Court in New York would be an absolute, needless, and unjustifiable waste of judicial resources. With respect to the ability to receive a fair trial, as argued supra, as this is a "non-core" proceeding, the Bankruptcy Court would not have jurisdiction to conduct a trial in this matter, and further, transferring this case away from Plaintiffs state of residence will likely cause them to be deprived of representation, and to be forced to abandon the case, and thus not receive a fair trial. With respect to the State's interest, the causes of action relate to events caused within this state, as well as a cause of action exclusive to California. Thus, the State has an interest in exercising jurisdiction over this case. With respect to enforceability of any judgment, again, the Bankruptcy Court lacks jurisdiction to try this case, as it is a non-core proceeding. With respect to Plaintiff's choice of forum, it is evident from this brief and Plaintiff's initial filing that it seeks to have this matter heard in California. Finally, while Defendant asserts there is a presumption in favor of the forum where the bankruptcy case is pending, that would only be relevant if Plaintiffs sought damages against Old Carco or its Bankruptcy estate, which they do not. It follows that none of the elements set forth by Defendant, citing *In re Fountain Vill. Dev*., would tend to indicate that transfer would be supported by the interests of justice.

In summary, no interpretation of the Sale Order is needed, and thus transferring this case to a New York Bankruptcy Court, when it does not seek any damages against said estate, would only waste judicial resources, and cause Plaintiffs to suffer extreme and possibly debilitating inconvenience. While Defendant makes reference to numerous cases involving transfer to the Bankruptcy Court for interpretation of its Sale Order, all of said cases involve manufacturing defects by Defendants predecessor, and/ or do not involve cases such as the instant case where Plaintiffs seek redress for actions by the Defendant itself, which occurred after entry of the Sale Order. Thus, in the interest of

justice, and judicial resources, this Court absolutely has the authority to determine, and should determine that transfer of this case would be needless.

## CONCLUSION III.

For the reasons argued supra, Plaintiffs respectfully request that this Court find that Plaintiffs causes of action arise from the conduct of Defendant itself, is unrelated to the Bankruptcy of Old Carco, and deny Defendant's Motion to Transfer accordingly.

Dated:  June 15, 2016                **A.O.E. LAW & ASSOCIATES**

_____
Victoria Orafa, Esq.
Attorney for Plaintiff and Proposed Class
Members

1

2                        **CERTIFICATE OF SERVICE**

3        I hereby certify that on June 20, 2016 I electronically filed the foregoing

4    document using the CM/ECF system, which will send notification of said filing to the

5    e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail

6    Notice List.

7

8    Dated: June 20, 2016                    **A.O.E. LAW & ASSOCIATES**

9

10

11                                           _____

12                                                Victoria Orafa, Esq.
                                             Attorney for Plaintiff and Proposed Class
13                                           Members

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

STATE OF CALIFORNIA                    )
                                       ) ss.
COUNTY OF LOS ANGELES )

     I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen (18) years and am not a party to the within action; my business address is: 350 S. Figueroa Street, Suite 189, Los Angeles, CA 90071.

     On **June 20, 2016**, I served the following document described as **PLAINTIFFS' OPPOSITION TO DEFENDANT FCA US, LLC'S MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes, at Los Angeles, addressed as follows:

## PLEASE SEE ATTACHED SERVICE LIST

**__X_ (BY REGULAR MAIL**):  I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at Los Angeles, California.  I am "readily familiar" with firm's practice of collection and processing correspondence for mailing.  It is deposited with U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

__X__ (FEDERAL): I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

     EXECUTED on **June 20, 2016** at Los Angeles, California.


                            /s/ Aliyah Guidry
                            Aliyah Guidry


Rowena Santos

1   rsantos@thompsoncoburn.com

2   THOMPSON COBURN LLP

3   2029 Century Park East, 19th Floor
    Los Angeles, CA 90067

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28