Brian D. Glueckstein
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:     (212) 558-4000
Facsimile:     (212) 558-3588

*Counsel for FCA US LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Old Carco LLC, *et al.*, | : | Case No. 09-50002 (SMB) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**FCA US LLC'S MOTION TO ENFORCE THE COURT'S ORDER**
**(I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS'**
**ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND**
**ENCUMBRANCES, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT**
**OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN**
**CONNECTION THEREWITH AND RELATED PROCEDURES AND**
**(III) GRANTING RELATED RELIEF**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................... 2

    A.    The Sale Order and MTA ...................................................................... 2

    B.    Plaintiffs' Complaint and the Overton Litigation. .................................... 7

JURISDICTION ................................................................................................................... 9

RELIEF REQUESTED ........................................................................................................... 9

ARGUMENT ..................................................................................................................... 10

I.    THE SALE ORDER BARS PLAINTIFFS' WRONGFUL DEATH
PUNITIVE DAMAGES CLAIMS AGAINST FCA US .................................................. 10

    A.    The Sale Order Precludes Claims for Punitive Damages. ...................... 10

    B.    Alabama's Wrongful Death Act Permits Recovery of Punitive Damages
Only ................................................................................................. 13

    C.    FCA US's Liabilities Are Determined By the Sale Order and MTA. .......... 16

II.    THE SALE ORDER BARS PLAINTIFFS' PERSONAL INJURY CLAIMS
FOR PUNITIVE DAMAGES AGAINST FCA US ....................................................... 17

    A.    Counts Alleging Punitive Damages for Failure to Recall or Warn Are
Barred ............................................................................................... 17

    B.    Plaintiffs Have Not Asserted an Independent Claim Against FCA US. ..... 18

CONCLUSION .................................................................................................................. 21

SC1:4600523.4

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Black Belt Wood Co., Inc.* v. *Sessions*,
  514 So. 2d 1249 (Ala. 1987) ............................................................... 14-15

*Burton* v. *Chrysler Group (In re Old Carco LLC)*,
  492 B.R. 392 (Bankr. S.D.N.Y. 2013) ..................................................19, 20

*Howard* v. *Howard*,
  740 N.Y.S. 2d 71 (N.Y. App. Div. 2002) ...................................................17

*King* v. *Nat'l Spa & Pool Inst., Inc.*,
  607 So. 2d 1241, 1246-47 (Ala. 1992) ...................................................14, 15

*Lampley* v. *Bridgestone Firestone, Inc.*,
  No. CIV.A. 90-A-907-N, 1992 WL 12666661 (M.D. Ala. March 31, 1992) .........................21

*Lance, Inc.* v. *Ramanauskas*,
  731 So. 2d 1204, 1221 (Ala. 1999) ...........................................................13

*Law Debenture Trust Co. of New York* v. *Maverick Tube Corp.*,
  595 F.3d 458 (2d Cir. 2010) ..................................................................18

*In re Old Carco LLC*,
  538 B.R. 674 (Bankr. S.D.N.Y. 2015) ........................................................12

*Omni Ins. Co.* v. *Foreman*,
  802 So. 2d 195 (Ala. 2001) ...................................................................14

*Otoski* v. *Avidyne Corp.*,
  Case No. 09-3041, 2010 WL 4739943 (D. Or. Oct. 6, 2010), *adopted*,
  2010 WL 4737815 (D. Or. Nov. 15, 2010) .....................................................20

*Overton* v. *Chrysler Group LLC*,
  No. 2:17-CV-019830-RDP, 2018 WL 847772 (N.D. Ala. Feb. 13, 2018) ...................8, 9, 16

*Powell* v. *FCA US LLC*,
  No. 3:15-CV-393-WHA, 2015 WL 5014097 (M.D. Ala. Aug. 21, 2015) ............................15

*Savannah & Memphis R.R. Co.* v. *Shearer*,
  58 Ala. 672 (1877) ..........................................................................13

*Tillis Trucking Co.* v. *Moses*,
  748 So. 2d 874 (Ala. 1999) ...............................................................14, 15

*Trott* v. *Brinks, Inc.*,
    972 So. 2d 81 (Ala. 2007) ................................................................................14

*Wolff* v. *Chrysler Group LLC (In re Old Carco LLC)*,
    No. 10-05007, 2010 Bankr. LEXIS 6320 (Bankr. S.D.N.Y. July 30, 2010) ...........................19

**Statutes**

28 U.S.C. § 157 ................................................................................................9

28 U.S.C. § 1332 ..............................................................................................8

28 U.S.C. § 1334 ..............................................................................................9

SC1:4600523.4

FCA US LLC ("FCA US") hereby submits this motion (the "Motion") for entry of an order in the form attached hereto as Exhibit A (the "Proposed Order") enforcing this Court's *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief* [Docket No. 3232][1] (the "Sale Order").[2] In support of the Motion, FCA US respectfully states as follows:

## PRELIMINARY STATEMENT

1.       One of the most central tenets of FCA US's limited assumption of Old Chrysler's liabilities through the Master Transaction Agreement is no claim shall seek punitive damages.  Despite this clear and unequivocal limitation, Plaintiffs seek to impose punitive damages on FCA US in connection with an accident allegedly involving a 2002 Jeep Liberty manufactured and sold by Old Chrysler prior to the sale of substantially all of Old Chrysler's assets to FCA US.

