UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BONNIE BARCOMB,

                        Plaintiff,

v.                                                  8:17-CV-1264
                                                    (FJS/CFH)

DAIMLER CHRYSLER AG; CHRYSLER LLC;
CHRYSLER GROUP LLC; FCA US LLC; and
DUROCHER AUTO SALES, INC.,

                        Defendants.

APPEARANCES:                                      OF COUNSEL:

Niles, Piller Law Firm                         JOHN M. CROTTY, ESQ.
P.O. Box 786
46-48 Cornelia Street
Plattsburgh, New York 12901-0786
Attorneys for plaintiff

Webster, Szanyi Law Firm                  KEVIN A. SZANYI, ESQ.
1400 Liberty Building                          THOMAS S. LANE, ESQ.
Buffalo, New York 14202                   BRITTANY A. JONES, ESQ.
Attorneys for FCA US LLC

Maynard, O'Connor Law Firm             ROBERT A. RAUSCH, ESQ.
6 Tower Place
Albany, New York 12203
Attorneys for Durocher Auto Sales, Inc.

**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**

## MEMORANDUM-DECISION & ORDER

### I. Procedural Background

This action was transferred from the New York State Supreme Court, Clinton

County on November 15, 2017. Dkt. No. 1 ("Compl."). On November 20, 2017,

ECF DOCUMENT
I certify that this is a printed copy of a document which was electronically filed with the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF NEW YORK. LAWRENCE K. BAERMAN, CLERK
Dated: 4/9/2018
By: _____ Deputy Clerk

defendant FCA US LLC "(FCA") filed a motion to transfer this action to the Bankruptcy Court of the United States District Court, Southern District of New York. Dkt. No. 5. On November 6, 2017, defendant Durocher Auto Sales, Inc. ("Durocher") filed an affidavit in response and in partial opposition to defendant FCA US LLC's motion to transfer. Dkt. No. 10. On December 11, 2017, FCA filed a reply. Dkt. No. 13. On December 18, 2017, plaintiff's counsel submitted a letter motion indicating that he was no longer a member of the bar for the Northern District of New York, his law firm "does essentially no Federal practice at this point," and, thus, he must find "other counsel." Dkt. No. 15 at 1-2. He indicated that he "understand[s] that it is too late to submit a response to the merits on the motion for dismissal" and indicated "[c]ertainly, if the case is removed, then I wish to be given some time and latitude in order to obtain substitute counsel." Id. at 2.

On December 19, 2017, Senior District Judge Scullin referred FCA's Motion to Transfer to the undersigned. Dkt. No. 16. Also on that date, the undersigned issued a text order granting plaintiff's request for an extension of time to obtain counsel and directing plaintiff's counsel to file a status report by January 19, 2018. Dkt. No. 17. Further, the text order provided that "[i]f new counsel is retained," counsel must immediately enter their appearance, then "Response and Motion return deadlines will be reset RE [Dkt. No.] 5 Motion to Transfer Case." Id. Parties appeared for a conference on the record on January 25, 2018. Text Min. Entry dated Feb. 2, 2018. On February 2, the undersigned issued a text order setting a briefing schedule for the Motion to Transfer, requiring plaintiff to file a response by February 28, 2018 and any

2

reply due by March 7, 2018. Dkt. No. 23. Further, the Court directed plaintiff's then counsel to apply for admission pro hac vice or find alternative counsel for plaintiff "as soon as possible." Id.

On February 28, 2018, plaintiff filed an "Attorney Affidavit in Response to Defendant FCA US LLC's Notice of Removal and Motion to Transfer." Dkt. No. 25. On March 2, 2018, John M. Crotty, Esq., an attorney from the same law firm as plaintiff's original counsel, appeared on behalf of plaintiff. Dkt. No. 27. On March 9, 2018, the undersigned issued a text order resetting the deadline to reply to the Motion to Ttransfer to March 19, 2018 "based on the extended deadline given for Plaintiff to file a Memorandum of Law in opposition of the Motion to Transfer." Dkt. No. 28. On March 9, 2018, plaintiff filed a letter motion requesting a court conference. Dkt. No. 29. On March 19, FCA filed a Reply Memorandum of Law in support of its Motion to Transfer. Dkt. No. 31.

