**Hearing Date:  June 7, 2018, at 10:00 a.m. (ET)**
**Objection Deadline:  May 4, 2018**
**Reply Deadline:  May 18, 2018**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| | : |
| | : Case No. 09-50002 (SMB) |
| Old Carco LLC, *et al.*, | : |
| | : Jointly Administered |
| Debtors. | : |
| | : |
| | : |

**PLAINTIFFS' OPPOSITION TO FCA US LLC'S MOTION TO ENFORCE THE
COURT'S ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL
OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES, (II) AUTHORIZING THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES IN CONNECTION THEREWITH AND RELATED
PROCEDURES AND (III) GRANTING RELATED RELIEF**

**Cole Schotz P.C.**
Mark Tsukerman
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
Tel: (212) 752-8000
*Bankruptcy Counsel for Plaintiffs
Frankie Overton, as Executor of the
Estate of Sue Ann Graham; and Scott
Graham, as legal guardian of J.G., a
minor child*

**Beasley, Allen, Crow, Methvin
Portis & Miles, P.C.**
J. Parker Miller  (*pro hac vice*)
Stephanie Monplaisir  (*pro hac vice*)
P.O. Box 4160
Montgomery, Alabama 36103-4160
Tel: (334) 269-2343
*Lead Counsel for Plaintiffs Frankie Overton,
as Executor of the Estate of Suh Ann Graham;
and Scott Graham, as legal guardian of J.G.,
a minor child*

1

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ............................................................................................................2

    I.      THE CHRYSLER BANKRUPTCY PROCEEDINGS .........................................2

    II.    THE JUNE 2016 ACCIDENT ...........................................................................5

    III.   PLAINTIFFS' ALABAMA STATE LAW ACTION ........................................6

    IV.   THE ALABAMA DISTRICT COURT'S DECISION AND RELATED
         PROCEEDINGS ..................................................................................................7

ARGUMENT ...............................................................................................................9

    I.      THIS COURT SHOULD DENY FCA'S MOTION AS TO OVERTON ............9

         A.     FCA Intended to Except Traditional "Punitive or Exemplary Damages",
             Not Alabama Wrongful Death Damages. .................................................10

         B.     Alabama Wrongful Death Damages Are Uniquely Different – They are
             Not Traditional Punitive Damages. .........................................................12

         C.     FCA's Proposed Interpretation Excluding only Alabama Citizens for the
             same Wrongful Conduct it Assumed in all other States Leads to Absurd
             Results and is Void as Against Alabama Public Policy. .........................16

    II.    FCA'S MOTION SHOULD BE DENIED AS TO GRAHAM. ...........................19

         A.     This Court Lacks Subject Matter Jurisdiction Over Graham's Claims. ....19

         B.     Graham's Claims Against FCA for Failure to Warn and Recall are
             Independent Claims That Do Not Implicate the Sale order.....................21

CONCLUSION..................................................................................................25

57860/0001-15802641v2

# TABLE OF AUTHORITIES

**Cases**                                                                                                                           **Page**

*Boudreaux v. Pettaway*,
   108 So.3d 486 (Ala. 2012)...................................................................................................15

*Campbell v. Williams*,
   638 So. 2d 804 (Ala. 1994)................................................................................................17

*Central Alabama Electric Cooperative v. Tapley*,
   546 So.2d 371 (Ala. 1989)................................................................................................17

*Dearden v. FCA US LLC (In re Old Carco LLC)*, Adv. Pro. 17-01062 (SMB),
   2018 WL 1352695 (Bankr. S.D.N.Y. Mar. 15, 2018)...........................................................25

*Deaton, Inc. v. Burroughs*,
   456 So.2d 771 (Ala. 1984)................................................................................................17

*Elliott v. General Motors LLC (In re General Motors Liquidation Co.)*,
   829 F.3d 135 (2d Cir. 2016) ............................................................................................26

*Hill v. Campbell*,
   804 So. 2d 1107 (Ala. Civ. App. 2001)..............................................................................22

*In re Blodgett's Estate*,
   7 N.Y.S.2d 364 (N.Y. Sup. Ct. 1938) ................................................................................14

*In re Motors Liquidation Co.*,
   541 B.R. 104 (Bankr. S.D.N.Y. 2015) ...................................................................... 16, 26, 27

*In re Old Carco LLC*,
   538 B.R. 674 (Bankr. S.D.N.Y. 2015) ................................................................................14

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*,
   309 F.3d 76 (2d Cir. 2002) ..............................................................................................14

*Lampley v. Bridgestone Firestone, Inc.*,
   No. CIV.A. 90-A-907-N, 1992 WL 12666661 (M.D. Ala. Mar. 31, 1992)............................26

*Law Debenture Trust Co. of New York v. Maverick Tube Corp.*,
   595 F.3d 458 (2d Cir.2010) ............................................................................................14

*Louis Pizitz Dry Goods Co., Inc., v. Yeldell*,
   274 U.S. 112 (1927) .......................................................................................................19

57860/0001-15802641v2

*Lowe v. Gen. Motors Corp.*,
    624 F.2d 1373 (5th Cir. 1980) ............................................................26

*Luver Plumbing & Heating, Inc. v. Mo's Plumbing & Heating*,
    43 N.Y.S.3d 267 (N.Y. App. Div. 2016).................................................20

*Mathias v. Fiat Chrysler Automobiles, NV*,
    No. 5:16-CV-01185-EJD, 2016 WL 5109967 (N.D. Cal. Sept. 21, 2016) ............12

*Overton v. Chrysler Group LLC*,
    Case No. 2:17-cv-01983-RDP, 2018 WL 847772 (N.D. Ala. Feb. 13, 2018)........12

*Shapiro v. Logistec USA, Inc.*,
    412 F.3d 307, 310 (2d Cir. 2005) ........................................................24

*Yanmar America Corp. v. Nichols*,
    166 So.3d 70 (2014).........................................................................26

**Statutes**

26 U.S.C. § 104..................................................................................21

28 U.S.C. § 1334(a) .......................................................................11, 12

28 U.S.C. § 1441................................................................................11

28 U.S.C. § 1446................................................................................11

28 U.S.C. § 1447................................................................................23

28 U.S.C. § 1452............................................................................ 11, 12

Ala. Code § 6-5-410............................................................................17

Ala. Code § 6-11-20............................................................................18

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(6).......................................11

**Other Authorities**

Alabama Law of Damages § 37:2..........................................................16

Black's Law Dictionary (6th ed. 1991) ..............................................14, 15

