

AlaFile E-Notice

01-CV-2017-904376.00

To:  J. PARKER MILLER
     parker.miller@beasleyallen.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

FRANKIE OVERTON ADMIN OF THE EST OF SUE ANN GRAHAM, DEC. ET AL V. CHRY
01-CV-2017-904376.00

The following complaint was FILED on 10/17/2017 5:39:14 PM

Notice Date:      10/17/2017 5:39:14 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov

ELECTRONICALLY FILED
10/17/2017 5:38 PM
01-CV-2017-904376.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93    Rev.5/99 | **COVER SHEET<br>CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number:<br>01 |
|---|---|---|

Date of Filing: 10/17/2017          Judge Code:

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
**FRANKIE OVERTON ADMIN OF THE EST OF SUE ANN GRAHAM, DEC. ET AL v. CHRYSLER GROUP LLC ET AL**

**First Plaintiff:** ☐ Business  ☑ Individual     **First Defendant:** ☑ Business  ☐ Individual
☐ Government  ☐ Other                              ☐ Government  ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☑ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Properly

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Service

**OTHER CIVIL FILINGS  (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/<br>Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/<br>Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:**  F ☑ INITIAL FILING      A ☐ APPEAL FROM DISTRICT COURT      O ☐ OTHER

R ☐ REMANDED      T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES ☐ NO     Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:** ☑ MONETARY AWARD REQUESTED ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**

MIL138          10/17/2017 5:38:59 PM          /s/ J. PARKER MILLER
_____          Date          Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**     ☐ YES ☐ NO ☑ UNDECIDED

ELECTRONICALLY FILED
10/17/2017 5:38 PM
01-CV-2017-904376.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT FOR
## JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| **FRANKIE OVERTON, Administrator** | * |
| **of the Estate of SUE ANN GRAHAM,** | * |
| **Deceased; and SCOTT GRAHAM, as legal** | * |
| **guardian of JORDON GRAHAM, a minor** | * |
| **child,** | * |
| | * **CASE NO:** |
| | * |
| **Plaintiff,** | * **JURY DEMAND REQUESTED** |
| | * |
| **vs.** | * |
| | * |
| **CHRYSLER GROUP LLC.;** | * |
| **FIAT CHRYSLER AUTOMOBILES** | * |
| **US, LLC (FCA US, LLC); RODERICUS** | * |
| **OBYRAN CARRINGTON; TRW** | * |
| **AUTOMOTIVE HOLDINGS CORP.,** | * |
| **f/k/a TRW, INC.; TRW AUTOMOTIVE,** | * |
| **INC.; TRW AUTOMOTIVE U.S. LLC;** | * |
| **TRW VEHICLE SAFETY SYSTEMS,** | * |
| **INC.; TRW AUTOMOTIVE US, LLC;** | * |
| **TRW SAFETY SYSTEMS, INC.; ZF** | * |
| **FRIEDRICHSHAFEN AG; ZF TRW** | * |
| **AUTOMOTIVE HOLDINGS CORP.;** | * |
| **and FICTITIOUS DEFENDANTS "1"** | * |
| **through "13"** | * |

No. 1, whether singular or plural, that entity who or which designed the Jeep vehicle involved in the occurrence made the basis of Plaintiff's Complaint, any component part thereof, or any attendant equipment used or available for use therewith;

No. 2, whether singular or plural, that entity who or which manufactured or assembled the Jeep vehicle involved in the occurrence made the basis of Plaintiff's complaint, any component part thereof, or any attendant equipment used or available for use therewith;

No. 3, whether singular or plural, that entity who or which had any role in the distributive chain regarding the Jeep vehicle involved in the occurrence made the basis of Plaintiff's Complaint, any component part thereof, or any attendant equipment used or available for use therewith;

No. 4, whether singular or plural, that entity or those entities who or which, prior to the occurrence made the basis of this lawsuit, altered, maintained or repaired the Jeep vehicle involved in said occurrence, any component part thereof, or any attendant equipment used or available for use therewith;

No. 5, whether singular or plural, that entity or those entities, that individual or those individuals, other than those described above whose negligence, intentional conduct,

**willfulness, wantonness, or other wrongful conduct contributed to cause the occurrence made the basis of Plaintiff's Complaint;**

**No. 6, whether singular or plural, that entity or those entities, other than those described above, which is the successor-in-interest of any of those entities described above;**

**No. 7, whether singular or plural, that entity who or which was responsible for the safety engineering of the Jeep vehicle made the basis of Plaintiff's Complaint;**

**No. 8, whether singular or plural, that entity who or which was buyer, seller, or as a buyer's or seller's agent or representative had any role in the distribution of the Jeep vehicle involved in the occurrence made the basis of Plaintiff's Complaint;**

**No. 9, whether singular or plural, that entity who or which issued or failed to issue warning or instructions regarding the use of the Jeep vehicle made the basis of the Plaintiff's Complaint;**

**No. 10, whether singular or plural, that entity who or which manufactured the component part of the Jeep vehicle involved in the occurrence made the basis of Plaintiff's Complaint;**

**No. 11, whether singular or plural, that entity who or which as a buyer, seller, or buyer or seller's agent, had any role in the distribution of any component part of the Jeep vehicle made the basis of Plaintiff's Complaint;**

**No. 12, whether singular or plural, that entity who or which issued warnings or instructions regarding the use of any component part of the Jeep vehicle involved in the occurrence made the basis of Plaintiff's Complaint;**

**No. 13, whether singular or plural, that person, firm, corporation, or entity who or which had conducted safety inspections or analyses with respect to assembling of the Jeep vehicle made the basis of Plaintiff's Complaint; (Plaintiff avers that Defendant herein are otherwise unknown to Plaintiff at this time, or if their names are known to Plaintiff their identities as proper parties Defendant are not known to Plaintiff at this time, and their true names will be substituted by amendment when ascertained),**

**DEFENDANTS.**

## COMPLAINT

### Parties

1.      The decedent**, Sue Ann Graham**, was a resident of St. Clair County,

Alabama.

2.      Plaintiff **Frankie Overton**, as appointed administrator of the estate of Sue

Ann Graham, deceased, is over the age of 19 years and is a resident citizen of St. Clair

County, Alabama.

3.      Plaintiff **Scott Graham**, as the father and legal guardian of Jordon Graham, a minor, is over the age of 19 years and is a resident citizen of Okaloosa County, Florida.

4.      Defendant, **Rodericus Obyran Carrington** is over the age of 19 years and is a resident citizen of Jefferson County, Alabama.

5.      Defendant, **Chrysler Group LLC,** ("Chrysler"), is a foreign corporation doing business in the State of Alabama, including Jefferson County.

6.      Defendant, **Fiat Chrysler Automobiles US, LLC,** ("FCA"), is a foreign corporation doing business in the State of Alabama, including Jefferson County. Collectively, Chrysler and FCA are referred to as the "Chrysler Defendants".

7.      Defendant, **TRW Automotive Holdings Corp., f/k/a TRW, Inc.**, is a foreign corporation doing business in the State of Alabama, including Jefferson County.

8.      Defendant, **TRW Automotive, Inc.**, is a foreign corporation doing business in the State of Alabama, including Jefferson County.

9.      Defendant, **TRW Automotive U.S. LLC**, is a foreign corporation doing business in the State of Alabama, including Jefferson County.

10.     Defendant, **TRW Vehicle Safety Systems, Inc.**, is a foreign corporation doing business in the State of Alabama, including Jefferson County.

11.     Defendant, **TRW Automotive US, LLC**, is a foreign corporation doing business in the State of Alabama, including Jefferson County.

12.     Defendant, **TRW Safety Systems, Inc.**, is a foreign corporation doing business in the State of Alabama, including Jefferson County. All TRW Defendants collectively referred to as "TRW".

13.    Defendant **ZF Friedrichshafen AG**, is a foreign corporation doing business in the State of Alabama, including Jefferson County.

14.    Defendant **ZF TRW Automotive Holdings Corp.**, is a foreign corporation doing business in the State of Alabama, including Jefferson County. All ZF Defendants collectively referred to as "ZF".

15.    Fictitious Defendants "1" through "13" are any other persons, corporations or other legal entities whose negligence, wantonness or other wrongful conduct combined and concurred with that of the other Defendants, who are responsible for, and/or whose true identities are unknown to Plaintiff at this time but will be substituted by amendment when ascertained.

16.    The subject vehicle, a 2002 Jeep Liberty, VIN 1J4GL58K22W275419, was originally manufactured in the United States by the Defendants, and was distributed into the stream of commerce and specifically to the State of Alabama.

17.    The subject vehicle was originally sold in the State of Alabama at a Chrysler-affiliated dealership.

18.    The Chrysler Defendants maintain dealerships within the State of Alabama that sell the same or similar vehicles, including in Jefferson County, Alabama.

19.    Defendants Chrysler, TRW and ZF manufacture the same or similar vehicles, products and component parts of vehicles at issue in this case, and directed them into the stream of commerce and specifically to the State of Alabama for resale within the State, including in Jefferson County, Alabama.

20.    Defendants Chrysler, TRW and ZF service the same or similar vehicles, products and component parts of vehicles at issue in this case located in the State of Alabama, including in Jefferson County, Alabama.

21.    The accident giving rise to this lawsuit occurred in Jefferson County, State of Alabama.

22.    The victims of the accident giving rise to this lawsuit resided within the State of Alabama at the time of the accident.

23.    Venue is proper in this action pursuant to Rule 82 of the *Alabama Rules of Civil Procedure,* Ala. Code. S 6-3-7(a)(1), (4) and Ala. Code S 6-3-2(3).

## Statement of Facts

24.    On June 10, 2016, Plaintiff's decedent, Sue Ann Graham, and Jordon Graham, were passengers of a 2002 Jeep Liberty, VIN 1J4GL58K22W275419, traveling along Interstate 59 in the State of Alabama at or near mile marker 140 (139.8) in Jefferson County, Alabama.  At or around the given time and place, a vehicle operated by Rodericus Obyran Carrington struck the 2002 Jeep Liberty containing the decedent and Jordon Graham, causing it to overturn on Interstate 59. At the time of the incident, the vehicle was being used as intended and both Sue Ann Graham and Jordon Graham were properly belted.

25.    The 2002 Jeep Liberty was originally sold in Alabama, and was designed, engineered, manufactured and marketed by Defendants Chrysler**, FCA,** TRW Automotive Holdings Corp., f/k/a TRW, Inc.; TRW Automotive, Inc.; TRW Automotive U.S. LLC; TRW Vehicle Safety Systems, Inc.; TRW Automotive US, LLC; TRW Safety Systems, Inc. (collectively, the "TRW Defendants" or "TRW"); ZF Friedrichshafen AG; ZF TRW Automotive Holdings Corp. (collectively, the "ZF Defendants" or "ZF"), and the fictitious

party defendants 1 through 13. The vehicle was in substantially the same condition as it was on its original date of sale.

26.     As a direct and proximate result of Mr. Carrington's failure to obey the rules of the road, as well as the defective condition of the 2002 Jeep Liberty, as well as the negligent and/or wanton conduct of the Defendants, including the fictitious Defendants, Sue Ann Graham sustained catastrophic injuries that resulted in her death.

27.     As a direct and proximate result of Mr. Carrington's failure to obey the rules of the road, as well as the defective condition of the 2002 Jeep Liberty, Jordon Graham, a passenger and a mere seat behind Sue Ann Graham at the time of the accident, was physically, mentally and emotionally injured.

28.     At Chrysler, FCA, TRW and ZF, safety is paramount and of utmost importance.

## **COUNT ONE**

### **(Alabama Extended Manufacturer's Liability Doctrine)**

29.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 28 above as if set out here in full.

30.     At the aforesaid time and place, and for sometime prior thereto, Defendants Chrysler, FCA, TRW, ZF, and the fictitious party defendants 1 through 13 (the "Product Liability Defendants"), were engaged in the business of designing, manufacturing, distributing, marketing and/or selling the Jeep Liberty made the basis of this suit throughout the United States, including the State of Alabama, for use by the general public. During that period of time, the Product Liability Defendants, for valuable consideration, designed, manufactured, distributed, inspected, marketed and/or sold the Jeep Liberty and

its component parts made the basis of this suit which injured Sue Ann Graham and Jordon

Graham.  At the time Sue Ann Graham was killed, the Jeep Liberty made the basis of this

suit was being used in a manner that was foreseeable. The Product Liability Defendants

negligently designed, manufactured, distributed, marketed, and/or sold the Jeep Liberty.

31.    The defective condition of the vehicle made the basis of this suit was a

proximate cause of Sue Ann Graham and Jordon Graham's injuries.  These defective

conditions, and the resulting injuries and damages, render the Product Liability Defendants

liable to Plaintiff pursuant to the Alabama Extended Manufacturer's Liability Doctrine.

32.    The subject 2002 Jeep Liberty and its restraint system was defective and/or

unreasonably dangerous in design, manufacture and/or marketing as it relates to the

vehicle's characteristics for occupant protection and crashworthiness in a foreseeable

rollover event and lack of proper warnings regarding said issues.  The defective condition

of the Jeep Liberty as it relates to said issues has been known by the Product Liability

Defendants for some time.  Moreover, the defective condition of the Jeep Liberty was

known by Chrysler and/or former Chrysler companies absorbed by FCA, and that

knowledge transferred to FCA. Despite such knowledge, FCA took no action to warn,

recall or otherwise eliminate the defective condition.

33.    Product Liability Defendants had a duty to determine if there were potential

hazards to consumers that were associated with the foreseeable uses of its products.

34.    As a proximate result of the aforesaid wrongful, negligent conduct of each

of the Product Liability Defendants, Sue Ann Graham suffered catastrophic injuries that

resulted in her death, and her minor son Jordon Graham was injured physically, mentally

and emotionally as a result of the accident.

**WHEREFORE**, Plaintiffs demand judgment against each of the Defendants for damages in the following manner:

- As to Sue Ann Graham, All damages allowable under Alabama's Wrongful Death Act for the death of Sue Ann Graham as determined by a jury in an amount in excess of the jurisdiction requirements of this Court, together with interest from the date of injury, and the costs of this proceeding.

- As to Chrysler as related to Jordan Graham, all compensatory damages recoverable pursuant to the laws of Alabama for the injuries sustained by Jordan Graham as determined by a jury; interest from the date of injury; the cost of this proceeding; and any further non-punitive relief that a jury shall determine as appropriate pursuant to the laws of Alabama.

- As to FCA as related to Jordan Graham, all compensatory damages recoverable pursuant to the laws of Alabama; punitive damages for FCA's post-bankruptcy sale conduct, transactions, actions, or failures to act which caused the chain of events and injuries giving rise to this action; interest from the date of the injury, the cost of this proceeding, and any further relief that a jury shall determine as appropriate pursuant to the laws of Alabama.

- As to all remaining Product Liability Defendants as related to Jordan Graham, all compensatory and punitive damages recoverable pursuant to the laws of Alabama,  including interest from the date of injury; the cost of this proceeding; and any further relief that a jury shall determine as appropriate pursuant to the laws of Alabama.

## COUNT TWO

### (Negligence - Rodericus Obyran Carrington)

35.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 34 above as if set out here in full.

36.    Defendant Rodericus Obyran Carrington ("Defendant Carrington") is responsible for his negligent acts while operating a motor vehicle in the State of Alabama.

37.    Defendant Carrington owed a duty of care to the occupants of the 2002 Jeep Liberty to use reasonable care in his operation of the motor vehicle as alleged above.

38.    On June 10, 2016 at the above-referenced time and place, Defendant Carrington negligently operated his vehicle. Defendant Carrington's negligent acts include but are not limited to: failing to operate his vehicle in accordance with the Alabama Rules of the Road; failing to control and operate his vehicle safely; failing to maintain a safe distance from the 2002 Jeep Liberty occupied by Sue Ann Graham and Jordon Graham; failing to keep a proper lookout for the 2002 Jeep Liberty occupied by Sue Ann Graham and Jordon Graham; and failing to slow down or yield to the 2002 Jeep Liberty occupied by Sue Ann Graham and Jordon Graham.

39.    As a proximate consequence of Defendant Carrington's negligence, the 2002 Jeep Liberty occupied by Sue Ann Graham and Jordon Graham was struck by Defendant Carrington's vehicle, causing the vehicle to lose control and ultimately overturn on Interstate 59, killing Sue Ann Graham and injuring Jordon Graham physically, mentally and emotionally.

40.    **WHEREFORE**, Plaintiffs demand judgment against Defendant Carrington in such an amount of damages as a jury may award under the laws of the State of Alabama

in an amount in excess of the jurisdiction requirements of this Court, and the costs of this action; and for all damages recoverable pursuant to the laws of Alabama for the injuries sustained by Jordan Graham as determined by a jury, including punitive damages, interest from the date of injury, the cost of this proceeding, and any further relief that a jury shall determine as appropriate pursuant to the laws of Alabama.

## COUNT THREE

### (Negligence – Product Liability Defendants)

41.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 40 above as if set out here in full.

42.    At the aforesaid time and place, and for some time prior thereto, the Product Liability Defendants undertook a duty to design, manufacture, market, inspect, distribute, and/or sell the 2002 Jeep Liberty and its restraint system made the basis of this suit, in a reasonably safe condition for its intended use by the Plaintiff and the general public.  The Product Liability Defendants negligently designed, manufactured, inspected, marketed and/or sold on the subject vehicle.  Such conduct caused the 2002 Jeep Liberty to be unsafe when used as intended.

43.    Product Liability Defendants had a duty to hold paramount the safety, health, and welfare of the public when designing the 2002 Jeep Liberty made the basis of this action.

44.    Product Liability Defendants had a duty to determine if there were potential hazards to consumers that were associated with the foreseeable uses of its products.  Moreover, Product Liability Defendants had a duty to correct and warn of known hazards that were associated with the foreseeable uses of its products.

45.    The defective and dangerous condition of the 2002 Jeep Liberty and its restraint system was a proximate cause of the injuries to Sue Ann Graham and Jordon Graham, and renders said Product Liability Defendants liable to the Plaintiffs.

46.    Product Liability Defendants negligently failed to complete an adequate hazard analysis and risk assessment of the 2002 Jeep Liberty and its restraint system for potential occupant harm in a foreseeable rollover event.

47.    The defective condition of the Jeep Liberty as it relates to said issues has been known by the Product Liability Defendants for some time.  Moreover, the defective condition of the Jeep Liberty was known by Chrysler and/or former Chrysler companies absorbed by FCA, and that knowledge transferred to FCA. Despite such knowledge, FCA took no action to warn, recall or otherwise eliminate the defective condition.

48.    As a proximate result, the aforesaid wrongful and negligent conduct of each of the Product Liability Defendants, Sue Ann Graham suffered catastrophic injuries that resulted in her death, and Jordon Graham was injured physically, mentally and emotionally.

**WHEREFORE**, Plaintiffs demand judgment against each of the Defendants for damages in the following manner:

- As to all Defendants as pertaining to Sue Ann Graham, All damages allowable under Alabama's Wrongful Death Act for the death of Sue Ann Graham as determined by a jury in an amount in excess of the jurisdiction requirements of this Court, together with interest from the date of injury, and the costs of this proceeding.

- As to Chrysler as related to Jordan Graham, all compensatory damages recoverable pursuant to the laws of Alabama for the injuries sustained by

Jordan Graham as determined by a jury; interest from the date of injury; the cost of this proceeding; and any further non-punitive relief that's a jury shall determine as appropriate pursuant to the laws of Alabama.

- As to FCA as related to Jordan Graham, all compensatory damages recoverable pursuant to the laws of Alabama for the injuries sustained by Jordan Graham as determined by a jury; punitive damages for FCA's post-bankruptcy sale conduct, transactions, actions, or failures to act which caused the chain of events and injuries giving rise to this action; interest from the date of the injury, the cost of this proceeding, and any further relief that a jury shall determine as appropriate pursuant to the laws of Alabama.

- As to all remaining Product Liability Defendants as related to Jordan Graham, all compensatory and punitive damages recoverable pursuant to the laws of Alabama, including interest from the date of injury; the cost of this proceeding; and any further relief that a jury shall determine as appropriate pursuant to the laws of Alabama.

## COUNT FOUR

### (Wantonness)

49.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 48 above as if set out here in full.

50.     At the aforesaid time and place, and for some time prior thereto, the Product Liability Defendants, as well as the fictitious party defendants, were engaged in the business of and undertook a duty in designing, manufacturing, distributing, marketing, inspecting, testing and/or selling the restraint system in the 2002 Jeep Liberty throughout

the United States, including the State of Alabama. Prior to the wreck made the basis of this action, the Product Liability Defendants, for valuable consideration, designed, manufactured, distributed, marketed, inspected and/or sold the Jeep Liberty and its restraint system made the basis of this suit, which caused, in part or in whole, the Plaintiffs' injuries. At the time Sue Ann Graham was killed and Jordan Graham was injured, they were using the vehicle and the vehicle's restraint systems in a manner that was foreseeable, but the vehicle and its restraint system were defective and unreasonably dangerous in design, manufacture, warnings and/or marketing, to the human body because they were not crashworthy.

51.    The Product Liability Defendants, wantonly designed, manufactured, distributed, marketed, failed to warn or adequately warn, inspect, and/or sold the subject vehicle and/or restraint systems. Such conduct caused the 2002 Jeep Liberty to be defective and unreasonably dangerous when used as intended.

52.    The defective condition of the 2002 Jeep Liberty and its restraint system made the basis of this suit was a proximate cause of Plaintiffs' injuries and renders said Product Liability Defendants liable.

53.    The Product Liability Defendants had a duty to hold paramount the safety, health, and welfare of the public when designing the 2002 Jeep Liberty and its restraint system made the subject of this action.

54.    The Product Liability Defendants had a duty to determine if there were potential hazards to consumers that were associated with the foreseeable uses of their products. Moreover, Product Liability Defendants had a duty to correct and warn of known hazards that were associated with the foreseeable uses of its products

55.    The Product Liability Defendants failed to complete an adequate hazard analysis and risk assessment of the 2002 Jeep Liberty and restraint system for potential occupant harm in foreseeable driving events, including rollover events and other car accidents.

56.    The defective condition of the Jeep Liberty as it relates to said issues has been known by the Product Liability Defendants for some time.  Moreover, the defective condition of the subject vehicle was known by Chrysler and/or former Chrysler companies absorbed by FCA, and that knowledge transferred to FCA. Despite such knowledge, FCA wantonly failed to warn, recall or otherwise eliminate the defective condition.

57.    Defendant Carrington, including the fictitious party defendants, wantonly operated his vehicle so as to cause the 2002 Jeep Liberty to lose control and overturn.

58.    Defendant Carrington operated his vehicle in an unreasonable manner and without regard to the safety of others. Defendant Carrington's wanton operation of his vehicle was a proximate cause of the accident made the basis of this action that resulted in the death of Sue Ann Graham and the injuries suffered by Jordan Graham.

59.    As a proximate result of the aforesaid wanton conduct of the Defendants, Sue Ann Graham suffered injuries that resulted in her death, and Jordan Graham was injured physically, mentally and emotionally.

**WHEREFORE**, Plaintiffs demand judgment against each of the Defendants for damages in the following manner:

- As to all Defendants as pertaining to Sue Ann Graham, All damages allowable under Alabama's Wrongful Death Act for the death of Sue Ann Graham as determined by a jury in an amount in excess of the jurisdiction

requirements of this Court, together with interest from the date of injury, and the costs of this proceeding.

- As to Chrysler as related to Jordan Graham, all compensatory damages recoverable pursuant to the laws of Alabama for the injuries sustained by Jordan Graham as determined by a jury; interest from the date of injury; the cost of this proceeding; and any further non-punitive relief that a jury shall determine as appropriate pursuant to the laws of Alabama.

- As to FCA as related to Jordan Graham, all compensatory damages recoverable pursuant to the laws of Alabama for the injuries sustained by Jordan Graham as determined by a jury; punitive damages for FCA's post-sale conduct, transactions, actions, or failures to act which caused the chain of events and injuries giving rise to this action; interest from the date of the injury, the cost of this proceeding, and any further relief that a jury shall determine as appropriate pursuant to the laws of Alabama.

- As to all remaining Product Liability Defendants, Defendant Carrington and Fictitious Defendants as related to Jordan Graham, all compensatory and punitive damages recoverable pursuant to the laws of Alabama,  including interest from the date of injury; the cost of this proceeding; and any further relief that a jury shall determine as appropriate pursuant to the laws of Alabama.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY**

*/s/ J. Parker Miller*
J. Parker Miller (MIL138)
Attorney for Plaintiff

OF COUNSEL:

J. Parker Miller
J. Cole Portis
Christopher D. Glover
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P. O. Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343

## SERVE DEFENDANT BY REGISTERED AGENT AS FOLLOWS:

**CHRYSLER GROUP LLC**
c/o C T Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL  36104

**FCA US, LLC**
c/o C T Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL  36104

**RODERICUS OBYRAN CARRINGTON**
314 40th Avenue NE
Birmingham, Alabama 35215

**TRW AUTOMOTIVE HOLDINGS CORP., f/k/a TRW, INC.**
c/o Corp. Service Company
2711 Centerville Road, Suite 400
Wilmington, DE  19808

**TRW AUTOMOTIVE, INC.**
c/o Corp. Service Company
2711 Centerville Road, Suite 400
Wilmington, DE  19808

**TRW AUTOMOTIVE U.S. LLC**
c/o Corp. Service Company
2711 Centerville Road, Suite 400
Wilmington, DE  19808

**TRW VEHICLE SAFETY SYSTEMS, INC.**
c/o Corp. Service Company
2711 Centerville Road, Suite 400
Wilmington, DE  19808

**TRW AUTOMOTIVE US, LLC**
c/o Corp. Service Company
2711 Centerville Road, Suite 400
Wilmington, DE  19808

**TRW SAFETY SYSTEMS, INC.**
c/o Corp. Service Company
2711 Centerville Road, Suite 400
Wilmington, DE  19808

**ZF FRIEDRICHSHAFEN AG**
c/o Corp. Service Company
2711 Centerville Road, Suite 400
Wilmington, DE  19808

**ZF TRW AUTOMOTIVE HOLDINGS CORP.**
c/o Corp. Service Company
2711 Centerville Road, Suite 400
Wilmington, DE  19808

ELECTRONICALLY FILED
10/17/2017 5:38 PM
01-CV-2017-904376.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT FOR
## JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| FRANKIE OVERTON, Administrator * <br> of the Estate of SUE ANN GRAHAM, * <br> Deceased; and SCOTT GRAHAM, as * <br> legal guardian of JORDON GRAHAM, a * <br> minor child, * <br> * <br> **Plaintiff,** * <br> * <br> vs. * <br> * <br> CHRYSLER GROUP LLC.; * <br> FIAT CHRYSLER AUTOMOBILES * <br> US, LLC (FCA US, LLC); RODERICUS * <br> OBYRAN CARRINGTON; TRW * <br> AUTOMOTIVE HOLDINGS CORP., * <br> f/k/a TRW, INC.; TRW AUTOMOTIVE, * <br> INC.; TRW AUTOMOTIVE U.S. LLC; * <br> TRW VEHICLE SAFETY SYSTEMS, * <br> INC.; TRW AUTOMOTIVE US, LLC; * <br> TRW SAFETY SYSTEMS, INC.; ZF * <br> FRIEDRICHSHAFEN AG; ZF TRW * <br> AUTOMOTIVE HOLDINGS CORP.; * <br> and FICTITIOUS DEFENDANTS "1" * <br> through "13" * | CASE NO: <br><br> **JURY DEMAND REQUESTED** |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION TO DEFENDANT CHRYSLER GROUP LLC

Plaintiff in the above-styled action propounds these discovery requests upon Defendant Chrysler Group LLC., and requests that they be answered fully in writing and under oath within the time provided by the *Alabama Rules of Civil Procedure*. Each request is addressed to the knowledge and information of Defendant's attorneys, investigators, agents, employees, and other representatives. When a question is directed to Defendant, the question is also directed to the aforementioned persons.

