Hearing Date: June 7, 2018, at 10:00 a.m. (ET)
Objection Deadline: May 4, 2018
Reply Deadline: May 18, 2018

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : | Case No. 09-50002 (SMB) |
| Old Carco LLC, *et al.*, | : |  |
|  | : | Jointly Administered |
| Debtors. | : |  |
|  | : |  |
|  | : |  |

**PLAINTIFFS' OPPOSITION TO FCA US LL'S MOTION, PURSUANT TO SECTION 350 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 5010 AND LOCAL BANKRUPTCY RULE 5010-1, TO REOPEN THE CHAPTER 11 CASE OF OLD CARCO LLC FOR THE LIMITED PURPOSE OF CONSIDERING FCA US LL'S MOTION TO ENFORCE THE SALE ORDER**

**Cole Schotz P.C.**
Mark Tsukerman
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
Tel: (212) 752-8000
*Bankruptcy Counsel for Plaintiffs*
*Frankie Overton, as Executor of the*
*Estate of Sue Ann Graham; and Scott*
*Graham, as legal guardian of J.G., a*
*minor child*

**Beasley, Allen, Crow, Methvin**
**Portis & Miles, P.C.**
J. Parker Miller  (*pro hac vice*)
Stephanie Monplaisir  (*pro hac vice*)
P.O. Box 4160
Montgomery, Alabama 36103-4160
Tel: (334) 269-2343
*Lead Counsel for Plaintiffs Frankie Overton,*
*as Executor of the Estate of Sue Ann Graham;*
*and Scott Graham, as legal guardian of J.G.,*
*a minor child*

i

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ...................................................................................................................3

    I.      THE CHRYSLER BANKRUPTCY PROCEEDINGS .........................................3

    II.    THE JUNE 2016 ACCIDENT ...........................................................................7

    III.   PLAINTIFFS' ALABAMA STATE LAW ACTION ..........................................7

    IV.   ALABAMA DISTRICT COURT'S DECISION AND RELATED
          PROCEEDINGS...........................................................................................9

    V.    FCA'S MOTION TO REOPEN ......................................................................10

ARGUMENT.....................................................................................................................12

    I.      FCA HAS FAILED TO ESTABLISH CAUSE TO REOPEN THE
          BANKRUPTCY CASE...................................................................................12

          A.     Standard on Motion to Reopen .............................................................12

          B.     Factor 1:  The Length of Time the Case was Closed ..............................13

          C.     Factor 2:  The State Court Has Jurisdiction to Resolve This Dispute.......13

          D.     Factor 3:  Whether the Bankruptcy Court Previously Determined the
                Appropriate Forum to Adjudicate the Dispute.......................................15

          E.     Factor 4:  FCA Will Suffer No Prejudice if the Motion is Denied ..........16

          F.     Factor 5:  The Requested Relief Can Provide No Benefit to the Debtors
                and Will Have No Impact on the Administration of the Estate ................16

           G.     Factor 6: No Entitlement to the Relief Sought as to Graham ...............16

    II.    IN THE ALTERNATIVE, THIS COURT SHOULD ABSTAIN FROM
          DECIDING FCA'S MOTION TO ENFORCE ...................................................19

CONCLUSION...................................................................................................................22

57860/0001-15817846v1

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page**

*Charter Commnc'ns,* No. 09–11435(JMP),
   2010 WL 502764 (Bankr.S.D.N.Y. Feb. 8, 2010) ................................................................15

*Citizens Bank & Trust Co. v. Case (In re Case),*
   937 F.2d 1014 (5th Cir. 1991) ..........................................................................................13

*Elias v. U.S. Trustee (In re Elias),*
   188 F.3d 1160 (9th Cir. 1999) ..........................................................................................14

*Dearden v. FCA US LLC (In re Old Carco LLC),*
   Adv. Pro. 17-01062 (SMB), 2018 WL 1352695 (Bankr. S.D.N.Y. Mar. 15, 2018)....... 3, 17, 18

*In re Palumbo,*
   556 B.R. 546 (Bankr. W.D.N.Y. 2016) ..................................................................... 12, 13, 14

*In re Atari, Inc.,*
   No. 13-10176 (JLG), 2016 WL 1618346 (Bankr. S.D.N.Y. Apr. 20, 2016)............... 12, 15, 16

*In re Dreier,*
   438 B.R. 449 (Bankr. S.D.N.Y. 2010) ...........................................................................20, 21

*In re Hager,*
   2006 WL 4452997 (Bankr. D. Nev. Feb. 27, 2006) (bankruptcy court denied ........................17

*In re HBLS, L.P.,*
   468 B.R. 634 (Bankr. S.D.N.Y. 2012) ...............................................................................14

*In re Lemoine,*
   No. 12-11152, 2012 WL 5906939 (Bankr. E.D. Pa. Nov. 26, 2012)......................................19

*In re Lowery,*
   398 B.R. 512 (Bankr. E.D.N.Y. 2008) ...............................................................................13

*In re Lyondell Chem. Co.,*
   445 B.R. 277 (Bankr.S.D.N.Y.2011) .................................................................................15

*In re Motors Liquidation Co.,*
   457 B.R. 276 (Bankr. S.D.N.Y. 2011) ..........................................................................19, 21

*In re Neil's Mazel, Inc.,*
   492 B.R. 620 (Bankr. E.D.N.Y. 2013) ...............................................................................12

iii

*In re Odin Demolition & Asset Recovery, LLC,*
    544 B.R. 615 (Bankr. S.D. Tex. 2016) .................................................................................13

*In re Wilson,*
    492 B.R. 691 (Bankr. S.D.N.Y. 2013) ................................................................................12

*Mathias v. Fiat Chrysler Automobiles, NV,*
    No. 5:16-CV-01185-EJD, 2016 WL 5109967 (N.D. Cal. Sept. 21, 2016) ...........................10

*Matter of Carter,*
    38 B.R. 636 (Bankr. D. Conn. 1984) ..................................................................................15

