Brian D. Glueckstein
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588

*Counsel for FCA US LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
In re: : Chapter 11
:
Old Carco LLC, *et al.*, : Case No. 09-50002 (SMB)
:
      Debtors. : Jointly Administered
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**FCA US LLC'S REPLY IN SUPPORT OF ITS MOTION TO ENFORCE
THE COURT'S ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES, (II) AUTHORIZING THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES IN CONNECTION THEREWITH AND RELATED PROCEDURES AND
(III) GRANTING RELATED RELIEF**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

REPLY .....................................................................................................................................2

I.    THE MTA'S UNAMBIGUOUS PUNITIVE DAMAGES PROHIBITION
      MUST BE ENFORCED ..................................................................................................2

II.   THE LAW IS SETTLED THAT ALABAMA WRONGFUL DEATH
      DAMAGES ARE PUNITIVE ..........................................................................................6

      A.    Plaintiff Overton's Wrongful Death Damages Are Punitive and
            Therefore Barred by the Sale Order...........................................................................6

      B.    Plaintiffs' Arguments for a Different Interpretation Must Fail. ...........................8

      C.    Enforcing the Sale Order is Not Against Public Policy.......................................10

III.  THE COMPLAINT DOES NOT ALLEGE VIABLE POST-CLOSING
      INDEPENDENT CLAIMS AGAINST FCA US ............................................................14

CONCLUSION........................................................................................................................18

SC1:4654786.3

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama Power Co.* v. *Turner*,
  575 So. 2d 551 (Ala. 1991) ................................................................................5

*Benavides* v. *U.S.*,
  497 F.3d 526 (5th Cir. 2007) ............................................................................12

*Black Belt Wood Co., Inc.* v. *Sessions*,
  514 So. 2d 1249 (Ala. 1987) ..............................................................................9

*Burton* v. *Chrysler Group, LLC*,
  492 B.R. 392 (Bankr. S.D.N.Y. 2013) ........................................................16, 17

*Campbell* v. *Williams*,
  638 So. 2d 804 (Ala. 1994) ................................................................................7

*Carter* v. *City of Birmingham*,
  444 So. 2d 373 (Ala. 1983) ..............................................................................12

*City of Newport* v. *Fact Concerts, Inc.*,
  453 US. 247 (1983) ..........................................................................................12

*Dearden* v. *FCA US LLC (In re Old Carco LLC)*,
  582 B.R. 838 (Bankr. S.D.N.Y. 2018) ..............................................................15

*Deaton, Inc.* v. *Burroughs*,
  456 So. 2d 771 (Ala. 1984) ................................................................................9

*EDP Medical Computer Systems, Inc.* v. *United States*,
  480 F.3d 621 (2d Cir. 2007) ............................................................................14

*Eich* v. *Town of Gulf Shores*,
  300 So. 2d 354 (Ala. 1974) ................................................................................7

*In re Gawker Media LLC*,
  581 B.R. 754 (Bankr. S.D.N.Y. 2017) ..................................................... 13, 14-15

*In re Hager*,
  2006 WL 4452997 (Bankr. D. Nev. Feb. 27, 2006) ..........................................14

*Hill* v. *Campbell*,
  804 So. 2d 1107 (Ala. Civ. App. 2001) ............................................................13

SC1:4654786.3

*Intercontinental Planning, Ltd.* v. *Daystrom, Inc.*,
   248 N.E. 2d 576 (N.Y. 1969) ................................................................3

*King* v. *Nat'l Spa & Pool inst., Inc.*,
   607 So. 2d 1241 (Ala. 1992) ...........................................................6, 7

*Lis* v. *Rosen*,
   No. 650666/2012, 2013 WL 1154933 (Sup. Ct. N.Y. 2013) ................3

*Louis Pizitz Dry Goods Co.* v. *Yeldell*,
   274 U.S. 112 (1927) ..........................................................................10

*McKowan* v. *Bentley*,
   773 So. 2d 990 (Ala. 1999) ................................................................9

*Montgomery Health Care Facility, Inc.* v. *Ballard*,
   565 So. 2d 221 (Ala. 1990) ..............................................................13

*In re Motors Liquidation Co.*,
   541 B.R. 104 (Bankr. S.D.N.Y. 2015) .........................................13, 17

*In re Motors Liquidation Co.*,
   568 B.R. 217 (Bankr. S.D.N.Y. 2017) ..............................................15

*In re Motors Liquidation Co.*,
   576 B.R. 313 (Bankr. S.D.N.Y. 2017) ..............................................14

*In re Motors Liquidation Co.*,
   2018 WL 2085616 (Bankr. S.D.N.Y. May 4, 2018) .....................15, 16

*Overton* v. *Chrysler Group LLC*,
   2018 WL 847772 (N.D. Ala. Feb. 13, 2018) ...................................5, 14