2.       FCA US requires the assistance of this Court because absent prompt enforcement of the Sale Order FCA US will be forced to defend punitive damages claims in state court in Jefferson County, Alabama.  This Court has jurisdiction and is best positioned to address the issues presented by Plaintiffs' punitive damages claims.

---

[1]    Unless otherwise specified, "Docket No." refers to the docket for Case Number 09-50002 (SMB) in the United States Bankruptcy Court for the Southern District of New York.

[2]    A copy of the Sale Order is attached as Exhibit A to the Declaration of Brian D. Glueckstein in support of this Motion (the "Glueckstein Declaration" or "Glueckstein Decl.").  Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Sale Order.

3.      As this Court has determined, FCA US is not liable for claims relating to defects in Old Chrysler vehicles except to the extent that FCA US expressly assumed liability for such claims pursuant to certain narrow exceptions set forth in the Sale Order and the Master Transaction Agreement.  It also cannot be disputed that FCA US is not a successor to Old Chrysler and is not liable for the conduct of Old Chrysler.

4.      Plaintiffs' Complaint asserts claims arising from an accident involving an Old Chrysler vehicle that allegedly was defectively designed, manufactured, marketed, and/or sold.  Plaintiffs nonetheless seek to pursue against FCA US impermissible punitive damages for (i) wrongful death—as all wrongful death damages are punitive under Alabama law; and (ii) purported defect or failure to warn and/or recall claims.

5.      Permitting Plaintiffs to maintain their punitive damages claims would vitiate the unambiguous protections set forth in the Sale Order, and must be rejected.  The Court should enforce the Sale Order, including the injunction contained therein, to preclude Plaintiffs' pursuit of punitive damages against FCA US.

## BACKGROUND

### A.      The Sale Order and MTA

6.      On April 30, 2009, Old Carco LLC ("Old Carco") and certain of its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Old Chrysler") commenced bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

7.      Upon commencement of their chapter 11 cases, the Debtors focused on an expedited process for the sale of certain assets to FCA US (then known as New CarCo

-2-

Acquisition LLC).[3]  On April 30, 2009, FCA US entered into a Master Transaction Agreement

(as amended and including all ancillary documents thereto, the "MTA") by and among FCA US,

Fiat S.p.A., Old Carco, and certain other sellers identified therein.[4]

        8.      On May 3, 2009, Old Chrysler moved for entry of an order authorizing

and approving, among other things, (i) Old Chrysler's entry into and performance under the

terms and conditions of the MTA; and (ii) the sale by Old Chrysler of substantially all of its

assets to FCA US pursuant to the MTA, free and clear of all claims and liabilities "whether

arising before or after the Petition Date, whether at law or in equity, including all rights or claims

based on any successor or transferee liability," other than expressly "Assumed Liabilities" (as

defined in the MTA) [Dkt. No. 190 at 25].[5]

        9.      On May 27, 2009, FCA US was the successful bidder in the Debtors' asset

sale.  On June 1, 2009, following a multi-day trial, the Bankruptcy Court granted the Sale Motion

and approved the transaction set forth in the MTA in its Sale Order.

        10.     The sale, on the terms set forth in the MTA, closed on June 10, 2009 (the

"Closing Date").  The Sale Order authorized the transfer of the purchased assets "free and clear

of all Claims except for Assumed Liabilities" (as defined in the MTA).  (Sale Order ¶ 9.)  The

Court expressly ruled in the Sale Order that:

---

[3]     New CarCo Acquisition LLC changed its name to Chrysler Group LLC and later to FCA US LLC.

[4]     A copy of the MTA is attached as Exhibit B to the Glueckstein Declaration.  The Glueckstein Declaration
is being submitted for the Court's convenience to provide copies of the MTA and Sale Order that are
available on the Court's docket.

[5]     The MTA was initially submitted as Exhibit A to the motion requesting the Court's authorization to
execute the sale.  The final copy of the MTA was attached as Exhibit A to Old Carco Liquidation Trust's
Omnibus Reply to Objections to the Assumption and Assignment of Supplemental Executive Retirement
Plan, filed Jan. 31, 2013 [Dkt. No. 8139], and does not differ from the initial copy of the Agreement
attached to the Sale Motion in any relevant respect.

SC1:4600523.4

> **Except for the Assumed Liabilities expressly set forth in the Purchase Agreement** or described therein or Claims against any Purchased Company, **none of the Purchaser, its successors or assigns or any of their respective affiliates shall have any liability for any Claim that** (a) arose prior to the Closing Date, (b) relates to the production of vehicles prior to the Closing Date or (c) otherwise **is assertable against the Debtors or is related to the Purchased Assets prior to the Closing Date**. The Purchaser shall not be deemed, as a result of any action taken in connection with the Purchase Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or the acquisition of the Purchased Assets to: (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations arising under the Assumed Agreements from and after the Closing); (b) have, *de facto*, or otherwise, merged with or into the Debtors; or (c) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors. Without limiting the foregoing, the Purchaser shall not have any successor, derivative or vicarious liabilities of any kind or character for any Claims, including, but not limited to, on any theory of successor or transferee liability, *de facto* merger or continuity, environmental, labor and employment, products or antitrust liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

(Sale Order ¶ 35 (emphasis added).)  The Sale Order further provides that, except for any

expressly Assumed Liabilities, FCA US:

> shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and the **Purchaser shall have no successor or vicarious liabilities of any kind or character,** including, but not limited to, any theory of . . . successor or transferee liability . . . **now existing or hereafter arising . . . .**"

(Sale Order ¶ 39 (emphasis added)); *see also id.* ¶ 42 (recognizing the release of any successor

liability claims against FCA US).)