The undersigned held a conference on-the-record on March 20, 2018. Dkt. No. 32. Plaintiff requested leave to file an Amended Complaint, and defendant Chrysler objected. Id. The Court "advise[d] counsel that the pending motion to transfer may well be decided prior to Plaintiff's anticipated Motion to Amend." Id. On March 21, 2018, the Court issued a text order granting plaintiff permission to file a Motion to Amend and setting a briefing schedule for that motion. Dkt. No. 33.

## II. Arguments

Familiarity with the underlying claims in this case is assumed. For more detail

3

regarding the facts underlying this case, reference is made to the complaint. Dkt. No. 2 ("Compl."). In the motion currently before the Court, FCA argues that the matter must be transferred to the United States Bankruptcy Court for the Southern District of New York ("SDNY" or "SDNY Bankruptcy Court"). Dkt. No. 5, 13, 31. FCA contends that the Bankruptcy Court, in a Master Agreement, expressly limited FCA's liability for Old Carco, LLC claims to those that arose prior to the closing date, related to the production of vehicles prior to the closing date, or are related to the purchased assets before the closing date. Dkt. No. 5-8 at 2-4. FCA further provides that in the subsequent amendment to the Master Agreement ("Amendment No. 4"), FCA "agreed to voluntarily accept *certain* product liability claims involving products manufactured by Old Carco LLC *before* the Sale Date that were involved in accidents that occurred *after* the Closing Date of June 10, 2009." Dkt. No. 5-8 at 3. FCA further provides that "the amendment [Amendment No. 4] was expressly limited to product liability claims involving lawsuits which did not include any claims for negligence." Id. Specifically, FCA contends that the action must be transferred to the SDNY pursuant to 28 U.S.C. § 1412 as "the interests of justice will be served by having the Bankruptcy Court address the implementation, enforcement and interpretation of its own orders." Dkt. No. 5-8 at 6. FCA further argues that the SDNY "expressly retained jurisdiction 'to interpret, implement and enforce the terms and provisions' of its June 1, 2009 Sale Order 'including to . . . protect the Purchaser [FCA US LLC] against any Claims.'" Id. at 6. It argues that "Plaintiff's pursuit of negligence, conduct-based, and breach of warranty claims against FCA US LLC violates the rulings of the Bankruptcy Court, and the

4

Bankruptcy Court should be given the opportunity to address this collateral attack on its prior orders." Id. at 11. FCA cites various courts that have transferred actions to the bankruptcy court, "conclud[ing] that the Bankruptcy Court must be permitted to interpret and enforce the bankruptcy Sale Order when the claims and defenses in a case implicate the Sale Order and FCA's rights and obligations thereunder." Id. at 7-8 (citing cases).

In addition, FCA argues that the Motion to Transfer should be granted as plaintiff has failed to oppose the motion. Dkt. Nos. 5-8, 13 at 2, 31. Similarly, FCA argues that Durocher's partial opposition should be disregarded as untimely. Dkt. No. 13 at 3. FCA first notes that Durocher did not oppose the transfer with respect to the claims against FCA, and objects only to the transfer with respect to the claims against Durocher. Dkt. No. 13 at 3. Further, FCA argues that Durocher "misapprehends the logistics of this motion" because FCA "anticipates" that, should this Court transfer the matter to the SDNY, after that Court:

> rules on whether the claims are barred, . . . this case will be transferred back to the Northern District of New York for further handling of any remaining claims. Consequently, it is respectfully submitted that this Court need not make a determination with respect to the relief requested by Durocher and simply transfer the entire case for further disposition.