Plaintiffs Frankie Overton ("**Overton**"), as executor of the estate of Sue Ann Graham, and Scott Graham ("**Graham**", and together with **Overton**, the "**Plaintiffs**"), as legal guardian of minor J.D., by and through their undersigned counsel, hereby file this opposition (the "**Opposition**") to defendant FCA US, LLC's ("**FCA**" or "**New Chrysler**") motion [Docket No. 8510] (the "**Motion**") for entry of an order enforcing this Court's *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Intersts and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief* [Docket No. 3232] (the "**Sale Order**").   In support of the Opposition, the Declaration of Parker Miller, dated May 4, 2018 (the "**Miller Declaration**") and the Affidavit of Justice R. Bernard Harwood, sworn to as of April 30, 2018 (the "**Harwood Affidavit**").   In further support of the Opposition, the Plaintiffs respectfully state as follows:

## PRELIMINARY STATEMENT[1]

Although New Chrysler represented to Congress and the American public that it would assume liability for all product liability claims arising from accidents occurring after the bankruptcy sale in Old Chrysler vehicles, New Chrysler asks this Court to reach an unconscionable interpretation of its previous orders.   New Chrysler seeks immunity for any and all wrongful death claims in Alabama even though such claims involve the exact conduct New Chrysler assumed liability for in all other 50 States.   New Chrysler bases its request on the fact that the Alabama

---

[1]      Undefined capitalized terms used in the preliminary statement have the meanings assigned to them below.

57860/0001-15802641v2

courts have called the damages for wrongful death in Alabama "punitive." However, as will be shown below, this Court's previous orders do not expressly bar Alabama wrongful death damages, and New Chrysler did not intend to exclude such damages when it promised the American public that it would take responsibility for all wrongful death claims involving the fact scenario in this case. Even if New Chrysler did intend such an absurd result, the MTA Amendment No. 4's punitive damages exclusion is against Alabama public policy and is void in application to Alabama death claims.

In addition, as the District Court has already concluded, Scott Graham's claims do not fall within the purview of the Sale Order. Therefore, this Court lacks subject matter jurisdiction to re-consider arguments FCA has already made and lost at the District Court level.

## BACKGROUND

### I.    THE CHRYSLER BANKRUPTCY PROCEEDINGS

On April 30, 2009, Old Carco LLC and certain of its affiliated debtors (collectively, the "**Debtors**" or "**Old Chrysler**") declared bankruptcy and, as part of the Troubled Asset Relief Program (TARP), received a taxpayer bailout. On June 1, 2009, the Court entered the Sale Order approving the sale of substantially all of Old Chrysler's assets to New Chrysler[2] pursuant to the terms of the Master Transaction Agreement (as amended and including all ancillary documents thereto, the "**MTA**") free and clear of all liens, claims and interests, except for "Assumed Liabilities."[3] The sale closed on June 10, 2009 (the "**Closing Date**").

---

[2]    At the time of the sale, FCA was known as New Carco Acquisition LLC. New Carco Acquisition LLC changed its name to Chrysler Group LLC and later to FCA US LLC. Both Chrysler Group LLC and FCA are named as defendants in the Complaint.

[3]    Copies of the Sale Order and the MTA are attached to the Declaration of Brian Glueckstein in support of the Motion (the "**Glueckstein Declaration**") as Exhibits A and B, respectively.

Under the original Master Transaction Agreement ("MTA"), New Chrysler expressly excluded Products Liability Claims for defects in vehicles manufactured and sold by Old Chrysler before the bankruptcy. Product Liability Claims are defined as:

> any Action arising out of, or otherwise relating to in any way in respect of claims for personal injury, wrongful death or property damage resulting from exposure to, or any other warranty claims, refunds, rebates, property damage, product recalls, defective material claims, merchandise returns and/or any similar claims, or any other claim or cause of action, whether such claim is known or unknown or asserted or unasserted with respect to, Products or items purchased, sold, consigned, marketed, stored, delivered, distributed or transported by the Company Business, any Selling Group Member or any of its Subsidiaries, whether such claims or causes of action are known or unknown or asserted or unasserted.

(MTA Definitions Addendum, at p. 90, *as amended* by Amendment No. 1 to MTA, ¶ 36. Originally, the MTA left no remedy for claimants injured in defective Old Chrysler vehicles manufactured and sold before the Bankruptcy Closing.

Following public outcry and Congressional pressure, however, on August 27, 2009, New Chrysler issued a letter to Senator Richard Durbin promising that New Chrysler would accept product liability claims on vehicles manufactured by Old Chrysler prior to the Closing Date that are involved in post-Closing Date accidents. More specifically, New Chrysler wrote:

> We very much appreciate the support you have given to the new Chrysler Group LLC, and we understand the concerns you have raised about Chrysler Group's commitments on product liability claims. . . . Today, Chrysler Group has a much better appreciation of the viability of our business than it did on June 10. As a result, we will announce today that the company will accept product liability claims on vehicles manufactured by Old Carco before June 10 that are involved in accidents on or after that date. . . . As a result of today's announcement, Chrysler Group's approach is consistent with that taken by General Motors as part of its bankruptcy process. . . . **While Chrysler Group still faces challenges, we are confident today that future viability of the company will not be threatened if we assume these obligations. We want our consumers to feel comfortable and confident buying, driving and enjoying one of our vehicles.** Chrysler Group

57860/0001-15802641v2

vehicles meet or exceed all applicable federal safety standards and have excellent safety records.[4]

Thus, New Chrysler assured Congress and the American public that it would assume Old Chrysler's product liability obligations so that consumers would feel comfortable and confident buying, driving and enjoying Chrysler vehicles. New Chrysler attempted to memorialize its commitment to Senator Durbin and the American public by executing Amendment No. 4 of the MTA, dated as of October 29, 2009, which expanded the scope of liabilities FCA assumed relating to "Product Liability Claims" to include the following:

(i)     all Product Liability Claims arising from the sale after the Closing of Products or Inventory manufactured by Sellers or their Subsidiaries in whole or in part prior to the Closing and

(ii)    all Product Liability Claims arising from the sale on or prior to the Closing of motor vehicles or component parts, in each case manufactured by Sellers or their Subsidiaries and distributed and sold as a Chrysler, Jeep, or Dodge brand vehicle or MOPAR brand part, solely to the extent such Product Liability Claims

(A) arise directly from motor vehicle accidents occurring on or after Closing,

(B) are not barred by any statute of limitations,

(C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and

(D) do not include any claim for exemplary or punitive damages.[5]

MTA Amendment No. 4 provides that the amendment is governed and must be construed in accordance with New York law. (See MTA Amendment No. 4 at ¶ 6). However, MTA Amendment No. 4 provides that: "[i]f any term or other provision of this Amendment is invalid, illegal or incapable of being enforced by any rule of Law, or public policy, then to the maximum

---

[4]    A copy of Chrysler's letter, dated August 27, 2009 (the "**Bozzella Letter**") is attached to Miller Declaration as Exhibit 1 (emphasis added).