These requests shall be deemed continuing so as to require supplemental answers if the persons or entities to whom these requests are addressed obtain further information between the time the initial answers are served and the time of trial.

## **INTERROGATORIES**

1.      Identify the person(s) answering and/or assisting in answering these interrogatories. As part of your response, please include the name, address, title and duties of the person(s) identified.

2.      If this Defendant's name is not correctly stated in the Complaint on file in this case, state the correct way this Defendant should have been designated as a party defendant in a lawsuit at the time of the occurrence made the basis of the lawsuit and at the time these interrogatories were answered.

3.      State the general corporate history of this Defendant from the date of incorporation to the present.  This should include, but not be limited to, the state of incorporation, date of incorporation and the principal place of business.

4.      Identify each and every insurer at issue in this case. This request includes the name, address and policy limits of each insurer or potential insurer of any type whatsoever that may be liable to satisfy part or all of a judgment or settlement which may entered in this action, or to indemnify or reimburse for payments made to satisfy any judgment or settlement in this case.

5.      Describe in detail this Defendant's role in the design, testing, manufacture and/or marketing of the vehicle made the basis of this action.

6.      Identify and describe the history of the Jeep Liberty from the date the vehicle was first placed on the market up to the present date. These request includes all

structural and component changes (including safety and/or restraint systems) to the Jeep

Liberty over the course of its life.

7.    Describe in detail the history of the subject vehicle. As part of your

response, please include the date of manufacture of the subject vehicle; the date it left this

Defendant's control; who the vehicle was sold to; and the name and address of the

facility where the vehicle was manufactured.

8.    Identify all persons responsible for the design or engineering of the

seatbelt systems in the subject vehicle. As part of your response, please include the name

and address of the person(s) responsible, including the chief engineer(s) involved,

whether those persons are still employed by you, and if not, when they ceased

employment with this Defendant.

9.    Identify all persons responsible for the design or engineering of the roof

structure in any way for the subject vehicle. As part of your response, please include the

name and address of the person(s) responsible, including the chief engineer(s) involved;

their role and responsibilities as it relates to the subject vehicle; whether those persons are

still employed by you and if not, when they ceased employment with this Defendant.

10.    Identify and describe all vehicles that share the same seatbelt and/or seat

belt buckle system(s) that are utilized in the subject vehicle. As part of your response,

please identify the manufacturer, make and model of each vehicle utilizing the above-

referenced seat belt and/or seat belt buckle system(s).

11.    Identify and describe in detail any and all testing conducted on any model

liberty. This request includes, but is not limited to, any testing (including any and all

litigation testing previously produced) concerning the seat belt system and roof structures in any model Jeep Liberty.

12.     Identify all lay witnesses who have personal knowledge about the facts of this case (e.g., subject accident; design, marketing, engineering, manufacturing, testing, prototype work, marketing and distribution of the subject vehicle), including all of the issues and facts discussed in the Plaintiff's complaint. As part of your response, please include the full name, address, telephone numbers, and a summary of facts / information known by each witness.

13.     Identify and describe in detail all persons that you expect to call as an expert witness at the trial of this case. As part of your response, please provide the proposed expert's full name, address, telephone number, background, experience, qualifications and the proposed expert's subject matter of expected testimony, the substance of the facts and opinions which the expert is expected to testify, and a summary of the basis for each opinion.

14.     Identify and describe all complaints received by this Defendant prior to the subject wreck of any accident or incident resulting in personal injury, death or personal damage which allegedly resulted from the failure of the seat belt systems to retain an occupant in any way during a rollover and/or lack of adequate strength in the roof of the Jeep Liberty. As part of your response, please include the name of any cases known to you, the court in which it was filed, the name of the person making the complaint, and/or his/her attorney.

15.     Identify and describe whether this Defendant has ever received any complaint from any government or safety agency related to the seat belt system or roof

structure for a Jeep Liberty type vehicle (including in this case). As part of your response, please provide the following:

    a.   The date the complaint or inquiry was received;

    b.   A detailed description of the complaint or inquiry;

    c.   A detailed description of any action that was requested on the part of this Defendant by the government;

    d.   The source of the complaint or inquiry.

16.    Please identify and describe in detail any and all changes to the roof structure of the Jeep Liberty over its history since it was first introduced into the marketplace. This request includes any changes in design, materials or manufacturing for the roof components, including the A, B, C or D pillars.

17.    Identify and describe any and all standards for seat belt or roof performance utilized for the design and/or development of the seat belt system(s) and/or roof of all Jeep Liberty models (including the subject vehicle). This Request includes all government, company, internal, industry or experimental standards, whether past, current or proposed, utilized by you.

18.    Please describe any and all finite element analysis performed on any Jeep Liberty model seat belt system or roof structure (including the subject vehicle made the basis of this suit). As part of your response, explain identify all persons that performed the analysis, the purpose of such analysis, the software used to conduct the analysis, and the results of the analysis.

19.    To the extent this Defendant contends any changes or modifications of the subject vehicle caused or contributed to the Plaintiffs' injuries, please identify any such

changes or modifications, and describe in detail the basis for your contention they caused or contributed to the Plaintiff's injuries.

20.    To the extent this Defendant collects and/or documents customer / consumer comments and/or complaints regarding its products (including specifically the Jeep Liberty), please explain this information in detail. As part of your response, please provide the following:

    a.    The name of the department that handles such comments / complaints regarding products;

    b.    The location of the department that handles such comments/complaints regarding products;

    c.    The procedure for documenting the comments/complaints;

    d.    The location where this information is stored; and

    e.    The name of the person in charge of this department.

21.    Identify all persons that were either contacted to assist or who did assist, in in the answering of these interrogatories, including any person that assisted with the description or property designation of each book, record or document which was searched in answering these interrogatories. As part of your response, please provide the name, address and job title of each person who was contacted or who provided assistance.

22.    List specifically, and in exact detail and distinguish each and every change whether mechanical or design-oriented, as it relates to the passenger restraint system of the Jeep Liberty (including the seat belt system(s) within the Jeep Liberty) since the date of its original manufacture.

23.    Identify and describe any and all recalls affecting Jeep Liberty vehicles. Include in your response the year and nature of the recall, as well as the make, model and year of the vehicle(s) affected by the recall.

24.    Identify and describe in detail whether any Jeep Liberty testing information or vehicle design documents related to the passenger restraint system and/or vehicle roof structure have ever been destroyed, whether accidentally or in the usual course of business. Please include in your answer a list of documents and/or tests that were destroyed, a summary of the contents of each document, and how and why each document was destroyed.

25.    Identify and describe the name(s) of all databases that contain information related to the design, manufacture, testing, inspection, and/or review of the Jeep Liberty. This Request includes, but is not limited to, all "white paper" databases, consumer complaint databases, and databases containing information provided to or received from NHTSA by this Defendant's OGC.

26.    Identify the name(s) of the person(s) most knowledgeable about this Defendant's electronic databases. As part of your Response, please include the person(s)'s name, address, job title, the names of all electronic databases the person(s) is familiar with, and a summary of the person(s)'s knowledge concerning the database(s) they are familiar with.

27.    Identify all this Defendant's employees who performed any engineering, testing, inspection or design work on the subject Jeep Liberty model at any time, including the seat belt restraint system(s) and concerning the subject vehicle's roof. As part of responding to this Request, please provide the names, addresses, telephone

numbers, job titles, a description of the work performed, and whether FCA US, LLC retained their services after bankruptcy proceedings in 2009.

28.     Provide a listing of all internal manuals that assist in the reading of information from this Defendant's internal databases.

29.     Identify and describe all vehicle make and models that you are aware of that utilize the same or substantially the same seat belt restraint system(s) as the subject 2002 Jeep Liberty.

30.     Identify and describe all vehicle make and models you are aware of that utilize the same or substantially the same roof structure design as the subject 2002 Jeep Liberty.

31.     Identify and describe each and every entity that was responsible, whether in whole or in part (which would include providing design, manufacture, assembly, installation, inspection, testing, etc.), for the passenger restraint system (including seat belt systems for each passenger seat) in the 2002 Jeep Liberty. As part of your response, please identify the name, address of the person(s) and/or entities responsible, as well as a detailed description of the specific work undertaken by each of the person(s) or entities so responsible.

32.     Identify and describe each and every entity that was responsible, whether in whole or in part (which would include providing design, manufacture, assembly, installation, inspection, testing, etc.), for the roof structure (including support of the roof structure in the event of a rollover) of the 2002 Jeep Liberty. As part of your response, please identify the name, address of the person(s) and/or entities responsible, as well as a

detailed description of the specific work undertaken by each of the person(s) or entities so responsible.

33.    Identify all individuals or entities that performed or shared in any responsibility as it relates to any work undertaken on the 2002 Jeep Liberty model line. In responding to this request, please include the name of the person and/or entities employed or retained by you; the time period(s) employed by you; the position(s) held; a listing of their responsibilities; a detailed description of the work they performed for you; and the last known address of the individual(s) or entities. "Work" insofar as this request is concerned includes, but is not limited to, the design, manufacture, assembly, installation, modification, inspection, testing, accident investigation, selection of materials and/or components for, governmental compliance, and marketing of the 2002 Jeep Liberty model line.

## REQUESTS FOR PRODUCTION

1.    Produce any and all product literature distributed, printed or circulated by this Defendant, and which contain photographs, diagrams, descriptions or analysis of the 2002 Jeep Liberty. This Request includes all brochures, advertisements, white papers, marketing materials and information packets associated with the 2002 Jeep Liberty.

2.    Produce any and all documents or writings prepared for accompaniment with the Jeep Liberty for the five (5) years preceding the manufacture of the vehicle made the basis of this suit.

3.    Produce any and all documents or writings prepared for accompaniment with the 2002 Jeep Liberty which you contend contained warnings of any dangers which

users of the product may be exposed and/or containing any instructions for use. This Request includes the Operator's Manual for the 2002 Jeep Liberty.

4.      Produce any and all photographs or videotapes of the subject Jeep Liberty made the basis of this action, including any photographs or videotapes of the accident scene or the Plaintiff's decedent.

5.      Produce a full-size copy of the Body-in-White drawing for the 2002 Jeep Liberty.

6.      Produce any and all sales documents including invoices, purchase orders, bills of lading, and shipping invoices relating to the subject Jeep Liberty made the basis of this lawsuit.

7.      Produce a complete and legible copy of any and all complaints received by you from any source wherein it was alleged that an injury or death occurred as a result of a defective and/or failed seat belt restraint system in any of this Defendant's vehicles, including the 2002 Jeep Liberty.

8.      Produce a complete and legible copy of any complaints pertaining to personal injury or death lawsuits currently or formerly pending against this Defendant claiming any injury, death, or damage due to any alleged defective condition, defect in, or problems regarding the roof and/or roof structure in any of this Defendant's vehicles, including the of the 2002 Jeep Liberty.

9.      Produce any and all patents related to the seat belt design(s) held by you or any of your employees on the 2002 Jeep Liberty or any of this Defendant's vehicles built on the same vehicle platform as the 2002 Jeep Liberty, including copies of any patent applications related to the passenger restraint systems.

10.    Produce any and all patents related to the roof design and/or roof support design held by you or any of your employees on the 2002 Jeep Liberty or any of this Defendant's vehicles built on the same vehicle platform as the 2002 Jeep Liberty, including copies of any patent applications related to the passenger restraint systems.

11.    Produce any and all brochures, sales lists or other documents which would reflect optional equipment or any optional design configuration available to purchasers of the 2002 Jeep Liberty as it relates to the any of the seats and their passenger restraint systems.

12.    Produce any and all expert reports which have been prepared in connection with this lawsuit or the incident giving rise to this lawsuit, if the expert is prepared to, or may, testify in this case.  This request should also encompass any report prepared by any other person which has been reviewed by any expert intended to testify at the trial of this case.

13.    Produce copies of any and all statements previously made by the Plaintiff concerning the subject matter of this lawsuit, including any written statements signed or otherwise adopted or approved by the Plaintiff and any stenographic, mechanical, electrical or other type of recording or any transcription thereof made by the Plaintiff hereto and recorded.

14.    Produce any and all documents, pamphlets, brochures or operating manuals reflecting the safety features of the 2002 Jeep Liberty front seats and passenger restraint systems.

15.    Produce a listing identifying the person(s) that were either responsible for, or performed work (including oversight of work) for this Defendant concerning, any of

the following work regarding the 2002 Jeep Liberty model line: any and all vehicle design, manufacture, assembly, installation, modification, inspection, testing, accident investigation, selection of materials and/or components for, governmental compliance, and marketing.

16.    Produce copies of any and all warnings labels, placards or other things which accompanied the subject 2002 Jeep Liberty at the time of its sale or were affixed at any time to said Jeep Liberty related to the passenger compartment and/or passenger restraint system(s) (including seat belt system(s)).

17.    Produce any and all operator's manuals and service manuals pertaining to the subject 2002 Jeep Liberty's passenger seats and passenger restraint systems, including a complete index to the service manual.

18.    Produce copies of any and all documents, reports or other written records pertaining to any investigation of this incident, which were generated by persons other than this defendant.

19.    Produce copies of any and all advertising or exemplar advertising, promotional and descriptive literature for products that were substantially similar that were designed subsequent to the time this product was placed on the market, that were designed to improve, change, or take the place of the original product which is the subject matter of this litigation.

20.    Produce sketches, blueprints, schematics and/or drawings of the design of the passenger restraint system (including the seat belt system(s) for all seats) for the 2002 Jeep Liberty and for the Jeep Liberty models preceding and subsequent to the 2002 Jeep Liberty.

21.    Produce any and all documents, photographs or other physical evidence which will be utilized by you and offered as evidence at the trial of this case.

22.    Produce any and all documents related to any investigation or hearings conducted by any governmental entity related to the 2002 Jeep Liberty or any of this Defendant's vehicles built on the same vehicle platform as the 2002 Jeep Liberty.

23.    Produce a copy of any and all recalls issued for the 2002 Jeep Liberty or any of this Defendant's vehicles built on the same vehicle platform as the 2002 Jeep Liberty for the five years preceding the manufacture of the 2002 Jeep Liberty.

24.    Produce a copy of the policies and/or procedures for documenting customer comments/complaints regarding this Defendant's products.

25.    Produce a copy of the policies and/or procedures for document retention for this Defendant.

26.    Produce a copy of all customer comments/complaints concerning the 2002 Jeep Liberty line, and all other lines on the same or similar platforms (including but not limited to roof structure and restraint systems) as the 2002 Jeep Liberty line.

27.    Produce a complete and legible copy of any and all failure modes and effects analysis for the front seats and passenger restraint systems, including their component parts, on the 2002 Jeep Liberty and for the five years preceding and subsequent to the 2002 model.

28.    Produce a complete and legible copy of any and all parts lists which depict parts for the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

29.    Produce a complete and legible copy of any and all meeting minutes, presentations, documentation, visual aids, or any other documents or things which discuss or depict the as-manufactured design of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty or any of this Defendant's vehicles built on the same platform.

30.    Produce a complete and legible copy of any and all meeting minutes, presentations, documentation, visual aids or any other documents or things which discuss or depict the roof (which includes the roof support and/or roof design) of the 2002 Jeep Liberty or any of this Defendant's vehicles built on the same platform.

31.    Produce copies of all standards, tests, reports, published papers, unpublished papers or treatises or other exhibits which this Defendant expects to offer into evidence at the trial of this case.

32.    Produce copies of all crash test reports, test orders, test requests, video or films of crash tests, test set-up sheets, reports of studies on the conduct or results of crash tests, summaries, photographs or reviews or engineering analysis of any crash tests, test incident reports and project files generated by or for this Defendant of any crash testing of the 2002 Jeep Liberty or any of this Defendant's vehicles built on the same or similar vehicle platform as the 2002 Jeep Liberty, including: all frontal, side and rear impact and rollover tests; all tests of the passenger restraint system(s) (including seat belt system(s), and all tests of the roof strength and/or roof support system.

33.    Please produce legible copies of any internal design or performance goals related to the 2002 Jeep Liberty and vehicles built on the same platform as 2002 Jeep Liberty, as it relates to the vehicles' passenger restraint system(s) (including the seat belt

system(s)) and roof (which includes support of the roof and materials that comprise the support of the roof).

34.     Produce any and all documents, memos, and/or tests evidencing or relating to studies conducted by or on behalf of this Defendant related to passenger restraint failures (including seat belt system(s) failures).

35.     Produce any and all documents, memos, and/or tests evidencing or relating to studies and analyses conducted by or on behalf of this Defendant related to occupant protection from passenger restraint failures (including seat belt system(s) failures).

36.     Produce any and all documents, memos, and/or tests evidencing or relating to studies and analyses conducted by or on behalf of this Defendant related to occupant protection from roof support failure and/or roof crush.

37.     Produce copies of all sled test reports, test orders, test requests, video or films of sled tests, test set-up sheets, reports of studies on the conduct or results of sled tests, summaries or reviews or engineering analysis of any sled tests, test incident reports and project files generated by or for this Defendant of any sled testing of the passenger restraint system for all seats, including their component parts, for the 2002 Jeep Liberty or any of this Defendant's vehicles built on the same vehicle platform as the 2002 Jeep Liberty.

38.     Please produce a complete and legible copy of any and all engineering drawings, blueprints, photographs, video, computer files, notes, memorandum, and/or studies for the 2002 Jeep Liberty that would show:

        a.   any passenger restraint system design change or engineering change;

    b.   any <u>proposed</u> front seat or passenger restraint system design or engineering

change.

39.    Please produce a complete and legible copy of any and all engineering drawings, blueprints, photographs, video, computer files, notes, memorandum, and/or studies for any prototype of the 2002 Jeep Liberty.

40.    Please produce a complete and legible list or roster of all individuals, including name and address, who were involved in the design of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

41.    Please produce a complete and legible list or roster of all individuals, including name and address, who were involved in the design of the roof (including the roof support system and any components comprising the roof support system) for the 2002 Jeep Liberty.

42.    Please produce a complete and legible copy of any and all minutes, memoranda, talking points of meetings, correspondence concerning topics discussed, or other documents referencing said meetings, wherein engineers, directors, officers or employees of this Defendant discussed the possibility of a passenger restraint system failure and/or seat belt spool out due to any defect or potential defect in the passenger restraint system(s) on any of the passenger seats of the 2002 Jeep Liberty.

43.    Please produce a complete and legible copy of any and all minutes, memoranda, talking points of meetings, correspondence concerning topics discussed, or other documents referencing said meetings, wherein engineers, directors, officers or employees of this Defendant discussed the possibility of a roof support and/or roof failure

and/or roof crush into the passenger compartment due to any defect or potential defect in the roof and/or roof support of the 2002 Jeep Liberty.

44.    Produce any and all hazard analyses and/or any and all analyses performed by you to assess potential hazards to passengers riding in or operating the 2002 Jeep Liberty.

45.    Produce any and all documents evidencing your efforts to either eliminate or safeguard against potential hazards to passengers riding in or operating the 2002 Jeep Liberty.

46.    Produce documents that itemize this Defendant's cost for each individual component of the 2002 Jeep Liberty's passenger restraint system (including the seat belt system(s)).

47.    Produce documents that itemize this Defendant's cost for each individual component of the 2002 Jeep Liberty's roof design (including the support structure of the roof and all component parts that comprise the roof support structure).

48.    Produce all correspondences concerning the selection of the restraint systems (including the seat belt system(s)) contained in the 2002 Jeep Liberty.

49.    Produce all correspondences concerning the selection and design of the roof (including the roof support system and any components comprising the roof support system) of the 2002 Jeep Liberty.

50.    Produce a listing of all individuals or entities that performed or shared in any responsibility as it relates to any work undertaken on the 2002 Jeep Liberty model line. In responding to this request, please include the name of the person and/or entities employed or retained by you; the time period(s) employed by you; the position(s) held; a listing of their responsibilities; a detailed description of the work they performed for you; and the last

known address of the individual(s) or entities. "Work" insofar as this request is concerned

includes, but is not limited to, the design, manufacture, assembly, installation, modification,

inspection, testing, accident investigation, selection of materials and/or components for,

governmental compliance, and marketing of the 2002 Jeep Liberty model line.


/s/J. Parker Miller
J. Parker Miller (MIL138)
Attorney for Plaintiffs


OF COUNSEL:

J. Parker Miller
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL 36103-4160
(334) 269-2343

**TO BE SERVED WITH THE COMPLAINT**

ELECTRONICALLY FILED
10/17/2017 5:38 PM
01-CV-2017-904376.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT FOR
## JEFFERSON COUNTY, ALABAMA

| | | |
|---|---|---|
| **FRANKIE OVERTON, Administrator** | * | |
| **of the Estate of SUE ANN GRAHAM,** | * | |
| **Deceased; and SCOTT GRAHAM, as** | * | |
| **legal guardian of JORDON GRAHAM, a** | * | |
| **minor child,** | * | **CASE NO:** |
| | * | |
| **Plaintiffs,** | * | **JURY DEMAND REQUESTED** |
| | * | |
| **vs.** | * | |
| | * | |
| **CHRYSLER GROUP LLC.;** | * | |
| **FIAT CHRYSLER AUTOMOBILES** | * | |
| **US, LLC (FCA US, LLC); RODERICUS** | * | |
| **OBYRAN CARRINGTON; TRW** | * | |
| **AUTOMOTIVE HOLDINGS CORP.,** | * | |
| **f/k/a TRW, INC.; TRW AUTOMOTIVE,** | * | |
| **INC.; TRW AUTOMOTIVE U.S. LLC;** | * | |
| **TRW VEHICLE SAFETY SYSTEMS,** | * | |
| **INC.; TRW AUTOMOTIVE US, LLC;** | * | |
| **TRW SAFETY SYSTEMS, INC.; ZF** | * | |
| **FRIEDRICHSHAFEN AG; ZF TRW** | * | |
| **AUTOMOTIVE HOLDINGS CORP.;** | * | |
| **and FICTITIOUS DEFENDANTS "1"** | * | |
| **through "13"** | * | |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION TO DEFENDANT FIAT CHRYSLER AUTOMOBILES US, LLC.

Plaintiffs in the above-styled action propound these discovery requests upon Defendant Fiat Chrysler Automobiles US, LLC ("FCA"), and request they be answered fully in writing and under oath within the time provided by the *Alabama Rules of Civil Procedure*. Each request is addressed to the knowledge and information of Defendant's attorneys, investigators, agents, employees, and other representatives. When a question is directed to Defendant, the question is also directed to the aforementioned persons.

These requests shall be deemed continuing so as to require supplemental answers if the persons or entities to whom these requests are addressed obtain further information between the time the initial answers are served and the time of trial.

## **<u>INTERROGATORIES</u>**

1.      Identify the person(s) answering and/or assisting in answering these interrogatories. As part of your response, please include the name, address, title and duties of the person(s) identified.

2.      If this Defendant's name is not correctly stated in the Complaint on file in this case, state the correct way this Defendant should have been designated as a party defendant in a lawsuit at the time of the occurrence made the basis of the lawsuit and at the time these interrogatories were answered.

3.      State the general corporate history of this Defendant from the date of incorporation to the present.  This should include, but not be limited to, the state of incorporation, date of incorporation and the principal place of business.

4.      Identify each and every insurer at issue in this case. This request includes the name, address and policy limits of each insurer or potential insurer of any type whatsoever that may be liable to satisfy part or all of a judgment or settlement which may entered in this action, or to indemnify or reimburse for payments made to satisfy any judgment or settlement in this case.

5.      Describe in detail this Defendant's role in the design, testing, manufacture and/or marketing of the vehicle made the basis of this action.

6.      Identify and describe the history of the Jeep Liberty from the date the vehicle was first placed on the market up to the present date. This request includes all

structural and component changes (including safety and/or restraint systems) to the Jeep

Liberty over the course of its life.

7.     Describe in detail the history of the subject vehicle. As part of your

response, please include the date of manufacture of the subject vehicle; the date it left this

Defendant's control; who the vehicle was sold to; and the name and address of the

facility where the vehicle was manufactured.

8.     Identify all persons responsible for the design or engineering of the

seatbelt systems in the subject vehicle. As part of your response, please include the name

and address of the person(s) responsible, including the chief engineer(s) involved,

whether those persons are still employed by you, and if not, when they ceased

employment with this Defendant.

9.     Identify all persons responsible for the design or engineering of the roof

structure in any way for the subject vehicle. As part of your response, please include the

name and address of the person(s) responsible, including the chief engineer(s) involved;

their role and responsibilities as it relates to the subject vehicle; whether those persons are

still employed by you and if not, when they ceased employment with this Defendant.

10.    Identify and describe all vehicles that share the same seatbelt and/or seat

belt buckle system(s) that are utilized in the subject vehicle. As part of your response,

please identify the manufacturer, make and model of each vehicle utilizing the above-

referenced seat belt and/or seat belt buckle system(s).

11.    Identify and describe in detail any and all testing conducted on any model

Liberty. This request includes, but is not limited to, any testing (including any and all

litigation testing previously produced) concerning the seat belt system and roof structures in any model Jeep Liberty.

12.    Identify all lay witnesses who have personal knowledge about the facts of this case (e.g., subject accident; design, marketing, engineering, manufacturing, testing, prototype work, marketing and distribution of the subject vehicle), including all of the issues and facts discussed in the Plaintiffs' complaint. As part of your response, please include the full name, address, telephone numbers, and a summary of facts / information known by each witness.

13.    Identify and describe in detail all persons that you expect to call as an expert witness at the trial of this case. As part of your response, please provide the proposed expert's full name, address, telephone number, background, experience, qualifications and the proposed expert's subject matter of expected testimony, the substance of the facts and opinions which the expert is expected to testify, and a summary of the basis for each opinion.

14.    Identify and describe all complaints received by this Defendant prior to the subject wreck of any accident or incident resulting in personal injury, death or personal damage which allegedly resulted from the failure of the seat belt systems to retain an occupant in any way during a rollover and/or lack of adequate strength in the roof of the Jeep Liberty. As part of your response, please include the name of any cases known to you, the court in which they were filed, the name of the person making the complaint, and/or his/her attorney.

15.    Identify and describe whether this Defendant has ever received any complaint from any government or safety agency related to the seat belt system or roof

structure for a Jeep Liberty vehicle (including in this case). As part of your response, please provide the following:

    a.   The date the complaint or inquiry was received;

    b.   A detailed description of the complaint or inquiry;

    c.   A detailed description of any action that was requested on the part of this Defendant by the government;

    d.   The source of the complaint or inquiry.

16.    Please identify and describe in detail any and all changes to the roof structure of the Jeep Liberty over its history since it was first introduced into the marketplace.  This request includes any changes in design, materials or manufacturing for the roof components, including the A, B, C or D pillars.

17.    Identify and describe any and all standards for seat belt or roof performance utilized for the design and/or development of the seat belt system(s) and/or roof of all Jeep Liberty models (including the subject vehicle). This Request includes all government, company, internal, industry or experimental standards, whether past, current or proposed, utilized by you.

18.    Please describe any and all finite element analysis performed on any Jeep Liberty model seat belt system or roof structure (including the subject vehicle made the basis of this suit). As part of your response, explain identify all persons that performed the analysis, the purpose of such analysis, the software used to conduct the analysis, and the results of the analysis.

19.    To the extent this Defendant contends any changes or modifications of the subject vehicle caused or contributed to the Plaintiffs' injuries, please identify any such

changes or modifications, and describe in detail the basis for your contention they caused or contributed to the Plaintiff's injuries.