*Mid–City Bank v. Skyline Woods Homeowners Ass'n (In re Skyline Woods,*
    *Country Club),* 431 B.R. 830 (8th Cir. B.A.P. 2010) ............................................................14

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n,*
    457 U.S. 423, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982) ......................................................20

*Osuji v. New Century Mortgage Corp. (In re Osuji),*
    564 B.R. 180 (Bankr. E.D.N.Y. 2017) ................................................................ 19, 20, 21

*Overton v. Chrysler Group LLC,*
    Case No. 2:17-cv-01983-RDP, 2018 WL 847772 (N.D. Ala. Feb. 13, 2018) ..................passim

*In re Petrie Retail, Inc.,*
    304 F.3d 223 (2d Cir. 2002) ...............................................................................................15

*Shapiro v. Logistec USA, Inc.,*
    412 F.3d 307 (2d Cir. 2005) ...............................................................................................17

*Virgin Atlantic Airways, Ltd. v. Nat. Mediation Bd.,*
    956 F.2d 1245 (2d Cir. 1992) .............................................................................................17

## Statutes

28 U.S.C. § 1334.................................................................................................. 9, 10, 19, 20
28 U.S.C. § 1441....................................................................................................................9
28 U.S.C. § 1446....................................................................................................................9
28 U.S.C. § 1447..................................................................................................................16
28 U.S.C. § 1452............................................................................................................. 9, 10
Bankruptcy Code section 350(b) ....................................................................................passim

## Rules

Rule 12(b)(6) of the Federal Rules of Civil Procedure ...............................................................9

57860/0001-15817846v1

Plaintiffs Frankie Overton ("**Overton**"), as executor of the estate of Sue Ann Graham, and Scott Graham ("**Graham**", and together with **Overton**, the "**Plaintiffs**"), as legal guardian of minor J.D., by and through their undersigned counsel, hereby file this opposition (the "**Opposition**") to defendant FCA US, LLC's ("**FCA**" or "**New Chrysler**") motion [Docket No. 8508] (the "**Motion**"), pursuant to section 350 of the Bankruptcy Code, Bankruptcy Rule 5010 and Local Bankruptcy Rule 5010-1, to reopen the chapter 11 case of Old Carco LLC for the limited purpose of considering FCA's Motion [Docket No. 8510] (the "**Motion to Enforce**") for entry of an order enforcing this Court's *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Intersts and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief* [Docket No. 3232] (the "**Sale Order**"). In support of the Opposition, the Plaintiffs respectfully state as follows:

## PRELIMINARY STATEMENT[1]

FCA brings this Motion to revive Old Carco's bankruptcy, which has been closed for almost three years, after its effort to transfer the Plaintiffs' claims to this Court was soundly rebuffed by the District Court. The alleged purpose of this Motion and the Motion to Enforce is to enable this Court to enforce the Sale Order. In reality, however, the Motions are a litigation tactic and a transparent effort by FCA to forum shop. FCA fails to present any cause for this Court to assert its jurisdiction over the Sale Order when the Alabama state court is in an equally good, if not a better, position to resolve the parties' dispute, which involves difficult questions of Alabama law.

---

[1] Undefined capitalized terms used in the preliminary statement have the meanings assigned to them below.

The State Court Action is a personal injury and wrongful death lawsuit against FCA and others pending Alabama.  The action arises from a deadly car accident that occurred after entry of the final decree in Old Carco's case.  The Plaintiffs seek different types of recovery against FCA and stand in very different positions as relates to FCA's Motion to Enforce.  Plaintiff Frankie Overton asserts products liability claims against FCA (which were assumed under MTA Amendment No. 4) seeking damages on behalf of his deceased's estate under Alabama's Wrongful Death Act.  These wrongful death damages, which are referred to as "punitive" by Alabama courts, are the only damages Overton is entitled to seek under Alabama law, and thus, the only damages Overton seeks against FCA in the Complaint.  Plaintiff Scott Graham, on the other hand, brings product liability and personal injury claims, on behalf of minor J.G., for both compensatory and punitive damages.  Importantly, the Complaint makes very clear that Graham only asserts punitive damages for claims arising solely from FCA's post-Closing Date conduct.

As relates to Plaintiff Overton's claims, through its Motion to Enforce, FCA is seeking wholesale to exclude wrongful death recovery arising from defective Old Chrysler vehicles in Alabama.  FCA has taken the reprehensible stance that all Alabama wrongful death damages fall within MTA Amendment No. 4's exception for "exemplary or punitive damages," terms which are not defined anywhere in the Sale Order or MTA, or any amendment thereto.  For reasons explained in depth in Plaintiffs' opposition to the Motion to Enforce, Plaintiffs contend that Alabama wrongful death damages do not, and cannot, fit within the intended meaning of the term "exemplary and punitive damages," which is accepted and understood in the legal community to mean penalty damages for a defendant's extreme and outrageous conduct – which Alabama wrongful death damages are not.  Thus, resolution of this dispute requires the reconciliation of Alabama's wrongful death laws with the traditional notions of compensatory and "exemplary and

2

punitive damages," an area in which Alabama courts have unique expertise and experience. For that reason and others, the Plaintiffs respectfully submit that the Alabama state court, which undisputedly has concurrent jurisdiction to enforce the Sale Order and is currently presiding over this case, is the most efficient and appropriate venue to resolve this dispute.

As to Graham's claims, FCA's Motion should be denied for different reasons. FCA's seeks to bar and enjoin Graham's independent post-Closing Date claims for punitive damages. First, District Court has already ruled that, due to the carefully pled manner of Plaintiffs' Complaint, the claims do not implicate the Sale Order and, therefore, this Court lacks jurisdiction over them. The Court should not entertain FCA' request for this Court to reconsider the District Court's determination, which is by statute intended to be final and non-appealable. Moreover, the Motion should be denied because its argument for baring Graham's claims have already decided and rejected by this Court in *Dearden v. FCA US LLC (In re Old Carco LLC)*, Adv. Pro. 17-01062 (SMB), 2018 WL 1352695 (Bankr. S.D.N.Y. Mar. 15, 2018). Thus, reopening the case to consider the Motion to Enforce as to Graham's claims would serve no purpose.