*Powell* v. *FCA US LLC*,
   2015 WL 5014097 (M.D. Ala. Aug. 21, 2015) .................................1, 7

*Southern Railway Co.* v. *Bush*,
   122 Ala. 470 (1898) ..........................................................................10

*Tatum* v. *Schering Corp.*,
   523 So. 2d 1042 (Ala. 1988) ............................................................12

*Tillis Trucking Co.* v. *Moses*,
   748 So. 2d 874 (Ala. 1999) .......................................................7, 10, 11

*Travelers Indem. Co.* v. *Bailey*,
   557 U.S. 137 (2009) ..........................................................................14

SC1:4654786.3

*Trott* v. *Brinks, Inc.*,
    972 So. 2d 81 (Ala. 2007)...................................................................................................7

**Statutes**

26 U.S.C. § 104(c) ...............................................................................................................12

42 U.S.C. § 1983...............................................................................................................11, 12

Ala. Code § 6-5-410................................................................................................................5, 9

SC1:4654786.3

FCA US LLC ("FCA US") hereby submits this reply (the "Reply") in further support of its Motion[1] [Dkt. No. 8510] and in response to *Plaintiffs' Opposition to FCA US LLC's Motion to Enforce the Court's Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief* [Dkt. No. 8523] (the "Opposition" or "Opp.").  FCA US respectfully requests that the Court grant the Motion and overrule the Opposition for the reasons stated herein.

## PRELIMINARY STATEMENT

1.     Plaintiffs feign outrage at FCA US seeking to ensure the terms of the Sale Order are enforced and that it is not improperly exposed to uncapped punitive damages claims for Plaintiff Overton's wrongful death claim.  The Sale Order and MTA are unequivocal that no claim arising out of an accident involving a vehicle manufactured and sold by Old Chrysler may seek punitive damages.

2.     Alabama law is long-settled that the only damages available for wrongful death are punitive damages intended to impose civil punishment—no different than traditional punitive or exemplary damages in that regard.  Illustrating both the intent of the Alabama statute and risk posed to FCA US, there is no statutory cap on wrongful death punitive damages (unlike compensatory damages or even other conduct-based punitive damages in Alabama).

3.     Given these two straightforward pieces of information, the Court can readily conclude that Plaintiff Overton's wrongful death punitive damages claim runs afoul of

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the MTA.  Unsatisfied with that result, the Opposition attempts to manufacture a non-existent

ambiguity in the MTA, and to offer alternative explanations for controlling caselaw in an attempt

to avoid it and give the impression of a non-existent open question under Alabama law.

Plaintiffs are grasping at straws.  Alabama's statutory scheme may be unique, but that is a

function of decisions made by the duly elected Alabama legislature and provides no basis to

impose barred punitive damages upon FCA US.

> 4.      In addition, Plaintiff Graham fails to assert an independent post-Closing

Date claim against FCA US for failure to warn or recall the Old Chrysler vehicle.  Courts in this

Circuit are clear that in order for such a claim to pass through the bankruptcy gate, the Complaint

must clearly set out a claim based solely on FCA US's post-Closing Date conduct.  Plaintiffs

cannot simply pay lip service to the idea of a post-sale claim and proceed in the trial court.  As

here, where the Complaint as pled conflates allegations as against Old Chrysler and FCA US, the

claim fails to meet the stringent standard of independence and cannot proceed.  Plaintiffs'

punitive damages claims are enjoined by the Sale Order and the Motion should be granted.

## **REPLY**

## I.     **THE MTA'S UNAMBIGUOUS PUNITIVE DAMAGES PROHIBITION MUST BE ENFORCED**

> 5.      Plaintiffs do not dispute—because they cannot—that the plain language of

Section 2.08(h) of the MTA containing FCA US's limited assumption of liabilities prohibits

Plaintiff Overton from asserting wrongful death claims arising from the manufacture and sale of

an Old Chrysler vehicle prior to the Closing Date that includes **"any claim for exemplary or

punitive damages."**  (MTA § 2.08(h), as amended (emphasis added).)  This language is clear

and unambiguous.

6.      Faced with this reality, Plaintiffs attempt to manufacture a "patent or latent ambiguity" based on the fact that the phrase "exemplary or punitive damages" is not defined in the MTA.  (Opp. at 14-15.)  This is nothing more than an attempt to introduce inadmissible extrinsic evidence intended to distract the Court from the MTA's controlling plain language.