       11.    In addition, the Sale Order contains an injunction directing that "all

persons and entities . . . holding Claims . . . arising under or out of, in connection with, or in any

way relating to, the Debtors, the Purchased Assets, [or] the operation of the business prior to

SC1:4600523.4

Closing," except for Assumed Liabilities, are "forever barred, estopped and permanently enjoined from asserting such Claims against [FCA US]."  (Sale Order ¶ 12.)

12.     Section 2.08 of the MTA sets forth the specific limited liabilities assumed by FCA US.  On October 29, 2009, section 2.08(h) was amended to expand the scope of liabilities assumed relating to Product Liability Claims to include claims involving a vehicle sold by Old Chrysler before Closing on the following specific terms:

> (h) (i) all Product Liability Claims arising from the sale after the Closing of Products or Inventory manufactured by Sellers or their Subsidiaries in whole or in part prior to the Closing and (ii) all **Product Liability Claims arising from the sale on or prior to the Closing of motor vehicles** or component parts, in each case manufactured by Sellers or their Subsidiaries and distributed and sold as a Chrysler, Jeep, or Dodge brand vehicle or MOPAR brand part, **solely to the extent such Product Liability Claims** (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and **(D) do not include any claim for exemplary or punitive damages.**

(MTA, Amendment No. 4, ¶ 1 (emphasis added).)  Relevant to Plaintiffs' Complaint, therefore, FCA US has agreed to responsibility for only those Product Liability Claims arising from motor vehicle accidents occurring after June 10, 2009, involving a Jeep brand vehicle manufactured by Old Chrysler, **that do not include a claim for exemplary or punitive damages**.  On November 19, 2009, the Court entered an order approving Amendment No. 4 to the MTA.  [Dkt. No. 5988.][6]

---

[6]     A copy of the Order and annexed Amendment No. 4 to MTA is attached as Exhibit C to the Glueckstein Declaration.

-5-

13.     The MTA defines a Product Liability Claim as:

> **any Action arising out of, or otherwise <u>relating to in any way</u> in respect of claims for <u>personal injury, wrongful death</u>** or property damage **resulting from exposure to**, or any other warranty claims, refunds, rebates, property damage, **product recalls**, defective material claims**,** merchandise returns and/or any similar claims, **<u>or any other claim or cause of action</u>**, whether such claim is known or unknown or asserted or unasserted with respect to, Products or items purchased, sold, consigned, marketed, stored, delivered, distributed or transported by the Company Business, any Selling Group Member or any of its Subsidiaries, whether such claims or causes of action are known or unknown or asserted or unasserted.

(MTA Definitions Addendum, at p. 90, *as amended* by Amendment No. 1 to MTA, ¶ 36 (emphasis added).)  Furthermore, Section 2.09 of the MTA provides that FCA US "shall not assume and shall be deemed not to have assumed" any liabilities of Old Chrysler other than the expressly Assumed Liabilities.  (MTA § 2.09.)

14.     FCA US separately agreed to add Section 2.08(p) to the MTA and assume certain limited Old Chrysler obligations to the National Highway Traffic and Safety Administration ("<u>NHTSA</u>") related to safety-related defects but expressly excluding any other liabilities under the National Traffic and Motor Vehicle Safety Act:

> Liabilities relating to the Sellers' notification, remedy and other obligations under 49 U.S.C. Sections 30116 through 30120 of the National Traffic and Motor Vehicle Safety Act, as amended and recodified (the "NTMVSA"), relating to vehicles manufactured by the Sellers prior to the Closing Date that have a defect related to motor vehicle safety or do not comply with applicable motor vehicle safety standards prescribed under the NTMVSA.  For the avoidance of doubt, Purchaser shall not otherwise be liable for any failure by the Sellers to comply with the provisions of the NTMVSA.

(MTA, Amendment No. 2, ¶ 1.)  Nothing in Section 2.08(p) authorizes punitive damages to be asserted against FCA US.

SC1:4600523.4

B.    **Plaintiffs' Complaint and the Overton Litigation.**

15.    On October 17, 2017, Plaintiff Frankie Overton ("Overton"), as

administrator of the estate of Sue Graham, and Plaintiff Scott Graham as guardian of minor J.D.

("Graham," together, the "Plaintiffs"), filed a Complaint (the "Complaint") against FCA US and

others in state court in Jefferson County, Alabama (the "Alabama State Court"), relating to a July

10, 2016 accident that allegedly involved a 2002 Jeep Liberty manufactured and sold by Old

Chrysler.  (*See* Compl. ¶ 24.)