Dkt. No. 13 at 3.

Plaintiff does not address FCA's argument that plaintiff failed to properly object to its motion. Dkt. No. 25. However, plaintiff contends that she intends to file a motion to amend which will remove a breach of warranty claim from the complaint. Dkt. No. 25

5

at 4. Plaintiff asserts that all remaining claims in her amended complaint have been "expressly permitted" by recent case law from the SDNY Bankruptcy Court as the breach of warranty claim was the only issue barred by the Sale Order. Id. ("products liability claims founded upon 'accidents' are expressly permitted under the Bankruptcy Sale Order and Master Transaction Agreement."). Plaintiff provides that the claims in the current complaint involve "negligence, breach of warranty, products liability, and negligence/negligent misrepresentation. The negligence claims are based on design, testing, defect, and representing to the Plaintiff that the vehicle was safe for travel." Id. at 2. Further, plaintiff "asserts that the Court in this instance should apply the absentation doctrine under 20 USC Section 1334(c)(1) and remand the case back to Clinton County Supreme Court." Dkt. No. 25 at 4.

In reply, FCA contends that an amended complaint removing breach of warranty claims, as proposed by plaintiff, would not change the need to transfer the matter to the SDNY as plaintiff still seeks to set forth claims for negligence, which is prohibited by the Sale Agreement. Dkt. No. 31. Defendant contends that the Sale Agreement, which "agreed to voluntarily accept certain product liability claims . . . was expressly limited to product liability claims involving accidents, which did **not** include claims for negligence." Id. at 7. FCA also argues that plaintiff misinterprets its cited case law. Dkt. No. 31 at 6-9.

Durocher filed an "Affidavit in Response and Partial Opposition" to FCA's Motion to Transfer. Dkt. No. 10. Durocher did not file a Memorandum of Law. See id. Durocher argued that "it is not a party to the aforementioned bankruptcy proceedings

6

and has no interest in the outcome of the proceedings" and that "[t]he claims against Durocher in this matter are entirely separate and distinct from the claims against the Chrysler defendants, and would not be affected by the bankruptcy proceedings." Id. at 2. Durocher further contends that transfer "would present a significant inconvenience to Durocher" because it is located in Plattsburgh, New York "and has no presence within the area encompassed by the Southern District of New York." Id. at 3. It similarly argues that it anticipates that "testimony would be required from several Durocher employees" who reside in Clinton County, and their travel to the Southern District "would impose a significant expense and inconvenience." Id.

### 1. Failures to File Memorandum of Law

FCA contends that plaintiff's failure to file a Memorandum of Law in violation of Local Rule 7.1(b)(3) should be deemed "consent to FCA US LLC's motion." Dkt. No. 13 at 2. Rule 7.1(b)(3) provides, in relevant part,

> The Court shall not consider any papers required under this Rule that are not timely filed or are otherwise not in compliance with this Rule unless good cause is shown. Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion as the case may be, unless good cause is shown.

N.D.N.Y. L.R. 7.1(b)(3).

> An inquiry into whether a movant has met its 'burden to demonstrate entitlement' to dismissal under Local Rule

7

> 7.1(b)(3) is a more limited endeavor than a review of a contested motion. Specifically, under such an analysis, the movant's burden has appropriately been characterized as "modest." This is because, as a practical matter, the burden requires only that the movant present an argument that is "facially meritorious."

Capitol Records, LLC v. Greene, 2008 WL 11355365, at *1, 5:07-CV-0969 (GTS/GHL) (N.D.N.Y. Nov. 5, 2008) (N.D.N.Y. Nov. 5, 2008) (citation omitted).