[5]    A copy of the Stipulation and Order, to which MTA Amendment No. 4 is attached, is attached to the Glueckstein Declaration as Exhibit C.

57860/0001-15802641v2

extent permitted by Law, all other conditions and provisions of this Amendment shall nevertheless remain in full force and effect." (MTA Amendment No. 4 at ¶ 9).

On November 19, 2009, the Court entered a Stipulation and Agreed Order Approving Amendment No. 4 to Master Transaction Agreement [Docket No. 5988] (the "**Stipulation and Order**"). Per the Stipulation and Order, the Court retained "jurisdiction over all matters or disputes arising out of or in connection with the Stipulation and Agreed Order," but notably did not retain exclusive jurisdiction, as is often the case in bankruptcy orders. (*See* Stipulation and Order at ¶ 2). Likewise, the Court did not retain exclusive jurisdiction over the Sale Order itself. (*See* Sale Order at ¶ 59 ("This Court retains jurisdiction to interpret, implement and enforce the terms and provisions of this Sale Order . . . .")).

On April 23, 2010, the Court entered the confirmation order with respect to Old Chrysler's second amended joint plan of liquidation (the "**Plan**"). [*See* Docket No. 6875]. On June 18, 2015, the Old Carco Liquidation Trust (the Debtors' successor under the Plan) filed a motion to enter a final decree and close the Debtors' bankruptcy cases on the basis that it had accomplished substantial consummation of the Debtors' cases and substantially completed the administration and implementation of the Plan. On July 29, 2015, the Court granted the Old Carco Liquidation Trust's motion and entered the Final Decree closing Old Chrysler's bankruptcy cases. [*See* Docket No. 8428].

II.    **THE JUNE 2016 ACCIDENT**

This action arises from a product liability claim that occurred after this Court closed the Old Chrysler bankruptcy estate. On June 10, 2016, Sue Ann Graham, and her son, J.G., were passengers of their 2002 Jeep Liberty traveling in the left-hand lane of Interstate 59 in Jefferson County, Alabama. While the Grahams were traveling on I-59, defendant Rodericus Obyran Carrington was driving behind the Grahams in the left-hand lane and attempted to change to the

right-hand lane, but saw another car and tried to get back into the left lane. However, Carrington overcorrected, lost control, and struck the Grahams' 2002 Jeep Liberty, causing it to overturn. The Grahams were properly belted. Sue Ann Graham sustained catastrophic injuries that resulted in her death. Sue Ann's and Scott Graham's son, J.G., a passenger and a mere seat behind Sue Ann Graham at the time of the accident, was physically, mentally and emotionally injured.

### III.    PLAINTIFFS' ALABAMA STATE LAW ACTION

On October 17, 2017, Plaintiffs filed a Complaint (the "**Complaint**")[6] commencing a lawsuit against FCA, Mr. Carrington and others in Jefferson County, Alabama (the "**State Court Action**"). Plaintiffs' claims are brought solely under the laws of the State of Alabama; they assert no federal causes of action. As to FCA, Overton, as executor of Sue Ann's estate, asserts claims for negligence, wantonness, and under Alabama Extended Manufactures Liability Doctrine ("**AEMLD**") (Alabama's products liability doctrine) alleging that the vehicle's restraint system was defective and/or unreasonably dangerous in design, manufacture and/or marketing as it relates to the vehicle's characteristics for occupant protection and crashworthiness in a foreseeable rollover event and lack of proper warning regarding said issues. (Complaint at Counts 1, 3, and 4. Overton seeks damages against FCA under Alabama's Wrongful Death Act, which are the only damages Overton may permissibly seek under Alabama law. (*See id.* at pp. 8, 11, 14).

Scott Graham asserts claims against FCA on Sue Ann's son's behalf for the injuries he sustained in the accident. As to FCA, Graham asserts pre-Closing Date claims (*i.e.*, claims assumed by FCA) for negligence, wantonness, and products liability (*i.e.*, under the AEMLD) against FCA related to the crashworthiness of the Jeep Liberty. (Complaint at Counts 1, 3, and 4).

---

[6]    FCA did not attach a copy of the Complaint to its Motion. Accordingly, the Plaintiffs are submitting a copy of the Complaint for the Court's reference, attached to the Miller Affidavit as Exhibit 2.

In addition, Scott Graham asserts claims against FCA that arose after the Closing Date that are based on FCA's post-Closing Date knowledge and conduct. Specifically, Graham alleges that New Chrysler knew of the defective condition of the Jeep Liberty, by way of imputation from Old Chrysler or otherwise, but despite such knowledge, failed to take action to warn, recall or otherwise eliminate the defective condition in breach of its duties to do so under Alabama law. (*Id*. at Counts 3 and 4). Graham seeks both compensatory and traditional punitive damages against FCA with respect to his post-Closing Date claims, but seeks compensatory damages only with respect to the pre-Closing Date claims that FCA assumed. (*Id*. at pp. 8, 12, 15).

Importantly, as was recognized and held by the Alabama District Court (which is discussed below), Graham carefully and properly pleaded the relief sought against FCA in the Complaint to request compensatory damages only from FCA with respect to claims and allegations based on Old Chrysler's conduct before it sold its assets to New Chrysler in bankruptcy. Under each Count in Plaintiffs' complaint, Graham specifies that he is seeking punitive damages based only on New Chrysler's post-bankruptcy sale conduct. (Complaint at pp. 8, 11-12, 14, 15).

### IV.    THE ALABAMA DISTRICT COURT'S DECISION AND RELATED PROCEEDINGS

On November 27, 2017, FCA filed a notice in United States District Court for the Northern District of Alabama ("**District Court**") to remove the State Court Action pursuant to 28 U.S.C. § 1334(b), 1441, 1446, and 1452(a). FCA predicated its removal of the State Court Action on the limited bankruptcy jurisdiction under 28 U.S.C. § 1334(a) that is tied to interpreting and enforcing the Sale Order. FCA also filed motions to transfer the action to the Southern District of New York, or alternatively, to sever and transfer the claims against FCA to the Southern District of New York. FCA separately moved the District Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "**Civil Rules**") to dismiss Graham's post-Closing Date claims for failure to warn

11

and failure to recall. FCA contended that Graham's post-Closing Date claims violated this Court's sale order and failed to state a claim under Alabama law.[7] The Plaintiffs, in turn, moved to remand the case back to the Alabama state court, and separately opposed FCA's motion to dismiss.