20.    To the extent this Defendant collects and/or documents customer / consumer comments and/or complaints regarding its products (including specifically the Jeep Liberty), please explain this information in detail. As part of your response, please provide the following:

    a.  The name of the department that handles such comments / complaints regarding products;

    b.  The location of the department that handles such comments/complaints regarding products;

    c.  The procedure for documenting the comments/complaints;

    d.  The location where this information is stored; and

    e.  The name of the person in charge of this department.

21.    Identify all persons that were either contacted to assist or who did assist, in in the answering of these interrogatories, including any person that assisted with the description or property designation of each book, record or document which was searched in answering these interrogatories. As part of your response, please provide the name, address and job title of each person who was contacted or who provided assistance.

22.    List specifically, and in exact detail and distinguish each and every change whether mechanical or design-oriented, as it relates to the passenger restraint system of the Jeep Liberty (including the seat belt system(s) within the Jeep Liberty) since the date of its original manufacture.

23.    Identify and describe any and all recalls affecting Jeep Liberty vehicles. Include in your response the year and nature of the recall, as well as the make, model and year of the vehicle(s) affected by the recall.

24.    Identify and describe in detail whether any Jeep Liberty testing information or vehicle design documents related to the passenger restraint system and/or vehicle roof structure have ever been destroyed, whether accidentally or in the usual course of business. Please include in your answer a list of documents and/or tests that were destroyed, a summary of the contents of each document, and how and why each document was destroyed.

25.    Identify and describe the name(s) of all databases that contain information related to the design, manufacture, testing, inspection, and/or review of the Jeep Liberty. This Request includes, but is not limited to, all "white paper" databases, consumer complaint databases, and databases containing information provided to or received from NHTSA by this Defendant's OGC.

26.    Identify the name(s) of the person(s) most knowledgeable about this Defendant's electronic databases. As part of your Response, please include the person(s)'s name, address, job title, the names of all electronic databases the person(s) is familiar with, and a summary of the person(s)'s knowledge concerning the database(s) they are familiar with.

27.    Identify all this Defendant's employees who performed any engineering, testing, inspection or design work on the subject Jeep Liberty model at any time, including the seat belt restraint system(s) and concerning the subject vehicle's roof. As part of responding to this Request, please provide the names, addresses, telephone

numbers, job titles, a description of the work performed, and whether FCA US, LLC

retained their services after bankruptcy proceedings in 2009.

28.    Provide a listing of all internal manuals that assist in the reading of

information from this Defendant's internal databases.

29.    Identify and describe all vehicle make and models that you are aware of

that utilize the same or substantially the same seat belt restraint system(s) as the subject

2002 Jeep Liberty.

30.    Identify and describe all vehicle make and models you are aware of that

utilize the same or substantially the same roof structure design as the subject 2002 Jeep

Liberty.

31.    Identify and describe each and every entity that was responsible, whether

in whole or in part (which would include providing design, manufacture, assembly,

installation, inspection, testing, etc.), for the passenger restraint system (including seat

belt systems for each passenger seat) in the 2002 Jeep Liberty. As part of your response,

please identify the name, address of the person(s) and/or entities responsible, as well as a

detailed description of the specific work undertaken by each of the person(s) or entities so

responsible.

32.    Identify and describe each and every entity that was responsible, whether

in whole or in part (which would include providing design, manufacture, assembly,

installation, inspection, testing, etc.), for the roof structure (including support of the roof

structure in the event of a rollover) of the 2002 Jeep Liberty. As part of your response,

please identify the name, address of the person(s) and/or entities responsible, whether

they are or were previously employed by you, as well as a detailed description of the specific work undertaken by each of the person(s) or entities so responsible.

33.    To the extent you have employed or retained any individuals or entities that performed or shared in any responsibility as it relates to any work undertaken on the 2002 Jeep Liberty model line, please identify those individuals. In responding to this request, please include the name of the person and/or entities employed or retained by you; the time period(s) employed by you; the position(s) held; a listing of their responsibilities; a detailed description of the work they performed for you; and the last known address of the individual(s) or entities. "Work" insofar as this request is concerned includes, but is not limited to, the design, manufacture, assembly, installation, modification, inspection, testing, accident investigation, selection of materials and/or components for, governmental compliance, and marketing of the 2002 Jeep Liberty model line.

## REQUESTS FOR PRODUCTION

1.    Produce all documents (test, studies, etc.) referenced in your responses to the Plaintiffs' First Set of Interrogatories.

2.    Produce any and all product literature distributed, printed or circulated by this Defendant, and which contain photographs, diagrams, descriptions or analysis of the 2002 Jeep Liberty. This Request includes all brochures, advertisements, white papers, marketing materials and information packets associated with the 2002 Jeep Liberty.

3.    Produce any and all documents or writings prepared for accompaniment with the Jeep Liberty for the five (5) years preceding and subsequent to the manufacture of the vehicle made the basis of this suit.

4.     Produce any and all documents or writings prepared for accompaniment with the 2002 Jeep Liberty which you contend contained warnings of any dangers which users of the product may be exposed and/or containing any instructions for use. This Request includes the Operator's Manual for the 2002 Jeep Liberty.

5.     Produce any and all photographs or videotapes of the subject Jeep Liberty made the basis of this action, including any photographs or videotapes of the accident scene or the Plaintiff's decedent.

6.     Produce a full-size copy of the Body-in-White drawing for the 2002 Jeep Liberty.

7.     Produce any and all sales documents including invoices, purchase orders, bills of lading, and shipping invoices relating to the subject Jeep Liberty made the basis of this lawsuit.

8.     Produce a complete and legible copy of any and all complaints received by you from any source wherein it was alleged that an injury or death occurred as a result of a defective and/or failed seat belt restraint system in any of this Defendant's vehicles, including the 2002 Jeep Liberty.

9.     Produce a complete and legible copy of any complaints pertaining to personal injury or death lawsuits currently or formerly pending against this Defendant claiming any injury, death, or damage due to any alleged defective condition, defect in, or problems regarding the roof and/or roof structure in any of this Defendant's vehicles, including the of the 2002 Jeep Liberty.

10.     Produce any and all patents related to the seat belt design(s) held by you or any of your employees on the 2002 Jeep Liberty or any of this Defendant's vehicles built

on the same vehicle platform as the 2002 Jeep Liberty, including copies of any patent applications related to the passenger restraint systems.

11.     Produce any and all patents related to the roof design and/or roof support design held by you or any of your employees on the 2002 Jeep Liberty or any of this Defendant's vehicles built on the same vehicle platform as the 2002 Jeep Liberty, including copies of any patent applications related to the passenger restraint systems.

12.     Produce any and all brochures, sales lists or other documents which would reflect optional equipment or any optional design configuration available to purchasers of the 2002 Jeep Liberty as it relates to the any of the seats and their passenger restraint systems.

13.     Produce any and all expert reports which have been prepared in connection with this lawsuit or the incident giving rise to this lawsuit, if the expert is prepared to, or may, testify in this case.  This request should also encompass any report prepared by any other person which has been reviewed by any expert intended to testify at the trial of this case.

14.     Produce copies of any and all statements previously made by the Plaintiffs concerning the subject matter of this lawsuit, including any written statements signed or otherwise adopted or approved by the Plaintiffs and any stenographic, mechanical, electrical or other type of recording or any transcription thereof made by the Plaintiffs hereto and recorded.

15.     Produce any and all documents, pamphlets, brochures or operating manuals reflecting the safety features of the 2002 Jeep Liberty front seats and passenger restraint systems.

16.    Produce a listing identifying the person(s) that were either responsible for, or performed work (including oversight of work) for this Defendant concerning, any of the following work regarding the 2002 Jeep Liberty model line: any and all vehicle design, manufacture, assembly, installation, modification, inspection, testing, accident investigation, selection of materials and/or components for, governmental compliance, and marketing.

17.    Produce copies of any and all warnings labels, placards or other things which accompanied the subject 2002 Jeep Liberty at the time of its sale or were affixed at any time to said Jeep Liberty related to the passenger compartment and/or passenger restraint system(s) (including seat belt system(s)).

18.    Produce any and all operator's manuals and service manuals pertaining to the subject 2002 Jeep Liberty's passenger seats and passenger restraint systems, including a complete index to the service manual.

19.    Produce copies of any and all documents, reports or other written records pertaining to any investigation of this incident, which were generated by persons other than this defendant.

20.    Produce copies of any and all advertising or exemplar advertising, promotional and descriptive literature for products that were substantially similar that were designed subsequent to the time this product was placed on the market, that were designed to improve, change, or take the place of the original product which is the subject matter of this litigation.

21.    Produce sketches, blueprints, schematics and/or drawings of the design of the passenger restraint system (including the seat belt system(s) for all seats) for the 2002

Jeep Liberty and for the Jeep Liberty models preceding and subsequent to the 2002 Jeep Liberty.

22.    Produce any and all documents, photographs or other physical evidence which will be utilized by you and offered as evidence at the trial of this case.

23.    Produce any and all documents related to any investigation or hearings conducted by any governmental entity related to the 2002 Jeep Liberty or any of this Defendant's vehicles built on the same vehicle platform as the 2002 Jeep Liberty.

24.    Produce a copy of any and all recalls issued for the 2002 Jeep Liberty or any of this Defendant's vehicles built on the same vehicle platform as the 2002 Jeep Liberty for the five years preceding the manufacture of the 2002 Jeep Liberty.

25.    Produce a copy of the policies and/or procedures for documenting customer comments/complaints regarding this Defendant's products.

26.    Produce a copy of all customer comments/complaints concerning the 2002 Jeep Liberty line, and all other lines on the same or similar platforms (including but not limited to roof structure and restraint systems) as the 2002 Jeep Liberty line.

27.    Produce a copy of the policies and/or procedures for document retention for this Defendant.

28.    Produce a complete and legible copy of any and all failure modes and effects analysis for the front seats and passenger restraint systems, including their component parts, on the 2002 Jeep Liberty and for the five years preceding and subsequent to the 2002 model.

29.     Produce a complete and legible copy of any and all parts lists which depict parts for the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

30.     Produce a complete and legible copy of any and all meeting minutes, presentations, documentation, visual aids, or any other documents or things which discuss or depict the as-manufactured design of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty or any of this Defendant's vehicles built on the same platform.

31.     Produce a complete and legible copy of any and all meeting minutes, presentations, documentation, visual aids or any other documents or things which discuss or depict the roof (which includes the roof support and/or roof design) of the 2002 Jeep Liberty or any of this Defendant's vehicles built on the same platform.

32.     Produce copies of all standards, tests, reports, published papers, unpublished papers or treatises or other exhibits which this Defendant expects to offer into evidence at the trial of this case.

33.     Produce copies of all crash test reports, test orders, test requests, video or films of crash tests, test set-up sheets, reports of studies on the conduct or results of crash tests, summaries, photographs or reviews or engineering analysis of any crash tests, test incident reports and project files generated by or for this Defendant of any crash testing of the 2002 Jeep Liberty or any of this Defendant's vehicles built on the same or similar vehicle platform as the 2002 Jeep Liberty, including: all frontal, side and rear impact and rollover tests; all tests of the passenger restraint system(s) (including seat belt system(s), and all tests of the roof strength and/or roof support system.

34.    Please produce legible copies of any internal design or performance goals related to the 2002 Jeep Liberty and vehicles built on the same platform as the 2002 Jeep Liberty, as it relates to the vehicles' passenger restraint system(s) (including the seat belt system(s)) and roof (which includes support of the roof and materials that comprise the support of the roof).

35.    Produce any and all documents, memos, and/or tests evidencing or relating to studies conducted by or on behalf of this Defendant related to passenger restraint failures (including seat belt system(s) failures).

36.    Produce any and all documents, memos, and/or tests evidencing or relating to studies and analyses conducted by or on behalf of this Defendant related to occupant protection from passenger restraint failures (including seat belt system(s) failures).

37.    Produce any and all documents, memos, and/or tests evidencing or relating to studies and analyses conducted by or on behalf of this Defendant related to occupant protection from roof support failure and/or roof crush.

38.    Produce copies of all sled test reports, test orders, test requests, video or films of sled tests, test set-up sheets, reports of studies on the conduct or results of sled tests, summaries or reviews or engineering analysis of any sled tests, test incident reports and project files generated by or for this Defendant of any sled testing of the passenger restraint system for all seats, including their component parts, for the 2002 Jeep Liberty or any of this Defendant's vehicles built on the same vehicle platform as the 2002 Jeep Liberty.

39.    Please produce a complete and legible copy of any and all engineering drawings, blueprints, photographs, video, computer files, notes, memorandum, and/or studies for the 2002 Jeep Liberty that would show:

    a.   any passenger restraint system design change or engineering change;

    b.   any proposed front seat or passenger restraint system design or engineering change.

40.    Please produce a complete and legible copy of any and all minutes, memoranda, talking points of meetings, correspondence concerning topics discussed, or other documents referencing said meetings, wherein engineers, directors, officers or employees of this Defendant discussed the possibility of a passenger restraint system failure and/or seat belt spool out due to any defect or potential defect in the passenger restraint system(s) on any of the passenger seats of the 2002 Jeep Liberty.

41.    Produce any and all hazard analyses and/or any and all analyses performed by you to assess potential hazards to passengers riding in or operating the 2002 Jeep Liberty.

42.    Produce documents that itemize this Defendant's cost for each individual component of the 2002 Jeep Liberty's passenger restraint system (including the seat belt system(s)), as well as any alternative passenger restraint system available at the time the 2002 Jeep Liberty's restraint system was utilized.

43.    Produce documents that itemize this Defendant's cost for each individual component of the 2002 Jeep Liberty's roof design (including the support structure of the roof and all component parts that comprise the roof support structure), as well as any alternative roof design available at the time the 2002 Jeep Liberty's roof design was utilized.

44.    Produce all correspondences concerning the selection of the restraint systems

(including the seat belt system(s)) contained in the 2002 Jeep Liberty.


/s/J. Parker Miller_____
J. Parker Miller (MIL138)
Attorney for Plaintiffs


OF COUNSEL:

J. Parker Miller
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL 36103-4160
(334) 269-2343

## TO BE SERVED WITH THE COMPLAINT

ELECTRONICALLY FILED
10/17/2017 5:38 PM
01-CV-2017-904376.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT FOR
## JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| **FRANKIE OVERTON, Administrator** * | |
| **of the Estate of SUE ANN GRAHAM,** * | |
| **Deceased; and SCOTT GRAHAM, as** * | |
| **legal guardian of JORDON GRAHAM, a** * | |
| **minor child,** * | **CASE NO:** |
| * | |
| **Plaintiff,** * | **JURY DEMAND REQUESTED** |
| * | |
| **vs.** * | |
| * | |
| **CHRYSLER GROUP LLC.;** * | |
| **FIAT CHRYSLER AUTOMOBILES** * | |
| **US, LLC (FCA US, LLC); RODERICUS** * | |
| **OBYRAN CARRINGTON; TRW** * | |
| **AUTOMOTIVE HOLDINGS CORP.,** * | |
| **f/k/a TRW, INC.; TRW AUTOMOTIVE,** * | |
| **INC.; TRW AUTOMOTIVE U.S. LLC;** * | |
| **TRW VEHICLE SAFETY SYSTEMS,** * | |
| **INC.; TRW AUTOMOTIVE US, LLC;** * | |
| **TRW SAFETY SYSTEMS, INC.; ZF** * | |
| **FRIEDRICHSHAFEN AG; ZF TRW** * | |
| **AUTOMOTIVE HOLDINGS CORP.;** * | |
| **and FICTITIOUS DEFENDANTS "1"** * | |
| **through "13"** * | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION TO DEFENDANT RODERICUS OBRYAN CARRINGTON

Plaintiff in the above-styled action propounds these discovery requests upon Defendant Rodericus Obryan Carrington, and requests that they be answered fully in writing and under oath within the time provided by the *Alabama Rules of Civil Procedure*. Each request is addressed to the knowledge and information of Defendant's attorneys, investigators, agents, employees, and other representatives. When a question is directed to Defendant, the question is also directed to the aforementioned persons.

1

These requests shall be deemed continuing so as to require supplemental answers if the persons or entities to whom these requests are addressed obtain further information between the time the initial answers are served and the time of trial.

## **INTERROGATORIES**

1.      Please identify yourself. Identification includes your full name and any names you have had in the past (including nicknames and aliases); your social security number; and your date and place of birth.

2.      Please identify your places of residence. This request includes your current and previous addresses, the respective dates of residence at each address, who lived with you at each address, and your relationship to the individuals you lived with at each address.

3.      Please state the name of all liability insurance carriers that covered you and/or the subject vehicle, including primary, umbrella and/or excess liability coverage, on the date of the collision.

4.      Please state the amount of coverage under each and every liability insurance policy, including all excess and umbrella liability coverage, which covered you and/or the subject vehicle on the date of this collision.  For each carrier, please state the following:

      a.   The policy limits on each such policy.

      b.   The name of the insured of each such policy.

5.      Beginning with your present employer or any other person, firm, corporation, or other entity for whom you work, please describe your work history. To

fully respond to this request, please provide the following for each and every place of employment or other job you have ever worked:

    a.  The name, address, and phone number;

    b.  The dates of your employment or periods of the time you worked there

    c.  A description of your job title and duties;

    d.  The wage per hour, salary, benefits, or other amount of compensation you received; and

    e.  The reason for the termination of your employment relationship.

6.    Please provide a summary of your educational background. This request includes what school or schools you attended, dates of attendance, degrees obtained, and any areas of specialization.

7.    Please provide and describe in detail, in your own words, how the June 10, 2016 accident referenced in the Complaint occurred in Jefferson County, Alabama.

8.    Describe in detail the purpose of the trip you were making at the time of the June 10, 2016 accident in Jefferson County, Alabama.

9.    Describe in detail your activities the day of June 10, 2016 leading up to the accident. This request includes

    a.  any locations, business establishments, or events you visited;

    b.  the purpose of those visits;

    c.  the duration of those visits; and

    d.  a description of what you were doing during those visits.

10.    Describe in detail each and everything done by you or any other drivers or passengers in the June 10, 2016 accident, which you contend caused or contributed in any way to the accident.

11.    Please provide information concerning your cellular provider at the time of the June 10, 2016 accident. This request includes your cell phone number, your cellular provider's name and your customer account number.

12.    To the extent you currently have or have had in the past any social media accounts, please identify those social media providers. This request includes the names of those social media providers, your username and password.

13.    From June 9, 2016 until the time of the accident on June 10, 2016, please describe your consumption of any alcoholic beverages. This request includes, but is not limited to:

    a.    the approximate times and dates of consumption;

    b.    the locations you consumed alcohol;

    c.    the type of alcohol consumed (beer, bourbon, wine, etc.);

    d.    the brand and make of the alcohol consumed;

    e.    by brand and make of alcohol, total quantities consumed

    f.    where these beverages were purchased

14.    List the names and addresses of any and all witnesses that you are aware of that witnessed the June 10, 2016 accident.

15.    Did you take any type of drugs or prescription medications within 24 hours of this collision or on the date of the collision? If so, please state the type of drugs

or medications taken, dosage and time each was taken, state the name of the doctor who ordered the prescription medications and/or the person who gave you such drugs.

16.     Identify any statements you have made concerning this accident. This request includes the dates and times you made any of these statements, a description of those statements, and the entities that you made the statements to.

17.     Describe any and all previous car accidents you have been a party to. In responding to this request, please include:

      a.   Date of the accident;

      b.   Location of the accident;

      c.   Whether you were a driver or a passenger;

      d.   Whether you or the driver in your car was determined to be at fault.

      e.   A description of the accident

18.     List each traffic violation you have ever received, all warnings you have ever received, include the offense, date of each offense, and location of violation.

19.     Has your driver's license ever been suspended and/or revoked in the past? If so, state the date, reason and date of reinstatement.

20.     Please state the name and address of any hospital, doctor, rehabilitation center or treatment center (whether inpatient or outpatient), that you have ever been to for treatment, rehabilitation, counseling or any other reason for use of alcohol or drugs or prescription medications or for any other controlled substance, prior to this collision.

21.     At the time of the collision, were you under the care of any doctor, psychologist or psychiatrist, counselor or other medical provider?  If so, list the name and address of each doctor or other medical provider.

22.     State the name and address of each expert witness you intend to call to testify at trial, including all the opinions of each expert and the basis of each opinion.

## **REQUESTS FOR PRODUCTION**

1.     Produce any and all statements that you have made concerning the accident occurring on June 10, 2016 in Jefferson County, Alabama.

2.     Produce a certified copy of any and all liability insurance policies, including all umbrella and excess policies, which covered you and/or the subject vehicle on the date of this incident, including the declaration sheet of each said policy.

3.     Produce a color copy of any and all photographs and/or videos of the scene of the June 10, 2016 accident, including all pictures of any vehicles involved in the accident.

4.     State the name, address and provide a current curriculum vitae for each and every expert witness you anticipate calling to the trial of this action and for each expert provide the following:

a.     A copy of each and every document relied upon by each expert.
b.     A copy of each and every report prepared by each expert.
c.     A copy of each and every document provided to each expert.
d.     A summary of each opinion which each expert intends to offer in this case.
e.     A copy of each and every document which forms or supports the basis of each expert's opinions.

5.     Produce a color copy of your current driver's license.

6.     Produce a copy of any statements given by any person at the scene of the June 10, 2016 accident.

7.     Produce a copy of any statements of any and all witnesses that were in the vehicle at the time of the accident.

8.      Produce a copy of your cell phone records for June 10, 2016.

9.      Produce a copy of any statements, correspondences, emails, social media

messages, texts or discussions you have had with any Defendants listed on the complaint.


/s/J. Parker Miller
J. Parker Miller (MIL138)
Attorney for Plaintiffs


OF COUNSEL:

J. Parker Miller
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL 36103-4160
(334) 269-2343

## TO BE SERVED WITH THE COMPLAINT

DOCUMENT 6

ELECTRONICALLY FILED
10/17/2017 5:38 PM
01-CV-2017-904376.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT FOR
## JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| **FRANKIE OVERTON, Administrator** * | |
| **of the Estate of SUE ANN GRAHAM,** * | |
| **Deceased; and SCOTT GRAHAM, as legal** * | |
| **guardian of JORDON GRAHAM, a minor** * | |
| **child,** * | **CASE NO:** |
| * | |
| **Plaintiff,** * | **JURY DEMAND REQUESTED** |
| * | |
| **vs.** * | |
| * | |
| **CHRYSLER GROUP LLC.;** * | |
| **FIAT CHRYSLER AUTOMOBILES** * | |
| **US, LLC (FCA US, LLC); RODERICUS** * | |
| **OBYRAN CARRINGTON; TRW** * | |
| **AUTOMOTIVE HOLDINGS CORP.,** * | |
| **f/k/a TRW, INC.; TRW AUTOMOTIVE,** * | |
| **INC.; TRW AUTOMOTIVE U.S. LLC;** * | |
| **TRW VEHICLE SAFETY SYSTEMS,** * | |
| **INC.; TRW AUTOMOTIVE US, LLC;** * | |
| **TRW SAFETY SYSTEMS, INC.; ZF** * | |
| **FRIEDRICHSHAFEN AG; ZF TRW** * | |
| **AUTOMOTIVE HOLDINGS CORP.;** * | |
| **and FICTITIOUS DEFENDANTS "1"** * | |
| **through "13"** * | |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES
### AND REQUEST FOR PRODUCTION TO DEFENDANT TRW AUTOMOTIVE
### HOLDINGS CORP., f/k/a TRW, INC.

Plaintiff in the above-styled action propounds these discovery requests upon Defendant

TRW Automotive Holdings Corp., f/k/a TRW, Inc. and requests that they be answered fully in

writing and under oath within the time provided by the *Alabama Rules of Civil Procedure*. Each

request is addressed to the knowledge and information of Defendant's attorneys, investigators,

agents, employees, and other representatives. When a question is directed to Defendant, the

question is also directed to the aforementioned persons.

These requests shall be deemed continuing so as to require supplemental answers if the persons or entities to whom these requests are addressed obtain further information between the time the initial answers are served and the time of trial.

## **INTERROGATORIES**

1.      Identify the person(s) answering and/or assisting in answering these interrogatories. As part of your response, please include the name, address, title and duties of the person(s) identified.

2.      If this Defendant's name is not correctly stated in the Complaint on file in this case, state the correct way this Defendant should have been designated as a party defendant in a lawsuit at the time of the occurrence made the basis of the lawsuit and at the time these interrogatories were answered.

3.      State the general corporate history of this Defendant from the date of incorporation to the present.  This should include, but not be limited to, the state of incorporation, date of incorporation and the principal place of business.

4.      Identify each and every insurer at issue in this case. This request includes the name, address and policy limits of each insurer or potential insurer of any type whatsoever that may be liable to satisfy part or all of a judgment or settlement which may entered in this action, or to indemnify or reimburse for payments made to satisfy any judgment or settlement in this case.

5.      Identify and "fully describe" the seatbelt systems contained on the 2002 Jeep Liberty. This request includes, but is not limited to, identification of the make and model number of each seatbelt system by location within the 2002 Jeep Liberty; identification of the component parts of each seat belt system by location within the 2002 Jeep Liberty; the total cost of each seatbelt system, as well as a breakdown of the cost by component part of each seatbelt system; the

specifications of each seatbelt system and their component parts; the purpose of each seatbelt system; the name, acronym and part number of the various parts which make up the seatbelt systems in the subject vehicle; the date(s) the seat belt systems were designed and manufactured; the locations where the seat belt systems were manufactured; and the name, address and phone number of each entity in the distribution chain.

6.      Identify and describe in detail this Defendant's responsibilities for the seatbelt systems in the 2002 Jeep Liberty?

7.      Identify and describe in detail the responsibilities of all other Defendants concerning the seatbelt systems in the 2002 Jeep Liberty?

8.      Identify and describe in detail the history of your involvement as related to Chrysler vehicles, including but not limited to, the Jeep Liberty line.

9.      Identify all persons responsible for the design of the seatbelt systems in the subject vehicle. As part of your response, please include the name and address of the person(s) responsible, including the chief engineer(s) involved, whether those persons are still employed by you, and if not, when they ceased employment with this Defendant.

10.     Identify all release engineers for any and all of the seatbelt systems used in the 2002 Jeep Liberty.

11.     To the extent any of the seatbelt systems of the type utilized in the subject 2002 Jeep Liberty have ever been the subject of a defect investigation or engineering analysis by NHTSA, please describe in detail those investigations and analysis. In responding to this request, please provide the date the investigation was initiated, all reasons for initiating the investigation, and the results of the investigation.

12.    Identify and describe fully any testing conducted on the seatbelt systems in the subject 2002 Jeep Liberty, including substantially similar seatbelt system models, to evaluate their performance in vehicle accidents, including rollover accidents.  As part of your response, please provide what testing was conducted, the dates of any such testing, the results of the testing, and the name, address and phone number of the person(s) and entity (if this Defendant, the appropriate department) responsible for such testing.

13.    Identify and describe the type of seat belt retractor(s) used in the subject vehicle's seatbelt systems by location within the vehicle. This request includes, but is not limited to, whether the retractor was dual sensitive; the performance standards for locking of the retractor; whether the retractor uses a web grabber; and whether the retractor has a pretensioner.

14.    Identify and describe in detail any testing that was conducted on the seat belt system retractors', as well as substantially similar retractors, to evaluate the performance of the retractor in a rollover accident, including the incidence of spool-out. As part of your answer, please identify what testing was conducted, the results of the testing, the dates of any such testing, and the name, addresses and phone number of the entity or department(s) responsible for such testing.