As discussed below, FCA has woefully failed to meet is burden to establish *any* cause to reopen these cases, and each of the factors considered for a motion to reopen under Bankruptcy Code section 350(b) weigh decisively against reopening the case. Furthermore, in the alternative to denying the Motion for failure to satisfy the standard of Bankruptcy Code section 350(b), this Court can also abstain from deciding the Motion to Enforce in deference to the Alabama State court is currently presiding over the State Court Action.

## **BACKGROUND**

### I.    **THE CHRYSLER BANKRUPTCY PROCEEDINGS**

On April 30, 2009, Old Carco LLC and certain of its affiliated debtors (collectively, the "**Debtors**" or "**Old Chrysler**") declared bankruptcy and, as part of the Troubled Asset Relief

3

Program (TARP), received a taxpayer bailout. On June 1, 2009, the Court entered the Sale Order

approving the sale of substantially all of Old Chrysler's assets to New Chrysler[2] pursuant to the

terms of the Master Transaction Agreement (as amended and including all ancillary documents

thereto, the "**MTA**") free and clear of all liens, claims and interests, except for "Assumed

Liabilities."[3] The sale closed on June 10, 2009 (the "**Closing Date**").

Under the original Master Transaction Agreement ("MTA"), New Chrysler expressly

excluded Products Liability Claims for defects in vehicles manufactured and sold by Old Chrysler

before the bankruptcy. Product Liability Claims are defined as:

> any Action arising out of, or otherwise relating to in any way in respect of claims
> for personal injury, wrongful death or property damage resulting from exposure to,
> or any other warranty claims, refunds, rebates, property damage, product recalls,
> defective material claims, merchandise returns and/or any similar claims, or any
> other claim or cause of action, whether such claim is known or unknown or asserted
> or unasserted with respect to, Products or items purchased, sold, consigned,
> marketed, stored, delivered, distributed or transported by the Company Business,
> any Selling Group Member or any of its Subsidiaries, whether such claims or causes
> of action are known or unknown or asserted or unasserted.

(MTA Definitions Addendum, at p. 90, *as amended* by Amendment No. 1 to MTA, ¶ 36.

Originally, the MTA left no remedy for claimants injured in defective Old Chrysler vehicles

manufactured and sold before the Bankruptcy Closing.

Following public outcry and Congressional pressure, however, on August 27, 2009, New

Chrysler issued a letter to Senator Richard Durbin promising that New Chrysler would accept

---

[2]     At the time of the sale, FCA was known as New Carco Acquisition LLC.  New Carco Acquisition LLC
changed its name to Chrysler Group LLC and later to FCA US LLC.  Both Chrysler Group LLC and FCA are named
as defendants in the Complaint.

[3]     Copies of the Sale Order and the MTA are attached to the Declaration of Brian Glueckstein in support of
the Motion (the "**Glueckstein Declaration**") as Exhibits A and B, respectively.

4

product liability claims on vehicles manufactured by Old Chrysler prior to the Closing Date that
are involved in post-Closing Date accidents.  More specifically, New Chrysler wrote:

> We very much appreciate the support you have given to the new Chrysler Group
> LLC, and we understand the concerns you have raised about Chrysler Group's
> commitments on product liability claims. . . . Today, Chrysler Group has a much
> better appreciation of the viability of our business than it did on June 10.  As a
> result, we will announce today that the company will accept product liability claims
> on vehicles manufactured by Old Carco before June 10 that are involved in
> accidents on or after that date. . . . As a result of today's announcement, Chrysler
> Group's approach is consistent with that taken by General Motors as part of its
> bankruptcy process. . . . **While Chrysler Group still faces challenges, we are
> confident today that future viability of the company will not be threatened if
> we assume these obligations.  We want our consumers to feel comfortable and
> confident buying, driving and enjoying one of our vehicles.**  Chrysler Group
> vehicles meet or exceed all applicable federal safety standards and have excellent
> safety records.[4]

Thus, New Chrysler assured Congress and the American public that it would assume Old
Chrysler's product liability obligations so that consumers would feel comfortable and confident
buying, driving and enjoying Chrysler vehicles.  New Chrysler attempted to memorialize its
commitment to Senator Durbin and the American public by executing Amendment No. 4 of the
MTA, dated as of October 29, 2009, which expanded the scope of liabilities FCA assumed relating
to "Product Liability Claims" to include the following:

> (i)     all Product Liability Claims arising from the sale after the Closing of
> Products or Inventory manufactured by Sellers or their Subsidiaries in whole
> or in part prior to the Closing and
>
> (ii)    all Product Liability Claims arising from the sale on or prior to the Closing of
> motor vehicles or component parts, in each case manufactured by Sellers or
> their Subsidiaries and distributed and sold as a Chrysler, Jeep, or Dodge brand
> vehicle or MOPAR brand part, solely to the  extent such Product Liability
> Claims
>
> (A) arise directly from motor vehicle accidents occurring on or after Closing,

---

[4]     A copy of Chrysler's letter, dated August 27, 2009 (the "**Bozzella Letter**") is attached to Miller
Declaration as Exhibit 1 (emphasis added).

(B) are not barred by any statute of limitations,

(C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and

(D) do not include any claim for exemplary or punitive damages.[5]

MTA Amendment No. 4 provides that the amendment is governed and must be construed in accordance with New York law. (*See* MTA Amendment No. 4 at ¶ 6). However, MTA Amendment No. 4 provides that: "[i]f any term or other provision of this Amendment is invalid, illegal or incapable of being enforced by any rule of Law, or public policy, then to the maximum extent permitted by Law, all other conditions and provisions of this Amendment shall nevertheless remain in full force and effect." (MTA Amendment No. 4 at ¶ 9).