7.      New York law[2] is well-settled that "extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face."  *Intercontinental Planning, Ltd.* v. *Daystrom, Inc.*, 248 N.E. 2d 576, 580 (N.Y. 1969) (collecting cases).  The fact that a well-understood term is undefined does not create an ambiguity in an otherwise unambiguous contract provision.  *See*, *e.g.*, *Lis* v. *Rosen*, No. 650666/2012, 2013 WL 1154933, at *14 (Sup. Ct. N.Y. 2013) (holding that "the fact that these agreements contain undefined terms does not, in and of itself, generate an ambiguity").[3]

8.      Plaintiffs nonetheless go on to argue that there is a generally accepted meaning of "exemplary or punitive damages in the legal community."  (Opp. at 15.)  FCA US does not disagree.  However, Plaintiffs then distort that generally accepted definition to fit their narrative.  Upon closer examination, it is clear that Plaintiff Overton's wrongful death punitive damages claims fall squarely within the generally accepted definition of punitive damages.  This has been confirmed by Alabama Supreme Court through its controlling decisions, as explained below.

---

[2]      The MTA is governed by New York substantive law.  (*See* MTA § 11.08.)

[3]      While inadmissible, FCA US is compelled to briefly respond to Plaintiffs' mischaracterization of FCA US's letter to Senator Richard Durbin, dated August 27, 2009, to which Plaintiffs point.  (*See* Opp. at 7-8.)  FCA US in that letter states that it was voluntarily agreeing to assume certain additional product liability claims.  FCA US has, of course, done just that, including with respect to claims arising under Alabama law.  But the scope of that assumption is not unbounded, and the limitation on asserting punitive damages against FCA US applies in Alabama just as it does everywhere else.  FCA US never agreed to assume punitive damages in Alabama because compensatory damages are unavailable under Alabama law for wrongful death claims.

SC1:4654786.3

9.      A survey of leading dictionary sources reveals that the hallmark of punitive damages is that they are damages intended to **punish** the actor.  While punitive damages are often thought of in the context of an enhancement to compensatory damages, that is by no means a requirement.  For example, Black's Law Dictionary defines punitive damages as "[d]amages awarded in addition to actual damages when the defendant acted with recklessness, malice, or deceit; specifically, damages assessed by way of penalizing the wrongdoer or making an example to others." *DAMAGES*, BLACK'S LAW DICTIONARY (10th ed. 2014).  Another leading dictionary defines punitive damages as "[c]ourt awarded monetary judgment against a defendant in a civil case to penalize or punish the defendant and to set an example for others.  Punitive damages may be granted when the losing party acted out of malice, in bad faith, **or when required by statute**." *Punitive Damages*, MODERN DICTIONARY FOR THE LEGAL PROFESSION (4th ed. 2008) (emphasis added).  In addition, the definition of "punitive" itself is also clearly defined as "[s]erving for, concerned with, or inflicting punishment."  RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY (2nd ed. 2001).

10.     Contrary to Plaintiffs' misplaced arguments suggesting punitive damages require some heightened "extreme" conduct (Opp. at 15-16), the fact is that Plaintiff Overton's wrongful death punitive damages claims fall directly within the definition of punitive damages.  Moreover, as Amendment No. 4 to the MTA clearly provides, FCA US agreed after the Closing Date to voluntarily assume certain additional liabilities for Product Liability Claims arising from accidents involving Old Chrysler vehicles but did so *subject to* certain limitations including the prohibition on asserting a claim for exemplary or punitive damages.  (MTA, Amendment No. 4, ¶ 1.)

-4-

11.     The primary risks from punitive damages claims include the potential for increased liability exposure for uncapped or exponential liability for damages intended to punish conduct or actions that pre-date FCA US's existence.  Imposition of wrongful death punitive damages in Alabama would manifest those risks because there is __*no*__ statutory cap on those damages.  *See* Ala. Code § 6-5-410 (no cap on wrongful death damages); *see also Alabama Power Co.* v. *Turner*, 575 So. 2d 551, 555-56 (Ala. 1991) (addressing the absence of a statutory cap and explaining that, because "the value of human life has no measure" and "the legislature has undoubtedly recognized no arbitrary cap can be placed on the value of human life").  FCA US's risk profile for its carefully considered limited assumption for Old Chrysler's Product Liability Claims could be vitiated by even a single uncapped punitive damages claim.  Preservation and enforcement of the terms of the Sale Order are critical to ensuring that potential purchasers are confident enough to bid for assets in sales conducted pursuant to section 363 of the Bankruptcy Code.

12.     After all, the Alabama District Court concluded that "Plaintiff Overton's claims against FCA and Chrysler for punitive damages under Alabama's Wrongful Death Act directly implicate and __**challenge**__ the terms" of this Court's order approving Amendment No. 4 to the MTA.  *Overton* v. *Chrysler Group LLC*, No.: 2:17-CV-019830-RDP, 2018 WL 847772, at *5 (N.D. Ala. Feb. 13, 2018) (emphasis added).  Improper punitive damages claims would also subject FCA US to costly and burdensome discovery into Old Chrysler's conduct, including "other similar incidents" evidence that might otherwise be irrelevant.  FCA US therefore respectfully requests that the Court enforce the Sale Order as to Plaintiff Overton's wrongful death punitive damages claims.