16.    The Complaint asserts claims against FCA US for negligence,

wantonness, and under the Alabama Extended Manufacturer's Liability Doctrine.  As against

FCA US, (i) Plaintiff Overton seeks wrongful death punitive damages, and (ii) Plaintiff Graham

seeks punitive damages based upon alleged defects in the "design, manufacture and/or

marketing" of the Old Chrysler vehicle.  (Compl. ¶ 32; *see also id.* ¶ 50.)  The Complaint

wrongly alleges that the 2002 Jeep Liberty was "designed, engineered, manufactured and

marketed by Defendants Chrysler, FCA" and others.  (*Id.* at ¶ 25.)[7]  The Complaint thereafter

summarily alleges that "[t]he defective condition of the Jeep Liberty as it relates to said issues

has been known by the Product Liability Defendants for some time."  (*Id.* at ¶ 32.)

17.    The Complaint attempts to create a basis for pursuing punitive damages

against FCA US through a conclusory assertion that "the defective condition of the Jeep Liberty

---

[7]    The Complaint actually asserts claims only against Chrysler Group LLC (defined as "Chrysler") and Fiat
Chrysler Automobiles US LLC (defined as "FCA" and referred to together as "Chrysler Defendants").  Chrysler
Group LLC is the prior name of FCA US LLC, and is the entity formed only in connection with the asset
purchase transaction set forth in the MTA that closed on June 10, 2009.  As drafted, the Complaint asserts **every**
allegation only against FCA US and not Old Chrysler.  While the Complaint should be evaluated as drafted,
even if the Court assumes that Plaintiffs are intending to assert its "Chrysler" allegations against Chrysler LLC,
*i.e.* Old Chrysler, the conclusion that the asserted punitive damages claims are barred by the Sale Order is
unchanged.

SC1:4600523.4

was known by Chrysler and/or former Chrysler companies absorbed by FCA, and that knowledge transferred to FCA.  Despite such knowledge, FCA took no action to warn, recall or otherwise eliminate the defective condition." (*Id.*)  As discussed below, this is legally incorrect and, in any event, is an impermissible attempt to assert barred punitive damages in connection with a Product Liability Claim.

18.    FCA US timely removed the action to the U.S. District Court for the Northern District of Alabama (the "Alabama District Court"), and filed a Motion to Transfer Venue and a Partial Motion to Dismiss on the basis that the Plaintiffs' claims arising from FCA US's alleged post-closing conduct are precluded by Alabama law.  Plaintiffs thereafter filed a motion to remand the case back to the Alabama State Court.

19.    On February 13, 2018, the Alabama District Court issued a Memorandum Opinion and accompanying Order in which it determined that it had subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b), in part, because "Plaintiffs' claims implicate bankruptcy court orders that require interpretation." *Overton* v. *Chrysler Group LLC*, No. 2:17-CV-019830-RDP, 2018 WL 847772, at *5 (N.D. Ala. Feb. 13, 2018) (the "Alabama Decision").  The Alabama District Court further observed that "Plaintiffs' claims against FCA will require the deciding court to interpret and potentially implement the Bankruptcy Court's Orders." (*Id.*)   In addition, the Alabama District Court acknowledged that "Plaintiff Overton's claims against FCA and Chrysler for punitive damages under Alabama's Wrongful Death Act **directly implicate** and **challenge** the terms" of this Court's order approving Amendment No. 4 to the MTA. (*Id.* emphasis added.)  The Alabama District Court nonetheless went on to grant Plaintiffs' motion to remand after deciding to abstain from exercising jurisdiction pursuant to 28 U.S.C. § 1332(c)(1).

20.    In its decision, the Alabama District Court concluded that severance and transfer of the claims against FCA US was not practical based on erroneous conclusions that (i) Plaintiffs' alleged claims for "FCA's post-bankruptcy sale conduct" do not raise issues requiring this Court to interpret the Sale Order, and (ii) the Plaintiffs would be forced to litigate its state law claims in this Court.  Both are false and, as this Court is well aware, any surviving claims following interpretation and enforcement of the Sale Order will proceed on the merits in Alabama.  *See, e.g.*, *Grimstad* v. *FCA US LLC, (In re Old Carco LLC)*, Adv. Pro. No. 16-10204, Adv. Pro. Dkt. No. 16, at 2 (Apr. 28, 2017) (transferring case back to transferor court following interpretation and application of the Sale Order).

21.    Nonetheless, the Alabama District Court observed that in the event that the state court did not enforce the Sale Order, "FCA is not left without remedy:  it can appeal or petition the Bankruptcy Court to enforce its order against Plaintiffs."  (Alabama Decision at 12-13.)  Given the Complaint's violation of the Sale Order, the importance of the punitive damages issues raised in the Complaint, and facing the prospect of inconsistent decisions on issues related to those pending in this Court, FCA US respectfully requests this Court's assistance by this Motion.

## JURISDICTION

22.    This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and expressly retained jurisdiction pursuant to paragraphs 43 and 59 of the Sale Order.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## RELIEF REQUESTED

23.    FCA US LLC seeks entry of the Proposed Order enforcing this Court's Sale Order, which prohibits and enjoins Plaintiffs from continuing to pursue their punitive

damages claims against FCA US in connection with Product Liability Claims, including punitive

damages for wrongful death and/or based upon Old Chrysler's conduct.