The Court recognizes that plaintiff's counsel chose a state court before this case was removed to federal Court. However, plaintiff did not file a memorandum of law, even after being directed by the Court to file such memorandum. See Dkt. No. 26 ("Plaintiff is directed to file a Memorandum of Law in opposition to the pending Motion to Transfer Case, as is required, within 10 days of this Order."); Grassi v. Lockheed Martin Federal Systems, Inc., 186 F.R.D. 277, 278 (N.D.N.Y. 1999). Plaintiff never asked for an extension of time to file a Memorandum of Law. Although, prior to the Order directing a Memorandum of Law plaintiff's counsel filed an "Attorney Affidavit in Response to Defendant FCA US LLC's Notice of Removal and Motion to Transfer," such affidavit violates Local Rule 7.1(a)(2) insofar as it contains legal arguments. See N.D.N.Y. L.R. 7.1(a)(2) ("[A]n affidavit shall not contain legal arguments, but shall contain factual and procedural background as appropriate."). The Court will review plaintiff's arguments set forth in the attorney affidavit, although violative of both the Local Rules and this Court's Order. Dkt. No. 26. However, cognizant of the reduced standard of proof necessary when a party does not properly oppose a motion, NDNY LR 7.1(b)(3), in considering plaintiff's arguments, the Court will be mindful of the significantly lightened burden of proof on a defendant when a plaintiff does not properly

8

oppose the motion. The Court cautions plaintiff's counsel to remember that unfamiliarity with federal practice or a Court's local rules does not excuse the litigator from his requirement to properly follow those rules, nor this Court's duty to enforce them.

### 2. Merits Argument

The undersigned is in agreement with FCA that this matter must be transferred to the S.D.N.Y. Bankruptcy Court. A district court "may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). "The purpose of section 1404(a) 'is to prevent the 'waste of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Flaherty v. All Hampton Limousine, Inc., 01-CV-9939, 2002 WL 1891212, at *1 (S.D.N.Y. Aug. 16, 2002) (quoting Eskofot A/S v. E.I. Du Pont De Nemours & Co., 872 F. Supp. 81, 94 (S.D.N.Y. 1995)). Motions to transfer are governed by a two-part test: "(1) whether the action to be transferred might have been brought in the transferee venue; and (2) whether the balance of convenience and justice favors transfer." Rescuecom Corp v. Chumley, 522 F. Supp. 2d 429, 448-49 (N.D.N.Y. 2007) (citation omitted). "The decision to transfer a case is committed to the sound discretion of the court." Bennett v. Sterling Planet, Inc., 09-CV-1176 (GLS/DRH), 2010 WL 1156603, at *2 (N.D.N.Y. Mar. 22, 2010); D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006). The moving party bears the burden of proving that a transfer of venue is appropriate. See Rescuecom Corps., 522 F. Supp.2d at 449.

The relevant portion of the Master Transaction Agreement, section 2.08(h), provides that

> none of the Purchaser, its successor or assigns or any of their respective affiliates shall have any liability for any Claim that (a) arose Prior to the Closing Date, (b) relates to the production of vehicles prior to the closing date or (c) otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing Date.

Dkt. No. 5-8 at 2-3 (citing Dkt. No. 5-2 at 41, ¶35). Amendment No. 4 to the Master Transaction Agreement provides, as relevant here, that section 2.08(h) of the Master Transaction Agreement is modified to state:

> all Product Liability Claims arising from the sale after the Closing of Products or Inventory manufactured by Sellers or their Subsidiaries in whole or in part prior to the Closing and (ii) all Product Liability Claims arising from the sale on or prior to the Closing of motor vehicles or component parts, in each case manufactured by Sellers or their Subsidiaries and distributed and sold as a Chrysler, Jeep, or Dodge brand vehicle or MOPAR brand part, solely to the extent such Product Liability Claims (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, (c) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and (D) do not include any claim for exemplary or punitive damages.