On February, 13, 2018, the District Court granted the Plaintiffs' remand motion and, as a result, denied FCA's motions to transfer and to dismiss as moot. *See Overton v. Chrysler Group LLC*, Case No. 2:17-cv-01983-RDP, 2018 WL 847772 (N.D. Ala. Feb. 13, 2018) (hereinafter, the "**District Court Decision**").[8] Importantly, the District Court separately analyzed FCA's asserted basis for jurisdiction over Overton's claims and Graham's claims and found:

(a) Overton's claims, which are all asserted under the Alabama Wrongful Death Act, implicated the Sale Order and, therefore, the Court could exercise limited subject matter jurisdiction over those claims should it decide to exercise it. After review of the § 1334 abstention factors, however, the District Court held pursuant to 28 U.S.C. § 1334(c)(1) and 1452(b) that, under the facts of this case, abstention was appropriate because, among other reasons, the Alabama state court could just as easily construe the Sale Order as applied to Overton's wrongful death claims. *See* District Court Decision at 12 ("Although the Bankruptcy Court has jurisdiction to interpret its orders, the state court can just as easily dismiss claims in front of it that are barred by the MTA and Amendment No. 4").

(b) As to Graham's claims, "[i]n light of the carefully-pled manner of the Complaint, the MTA and Amendment No. 4 do not govern whether Plaintiff Scott Graham's claims are proper." District Court Decision at p. 9 n.6 (citing *Mathias v. Fiat Chrysler Automobiles, NV*, No. 5:16-

---

[7]     As stated below, FCA contention that Alabama does not recognize claims for failure to warn or recall is incorrect, although that is not an issue the Court need consider in connection with FCA's Motion.

[8]     For the Court's ease of reference, a copy of the District Court's decision is attached to the Miller Declaration as Exhibit 3.

57860/0001-15802641v2

CV-01185-EJD, 2016 WL 5109967, at *4 (N.D. Cal. Sept. 21, 2016)).  The District Court unequivocally concluded that Scott Graham's Alabama state law claims "do not fall within the scope of the Bankruptcy Court's Orders." *Id.* at 15.

FCA chose to ignore the District Court's holdings and direction to allow the Alabama state court to first consider whether Overton's Alabama wrongful death claims are barred by the Sale Order.  Instead, FCA filed the instant Motion together with a motion to reopen the bankruptcy cases [Docket No. 8508] (the "**Motion to Reopen**") to enforce the Sale Order against both Plaintiffs' claims, notwithstanding the District Court's unequivocal holding that this Court lacks jurisdiction over Graham's claims because they do not implicate the Sale order.

## ARGUMENT

### I.    THIS COURT SHOULD DENY FCA'S MOTION AS TO OVERTON

FCA's Motion represents a reprehensible attempt to categorically exclude Alabama's citizens, and only Alabama's citizens, from seeking recovery for Products Liability Claims that FCA has assumed when the injury results in death.  For the reasons explained below, FCA's proposed interpretation of the Sale Order and MTA Amendment No. 4 to exclude Alabama wrongful death damages is (a) inconsistent with the plain meaning and intent behind the term "exemplary or punitive damages", which is accepted and understood in the legal community to mean penalty damages for a defendant's extreme and outrageous conduct (which Alabama wrongful death damages are not); (b) inconsistent with FCA's intent and its assurances to Congress and to the American public when it agreed to provide Chrysler consumers with recourse for product liability claims arising from Old Chrysler's vehicles; (c) leads to absurd results which could not possibly have represented FCA's intent and; and (d) is unenforceable in Alabama as a matter of Alabama law and public policy.

A.    **FCA Intended to Except Traditional "Punitive or Exemplary Damages", Not Alabama Wrongful Death Damages.**

As this Court stated in *In re Old Carco LLC*, 538 B.R. 674 (Bankr. S.D.N.Y. 2015), "[t]he Sale Order was negotiated by the parties to the sale with input from other parties in interest, and New Chrysler conceded at oral argument that it was subject to interpretation in accordance with the rules governing the interpretation of contracts." *Id.* at 681.  MTA Amendment No. 4 is governed by New York law.  Thus, the starting point for this Court's analysis is the plain language of the Stipulation and Order and MTA Amendment No. 4.  "When asked to interpret contractual language, the question is 'whether the contract is unambiguous with respect to the question disputed by the parties.'" *Id.* (quoting *Law Debenture Trust Co. of New York v. Maverick Tube Corp.,* 595 F.3d 458, 465 (2d Cir.2010)).  A contract is ambiguous if it "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (internal quotation marks omitted).

MTA Amendment No. 4 provides that New Chrysler did not assume Product Liability Claims to the extent they are for "exemplary or punitive damages."  Those terms, however, are not defined in the MTA, Sale Order or any amendment thereto.  Nor do any of those documents specifically refer to Alabama wrongful death damages.  The lack of definition for such an important term of the MTA creates either a patent or latent ambiguity.  Under New York law, "a patent ambiguity arises from uncertainty of language or vagueness of description. A latent ambiguity arises when the words used are neither ambiguous nor obscure but ambiguity appears relative to persons or things meant." *In re Blodgett's Estate*, 7 N.Y.S.2d 364, 366 (N.Y. Sup. Ct. 1938).  BLACK'S LAW DICTIONARY (10TH ed. 2014) (Westlaw) also describes a latent ambiguity

14

as one that "arises from a collateral matter once the document's terms are applied or executed." In this case, the ambiguity results from FCA's application of those terms to Alabama's unique wrongful death statute.

The accepted meaning of "exemplary or punitive damages" in the legal community evinces New Chrysler's intent to except traditional punitive damages—not Alabama wrongful death damages. Black's Law Dictionary defines "exemplary or punitive damages" as:

> Exemplary damages are damages on an increased scale, awarded to the plaintiff **over and above what will barely compensate him** for his property loss, where the wrong to him was **aggravated by circumstances of violence, oppression, malice, fraud, or wanton and wicked conduct on the part of the defendant**, and are **intended to solace the plaintiff for mental anguish, laceration of his feelings, shame, degradation, or other aggravations of the original wrong**, to make an example of him, for which reason they are also called "punitive" or "punitory" damages or "vindictive" damages. Unlike compensatory or actual damages, punitive or exemplary damages are based upon an entirely different public policy consideration---that of punishing the defendant or of setting an example for similar wrongdoers, as above noted. In cases in which it is proved that a defendant has acted **willfully, maliciously, or fraudulently, a plaintiff may be awarded exemplary damages in addition to compensatory or actual damages.** Damages other than compensatory damages which may be awarded against person **to punish him for outrageous conduct**. Such are given **as an enhancement of compensatory damages because of wanton, reckless, malicious or oppressive character of acts complained of.**

BLACK'S LAW DICTIONARY 390-391 (6TH ed. 1991) (emphasis added). Traditional exemplary or punitive damages are awarded only if two requirements are met:

1) Plaintiff must prove that the defendant acted willfully, maliciously, wantonly, recklessly, fraudulently, or in some other way outrageous in injuring the plaintiff.

2) Plaintiff must be awarded compensatory, or actual damages before punitive damages can be awarded as an enhancement.