15.    Identify and describe in detail whether any of the subject vehicle's seat belt system retractors or substantially similar retractors were tested to evaluate their performance in rollovers, including the amount of pay out of webbing. As part of your answer, please include what testing was conducted, including the dates of such testing, the results of the testing, and the name, address and phone number of the entity or department(s) responsible for such testing.

16.    State each and every step taken by this Defendant to prevent the subject vehicle's seat belt systems' retractors from spooling out in the event of a rollover accident.

17.    State each and every step taken by this Defendant to prevent the subject vehicle's seat belt systems' retractors from releasing webbing in a rollover.

18.    State each and every step taken by this Defendant to prevent the seat belt retractors of the subject vehicle's seat belt systems from permitting intermittent release of webbing in a vehicle accident, including a rollover accident.

19.    Please describe each and every change to the design of each retractor/retractor assembly contained within the subject 2002 Jeep Liberty from the date it was first marketed by this Defendant to the present date, and the reason for each and every change.

20.    Please describe in detail all efforts undertaken by TRW to monitor the performance of its seat belt systems in the field to ensure they performed in a reasonably safe manner during rollover accidents.

21.    Identify all person(s) known, believed or suspected by this Defendant or its agents to possess knowledge of this matter, including the subject vehicle, any of its component parts, the persons involved in the accident, any witnesses to the accident, or any efforts undertaken to inspect, test and/or photograph the subject 2002 Jeep Liberty.

22.    Identify and describe in detail whether any testing was conducted on the subject vehicle's seat belt systems' retractors or substantially similar retractors to evaluate the amount of intermittent release of webbing. As part of your response, please identify what testing was conducted, the results of the testing, the dates of such testing, and the name, address and phone number of the entity or department(s) responsible for such testing.

23.    State whether you believe Sue Ann Graham received her fatal injuries inside or outside of the subject 2002 Jeep Liberty vehicle.

24.    Identify the TRW seatbelt systems using the same or substantially similar TRW retractors which were tested (whether crash, sled or rollover tested) by or for TRW and/or Chrysler.

25.    Identify and describe whether this Defendant ever recommended to Chrysler that a pretensioner application that remains locked with belt tension regardless of motion be incorporated into the seat belt systems of the Jeep Liberty.

26.    Identify and describe whether this Defendant ever notified Chrysler that conventional retractors can experience intermittent release of webbing during rollover accidents?

27.    Identify each and every analysis (whether it be a test, study, computer simulation, or any other analysis) undertaken on the 2002 Jeep Liberty's seat belt systems to evaluate the seat belt systems' ability to prevent occupant ejection (whether partial or full) in a rollover accident.

28.    Identify and describe any incidents, including but not limited to any accidents, claims or lawsuits, involving the ejection or partial ejection of an occupant in a vehicle equipped with the same or substantially similar seat belt systems as in the subject vehicle. As part of your response, please provide the date of the accident / incident; the name and address of the person injured as well as their counsel, if applicable; the make, model and year of the vehicle involved in the accident / incident; and the caption and case number of the lawsuit, if one was commenced.

29.    Identify and describe all vehicles that share the same seatbelt and/or seat belt buckle system(s) that are utilized in the subject vehicle. As part of your response, please identify the manufacturer, make and model of each vehicle utilizing the above-referenced seat belt and/or seat belt buckle system(s).

30.    Identify and describe all information provided to any other Defendant (including Chrysler and/or FCA) concerning the seatbelt systems in the 2002 Jeep Liberty.

31.    If you contend that the accident alleged in the Complaint and/or the Plaintiffs' alleged injuries and damages were caused, in whole or in part, by the subject 2002 Jeep Liberty being improperly repaired, maintained, altered, modified or serviced, please describe fully. As part of your answer, please provide the nature and date(s) of the alleged improper repair, maintenance, alteration, modification or service.

32.    If you contend that the action, activity or failure to act of any person or entity other than the Plaintiffs contributed to cause the accident alleged in the Complaint or Plaintiffs' alleged injuries and damages, please describe in detail. As part of your response, please provide the name and address of such person or entity; the specific nature of such action, activity or failure to act; how such actions, activity or failure to act contributed to cause the incident alleged in the Plaintiffs' alleged injuries and damages; the identity of each person with knowledge that some other person or defendant contributed to the incident or Plaintiffs' injuries or damages.

33.    Identify all persons you expect to call as an expert witness at the trial of this action. As part of your answer, please provide the name of the expert(s) you expect to call and the subject matter that you expect your expert(s) to testify to.

34.    Identify all expert opinions that your experts will offer at the trial of this action. As part of your answer, please provide the substance of the facts and opinions to which he or she is expected to testify, a summary of the grounds of their opinions, all supporting literature they intend to rely upon to form their opinions, and any and all reports and draft reports that they intend to offer in this matter.

## **REQUEST FOR PRODUCTION**

1.    Produce all documents (tests, studies, etc.) referenced in your responses to the Plaintiffs' First Set of Interrogatories.

2.      Produce any and all product literature distributed, printed or circulated by this Defendant, and which contain photographs, diagrams, descriptions or analysis of the seat belt systems in the subject 2002 Jeep Liberty. This Request includes all brochures, advertisements, white papers, marketing materials and information packets.

3.      Produce any and all documents or writings prepared by this Defendant for or accompanying the seat belt systems contained in the subject 2002 Jeep Liberty which you contend contained warnings of any dangers which users (including engineers, manufacturers, consumers, etc.) of the product may be exposed to and/or containing any instructions for use.

4.      Produce any and all photographs or videotapes of the subject Jeep Liberty made the basis of this action, including any photographs or videotapes of the accident scene or the Plaintiffs.

5.      Produce any and all sales documents including invoices, purchase orders, bills of lading, and shipping invoices relating to the subject Jeep Liberty's seat belt systems made the basis of this lawsuit.

6.      Produce a complete and legible copy of any and all complaints received by you from any source wherein it was alleged that an injury or death occurred as a result of a defective and/or failed seat belt restraint system in any of the seat belt restraint systems manufactured, designed or assembled by this Defendant, including those utilized in the 2002 Jeep Liberty.

7.      Produce any and all patents related to the seat belt design(s) on the 2002 Jeep Liberty or substantially similar seat belt design(s), held by you or any of your employees, including copies of any patent applications related to the passenger restraint systems.

8.    Produce any and all brochures, sales lists or other documents which would reflect optional equipment or any optional design configuration for seat belt systems available for the 2002 Jeep Liberty.

9.    Produce any and all expert reports which have been prepared in connection with this lawsuit or the incident giving rise to this lawsuit, if the expert is prepared to, or may, testify in this case.  This request should also encompass any report prepared by any other person which has been reviewed by any expert intended to testify at the trial of this case.

10.    Produce copies of any and all statements previously made by the Plaintiffs concerning the subject matter of this lawsuit, including any written statements signed or otherwise adopted or approved by the Plaintiffs and any stenographic, mechanical, electrical or other type of recording or any transcription thereof made by the Plaintiffs hereto and recorded.

11.    Produce copies of any and all documents, reports or other written records pertaining to any investigation of this incident, which were generated by persons other than this defendant.

12.    Produce sketches, blueprints, schematics and/or drawings of the design of the passenger restraint system (including the seat belt system(s) for all seats) for the 2002 Jeep Liberty and for the Jeep Liberty models preceding and subsequent to the 2002 Jeep Liberty.

13.    Produce any and all documents, photographs or other physical evidence which will be utilized by you and offered as evidence at the trial of this case.

14.    Produce any and all documents related to any investigation or hearings conducted by any governmental entity related to the seat belt systems contained in the 2002 Jeep Liberty or substantially similar seat belt systems manufactured, designed and/or assembled by you.

15.    Produce a copy of any and all recalls issued for the seat belt systems contained in the 2002 Jeep Liberty or substantially similar seat belt systems manufactured, designed and/or assembled by you.

16.    Produce a copy of the policies and/or procedures for documenting customer comments/complaints regarding this Defendant's products.

17.    Produce a copy of the policies and/or procedures for document retention for this Defendant.

18.    Produce a complete and legible copy of any and all failure modes and effects analysis for the front seats and passenger restraint systems, including their component parts, on the 2002 Jeep Liberty and for the five years preceding and subsequent to the 2002 model.

19.    Produce a complete and legible copy of any and all parts lists which depict parts for the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

20.    Produce a complete and legible copy of any and all meeting minutes, presentations, documentation, visual aids, or any other documents or things which discuss or depict the as-manufactured design of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty or any of this Defendant's substantially similar seat belt system models manufactured, designed and/or assembled by you.

21.    Produce copies of all standards, tests, reports, published papers, unpublished papers or treatises or other exhibits which this Defendant expects to offer into evidence at the trial of this case.

22.    Produce any and all documents, memos, and/or tests evidencing or relating to studies and analyses conducted by or on behalf of this Defendant related to occupant protection from passenger restraint failures (including seat belt system(s) failures).

23.    Please produce a complete and legible copy of any and all engineering drawings, blueprints, photographs, video, computer files, notes, memorandum, and/or studies for the 2002 Jeep Liberty that would show:

      a.    any passenger restraint system design change or engineering change;

      b.    any proposed front seat or passenger restraint system design or engineering change.

24.    Please produce a complete and legible list or roster of all individuals, including name and address, who were involved in the design, manufacture or assembly of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

25.    Produce any and all hazard analyses and/or any and all analyses performed by you to assess potential hazards to passengers riding in or utilizing the seat belt systems utilized in the 2002 Jeep Liberty or substantially similar models manufactured, designed or assembled by you.

26.    Produce any and all documents evidencing your efforts to either eliminate or safeguard against potential hazards to passengers riding in or utilizing the seat belt systems utilized in the 2002 Jeep Liberty or substantially similar models manufactured, designed or assembled by you.

27.    Produce documents that itemize this Defendant's cost for each individual component of the 2002 Jeep Liberty's passenger restraint system (including the seat belt system(s)), as well as any alternative passenger restraint system (including seat belt system) available at the time the 2002 Jeep Liberty's restraint systems were utilized.

28.    Produce all correspondences between you and any third party or Defendant in this litigation concerning the selection of the restraint systems (including the seat belt system(s)) contained in the 2002 Jeep Liberty.

29.    Please produce all documents which identify every address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.  This is often referred to as a memory map.

30.    Please produce all documents necessary to read and interpret the data in every address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.

31.    Please produce all documents necessary to determine the actual conditions which determine each item of data will be written to the each address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.  For example: The actual measurement which would cause a deployment loop fault code to be set.

32.    Please produce all documents which identify every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

33.    Please produce all documents which identify the each data address in every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

34.    Please produce all documents which are necessary to read and interpret each data address in every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board

Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

35.    Please produce the Shop Manual for the following systems:

a.   The Crash Data Recorder;

b.   On board diagnostic reading devices;

c.   ABS systems;

d.   Transmission systems;

e.   Occupant Detection Systems;

f.   Back Up Sensors;

g.   Crash Avoidance Systems;

h.   Power Control Modules;

i.   Occupant Restraint Controller; and

j.   Optional side impact inflatable curtains.

36.    Please produce the Operators Manual for the following systems:

a.   The Crash Data Recorder retrieval instrument;

b.   The on board diagnostic reading devices; and

c.   Occupant Restraint Controller.

37.    Please produce the specifications for the following systems:

a.   The Crash Sensor system and each of its subcomponents (e.g., accelerometer, arming sensors, transistors, reserve energy capacitors);

b.   The Crash Data Recorder and each of its subcomponents;

c.   Any data communication bus or network; and

      d.  Occupant restraint controller.

38.    All documents which you sent to or received from Chrysler which discuss, refer, relate or pertain to the safety, performance, crashworthiness, virtues, qualities, characteristics, capabilities, installment or sale of side impact airbag inflatable curtains offered as optional equipment in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

39.    All documents which you sent to or received from Chrysler which discuss, refer, relate or pertain to the safety, performance, crashworthiness, virtues, qualities, characteristics, capabilities, installment or sale of the seat belt systems in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

40.    All documents generated by any person, committee, task force or team, including minutes of any meeting where discussions were held, which discuss, reflect, pertain or relate to the design or development of side impact airbag inflatable curtains in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

/s/J. Parker Miller
J. Parker Miller (MIL138)
Attorney for Plaintiffs

OF COUNSEL:

J. Parker Miller
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL 36103-4160
(334) 269-2343

**TO BE SERVED WITH THE COMPLAINT**

ELECTRONICALLY FILED
10/17/2017 5:38 PM
01-CV-2017-904376.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT FOR
## JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| **FRANKIE OVERTON, Administrator** * <br> **of the Estate of SUE ANN GRAHAM,** * <br> **Deceased; and SCOTT GRAHAM, as legal** * <br> **guardian of JORDON GRAHAM, a minor** * <br> **child,** * <br> * <br>     **Plaintiff,** * <br> * <br> **vs.** * <br> * <br> **CHRYSLER GROUP LLC.;** * <br> **FIAT CHRYSLER AUTOMOBILES** * <br> **US, LLC (FCA US, LLC); RODERICUS** * <br> **OBYRAN CARRINGTON; TRW** * <br> **AUTOMOTIVE HOLDINGS CORP.,** * <br> **f/k/a TRW, INC.; TRW AUTOMOTIVE,** * <br> **INC.; TRW AUTOMOTIVE U.S. LLC;** * <br> **TRW VEHICLE SAFETY SYSTEMS,** * <br> **INC.; TRW AUTOMOTIVE US, LLC;** * <br> **TRW SAFETY SYSTEMS, INC.; ZF** * <br> **FRIEDRICHSHAFEN AG; ZF TRW** * <br> **AUTOMOTIVE HOLDINGS CORP.;** * <br> **and FICTITIOUS DEFENDANTS "1"** * <br> **through "13"** * | **CASE NO:** <br> <br> **JURY DEMAND REQUESTED** |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION TO DEFENDANT TRW AUTOMOTIVE, INC.

Plaintiff in the above-styled action propounds these discovery requests upon Defendant TRW Automotive Inc., and requests that they be answered fully in writing and under oath within the time provided by the *Alabama Rules of Civil Procedure*. Each request is addressed to the knowledge and information of Defendant's attorneys, investigators, agents, employees, and other representatives. When a question is directed to Defendant, the question is also directed to the aforementioned persons.

These requests shall be deemed continuing so as to require supplemental answers if the persons or entities to whom these requests are addressed obtain further information between the time the initial answers are served and the time of trial.

## **<u>INTERROGATORIES</u>**

1.      Identify the person(s) answering and/or assisting in answering these interrogatories. As part of your response, please include the name, address, title and duties of the person(s) identified.

2.      If this Defendant's name is not correctly stated in the Complaint on file in this case, state the correct way this Defendant should have been designated as a party defendant in a lawsuit at the time of the occurrence made the basis of the lawsuit and at the time these interrogatories were answered.

3.      State the general corporate history of this Defendant from the date of incorporation to the present.  This should include, but not be limited to, the state of incorporation, date of incorporation and the principal place of business.

4.      Identify each and every insurer at issue in this case. This request includes the name, address and policy limits of each insurer or potential insurer of any type whatsoever that may be liable to satisfy part or all of a judgment or settlement which may entered in this action, or to indemnify or reimburse for payments made to satisfy any judgment or settlement in this case.

5.      Identify and "fully describe" the seatbelt systems contained on the 2002 Jeep Liberty. This request includes, but is not limited to, identification of the make and model number of each seatbelt system by location within the 2002 Jeep Liberty; identification of the component parts of each seat belt system by location within the 2002 Jeep Liberty; the total cost of each seatbelt system, as well as a breakdown of the cost by component part of each seatbelt system; the

specifications of each seatbelt system and their component parts; the purpose of each seatbelt system; the name, acronym and part number of the various parts which make up the seatbelt systems in the subject vehicle; the date(s) the seat belt systems were designed and manufactured; the locations where the seat belt systems were manufactured; and the name, address and phone number of each entity in the distribution chain.

6.    Identify and describe in detail this Defendant's responsibilities for the seatbelt systems in the 2002 Jeep Liberty?

7.    Identify and describe in detail the responsibilities of all other Defendants concerning the seatbelt systems in the 2002 Jeep Liberty?

8.    Identify and describe in detail the history of your involvement as related to Chrysler vehicles, including but not limited to, the Jeep Liberty line.

9.    Identify all persons responsible for the design of the seatbelt systems in the subject vehicle. As part of your response, please include the name and address of the person(s) responsible, including the chief engineer(s) involved, whether those persons are still employed by you, and if not, when they ceased employment with this Defendant.

10.    Identify all release engineers for any and all of the seatbelt systems used in the 2002 Jeep Liberty.

11.    To the extent any of the seatbelt systems of the type utilized in the subject 2002 Jeep Liberty have ever been the subject of a defect investigation or engineering analysis by NHTSA, please describe in detail those investigations and analysis. In responding to this request, please provide the date the investigation was initiated, all reasons for initiating the investigation, and the results of the investigation.

12.    Identify and describe fully any testing conducted on the seatbelt systems in the subject 2002 Jeep Liberty, including substantially similar seatbelt system models, to evaluate their performance in vehicle accidents, including rollover accidents.  As part of your response, please provide what testing was conducted, the dates of any such testing, the results of the testing, and the name, address and phone number of the person(s) and entity (if this Defendant, the appropriate department) responsible for such testing.

13.    Identify and describe the type of seat belt retractor(s) used in the subject vehicle's seatbelt systems by location within the vehicle. This request includes, but is not limited to, whether the retractor was dual sensitive; the performance standards for locking of the retractor; whether the retractor uses a web grabber; and whether the retractor has a pretensioner.

14.    Identify and describe in detail any testing that was conducted on the seat belt system retractors', as well as substantially similar retractors, to evaluate the performance of the retractor in a rollover accident, including the incidence of spool-out. As part of your answer, please identify what testing was conducted, the results of the testing, the dates of any such testing, and the name, addresses and phone number of the entity or department(s) responsible for such testing.

15.    Identify and describe in detail whether any of the subject vehicle's seat belt system retractors or substantially similar retractors were tested to evaluate their performance in rollovers, including the amount of pay out of webbing. As part of your answer, please include what testing was conducted, including the dates of such testing, the results of the testing, and the name, address and phone number of the entity or department(s) responsible for such testing.

16.    State each and every step taken by this Defendant to prevent the subject vehicle's seat belt systems' retractors from spooling out in the event of a rollover accident.

17.     State each and every step taken by this Defendant to prevent the subject vehicle's seat belt systems' retractors from releasing webbing in a rollover.

18.     State each and every step taken by this Defendant to prevent the seat belt retractors of the subject vehicle's seat belt systems from permitting intermittent release of webbing in a vehicle accident, including a rollover accident.

19.     Please describe each and every change to the design of each retractor/retractor assembly contained within the subject 2002 Jeep Liberty from the date it was first marketed by this Defendant to the present date, and the reason for each and every change.

20.     Please describe in detail all efforts undertaken by TRW to monitor the performance of its seat belt systems in the field to ensure they performed in a reasonably safe manner during rollover accidents.

21.     Identify all person(s) known, believed or suspected by this Defendant or its agents to possess knowledge of this matter, including the subject vehicle, any of its component parts, the persons involved in the accident, any witnesses to the accident, or any efforts undertaken to inspect, test and/or photograph the subject 2002 Jeep Liberty.

22.     Identify and describe in detail whether any testing was conducted on the subject vehicle's seat belt systems' retractors or substantially similar retractors to evaluate the amount of intermittent release of webbing. As part of your response, please identify what testing was conducted, the results of the testing, the dates of such testing, and the name, address and phone number of the entity or department(s) responsible for such testing.

23.     State whether you believe Sue Ann Graham received her fatal injuries inside or outside of the subject 2002 Jeep Liberty vehicle.

24.     Identify the TRW seatbelt systems using the same or substantially similar TRW retractors which were tested (whether crash, sled or rollover tested) by or for TRW and/or Chrysler.

25.     Identify and describe whether this Defendant ever recommended to Chrysler that a pretensioner application that remains locked with belt tension regardless of motion be incorporated into the seat belt systems of the Jeep Liberty.

26.     Identify and describe whether this Defendant ever notified Chrysler that conventional retractors can experience intermittent release of webbing during rollover accidents?

27.     Identify each and every analysis (whether it be a test, study, computer simulation, or any other analysis) undertaken on the 2002 Jeep Liberty's seat belt systems to evaluate the seat belt systems' ability to prevent occupant ejection (whether partial or full) in a rollover accident.

28.     Identify and describe any incidents, including but not limited to any accidents, claims or lawsuits, involving the ejection or partial ejection of an occupant in a vehicle equipped with the same or substantially similar seat belt systems as in the subject vehicle. As part of your response, please provide the date of the accident / incident; the name and address of the person injured as well as their counsel, if applicable; the make, model and year of the vehicle involved in the accident / incident; and the caption and case number of the lawsuit, if one was commenced.

29.     Identify and describe all vehicles that share the same seatbelt and/or seat belt buckle system(s) that are utilized in the subject vehicle. As part of your response, please identify the manufacturer, make and model of each vehicle utilizing the above-referenced seat belt and/or seat belt buckle system(s).

30.     Identify and describe all information provided to any other Defendant (including Chrysler and/or FCA) concerning the seatbelt systems in the 2002 Jeep Liberty.

31.     If you contend that the accident alleged in the Complaint and/or the Plaintiffs'
alleged injuries and damages were caused, in whole or in part, by the subject 2002 Jeep Liberty
being improperly repaired, maintained, altered, modified or serviced, please describe fully. As part
of your answer, please provide the nature and date(s) of the alleged improper repair, maintenance,
alteration, modification or service.

32.     If you contend that the action, activity or failure to act of any person or entity other
than the Plaintiffs contributed to cause the accident alleged in the Complaint or Plaintiffs' alleged
injuries and damages, please describe in detail. As part of your response, please provide the name
and address of such person or entity; the specific nature of such action, activity or failure to act;
how such actions, activity or failure to act contributed to cause the incident alleged in the Plaintiffs'
alleged injuries and damages; the identity of each person with knowledge that some other person
or defendant contributed to the incident or Plaintiffs' injuries or damages.

33.     Identify all persons you expect to call as an expert witness at the trial of this action.
As part of your answer, please provide the name of the expert(s) you expect to call and the subject
matter that you expect your expert(s) to testify to.

34.     Identify all expert opinions that your experts will offer at the trial of this action. As
part of your answer, please provide the substance of the facts and opinions to which he or she is
expected to testify, a summary of the grounds of their opinions, all supporting literature they intend
to rely upon to form their opinions, and any and all reports and draft reports that they intend to
offer in this matter.

## **REQUEST FOR PRODUCTION**

1.     Produce all documents (tests, studies, etc.) referenced in your responses to the
Plaintiffs' First Set of Interrogatories.

2.      Produce any and all product literature distributed, printed or circulated by this Defendant, and which contain photographs, diagrams, descriptions or analysis of the seat belt systems in the subject 2002 Jeep Liberty. This Request includes all brochures, advertisements, white papers, marketing materials and information packets.

3.      Produce any and all documents or writings prepared by this Defendant for or accompanying the seat belt systems contained in the subject 2002 Jeep Liberty which you contend contained warnings of any dangers which users (including engineers, manufacturers, consumers, etc.) of the product may be exposed to and/or containing any instructions for use.

4.      Produce any and all photographs or videotapes of the subject Jeep Liberty made the basis of this action, including any photographs or videotapes of the accident scene or the Plaintiffs.

5.      Produce any and all sales documents including invoices, purchase orders, bills of lading, and shipping invoices relating to the subject Jeep Liberty's seat belt systems made the basis of this lawsuit.

6.      Produce a complete and legible copy of any and all complaints received by you from any source wherein it was alleged that an injury or death occurred as a result of a defective and/or failed seat belt restraint system in any of the seat belt restraint systems manufactured, designed or assembled by this Defendant, including those utilized in the 2002 Jeep Liberty.

7.      Produce any and all patents related to the seat belt design(s) on the 2002 Jeep Liberty or substantially similar seat belt design(s), held by you or any of your employees, including copies of any patent applications related to the passenger restraint systems.

8.    Produce any and all brochures, sales lists or other documents which would reflect optional equipment or any optional design configuration for seat belt systems available for the 2002 Jeep Liberty.

9.    Produce any and all expert reports which have been prepared in connection with this lawsuit or the incident giving rise to this lawsuit, if the expert is prepared to, or may, testify in this case.  This request should also encompass any report prepared by any other person which has been reviewed by any expert intended to testify at the trial of this case.

10.    Produce copies of any and all statements previously made by the Plaintiffs concerning the subject matter of this lawsuit, including any written statements signed or otherwise adopted or approved by the Plaintiffs and any stenographic, mechanical, electrical or other type of recording or any transcription thereof made by the Plaintiffs hereto and recorded.

11.    Produce copies of any and all documents, reports or other written records pertaining to any investigation of this incident, which were generated by persons other than this defendant.

12.    Produce sketches, blueprints, schematics and/or drawings of the design of the passenger restraint system (including the seat belt system(s) for all seats) for the 2002 Jeep Liberty and for the Jeep Liberty models preceding and subsequent to the 2002 Jeep Liberty.

13.    Produce any and all documents, photographs or other physical evidence which will be utilized by you and offered as evidence at the trial of this case.

14.    Produce any and all documents related to any investigation or hearings conducted by any governmental entity related to the seat belt systems contained in the 2002 Jeep Liberty or substantially similar seat belt systems manufactured, designed and/or assembled by you.

15.    Produce a copy of any and all recalls issued for the seat belt systems contained in the 2002 Jeep Liberty or substantially similar seat belt systems manufactured, designed and/or assembled by you.

16.    Produce a copy of the policies and/or procedures for documenting customer comments/complaints regarding this Defendant's products.

17.    Produce a copy of the policies and/or procedures for document retention for this Defendant.

18.    Produce a complete and legible copy of any and all failure modes and effects analysis for the front seats and passenger restraint systems, including their component parts, on the 2002 Jeep Liberty and for the five years preceding and subsequent to the 2002 model.

19.    Produce a complete and legible copy of any and all parts lists which depict parts for the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

20.    Produce a complete and legible copy of any and all meeting minutes, presentations, documentation, visual aids, or any other documents or things which discuss or depict the as-manufactured design of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty or any of this Defendant's substantially similar seat belt system models manufactured, designed and/or assembled by you.

21.    Produce copies of all standards, tests, reports, published papers, unpublished papers or treatises or other exhibits which this Defendant expects to offer into evidence at the trial of this case.

22.    Produce any and all documents, memos, and/or tests evidencing or relating to studies and analyses conducted by or on behalf of this Defendant related to occupant protection from passenger restraint failures (including seat belt system(s) failures).

23.    Please produce a complete and legible copy of any and all engineering drawings, blueprints, photographs, video, computer files, notes, memorandum, and/or studies for the 2002 Jeep Liberty that would show:

    a.    any passenger restraint system design change or engineering change;

    b.    any proposed front seat or passenger restraint system design or engineering change.

24.    Please produce a complete and legible list or roster of all individuals, including name and address, who were involved in the design, manufacture or assembly of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

25.    Produce any and all hazard analyses and/or any and all analyses performed by you to assess potential hazards to passengers riding in or utilizing the seat belt systems utilized in the 2002 Jeep Liberty or substantially similar models manufactured, designed or assembled by you.

26.    Produce any and all documents evidencing your efforts to either eliminate or safeguard against potential hazards to passengers riding in or utilizing the seat belt systems utilized in the 2002 Jeep Liberty or substantially similar models manufactured, designed or assembled by you.