On November 19, 2009, the Court entered a Stipulation and Agreed Order Approving Amendment No. 4 to Master Transaction Agreement [Docket No. 5988] (the "**Stipulation and Order**"). Per the Stipulation and Order, the Court retained "jurisdiction over all matters or disputes arising out of or in connection with the Stipulation and Agreed Order," but notably did not retain exclusive jurisdiction, as is often the case in bankruptcy orders. (*See* Stipulation and Order at ¶ 2). Likewise, the Court did not retain exclusive jurisdiction over the Sale Order itself. (*See* Sale Order at ¶ 59 ("This Court retains jurisdiction to interpret, implement and enforce the terms and provisions of this Sale Order . . . .")).

On April 23, 2010, the Court entered the confirmation order with respect to Old Chrysler's second amended joint plan of liquidation (the "**Plan**"). [*See* Docket No. 6875]. On June 18, 2015, the Old Carco Liquidation Trust (the Debtors' successor under the Plan) filed a motion to enter a final decree and close the Debtors' bankruptcy cases on the basis that it had accomplished

---

[5]    A copy of the Stipulation and Order, to which MTA Amendment No. 4 is attached, is attached to the Glueckstein Declaration as Exhibit C.

6

substantial consummation of the Debtors' cases and substantially completed the administration and implementation of the Plan. On July 29, 2015, the Court granted the Old Carco Liquidation Trust's motion and entered the Final Decree closing Old Chrysler's bankruptcy cases. [*See* Docket No. 8428].

## II.    THE JUNE 2016 ACCIDENT

This action arises from a product liability claim that occurred after this Court closed the Old Chrysler bankruptcy estate. On June 10, 2016, Sue Ann Graham, and her son, J.G., were passengers of their 2002 Jeep Liberty traveling in the left-hand lane of Interstate 59 in Jefferson County, Alabama. While the Grahams were traveling on I-59, defendant Rodericus Obyran Carrington was driving behind the Grahams in the left-hand lane and attempted to change to the right-hand lane, but saw another car and tried to get back into the left lane. However, Carrington overcorrected, lost control, and struck the Grahams' 2002 Jeep Liberty, causing it to overturn. The Grahams were properly belted. Sue Ann Graham sustained catastrophic injuries that resulted in her death. Sue Ann's and Scott Graham's son, J.G., a passenger and a mere seat behind Sue Ann Graham at the time of the accident, was physically, mentally and emotionally injured.

## III.    PLAINTIFFS' ALABAMA STATE LAW ACTION

On October 17, 2017, Plaintiffs filed a Complaint (the "**Complaint**")[6] commencing a lawsuit against FCA, Mr. Carrington and others in Jefferson County, Alabama (the "**State Court Action**"). Plaintiffs' claims are brought solely under the laws of the State of Alabama; they assert no federal causes of action. As to FCA, Overton, as executor of Sue Ann's estate, asserts claims for negligence, wantonness, and under Alabama Extended Manufactures Liability Doctrine

---

[6]    FCA did not attach a copy of the Complaint to its Motion. Accordingly, the Plaintiffs are submitting a copy of the Complaint for the Court's reference, attached to the Miller Affidavit as Exhibit 2.

("**AEMLD**") (Alabama's products liability doctrine) alleging that the vehicle's restraint system was defective and/or unreasonably dangerous in design, manufacture and/or marketing as it relates to the vehicle's characteristics for occupant protection and crashworthiness in a foreseeable rollover event and lack of proper warning regarding said issues. (Complaint at Counts 1, 3, and 4. Overton seeks damages against FCA under Alabama's Wrongful Death Act, which are the only damages Overton may permissibly seek under Alabama law. (*See id.* at pp. 8, 11, 14).

Scott Graham asserts claims against FCA on Sue Ann's son's behalf for the injuries he sustained in the accident. As to FCA, Graham asserts pre-Closing Date claims (*i.e.*, claims assumed by FCA) for negligence, wantonness, and products liability (*i.e.*, under the AEMLD) against FCA related to the crashworthiness of the Jeep Liberty. (Complaint at Counts 1, 3, and 4). In addition, Scott Graham asserts claims against FCA that arose after the Closing Date that are based on FCA's post-Closing Date knowledge and conduct. Specifically, Graham alleges that New Chrysler knew of the defective condition of the Jeep Liberty, by way of imputation from Old Chrysler or otherwise, but despite such knowledge, failed to take action to warn, recall or otherwise eliminate the defective condition in breach of its duties to do so under Alabama law. (*Id.* at Counts 3 and 4). Graham seeks both compensatory and traditional punitive damages against FCA with respect to his post-Closing Date claims, but seeks compensatory damages only with respect to the pre-Closing Date claims that FCA assumed. (*Id.* at pp. 8, 12, 15).

Importantly, as was recognized and held by the Alabama District Court (which is discussed below), Graham carefully and properly pleaded the relief sought against FCA in the Complaint to request compensatory damages only from FCA with respect to claims and allegations based on Old Chrysler's conduct before it sold its assets to New Chrysler in bankruptcy. Under each Count

in Plaintiffs' complaint, Graham specifies that he is seeking punitive damages based only on New

Chrysler's post-bankruptcy sale conduct. (Complaint at pp. 8, 11-12, 14, 15).

## IV.    THE ALABAMA DISTRICT COURT'S DECISION AND RELATED PROCEEDINGS

On November 27, 2017, FCA filed a notice in United States District Court for the Northern

District of Alabama ("**District Court**") to remove the State Court Action pursuant to 28 U.S.C. §

1334(b), 1441, 1446, and 1452(a). FCA predicated its removal of the State Court Action on the

limited bankruptcy jurisdiction under 28 U.S.C. § 1334(a) that is tied to interpreting and enforcing

the Sale Order. FCA also filed motions to transfer the action to the Southern District of New York,

or alternatively, to sever and transfer the claims against FCA to the Southern District of New York.