-5-

## II.    THE LAW IS SETTLED THAT ALABAMA WRONGFUL DEATH DAMAGES ARE PUNITIVE

### A.    Plaintiff Overton's Wrongful Death Damages Are Punitive and Therefore Barred by the Sale Order.

13.    Plaintiffs go to great lengths in their attempt to distinguish Plaintiff Overton's wrongful death punitive damages from "traditional punitive damages." (Opp. at 16.) They go so far as to file an improper affidavit from a lawyer in private practice offering legal opinions in an attempt to introduce uncertainty into an issue that is well-settled.[4] The Harwood Affidavit's advocacy on how the Alabama Wrongful Death Statute should or could be interpreted cannot usurp the Alabama Supreme Court's ***actual holdings*** regarding the nature of wrongful death punitive damages. Tellingly, the Opposition is devoid of any rebuttal—or even discussion—of key controlling precedent cited in the Motion.

14.    The Alabama Supreme Court has rejected assertions that wrongful death punitive damages are merely compensatory damages in disguise:

> **A wrongful death claim does not provide compensation for injuries that cause death. Punitive damages are not compensation, and our system should not be contorted to treat them as such.**

*King* v. *Nat'l Spa & Pool inst., Inc.*, 607 So. 2d 1241, 1247 (Ala. 1992) (emphasis added). Notwithstanding this clear proclamation, Plaintiffs nonetheless argue that "Alabama courts have interpreted 'such damages as the jury may assess' to be punitive in nature, though compensatory in effect." (Opp. 17.) This is simply not the law, and the Court should not accept Plaintiffs' suggestion this is an unsettled area of the law requiring input from an Alabama court. The full

---

[4]    FCA US filed its *Motion to Strike the Affidavit of Retired Justice R. Bernard Harwood* contemporaneously herewith, which details the bases on which Mr. Harwood's testimony is improper.

SC1:4654786.3

quote from a 1877 decision, cited in *Campbell* v. *Williams*, actually includes a clear statement that the statute "is punitive in its purposes." 638 So. 2d 804, 808 (Ala. 1994).

15.    The Alabama Supreme Court has definitively held over and over that "[t]he policy of the Wrongful Death Act is solely to protect human life **by deterring tortious acts that result in death** and to **impose civil punishment** on those who take human life," and has further stated that it "need not confront the long years of precedent holding that the Wrongful Death Act is the sole, and 'punitive only,' remedy for tortious infliction of death in this state." *King*, 607 So. 2d at 1246-47 (emphasis added) (internal citation omitted); *see also*, *e.g.*, *Trott* v. *Brinks, Inc.*, 972 So. 2d 81, 84 (Ala. 2007) ("The instant action is a wrongful-death action under Ala. Code 1975, § 6–5–410. In such a case, the only recoverable damages are punitive damages intended to punish the tortfeasor for its actions—not to compensate the plaintiff"); *Eich* v. *Town of Gulf Shores*, 300 So. 2d 354, 356 (Ala. 1974) (holding "the damages recoverable under this section are entirely punitive and are based on the culpability of the defendant and the enormity of the wrong, and are imposed for the preservation of human life").

16.    In another decision, the Alabama Supreme Court further explained that "[f]rom the time the Legislature enacted the predecessor of this provision in 1852, this Court has understood the legislative intent behind the phrase 'such damages as the jury may assess' to be that the jury is **to award punitive or exemplary damages**." *Tillis Trucking Co.* v. *Moses*, 748 So. 2d 874, 888-89 (Ala. 1999) (emphasis added). This is the precise language appearing in Section 2.08(h) of the MTA. *See also Powell* v. *FCA US LLC*, No. 3:15-CV-393-WHA, 2015 WL 5014097, at *5 (M.D. Ala. Aug. 21, 2015) (rejecting argument that wrongful death damages not punitive and holding the Sale Order is implicated). Alabama law is settled, and the straightforward application of these decisions counsels that wrongful death damages are punitive,

-7-

and thus not assumed under the Sale Order and MTA; Plaintiff Overton's wrongful death

punitive damages claims are barred.

> **B.    Plaintiffs' Arguments for a Different Interpretation Must Fail.**

17.    The Opposition advances the argument, based on the Harwood Affidavit,

that despite the unequivocal holdings of the Alabama Supreme Court, the fact that wrongful

death punitive damages are recoverable based on negligence somehow takes the claim outside

the universe of punitive damages.  (Opp. at 18.)  There is no support for this argument and, upon

examination, actually supports FCA US's position.[5]

18.    As an initial matter, the distinction Plaintiffs seek to make is belied by

their Complaint, which actually includes a cause of action for wantonness for which Plaintiff

Overton is seeking to recover punitive damages under Alabama's Wrongful Death Act.   (Compl.

at 13-15.)  The Complaint at issue is thus actually seeking wrongful death punitive damages

based on the alleged misconduct of Old Chrysler.  This is the exact scenario prohibited by the

punitive damages exclusion contained in Section 2.08(h).