## ARGUMENT

I.      **THE SALE ORDER BARS PLAINTIFFS' WRONGFUL DEATH
        PUNITIVE DAMAGES CLAIMS AGAINST FCA US**

    A.      **The Sale Order Precludes Claims for Punitive Damages.**

        24.      The question before the Court is whether FCA US can be forced to defend

claims seeking punitive damages in litigation of a Product Liability Claim concerning an Old

Chrysler vehicle manufactured and sold prior to the Closing Date.  The answer, even taking the

facts as set forth in the Complaint as true, is no.  The plain language of the controlling

documents—the Sale Order and MTA—are unambiguous that Plaintiffs' punitive damages

claims are barred by this Court's orders.

        25.      The starting point, as this Court has repeatedly recognized, is that FCA US

is not a successor to Old Chrysler and that FCA US "shall have no successor or vicarious

liabilities of any kind or character."  (Sale Order ¶ 39.)  This Court's Sale Order is clear that any

claims "relat[ing] to the production of vehicles prior to the Closing Date" fall within the scope of

the Sale Order and are barred as against FCA US unless the claim falls within one of the narrow

exceptions set forth as Assumed Liabilities (as that term is specifically defined in the MTA).  (*Id.*

at ¶ 35.)

        26.      Thus, FCA US is only responsible for defending claims for those liabilities

expressly assumed under the terms of the MTA.  FCA US did not assume liability for Plaintiff

Overton's wrongful death punitive damages claims.  Plaintiffs' claims against FCA US arise

from an alleged accident involving a 2002 Jeep Liberty manufactured and sold by Old Chrysler

long before the Closing Date.  The alleged defective condition of the vehicle and the allegedly

dangerous design, manufacture and marketing of the vehicle by Old Chrysler are cited as bases

for Plainitffs' claims.  (Compl. ¶¶ 31, 32.)  There can be no serious debate that Plaintiffs'

wrongful death claim is a purported Product Liability Claim as that term is broadly defined in the

MTA:

> **any Action arising out of, or otherwise <u>relating to in any way</u> in
> respect of claims for <u>personal injury, wrongful death</u>** or
> property damage **resulting from exposure to,** or any other
> warranty claims, refunds, rebates, property damage, **product
> recalls,** defective material claims**,** merchandise returns and/or any
> similar claims, **or any other claim or cause of action,** whether
> such claim is known or unknown or asserted or unasserted with
> respect to, Products or items purchased, sold, consigned, marketed,
> stored, delivered, distributed or transported by the Company
> Business, any Selling Group Member or any of its Subsidiaries,
> whether such claims or causes of action are known or unknown or
> asserted or unasserted

(MTA Definitions Addendum, at p. 90, *as amended* by Amendment No. 1 to MTA, ¶ 36

(emphasis added).)  In other words, any claim or cause of action of any kind that is otherwise

viable and asserted in any personal injury or wrongful death action that ***relates in any way*** to a

vehicle sold by Old Chrysler is a Product Liability Claim, as broadly defined by the parties in the

MTA.  The definition even expressly includes claims regarding product recalls.

27.     Section 2.08(h) of the MTA originally included a provision stating that

FCA US was only assuming Product Liability Claims arising in connection with the sale after the

Closing Date of vehicles manufactured by Old Chrysler.  (MTA § 2.08.)  The MTA was

subsequently amended to expand the scope of circumstances for which FCA US would assume

liabilities for Product Liability Claims.  Section 2.08(h), as amended, provides, among other

things, that FCA US will defend Product Liability Claims arising from the sale prior to the

-11-

Closing Date of vehicles manufactured by Old Chrysler.  (Amendment No. 4 to MTA, ¶ 1.)

FCA US did, however, expressly condition this expanded voluntary assumption of liabilities on

certain criteria.  (*Id.*)

28.    Dispositive here, FCA US's assumption of liabilities relating to Product

Liability Claims arising from the sale of Old Chrysler vehicles prior to the Closing Date is

conditioned on a requirement that Product Liability Claims, "**(D) do not include any claim for**

**exemplary or punitive damages.**"  (MTA, Amendment No. 4, ¶ 1.)  Therefore, the MTA and

Sale Order expressly bar any punitive damages claim that is included as part of a Product

Liability Claim asserted against FCA US pertaining to a vehicle designed, manufactured and sold

before the Closing Date.

29.    Plaintiffs' Complaint asserts a Product Liability Claim against FCA US.

That is the limited universe of claims relating to accidents involving Old Chrysler vehicles that

FCA US contractually assumed.  Absent such a claim, Plaintiffs could not assert any claims

against FCA US relating to the subject accident because the 2002 Jeep Liberty at issue was

manufactured and sold by Old Chrysler long before FCA US came into existence; Claims other

than Product Liability Claims are barred by the Sale Order and the MTA.  As this Court has

reaffirmed, "[t]he Sale Order contained several provisions indicating that the transfer was free

and clear of claims and interests in the assets and successor liability" and that FCA US would not

be liable for any Claims (as broadly defined in the Sale Order) other than "Assumed Liabilities."