Dkt. No. 5-4 at 2, ¶1. Section 2.09 of the Master Transaction Agreement, "Excluded Liabilities[,]" provides that the

> Purchaser shall not assume and shall be deemed not to have assumed, and Sellers shall be solely and exclusively liable with respect to, any Liabilities of Sellers other than the Assumed Liabilities . . . . the Excluded liabilities include the following . . . (j) all Liabilities in strict liability, negligence, gross negligence or recklessness for acts or omissions arising prior to or ongoing at the Closing.

10

Dkt. No. 5-3 at 19-20 (§ 2.09(j)). Defendants contend that Master Transaction Agreement explicitly excludes claims for negligence, and, thus, even if plaintiff amends her contract to omit breach of warranty claims, she indicates that she intends to retain negligence claims which are explicitly prohibited.

The undersigned agrees with FCA that this matter must be transferred to SDNY Bankruptcy Court. As FCA provides, the Bankruptcy Court in its Master Transaction Agreement explicitly reserved its right to interpret its Order. See Dkt. No. 5-2 at 50, ¶59 ("This Court retains the jurisdiction to interpret, implement and enforce the terms and provisions of this Sale Order including to compel delivery of the Purchased Assets, to protect the Purchaser against any Claims and to enter any orders under sections 105, 363 or 365 (or other applicable provisions) of the Bankruptcy Code to transfer the Purchased Assets and the Assumed Agreements to the Purchaser."). The Court agrees with FCA that the Bankruptcy Court is in the best position to interpret its own order. In re Cassee, 198 F.3d 327(2d Cir. 1999). Several Courts that have assessed the issue have transferred matters to the bankruptcy courts to allow the bankruptcy court to interpret its orders. More significantly, as cited by FCA, courts interpreting this exact sale order – even following the implementation of Amendment No. 4, have transferred to the bankruptcy court to allow it to assess the impact of those actions on the Sale Order. See, e.g., Quesenberry v. Chrysler Grp. LLC, No CIV 12-48-ART, 2012 WL 3109431, at *4 (E.D. KY July 31, 2012).

The Court is persuaded by the Middle District of Pennsylvania's decision in Ritter v. Chrysler Grp., LLC, No 4:13-CV-2123, 2013 WL 7175621, at *2 (M.D. Pa. Oct. 28,

11

2013).[1] As in the Ritter case, "the plaintiff's ability to maintain this claim against Chrysler Group LLC[2] at this time is largely a function of rulings made in these prior bankruptcy proceedings." Id.; see also Wolff v. Chrysler Grp. LLC, Case No. 09-5002 (AJG) (S.D.N.Y. July 20, 2010), Dkt. No. 5-7. The risk of an inconsistent interpretation of the Master Transaction Agreement warrants transfer. Further, the Court agrees that judicial efficiency also dictates transfer, as the SDNY Bankruptcy Court is familiar with the terms of its Sale Order and Master Transaction Agreement. For this Court to interpret a bankruptcy court order from another court, an Order with which this Court is not familiar, will require significant exertion of judicial resources – resources which would clearly be better spent in the Court from which the Sale Order and Master Transaction Agreement originated.

Plaintiff's citation to Autumn v. Chrysler Grp., LLC, 492 B.R. 392,*4 (S.D.N.Y. Apr. 28, 2017) does not require a different finding. Plaintiff argues that the SDNY Bankruptcy Court in Autumn v. Chrysler Grp., LLC clearly set forth "the extent to which New Chrysler assumed the liabilities of Old Carco notwithstanding the 'free and clear'

---

[1] Although the motions before the Middle District of Pennsylvania were a Motion to Dismiss and Motion to Remand the action to the Court of Common Pleas, the Court assessed essentially the identical question pending before this Court. There, the question at issue was:

> [w]hat is the most appropriate venue for litigation of auto breach of warranty claims against the entity which acquired assets of the bankrupt and now-defunct automaker, Chrysler, when these claims were initially filed in a state Court in Pennsylvania, were then later removed to federal court, but the ability of the parties to maintain there claims may be largely defined by orders entered in the Chrysler bankruptcy proceedings conducted in federal Court in New York?