*See id.*

Indeed, even this Court has referred to, and embraced, the traditional meaning of punitive damages. In the GM bankruptcy litigation, this Court observed: "[p]unitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor . . .  and to

57860/0001-15802641v2

deter him and others from similar **extreme** conduct." *In re Motors Liquidation Co.*, 541 B.R. 104, 121 (Bankr. S.D.N.Y. 2015) (emphasis added).    New Chrysler represented to Congress that it intended for its bankruptcy litigation to resemble the GM bankruptcy litigation.  Thus, extrinsic evidence shows that New Chrysler intended to exclude exemplary and punitive damages as those terms are historically defined---as damages that are awarded for extreme conduct once compensatory damages have already been awarded.

As shall be explained in depth below, Alabama's wrongful death damages, although referred to as "punitive" in Alabama, are drastically different from the traditional "exemplary or punitive damages" contemplated by the MTA.

B.    **Alabama Wrongful Death Damages Are Uniquely Different – They are Not Traditional Punitive Damages.**[9]

New Chrysler cannot equate or pigeonhole Alabama's unique Wrongful Death Statute into traditional punitive damages.  As stated by a leading Alabama legal treatise "[t]he Alabama approach to wrongful death and punitive damages is a departure from the traditional purpose intended to be served by the imposition of punitive damages."  *See* The Alabama Wrongful Death Act, Alabama Law of Damages § 37:2 (6th ed.).  Alabama's Wrongful Death Statute states:

> A personal representative may commence an action and recover such damages as the jury may assess in a court of competent jurisdiction within the State of Alabama where provided for in subsection (e), and not elsewhere, for the wrongful act, omission, or negligence of any person, persons, or corporation, his or her or their servants or agents, whereby the death of the testator or intestate was caused, provided the testator or intestate could have commenced an action for the wrongful act, omission, or negligence if it had not caused death.

---

[9]    To assist the Court in interpreting Alabama's unique wrongful death law, we have submitted for the Court's edification the Affidavit of Justice R. Bernard Harwood, who is a retired Associate Justice of the Alabama Supreme Court and currently works in private practice with the law firm of Rosen Harwood, has practiced law in the State of Alabama for over 54 years, and is an expert on the Alabama Wrongful Death Statute.  The Harwood's affidavit is referred and cited to in the discussion that follows.

Ala. Code § 6-5-410 (emphasis added).  The Wrongful Death Statute itself does not define the damages allowed as "punitive."  In addition, the Wrongful Death Statute does not require willful, wanton, or malicious conduct—but is predicated on simple negligence.

Alabama courts have interpreted "such damages as the jury may assess" to be punitive in nature, though compensatory in effect.  *See Campbell v. Williams*, 638 So. 2d 804, 808 (Ala. 1994) *cert. denied,* 513 U.S. 868 (1994).  "The clear public policy behind this statute is to value all human life the same."  *Central Alabama Electric Cooperative v. Tapley*, 546 So.2d 371, 376 (Ala. 1989).  Alabama is the only jurisdiction in the United States that does not allow traditional compensatory damages for the wrongful death of the decedent. (Harwood Affidavit at p. 4).  "Instead, Alabama awards exclusively punitive damages to the survivor, measured by the gravity, i.e., the 'enormity,' of the wrong done." (*Id.*)  As the Alabama Supreme Court has explained, in an Alabama wrongful death action,

> The legislature has authorized the jury to ascertain an amount of damages appropriate to the goal sought to be achieved—preservation of life because of the enormity of the wrong, the uniqueness of the injury, and the finality of death. Where the enormous wrong results from the combined actions of several tort-feasors, the relative culpability of multiple defendants is only one factor that the jury may consider.  Because the policy of this state is to regard human life as being beyond measure in terms of dollars, the jury must disregard the decedent's wealth or lack of wealth, it must disregard the decedent's potential for accumulating great wealth or lack of potential to accumulate wealth; and it must disregard his or her talents and education, or lack of them, as well as his or her station in life. The jury's consideration of the 'enormity of the wrong' includes assessing **the finality of death, the propriety of punishing the wrongdoer or wrongdoers, whether the death could have been prevented, and, if so, the lack of difficulty that would have been involved in preventing the death, as well as the public's interest in deterring others from committing the same or similar wrongful conduct.**

(Harwood Affidavit at p. 4 (quoting *Deaton, Inc. v. Burroughs,* supra, 456 So.2d 771, at 776 (Ala. 1984)) (emphasis added).  Thus, and critically, the noble public policy behind Alabama's refusal

to award traditional compensatory damages in a wrongful death case is to value all human life the same—no matter how rich or poor the deceased might have been.

Consequently, unlike traditional non-death punitive damages, which require a showing of wantonness or malice, wrongful death damages are awarded even for a showing of simple negligence.  Moreover, wrongful death damages are expressly excluded from the purview of Alabama's Punitive Damages Statute.  *See* Ala. Code § 6-11-20.  "In non-death cases in Alabama, punitive damages may be awarded in addition to compensatory damages only if the strictures of § 6-11-20, Ala. Code 1975, are met[.]"  (Harwood Affidavit at p. 6) (discussing the requirements for traditional punitive damages in Alabama).  The significance of the Alabama legislature excluding wrongful death damages from the strenuous requirements of proving traditional non-death punitive damages cannot be overstated:

> The concept relied on in all jurisdictions, including Alabama, of "punishment" of reprehensible conduct as a justification for the imposition of punitive damages, doesn't logically apply where the conduct at issue is simple negligence. Certainly, nowhere in the Alabama legal system are punishment damages allowed where only negligence is shown. The type of "punitive" damages permitted as the exclusive means of redress in Alabama for a negligently-caused death, are of a totally different nature than punitive damages awardable in other jurisdictions where a death has been caused by consciously culpable conduct. "Punitive" damages recoverable under the Alabama Wrongful Death statute are a historical anomaly and in the context of conduct consisting of only negligence, represent a unique form of damages totally different from the conventional species of punitive damages in Alabama as well as in all other jurisdictions with which I am familiar, available only in those extreme situations where the underlying conduct is consciously blameworthy. As noted, by statute in Alabama, punitive damages are allowable only where a defendant has been shown by clear and convincing evidence to have "consciously or deliberately" engaged in one of the reprehensible categories of oppression, fraud, wantonness, or malice. The legislature's express exclusion of "civil actions for wrongful death" from those requirements, was its recognition of the non-punishment nature of punitive damages under the wrongful death statute.

(Harwood Affidavit at pp. 8-9).

Further, Alabama wrongful death damages are not subject to the formulaic traditional punitive damages Due Process guidelines of *BMW of N. Am. v. Gore*, 517 U.S. 559 (1969). More

57860/0001-15802641v2

recently, the Court observed "[b]ecause Alabama's wrongful-death statute provides for only punitive damages, Alabama courts are unable to apply formulaically the pertinent Gore guidepost in examining the reasonableness of a punitive-damages award by comparing it to the compensatory-damages award." (Harwood Affidavit at p. 9) (citing *Boudreaux v. Pettaway*, 108 So.3d 486, 498–99 (Ala. 2012)(overruled on other grounds).