27.    Produce documents that itemize this Defendant's cost for each individual component of the 2002 Jeep Liberty's passenger restraint system (including the seat belt system(s)), as well as any alternative passenger restraint system (including seat belt system) available at the time the 2002 Jeep Liberty's restraint systems were utilized.

28.    Produce all correspondences between you and any third party or Defendant in this litigation concerning the selection of the restraint systems (including the seat belt system(s)) contained in the 2002 Jeep Liberty.

29.     Please produce all documents which identify every address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.  This is often referred to as a memory map.

30.     Please produce all documents necessary to read and interpret the data in every address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.

31.     Please produce all documents necessary to determine the actual conditions which determine each item of data will be written to the each address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.  For example: The actual measurement which would cause a deployment loop fault code to be set.

32.     Please produce all documents which identify every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

33.     Please produce all documents which identify the each data address in every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

34.     Please produce all documents which are necessary to read and interpret each data address in every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board

Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

35.    Please produce the Shop Manual for the following systems:

a.  The Crash Data Recorder;

b.  On board diagnostic reading devices;

c.  ABS systems;

d.  Transmission systems;

e.  Occupant Detection Systems;

f.  Back Up Sensors;

g.  Crash Avoidance Systems;

h.  Power Control Modules;

i.  Occupant Restraint Controller; and

j.  Optional side impact inflatable curtains.

36.    Please produce the Operators Manual for the following systems:

a.  The Crash Data Recorder retrieval instrument;

b.  The on board diagnostic reading devices; and

c.  Occupant Restraint Controller.

37.    Please produce the specifications for the following systems:

a.  The Crash Sensor system and each of its subcomponents (e.g., accelerometer, arming sensors, transistors, reserve energy capacitors);

b.  The Crash Data Recorder and each of its subcomponents;

c.  Any data communication bus or network; and

DOCUMENT 7

d.   Occupant restraint controller.

38.    All documents which you sent to or received from Chrysler which discuss, refer, relate or pertain to the safety, performance, crashworthiness, virtues, qualities, characteristics, capabilities, installment or sale of side impact airbag inflatable curtains offered as optional equipment in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

39.    All documents which you sent to or received from Chrysler which discuss, refer, relate or pertain to the safety, performance, crashworthiness, virtues, qualities, characteristics, capabilities, installment or sale of the seat belt systems in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

40.    All documents generated by any person, committee, task force or team, including minutes of any meeting where discussions were held, which discuss, reflect, pertain or relate to the design or development of side impact airbag inflatable curtains in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

/s/J. Parker Miller
J. Parker Miller (MIL138)
Attorney for Plaintiffs

OF COUNSEL:

J. Parker Miller
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL 36103-4160
(334) 269-2343

**TO BE SERVED WITH THE COMPLAINT**

ELECTRONICALLY FILED
10/17/2017 5:38 PM
01-CV-2017-904376.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT FOR
## JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| **FRANKIE OVERTON, Administrator** * | |
| **of the Estate of SUE ANN GRAHAM,** * | |
| **Deceased; and SCOTT GRAHAM, as legal** * | |
| **guardian of JORDON GRAHAM, a minor** * | |
| **child,** * | **CASE NO:** |
| * | |
| **Plaintiff,** * | **JURY DEMAND REQUESTED** |
| * | |
| **vs.** * | |
| * | |
| **CHRYSLER GROUP LLC.;** * | |
| **FIAT CHRYSLER AUTOMOBILES** * | |
| **US, LLC (FCA US, LLC); RODERICUS** * | |
| **OBYRAN CARRINGTON; TRW** * | |
| **AUTOMOTIVE HOLDINGS CORP.,** * | |
| **f/k/a TRW, INC.; TRW AUTOMOTIVE,** * | |
| **INC.; TRW AUTOMOTIVE U.S. LLC;** * | |
| **TRW VEHICLE SAFETY SYSTEMS,** * | |
| **INC.; TRW AUTOMOTIVE US, LLC;** * | |
| **TRW SAFETY SYSTEMS, INC.; ZF** * | |
| **FRIEDRICHSHAFEN AG; ZF TRW** * | |
| **AUTOMOTIVE HOLDINGS CORP.;** * | |
| **and FICTITIOUS DEFENDANTS "1"** * | |
| **through "13"** * | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION TO DEFENDANT TRW AUTOMOTIVE U.S. LLC.

Plaintiff in the above-styled action propounds these discovery requests upon Defendant

TRW Automotive U.S. LLC., and requests that they be answered fully in writing and under oath

within the time provided by the *Alabama Rules of Civil Procedure*.  Each request is addressed to

the knowledge and information of Defendant's attorneys, investigators, agents, employees, and

other representatives.  When a question is directed to Defendant, the question is also directed to

the aforementioned persons.

These requests shall be deemed continuing so as to require supplemental answers if the persons or entities to whom these requests are addressed obtain further information between the time the initial answers are served and the time of trial.

## **<u>INTERROGATORIES</u>**

1.      Identify the person(s) answering and/or assisting in answering these interrogatories. As part of your response, please include the name, address, title and duties of the person(s) identified.

2.      If this Defendant's name is not correctly stated in the Complaint on file in this case, state the correct way this Defendant should have been designated as a party defendant in a lawsuit at the time of the occurrence made the basis of the lawsuit and at the time these interrogatories were answered.

3.      State the general corporate history of this Defendant from the date of incorporation to the present.  This should include, but not be limited to, the state of incorporation, date of incorporation and the principal place of business.

4.      Identify each and every insurer at issue in this case. This request includes the name, address and policy limits of each insurer or potential insurer of any type whatsoever that may be liable to satisfy part or all of a judgment or settlement which may entered in this action, or to indemnify or reimburse for payments made to satisfy any judgment or settlement in this case.

5.      Identify and "fully describe" the seatbelt systems contained on the 2002 Jeep Liberty. This request includes, but is not limited to, identification of the make and model number of each seatbelt system by location within the 2002 Jeep Liberty; identification of the component parts of each seat belt system by location within the 2002 Jeep Liberty; the total cost of each seatbelt system, as well as a breakdown of the cost by component part of each seatbelt system; the

specifications of each seatbelt system and their component parts; the purpose of each seatbelt system; the name, acronym and part number of the various parts which make up the seatbelt systems in the subject vehicle; the date(s) the seat belt systems were designed and manufactured; the locations where the seat belt systems were manufactured; and the name, address and phone number of each entity in the distribution chain.

6.      Identify and describe in detail this Defendant's responsibilities for the seatbelt systems in the 2002 Jeep Liberty?

7.      Identify and describe in detail the responsibilities of all other Defendants concerning the seatbelt systems in the 2002 Jeep Liberty?

8.      Identify and describe in detail the history of your involvement as related to Chrysler vehicles, including but not limited to, the Jeep Liberty line.

9.      Identify all persons responsible for the design of the seatbelt systems in the subject vehicle. As part of your response, please include the name and address of the person(s) responsible, including the chief engineer(s) involved, whether those persons are still employed by you, and if not, when they ceased employment with this Defendant.

10.     Identify all release engineers for any and all of the seatbelt systems used in the 2002 Jeep Liberty.

11.     To the extent any of the seatbelt systems of the type utilized in the subject 2002 Jeep Liberty have ever been the subject of a defect investigation or engineering analysis by NHTSA, please describe in detail those investigations and analysis. In responding to this request, please provide the date the investigation was initiated, all reasons for initiating the investigation, and the results of the investigation.

12.    Identify and describe fully any testing conducted on the seatbelt systems in the subject 2002 Jeep Liberty, including substantially similar seatbelt system models, to evaluate their performance in vehicle accidents, including rollover accidents.  As part of your response, please provide what testing was conducted, the dates of any such testing, the results of the testing, and the name, address and phone number of the person(s) and entity (if this Defendant, the appropriate department) responsible for such testing.

13.    Identify and describe the type of seat belt retractor(s) used in the subject vehicle's seatbelt systems by location within the vehicle. This request includes, but is not limited to, whether the retractor was dual sensitive; the performance standards for locking of the retractor; whether the retractor uses a web grabber; and whether the retractor has a pretensioner.

14.    Identify and describe in detail any testing that was conducted on the seat belt system retractors', as well as substantially similar retractors, to evaluate the performance of the retractor in a rollover accident, including the incidence of spool-out. As part of your answer, please identify what testing was conducted, the results of the testing, the dates of any such testing, and the name, addresses and phone number of the entity or department(s) responsible for such testing.

15.    Identify and describe in detail whether any of the subject vehicle's seat belt system retractors or substantially similar retractors were tested to evaluate their performance in rollovers, including the amount of pay out of webbing. As part of your answer, please include what testing was conducted, including the dates of such testing, the results of the testing, and the name, address and phone number of the entity or department(s) responsible for such testing.

16.    State each and every step taken by this Defendant to prevent the subject vehicle's seat belt systems' retractors from spooling out in the event of a rollover accident.

17.    State each and every step taken by this Defendant to prevent the subject vehicle's seat belt systems' retractors from releasing webbing in a rollover.

18.    State each and every step taken by this Defendant to prevent the seat belt retractors of the subject vehicle's seat belt systems from permitting intermittent release of webbing in a vehicle accident, including a rollover accident.

19.    Please describe each and every change to the design of each retractor/retractor assembly contained within the subject 2002 Jeep Liberty from the date it was first marketed by this Defendant to the present date, and the reason for each and every change.

20.    Please describe in detail all efforts undertaken by TRW to monitor the performance of its seat belt systems in the field to ensure they performed in a reasonably safe manner during rollover accidents.

21.    Identify all person(s) known, believed or suspected by this Defendant or its agents to possess knowledge of this matter, including the subject vehicle, any of its component parts, the persons involved in the accident, any witnesses to the accident, or any efforts undertaken to inspect, test and/or photograph the subject 2002 Jeep Liberty.

22.    Identify and describe in detail whether any testing was conducted on the subject vehicle's seat belt systems' retractors or substantially similar retractors to evaluate the amount of intermittent release of webbing. As part of your response, please identify what testing was conducted, the results of the testing, the dates of such testing, and the name, address and phone number of the entity or department(s) responsible for such testing.

23.    State whether you believe Sue Ann Graham received her fatal injuries inside or outside of the subject 2002 Jeep Liberty vehicle.

24.    Identify the TRW seatbelt systems using the same or substantially similar TRW retractors which were tested (whether crash, sled or rollover tested) by or for TRW and/or Chrysler.

25.    Identify and describe whether this Defendant ever recommended to Chrysler that a pretensioner application that remains locked with belt tension regardless of motion be incorporated into the seat belt systems of the Jeep Liberty.

26.    Identify and describe whether this Defendant ever notified Chrysler that conventional retractors can experience intermittent release of webbing during rollover accidents?

27.    Identify each and every analysis (whether it be a test, study, computer simulation, or any other analysis) undertaken on the 2002 Jeep Liberty's seat belt systems to evaluate the seat belt systems' ability to prevent occupant ejection (whether partial or full) in a rollover accident.

28.    Identify and describe any incidents, including but not limited to any accidents, claims or lawsuits, involving the ejection or partial ejection of an occupant in a vehicle equipped with the same or substantially similar seat belt systems as in the subject vehicle. As part of your response, please provide the date of the accident / incident; the name and address of the person injured as well as their counsel, if applicable; the make, model and year of the vehicle involved in the accident / incident; and the caption and case number of the lawsuit, if one was commenced.

29.    Identify and describe all vehicles that share the same seatbelt and/or seat belt buckle system(s) that are utilized in the subject vehicle. As part of your response, please identify the manufacturer, make and model of each vehicle utilizing the above-referenced seat belt and/or seat belt buckle system(s).

30.    Identify and describe all information provided to any other Defendant (including Chrysler and/or FCA) concerning the seatbelt systems in the 2002 Jeep Liberty.

31.    If you contend that the accident alleged in the Complaint and/or the Plaintiffs' alleged injuries and damages were caused, in whole or in part, by the subject 2002 Jeep Liberty being improperly repaired, maintained, altered, modified or serviced, please describe fully. As part of your answer, please provide the nature and date(s) of the alleged improper repair, maintenance, alteration, modification or service.

32.    If you contend that the action, activity or failure to act of any person or entity other than the Plaintiffs contributed to cause the accident alleged in the Complaint or Plaintiffs' alleged injuries and damages, please describe in detail. As part of your response, please provide the name and address of such person or entity; the specific nature of such action, activity or failure to act; how such actions, activity or failure to act contributed to cause the incident alleged in the Plaintiffs' alleged injuries and damages; the identity of each person with knowledge that some other person or defendant contributed to the incident or Plaintiffs' injuries or damages.

33.    Identify all persons you expect to call as an expert witness at the trial of this action. As part of your answer, please provide the name of the expert(s) you expect to call and the subject matter that you expect your expert(s) to testify to.

34.    Identify all expert opinions that your experts will offer at the trial of this action. As part of your answer, please provide the substance of the facts and opinions to which he or she is expected to testify, a summary of the grounds of their opinions, all supporting literature they intend to rely upon to form their opinions, and any and all reports and draft reports that they intend to offer in this matter.

## REQUEST FOR PRODUCTION

1.    Produce all documents (tests, studies, etc.) referenced in your responses to the Plaintiffs' First Set of Interrogatories.

2.      Produce any and all product literature distributed, printed or circulated by this Defendant, and which contain photographs, diagrams, descriptions or analysis of the seat belt systems in the subject 2002 Jeep Liberty. This Request includes all brochures, advertisements, white papers, marketing materials and information packets.

3.      Produce any and all documents or writings prepared by this Defendant for or accompanying the seat belt systems contained in the subject 2002 Jeep Liberty which you contend contained warnings of any dangers which users (including engineers, manufacturers, consumers, etc.) of the product may be exposed to and/or containing any instructions for use.

4.      Produce any and all photographs or videotapes of the subject Jeep Liberty made the basis of this action, including any photographs or videotapes of the accident scene or the Plaintiffs.

5.      Produce any and all sales documents including invoices, purchase orders, bills of lading, and shipping invoices relating to the subject Jeep Liberty's seat belt systems made the basis of this lawsuit.

6.      Produce a complete and legible copy of any and all complaints received by you from any source wherein it was alleged that an injury or death occurred as a result of a defective and/or failed seat belt restraint system in any of the seat belt restraint systems manufactured, designed or assembled by this Defendant, including those utilized in the 2002 Jeep Liberty.

7.      Produce any and all patents related to the seat belt design(s) on the 2002 Jeep Liberty or substantially similar seat belt design(s), held by you or any of your employees, including copies of any patent applications related to the passenger restraint systems.

8.      Produce any and all brochures, sales lists or other documents which would reflect optional equipment or any optional design configuration for seat belt systems available for the 2002 Jeep Liberty.

9.      Produce any and all expert reports which have been prepared in connection with this lawsuit or the incident giving rise to this lawsuit, if the expert is prepared to, or may, testify in this case.  This request should also encompass any report prepared by any other person which has been reviewed by any expert intended to testify at the trial of this case.

10.      Produce copies of any and all statements previously made by the Plaintiffs concerning the subject matter of this lawsuit, including any written statements signed or otherwise adopted or approved by the Plaintiffs and any stenographic, mechanical, electrical or other type of recording or any transcription thereof made by the Plaintiffs hereto and recorded.

11.      Produce copies of any and all documents, reports or other written records pertaining to any investigation of this incident, which were generated by persons other than this defendant.

12.      Produce sketches, blueprints, schematics and/or drawings of the design of the passenger restraint system (including the seat belt system(s) for all seats) for the 2002 Jeep Liberty and for the Jeep Liberty models preceding and subsequent to the 2002 Jeep Liberty.

13.      Produce any and all documents, photographs or other physical evidence which will be utilized by you and offered as evidence at the trial of this case.

14.      Produce any and all documents related to any investigation or hearings conducted by any governmental entity related to the seat belt systems contained in the 2002 Jeep Liberty or substantially similar seat belt systems manufactured, designed and/or assembled by you.

15.    Produce a copy of any and all recalls issued for the seat belt systems contained in the 2002 Jeep Liberty or substantially similar seat belt systems manufactured, designed and/or assembled by you.

16.    Produce a copy of the policies and/or procedures for documenting customer comments/complaints regarding this Defendant's products.

17.    Produce a copy of the policies and/or procedures for document retention for this Defendant.

18.    Produce a complete and legible copy of any and all failure modes and effects analysis for the front seats and passenger restraint systems, including their component parts, on the 2002 Jeep Liberty and for the five years preceding and subsequent to the 2002 model.

19.    Produce a complete and legible copy of any and all parts lists which depict parts for the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

20.    Produce a complete and legible copy of any and all meeting minutes, presentations, documentation, visual aids, or any other documents or things which discuss or depict the as-manufactured design of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty or any of this Defendant's substantially similar seat belt system models manufactured, designed and/or assembled by you.

21.    Produce copies of all standards, tests, reports, published papers, unpublished papers or treatises or other exhibits which this Defendant expects to offer into evidence at the trial of this case.

22.    Produce any and all documents, memos, and/or tests evidencing or relating to studies and analyses conducted by or on behalf of this Defendant related to occupant protection from passenger restraint failures (including seat belt system(s) failures).

23.    Please produce a complete and legible copy of any and all engineering drawings, blueprints, photographs, video, computer files, notes, memorandum, and/or studies for the 2002 Jeep Liberty that would show:

a.    any passenger restraint system design change or engineering change;

b.    any proposed front seat or passenger restraint system design or engineering change.

24.    Please produce a complete and legible list or roster of all individuals, including name and address, who were involved in the design, manufacture or assembly of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

25.    Produce any and all hazard analyses and/or any and all analyses performed by you to assess potential hazards to passengers riding in or utilizing the seat belt systems utilized in the 2002 Jeep Liberty or substantially similar models manufactured, designed or assembled by you.

26.    Produce any and all documents evidencing your efforts to either eliminate or safeguard against potential hazards to passengers riding in or utilizing the seat belt systems utilized in the 2002 Jeep Liberty or substantially similar models manufactured, designed or assembled by you.

27.    Produce documents that itemize this Defendant's cost for each individual component of the 2002 Jeep Liberty's passenger restraint system (including the seat belt system(s)), as well as any alternative passenger restraint system (including seat belt system) available at the time the 2002 Jeep Liberty's restraint systems were utilized.

28.    Produce all correspondences between you and any third party or Defendant in this litigation concerning the selection of the restraint systems (including the seat belt system(s)) contained in the 2002 Jeep Liberty.

29.    Please produce all documents which identify every address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.  This is often referred to as a memory map.

30.    Please produce all documents necessary to read and interpret the data in every address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.

31.    Please produce all documents necessary to determine the actual conditions which determine each item of data will be written to the each address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.  For example: The actual measurement which would cause a deployment loop fault code to be set.

32.    Please produce all documents which identify every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

33.    Please produce all documents which identify the each data address in every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

34.    Please produce all documents which are necessary to read and interpret each data address in every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board

Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

35.    Please produce the Shop Manual for the following systems:

a.  The Crash Data Recorder;

b.  On board diagnostic reading devices;

c.  ABS systems;

d.  Transmission systems;

e.  Occupant Detection Systems;

f.  Back Up Sensors;

g.  Crash Avoidance Systems;

h.  Power Control Modules;

i.  Occupant Restraint Controller; and

j.  Optional side impact inflatable curtains.

36.    Please produce the Operators Manual for the following systems:

a.  The Crash Data Recorder retrieval instrument;

b.  The on board diagnostic reading devices; and

c.  Occupant Restraint Controller.

37.    Please produce the specifications for the following systems:

a.  The Crash Sensor system and each of its subcomponents (e.g., accelerometer, arming sensors, transistors, reserve energy capacitors);

b.  The Crash Data Recorder and each of its subcomponents;

c.  Any data communication bus or network; and

    d.  Occupant restraint controller.

38.    All documents which you sent to or received from Chrysler which discuss, refer, relate or pertain to the safety, performance, crashworthiness, virtues, qualities, characteristics, capabilities, installment or sale of side impact airbag inflatable curtains offered as optional equipment in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

39.    All documents which you sent to or received from Chrysler which discuss, refer, relate or pertain to the safety, performance, crashworthiness, virtues, qualities, characteristics, capabilities, installment or sale of the seat belt systems in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

40.    All documents generated by any person, committee, task force or team, including minutes of any meeting where discussions were held, which discuss, reflect, pertain or relate to the design or development of side impact airbag inflatable curtains in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

/s/J. Parker Miller
J. Parker Miller (MIL138)
Attorney for Plaintiffs

OF COUNSEL:

J. Parker Miller
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL 36103-4160
(334) 269-2343

**TO BE SERVED WITH THE COMPLAINT**

ELECTRONICALLY FILED
10/17/2017 5:38 PM
01-CV-2017-904376.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT FOR
## JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| **FRANKIE OVERTON, Administrator** | * |
| **of the Estate of SUE ANN GRAHAM,** | * |
| **Deceased; and SCOTT GRAHAM, as legal** | * |
| **guardian of JORDON GRAHAM, a minor** | * |
| **child,** | * |
| | * **CASE NO:** |
| | * |
| **Plaintiff,** | * **JURY DEMAND REQUESTED** |
| | * |
| **vs.** | * |
| | * |
| **CHRYSLER GROUP LLC.;** | * |
| **FIAT CHRYSLER AUTOMOBILES** | * |
| **US, LLC (FCA US, LLC); RODERICUS** | * |
| **OBYRAN CARRINGTON; TRW** | * |
| **AUTOMOTIVE HOLDINGS CORP.,** | * |
| **f/k/a TRW, INC.; TRW AUTOMOTIVE,** | * |
| **INC.; TRW AUTOMOTIVE U.S. LLC;** | * |
| **TRW VEHICLE SAFETY SYSTEMS,** | * |
| **INC.; TRW AUTOMOTIVE US, LLC;** | * |
| **TRW SAFETY SYSTEMS, INC.; ZF** | * |
| **FRIEDRICHSHAFEN AG; ZF TRW** | * |
| **AUTOMOTIVE HOLDINGS CORP.;** | * |
| **and FICTITIOUS DEFENDANTS "1"** | * |
| **through "13"** | * |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION TO DEFENDANT TRW AUTOMOTIVE US, LLC

Plaintiff in the above-styled action propounds these discovery requests upon Defendant TRW Automotive US, LLC., and requests that they be answered fully in writing and under oath within the time provided by the *Alabama Rules of Civil Procedure*. Each request is addressed to the knowledge and information of Defendant's attorneys, investigators, agents, employees, and other representatives. When a question is directed to Defendant, the question is also directed to the aforementioned persons.

These requests shall be deemed continuing so as to require supplemental answers if the persons or entities to whom these requests are addressed obtain further information between the time the initial answers are served and the time of trial.

## **INTERROGATORIES**

1.      Identify the person(s) answering and/or assisting in answering these interrogatories. As part of your response, please include the name, address, title and duties of the person(s) identified.

2.      If this Defendant's name is not correctly stated in the Complaint on file in this case, state the correct way this Defendant should have been designated as a party defendant in a lawsuit at the time of the occurrence made the basis of the lawsuit and at the time these interrogatories were answered.

3.      State the general corporate history of this Defendant from the date of incorporation to the present.  This should include, but not be limited to, the state of incorporation, date of incorporation and the principal place of business.

4.      Identify each and every insurer at issue in this case. This request includes the name, address and policy limits of each insurer or potential insurer of any type whatsoever that may be liable to satisfy part or all of a judgment or settlement which may entered in this action, or to indemnify or reimburse for payments made to satisfy any judgment or settlement in this case.

5.      Identify and "fully describe" the seatbelt systems contained on the 2002 Jeep Liberty. This request includes, but is not limited to, identification of the make and model number of each seatbelt system by location within the 2002 Jeep Liberty; identification of the component parts of each seat belt system by location within the 2002 Jeep Liberty; the total cost of each seatbelt system, as well as a breakdown of the cost by component part of each seatbelt system; the

specifications of each seatbelt system and their component parts; the purpose of each seatbelt system; the name, acronym and part number of the various parts which make up the seatbelt systems in the subject vehicle; the date(s) the seat belt systems were designed and manufactured; the locations where the seat belt systems were manufactured; and the name, address and phone number of each entity in the distribution chain.

6.      Identify and describe in detail this Defendant's responsibilities for the seatbelt systems in the 2002 Jeep Liberty?

7.      Identify and describe in detail the responsibilities of all other Defendants concerning the seatbelt systems in the 2002 Jeep Liberty?

8.      Identify and describe in detail the history of your involvement as related to Chrysler vehicles, including but not limited to, the Jeep Liberty line.

9.      Identify all persons responsible for the design of the seatbelt systems in the subject vehicle. As part of your response, please include the name and address of the person(s) responsible, including the chief engineer(s) involved, whether those persons are still employed by you, and if not, when they ceased employment with this Defendant.

10.     Identify all release engineers for any and all of the seatbelt systems used in the 2002 Jeep Liberty.

11.     To the extent any of the seatbelt systems of the type utilized in the subject 2002 Jeep Liberty have ever been the subject of a defect investigation or engineering analysis by NHTSA, please describe in detail those investigations and analysis. In responding to this request, please provide the date the investigation was initiated, all reasons for initiating the investigation, and the results of the investigation.

12.    Identify and describe fully any testing conducted on the seatbelt systems in the subject 2002 Jeep Liberty, including substantially similar seatbelt system models, to evaluate their performance in vehicle accidents, including rollover accidents.  As part of your response, please provide what testing was conducted, the dates of any such testing, the results of the testing, and the name, address and phone number of the person(s) and entity (if this Defendant, the appropriate department) responsible for such testing.

13.    Identify and describe the type of seat belt retractor(s) used in the subject vehicle's seatbelt systems by location within the vehicle. This request includes, but is not limited to, whether the retractor was dual sensitive; the performance standards for locking of the retractor; whether the retractor uses a web grabber; and whether the retractor has a pretensioner.

14.    Identify and describe in detail any testing that was conducted on the seat belt system retractors', as well as substantially similar retractors, to evaluate the performance of the retractor in a rollover accident, including the incidence of spool-out. As part of your answer, please identify what testing was conducted, the results of the testing, the dates of any such testing, and the name, addresses and phone number of the entity or department(s) responsible for such testing.

15.    Identify and describe in detail whether any of the subject vehicle's seat belt system retractors or substantially similar retractors were tested to evaluate their performance in rollovers, including the amount of pay out of webbing. As part of your answer, please include what testing was conducted, including the dates of such testing, the results of the testing, and the name, address and phone number of the entity or department(s) responsible for such testing.

16.    State each and every step taken by this Defendant to prevent the subject vehicle's seat belt systems' retractors from spooling out in the event of a rollover accident.

17.    State each and every step taken by this Defendant to prevent the subject vehicle's seat belt systems' retractors from releasing webbing in a rollover.

18.    State each and every step taken by this Defendant to prevent the seat belt retractors of the subject vehicle's seat belt systems from permitting intermittent release of webbing in a vehicle accident, including a rollover accident.

19.    Please describe each and every change to the design of each retractor/retractor assembly contained within the subject 2002 Jeep Liberty from the date it was first marketed by this Defendant to the present date, and the reason for each and every change.

20.    Please describe in detail all efforts undertaken by TRW to monitor the performance of its seat belt systems in the field to ensure they performed in a reasonably safe manner during rollover accidents.

21.    Identify all person(s) known, believed or suspected by this Defendant or its agents to possess knowledge of this matter, including the subject vehicle, any of its component parts, the persons involved in the accident, any witnesses to the accident, or any efforts undertaken to inspect, test and/or photograph the subject 2002 Jeep Liberty.

22.    Identify and describe in detail whether any testing was conducted on the subject vehicle's seat belt systems' retractors or substantially similar retractors to evaluate the amount of intermittent release of webbing. As part of your response, please identify what testing was conducted, the results of the testing, the dates of such testing, and the name, address and phone number of the entity or department(s) responsible for such testing.