FCA separately moved the District Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure (the "**Civil Rules**") to dismiss Graham's post-Closing Date claims for failure to warn

and failure to recall. FCA contended that Graham's post-Closing Date claims violated this Court's

sale order and failed to state a claim under Alabama law.[7] The Plaintiffs, in turn, moved to remand

the case back to the Alabama state court, and separately opposed FCA's motion to dismiss.

On February, 13, 2018, the District Court granted the Plaintiffs' remand motion and, as a

result, denied FCA's motions to transfer and to dismiss as moot. *See Overton v. Chrysler Group

LLC*, Case No. 2:17-cv-01983-RDP, 2018 WL 847772 (N.D. Ala. Feb. 13, 2018) (hereinafter, the

"**District Court Decision**").[8] Importantly, the District Court separately analyzed FCA's asserted

basis for jurisdiction over Overton's claims and Graham's claims and found:

---

[7]        As stated below, FCA contention that Alabama does not recognize claims for failure to warn or recall is incorrect, although that is not an issue the Court need consider in connection with FCA's Motion.

[8]        For the Court's ease of reference, a copy of the District Court's decision is attached to the Miller Declaration as Exhibit 3.

57860/0001-15817846v1

(a) Overton's claims, which are all asserted under the Alabama Wrongful Death Act, implicated the Sale Order and, therefore, the Court could exercise limited subject matter jurisdiction over those claims should it decide to exercise it. After review of the § 1334 abstention factors, however, the District Court held pursuant to 28 U.S.C. § 1334(c)(1) and 1452(b) that, under the facts of this case, abstention was appropriate because, among other reasons, the Alabama state court could just as easily construe the Sale Order as applied to Overton's wrongful death claims. *See* District Court Decision at 12 ("Although the Bankruptcy Court has jurisdiction to interpret its orders, the state court can just as easily dismiss claims in front of it that are barred by the MTA and Amendment No. 4").

(b) As to Graham's claims, "[i]n light of the carefully-pled manner of the Complaint, the MTA and Amendment No. 4 do not govern whether Plaintiff Scott Graham's claims are proper." District Court Decision at p. 9 n.6 (citing *Mathias v. Fiat Chrysler Automobiles, NV*, No. 5:16-CV-01185-EJD, 2016 WL 5109967, at *4 (N.D. Cal. Sept. 21, 2016)). The District Court unequivocally concluded that Scott Graham's Alabama state law claims "do not fall within the scope of the Bankruptcy Court's Orders." *Id.* at 15.

FCA chose to ignore the District Court's holdings and direction to allow the Alabama state court to first consider whether Overton's Alabama wrongful death claims are barred by the Sale Order. Instead, FCA filed the instant Motion together with a motion to reopen the bankruptcy cases [Docket No. 8508] (the "**Motion to Reopen**") to enforce the Sale Order against both Plaintiffs' claims, notwithstanding the District Court's unequivocal holding that this Court lacks jurisdiction over Graham's claims because they do not implicate the Sale order.

## V.    FCA'S MOTION TO REOPEN

In its Motion, FCA presents four reasons that purportedly support the reopening of Old Chrysler's case: (1) District Court noted that, in the event FCA disagreed with the Alabama state

court's determination on its motion to enforce the sale order, FCA is not without recourse to file an appeal or petition the bankruptcy court. (Motion at ¶ 26). (2) This Court expressly retained jurisdiction to interpret and enforce the Stipulation and Order and Sale Order. (Motion at ¶ 27). (3) The Old Carco bankruptcy case has been closed for "less than three years," and during that period this Court has reopened the case four times in order to address issues relating to the Sale Order. (Motion at ¶ 28). (4) FCA contends that Plaintiffs will not be prejudiced by the reopening of the bankruptcy cases. (Motion at ¶ 29).

As shall be discussed below, FCA has failed to meet its burden to establish *any* cause to reopen the bankruptcy case. Briefly: (1) The contingency that FCA could potentially disagree with the Alabama state court's determination, and then would have to appeal or potentially petition this Court does not provide cause to reopen this case. (2) It cannot be disputed that this Court did <u>not</u> retain <u>exclusive</u> jurisdiction over the Sale Order and Stipulation and Order, the Alabama state court has concurrent jurisdiction and, as the District Court held, is just as capable to construe the orders (and as Plaintiffs' submit, is likely better suited to address issues concerning interpretation of Alabama state law). (3) Old Carco's case has been closed for almost three years; the fact that this Court has reopened it on other occasions provides no cause to open it on this occasion. Furthermore, it appears this is the first time this Court is being asked to reopen the case to enforce the Sale Order on a matter that has not been transferred to it by a U.S. District Court. (4) Plaintiffs will be prejudiced by the reopening of this case due to the delay in discovery and the piecemeal litigation that will occur to Plaintiffs' claims. On the other hand, New Chrysler will not be prejudiced by allowing the state court to interpret and enforce the Sale Order.

11

## ARGUMENT

I. **FCA HAS FAILED TO ESTABLISH CAUSE TO REOPEN THE BANKRUPTCY CASE**

A. **Standard on Motion to Reopen**

Bankruptcy Code section 350(b) provides: "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or *for other cause*." 11 U.S.C. § 350(b) (emphasis added).  Here, FCA does not argue, nor can it argue, that the bankruptcy cases should be reopened "to administer assets" or "to accord relief to the debtor."  FCA's Motion is thus predicated entirely on its ability to establish the "for other cause" prong of section 350(b).