19.    In any event, the fact that the Alabama legislature authorized punitive

damages to be awarded for merely negligent conduct further exacerbates the risk to FCA US if

faced with those claims because it is likely *easier* to impose such liability.  FCA US's disclaimer

of liability for punitive damages with respect to assumed Product Liability Claims should ensure

that it does not face unbounded liability for Old Chrysler's conduct.  To suggest that Alabama's

wrongful death punitive damages are somehow less or different than other conduct-based

---

[5]    To the extent the Court is inclined to consider any of the Harwood Affidavit—and it should not—it is notable
that he does not cite, and FCA US has not located, any opinion he authored while on the Court assessing the
nature of damages awardable under Alabama's wrongful death statute.  Mr. Harwood's personal views are not
probative of the issues before this Court.

SC1:4654786.3

punitive damages because of the different *mens rea* requirement makes no sense—and has no

support in the law.

20.    The relevant principle is instead that "[t]he purpose of Alabama's

wrongful death statute, of course, has been twofold:  (1) **punishment** based on the quality of the

wrong, and (2) **punishment** based on the wrong or degree of culpability." *Black Belt Wood Co.,

Inc.* v. *Sessions*, 514 So. 2d 1249, 1262-63 (Ala. 1987) (emphasis added).  The improper

Harwood Affidavit actually acknowledges as much, admitting "Alabama awards exclusively

punitive damages to the survivor, measured by the gravity, i.e, the 'enormity,' of the wrong

done." (Harwood Aff. at 4.)[6]  This is particularly significant given that there is no statutory cap

on wrongful death punitive damages.  *See* Ala. Code § 6-5-410.

21.    Further cementing that Plaintiff Overton's wrongful death punitive

damages claim does in fact seek punitive damages, Alabama courts assess the reasonableness of

*all* punitive damages awards for remittitur or otherwise—whether arising from wrongful death or

personal injury—using the same standard.  *See McKowan* v. *Bentley*, 773 So. 2d 990, 997-99

(Ala. 1999) (applying standard typically used to assess constitutionality of other conduct-based

punitive damages to remittitur analysis of wrongful death punitive damages claim).  Moreover,

the Alabama Supreme Court has specifically acknowledged this uniform standard applies in the

analysis of a wrongful death punitive damages award even though there is no award of

compensatory damages with which to compare the punitive damages award. *See*, *e.g*., *Tillis*

---

[6]    The Harwood Affidavit purports to quote a lengthy passage from *Deaton, Inc.* v. *Burroughs*, 456 So. 2d 771
(Ala. 1984).  (*See* Harwood Affidavit at 4.)  However, the cited paragraph does not actually appear in that
decision.  This further calls into doubt the propriety of the Harwood Affidavit.

-9-

*Trucking Co.*, 784 So. 2d at 887-91 (noting the lack of compensatory damages award in considering remittitur).

22.    Plaintiffs' reliance on *Louis Pizitz Dry Goods Co., Inc.* v. *Yeldell* for the proposition that wrongful death punitive damages are remedial and not penal is misleading, at best.  There, the U.S. Supreme Court considered the constitutionality of imposing wrongful death punitive damages on an employer through the doctrine of *respondeat superior*.  The Court disagreed that this extension of the doctrine was unconstitutional.  *Louis Pizitz Dry Goods Co.* v. *Yeldell*, 274 U.S. 112, 116 (1927).  The Court cited to language from *Southern Railway Co.* v. *Bush*, 122 Ala. 470 (1898), but a closer review of the text from *Bush* reveals that the Alabama Supreme Court was merely discussing whether wrongful death punitive damages were a quasi-criminal penalty as opposed to civil damages, and clearly accepted that such damages were punitive when stating "**[b]ut while the damages recoverable are undoubtedly, under our former rulings, punitive in nature, and not compensatory**, they are not, in a strict sense, a penalty, **nor is the action penal, or quasi-criminal**."  *S. Ry. Co.* v. *Bush*, 122 Ala. at 489 (emphasis added).  This is likely why the U.S. Supreme Court acknowledged that the damages awarded in *Yeldell* were "extraordinary."  *Yeldell*, 274 U.S. at 116.

23.    Plaintiffs' attempts to distinguish wrongful death punitive damages from other types of punitive damages fail.  While there are certainly some practical differences, the salient facts are the same and the punitive damages Plaintiff Overton seeks are in fact just that—punitive damages that are barred by the Sale Order and MTA.