*In re Old Carco LLC*, 538 B.R. 674, 678 (Bankr. S.D.N.Y. 2015).

30.    Here, Plaintiff Overton asserts a claim for wrongful death seeking

damages from FCA US under Alabama law.  As explained in Section I.B below, the **only**

damages available for wrongful death under Alabama law are punitive damages.  As a result,

-12-

Plaintiff Overton claims for wrongful death damages are barred by the MTA and enjoined by the Sale Order.

### B.    Alabama's Wrongful Death Act Permits Recovery of Punitive Damages Only.

31.     In 1860, the Alabama legislature enacted "An Act to Prevent Homicides." This Act, which amended Alabama's wrongful death statute, allowed plaintiffs to recover an amount "the jury deem[s] just" for conduct that resulted in the death of another.  Seventeen years later, in 1877, the Alabama Supreme Court interpreted the title and text of the Act, as amended, in holding that it afforded recovery of punitive damages only:

> Charge four fixes an erroneous measure of damages, and was rightly refused on that account, although in other respects it may have asserted correct legal principles.  Lacerated feelings of surviving relations, and mere capacity of deceased to make money if permitted to live, do not constitute the measure of recovery under the act of Feb. 5, 1872.  Prevention of homicide is the purpose of the statute, and this it proposes to accomplish by such pecuniary mulct as the jury "deem just."  **The damages are punitive, and they are none the less so, in consequence of the direction the statute gives to the damages when recovered.** They are assessed against the railroad "to prevent homicides."

*Savannah & Memphis R.R. Co.* v. *Shearer*, 58 Ala. 672, 680 (1877) (emphasis added).

32.     The title and text of the Act have been changed over the years.  Yet, the Alabama Supreme Court's interpretation of the Act to allow for recovery of punitive damages only has remained consistent throughout.  Despite a multitude of attacks aimed at changing the law to reflect the result preferred by Plaintiffs here, the Alabama Supreme Court has routinely held in face of various constitutional and other challenges that punitive damages are the sole remedy for tortious infliction of death in the State of Alabama.

-13-

33.     The Alabama Supreme Court in *Lance, Inc.* v. *Ramanauskas* explained that it had, "**under the crushing weight of 150 years of stare decisis, consistently held that our wrongful-death statute allows for the recovery of punitive damages only.**" 731 So. 2d 1204, 1221 (Ala. 1999) (emphasis added).  The same was true in *Tillis Trucking Co.* v. *Moses*, in which the court explained that, "[f]rom the time the Legislature enacted the predecessor of this provision in 1852, this Court has understood the legislative intent behind the phrase 'such damages as the jury may assess' to be that the jury is to award punitive or exemplary damages." 748 So. 2d 874, 888-89 (Ala. 1999).

34.     With that bedrock principle, when challenged the Alabama Supreme Court has held that "[t]he policy of the Wrongful Death Act is solely to protect human life by deterring tortious acts that result in death and **impose civil punishment** on those who take human life" and further stated that "[t]his opinion need not confront the long years of precedent holding that the Wrongful Death Act is the sole, and 'punitive only,' remedy for tortious infliction of death in this state." *King* v. *Nat'l Spa & Pool Inst., Inc.*, 607 So. 2d 1241, 1246-47 (Ala. 1992) (emphasis added); *see also Trott* v. *Brinks, Inc.*, 972 So. 2d 81, 84 (Ala. 2007) ("The instant action is a wrongful-death action under Ala. Code 1975, § 6–5–410.  In such a case, the only recoverable damages are punitive damages intended to punish the tortfeasor for its actions—not to compensate the plaintiff."); *Omni Ins. Co.* v. *Foreman*, 802 So. 2d 195, 199 (Ala. 2001) ("It is hornbook law that in Alabama, the only damages a plaintiff is allowed to recover in an action for wrongful death are punitive damages.").

35.     The Alabama Supreme Court's precedent is consistent with the Alabama legislature's intent in first enacting and subsequently amending and preserving this unique approach to wrongful death damages.  In *Black Belt Wood Co., Inc.* v. *Sessions*, 514 So. 2d 1249,

-14-

1261-65 (Ala. 1987), the Alabama Supreme Court traced a consistent line of decisions that each held punitive damages were the only form of damages available to a wrongful death plaintiff, and further explained that the Alabama legislature's decision to amend the Act in 1872 without addressing the compensatory versus punitive damages question imparted an element of legislative approval to the court's prior decisions on the matter.  Similarly, the Alabama Supreme Court recognized in *Tillis Trucking Co.*, that the legislature's decision in 1987 not to "disturb the 135-year-old application of that [wrongful death] law" was meaningful since the legislature had "otherwise enacted tort reform legislation to affect punitive-damages awards in actions other than actions based on wrongful death." *Tillis Trucking Co.*, 748 So. 2d at 891.

36.    The Alabama Supreme Court has succinctly summarized its views in rejecting assertions that wrongful death punitive damages are merely compensatory damages in disguise:

> A wrongful death claim does not provide compensation for injuries that cause death.  **Punitive damages are not compensation, and our system should not be contorted to treat them as such.**

*King*, 607 So. 2d at 1247 (emphasis added).