Ritter, 2013 WL 7175621, at *1.

[2] Here, the relevant defendant is FCA.

12

and 'no successor liability' provisions in the Sale Order." Specifically, plaintiff notes that the <u>Autumn</u> Court indicated that "[e]xcept for the Assumed Liabilities under the MTA [Master Transaction Agreement], and subject to certain additional limitations, New Chrysler assumed Old Carco's existing obligations and liabilities in three situations: (1) the repair obligations imposed under the factor warranty and any extended warranties; (2) products liability arising from "accidents"; and (3) liabilities under federal and state laws." <u>Id.</u> (citing <u>Burton v. Chrysler Grp, LLC</u>, 492 B.R. 392, 396-97 (Bankr. S.D.N.Y. 2013). Plaintiff does not, however, explain or support how her claim amounts to an "accident" within the meaning of the Master Transaction Agreement and Amendment No. 4. Dkt. No. 25 at 3. As stated above, section 2.08(h) of Amendment No. 4 states that claims arising from the sale of motor vehicles prior to the closing may be permitted "solely to the extent such Product Liability Claims . . . arise directly from motor vehicle accidents occurring on or after the Closing[.]" Dkt. No. 5-4 at 2 ¶1. However, Section 2.09(j) of the Master Transaction Agreement provides that "excluded liabilities" include "(j) all Liabilities in strict liability, negligence, gross negligence or recklessness for acts or omissions arising prior to or ongoing at the Closing." Dkt. No. 5-4 at 2, Dkt. No. 5-3 at 19-20 (§ 2.09(j)). Thus, due to the strong deference the SDNY Bankruptcy Court has in interpreting its own Order, it is for that Court, not this one, to interpret whether plaintiff's claims for negligence and breach of warranty are barred by the Sale Order and Master Transaction Agreement.

Although plaintiff appears to concede that her breach of warranty claims are barred by the sale order and that she intends to withdraw that claim, in the only

13

complaint before the Court, plaintiff maintains a breach of warranty claim. Dkt. No. 25 at 2, 4. Even if the Court were to consider plaintiff's complaint sans the breach of warranty claim, the Court finds that plaintiff's remaining negligence claims require remand to the SDNY Bankruptcy Court to interpret its Sale Order, Master Transaction Agreement, and Amendment No. 4 to determine whether plaintiff can maintain such causes of action against FCA.

Plaintiff's citation to O'Grady also does not direct a different result. Dkt. No. 25 at 3. Indeed, it is unclear the reason as to why plaintiff cited this case,[3] as she does not provide analysis as to why this case supports her argument against transfer to the bankruptcy court. In O'Grady, the defendant filed a motion to dismiss plaintiff's claim for punitive damages. The SDNY dismissed plaintiff's claim for punitive damages, finding that "[t]he Bankruptcy Court's Orders plainly and directly exempt FCA from punitive damages in product liability claims." 2017 WL 1608915, at *2. The Court directed defendants to "submit a letter by May 10, 2017, stating whether the Court still has jurisdiction over this case." Id. Plaintiff does not explain how this case supports her argument that the claims in her case amount to "claims founded upon 'accidents'" which are "expressly permitted under the Bankruptcy Sale Order and Master Transaction Agreement." Dkt. No. 25 at 4.

To the extent plaintiff cites O'Grady to indicate that the SDNY interpreted an order of the bankruptcy court without having to transfer the matter to the bankruptcy

---

[3] As plaintiff does not synthesize this case, as FCA notes, "Plaintiff's reason for citing O'Grady remains a mystery." Dkt. No. 31 at 8.