Lastly, the U.S. Supreme Court has recognized the remedial nature of Alabama's wrongful death damages. In *Louis Pizitz Dry Goods Co., Inc., v. Yeldell*, 274 U.S. 112, 114 (1927), the Court considered whether punitive damages awarded for the death of a customer in defendant's store "caused by the negligent operation of an elevator by an employee of [defendant] in its department store," would violate the Fourteenth Amendment. The Court noted that the Alabama wrongful death statute allowed the jury "to assess punitive damages against the employer for the mere negligence of its employee," and that being so "even though the act complained of involved no element of recklessness, malice, or willfulness" and the employer "is personally without fault." *Id.* (emphasis added). Quoting from an opinion of the Alabama Supreme Court, the Court observed that **Alabama's wrongful death statute "is remedial, and not penal."** *Id.* (*See also* Harwood Affidavit at pp. 5-6.) (emphasis added).

In conclusion, the only evidence before the Court is that New Chrysler intended to exclude traditional exemplary and punitive damages only. Alabama's wrongful death damages are not traditional exemplary and punitive damages, by definition, and are not treated as such in practice. Therefore, New Chrysler did not intend to exclude Alabama's wrongful death damages in the Sale Order or MTA Amendment No. 4.

57860/0001-15802641v2

C.    **FCA's Proposed Interpretation Excluding only Alabama Citizens for the same Wrongful Conduct it Assumed in all other States Leads to Absurd Results and is Void as Against Alabama Public Policy.**

FCA represented to Congress and the American public that it was assuming liability for ***all*** wrongful death claims caused by Old Chrysler vehicles if the accident occurred after the bankruptcy sale. New Chrysler did not inform Congress, the American public, or state in writing that people killed in Alabama would be excluded from this coverage. Yet, Chrysler now argues this very result where Alabamians die in car wrecks caused by their defective vehicles. Under Chrysler's logic, only survivors in these wrecks could bring claims against Chrysler. Clearly, this interpretation does not track Chrysler's actions, which manifest its intention to accept responsibility for all product liability claims in all 50 states – regardless of whether the injured survives or dies.

Importantly, FCA's interpretation leads to absurd results that could not possibly have reflected the parties' intent when they executed the agreement. It is a basic tenet of New York law that "a contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties." *Luver Plumbing & Heating, Inc. v. Mo's Plumbing & Heating*, 43 N.Y.S.3d 267, 269 (N.Y. App. Div. 2016). Under New Chrysler's interpretation of its assumed liabilities, New Chrysler is liable for any injuries to Alabama citizens based on the same accident that occurred in this case as long as the injured Alabama citizen does not die. In other words, an Alabamian may assert a product liability claim against FCA for an Old Chrysler vehicle so long as he or she survives the accident – but, if that individual dies, so does his claim, and as a result New Chrysler becomes fully exculpated from liability. FCA's proposed interpretation thus creates a perverse pecuniary incentive for FCA to destroy life in Alabama, rather than protect or preserve it. That is an absurd consequence of FCA's

proposed construction of MTA Amendment No. 4, which cannot possibly be reflective of the parties' intent.

Further, FCA's proposed interpretation barring all wrongful death recovery in Alabama is void as a matter of Alabama law and public policy.  As noted above, MTA Amendment No. 4 expressly contemplates the possibility that its terms or provisions may be found "invalid, illegal or incapable of being enforced by any rule of Law, or public policy," but in that event, "all other conditions and provisions of this Amendment shall nevertheless remain in full force effect."  (MTA Am. No. 4 at ¶ 9).  The Master Transaction Agreement defines "Law" as "any federal, national, international, supranational, **state**, provincial, local or similar (including of any jurisdiction within or outside the United States) statute, law, ordinance, regulation, rule, code, order, requirement or rule of law (including common law)."  (MTA at p. 87).

As a result of Alabama's wrongful death law, it is Alabama's public policy that wrongful death damages are not treated as punitive if the application of a contract or federal regulatory scheme would unfairly deprive an Alabama decedent's estate from the same benefit granted to other wrongful death claimants.  For instance, the Internal Revenue Code requires all punitive damages received from civil actions to be included in a taxpayer's gross income. 26 U.S.C. § 104. However, the IRC provides an exception for damages received for wrongful death in Alabama because the only damages available for wrongful death in Alabama are punitive. 26 U.S.C. § 104(c).  Therefore, for the purpose of federal taxation, Alabama's wrongful death damages are not treated as "punitive."

In addition, the Sale Order, MTA, and Amendment No. 4 are contracts which have the effect of establishing New Chrysler's liability for deaths.  In Alabama, any contract establishing liability for death that excludes punitive damages contravenes Alabama law and is void as against

21

the public policy of Alabama. For that reason, insurance contracts cannot exclude punitive damages for wrongful death in Alabama. *See Hill v. Campbell*, 804 So. 2d 1107, 1109 (Ala. Civ. App. 2001) ("A standard liability policy that excluded coverage for punitive damages in a wrongful-death case would contravene Alabama law."). This has long been the law in Alabama. In 1978, the Alabama Attorney General issued an advisory opinion to the Insurance-Liability State Departments[10] advising, "Any administrative ruling which allowed insurance companies to exclude coverage for punitive damages under standard liability policies would be in direct contravention of wrongful death caselaw on the subject, and would therefore be void as against public policy of this state as well." The Attorney General further explained:

> Moreover, the punishment principled embodied in the majority view is over-emphasized therein. We deal here primarily with civil wrongs committed in the ordinary course of human affairs (e.g. conversion, personal injury, trespass, etc), no wrongs which constitute crimes and requires criminal sanctions. The majority view incorrectly equates the function of punitive damages with that of criminal fines – the punishment them resounds. Whereas it is increasingly accepted that punitive damages are often awarded by juries in civil cases to fully compensate the plaintiff for the harm he has suffered. Therefore, the punishment function of punitive damages in civil cases is steadily losing its utility in face of the compensatory nature of such damages in many jury verdicts. There is often a large compensatory function that they now serve as well, or exclusively, as the case may be.

(Ex. 4, Alabama Attorney General Advisory Opinion).

As explained above, Alabama courts have struggled with reconciling Alabama's unique wrongful death laws and Alabama's related public policy with the traditional conceptions of compensatory and punitive damages in other areas of law. While there is an apparent dearth of case law on the application of Alabama's wrongful death statute in the bankruptcy context (an issue which appears to be unprecedented), in *Montgomery Health Care Facility, Inc. v. Ballard*,

---

[10]    A copy of the Alabama Attorney General's opinion is attached to the Miller Declaration as **Exhibit 4**.