23.    State whether you believe Sue Ann Graham received her fatal injuries inside or outside of the subject 2002 Jeep Liberty vehicle.

24.     Identify the TRW seatbelt systems using the same or substantially similar TRW retractors which were tested (whether crash, sled or rollover tested) by or for TRW and/or Chrysler.

25.     Identify and describe whether this Defendant ever recommended to Chrysler that a pretensioner application that remains locked with belt tension regardless of motion be incorporated into the seat belt systems of the Jeep Liberty.

26.     Identify and describe whether this Defendant ever notified Chrysler that conventional retractors can experience intermittent release of webbing during rollover accidents?

27.     Identify each and every analysis (whether it be a test, study, computer simulation, or any other analysis) undertaken on the 2002 Jeep Liberty's seat belt systems  to evaluate the seat belt systems' ability to prevent occupant ejection (whether partial or full) in a rollover accident.

28.     Identify and describe any incidents, including but not limited to any accidents, claims or lawsuits, involving the ejection or partial ejection of an occupant in a vehicle equipped with the same or substantially similar seat belt systems as in the subject vehicle. As part of your response, please provide the date of the accident / incident; the name and address of the person injured as well as their counsel, if applicable; the make, model and year of the vehicle involved in the accident / incident; and the caption and case number of the lawsuit, if one was commenced.

29.     Identify and describe all vehicles that share the same seatbelt and/or seat belt buckle system(s) that are utilized in the subject vehicle. As part of your response, please identify the manufacturer, make and model of each vehicle utilizing the above-referenced seat belt and/or seat belt buckle system(s).

30.     Identify and describe all information provided to any other Defendant (including Chrysler and/or FCA) concerning the seatbelt systems in the 2002 Jeep Liberty.

31.     If you contend that the accident alleged in the Complaint and/or the Plaintiffs'

alleged injuries and damages were caused, in whole or in part, by the subject 2002 Jeep Liberty

being improperly repaired, maintained, altered, modified or serviced, please describe fully. As part

of your answer, please provide the nature and date(s) of the alleged improper repair, maintenance,

alteration, modification or service.

32.     If you contend that the action, activity or failure to act of any person or entity other

than the Plaintiffs contributed to cause the accident alleged in the Complaint or Plaintiffs' alleged

injuries and damages, please describe in detail. As part of your response, please provide the name

and address of such person or entity; the specific nature of such action, activity or failure to act;

how such actions, activity or failure to act contributed to cause the incident alleged in the Plaintiffs'

alleged injuries and damages; the identity of each person with knowledge that some other person

or defendant contributed to the incident or Plaintiffs' injuries or damages.

33.     Identify all persons you expect to call as an expert witness at the trial of this action.

As part of your answer, please provide the name of the expert(s) you expect to call and the subject

matter that you expect your expert(s) to testify to.

34.     Identify all expert opinions that your experts will offer at the trial of this action. As

part of your answer, please provide the substance of the facts and opinions to which he or she is

expected to testify, a summary of the grounds of their opinions, all supporting literature they intend

to rely upon to form their opinions, and any and all reports and draft reports that they intend to

offer in this matter.

## **REQUEST FOR PRODUCTION**

1.     Produce all documents (tests, studies, etc.) referenced in your responses to the

Plaintiffs' First Set of Interrogatories.

2.      Produce any and all product literature distributed, printed or circulated by this Defendant, and which contain photographs, diagrams, descriptions or analysis of the seat belt systems in the subject 2002 Jeep Liberty. This Request includes all brochures, advertisements, white papers, marketing materials and information packets.

3.      Produce any and all documents or writings prepared by this Defendant for or accompanying the seat belt systems contained in the subject 2002 Jeep Liberty which you contend contained warnings of any dangers which users (including engineers, manufacturers, consumers, etc.) of the product may be exposed to and/or containing any instructions for use.

4.      Produce any and all photographs or videotapes of the subject Jeep Liberty made the basis of this action, including any photographs or videotapes of the accident scene or the Plaintiffs.

5.      Produce any and all sales documents including invoices, purchase orders, bills of lading, and shipping invoices relating to the subject Jeep Liberty's seat belt systems made the basis of this lawsuit.

6.      Produce a complete and legible copy of any and all complaints received by you from any source wherein it was alleged that an injury or death occurred as a result of a defective and/or failed seat belt restraint system in any of the seat belt restraint systems manufactured, designed or assembled by this Defendant, including those utilized in the 2002 Jeep Liberty.

7.      Produce any and all patents related to the seat belt design(s) on the 2002 Jeep Liberty or substantially similar seat belt design(s), held by you or any of your employees, including copies of any patent applications related to the passenger restraint systems.

8.    Produce any and all brochures, sales lists or other documents which would reflect optional equipment or any optional design configuration for seat belt systems available for the 2002 Jeep Liberty.

9.    Produce any and all expert reports which have been prepared in connection with this lawsuit or the incident giving rise to this lawsuit, if the expert is prepared to, or may, testify in this case.  This request should also encompass any report prepared by any other person which has been reviewed by any expert intended to testify at the trial of this case.

10.    Produce copies of any and all statements previously made by the Plaintiffs concerning the subject matter of this lawsuit, including any written statements signed or otherwise adopted or approved by the Plaintiffs and any stenographic, mechanical, electrical or other type of recording or any transcription thereof made by the Plaintiffs hereto and recorded.

11.    Produce copies of any and all documents, reports or other written records pertaining to any investigation of this incident, which were generated by persons other than this defendant.

12.    Produce sketches, blueprints, schematics and/or drawings of the design of the passenger restraint system (including the seat belt system(s) for all seats) for the 2002 Jeep Liberty and for the Jeep Liberty models preceding and subsequent to the 2002 Jeep Liberty.

13.    Produce any and all documents, photographs or other physical evidence which will be utilized by you and offered as evidence at the trial of this case.

14.    Produce any and all documents related to any investigation or hearings conducted by any governmental entity related to the seat belt systems contained in the 2002 Jeep Liberty or substantially similar seat belt systems manufactured, designed and/or assembled by you.

15.     Produce a copy of any and all recalls issued for the seat belt systems contained in the 2002 Jeep Liberty or substantially similar seat belt systems manufactured, designed and/or assembled by you.

16.     Produce a copy of the policies and/or procedures for documenting customer comments/complaints regarding this Defendant's products.

17.     Produce a copy of the policies and/or procedures for document retention for this Defendant.

18.     Produce a complete and legible copy of any and all failure modes and effects analysis for the front seats and passenger restraint systems, including their component parts, on the 2002 Jeep Liberty and for the five years preceding and subsequent to the 2002 model.

19.     Produce a complete and legible copy of any and all parts lists which depict parts for the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

20.     Produce a complete and legible copy of any and all meeting minutes, presentations, documentation, visual aids, or any other documents or things which discuss or depict the as-manufactured design of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty or any of this Defendant's substantially similar seat belt system models manufactured, designed and/or assembled by you.

21.     Produce copies of all standards, tests, reports, published papers, unpublished papers or treatises or other exhibits which this Defendant expects to offer into evidence at the trial of this case.

22.     Produce any and all documents, memos, and/or tests evidencing or relating to studies and analyses conducted by or on behalf of this Defendant related to occupant protection from passenger restraint failures (including seat belt system(s) failures).

23.    Please produce a complete and legible copy of any and all engineering drawings, blueprints, photographs, video, computer files, notes, memorandum, and/or studies for the 2002 Jeep Liberty that would show:

a.   any passenger restraint system design change or engineering change;

b.   any proposed front seat or passenger restraint system design or engineering change.

24.    Please produce a complete and legible list or roster of all individuals, including name and address, who were involved in the design, manufacture or assembly of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

25.    Produce any and all hazard analyses and/or any and all analyses performed by you to assess potential hazards to passengers riding in or utilizing the seat belt systems utilized in the 2002 Jeep Liberty or substantially similar models manufactured, designed or assembled by you.

26.    Produce any and all documents evidencing your efforts to either eliminate or safeguard against potential hazards to passengers riding in or utilizing the seat belt systems utilized in the 2002 Jeep Liberty or substantially similar models manufactured, designed or assembled by you.

27.    Produce documents that itemize this Defendant's cost for each individual component of the 2002 Jeep Liberty's passenger restraint system (including the seat belt system(s)), as well as any alternative passenger restraint system (including seat belt system) available at the time the 2002 Jeep Liberty's restraint systems were utilized.

28.    Produce all correspondences between you and any third party or Defendant in this litigation concerning the selection of the restraint systems (including the seat belt system(s)) contained in the 2002 Jeep Liberty.

29.    Please produce all documents which identify every address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.  This is often referred to as a memory map.

30.    Please produce all documents necessary to read and interpret the data in every address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.

31.    Please produce all documents necessary to determine the actual conditions which determine each item of data will be written to the each address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.  For example: The actual measurement which would cause a deployment loop fault code to be set.

32.    Please produce all documents which identify every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

33.    Please produce all documents which identify the each data address in every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

34.    Please produce all documents which are necessary to read and interpret each data address in every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board

Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

35.    Please produce the Shop Manual for the following systems:

    a.  The Crash Data Recorder;

    b.  On board diagnostic reading devices;

    c.  ABS systems;

    d.  Transmission systems;

    e.  Occupant Detection Systems;

    f.  Back Up Sensors;

    g.  Crash Avoidance Systems;

    h.  Power Control Modules;

    i.  Occupant Restraint Controller; and

    j.  Optional side impact inflatable curtains.

36.    Please produce the Operators Manual for the following systems:

    a.  The Crash Data Recorder retrieval instrument;

    b.  The on board diagnostic reading devices; and

    c.  Occupant Restraint Controller.

37.    Please produce the specifications for the following systems:

    a.  The Crash Sensor system and each of its subcomponents (e.g., accelerometer, arming sensors, transistors, reserve energy capacitors);

    b.  The Crash Data Recorder and each of its subcomponents;

    c.  Any data communication bus or network; and

    d.  Occupant restraint controller.

38.    All documents which you sent to or received from Chrysler which discuss, refer, relate or pertain to the safety, performance, crashworthiness, virtues, qualities, characteristics, capabilities, installment or sale of side impact airbag inflatable curtains offered as optional equipment in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

39.    All documents which you sent to or received from Chrysler which discuss, refer, relate or pertain to the safety, performance, crashworthiness, virtues, qualities, characteristics, capabilities, installment or sale of the seat belt systems in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

40.    All documents generated by any person, committee, task force or team, including minutes of any meeting where discussions were held, which discuss, reflect, pertain or relate to the design or development of side impact airbag inflatable curtains in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

/s/J. Parker Miller
J. Parker Miller (MIL138)
Attorney for Plaintiffs

OF COUNSEL:

J. Parker Miller
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL 36103-4160
(334) 269-2343

**TO BE SERVED WITH THE COMPLAINT**

ELECTRONICALLY FILED
10/17/2017 5:38 PM
01-CV-2017-904376.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT FOR
## JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| **FRANKIE OVERTON, Administrator** * | |
| **of the Estate of SUE ANN GRAHAM,** * | |
| **Deceased; and SCOTT GRAHAM, as legal** * | |
| **guardian of JORDON GRAHAM, a minor** * | |
| **child,** * | |
| * | **CASE NO:** |
| * | |
| **Plaintiff,** * | **JURY DEMAND REQUESTED** |
| * | |
| **vs.** * | |
| * | |
| **CHRYSLER GROUP LLC.;** * | |
| **FIAT CHRYSLER AUTOMOBILES** * | |
| **US, LLC (FCA US, LLC); RODERICUS** * | |
| **OBYRAN CARRINGTON; TRW** * | |
| **AUTOMOTIVE HOLDINGS CORP.,** * | |
| **f/k/a TRW, INC.; TRW AUTOMOTIVE,** * | |
| **INC.; TRW AUTOMOTIVE U.S. LLC;** * | |
| **TRW VEHICLE SAFETY SYSTEMS,** * | |
| **INC.; TRW AUTOMOTIVE US, LLC;** * | |
| **TRW SAFETY SYSTEMS, INC.; ZF** * | |
| **FRIEDRICHSHAFEN AG; ZF TRW** * | |
| **AUTOMOTIVE HOLDINGS CORP.;** * | |
| **and FICTITIOUS DEFENDANTS "1"** * | |
| **through "13"** * | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION TO DEFENDANT TRW SAFETY SYSTEMS, INC.

Plaintiff in the above-styled action propounds these discovery requests upon Defendant

TRW Safety Systems, Inc., and requests that they be answered fully in writing and under oath

within the time provided by the *Alabama Rules of Civil Procedure*.  Each request is addressed to

the knowledge and information of Defendant's attorneys, investigators, agents, employees, and

other representatives.  When a question is directed to Defendant, the question is also directed to

the aforementioned persons.

These requests shall be deemed continuing so as to require supplemental answers if the persons or entities to whom these requests are addressed obtain further information between the time the initial answers are served and the time of trial.

## **INTERROGATORIES**

1.    Identify the person(s) answering and/or assisting in answering these interrogatories. As part of your response, please include the name, address, title and duties of the person(s) identified.

2.    If this Defendant's name is not correctly stated in the Complaint on file in this case, state the correct way this Defendant should have been designated as a party defendant in a lawsuit at the time of the occurrence made the basis of the lawsuit and at the time these interrogatories were answered.

3.    State the general corporate history of this Defendant from the date of incorporation to the present.  This should include, but not be limited to, the state of incorporation, date of incorporation and the principal place of business.

4.    Identify each and every insurer at issue in this case. This request includes the name, address and policy limits of each insurer or potential insurer of any type whatsoever that may be liable to satisfy part or all of a judgment or settlement which may entered in this action, or to indemnify or reimburse for payments made to satisfy any judgment or settlement in this case.

5.    Identify and "fully describe" the seatbelt systems contained on the 2002 Jeep Liberty. This request includes, but is not limited to, identification of the make and model number of each seatbelt system by location within the 2002 Jeep Liberty; identification of the component parts of each seat belt system by location within the 2002 Jeep Liberty; the total cost of each seatbelt system, as well as a breakdown of the cost by component part of each seatbelt system; the

specifications of each seatbelt system and their component parts; the purpose of each seatbelt system; the name, acronym and part number of the various parts which make up the seatbelt systems in the subject vehicle; the date(s) the seat belt systems were designed and manufactured; the locations where the seat belt systems were manufactured; and the name, address and phone number of each entity in the distribution chain.

6.    Identify and describe in detail this Defendant's responsibilities for the seatbelt systems in the 2002 Jeep Liberty?

7.    Identify and describe in detail the responsibilities of all other Defendants concerning the seatbelt systems in the 2002 Jeep Liberty?

8.    Identify and describe in detail the history of your involvement as related to Chrysler vehicles, including but not limited to, the Jeep Liberty line.

9.    Identify all persons responsible for the design of the seatbelt systems in the subject vehicle. As part of your response, please include the name and address of the person(s) responsible, including the chief engineer(s) involved, whether those persons are still employed by you, and if not, when they ceased employment with this Defendant.

10.    Identify all release engineers for any and all of the seatbelt systems used in the 2002 Jeep Liberty.

11.    To the extent any of the seatbelt systems of the type utilized in the subject 2002 Jeep Liberty have ever been the subject of a defect investigation or engineering analysis by NHTSA, please describe in detail those investigations and analysis. In responding to this request, please provide the date the investigation was initiated, all reasons for initiating the investigation, and the results of the investigation.

12.     Identify and describe fully any testing conducted on the seatbelt systems in the subject 2002 Jeep Liberty, including substantially similar seatbelt system models, to evaluate their performance in vehicle accidents, including rollover accidents.  As part of your response, please provide what testing was conducted, the dates of any such testing, the results of the testing, and the name, address and phone number of the person(s) and entity (if this Defendant, the appropriate department) responsible for such testing.

13.     Identify and describe the type of seat belt retractor(s) used in the subject vehicle's seatbelt systems by location within the vehicle. This request includes, but is not limited to, whether the retractor was dual sensitive; the performance standards for locking of the retractor; whether the retractor uses a web grabber; and whether the retractor has a pretensioner.

14.     Identify and describe in detail any testing that was conducted on the seat belt system retractors', as well as substantially similar retractors, to evaluate the performance of the retractor in a rollover accident, including the incidence of spool-out. As part of your answer, please identify what testing was conducted, the results of the testing, the dates of any such testing, and the name, addresses and phone number of the entity or department(s) responsible for such testing.

15.     Identify and describe in detail whether any of the subject vehicle's seat belt system retractors or substantially similar retractors were tested to evaluate their performance in rollovers, including the amount of pay out of webbing. As part of your answer, please include what testing was conducted, including the dates of such testing, the results of the testing, and the name, address and phone number of the entity or department(s) responsible for such testing.

16.     State each and every step taken by this Defendant to prevent the subject vehicle's seat belt systems' retractors from spooling out in the event of a rollover accident.

17.    State each and every step taken by this Defendant to prevent the subject vehicle's seat belt systems' retractors from releasing webbing in a rollover.

18.    State each and every step taken by this Defendant to prevent the seat belt retractors of the subject vehicle's seat belt systems from permitting intermittent release of webbing in a vehicle accident, including a rollover accident.

19.    Please describe each and every change to the design of each retractor/retractor assembly contained within the subject 2002 Jeep Liberty from the date it was first marketed by this Defendant to the present date, and the reason for each and every change.

20.    Please describe in detail all efforts undertaken by TRW to monitor the performance of its seat belt systems in the field to ensure they performed in a reasonably safe manner during rollover accidents.

21.    Identify all person(s) known, believed or suspected by this Defendant or its agents to possess knowledge of this matter, including the subject vehicle, any of its component parts, the persons involved in the accident, any witnesses to the accident, or any efforts undertaken to inspect, test and/or photograph the subject 2002 Jeep Liberty.

22.    Identify and describe in detail whether any testing was conducted on the subject vehicle's seat belt systems' retractors or substantially similar retractors to evaluate the amount of intermittent release of webbing. As part of your response, please identify what testing was conducted, the results of the testing, the dates of such testing, and the name, address and phone number of the entity or department(s) responsible for such testing.

23.    State whether you believe Sue Ann Graham received her fatal injuries inside or outside of the subject 2002 Jeep Liberty vehicle.

24.     Identify the TRW seatbelt systems using the same or substantially similar TRW retractors which were tested (whether crash, sled or rollover tested) by or for TRW and/or Chrysler.

25.     Identify and describe whether this Defendant ever recommended to Chrysler that a pretensioner application that remains locked with belt tension regardless of motion be incorporated into the seat belt systems of the Jeep Liberty.

26.     Identify and describe whether this Defendant ever notified Chrysler that conventional retractors can experience intermittent release of webbing during rollover accidents?

27.     Identify each and every analysis (whether it be a test, study, computer simulation, or any other analysis) undertaken on the 2002 Jeep Liberty's seat belt systems to evaluate the seat belt systems' ability to prevent occupant ejection (whether partial or full) in a rollover accident.

28.     Identify and describe any incidents, including but not limited to any accidents, claims or lawsuits, involving the ejection or partial ejection of an occupant in a vehicle equipped with the same or substantially similar seat belt systems as in the subject vehicle. As part of your response, please provide the date of the accident / incident; the name and address of the person injured as well as their counsel, if applicable; the make, model and year of the vehicle involved in the accident / incident; and the caption and case number of the lawsuit, if one was commenced.

29.     Identify and describe all vehicles that share the same seatbelt and/or seat belt buckle system(s) that are utilized in the subject vehicle. As part of your response, please identify the manufacturer, make and model of each vehicle utilizing the above-referenced seat belt and/or seat belt buckle system(s).

30.     Identify and describe all information provided to any other Defendant (including Chrysler and/or FCA) concerning the seatbelt systems in the 2002 Jeep Liberty.

31.    If you contend that the accident alleged in the Complaint and/or the Plaintiffs'

alleged injuries and damages were caused, in whole or in part, by the subject 2002 Jeep Liberty

being improperly repaired, maintained, altered, modified or serviced, please describe fully. As part

of your answer, please provide the nature and date(s) of the alleged improper repair, maintenance,

alteration, modification or service.

32.    If you contend that the action, activity or failure to act of any person or entity other

than the Plaintiffs contributed to cause the accident alleged in the Complaint or Plaintiffs' alleged

injuries and damages, please describe in detail. As part of your response, please provide the name

and address of such person or entity; the specific nature of such action, activity or failure to act;

how such actions, activity or failure to act contributed to cause the incident alleged in the Plaintiffs'

alleged injuries and damages; the identity of each person with knowledge that some other person

or defendant contributed to the incident or Plaintiffs' injuries or damages.

33.    Identify all persons you expect to call as an expert witness at the trial of this action.

As part of your answer, please provide the name of the expert(s) you expect to call and the subject

matter that you expect your expert(s) to testify to.

34.    Identify all expert opinions that your experts will offer at the trial of this action. As

part of your answer, please provide the substance of the facts and opinions to which he or she is

expected to testify, a summary of the grounds of their opinions, all supporting literature they intend

to rely upon to form their opinions, and any and all reports and draft reports that they intend to

offer in this matter.

## **REQUEST FOR PRODUCTION**

1.    Produce all documents (tests, studies, etc.) referenced in your responses to the

Plaintiffs' First Set of Interrogatories.

2.      Produce any and all product literature distributed, printed or circulated by this Defendant, and which contain photographs, diagrams, descriptions or analysis of the seat belt systems in the subject 2002 Jeep Liberty. This Request includes all brochures, advertisements, white papers, marketing materials and information packets.

3.      Produce any and all documents or writings prepared by this Defendant for or accompanying the seat belt systems contained in the subject 2002 Jeep Liberty which you contend contained warnings of any dangers which users (including engineers, manufacturers, consumers, etc.) of the product may be exposed to and/or containing any instructions for use.

4.      Produce any and all photographs or videotapes of the subject Jeep Liberty made the basis of this action, including any photographs or videotapes of the accident scene or the Plaintiffs.

5.      Produce any and all sales documents including invoices, purchase orders, bills of lading, and shipping invoices relating to the subject Jeep Liberty's seat belt systems made the basis of this lawsuit.

6.      Produce a complete and legible copy of any and all complaints received by you from any source wherein it was alleged that an injury or death occurred as a result of a defective and/or failed seat belt restraint system in any of the seat belt restraint systems manufactured, designed or assembled by this Defendant, including those utilized in the 2002 Jeep Liberty.

7.      Produce any and all patents related to the seat belt design(s) on the 2002 Jeep Liberty or substantially similar seat belt design(s), held by you or any of your employees, including copies of any patent applications related to the passenger restraint systems.

8.      Produce any and all brochures, sales lists or other documents which would reflect optional equipment or any optional design configuration for seat belt systems available for the 2002 Jeep Liberty.

9.      Produce any and all expert reports which have been prepared in connection with this lawsuit or the incident giving rise to this lawsuit, if the expert is prepared to, or may, testify in this case.  This request should also encompass any report prepared by any other person which has been reviewed by any expert intended to testify at the trial of this case.

10.     Produce copies of any and all statements previously made by the Plaintiffs concerning the subject matter of this lawsuit, including any written statements signed or otherwise adopted or approved by the Plaintiffs and any stenographic, mechanical, electrical or other type of recording or any transcription thereof made by the Plaintiffs hereto and recorded.

11.     Produce copies of any and all documents, reports or other written records pertaining to any investigation of this incident, which were generated by persons other than this defendant.

12.     Produce sketches, blueprints, schematics and/or drawings of the design of the passenger restraint system (including the seat belt system(s) for all seats) for the 2002 Jeep Liberty and for the Jeep Liberty models preceding and subsequent to the 2002 Jeep Liberty.

13.     Produce any and all documents, photographs or other physical evidence which will be utilized by you and offered as evidence at the trial of this case.

14.     Produce any and all documents related to any investigation or hearings conducted by any governmental entity related to the seat belt systems contained in the 2002 Jeep Liberty or substantially similar seat belt systems manufactured, designed and/or assembled by you.

15.    Produce a copy of any and all recalls issued for the seat belt systems contained in the 2002 Jeep Liberty or substantially similar seat belt systems manufactured, designed and/or assembled by you.

16.    Produce a copy of the policies and/or procedures for documenting customer comments/complaints regarding this Defendant's products.

17.    Produce a copy of the policies and/or procedures for document retention for this Defendant.

18.    Produce a complete and legible copy of any and all failure modes and effects analysis for the front seats and passenger restraint systems, including their component parts, on the 2002 Jeep Liberty and for the five years preceding and subsequent to the 2002 model.

19.    Produce a complete and legible copy of any and all parts lists which depict parts for the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

20.    Produce a complete and legible copy of any and all meeting minutes, presentations, documentation, visual aids, or any other documents or things which discuss or depict the as-manufactured design of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty or any of this Defendant's substantially similar seat belt system models manufactured, designed and/or assembled by you.

21.    Produce copies of all standards, tests, reports, published papers, unpublished papers or treatises or other exhibits which this Defendant expects to offer into evidence at the trial of this case.

22.    Produce any and all documents, memos, and/or tests evidencing or relating to studies and analyses conducted by or on behalf of this Defendant related to occupant protection from passenger restraint failures (including seat belt system(s) failures).

23.    Please produce a complete and legible copy of any and all engineering drawings, blueprints, photographs, video, computer files, notes, memorandum, and/or studies for the 2002 Jeep Liberty that would show:

a.    any passenger restraint system design change or engineering change;

b.    any proposed front seat or passenger restraint system design or engineering change.

24.    Please produce a complete and legible list or roster of all individuals, including name and address, who were involved in the design, manufacture or assembly of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

25.    Produce any and all hazard analyses and/or any and all analyses performed by you to assess potential hazards to passengers riding in or utilizing the seat belt systems utilized in the 2002 Jeep Liberty or substantially similar models manufactured, designed or assembled by you.

26.    Produce any and all documents evidencing your efforts to either eliminate or safeguard against potential hazards to passengers riding in or utilizing the seat belt systems utilized in the 2002 Jeep Liberty or substantially similar models manufactured, designed or assembled by you.

27.    Produce documents that itemize this Defendant's cost for each individual component of the 2002 Jeep Liberty's passenger restraint system (including the seat belt system(s)), as well as any alternative passenger restraint system (including seat belt system) available at the time the 2002 Jeep Liberty's restraint systems were utilized.

28.    Produce all correspondences between you and any third party or Defendant in this litigation concerning the selection of the restraint systems (including the seat belt system(s)) contained in the 2002 Jeep Liberty.

29.     Please produce all documents which identify every address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.  This is often referred to as a memory map.

30.     Please produce all documents necessary to read and interpret the data in every address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.

31.     Please produce all documents necessary to determine the actual conditions which determine each item of data will be written to the each address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.  For example: The actual measurement which would cause a deployment loop fault code to be set.

32.     Please produce all documents which identify every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

33.     Please produce all documents which identify the each data address in every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

34.     Please produce all documents which are necessary to read and interpret each data address in every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board

Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

35.    Please produce the Shop Manual for the following systems:

a.  The Crash Data Recorder;

b.  On board diagnostic reading devices;

c.  ABS systems;

d.  Transmission systems;

e.  Occupant Detection Systems;

f.  Back Up Sensors;

g.  Crash Avoidance Systems;

h.  Power Control Modules;

i.  Occupant Restraint Controller; and

j.  Optional side impact inflatable curtains.

36.    Please produce the Operators Manual for the following systems:

a.  The Crash Data Recorder retrieval instrument;

b.  The on board diagnostic reading devices; and

c.  Occupant Restraint Controller.