FCA bears the burden of demonstrating that cause exists to reopen these bankruptcy cases. *See In re Wilson*, 492 B.R. 691, 695 (Bankr. S.D.N.Y. 2013).  In deciding whether to reopen a bankruptcy case, courts consider a variety of factors, including:  (1) the length of time that the case was closed; (2) whether a nonbankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case; (3) whether prior litigation in the bankruptcy court determined that a state court would be the appropriate forum; (4) whether any parties would suffer prejudice should the court grant or deny the motion to reopen; (5) the extent of the benefit to the debtor by reopening; and (6) whether it is clear at the outset that no relief would be forthcoming to the debtor by granting the motion to reopen.  *See id; In re Palumbo*, 556 B.R. 546, 550–54 (Bankr. W.D.N.Y. 2016); *In re Atari, Inc.*, No. 13-10176 (JLG), 2016 WL 1618346, at *11 (Bankr. S.D.N.Y. Apr. 20, 2016).  In addition, a motion to reopen is properly denied where "the result cannot possibly have any effect on any estate being administered in bankruptcy."  *In re Neil's Mazel, Inc.*, 492 B.R. 620, 629 (Bankr. E.D.N.Y. 2013).

For the reasons discussed below, the foregoing factors weigh decisively in favor of denying the Motion.

### B.    Factor 1:  The Length of Time the Case was Closed

Neither the Bankruptcy Code nor the Bankruptcy Rules proscribe the time within which a motion to reopen a closed case must be made.  However, courts have recognized that "[a]s the time between closing of a bankruptcy case and its reopening increases, so must the cause for reopening increase in weight."  *In re Lowery*, 398 B.R. 512, 515 (Bankr. E.D.N.Y. 2008) (citing *Citizens Bank & Trust Co. v. Case (In re Case)*, 937 F.2d 1014, 1018 (5th Cir. 1991) ("The longer the time between closing of the estate and the motion to reopen, however, the more compelling the reason for reopening should be.")).

Old Carco's bankruptcy case has been closed since July 29, 2015, almost three years now.  The State Court Action was commenced on October 17, 2017, or over two years after the final decree was entered.  Furthermore, this appears to be the first time since the case was closed that the Court is being asked to reopen Old Carco's case to interpret the Sale Order for a matter which was not referred by a U.S. District Court. Indeed, the District Court refused to transfer the case to this Court, holding instead that FCA should proceed in the state court.  Thus, this case is not comparable to other matters where this Court has reopened the estate.  Moreover, the length of time factor weighs against reopening an estate when "the filing of the Motion to Reopen is little more than an attempt to escape a state court lawsuit in which the Movants have become uncomfortable."  *See, e.g.*, *Palumbo*, 556 B.R. at 551 (Bankr. W.D.N.Y. 2016) (quoting *In re Odin Demolition & Asset Recovery, LLC*, 544 B.R. 615, 636 (Bankr. S.D. Tex. 2016)).

Thus, the Plaintiffs submit that this factor weighs against reopening.

### C.    Factor 2:  The State Court Has Jurisdiction to Resolve
####          This Dispute

It cannot be disputed that the Alabama state court has concurrent jurisdiction, is very capable and is well positioned to consider FCA's Motion to Enforce, particularly given the

57860/0001-15817846v1

complicated questions of Alabama law that are implicated by FCA's motion. Moreover, New Chrysler has already answered the Complaint[9] and pled, as an affirmative defense, that this Court's Orders limit New Chrysler's liabilities for the actions stated in the complaint. In fact, after remand, FCA filed a Notice of Filing in the state court arguing that Plaintiffs' complaint was barred by the Sale Order.[10] Thus, FCA has already subjected itself to the State Court's jurisdiction on the Sale Order issue in the State Court Action and the Alabama State court is vested with "the jurisdictional authority to interpret and apply the Bankruptcy Code." *See In re Palumbo*, 556 B.R. 546, 552 (Bankr. W.D.N.Y. 2016) (refusing to reopen estate, in part, because movant submitted to the State's jurisdiction by raising the bankruptcy order as an affirmative defense).

Bankruptcy courts "routinely decline to exercise their discretion to reopen bankruptcy cases where the parties are seeking or could seek relief in a competent alternative forum." *In re HBLS, L.P.*, 468 B.R. 634, 640 (Bankr. S.D.N.Y. 2012) (collecting cases); *see Mid–City Bank v. Skyline Woods Homeowners Ass'n (In re Skyline Woods Country Club),* 431 B.R. 830, 835-36 (8th Cir. B.A.P. 2010) (motion to reopen denied where state court had concurrent jurisdiction to adjudicate action to enforce bankruptcy court's former sale order); *affirmed* 636 F.3d 467, 472 (8th Cir. 2011) ("[T]he availability of an alternative forum . . . [is] a strong reason not to reopen a closed bankruptcy case."); *Elias v. U.S. Trustee (In re Elias)*, 188 F.3d 1160, 1162 (9th Cir. 1999) (affirming denial of motion to reopen where "the state court is fully capable of resolving the . . . dispute in this case").

---

[9] A copy of New Chrysler's Answer to Plaintiffs' Complaint is attached to the Miller Declaration as **Exhibit 5**.

[10] A copy of FCA's Notice of Filing is attached as **Exhibit 6**.

New Chrysler has failed to explain how Plaintiff's chosen forum is incapable of determining the issues of predominately Alabama law at hand. "If the only 'cause' claimed is the opportunity the reopening gives the debtor to choose which of two courts of competent jurisdiction will presently determine the [bankruptcy] issue, it has been held that benefit is insufficient to 'accord relief to the debtor' or to constitute 'other cause' for reopening pursuant to § 350(b)." *Matter of Carter*, 38 B.R. 636, 638–39 (Bankr. D. Conn. 1984). The moving party must show "inconvenience, onerousness or inadequacy in the state-court proceeding." *Id.* "[L]eaving the entire matter with the state court would prevent piecemeal litigation and allow a state-court proceeding which was prior in time to continue without federal interference." *Id.*

Accordingly, Plaintiffs submit this factor weighs against reopening the case.