## C.    Enforcing the Sale Order is Not Against Public Policy.

24.    Perhaps realizing how weak their arguments are under Alabama law, Plaintiffs alternatively argue that even if the Court applies well-settled law and concludes

-10-

wrongful death damages are punitive, the MTA *still* somehow cannot be enforced because it would be against Alabama public policy. (Opp. at 20-23.) This argument fares no better, and has been rejected by Courts in other contexts. In fact, enforcing the Sale Order is both consistent with Alabama policy and is necessary to protect the important policy considerations that are the underpinnings of asset sales by distressed debtors pursuant to section 363 of the Bankruptcy Code.

25.    At bottom, there is nothing "absurd" about the result here if the Court enforces the Sale Order against Plaintiff Overton's wrongful death punitive damages claims. The plain language of the MTA clearly provides that FCA US was unwilling to assume liability for punitive damages arising out of accidents involving vehicles manufactured and sold by Old Chrysler. (*See* MTA § 2.08(h).) FCA US is well within its rights by seeking to have that agreement enforced pursuant to its agreed-upon and Court-approved terms.

26.    FCA US understands Plaintiffs' frustration at not being able to pursue punitive damages against their target of choice. However, the fact that Plaintiff Overton cannot pursue its wrongful death punitive damages is not the result of any action by FCA US but rather is the sole responsibility of the Alabama legislature which, as the Alabama Supreme Court explained, through inaction has confirmed that only punitive damages is the only available remedy in a wrongful death case. *See Tillis Trucking Co.*, 748 So. 2d at 890-91 (refusing to disturb the "long-standing" conclusion that the wrongful death statute is "intended to punish the wrongdoer" and noting that both the legislature and the Supreme Court of the United States have "declined to disturb the statute").

27.    The issue of the Alabama Wrongful Death Statute foreclosing a cause of action for a plaintiff is not new or unique to these circumstances. For example, following the

-11-

U.S. Supreme Court's holding in *City of Newport* v. *Fact Concerts, Inc.*, 453 US. 247, 271

(1983), that municipal entities may not be sued for punitive damages, the Alabama Supreme

Court recognized that wrongful death damages are punitive and held that 42 U.S.C. § 1983

actions cannot be maintained in Alabama against municipalities for wrongful death.  *Carter* v.

*City of Birmingham*, 444 So. 2d 373, 379-80 (Ala. 1983).  That fact that a particular remedy is

unavailable in an Alabama wrongful death case is nothing new, and arguments such as Plaintiffs'

have been considered and rejected.

      28.    Plaintiffs' sweeping statement that it is "Alabama's public policy that

wrongful death damages are not treated as punitive" in certain situations lacks any support.  The

first example provided is that the Internal Revenue Code ("IRC") provides an exception to

taxable income for punitive damages if received for a wrongful death claim in Alabama.  (Opp.

at 21-22.)  Notably, contrary to Plaintiffs' assertion, the Fifth Circuit Court of Appeals has held

that the exclusion was not limited to Alabama, but rather would apply to punitive damages in any

state where liability for wrongful death actions is limited to punitive damages.  *Benavides* v.

*U.S.*, 497 F.3d 526, 529 n.14 (5th Cir. 2007) (rejecting the government's argument that 26

U.S.C. § 104(c) was limited to only Alabama).  More fundamentally, the IRC's treatment of

income from Alabama wrongful death punitive damages is not based on any conclusion those

damages are not punitive, but rather because Congress, as a duly elected legislature, made a

decision about how to treat for taxation purposes punitive damages in actions involving death.

      29.    Plaintiffs next assert that "any contract liability for death that excludes

punitive damages contravenes Alabama law and is void as against the public policy of

Alabama."  (Opp. at 21-22.)  The support for this overstatement is the Alabama Court of Civil

Appeals' decision in *Hill* v. *Campbell*, 804 So. 2d 1107, 1109 (Ala. Civ. App. 2001), which held

SC1:4654786.3

that insurers may not exclude wrongful death punitive damages in an uninsured motorist policy in Alabama if the uninsured motorist caused a death.  Upon examination, after affirming that Alabama wrongful death damages are in fact punitive, the Court *did not* find that a punitive damages exclusion violated public policy in a death case.  Rather, the Court focused on the specific statutory text of Alabama's Uninsured Motorist Act in holding that "[a]lthough it **does not violate the public policy of Alabama for an insurance company to exclude coverage of punitive damages in a liability if it chooses to do so**, such an exclusion does violate the Uninsured Motorist Act as written."  *Hill*, 804 So. 2d at 1116.  Regardless, any public policy of Alabama that applies to insurance contracts has no application here, where the only contract at issue is the MTA.[7]