37.    More recently, the United States District Court for the Middle District of Alabama addressed the specific Sale Order issue before this Court.  In *Powell* v. *FCA US LLC*, the plaintiff argued in its motion to remand that wrongful death punitive damages are somehow not really punitive and therefore should not be subject to the Sale Order's injunction.  *Powell* v. *FCA US LLC*, No. 3:15-CV-393-WHA, 2015 WL 5014097, at *5 (M.D. Ala. Aug. 21, 2015). The *Powell* court rejected that argument outright, explaining that the recovery on a wrongful death claim was "exemplary or punitive" and thus implicated the Sale Order injunction, and reaffirmed that this fact had "been clearly established for many, many years." *Id.*

SC1:4600523.4

38.     Thus, there is no question under Alabama law that the sole recovery for wrongful death claims is punitive damages.  As such, Plaintiffs' claims for wrongful death seek punitive damages—and only punitive damages—with respect to an Old Chrysler vehicle and are enjoined by the Sale Order.  (*See* Sale Order ¶ 12.)

### C.     FCA US's Liabilities Are Determined By the Sale Order and MTA.

39.     Plaintiffs undoubtedly will cry foul that they cannot maintain a wrongful death claim against FCA US.  But the fact that Plaintiffs cannot pursue punitive damages against their target of choice, FCA US, is not driven by FCA US but rather is the sole responsibility of the Alabama legislature which has not provided for compensatory damages to be available in a wrongful death case.  Plaintiffs' inability to pursue a wrongful death claim against FCA is due to the unique nature of Alabama's wrongful death punitive damages, and does not provide a basis to somehow impose additional liabilities on FCA US.

40.     The Alabama District Court in fact recognized that "Plaintiff Overton's claims against FCA and Chrysler for punitive damages under Alabama's Wrongful Death Act directly implicate and **challenge** the terms" of this Court's order approving Amendment No. 4 to the MTA.  (Alabama Decision at *5 (emphasis added).)  However, Alabama law is clear that wrongful death damages are exemplary and punitive—exactly as other punitive damages are exemplary and punitive.  Section 2.08(h), as amended, is unequivocal that Plaintiffs cannot maintain a Product Liability Claim—including a wrongful death claim—that includes any claim for exemplary or punitive damages.  (Amendment No. 4 to MTA, ¶ 1.)  As a result, Plaintiffs' wrongful death claims seeking punitive damages are barred by the Sale Order.

SC1:4600523.4

II.    **THE SALE ORDER BARS PLAINTIFFS' PERSONAL INJURY CLAIMS FOR PUNITIVE DAMAGES AGAINST FCA US**

    A.    **Counts Alleging Punitive Damages for Failure to Recall or Warn Are Barred.**

41.    As set forth above, Section 2.08(h), as amended, which provides that FCA US assumed limited liability for vehicle accidents involving Old Chrysler vehicles sold prior to the Closing Date, is limited to only Product Liability Claims (as defined) and cannot include any claim for punitive damages.   (MTA, Amendment No. 4, ¶ 1.)

42.    Plaintiffs' attempts to label certain of its claims as seeking punitive damages for post-closing FCA US conduct are without substance and do not save Plaintiffs' claims.  Plaintiffs' punitive damages claims are premised on generalized statements that they seek to recover "punitive damages for FCA's post-bankruptcy sale conduct, transactions, actions, or failures to act which caused the chain of events and injuries giving rise to this action." (Compl. at 8, 12, 15.)  While lacking any details, Plaintiffs' allegations also completely miss the point that the source of any alleged duty for FCA US to recall or provide warnings arose only as part of the contractual assumption of liabilities under the MTA.

43.    The definition of Product Liability Claim is not tied to the Closing Date and includes claims that relate in **<u>any</u>** way to a claim for personal injury or wrongful death, and specifically includes "product recalls."  The Court need not look further because "[i]t is the primary rule of construction of contracts that when the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract." *Howard* v. *Howard*, 740 N.Y.S. 2d 71, 71 (N.Y. App. Div. 2002) (citing cases under New York

law).[8]  Moreover, "evidence outside the four corners of the document as to what was really intended or unstated or misstated is generally inadmissible. . . ." *Law Debenture Trust Co. of New York* v. *Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010).  Plaintiffs' claims fall within the scope of the definition of a Product Liability Claim and thus, the conditions imposed by Section 2.08(h) of the MTA (as amended in Amendment No. 4) apply, including the ban on punitive or exemplary damages.  (*See* MTA § 2.08(h).)

44.     FCA US's position is further supported by Section 2.08(p) of the MTA, pursuant to which it assumed certain limited Old Chrysler Obligations to NHTSA, including with respect to recalls.  That provision does not authorize private causes of action or permit punitive damages to be asserted against FCA US.  (MTA, Amendment No. 2, ¶ 1.)  When read as a whole, the MTA specifically contemplates that any claims related to a recall conducted due to an Old Chrysler design defect cannot include a punitive damages claim.  Plaintiffs attempt to assert such a claim violates the Sale Order and the MTA.