14

court, this Court notes that the Court dismissed only the punitive damages claim as punitive damages claims were "plainly and directly" barred by the Bankruptcy Court's orders. Id. In O'Grady, the Court as assessing a motion to dismiss, not a motion to transfer as the Court has before it here. Further, unlike in O'Grady, this Court finds that the MTA is not "plainly and directly" clear whether FCA is exempt from the claims in plaintiff's complaint, or even in plaintiff's potential amended complaint.

Although the Court is mindful that transfer may cause inconvenience to both plaintiffs and defendant Durocher, convenience to parties is just one of the factors to consider when assessing transfer. More significant to the Court is consistency in application of the Sale Order and Master Transaction Agreement. Although plaintiff suggests that it is clear that withdrawal of a breach of warranty claim would cure FCA's concerns, as FCA points out, plaintiff makes clear that she would still seek to bring negligence claims. It is not proper for this Court to interpret the Master Transaction Agreement to assess whether plaintiff's claims – either in her complaint or potentially set forth in some future amended complaint – are barred by the Sale Order or permitted.

Insofar as plaintiff's counsel states in his affidavit that this Court should apply the abstention doctrine and remove the case to Clinton County Supreme Court, the Court again notes that this argument is not properly before the Court. However, even if plaintiff had filed a memorandum of law, plaintiff's counsel merely lists the factors set forth in 28 USC § 1443(c)(1) and concludes, without analysis, that "a[]ll of the factors above favor abstention, especially after the warranty claims are withdrawn." Dkt. No. 25

15

at 5. Regardless, FCA has properly removed this matter to federal court. ). As the Ritter sets forth,

> "'district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11 [of the United States Code, the bankruptcy code].' 28 U.S.C. § 1134(b)). With respect to the term 'arising under title 11, or arising in or related to cases under title 11,' as it is used in 28 U.S.C. § 1134, a 'proceeding is considered to be related to a bankruptcy case for purposes of establishing a jurisdiction if the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy."

Id. (quoting Lichtenfels v. Electro-Motive Diesel, Inc., No. 09-1590, 2010 WL 65389, at *2 (W.D. PA. Feb. 22, 2010)) (additional citations and internal quotation marks omitted).[4] Thus, even if this argument were properly before the Court, the Court would find that remand to state court is not necessary as the matter was properly removed to this Court.

## III. Conclusion

Accordingly, in due deference to the SDNY Bankruptcy Court and its express reservation of the right to interpret its Sale Order, and keeping in mind the significant

---

[4] Further recognized by the Ritter Court, noting that abstention requests have been "frequently made" "[i]n past Chrysler warranty litigation," such requests "are rarely embraced by the courts, which have consistently recognized three important considerations: First, these warranty claims involve 'core proceedings' in bankruptcy, and are, therefore, not subject to mandatory abstention. Second, the permissive abstention provided for under § 1334(c) for cases that relate to bankruptcy 'core proceedings' rest in the sound discretion of the court. Third, in the exercise of this discretion in Chrysler warranty lawsuits, courts have consistently favored an approach which recognizes the importance of consistent treatment of claims across the nation that may be affected by the Chrysler bankruptcy, and have declined to abstain from asserting federal jurisdiction and permitting piecemeal litigation of those claims in state courts." Ritter, 2013 WL 7175621, at *3 (citing Clark v. Chrysler Grp., LLC, CIV A.10-3030, 2010 WL 4448927 (E.D.Pa. Nov. 5, 2010)).

16

need of consistency in the interpretation of the Order, it is hereby

**ORDERED**, that defendant FCA's Motion to Transfer (Dkt. No. 5) is **GRANTED**, and, pursuant to 28 U.S.C. § 1404(a), the Clerk of this Court shall transfer this action to the United States Southern District of New York, United States Bankruptcy Court and close the file; and it is further

**ORDERED**, that plaintiff's request (Dkt. No. 25) to apply the abstention doctrine to remand this matter to the Supreme Court, Clinton County is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 9, 2018
Albany, New York

/s/ Christian F. Hummel
_____
Christian F. Hummel
U.S. Magistrate Judge