565 So.2d 221 (Ala. 1990), the Alabama Supreme Court affirmed a trial court's allowance of a wrongful death damages award against, among other defendants, an insolvent nursing home facility that was in bankruptcy. There, the defendants argued that the award "was greater than necessary to meet society's goal of punishing them and was therefore excessive, because they are bankrupt and insurance would have to cover the award." *Id.* at 226. The lower court held that the defendants' bankruptcy status did not require a remittitur. Specifically, Supreme Court affirmed the lower court finding that:

> because of the bankruptcies, the defendants would not be adversely affected by the verdict. Further, . . . "Alabama public policy allows liability insurance to cover punitive damages in the wrongful death context. [And] because of the large number of nursing home residents vulnerable to the type of neglect found in [the plaintiff's] case the verdict would further the goal of discouraging others from similar conduct in the future.

*Id.*

Thus, even if Alabama's Wrongful Death damages are considered "punitive," Amendment No. 4's exclusion of punitive damages in Alabama for wrongful death is void as against Alabama's public policy. Of course, this Court need not rule or predict how an Alabama court would address this issue. An Alabama Court may be best suited to decide the issue. Regardless, as explained above, Alabama's wrongful death damages are not barred by the Sale Order or MTA Amendment No. 4. This Court should deny FCA's Motion to Enforce as it relates to Overton's wrongful death claims.

II.    **FCA'S MOTION SHOULD BE DENIED AS TO GRAHAM.**

    A.    **This Court Lacks Subject Matter Jurisdiction Over Graham's Claims.**

"An order remanding a case to the State court from which it was removed is not reviewable on appeal . . . ." 28 U.S.C. § 1447. "Congress's purpose in thus limiting the ability of federal courts to review orders remanding cases to state court was 'to prevent delay in the trial of remanded cases

by protracted litigation of jurisdictional issues.'" *Shapiro v. Logistec USA, Inc.*, 412 F.3d 307, 310 (2d Cir. 2005).  FCA should not be permitted to circumvent the District Court's determination that this Court lacks jurisdiction over Graham's claims, which is law of the case.  FCA could have filed its Motion to enforce the Sale Order in this Court in the first instance, but instead, presumably for perceived strategic reasons, opted to proceed in the District Court.  FCA lost on this very issue in the District Court and now is seeking a second bite at the apple from this Court.  By asking this Court to re-determine whether the Sale Order bars Scott Graham's independent claims, New Chrysler is seeking an improper appellate review of the District Court's order remanding the case to state court.  Bankruptcy courts are not appellate courts and do not conduct appellate reviews of previous courts' decisions.  *See In re Hager*, No. BK N 99 32815 GWZ, 2006 WL 4452997, at *4 (Bankr. D. Nev. Feb. 27, 2006) (bankruptcy court refusing to reconsider a state court's ruling on a motion for summary judgment and concluding "[t]his court will not conduct an appellate review of the State Court's decisions.").

As discussed above, the District Court has already ruled, after having analyzed the Plaintiffs' claims in the Complaint and considering FCA's brief in opposition to Plaintiffs' remand motion (as well as FCA's motion to dismiss), that Graham's Alabama state law claims "do not fall within the scope of the Bankruptcy Court's Orders," District Court Decision at p. 15, and, therefore, his claims do not "create federal jurisdiction due to the nature of the damages pled." *Id.* at p. 9 n.6.  The District Court found jurisdiction existed over the Plaintiffs' case only because of Overton's wrongful death claims.  *See id.* at 12 ("The only basis for § 1334 jurisdiction (and jurisdiction generally) in this case is that one of the two Plaintiffs (Plaintiff Overton) has asked for punitive damages under the Alabama Wrongful Death Act.").  Graham, on the other hand, "seeks compensatory damages from Chrysler and FCA and punitive damages from FCA for its *post-*

bankruptcy sale conduct," *id.* at p. 9 (emphasis in original), which are not governed by the Sale Order. This determination became the "law of the case" for all subsequent proceedings. *See New York City Dep't of Fin. v. Twin Rivers, Inc.*, No. 95 CIV. 1389 HB HBP, 1997 WL 299423, at *1 (S.D.N.Y. June 5, 1997) ("The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"). "If the District Court does not have subject matter jurisdiction, it necessarily follows that the bankruptcy court does not have subject matter jurisdiction." *In re Hager*, 2006 WL 4452997, at *5.

**B.** **Graham's Claims Against FCA for Failure to Warn and Recall are Independent Claims That Do Not Implicate the Sale order.**

Even if the Court exercises jurisdiction over Graham's claims to address FCA's Motion, FCA's contentions should again be rejected. Indeed, this Court has already rejected the same arguments made by FCA in *Dearden v. FCA US LLC (In re Old Carco LLC)*, Adv. Pro. 17-01062 (SMB), 2018 WL 1352695 (Bankr. S.D.N.Y. Mar. 15, 2018) that FCA is making here.[11]

FCA contends that Graham's claims for failure to warn or recall based on FCA's post-Closing Date conduct are barred by the Sale Order because, according to FCA, they fall within the definition of Product Liability Claim which is "not tied to the Closing Date and includes claims that relate in **any** way to a claim for personal injury or wrongful death, and specifically includes 'product recalls.'" (Motion at ¶ 43 (emphasis in original)). FCA also contends that "Plaintiffs' allegations completely miss the point that the source of any alleged duty for FCA US to recall or

---

[11]    FCA's Motion was filed on March 12, 2018, a few days before the *Dearden* decision was issued. It is thus not surprising that the Motion presses arguments that the Court subsequently rejected in *Dearden*. However, FCA has not filed any pleading or amendment to its Motion or made indication to the Plaintiffs that it would not be pressing its arguments against Graham; it is thus assumed FCA intends to press forward.

57860/0001-15802641v2

provide warnings arose only as part of the contractual assumption of liabilities under the MTA." (*Id.* at ¶ 42). As explained below, however, it is FCA that completely misses the point that it is subject to independent duties to warn and recall under Alabama law[12] – which the Plaintiffs allege it breached after the Closing Date. Those independent duties to warn and recall are the source of Graham's claim for punitive damages.