37.    Please produce the specifications for the following systems:

a.  The Crash Sensor system and each of its subcomponents (e.g., accelerometer, arming sensors, transistors, reserve energy capacitors);

b.  The Crash Data Recorder and each of its subcomponents;

c.  Any data communication bus or network; and

    d.  Occupant restraint controller.

38.    All documents which you sent to or received from Chrysler which discuss, refer, relate or pertain to the safety, performance, crashworthiness, virtues, qualities, characteristics, capabilities, installment or sale of side impact airbag inflatable curtains offered as optional equipment in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

39.    All documents which you sent to or received from Chrysler which discuss, refer, relate or pertain to the safety, performance, crashworthiness, virtues, qualities, characteristics, capabilities, installment or sale of the seat belt systems in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

40.    All documents generated by any person, committee, task force or team, including minutes of any meeting where discussions were held, which discuss, reflect, pertain or relate to the design or development of side impact airbag inflatable curtains in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

/s/J. Parker Miller
J. Parker Miller (MIL138)
Attorney for Plaintiffs

OF COUNSEL:

J. Parker Miller
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL 36103-4160
(334) 269-2343

**TO BE SERVED WITH THE COMPLAINT**

ELECTRONICALLY FILED
10/17/2017 5:38 PM
01-CV-2017-904376.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

**IN THE CIRCUIT COURT FOR
JEFFERSON COUNTY, ALABAMA**

| | |
|---|---|
| **FRANKIE OVERTON, Administrator** * | |
| **of the Estate of SUE ANN GRAHAM,** * | |
| **Deceased; and SCOTT GRAHAM, as legal** * | |
| **guardian of JORDON GRAHAM, a minor** * | |
| **child,** * | **CASE NO:** |
| * | |
| **Plaintiff,** * | **JURY DEMAND REQUESTED** |
| * | |
| **vs.** * | |
| * | |
| **CHRYSLER GROUP LLC.;** * | |
| **FIAT CHRYSLER AUTOMOBILES** * | |
| **US, LLC (FCA US, LLC); RODERICUS** * | |
| **OBYRAN CARRINGTON; TRW** * | |
| **AUTOMOTIVE HOLDINGS CORP.,** * | |
| **f/k/a TRW, INC.; TRW AUTOMOTIVE,** * | |
| **INC.; TRW AUTOMOTIVE U.S. LLC;** * | |
| **TRW VEHICLE SAFETY SYSTEMS,** * | |
| **INC.; TRW AUTOMOTIVE US, LLC;** * | |
| **TRW SAFETY SYSTEMS, INC.; ZF** * | |
| **FRIEDRICHSHAFEN AG; ZF TRW** * | |
| **AUTOMOTIVE HOLDINGS CORP.;** * | |
| **and FICTITIOUS DEFENDANTS "1"** * | |
| **through "13"** * | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION TO DEFENDANT TRW VEHICLE SAFETY SYSTEMS, INC.

Plaintiff in the above-styled action propounds these discovery requests upon Defendant

TRW Vehicle Safety Systems, Inc., and requests that they be answered fully in writing and under

oath within the time provided by the *Alabama Rules of Civil Procedure*.  Each request is addressed

to the knowledge and information of Defendant's attorneys, investigators, agents, employees, and

other representatives.  When a question is directed to Defendant, the question is also directed to

the aforementioned persons.

These requests shall be deemed continuing so as to require supplemental answers if the persons or entities to whom these requests are addressed obtain further information between the time the initial answers are served and the time of trial.

## INTERROGATORIES

1.    Identify the person(s) answering and/or assisting in answering these interrogatories. As part of your response, please include the name, address, title and duties of the person(s) identified.

2.    If this Defendant's name is not correctly stated in the Complaint on file in this case, state the correct way this Defendant should have been designated as a party defendant in a lawsuit at the time of the occurrence made the basis of the lawsuit and at the time these interrogatories were answered.

3.    State the general corporate history of this Defendant from the date of incorporation to the present.  This should include, but not be limited to, the state of incorporation, date of incorporation and the principal place of business.

4.    Identify each and every insurer at issue in this case. This request includes the name, address and policy limits of each insurer or potential insurer of any type whatsoever that may be liable to satisfy part or all of a judgment or settlement which may entered in this action, or to indemnify or reimburse for payments made to satisfy any judgment or settlement in this case.

5.    Identify and "fully describe" the seatbelt systems contained on the 2002 Jeep Liberty. This request includes, but is not limited to, identification of the make and model number of each seatbelt system by location within the 2002 Jeep Liberty; identification of the component parts of each seat belt system by location within the 2002 Jeep Liberty; the total cost of each seatbelt system, as well as a breakdown of the cost by component part of each seatbelt system; the

specifications of each seatbelt system and their component parts; the purpose of each seatbelt system; the name, acronym and part number of the various parts which make up the seatbelt systems in the subject vehicle; the date(s) the seat belt systems were designed and manufactured; the locations where the seat belt systems were manufactured; and the name, address and phone number of each entity in the distribution chain.

6.      Identify and describe in detail this Defendant's responsibilities for the seatbelt systems in the 2002 Jeep Liberty?

7.      Identify and describe in detail the responsibilities of all other Defendants concerning the seatbelt systems in the 2002 Jeep Liberty?

8.      Identify and describe in detail the history of your involvement as related to Chrysler vehicles, including but not limited to, the Jeep Liberty line.

9.      Identify all persons responsible for the design of the seatbelt systems in the subject vehicle. As part of your response, please include the name and address of the person(s) responsible, including the chief engineer(s) involved, whether those persons are still employed by you, and if not, when they ceased employment with this Defendant.

10.     Identify all release engineers for any and all of the seatbelt systems used in the 2002 Jeep Liberty.

11.     To the extent any of the seatbelt systems of the type utilized in the subject 2002 Jeep Liberty have ever been the subject of a defect investigation or engineering analysis by NHTSA, please describe in detail those investigations and analysis. In responding to this request, please provide the date the investigation was initiated, all reasons for initiating the investigation, and the results of the investigation.

12.    Identify and describe fully any testing conducted on the seatbelt systems in the subject 2002 Jeep Liberty, including substantially similar seatbelt system models, to evaluate their performance in vehicle accidents, including rollover accidents.  As part of your response, please provide what testing was conducted, the dates of any such testing, the results of the testing, and the name, address and phone number of the person(s) and entity (if this Defendant, the appropriate department) responsible for such testing.

13.    Identify and describe the type of seat belt retractor(s) used in the subject vehicle's seatbelt systems by location within the vehicle. This request includes, but is not limited to, whether the retractor was dual sensitive; the performance standards for locking of the retractor; whether the retractor uses a web grabber; and whether the retractor has a pretensioner.

14.    Identify and describe in detail any testing that was conducted on the seat belt system retractors', as well as substantially similar retractors, to evaluate the performance of the retractor in a rollover accident, including the incidence of spool-out. As part of your answer, please identify what testing was conducted, the results of the testing, the dates of any such testing, and the name, addresses and phone number of the entity or department(s) responsible for such testing.

15.    Identify and describe in detail whether any of the subject vehicle's seat belt system retractors or substantially similar retractors were tested to evaluate their performance in rollovers, including the amount of pay out of webbing. As part of your answer, please include what testing was conducted, including the dates of such testing, the results of the testing, and the name, address and phone number of the entity or department(s) responsible for such testing.

16.    State each and every step taken by this Defendant to prevent the subject vehicle's seat belt systems' retractors from spooling out in the event of a rollover accident.

17.    State each and every step taken by this Defendant to prevent the subject vehicle's seat belt systems' retractors from releasing webbing in a rollover.

18.    State each and every step taken by this Defendant to prevent the seat belt retractors of the subject vehicle's seat belt systems from permitting intermittent release of webbing in a vehicle accident, including a rollover accident.

19.    Please describe each and every change to the design of each retractor/retractor assembly contained within the subject 2002 Jeep Liberty from the date it was first marketed by this Defendant to the present date, and the reason for each and every change.

20.    Please describe in detail all efforts undertaken by TRW to monitor the performance of its seat belt systems in the field to ensure they performed in a reasonably safe manner during rollover accidents.

21.    Identify all person(s) known, believed or suspected by this Defendant or its agents to possess knowledge of this matter, including the subject vehicle, any of its component parts, the persons involved in the accident, any witnesses to the accident, or any efforts undertaken to inspect, test and/or photograph the subject 2002 Jeep Liberty.

22.    Identify and describe in detail whether any testing was conducted on the subject vehicle's seat belt systems' retractors or substantially similar retractors to evaluate the amount of intermittent release of webbing. As part of your response, please identify what testing was conducted, the results of the testing, the dates of such testing, and the name, address and phone number of the entity or department(s) responsible for such testing.

23.    State whether you believe Sue Ann Graham received her fatal injuries inside or outside of the subject 2002 Jeep Liberty vehicle.

24.    Identify the TRW seatbelt systems using the same or substantially similar TRW retractors which were tested (whether crash, sled or rollover tested) by or for TRW and/or Chrysler.

25.    Identify and describe whether this Defendant ever recommended to Chrysler that a pretensioner application that remains locked with belt tension regardless of motion be incorporated into the seat belt systems of the Jeep Liberty.

26.    Identify and describe whether this Defendant ever notified Chrysler that conventional retractors can experience intermittent release of webbing during rollover accidents?

27.    Identify each and every analysis (whether it be a test, study, computer simulation, or any other analysis) undertaken on the 2002 Jeep Liberty's seat belt systems to evaluate the seat belt systems' ability to prevent occupant ejection (whether partial or full) in a rollover accident.

28.    Identify and describe any incidents, including but not limited to any accidents, claims or lawsuits, involving the ejection or partial ejection of an occupant in a vehicle equipped with the same or substantially similar seat belt systems as in the subject vehicle. As part of your response, please provide the date of the accident / incident; the name and address of the person injured as well as their counsel, if applicable; the make, model and year of the vehicle involved in the accident / incident; and the caption and case number of the lawsuit, if one was commenced.

29.    Identify and describe all vehicles that share the same seatbelt and/or seat belt buckle system(s) that are utilized in the subject vehicle. As part of your response, please identify the manufacturer, make and model of each vehicle utilizing the above-referenced seat belt and/or seat belt buckle system(s).

30.    Identify and describe all information provided to any other Defendant (including Chrysler and/or FCA) concerning the seatbelt systems in the 2002 Jeep Liberty.

31.     If you contend that the accident alleged in the Complaint and/or the Plaintiffs'
alleged injuries and damages were caused, in whole or in part, by the subject 2002 Jeep Liberty
being improperly repaired, maintained, altered, modified or serviced, please describe fully. As part
of your answer, please provide the nature and date(s) of the alleged improper repair, maintenance,
alteration, modification or service.

32.     If you contend that the action, activity or failure to act of any person or entity other
than the Plaintiffs contributed to cause the accident alleged in the Complaint or Plaintiffs' alleged
injuries and damages, please describe in detail. As part of your response, please provide the name
and address of such person or entity; the specific nature of such action, activity or failure to act;
how such actions, activity or failure to act contributed to cause the incident alleged in the Plaintiffs'
alleged injuries and damages; the identity of each person with knowledge that some other person
or defendant contributed to the incident or Plaintiffs' injuries or damages.

33.     Identify all persons you expect to call as an expert witness at the trial of this action.
As part of your answer, please provide the name of the expert(s) you expect to call and the subject
matter that you expect your expert(s) to testify to.

34.     Identify all expert opinions that your experts will offer at the trial of this action. As
part of your answer, please provide the substance of the facts and opinions to which he or she is
expected to testify, a summary of the grounds of their opinions, all supporting literature they intend
to rely upon to form their opinions, and any and all reports and draft reports that they intend to
offer in this matter.

## **REQUEST FOR PRODUCTION**

1.     Produce all documents (tests, studies, etc.) referenced in your responses to the
Plaintiffs' First Set of Interrogatories.

2.      Produce any and all product literature distributed, printed or circulated by this Defendant, and which contain photographs, diagrams, descriptions or analysis of the seat belt systems in the subject 2002 Jeep Liberty. This Request includes all brochures, advertisements, white papers, marketing materials and information packets.

3.      Produce any and all documents or writings prepared by this Defendant for or accompanying the seat belt systems contained in the subject 2002 Jeep Liberty which you contend contained warnings of any dangers which users (including engineers, manufacturers, consumers, etc.) of the product may be exposed to and/or containing any instructions for use.

4.      Produce any and all photographs or videotapes of the subject Jeep Liberty made the basis of this action, including any photographs or videotapes of the accident scene or the Plaintiffs.

5.      Produce any and all sales documents including invoices, purchase orders, bills of lading, and shipping invoices relating to the subject Jeep Liberty's seat belt systems made the basis of this lawsuit.

6.      Produce a complete and legible copy of any and all complaints received by you from any source wherein it was alleged that an injury or death occurred as a result of a defective and/or failed seat belt restraint system in any of the seat belt restraint systems manufactured, designed or assembled by this Defendant, including those utilized in the 2002 Jeep Liberty.

7.      Produce any and all patents related to the seat belt design(s) on the 2002 Jeep Liberty or substantially similar seat belt design(s), held by you or any of your employees, including copies of any patent applications related to the passenger restraint systems.

8.      Produce any and all brochures, sales lists or other documents which would reflect optional equipment or any optional design configuration for seat belt systems available for the 2002 Jeep Liberty.

9.      Produce any and all expert reports which have been prepared in connection with this lawsuit or the incident giving rise to this lawsuit, if the expert is prepared to, or may, testify in this case.  This request should also encompass any report prepared by any other person which has been reviewed by any expert intended to testify at the trial of this case.

10.     Produce copies of any and all statements previously made by the Plaintiffs concerning the subject matter of this lawsuit, including any written statements signed or otherwise adopted or approved by the Plaintiffs and any stenographic, mechanical, electrical or other type of recording or any transcription thereof made by the Plaintiffs hereto and recorded.

11.     Produce copies of any and all documents, reports or other written records pertaining to any investigation of this incident, which were generated by persons other than this defendant.

12.     Produce sketches, blueprints, schematics and/or drawings of the design of the passenger restraint system (including the seat belt system(s) for all seats) for the 2002 Jeep Liberty and for the Jeep Liberty models preceding and subsequent to the 2002 Jeep Liberty.

13.     Produce any and all documents, photographs or other physical evidence which will be utilized by you and offered as evidence at the trial of this case.

14.     Produce any and all documents related to any investigation or hearings conducted by any governmental entity related to the seat belt systems contained in the 2002 Jeep Liberty or substantially similar seat belt systems manufactured, designed and/or assembled by you.

15.     Produce a copy of any and all recalls issued for the seat belt systems contained in the 2002 Jeep Liberty or substantially similar seat belt systems manufactured, designed and/or assembled by you.

16.     Produce a copy of the policies and/or procedures for documenting customer comments/complaints regarding this Defendant's products.

17.     Produce a copy of the policies and/or procedures for document retention for this Defendant.

18.     Produce a complete and legible copy of any and all failure modes and effects analysis for the front seats and passenger restraint systems, including their component parts, on the 2002 Jeep Liberty and for the five years preceding and subsequent to the 2002 model.

19.     Produce a complete and legible copy of any and all parts lists which depict parts for the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

20.     Produce a complete and legible copy of any and all meeting minutes, presentations, documentation, visual aids, or any other documents or things which discuss or depict the as-manufactured design of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty or any of this Defendant's substantially similar seat belt system models manufactured, designed and/or assembled by you.

21.     Produce copies of all standards, tests, reports, published papers, unpublished papers or treatises or other exhibits which this Defendant expects to offer into evidence at the trial of this case.

22.     Produce any and all documents, memos, and/or tests evidencing or relating to studies and analyses conducted by or on behalf of this Defendant related to occupant protection from passenger restraint failures (including seat belt system(s) failures).

23.     Please produce a complete and legible copy of any and all engineering drawings, blueprints, photographs, video, computer files, notes, memorandum, and/or studies for the 2002 Jeep Liberty that would show:

    a.  any passenger restraint system design change or engineering change;

    b.  any proposed front seat or passenger restraint system design or engineering change.

24.     Please produce a complete and legible list or roster of all individuals, including name and address, who were involved in the design, manufacture or assembly of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

25.     Produce any and all hazard analyses and/or any and all analyses performed by you to assess potential hazards to passengers riding in or utilizing the seat belt systems utilized in the 2002 Jeep Liberty or substantially similar models manufactured, designed or assembled by you.

26.     Produce any and all documents evidencing your efforts to either eliminate or safeguard against potential hazards to passengers riding in or utilizing the seat belt systems utilized in the 2002 Jeep Liberty or substantially similar models manufactured, designed or assembled by you.

27.     Produce documents that itemize this Defendant's cost for each individual component of the 2002 Jeep Liberty's passenger restraint system (including the seat belt system(s)), as well as any alternative passenger restraint system (including seat belt system) available at the time the 2002 Jeep Liberty's restraint systems were utilized.

28.     Produce all correspondences between you and any third party or Defendant in this litigation concerning the selection of the restraint systems (including the seat belt system(s)) contained in the 2002 Jeep Liberty.

29.    Please produce all documents which identify every address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.  This is often referred to as a memory map.

30.    Please produce all documents necessary to read and interpret the data in every address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.

31.    Please produce all documents necessary to determine the actual conditions which determine each item of data will be written to the each address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.  For example: The actual measurement which would cause a deployment loop fault code to be set.

32.    Please produce all documents which identify every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

33.    Please produce all documents which identify the each data address in every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

34.    Please produce all documents which are necessary to read and interpret each data address in every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board

Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

35. Please produce the Shop Manual for the following systems:

    a. The Crash Data Recorder;

    b. On board diagnostic reading devices;

    c. ABS systems;

    d. Transmission systems;

    e. Occupant Detection Systems;

    f. Back Up Sensors;

    g. Crash Avoidance Systems;

    h. Power Control Modules;

    i. Occupant Restraint Controller; and

    j. Optional side impact inflatable curtains.

36. Please produce the Operators Manual for the following systems:

    a. The Crash Data Recorder retrieval instrument;

    b. The on board diagnostic reading devices; and

    c. Occupant Restraint Controller.

37. Please produce the specifications for the following systems:

    a. The Crash Sensor system and each of its subcomponents (e.g., accelerometer, arming sensors, transistors, reserve energy capacitors);

    b. The Crash Data Recorder and each of its subcomponents;

    c. Any data communication bus or network; and

      d.   Occupant restraint controller.

38.    All documents which you sent to or received from Chrysler which discuss, refer, relate or pertain to the safety, performance, crashworthiness, virtues, qualities, characteristics, capabilities, installment or sale of side impact airbag inflatable curtains offered as optional equipment in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

39.    All documents which you sent to or received from Chrysler which discuss, refer, relate or pertain to the safety, performance, crashworthiness, virtues, qualities, characteristics, capabilities, installment or sale of the seat belt systems in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

40.    All documents generated by any person, committee, task force or team, including minutes of any meeting where discussions were held, which discuss, reflect, pertain or relate to the design or development of side impact airbag inflatable curtains in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.


            /s/J. Parker Miller
            J. Parker Miller (MIL138)
            Attorney for Plaintiffs


OF COUNSEL:

J. Parker Miller
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL 36103-4160
(334) 269-2343

## TO BE SERVED WITH THE COMPLAINT

ELECTRONICALLY FILED
10/17/2017 5:38 PM
01-CV-2017-904376.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT FOR
## JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| FRANKIE OVERTON, Administrator<br>of the Estate of SUE ANN GRAHAM,<br>Deceased; and SCOTT GRAHAM, as legal<br>guardian of JORDON GRAHAM, a minor<br>child,<br><br>     Plaintiff,<br><br>vs.<br><br>CHRYSLER GROUP LLC.;<br>FIAT CHRYSLER AUTOMOBILES<br>US, LLC (FCA US, LLC); RODERICUS<br>OBYRAN CARRINGTON; TRW<br>AUTOMOTIVE HOLDINGS CORP.,<br>f/k/a TRW, INC.; TRW AUTOMOTIVE,<br>INC.; TRW AUTOMOTIVE U.S. LLC;<br>TRW VEHICLE SAFETY SYSTEMS,<br>INC.; TRW AUTOMOTIVE US, LLC;<br>TRW SAFETY SYSTEMS, INC.; ZF<br>FRIEDRICHSHAFEN AG; ZF TRW<br>AUTOMOTIVE HOLDINGS CORP.;<br>and FICTITIOUS DEFENDANTS "1"<br>through "13" | CASE NO:<br><br>JURY DEMAND REQUESTED |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION TO DEFENDANT ZF FRIEDRICHSHAFEN AG

Plaintiff in the above-styled action propounds these discovery requests upon Defendant ZF Friedrichshafen AG, and requests that they be answered fully in writing and under oath within the time provided by the *Alabama Rules of Civil Procedure*.  Each request is addressed to the knowledge and information of Defendant's attorneys, investigators, agents, employees, and other representatives.  When a question is directed to Defendant, the question is also directed to the aforementioned persons.

These requests shall be deemed continuing so as to require supplemental answers if the persons or entities to whom these requests are addressed obtain further information between the time the initial answers are served and the time of trial.

## INTERROGATORIES

1.    Identify the person(s) answering and/or assisting in answering these interrogatories. As part of your response, please include the name, address, title and duties of the person(s) identified.

2.    If this Defendant's name is not correctly stated in the Complaint on file in this case, state the correct way this Defendant should have been designated as a party defendant in a lawsuit at the time of the occurrence made the basis of the lawsuit and at the time these interrogatories were answered.

3.    State the general corporate history of this Defendant from the date of incorporation to the present.  This should include, but not be limited to, the state of incorporation, date of incorporation and the principal place of business.

4.    Identify each and every insurer at issue in this case. This request includes the name, address and policy limits of each insurer or potential insurer of any type whatsoever that may be liable to satisfy part or all of a judgment or settlement which may entered in this action, or to indemnify or reimburse for payments made to satisfy any judgment or settlement in this case.

5.    Identify and "fully describe" the seatbelt systems contained on the 2002 Jeep Liberty. This request includes, but is not limited to, identification of the make and model number of each seatbelt system by location within the 2002 Jeep Liberty; identification of the component parts of each seat belt system by location within the 2002 Jeep Liberty; the total cost of each seatbelt system, as well as a breakdown of the cost by component part of each seatbelt system; the

specifications of each seatbelt system and their component parts; the purpose of each seatbelt system; the name, acronym and part number of the various parts which make up the seatbelt systems in the subject vehicle; the date(s) the seat belt systems were designed and manufactured; the locations where the seat belt systems were manufactured; and the name, address and phone number of each entity in the distribution chain.

6.      Identify and describe in detail this Defendant's responsibilities for the seatbelt systems in the 2002 Jeep Liberty?

7.      Identify and describe in detail the responsibilities of all other Defendants concerning the seatbelt systems in the 2002 Jeep Liberty?

8.      Identify and describe in detail the history of your involvement as related to Chrysler vehicles, including but not limited to, the Jeep Liberty line.

9.      Identify all persons responsible for the design of the seatbelt systems in the subject vehicle. As part of your response, please include the name and address of the person(s) responsible, including the chief engineer(s) involved, whether those persons are still employed by you, and if not, when they ceased employment with this Defendant.

10.     Identify all release engineers for any and all of the seatbelt systems used in the 2002 Jeep Liberty.

11.     To the extent any of the seatbelt systems of the type utilized in the subject 2002 Jeep Liberty have ever been the subject of a defect investigation or engineering analysis by NHTSA, please describe in detail those investigations and analysis. In responding to this request, please provide the date the investigation was initiated, all reasons for initiating the investigation, and the results of the investigation.

12.     Identify and describe fully any testing conducted on the seatbelt systems in the subject 2002 Jeep Liberty, including substantially similar seatbelt system models, to evaluate their performance in vehicle accidents, including rollover accidents.  As part of your response, please provide what testing was conducted, the dates of any such testing, the results of the testing, and the name, address and phone number of the person(s) and entity (if this Defendant, the appropriate department) responsible for such testing.

13.     Identify and describe the type of seat belt retractor(s) used in the subject vehicle's seatbelt systems by location within the vehicle. This request includes, but is not limited to, whether the retractor was dual sensitive; the performance standards for locking of the retractor; whether the retractor uses a web grabber; and whether the retractor has a pretensioner.

14.     Identify and describe in detail any testing that was conducted on the seat belt system retractors', as well as substantially similar retractors, to evaluate the performance of the retractor in a rollover accident, including the incidence of spool-out. As part of your answer, please identify what testing was conducted, the results of the testing, the dates of any such testing, and the name, addresses and phone number of the entity or department(s) responsible for such testing.

15.     Identify and describe in detail whether any of the subject vehicle's seat belt system retractors or substantially similar retractors were tested to evaluate their performance in rollovers, including the amount of pay out of webbing. As part of your answer, please include what testing was conducted, including the dates of such testing, the results of the testing, and the name, address and phone number of the entity or department(s) responsible for such testing.

16.     State each and every step taken by this Defendant to prevent the subject vehicle's seat belt systems' retractors from spooling out in the event of a rollover accident.

17.    State each and every step taken by this Defendant to prevent the subject vehicle's seat belt systems' retractors from releasing webbing in a rollover.

18.    State each and every step taken by this Defendant to prevent the seat belt retractors of the subject vehicle's seat belt systems from permitting intermittent release of webbing in a vehicle accident, including a rollover accident.

19.    Please describe each and every change to the design of each retractor/retractor assembly contained within the subject 2002 Jeep Liberty from the date it was first marketed by this Defendant to the present date, and the reason for each and every change.

20.    Please describe in detail all efforts undertaken by TRW to monitor the performance of its seat belt systems in the field to ensure they performed in a reasonably safe manner during rollover accidents.

21.    Identify all person(s) known, believed or suspected by this Defendant or its agents to possess knowledge of this matter, including the subject vehicle, any of its component parts, the persons involved in the accident, any witnesses to the accident, or any efforts undertaken to inspect, test and/or photograph the subject 2002 Jeep Liberty.

22.    Identify and describe in detail whether any testing was conducted on the subject vehicle's seat belt systems' retractors or substantially similar retractors to evaluate the amount of intermittent release of webbing. As part of your response, please identify what testing was conducted, the results of the testing, the dates of such testing, and the name, address and phone number of the entity or department(s) responsible for such testing.

23.    State whether you believe Sue Ann Graham received her fatal injuries inside or outside of the subject 2002 Jeep Liberty vehicle.

24.    Identify the TRW seatbelt systems using the same or substantially similar TRW retractors which were tested (whether crash, sled or rollover tested) by or for TRW and/or Chrysler.

25.    Identify and describe whether this Defendant ever recommended to Chrysler that a pretensioner application that remains locked with belt tension regardless of motion be incorporated into the seat belt systems of the Jeep Liberty.

26.    Identify and describe whether this Defendant ever notified Chrysler that conventional retractors can experience intermittent release of webbing during rollover accidents?

27.    Identify each and every analysis (whether it be a test, study, computer simulation, or any other analysis) undertaken on the 2002 Jeep Liberty's seat belt systems to evaluate the seat belt systems' ability to prevent occupant ejection (whether partial or full) in a rollover accident.

28.    Identify and describe any incidents, including but not limited to any accidents, claims or lawsuits, involving the ejection or partial ejection of an occupant in a vehicle equipped with the same or substantially similar seat belt systems as in the subject vehicle. As part of your response, please provide the date of the accident / incident; the name and address of the person injured as well as their counsel, if applicable; the make, model and year of the vehicle involved in the accident / incident; and the caption and case number of the lawsuit, if one was commenced.

29.    Identify and describe all vehicles that share the same seatbelt and/or seat belt buckle system(s) that are utilized in the subject vehicle. As part of your response, please identify the manufacturer, make and model of each vehicle utilizing the above-referenced seat belt and/or seat belt buckle system(s).