D.  **Factor 3:  Whether the Bankruptcy Court Previously Determined the Appropriate Forum to Adjudicate the Dispute**

This factor is closely related to Factor 2 above. While this Court has not yet made a determination regarding the appropriate forum for this particular dispute, significantly, the Court did *not* retain *exclusive* jurisdiction over the Sale Order or the Stipulation and Order. *Compare In re Atari, Inc.*, 2016 WL 1618346, at *7 (reopening estate, in part, because the Court retained exclusive jurisdiction in the Plan and Confirmation Order); *In re Lyondell Chem. Co.*, 445 B.R. 277, 285–88 (Bankr.S.D.N.Y.2011) (same with respect to plan and confirmation order); *In re Charter Commnc'ns,* No. 09–11435(JMP), 2010 WL 502764, at *4 (Bankr.S.D.N.Y. Feb. 8, 2010) (same with respect to confirmation order); *In re Petrie Retail, Inc.*, 304 F.3d 223, 226, 231-232 (2d Cir. 2002) (affirming bankruptcy court's exercise of jurisdiction pursuant to exclusive jurisdiction retention provisions of sale order and chapter 11 plan). Moreover, the District Court has previously held that FCA should move to enforce the Sale Order in the Alabama state court.

Thus, the Plaintiffs submit that this factor weighs against reopening the case.

E.      **Factor 4: FCA Will Suffer No Prejudice if the Motion is Denied**

Plaintiffs will be prejudiced by the reopening of this case due to the delay in discovery and the piecemeal litigation that will occur to Plaintiffs' claims. On the other hand, New Chrysler will not be prejudiced by allowing the state court to interpret and enforce the Sale Order. This Court recently explained, "a party's obligation to defend a claim on the merits in another forum is not the type of 'legal prejudice' that is relevant to whether a bankruptcy case should be reopened." *Atari, Inc.*, 2016 WL 1618346, at *9. Thus, this factor also weighs against reopening the case.

F.      **Factor 5: The Requested Relief Can Provide No Benefit to the Debtors and Will Have No Impact on the Administration of the Estate**

As previously stated, FCA does not argue, nor can it argue, that the bankruptcy cases should be reopened "to administer assets" or "to accord relief to the debtor." FCA is not a Debtor. The Debtors' estate has been closed for almost three years now. The State Law Action has no possible effect on the Debtors, the Reorganized Debtors, or the administration of their estates. Accordingly, this factor weighs against reopening the case.

G.      **Factor 6: No Entitlement to the Relief Sought as to Graham**

As discussed above, the District Court has already ruled, after having analyzed the Plaintiffs' claims in the Complaint and considering FCA's brief in opposition to Plaintiffs' remand motion (as well as FCA's motion to dismiss), that Graham's Alabama state law claims "do not fall within the scope of the Bankruptcy Court's Orders," District Court Decision at p. 15, and, therefore, his claims do not "create federal jurisdiction due to the nature of the damages pled." *Id.* at p. 9 n.6. "An order remanding a case to the State court from which it was removed is not reviewable on appeal . . . ." 28 U.S.C. § 1447. "Congress's purpose in thus limiting the ability of federal courts to review orders remanding cases to state court was 'to prevent delay in the trial of

remanded cases by protracted litigation of jurisdictional issues.'" *Shapiro v. Logistec USA, Inc.*, 412 F.3d 307, 310 (2d Cir. 2005). The District Court's order determining that this Court lacks jurisdiction over Graham's claims is law of the case, and FCA should not be allowed to reopen the case to attempt to circumvent this finding. *See Virgin Atlantic Airways, Ltd. v. Nat. Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." (internal quotations omitted)). Asking this Court to re-determine whether the Sale Order bars Scott Graham's independent claims against New Chrysler is asking this Court to conduct an improper appellate review of the District Court's order remanding the case to state court. *See In re Hager*, 2006 WL 4452997 (Bankr. D. Nev. Feb. 27, 2006) (bankruptcy court denied creditor's motion to reopen the case because, among other reasons, the district court already concluded it lacked jurisdiction over the claim in its remand order).

Furthermore, as Plaintiffs' discussed more fully in their opposition to the Motion to Enforce, this Court already rejected the arguments made by FCA in its Motion to Enforce as to Scott Graham's claims in *Dearden v. FCA US LLC (In re Old Carco LLC)*, Adv. Pro. 17-01062 (SMB), 2018 WL 1352695 (Bankr. S.D.N.Y. Mar. 15, 2018). FCA's principal contention is that Graham's failure to warn or recall claims based on FCA's post-Closing Date conduct are barred by the Sale Order because, according to FCA, they fall within the definition of a Product Liability Claim which is "not tied to the Closing Date and includes claims that relate in **any** way to a claim for personal injury or wrongful death, and specifically includes 'product recalls.'" (Motion to Enforce at ¶ 43 (emphasis in original)). FCA also contends that "Plaintiffs' allegations also completely miss the point that the source of any alleged duty for FCA US to recall or provide

warnings arose only as part of the contractual assumption of liabilities under the MTA." (*Id.* at ¶ 42).

However, in *Dearden*, the Court "reject[ed] New Chrysler's argument that a post-Closing breach of the duty to warn, recall, notify or retrofit is still a Product Liability Claim that does not pass through the gate." *Id.* at 6. Citing the District Court's ruling in *Overton* with approval, the Court held that complaints alleging liability for punitive damages based solely on the post-Closing acts of New Chrysler are not barred by the Sale Order. *Id.* at *5 (citing cases). Indeed, "non-bankruptcy law may impose on an asset buyer a duty to warn owners of products manufactured by its seller that the products are defective or pose a danger." *Id.* at *6. The Court concluded that Dearden's claims passed through the gate "because they allege post-Closing conduct as their basis." Id

Here, like in *Dearden*, Plaintiffs' allege that FCA breached its own duties to warn and recall under Alabama law after the Closing Date – which is the source of Graham's claim for punitive damages. The Complaint makes very clear that punitive damages against FCA are sought solely "for FCA's post-sale conduct, transactions, actions, or failures to act which cause the chain of events and injuries giving rise to this action." (Complaint, Count Three, p. 12 and Count Four, p. 15). The post-sale conduct alleged includes New Chrysler's failure to take action to warn, recall or otherwise eliminate the defective condition in the Grahams' Jeep Liberty, despite having knowledge of the deadly defect, by way of imputation or independently. (*See* Complaint at ¶¶ 47, 56). Therefore, "[i]n light of the carefully-pled manner of the Complaint, the MTA and Amendment No. 4 do not govern whether Plaintiff Scott Graham's claims are proper." District Court Decision at p. 9 n.6.