      30.    Plaintiffs' overt attempts to manufacture issues of Alabama law and policy should be disregarded.  The issue before the Court is a straightforward application of settled Alabama law to unambiguous provisions of the MTA and Sale Order.  Any relevant public policy concerns actually weigh in favor of this Court ensuring that the Sale Order is enforced in accordance with its terms.  *See In re Motors Liquidation Co.*, 541 B.R. 104, 130 (Bankr. S.D.N.Y. 2015) (noting "the critically important interests of finality" designed to be achieved by enforcing a sale pursuant to section 363 of the bankruptcy code); *In re Gawker Media LLC*, 581 B.R. 754, 760 (Bankr. S.D.N.Y. 2017) (noting this Court's enforcement jurisdiction is core because the sale itself was a core proceeding).

---

[7]    Plaintiffs also cite to *Montgomery Health Care Facility, Inc.* v. *Ballard*, 565 So. 2d 221 (Ala. 1990) as an example of application of the Alabama Wrongful Death Statute in a bankruptcy case.  Plaintiffs' argument is misplaced because, unlike in *Montgomery Health*, FCA US is not and never was a debtor.  The Court's reasoning there is irrelevant to the contractual assumption of liabilities issue before this Court.

-13-

## III.    THE COMPLAINT DOES NOT ALLEGE VIABLE POST-CLOSING INDEPENDENT CLAIMS AGAINST FCA US

31.    While Plaintiff Overton's wrongful death claims are the primary issue, Plaintiffs wrongly argue that this Court lacks subject matter jurisdiction to consider whether Plaintiff Graham's punitive damages claim are barred by the Sale Order.  (Opp. at 23-25.)  The Opposition's suggestion that the Motion is akin to an appeal of the Alabama District Court's remand order is wrong.

32.    The Alabama District Court did not make any conclusive determination as to bankruptcy jurisdiction as to Plaintiff Graham's claims in observing that it was "less convinced" that Plaintiff Graham's claims create federal jurisdiction."  *Overton*, 2018 WL 847772, at *5 n.6.  In fact, any statements with respect to Plaintiff Graham's claims were dicta because the application of the Sale Order to Plaintiff Graham's claims was not even briefed by anyone in connection with Plaintiffs' Motion to Remand.

33.    In addition, Plaintiffs argue that the Alabama District Court's statement that Plaintiff Graham's punitive damages claims are outside the scope of this Court's orders are somehow "law of the case" that make this Court's consideration of the Motion to Enforce as to those claims futile.  (Opp. at 17.)  Plaintiffs are wrong; the law of the case doctrine does not apply because *this court* has not ruled on the issue.  *In re Motors Liquidation Co.*, 576 B.R. 313, 321 (Bankr. S.D.N.Y. 2017) (noting that law of the case governs later proceedings before the same court and distinguishing it from *res judicata*).[8]

---

[8]    The only case Plaintiffs cite involving a motion to reopen is a non-binding bankruptcy case from the District of Nevada that was decided on *res judicata* grounds.  *See In re Hager*, 2006 WL 4452997 (Bankr. D. Nev. Feb. 27, 2006).  Furthermore, *res judicata* would not apply here because this Court is not considering the same cause of action.  *See In re Motors Liquidation Co.*, 576 B.R. 313, 321 (Bankr. S.D.N.Y. 2017), *quoting EDP Med. Computer Sys., Inc.* v. *United States*, 480 F.3d 621, 624 (2d Cir. 2007) (noting elements of *res judicata* require litigation involving the same cause of action).

34. This Court—like all federal courts—always has jurisdiction to determine whether it has subject matter jurisdiction to adjudicate a dispute. *See*, *e.g.*, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 153 (2009). In addition, this Court has jurisdiction to interpret and enforce its own Sale Order. *Id.* at 146; *see In re Gawker Media LLC*, 581 B.R. at 760 (noting "enforcement and interpretation of orders issued in core proceedings are also considered core proceedings within the bankruptcy court's jurisdiction"). This Court should exercise its jurisdiction to consider the Motion as to Plaintiff Graham's punitive damages claims.

35. FCA US acknowledges that this Court's holding in *Dearden* v. *FCA US LLC (In re Old Carco LLC)*, 582 B.R. 838, 843 (Bankr. S.D.N.Y. 2018) narrows the issues with respect to Plaintiff Graham. However, contrary to Plaintiffs' arguments, *Dearden* highlights the Complaint's infirmities. In *Dearden*, the Court concluded that the Complaint contained allegations of post-closing wrongful conduct by FCA US and it was for the trial court to determine whether those allegations state a legally sufficient claim. *Id.* at 845 (holding that FCA US could not be liable for punitive damages unless "the proximate cause of Decedents' fatal injuries as due solely to [FCA US's] failure to warn, recall, notify or retrofit").