**B.     Plaintiffs Have Not Asserted an Independent Claim Against FCA US.**

45.     If the Court were to determine, notwithstanding the plain language of the MTA, that a punitive damages claim against FCA US could possibly be maintained in connection with an accident involving an Old Chrysler vehicle manufactured and sold prior to the Closing Date, Plaintiffs' punitive damages claims here nonetheless are enjoined by the Sale Order.  FCA US did not assume liability for punitive damages based on Old Chrysler's conduct.  Said differently, any conceivable claim for punitive damages against FCA US would have to be

---

[8] The MTA is governed by New York substantive law.  (*See* MTA § 11.08.)

SC1:4600523.4

based upon its own, independent conduct.  The Complaint fails to present facts that could sustain any such "independent" claim against FCA US.

46.     As Judge Gonzalez made clear in *Wolff* v. *Chrysler Group LLC (In re Old Carco LLC)*, "Old Carco and [FCA US] are distinct entities against which different claims may be asserted," and "[b]ecause [FCA US] is a separate company that paid Old Carco adequate consideration for assets under the Sale Order, [FCA US] is not liable for all claims against Old Carco."  Adv. Pro. No. 10-05007, 2010 Bankr. LEXIS 6320, at *17-18 (Bankr. S.D.N.Y. July 30, 2010).  In other words, FCA US is not and was never Old Chrysler.  Instead, "[a]ny claims against [FCA US] based upon the purchase of Old Carco's assets are limited to those liabilities assumed under the Sale Order," which "define[s] with a high degree of specificity which liabilities [FCA US] assumed from Old Carco and which liabilities Old Carco retained."  *Id*.

47.     Plaintiffs' Complaint attempts to skirt this critical distinction by obfuscating its allegations.  Plaintiffs' stated basis for pursuing punitive damages is FCA US's alleged failure to warn or recall the Old Chrysler vehicle.  As an initial matter, the Complaint contains numerous allegations that the Old Chrysler vehicle was designed, engineered, manufactured and marketed by "FCA," which is demonstrably false.  Any duty to warn or recall with respect to the Jeep Liberty at issue originated with Old Chrysler.  As this Court has held, FCA US "did not assume Old Carco's duty to warn its customers . . . and any claim based on the breach of Old Carco's duty to warn is barred by the Sale Order."  *Burton* v. *Chrysler Group, LLC*, 492 B.R. 392, 405 (Bankr. S.D.N.Y. 2013).

48.     Moreover, as against FCA US, the Complaint repeatedly alleges that the "defective condition of the Jeep Liberty was known by Chrysler and/or former Chrysler companies absorbed by FCA, and that knowledge transferred to FCA.  Despite such knowledge,

-19-

FCA took no action to warn, recall or eliminate the defective condition." (Comp. ¶¶ 32, 47, 56.) This argument fails as a matter of law because Plaintiffs are impermissibly attempting to impose successor liability upon FCA US in violation of the Sale Order.

49.    FCA US did not "absorb" any Old Chrysler companies. As this Court has affirmed, the Sale Order provides that FCA US purchased only assets from the Old Chrysler bankruptcy estates pursuant to section 363(f) of the Bankruptcy Code "free and clear of all Claims except for Assumed Liabilities." (Sale Order ¶ 9.) The Sale Order expressly provides that FCA US did not assume any successor liability and shall not have any successor or vicarious liabilities of any kind for any Claims. (*Id.* at ¶ 35.) The Complaint is silent with respect to what FCA US itself had actual knowledge of with respect to information that, *arguendo*, may have been known to Old Chrysler.

50.    Plaintiffs' allegations with respect to FCA US's "post-bankruptcy sale conduct" are nothing more than an attempt to shoehorn a prohibited punitive damages claim into a Product Liability Claim. *See Burton*, 492 B.R. at 405, *quoting Otoski* v. *Avidyne Corp.*, Case No. 09-3041, 2010 WL 4739943, at *7 (D. Or. Oct. 6, 2010) (report and recommendation) (noting that the failure to warn claims were a "typical successor liability case dressed up to look like something else, and is prohibited by the plain language of the bankruptcy court's Order"), *adopted*, 2010 WL 4737815 (D. Or. Nov. 15, 2010).

51.    Plaintiffs' claims relating to alleged injuries are nothing more than a Product Liability Claim against Old Chrysler that improperly seeks to impose punitive damages

on FCA US.  As a result, the punitive damages claims asserted by Plaintiff Graham are enjoined

and must be dismissed with prejudice.[9]

## **CONCLUSION**

52.    For the foregoing reasons, FCA US respectfully requests that the Court

enforce the Sale Order as to Plaintiffs' punitive damages claims and enter the Proposed Order,

and grant such other and further relief as the Court deems just and proper, including, but not

limited to, all lawful costs and attorneys' fees.

Dated:    March 12, 2018
      New York, New York

/s/ Brian D. Glueckstein

Brian D. Glueckstein
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:    (212) 558-4000
Facsimile    (212) 558-3588

*Counsel for FCA US LLC*

---

[9]    While the Court does not need to reach the question, Plaintiffs' attempt to manufacture independent claims against FCA US would be fruitless because there is no Alabama law or common law post-sale duty to recall or warn in Alabama.  *See, e.g., See Lampley* v. *Bridgestone Firestone, Inc.*, No. CIV.A. 90-A-907-N, 1992 WL 12666661, at *1 (M.D. Ala. March 31, 1992).

SC1:4600523.4