As noted, the *Dearden* case is directly on point. The plaintiff there, like the Plaintiffs in this case, asserted state law-based claims against FCA for failure to warn or recall based on New Chrysler's conduct after the Closing Date. *See Dearden*, 2018 WL 1352695, at *2. The Court "reject[ed] New Chrysler's argument that a post-Closing breach of the duty to warn, recall, notify or retrofit is still a Product Liability Claim that does not pass through the gate." *Id.* at 6. The Court declared that "a § 363 sale order cannot bar a claim that arises from post-sale wrongful conduct." *Id.* at *5 (citing *Elliott v. General Motors LLC (In re General Motors Liquidation Co.)*, 829 F.3d 135, 156 (2d Cir. 2016)). Citing the District Court's ruling in *Overton* with approval, the Court held that complaints alleging liability for punitive damages based solely on the post-Closing acts of New Chrysler are not barred by the Sale Order. *Id.* at *5 (citing cases). Further, the Court recognized that "non-bankruptcy law may impose on an asset buyer a duty to warn owners of products manufactured by its seller that the products are defective or pose a danger." *Id.* at *6. The

---

[12]    FCA properly recognized in the Motion that this Court should not consider the merits of Plaintiffs' Alabama failure to warn and recall claims. The Plaintiffs agree. The Plaintiffs vigorously disagree, however, with FCA's incorrect assertion that "there is no Alabama law or common law post-sale duty to recall or warn in Alabama." (*See* Motion at ¶ 51 n.9). In actuality, Alabama recognizes duties to warn and recall, and in fact, as recently as 2014, the Alabama Supreme Court confirmed that a manufacturer or supplier of a product would owe a duty to warn expected users of safety issues relative to the product's use even after the sale. *See Yanmar America Corp. v. Nichols*, 166 So.3d 70 (2014). Moreover, although "it is doubtful that the breach of the duty under the NTMVSA gives rise to a private right of action," *Dearden*, 2018 WL 1352695, at *6, under Alabama law, this type of breach is evidence of negligence per se and New Chrysler's failure to warn. *See Lowe v. Gen. Motors Corp.*, 624 F.2d 1373, 1380 (5th Cir. 1980) ("[V]iolation of the MVSA is evidence of negligence per se in Alabama."); *Lampley v. Bridgestone Firestone, Inc.*, No. CIV.A. 90-A-907-N, 1992 WL 12666661, at *1 (M.D. Ala. Mar. 31, 1992) ("Evidence of a failure to recall may have relevance to a failure to warn claim.").

Court made clear that it is "not concerned with whether [such] claims are legally sufficient . . . but only with whether they pass through the gate." *Id.* Dearden's claims, the Court concluded, passed through the gate "because they allege post-Closing conduct as their basis." *Id.* Thus, this Court made very clear that "a post-Closing breach of an independent duty gives rise to a post-Closing right to payment, and the 'free and clear' provisions of the Sale Order cannot cut off New Chrysler's liability for its own wrongful conduct." *Id.*

Here, like in *Dearden*, Graham asserts claims against FCA sounding in negligence and wantonness under state law, including claims for failure to warn, recall or redress, and seeks compensatory and punitive damages. The Complaint makes very clear, however, that punitive damages against FCA are sought solely "for FCA's post-sale conduct, transactions, actions, or failures to act which cause the chain of events and injuries giving rise to this action." (Complaint, Count Three, p. 12 and Count Four, p. 15). The post-sale conduct alleged includes New Chrysler's failure to take action to warn, recall or otherwise eliminate the defective condition in the Grahams' Jeep Liberty, despite having knowledge of the deadly defect, by way of imputation or independently. (*See* Complaint at ¶¶ 47, 56).

FCA complains that Graham should not be allowed to base his punitive damages claim on the allegation of Old Chrysler's knowledge that allegedly "transferred to FCA." FCA argues this is an impermissible "attempt[] to impose successor liability upon FCA US in violation of the Sale Order." (Motion at ¶ 48). However, this Court already held in the GM case that knowledge may be imputed to the extent Plaintiff is able to allege and show that the newly formed company has such knowledge too. *In re Motors Liquidation Co.*, 541 B.R. at 108. Likewise, this Court found that:

> to the extent, as a matter of nonbankruptcy law, that knowledge may be imputed
> as a consequence of documents in a company's files, documents in New GM's

27

files may be utilities as a predicate for such knowledge, even if they first came into being before the sale form Old GM to New GM.  By reasons of the Court's limited 'gatekeeper' role, allegations of that knowledge or notice, even if alleged in general terms, can pass through the 'gate,' with nonbankruptcy courts determining the extent to which they have been alleged sufficiently specifically to warrant findings of imputation.

*Id.*  The court explained that "New GM might have acquired relevant knowledge when former Old GM employees came over to New GM or New GM took custody of what previously were Old GM records.  **Reliance on that, for punitive damages purposes, is permissible.**"  *Id.* at 122. (emphasis added).   As to the imputation allegations in complaints against New GM, the court expounded:

> The Post–Closing Accident Plaintiffs refer to knowledge New GM might have acquired in that fashion as "inherited" information, and the Court finds that shorthand to be as good as any. It is possible that New GM may have inherited information from Old GM very soon after the 363 Sale. The Court does not know that to be the case–because any such knowledge would have to be acquired in fact, and not by operation of law (such as any kind of successorship theory). But to the extent New GM employees actually had knowledge relevant to post-Sale accident claims or Independent Claims (even if it was inherited), plaintiffs in actions asserting such claims are free to base punitive damages claims on evidence of such knowledge to the extent nonbankruptcy law permits.

*Id.*

Here, Graham is not seeking punitive damages against FCA based on Old Chrysler's knowledge. Instead, Graham seeks punitive damages based on FCA's own knowledge that it allegedly acquired or inherited in its acquisition of substantially all Old Chrysler's assets.  Graham should be permitted to rely on such allegations in support of his punitive damages claim.  For that reason, as the District Court already concluded, "[i]n light of the carefully-pled manner of the Complaint, the MTA and Amendment No. 4 do not govern whether Plaintiff Scott Graham's claims are proper."  District Court Decision at p. 9 n.6.  Similarly, this Court should allow the Plaintiffs' Complaint to pass through the gate.

## CONCLUSION

For all the foregoing reasons, it is respectfully submitted that the Motion should be denied in its entirety.

DATED:     New York, New York
              May 4, 2018

Respectfully submitted,

_____/s/ Parker Miller_____
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C**
Parker Miller  (*pro hac vice*)
Stephanie Monplaisir  (*pro hac vice*)
P. O. Box 4160
Montgomery, Alabama 36103-4160
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
Parker.Miller@beasleyallen.com
Stephanie.Monplaisir@beasleyallen.com
*Lead Counsel for Plaintiffs Frankie
Overton, as Executor of the Estate of Sue
Ann Graham; and Scott Graham, as legal
guardian of J.G., a minor child*

**COLE SCHOTZ P.C.**
Mark Tsukerman
1325 Avenue of the Americas, 19th Floor
New York, NY  10019
(212) 752-8000- Telephone
mtsukerman@coleschotz.com

*Bankruptcy Counsel for Plaintiffs Frankie
Overton, as Executor of the Estate of Sue
Ann Graham; and Scott Graham, as legal
guardian of J.G., a minor child*

57860/0001-15802641v2