30.    Identify and describe all information provided to any other Defendant (including Chrysler and/or FCA) concerning the seatbelt systems in the 2002 Jeep Liberty.

31.     If you contend that the accident alleged in the Complaint and/or the Plaintiffs'

alleged injuries and damages were caused, in whole or in part, by the subject 2002 Jeep Liberty

being improperly repaired, maintained, altered, modified or serviced, please describe fully. As part

of your answer, please provide the nature and date(s) of the alleged improper repair, maintenance,

alteration, modification or service.

32.     If you contend that the action, activity or failure to act of any person or entity other

than the Plaintiffs contributed to cause the accident alleged in the Complaint or Plaintiffs' alleged

injuries and damages, please describe in detail. As part of your response, please provide the name

and address of such person or entity; the specific nature of such action, activity or failure to act;

how such actions, activity or failure to act contributed to cause the incident alleged in the Plaintiffs'

alleged injuries and damages; the identity of each person with knowledge that some other person

or defendant contributed to the incident or Plaintiffs' injuries or damages.

33.     Identify all persons you expect to call as an expert witness at the trial of this action.

As part of your answer, please provide the name of the expert(s) you expect to call and the subject

matter that you expect your expert(s) to testify to.

34.     Identify all expert opinions that your experts will offer at the trial of this action. As

part of your answer, please provide the substance of the facts and opinions to which he or she is

expected to testify, a summary of the grounds of their opinions, all supporting literature they intend

to rely upon to form their opinions, and any and all reports and draft reports that they intend to

offer in this matter.

## **REQUEST FOR PRODUCTION**

1.     Produce all documents (tests, studies, etc.) referenced in your responses to the

Plaintiffs' First Set of Interrogatories.

2.      Produce any and all product literature distributed, printed or circulated by this Defendant, and which contain photographs, diagrams, descriptions or analysis of the seat belt systems in the subject 2002 Jeep Liberty. This Request includes all brochures, advertisements, white papers, marketing materials and information packets.

3.      Produce any and all documents or writings prepared by this Defendant for or accompanying the seat belt systems contained in the subject 2002 Jeep Liberty which you contend contained warnings of any dangers which users (including engineers, manufacturers, consumers, etc.) of the product may be exposed to and/or containing any instructions for use.

4.      Produce any and all photographs or videotapes of the subject Jeep Liberty made the basis of this action, including any photographs or videotapes of the accident scene or the Plaintiffs.

5.      Produce any and all sales documents including invoices, purchase orders, bills of lading, and shipping invoices relating to the subject Jeep Liberty's seat belt systems made the basis of this lawsuit.

6.      Produce a complete and legible copy of any and all complaints received by you from any source wherein it was alleged that an injury or death occurred as a result of a defective and/or failed seat belt restraint system in any of the seat belt restraint systems manufactured, designed or assembled by this Defendant, including those utilized in the 2002 Jeep Liberty.

7.      Produce any and all patents related to the seat belt design(s) on the 2002 Jeep Liberty or substantially similar seat belt design(s), held by you or any of your employees, including copies of any patent applications related to the passenger restraint systems.

8.      Produce any and all brochures, sales lists or other documents which would reflect optional equipment or any optional design configuration for seat belt systems available for the 2002 Jeep Liberty.

9.      Produce any and all expert reports which have been prepared in connection with this lawsuit or the incident giving rise to this lawsuit, if the expert is prepared to, or may, testify in this case.  This request should also encompass any report prepared by any other person which has been reviewed by any expert intended to testify at the trial of this case.

10.      Produce copies of any and all statements previously made by the Plaintiffs concerning the subject matter of this lawsuit, including any written statements signed or otherwise adopted or approved by the Plaintiffs and any stenographic, mechanical, electrical or other type of recording or any transcription thereof made by the Plaintiffs hereto and recorded.

11.      Produce copies of any and all documents, reports or other written records pertaining to any investigation of this incident, which were generated by persons other than this defendant.

12.      Produce sketches, blueprints, schematics and/or drawings of the design of the passenger restraint system (including the seat belt system(s) for all seats) for the 2002 Jeep Liberty and for the Jeep Liberty models preceding and subsequent to the 2002 Jeep Liberty.

13.      Produce any and all documents, photographs or other physical evidence which will be utilized by you and offered as evidence at the trial of this case.

14.      Produce any and all documents related to any investigation or hearings conducted by any governmental entity related to the seat belt systems contained in the 2002 Jeep Liberty or substantially similar seat belt systems manufactured, designed and/or assembled by you.

15.     Produce a copy of any and all recalls issued for the seat belt systems contained in the 2002 Jeep Liberty or substantially similar seat belt systems manufactured, designed and/or assembled by you.

16.     Produce a copy of the policies and/or procedures for documenting customer comments/complaints regarding this Defendant's products.

17.     Produce a copy of the policies and/or procedures for document retention for this Defendant.

18.     Produce a complete and legible copy of any and all failure modes and effects analysis for the front seats and passenger restraint systems, including their component parts, on the 2002 Jeep Liberty and for the five years preceding and subsequent to the 2002 model.

19.     Produce a complete and legible copy of any and all parts lists which depict parts for the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

20.     Produce a complete and legible copy of any and all meeting minutes, presentations, documentation, visual aids, or any other documents or things which discuss or depict the as-manufactured design of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty or any of this Defendant's substantially similar seat belt system models manufactured, designed and/or assembled by you.

21.     Produce copies of all standards, tests, reports, published papers, unpublished papers or treatises or other exhibits which this Defendant expects to offer into evidence at the trial of this case.

22.     Produce any and all documents, memos, and/or tests evidencing or relating to studies and analyses conducted by or on behalf of this Defendant related to occupant protection from passenger restraint failures (including seat belt system(s) failures).

23.    Please produce a complete and legible copy of any and all engineering drawings, blueprints, photographs, video, computer files, notes, memorandum, and/or studies for the 2002 Jeep Liberty that would show:

    a.    any passenger restraint system design change or engineering change;

    b.    any proposed front seat or passenger restraint system design or engineering change.

24.    Please produce a complete and legible list or roster of all individuals, including name and address, who were involved in the design, manufacture or assembly of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

25.    Produce any and all hazard analyses and/or any and all analyses performed by you to assess potential hazards to passengers riding in or utilizing the seat belt systems utilized in the 2002 Jeep Liberty or substantially similar models manufactured, designed or assembled by you.

26.    Produce any and all documents evidencing your efforts to either eliminate or safeguard against potential hazards to passengers riding in or utilizing the seat belt systems utilized in the 2002 Jeep Liberty or substantially similar models manufactured, designed or assembled by you.

27.    Produce documents that itemize this Defendant's cost for each individual component of the 2002 Jeep Liberty's passenger restraint system (including the seat belt system(s)), as well as any alternative passenger restraint system (including seat belt system) available at the time the 2002 Jeep Liberty's restraint systems were utilized.

28.    Produce all correspondences between you and any third party or Defendant in this litigation concerning the selection of the restraint systems (including the seat belt system(s)) contained in the 2002 Jeep Liberty.

29.    Please produce all documents which identify every address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.  This is often referred to as a memory map.

30.    Please produce all documents necessary to read and interpret the data in every address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.

31.    Please produce all documents necessary to determine the actual conditions which determine each item of data will be written to the each address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.  For example: The actual measurement which would cause a deployment loop fault code to be set.

32.    Please produce all documents which identify every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

33.    Please produce all documents which identify the each data address in every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

34.    Please produce all documents which are necessary to read and interpret each data address in every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board

Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

35.    Please produce the Shop Manual for the following systems:

    a.  The Crash Data Recorder;

    b.  On board diagnostic reading devices;

    c.  ABS systems;

    d.  Transmission systems;

    e.  Occupant Detection Systems;

    f.  Back Up Sensors;

    g.  Crash Avoidance Systems;

    h.  Power Control Modules;

    i.  Occupant Restraint Controller; and

    j.  Optional side impact inflatable curtains.

36.    Please produce the Operators Manual for the following systems:

    a.  The Crash Data Recorder retrieval instrument;

    b.  The on board diagnostic reading devices; and

    c.  Occupant Restraint Controller.

37.    Please produce the specifications for the following systems:

    a.  The Crash Sensor system and each of its subcomponents (e.g., accelerometer, arming sensors, transistors, reserve energy capacitors);

    b.  The Crash Data Recorder and each of its subcomponents;

    c.  Any data communication bus or network; and

      d.  Occupant restraint controller.

38.    All documents which you sent to or received from Chrysler which discuss, refer, relate or pertain to the safety, performance, crashworthiness, virtues, qualities, characteristics, capabilities, installment or sale of side impact airbag inflatable curtains offered as optional equipment in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

39.    All documents which you sent to or received from Chrysler which discuss, refer, relate or pertain to the safety, performance, crashworthiness, virtues, qualities, characteristics, capabilities, installment or sale of the seat belt systems in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

40.    All documents generated by any person, committee, task force or team, including minutes of any meeting where discussions were held, which discuss, reflect, pertain or relate to the design or development of side impact airbag inflatable curtains in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

                     /s/J. Parker Miller
                     J. Parker Miller (MIL138)
                     Attorney for Plaintiffs

OF COUNSEL:

J. Parker Miller
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL 36103-4160
(334) 269-2343

**TO BE SERVED WITH THE COMPLAINT**

ELECTRONICALLY FILED
10/17/2017 5:38 PM
01-CV-2017-904376.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT FOR
## JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| **FRANKIE OVERTON, Administrator** * | |
| **of the Estate of SUE ANN GRAHAM,** * | |
| **Deceased; and SCOTT GRAHAM, as legal** * | |
| **guardian of JORDON GRAHAM, a minor** * | |
| **child,** * | **CASE NO:** |
| * | |
| **Plaintiff,** * | **JURY DEMAND REQUESTED** |
| * | |
| **vs.** * | |
| * | |
| **CHRYSLER GROUP LLC.;** * | |
| **FIAT CHRYSLER AUTOMOBILES** * | |
| **US, LLC (FCA US, LLC); RODERICUS** * | |
| **OBYRAN CARRINGTON; TRW** * | |
| **AUTOMOTIVE HOLDINGS CORP.,** * | |
| **f/k/a TRW, INC.; TRW AUTOMOTIVE,** * | |
| **INC.; TRW AUTOMOTIVE U.S. LLC;** * | |
| **TRW VEHICLE SAFETY SYSTEMS,** * | |
| **INC.; TRW AUTOMOTIVE US, LLC;** * | |
| **TRW SAFETY SYSTEMS, INC.; ZF** * | |
| **FRIEDRICHSHAFEN AG; ZF TRW** * | |
| **AUTOMOTIVE HOLDINGS CORP.;** * | |
| **and FICTITIOUS DEFENDANTS "1"** * | |
| **through "13"** * | |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION TO DEFENDANT ZF TRW AUTOMOTIVE HOLDINGS CORP.

Plaintiff in the above-styled action propounds these discovery requests upon Defendant ZF TRW Automotive Holdings Corp., and requests that they be answered fully in writing and under oath within the time provided by the *Alabama Rules of Civil Procedure*. Each request is addressed to the knowledge and information of Defendant's attorneys, investigators, agents, employees, and other representatives. When a question is directed to Defendant, the question is also directed to the aforementioned persons.

These requests shall be deemed continuing so as to require supplemental answers if the persons or entities to whom these requests are addressed obtain further information between the time the initial answers are served and the time of trial.

## **<u>INTERROGATORIES</u>**

1.       Identify the person(s) answering and/or assisting in answering these interrogatories. As part of your response, please include the name, address, title and duties of the person(s) identified.

2.       If this Defendant's name is not correctly stated in the Complaint on file in this case, state the correct way this Defendant should have been designated as a party defendant in a lawsuit at the time of the occurrence made the basis of the lawsuit and at the time these interrogatories were answered.

3.       State the general corporate history of this Defendant from the date of incorporation to the present.  This should include, but not be limited to, the state of incorporation, date of incorporation and the principal place of business.

4.       Identify each and every insurer at issue in this case. This request includes the name, address and policy limits of each insurer or potential insurer of any type whatsoever that may be liable to satisfy part or all of a judgment or settlement which may entered in this action, or to indemnify or reimburse for payments made to satisfy any judgment or settlement in this case.

5.       Identify and "fully describe" the seatbelt systems contained on the 2002 Jeep Liberty. This request includes, but is not limited to, identification of the make and model number of each seatbelt system by location within the 2002 Jeep Liberty; identification of the component parts of each seat belt system by location within the 2002 Jeep Liberty; the total cost of each seatbelt system, as well as a breakdown of the cost by component part of each seatbelt system; the

specifications of each seatbelt system and their component parts; the purpose of each seatbelt system; the name, acronym and part number of the various parts which make up the seatbelt systems in the subject vehicle; the date(s) the seat belt systems were designed and manufactured; the locations where the seat belt systems were manufactured; and the name, address and phone number of each entity in the distribution chain.

6.    Identify and describe in detail this Defendant's responsibilities for the seatbelt systems in the 2002 Jeep Liberty?

7.    Identify and describe in detail the responsibilities of all other Defendants concerning the seatbelt systems in the 2002 Jeep Liberty?

8.    Identify and describe in detail the history of your involvement as related to Chrysler vehicles, including but not limited to, the Jeep Liberty line.

9.    Identify all persons responsible for the design of the seatbelt systems in the subject vehicle. As part of your response, please include the name and address of the person(s) responsible, including the chief engineer(s) involved, whether those persons are still employed by you, and if not, when they ceased employment with this Defendant.

10.    Identify all release engineers for any and all of the seatbelt systems used in the 2002 Jeep Liberty.

11.    To the extent any of the seatbelt systems of the type utilized in the subject 2002 Jeep Liberty have ever been the subject of a defect investigation or engineering analysis by NHTSA, please describe in detail those investigations and analysis. In responding to this request, please provide the date the investigation was initiated, all reasons for initiating the investigation, and the results of the investigation.

12.    Identify and describe fully any testing conducted on the seatbelt systems in the subject 2002 Jeep Liberty, including substantially similar seatbelt system models, to evaluate their performance in vehicle accidents, including rollover accidents.  As part of your response, please provide what testing was conducted, the dates of any such testing, the results of the testing, and the name, address and phone number of the person(s) and entity (if this Defendant, the appropriate department) responsible for such testing.

13.    Identify and describe the type of seat belt retractor(s) used in the subject vehicle's seatbelt systems by location within the vehicle. This request includes, but is not limited to, whether the retractor was dual sensitive; the performance standards for locking of the retractor; whether the retractor uses a web grabber; and whether the retractor has a pretensioner.

14.    Identify and describe in detail any testing that was conducted on the seat belt system retractors', as well as substantially similar retractors, to evaluate the performance of the retractor in a rollover accident, including the incidence of spool-out. As part of your answer, please identify what testing was conducted, the results of the testing, the dates of any such testing, and the name, addresses and phone number of the entity or department(s) responsible for such testing.

15.    Identify and describe in detail whether any of the subject vehicle's seat belt system retractors or substantially similar retractors were tested to evaluate their performance in rollovers, including the amount of pay out of webbing. As part of your answer, please include what testing was conducted, including the dates of such testing, the results of the testing, and the name, address and phone number of the entity or department(s) responsible for such testing.

16.    State each and every step taken by this Defendant to prevent the subject vehicle's seat belt systems' retractors from spooling out in the event of a rollover accident.

17.    State each and every step taken by this Defendant to prevent the subject vehicle's seat belt systems' retractors from releasing webbing in a rollover.

18.    State each and every step taken by this Defendant to prevent the seat belt retractors of the subject vehicle's seat belt systems from permitting intermittent release of webbing in a vehicle accident, including a rollover accident.

19.    Please describe each and every change to the design of each retractor/retractor assembly contained within the subject 2002 Jeep Liberty from the date it was first marketed by this Defendant to the present date, and the reason for each and every change.

20.    Please describe in detail all efforts undertaken by TRW to monitor the performance of its seat belt systems in the field to ensure they performed in a reasonably safe manner during rollover accidents.

21.    Identify all person(s) known, believed or suspected by this Defendant or its agents to possess knowledge of this matter, including the subject vehicle, any of its component parts, the persons involved in the accident, any witnesses to the accident, or any efforts undertaken to inspect, test and/or photograph the subject 2002 Jeep Liberty.

22.    Identify and describe in detail whether any testing was conducted on the subject vehicle's seat belt systems' retractors or substantially similar retractors to evaluate the amount of intermittent release of webbing. As part of your response, please identify what testing was conducted, the results of the testing, the dates of such testing, and the name, address and phone number of the entity or department(s) responsible for such testing.

23.    State whether you believe Sue Ann Graham received her fatal injuries inside or outside of the subject 2002 Jeep Liberty vehicle.

24.     Identify the TRW seatbelt systems using the same or substantially similar TRW retractors which were tested (whether crash, sled or rollover tested) by or for TRW and/or Chrysler.

25.     Identify and describe whether this Defendant ever recommended to Chrysler that a pretensioner application that remains locked with belt tension regardless of motion be incorporated into the seat belt systems of the Jeep Liberty.

26.     Identify and describe whether this Defendant ever notified Chrysler that conventional retractors can experience intermittent release of webbing during rollover accidents?

27.     Identify each and every analysis (whether it be a test, study, computer simulation, or any other analysis) undertaken on the 2002 Jeep Liberty's seat belt systems  to evaluate the seat belt systems' ability to prevent occupant ejection (whether partial or full) in a rollover accident.

28.     Identify and describe any incidents, including but not limited to any accidents, claims or lawsuits, involving the ejection or partial ejection of an occupant in a vehicle equipped with the same or substantially similar seat belt systems as in the subject vehicle. As part of your response, please provide the date of the accident / incident; the name and address of the person injured as well as their counsel, if applicable; the make, model and year of the vehicle involved in the accident / incident; and the caption and case number of the lawsuit, if one was commenced.

29.     Identify and describe all vehicles that share the same seatbelt and/or seat belt buckle system(s) that are utilized in the subject vehicle. As part of your response, please identify the manufacturer, make and model of each vehicle utilizing the above-referenced seat belt and/or seat belt buckle system(s).

30.     Identify and describe all information provided to any other Defendant (including Chrysler and/or FCA) concerning the seatbelt systems in the 2002 Jeep Liberty.

31.    If you contend that the accident alleged in the Complaint and/or the Plaintiffs' alleged injuries and damages were caused, in whole or in part, by the subject 2002 Jeep Liberty being improperly repaired, maintained, altered, modified or serviced, please describe fully. As part of your answer, please provide the nature and date(s) of the alleged improper repair, maintenance, alteration, modification or service.

32.    If you contend that the action, activity or failure to act of any person or entity other than the Plaintiffs contributed to cause the accident alleged in the Complaint or Plaintiffs' alleged injuries and damages, please describe in detail. As part of your response, please provide the name and address of such person or entity; the specific nature of such action, activity or failure to act; how such actions, activity or failure to act contributed to cause the incident alleged in the Plaintiffs' alleged injuries and damages; the identity of each person with knowledge that some other person or defendant contributed to the incident or Plaintiffs' injuries or damages.

33.    Identify all persons you expect to call as an expert witness at the trial of this action. As part of your answer, please provide the name of the expert(s) you expect to call and the subject matter that you expect your expert(s) to testify to.

34.    Identify all expert opinions that your experts will offer at the trial of this action. As part of your answer, please provide the substance of the facts and opinions to which he or she is expected to testify, a summary of the grounds of their opinions, all supporting literature they intend to rely upon to form their opinions, and any and all reports and draft reports that they intend to offer in this matter.

## REQUEST FOR PRODUCTION

1.    Produce all documents (tests, studies, etc.) referenced in your responses to the Plaintiffs' First Set of Interrogatories.

2.      Produce any and all product literature distributed, printed or circulated by this Defendant, and which contain photographs, diagrams, descriptions or analysis of the seat belt systems in the subject 2002 Jeep Liberty. This Request includes all brochures, advertisements, white papers, marketing materials and information packets.

3.      Produce any and all documents or writings prepared by this Defendant for or accompanying the seat belt systems contained in the subject 2002 Jeep Liberty which you contend contained warnings of any dangers which users (including engineers, manufacturers, consumers, etc.) of the product may be exposed to and/or containing any instructions for use.

4.      Produce any and all photographs or videotapes of the subject Jeep Liberty made the basis of this action, including any photographs or videotapes of the accident scene or the Plaintiffs.

5.      Produce any and all sales documents including invoices, purchase orders, bills of lading, and shipping invoices relating to the subject Jeep Liberty's seat belt systems made the basis of this lawsuit.

6.      Produce a complete and legible copy of any and all complaints received by you from any source wherein it was alleged that an injury or death occurred as a result of a defective and/or failed seat belt restraint system in any of the seat belt restraint systems manufactured, designed or assembled by this Defendant, including those utilized in the 2002 Jeep Liberty.

7.      Produce any and all patents related to the seat belt design(s) on the 2002 Jeep Liberty or substantially similar seat belt design(s), held by you or any of your employees, including copies of any patent applications related to the passenger restraint systems.

8.     Produce any and all brochures, sales lists or other documents which would reflect optional equipment or any optional design configuration for seat belt systems available for the 2002 Jeep Liberty.

9.     Produce any and all expert reports which have been prepared in connection with this lawsuit or the incident giving rise to this lawsuit, if the expert is prepared to, or may, testify in this case.  This request should also encompass any report prepared by any other person which has been reviewed by any expert intended to testify at the trial of this case.

10.     Produce copies of any and all statements previously made by the Plaintiffs concerning the subject matter of this lawsuit, including any written statements signed or otherwise adopted or approved by the Plaintiffs and any stenographic, mechanical, electrical or other type of recording or any transcription thereof made by the Plaintiffs hereto and recorded.

11.     Produce copies of any and all documents, reports or other written records pertaining to any investigation of this incident, which were generated by persons other than this defendant.

12.     Produce sketches, blueprints, schematics and/or drawings of the design of the passenger restraint system (including the seat belt system(s) for all seats) for the 2002 Jeep Liberty and for the Jeep Liberty models preceding and subsequent to the 2002 Jeep Liberty.

13.     Produce any and all documents, photographs or other physical evidence which will be utilized by you and offered as evidence at the trial of this case.

14.     Produce any and all documents related to any investigation or hearings conducted by any governmental entity related to the seat belt systems contained in the 2002 Jeep Liberty or substantially similar seat belt systems manufactured, designed and/or assembled by you.

15.     Produce a copy of any and all recalls issued for the seat belt systems contained in the 2002 Jeep Liberty or substantially similar seat belt systems manufactured, designed and/or assembled by you.

16.     Produce a copy of the policies and/or procedures for documenting customer comments/complaints regarding this Defendant's products.

17.     Produce a copy of the policies and/or procedures for document retention for this Defendant.

18.     Produce a complete and legible copy of any and all failure modes and effects analysis for the front seats and passenger restraint systems, including their component parts, on the 2002 Jeep Liberty and for the five years preceding and subsequent to the 2002 model.

19.     Produce a complete and legible copy of any and all parts lists which depict parts for the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

20.     Produce a complete and legible copy of any and all meeting minutes, presentations, documentation, visual aids, or any other documents or things which discuss or depict the as-manufactured design of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty or any of this Defendant's substantially similar seat belt system models manufactured, designed and/or assembled by you.

21.     Produce copies of all standards, tests, reports, published papers, unpublished papers or treatises or other exhibits which this Defendant expects to offer into evidence at the trial of this case.

22.     Produce any and all documents, memos, and/or tests evidencing or relating to studies and analyses conducted by or on behalf of this Defendant related to occupant protection from passenger restraint failures (including seat belt system(s) failures).

23.    Please produce a complete and legible copy of any and all engineering drawings, blueprints, photographs, video, computer files, notes, memorandum, and/or studies for the 2002 Jeep Liberty that would show:

      a.   any passenger restraint system design change or engineering change;

      b.   any proposed front seat or passenger restraint system design or engineering change.

24.    Please produce a complete and legible list or roster of all individuals, including name and address, who were involved in the design, manufacture or assembly of the passenger restraint system(s) (including seat belt system(s)) for the 2002 Jeep Liberty.

25.    Produce any and all hazard analyses and/or any and all analyses performed by you to assess potential hazards to passengers riding in or utilizing the seat belt systems utilized in the 2002 Jeep Liberty or substantially similar models manufactured, designed or assembled by you.

26.    Produce any and all documents evidencing your efforts to either eliminate or safeguard against potential hazards to passengers riding in or utilizing the seat belt systems utilized in the 2002 Jeep Liberty or substantially similar models manufactured, designed or assembled by you.

27.    Produce documents that itemize this Defendant's cost for each individual component of the 2002 Jeep Liberty's passenger restraint system (including the seat belt system(s)), as well as any alternative passenger restraint system (including seat belt system) available at the time the 2002 Jeep Liberty's restraint systems were utilized.

28.    Produce all correspondences between you and any third party or Defendant in this litigation concerning the selection of the restraint systems (including the seat belt system(s)) contained in the 2002 Jeep Liberty.

29.     Please produce all documents which identify every address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.  This is often referred to as a memory map.

30.     Please produce all documents necessary to read and interpret the data in every address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.

31.     Please produce all documents necessary to determine the actual conditions which determine each item of data will be written to the each address in the EEPROM, RAM and ROM in the Crash Data Recorder or Occupant Restraint Controller.  For example: The actual measurement which would cause a deployment loop fault code to be set.

32.     Please produce all documents which identify every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

33.     Please produce all documents which identify the each data address in every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

34.     Please produce all documents which are necessary to read and interpret each data address in every device which records any data related to the performance, condition, and operation of the vehicle and any component in the vehicle.  This includes but is not limited to "On Board

Diagnostic" devices, Occupant Restraint Controller, ABS systems, transmission systems, Occupant Detection Systems, Back Up Sensors, Crash Avoidance Systems and Power Control Modules.

35.     Please produce the Shop Manual for the following systems:

a.  The Crash Data Recorder;

b.  On board diagnostic reading devices;

c.  ABS systems;

d.  Transmission systems;

e.  Occupant Detection Systems;

f.  Back Up Sensors;

g.  Crash Avoidance Systems;

h.  Power Control Modules;

i.  Occupant Restraint Controller; and

j.  Optional side impact inflatable curtains.

36.     Please produce the Operators Manual for the following systems:

a.  The Crash Data Recorder retrieval instrument;

b.  The on board diagnostic reading devices; and

c.  Occupant Restraint Controller.

37.     Please produce the specifications for the following systems:

a.  The Crash Sensor system and each of its subcomponents (e.g., accelerometer, arming sensors, transistors, reserve energy capacitors);

b.  The Crash Data Recorder and each of its subcomponents;

c.  Any data communication bus or network; and

d.   Occupant restraint controller.

38.    All documents which you sent to or received from Chrysler which discuss, refer, relate or pertain to the safety, performance, crashworthiness, virtues, qualities, characteristics, capabilities, installment or sale of side impact airbag inflatable curtains offered as optional equipment in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

39.    All documents which you sent to or received from Chrysler which discuss, refer, relate or pertain to the safety, performance, crashworthiness, virtues, qualities, characteristics, capabilities, installment or sale of the seat belt systems in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.

40.    All documents generated by any person, committee, task force or team, including minutes of any meeting where discussions were held, which discuss, reflect, pertain or relate to the design or development of side impact airbag inflatable curtains in the Jeep Liberty, including but not limited to the 2002 Jeep Liberty.


/s/J. Parker Miller
J. Parker Miller (MIL138)
Attorney for Plaintiffs


OF COUNSEL:

J. Parker Miller
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL 36103-4160
(334) 269-2343

**TO BE SERVED WITH THE COMPLAINT**