Thus, reopening the closed bankruptcy estate to consider Graham's independent claims based on FCA's post-sale conduct would be futile.

## II.    IN THE ALTERNATIVE, THIS COURT SHOULD ABSTAIN FROM DECIDING FCA'S MOTION TO ENFORCE

In the alternative to denying the Motion based on the factors described above, this Court may also abstain from exercising jurisdiction over the Motion to Enforce. *See In re Lemoine*, No. 12-11152, 2012 WL 5906939, at *5 (Bankr. E.D. Pa. Nov. 26, 2012) (abstaining from reopening bankruptcy case where comity dictated that a state court should hear the matter, and where the matter implicated state law).

Section 1334 allows a court to abstain from hearing a case that arises in or relates to a bankruptcy proceeding "in the interest of justice, or *in the interest of comity with State courts* or *respect for State law.*" 28 U.S.C. § 1334(c)(1) (emphasis added).  In determining whether to permissively abstain from exercising its jurisdiction, courts consider one or more of the following factors:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden [on the bankruptcy court's] docket; (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.

*Osuji v. New Century Mortgage Corp. (In re Osuji)*, 564 B.R. 180, 187 (Bankr. E.D.N.Y. 2017); *accord In re Motors Liquidation Co.*, 457 B.R. 276, 289 (Bankr. S.D.N.Y. 2011).

19

In this case, the District Court has already reviewed the § 1334 abstention factors and determined that they weigh in favor of abstention. *See* District Court Decision at 12. The District Court highlighted that Plaintiffs were bringing state law claims only, and that all of the parties involved in this action were non-debtor parties. *Id.* The court concluded that

> [t]he only basis for § 1334 jurisdiction (and jurisdiction generally) in this case is that one of the two Plaintiffs (Plaintiff Overton) has asked for punitive damages under the Alabama Wrongful Death Act. Although the Bankruptcy Court has jurisdiction to interpret its orders, the state court can just as easily dismiss claims in front of it that are barred by the MTA and Amendment No. 4.

Furthermore, the District Court reasoned that abstention was even more appropriate in this case because the bankruptcy case was already closed. *See id.* at 13.

"Permissive abstention is warranted when 'it is more appropriate to have a State court hear a particular matter of State law.'" *In re Osuji*, 564 B.R. 180, 187 (Bankr. E.D.N.Y. 2017), *aff'd sub nom. Osuji v. HSBC Bank, U.S.A.*, *Nat'l Ass'n*, 580 B.R. 605 (E.D.N.Y. 2018). As the U.S. Supreme Court has explained, there is "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431–32, 102 S. Ct. 2515, 2521, 73 L. Ed. 2d 116 (1982). "The notion of 'comity' includes 'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" *Id.*

This Court has found situations where permissive abstention was not warranted, but those situations do not exist in this case. The first situation is where the non-movant "failed to demonstrate that [the state law question of contract interpretation] is difficult or unsettled or that the state court has any special expertise in interpreting the Settlement." *In re Dreier*, 438 B.R.

449, 459 (Bankr. S.D.N.Y. 2010). As explained in detail in Plaintiffs' Opposition to New Chrysler's Motion to Enforce, the issues before this Corut predominantly involve complex areas of Alabama state law and public policy. Alabama courts have special expertise in interpreting the Wrongful Death Statute and its application in relation to contracts. Since Plaintiffs' Complaint asserts only state law claims against New Chrysler, "[t]he state court is better equipped for adjudicating" the state law claims and how the Sale Order affects such claims, if at all. *See In re Osuji*, 564 B.R. at 188.

Permissive abstention was also found unwarranted where there was "no presently pending proceeding in state court in which this question will be resolved." *Id.* However, as this Court knows, this action is already pending in state court because the federal District Court declined to exercise federal jurisdiction over this case and granted Plaintiffs' Motion to Remand. Further, this Court has abstained from exercising jurisdiction---even when such jurisdiction is exclusive. *In re Motors Liquidation Co.*, 457 B.R. 276, 285 (Bankr. S.D.N.Y. 2011). As this Court held in the GM litigation, the court in which the action is already pending "could decide this controversy at least as well" as this Court could. *In re Motors Liquidation Co.*, 457 B.R. at 293.

For all the reasons stated herein, this Court should do the same.

## <u>CONCLUSION</u>

For all the foregoing reasons, it is respectfully submitted that the Motion should be denied in its entirety.


DATED:        New York, New York
              May 4, 2018

                                    Respectfully submitted,

                                    _____/s/ Parker Miller_____
                                    **BEASLEY, ALLEN, CROW,
                                    METHVIN, PORTIS & MILES, P.C**

21

Parker Miller  (*pro hac vice*)
Stephanie Monsplaisir  (*pro hac vice*)
P. O. Box 4160
Montgomery, Alabama 36103-4160
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
Parker.Miller@beasleyallen.com
Stephanie.Monsplaisir@beasleyallen.com

*Lead Counsel for Plaintiffs Frankie*
*Overton, as Executor of the Estate of Sue*
*Ann Graham; and Scott Graham, as legal*
*guardian of J.G., a minor child*

**COLE SCHOTZ P.C.**
Mark Tsukerman
1325 Avenue of the Americas, 19th Floor
New York, NY  10019
(212) 752-8000- Telephone
mtsukerman@coleschotz.com

*Bankruptcy Counsel for Plaintiffs Frankie*
*Overton, as Executor of the Estate of Sue*
*Ann Graham; and Scott Graham, as legal*
*guardian of J.G., a minor child*

22