36. However, Judge Glenn reaffirmed earlier this month the "specified requirements for pleading independent claims" include "that only 'truly independent claims **based solely** on New GM's wrongful conduct' may pass through the bankruptcy gate as 'Independent Claims.'" *In re Motors Liquidation Co.*, No. 09-50026, 2018 WL 2085616, at *10 (Bankr. S.D.N.Y. May 4, 2018) (quoting *In re Motors Liquidation Co.*, 568 B.R. 217, 231 (Bankr. S.D.N.Y. 2017)). The Court explained that, with respect to the complaint at issue, "[c]ertain of the allegations . . . do not, however, sufficiently distinguish between the conduct of Old GM and New GM and improperly describe New GM as the successor of Old GM. For

-15-

instance, certain paragraphs of the complaint simply add the word 'Defendant' concerning the conduct of Old GM." *In re Motors Liquidation Co.*, 2018 WL 2085616, at *13. The Court therefore concluded that certain claims as asserted in the Complaint could not pass the bankruptcy gate, in part, because claims for exemplary damages were asserted against New GM for claims relating to Old GM. *Id.*

37.    The same principles apply here. The threshold question is whether the allegations, *as pled*, actually provide a basis that could constitute "truly independent claims based solely" on FCA US's conduct. *In re Motors Liquidation Co.*, 2018 WL 2085616, at *13.

38.    Plaintiffs rely on language in the Complaint's prayer for relief demanding "punitive damages for FCA's post-sale conduct, transactions, actions, or failures to act which caused the chain of events and injuries giving rise to this action." (Compl. at 12, 15; *see* Opp. at 27.) But review of the Complaint reveals numerous allegations that the Old Chrysler vehicle was designed, engineered, manufactured and marketed by, among others "Chrysler, FCA," which is demonstrably false. (Compl. ¶¶ 25, 30.) In other places, the Complaint asserts allegations against the "Product Liability Defendants," defined to include multiple defendants, including Chrysler and FCA. (*E.g.*, Compl. ¶¶ 30, 34, 42-48.) Any duty to warn or recall with respect to the Jeep Liberty at issue originated with Old Chrysler. *See Burton* v. *Chrysler Group, LLC*, 492 B.R. 392, 405 (Bankr. S.D.N.Y. 2013) (holding that FCA US "did not assume Old Carco's duty to warn its customers . . . and any claim based on the breach of Old Carco's duty to warn is barred by the Sale Order").

39.    The standard is clear that any truly independent post-Closing Date claim requires that the Complaint clearly assert a claim based solely on FCA US's conduct. Plaintiffs'

Complaint fails to do so and the punitive damages claim cannot proceed through the bankruptcy gate. *In re Motors Liquidation Co.*, 2018 WL 2085616, at *13.

40.     Furthermore, the Opposition represents that Plaintiff Graham only seeks punitive damages based on FCA US's own post-Closing Date knowledge. However, the Complaint repeatedly alleges that the "defective condition of the Jeep Liberty was known by Chrysler and/or former Chrysler companies absorbed by FCA, and that knowledge transferred to FCA." (Comp. ¶¶ 32, 47, 56.) FCA US did not "absorb" any Old Chrysler companies, and, as the Court in GM acknowledged, that knowledge "could not be imputed to New GM except . . . to the extent that it could be shown . . . that New GM had such knowledge too." *In re Motors Liquidation Co.*, 541 B.R. at 108. There are no such allegations here. Plaintiffs' attempt to rely on a conclusory statement that "knowledge transferred to FCA" (Compl. ¶¶ 47, 56), without something more, is not enough to pass the test of a true independent claim.

41.     This Court is relied upon to police whether the Complaint actually sets forth allegations that put forward an independent claim against FCA US. It cannot be that Plaintiffs simply stating they are pursuing claims based on post-Closing Date conduct without actually asserting specific substantive allegations to back that up can be enough to avoid the effect of the Sale Order. If it was, plaintiffs could readily plead around the Sale Order and effectively force FCA US to defend claims premised on improper successor liability claims. *See Burton*, 492 B.R. at 405 (finding that failure to warn claim was really prohibited successor liability claim).

## CONCLUSION

42.    For the foregoing reasons, and those set forth in the Motion, FCA US respectfully requests that the Court (i) grant FCA US's Motion, (ii) enforce the Sale Order as to Plaintiffs' punitive damages claims and enter the Proposed Order, and (iii) grant such other and further relief as the Court deems just and proper, including, but not limited to, all lawful costs and attorneys' fees.

Dated:    May 18, 2018
          New York, New York

/s/ Brian D. Glueckstein
Brian D. Glueckstein
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:    (212) 558-4000
Facsimile     (212) 558-3588

*Counsel for FCA US LLC*

SC1:4654786.3