**Hearing Date: June 7, 2018, at 10:00 a.m. (ET)**
**Objection Deadline: May 31, 2018 at 4:00 p.m. (ET)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 09-50002 (SMB) |
| Old Carco LLC, *et al.*, | |
| | Jointly Administered |
| Debtors. | |

## PLAINTIFFS' OPPOSITION TO FCA US LLC'S MOTION TO STRIKE THE AFFIDAVIT OF RETIRED JUSTICE R. BERNARD HARWOOD

**Cole Schotz P.C.**
Mark Tsukerman
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
Tel: (212) 752-8000
*Bankruptcy Counsel for Plaintiffs*
*Frankie Overton, as Executor of the*
*Estate of Sue Ann Graham; and Scott*
*Graham, as legal guardian of J.G., a*
*minor child*

**Beasley, Allen, Crow, Methvin**
**Portis & Miles, P.C.**
J. Parker Miller  (*pro hac vice*)
Stephanie Monplaisir  (*pro hac vice*)
P.O. Box 4160
Montgomery, Alabama 36103-4160
Tel: (334) 269-2343
*Lead Counsel for Plaintiffs Frankie Overton,*
*as Executor of the Estate of Sue Ann Graham;*
*and Scott Graham, as legal guardian of J.G.,*
*a minor child*

1

# TABLE OF AUTHORITIES

## Cases

Bassie v. Obstetrics & Gynecology Assocs. of Nw. Alabama, P.C.,

   828 So. 2d 280 (Ala. 2002) ..................................................................................... 14

Boles v. Parris,

   952 So. 2d 364 (Ala. 2006) ..................................................................................... 13

BPP Wealth, Inc. v. Weiser Capitol Mgmt., LLC,

   623 F. App'x 7 (2d Cir. 2015) ................................................................................ 10

Briarcliff Nursing Home, Inc. v. Turcotte,

   894 So. 2d 661 (Ala. 2004) ..................................................................................... 14

Brown v. Greater Mobile-Washington Cty. Mental Health-Mental Retardation Bd., Inc.,

   944 So. 2d 954 (Ala. 2006) ..................................................................................... 14

Brown-Criscuolo v. Wolfe

   2007 WL 2439421 (D. Conn. Aug. 24, 2007) ........................................................ 15

Ex parte E. Alabama Mental Health-Mental Retardation Bd., Inc.,

   939 So. 2d 1 (Ala. 2006) ......................................................................................... 14

Ex parte Fontaine Trailer Co.,

   854 So. 2d 71 (Ala. 2003) ....................................................................................... 14

Ex parte Gen. Nutrition Corp.,

   855 So. 2d 475 (Ala. 2003) ..................................................................................... 14

Ex parte Showers,

   812 So. 2d 277 (Ala. 2001) ..................................................................................... 14

Ex parte Wilson,

   854 So. 2d 1106 (Ala. 2002) ................................................................................... 14

FabArc Steel Supply, Inc. v. Composite Const. Sys., Inc.,

   914 So. 2d 344 (Ala. 2005) ...................................................................... 14

Hannah v. Gregg, Bland & Berry, Inc.,

   840 So. 2d 839 (Ala. 2002) ...................................................................... 14

Highland Capital Mgmt., L.P. v. Schneider,

   379 F. Supp. 2d 461 (S.D.N.Y. 2005) ....................................................... 11

Holman Enterprises v. Fid. & Guar. Ins. Co.,

   563 F. Supp. 2d 467 (D.N.J. 2008) ........................................................... 10

Hundley v. J.F. Spann Timber, Inc.,

   962 So. 2d 187 (Ala. 2007) ...................................................................... 13

In re Mirena IUD Prod. Liab. Litig.,

   169 F. Supp. 3d 396 (S.D.N.Y. 2016) ..................................................... 7, 9

In re Thilman,

   557 B.R. 294 (Bankr. E.D.N.Y. 2016) ........................................... 10, 11, 12

Lozano v. City of Hazleton,

   241 F.R.D. 252 (M.D. Pa. 2007) ................................................................. 7

Malletier v. Dooney & Bourke, Inc.,

   525 F. Supp. 2d 558 (S.D.N.Y. 2007) ....................................................... 10

Marx & Co. v. Diners' Club Inc.,

   550 F.2d 505 (2d Cir. 1977) ............................................................. 7, 9, 10

Newman v. Cole,

   872 So. 2d 138 (Ala. 2003) ...................................................................... 14

Nix v. McElrath,

   952 So. 2d 1107 (Ala. 2006) .................................................................... 14

Patton v. Thompson,

    958 So. 2d 303 (Ala. 2006) ....................................................................................... 13

Schatzki v. Weiser Capital Mgmt., LLC,

    2013 WL 6284417 (S.D.N.Y. Dec. 4, 2013) ............................................................. 10

Scott v. Chipotle Mexican Grill, Inc.,

    315 F.R.D. 33 (S.D.N.Y. 2016) ................................................................................ 15

Sharrief v. Gerlach,

    798 So. 2d 646 (Ala. 2001) ....................................................................................... 14

Spain v. Brown & Williamson Tobacco Corp.,

    872 So. 2d 101 (Ala. 2003) ....................................................................................... 14

State Farm Mut. Auto. Ins. Co. v. Motley,

    909 So. 2d 806 (Ala. 2005) ....................................................................................... 14

Summit Elec. Supply Co., Inc. v. Int'l Bus. Machines Corp.,

    2010 WL 11414471 (D.N.M. Sept. 30, 2010) .......................................................... 11

Title Guar. & Tr. Co. v. Trenton Potteries Co.,

    56 N.J. Eq. 441, 38 A. 422 (1897) ............................................................................. 8

Tolbert v. Tolbert,

    903 So. 2d 103 (Ala. 2004) ....................................................................................... 14

Ware v. Timmons,

    954 So. 2d 545 (Ala. 2006) ....................................................................................... 14

Zahler v. Twin City Fire Ins. Co.,

    2007 WL 2936321 (S.D.N.Y. Sept. 17, 2007) ......................................................... 12

Zahler v. Twin City Fire Ins. Co.,

    2007 WL 4563417 (S.D.N.Y. Dec. 21, 2007) ......................................................... 12

Ziade v. Koch,

  952 So. 2d 1072 (Ala. 2006) ..................................................................................................... 14


**Rules**

Federal Rules of Evidence 702 ................................................................................................. 7, 13

**Other Authorities**

Alabama Pattern Jury Instructions 11.03 ...................................................................................... 14

Alabama Pattern Jury Instructions 11.09 ...................................................................................... 14

Alabama Pattern Jury Instructions 11.28 ...................................................................................... 14

McCormick On Evidence § 12 ..................................................................................................... 7

Plaintiffs Frankie Overton, as Executor of the Estate of Sue Ann Graham, and Scott Graham, as legal guardian of J.G., respond and respectfully oppose FCA US LLC's ("FCA") Motion to Strike the Affidavit of Retired Justice R. Bernard Harwood.    In support of this Opposition Plaintiffs state as follows:

## **BACKGROUND**

1.    The primary issue FCA has placed before this Court is whether the Chrysler Bankruptcy Sale Order and MTA Amend. No. 4's exclusion of punitive damages bars all wrongful death claims occurring in Alabama simply because Alabama courts have interpreted such claims to allow only for "punitive" damages.

2.    In answering this question, this Court must consider what the parties to the Sale Order intended in excluding punitive damages.  Encompassed in this analysis is whether the parties intended to exclude Alabama wrongful death damages. [1]  To help this Court understand Alabama's unique public policy behind its Wrongful Death Statute, Plaintiffs submitted an affidavit from Retired Alabama Supreme Court Justice R. Bernard Harwood.    Judge Harwood's affidavit expounds on practical nuance involved in the application of the Alabama's one-of-a-kind wrongful

---

[1] That said, the Court need not take up the issues of Alabama law to dispose of FCA's Motion.  As noted in Plaintiffs' response to FCA's Motion to Enforce, the Court may limit its ruling to the intended scope of the punitive damage exclusion in MTA Amend. No. 4 (*e.g.*, by ruling that only classic punitive damages are barred), while leaving it to the Alabama courts to adjudicate Overton's claim consistent with this Court's ruling.  In either event, Justice Harwood's Affidavit serves to aid the Court in understanding Overton's claims and the Alabama public policy at stake and, thus, will assist the Court in reaching the correct conclusion.

death statute, which may be useful to the Court in understanding the issues before it and Plaintiffs'

argument.

3.    Judge Harwood's Affidavit is admissible for this Court's consideration of FCA's

Motion to Reopen and Motion to Enforce the Sale Order because: (1) The affidavit explains law

that is foreign to this Court and all other 49 states; (2) The affidavit explains the ordinary practice,

customs, and usages of Alabama wrongful death damages by Alabama courts and practitioners;

and (3) The affidavit is based on Judge Harwood extensive experience in arguing and ruling on

Alabama wrongful death issues as well as his personal observations on how courts and

practitioners interpret and apply such damages.  Judge Harwood's affidavit does not instruct this

Court on how to interpret the Sale Order, what the parties intended when forming the Sale Order,

or how this Court should rule on the issue before it.  Therefore, Judge Harwood's Affidavit is

admissible under Fed. R. Evid. 702 and well-settled expert admissibility caselaw.

## LEGAL ARGUMENT

4.    Generally, courts do not allow an expert to give an opinion on questions of law.

However, if the expert is explaining an issue of law that is foreign or complex to the judge, the

expert opinion is admissible as long as it does not direct the judge on how to rule.  *See* McCormick

On Evid. § 12, The relativity of the opinion rule: Opinions on the ultimate issue (7th

ed.)(discussing admissibly of expert opinion on foreign law); Marx & Co. v. Diners' Club Inc.,

550 F.2d 505, 508–11 (2d Cir. 1977)(discussing admissibility of expert opinion on complicated

securities regulations); In re Mirena IUD Prod. Liab. Litig., 169 F. Supp. 3d 396, 467 (S.D.N.Y.

2016)(discussing admissibility of expert opinion on compliance with complicated FDA

regulations); Lozano v. City of Hazleton, 241 F.R.D. 252, 255–56 (M.D. Pa. 2007)(allowing

immigration legal expert to aid the judge in a bench trial with his explanation of the intricacies of immigration law).

5.      This general rule has been applied for over 100 years.  For instance, in 1897, the New Jersey Court of Appeals considered whether an affidavit submitted by New York counsel in a New Jersey trial court was admissible to explain the current treatment of remedies and defenses in law versus equity in New York.  See Title Guar. & Tr. Co. v. Trenton Potteries Co., 56 N.J. Eq. 441, 442–43, 38 A. 422, 422 (1897).  The New Jersey Court of Appeals held that this affidavit was admissible "[i]n conformity with the general rule which admits in evidence the opinions of skilled witnesses on all subjects of science, the existence and meaning of the laws, as well written as unwritten, of foreign states, may be proved by calling professional persons to give their opinions on the subject." Id.   The Court reasoned:

> In order to know what the law of a foreign state is on a given subject, we need something more than the production of the statute, for that only gives the words in which the law is written. The question to be determined is not what the language of the law is, but what the law is altogether, as shown by exposition, interpretation, and adjudication; and this, I take it, can only be ascertained by the testimony of a professional witness whose special knowledge enables him to speak as to that fact.
>
> The foreign law, and its application, like any other results of knowledge and experience in matters of which no knowledge is imputed to the judge, must be proved, as facts are proved, by appropriate evidence; i.e. by properly qualified witnesses, who can state from their own knowledge and experience, gained by study and practice, not only what are the words in which the law is expressed, but also what is the proper interpretation of those words, and the legal meaning and effect of them as applied to the case in question.

Id. (internal quotations and citations omitted).  In other words, the purpose of such an expert witness is "[n]ot to tell us what the written law *states*, but, generally, what the law *is*." Id. (emphasis added).

6.       The Southern District of New York and the Second Circuit follow this general rule allowing experts to testify as to a matter of law when the law is foreign or complex.  For instance, in In re Mirena IUD Prod. Liab. Litig., 169 F. Supp. 3d 396, 467 (S.D.N.Y. 2016), the S.D.N.Y. considered the admissibility of expert testimony on whether Bayer complied with FDA regulations.  The Court held, "Admitting expert testimony in this context makes sense given the complicated nature of FDA regulations . . . ." Id.

7.       In Marx & Co. v. Diners' Club Inc., 550 F.2d 505 (2d Cir. 1977), the Second Circuit discussed the admissibility of expert testimony on complicated legal issues.  In that case, the District Court allowed plaintiffs' regulations expert, Stanley Friedman, "to give his opinion as to the **legal obligations of the parties under the contract**." Marx, 550 F.2d at 508 (emphasis added). Mr. Friedman was undisputedly qualified as an expert in securities regulations and "was competent to explain to the jury the **step-by-step practices ordinarily followed by lawyers** and corporations in shepherding a registration statement through the SEC." Id. at 508-509 (emphasis added). "Testimony concerning the ordinary practices of those engaged in the securities business is admissible under the same theory as testimony concerning the ordinary practices of physicians or concerning other trade customs: to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry." Id. at 509.  However, in that case, Friedman did not testify about the customary practice of lawyers. Id.  Instead, Friedman gave his opinion as to what "best efforts" in the context of a covenant to register means. Id.  In addition, Friedman testified about what the defendant should have done to fulfill its contractual obligations. Id. at 510 Finally, Friedman concluded that the defendant had no legal excuses for nonperformance. Id. at 510-511.  The Court held:

This testimony did not concern practices in the securities business, on which Friedman was qualified as an expert, but were rather legal opinions as to the meaning of the contract terms at issue . . . The question of interpretation of the contract is for the jury and the question of legal effect is for the judge. In neither case do we permit expert testimony.

Id. at 509-510.

8.      Judge Harwood's affidavit meets the Marx requirements for admissible legal expert opinion.  The affidavit discusses the ordinary practices of those engaged in litigating and determining jurisprudence under Alabama's Wrongful Death Statute. His affidavit does not cross the line into providing legal conclusions on contractual obligations under the Sale Order or how this Court should interpret the Sale Order.

9.      The cases cited by FCA agree with the principle that an expert may explain foreign or complex law to the court, including the customary practices of lawyers in that particular area of law.  However, the expert may not tell the court how to rule.  For instance, in Holman Enterprises v. Fid. & Guar. Ins. Co., 563 F. Supp. 2d 467, 472 (D.N.J. 2008), the Court excluded an expert report as improper legal conclusion because expert opined as to whether a party breached a covenant of good faith and fair dealing and what a party's subjective intent must have been in sending a letter.  In Schatzki v. Weiser Capital Mgmt., LLC, No. 10 CIV. 4685, 2013 WL 6284417, at *1–2 (S.D.N.Y. Dec. 4, 2013), aff'd sub nom. BPP Wealth, Inc. v. Weiser Capital Mgmt., LLC, 623 F. App'x 7 (2d Cir. 2015), the Court allowed an expert to testify as to facts regarding a Regulation but not as to how the regulation applies to the facts of the case.  In Malletier v. Dooney & Bourke, Inc., 525 F. Supp. 2d 558, 652 (S.D.N.Y. 2007), the Court precluded net profits expert from testifying as to whether party infringed or diluted trademark who had no qualification to do so.  In In re Thilman, 557 B.R. 294, 300-302 (Bankr. E.D.N.Y. 2016), the Court excluded expert whose "self-described purpose was to reach a legal conclusion regarding the existence of a 'duty

to inquire.'"   However, <u>Thilman</u> noted that had the expert "proffered an opinion . . . on prevailing practices of buyers and mortgagees confronted with a no consideration deed in a chain of title, the Report may have been acceptable for that purpose. An expert may opine on the ordinary customs and practices of an industry."  557 B.R. 294 at 302.

10.   Further, FCA cites to <u>Highland Capital Mgmt., L.P. v. Schneider</u>, 379 F. Supp. 2d 461, 470 (S.D.N.Y. 2005), which stands for the proposition that an expert may not discuss applicable principles of law and then apply those principles to the facts to determine whether the law has been violated.  In addition, an expert may not make conclusions as to a party's state of mind.  This case was distinguished by <u>Summit Elec. Supply Co., Inc. v. Int'l Bus. Machines Corp.</u>, No. CIV 07-431 MCA/DJS, 2010 WL 11414471, at *8 (D.N.M. Sept. 30, 2010) as follows:

> To support the exclusion of the opinion, IBM cites a case from the Southern District of New York, *Highland Capital Mgmt., L.P. v. Schneider,* 379 F.Supp.2d 461 (S.D.N.Y.2005). [Doc 176 at 15] In that case, the plaintiffs sought to have a former United States Attorney testify, based on deposition testimony, pleadings, and documentary evidence, about the conduct at issue and how that conduct would be treated by a criminal prosecutor. *Id.* at 465. The court observed that **"[i]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony" because such testimony "describes lay matters which a jury is capable of understanding and deciding without the expert's help."** *Id.* at 470–71 (internal quotation marks and citation omitted). In the present case, Mr. Hilliard employed his experience as a computer industry professional to explain a technically-worded email, which the jury will not necessarily understand without assistance. There is no indication that Mr. Hilliard is attempting to state what the particular recipients of the email believed or internalized, but rather what meaning an average computer professional would understand the language to impart. *See id.* at 471–72 (observing that **courts allow testimony from experts "merely to discuss the ordinary practices and usages of that industry"**). Accordingly, the Court finds that Mr. Hilliard's analysis of the email is relevant to the breach of contract issue and does not impermissibly render an opinion about the reader's state of mind.

(emphasis added).

11

11.     FCA also cites to <u>Zahler v. Twin City Fire Ins. Co.</u>, No. 04 CV 10299LAP, 2007 WL 4563417 (S.D.N.Y. Dec. 21, 2007) in its argument that Judge Harwood's Affidavit is nothing more than an additional legal brief.  The <u>Zahler</u> case has little, if any, relevance to the Harwood Affidavit.  In that case, the issue before the Court was whether an "outside services exception" ("OSE") in an insurance contract provided by Twin City Fire Insurance Company precluded two of the insureds from coverage.  <u>See</u> <u>Zahler v. Twin City Fire Ins. Co.</u>, No. 04 CIV. 10299*LAP), 2007 WL 2936321, at *1 (S.D.N.Y. Sept. 17, 2007)(discussing history of case).   The Court excluded a late-filed 8-page expert report from a "practicing attorney, specializing in the area of directors, officers or other fiduciary liability and insurance matters" because the report contained two pages that constituted a legal brief.  <u>Zahler</u>, 2007 WL 4563417 at *2. However, the Court does not explain what it means by this description and does not cite to this portion of the report.  <u>See</u> <u>id.</u> In addition, the Court held that the report impermissibly reviewed the allegations of the complaint and provided evidence in support of the defendant's defense.  <u>Id.</u>  Finally, the report opined as to what "the Insureds and certainly their professional insurance broker knew or should have known" about the outside services exclusion in the policy at issue.  <u>Id.</u>  The Court refused to allow the untimely testimony.

12.     Unlike the report in <u>Zahler</u>, Judge Harwood's Affidavit was timely filed.   In addition, it does not attempt to interpret the terms of the Sale Order; does not attempt to opine as to Chrysler's, FCA's, or this Court's subjective intent in forming the Sale Order; and does not tell this Court how to rule on its interpretation of the Sale Order.  In addition, unlike the expert in <u>Thilman</u>, Judge Harwood's affidavit clearly states that he is being asked to explain "the nature and purpose of punitive damages in wrongful death cases predicated on simply negligence" based on his long experience in judicial and private fields of Alabama law. (Harwood Aff. at p. 3).  Further,

Judge Harwood's Affidavit is not a secondary legal brief since it does not conclude one way or the other whether Alabama wrongful death damages are precluded by the Sale Order.

13.    Instead, Judge Harwood's Affidavit is a seasoned Alabama lawyer and jurist's observation of how Alabama wrongful death damages are an anomaly that cannot be lumped in with traditional punitive damages.  This affidavit falls within the parameters the courts within the Second Circuit have consistently allowed.  First, Judge Harwood's Affidavit explains law that is foreign to this Court and all other 50 states since Alabama's Wrongful Death Statute is the only wrongful death law in the nation that does not award compensatory damages.  Second, Judge Harwood's Affidavit explains complicated law that cannot be easily discerned through statutory interpretation since Alabama's Wrongful Death Statute does not define the damages allowed.  Third, Judge Harwood's Affidavit simply describes the ordinary practices, customs, and usages of Alabama wrongful death damages.

14.    Further, Judge Harwood's qualifications meet and exceed the requirements of Federal Rules of Evidence 702, which provides that a witness may be "qualified as an expert by knowledge, skill, experience, training, or education."  As thoroughly described in his Affidavit, Judge Harwood has practiced law in the State of Alabama for over 54 years.  (Harwood Aff. at p. 1).  He served as a judge in Alabama from 1991 until 2007.  (Id. at pp. 1-2).  During his six-year term as an Associate Justice on the Alabama Supreme Court, Judge Harwood participated in many wrongful death opinions, including the following:

Hundley v. J.F. Spann Timber, Inc., 962 So. 2d 187 (Ala. 2007)

Patton v. Thompson, 958 So. 2d 303 (Ala. 2006)

Boles v. Parris, 952 So. 2d 364 (Ala. 2006)(discussing cases cited in his affidavit)

Nix v. McElrath, 952 So. 2d 1107 (Ala. 2006)

Ziade v. Koch, 952 So. 2d 1072 (Ala. 2006)

Brown v. Greater Mobile-Washington Cty. Mental Health-Mental Retardation Bd., Inc., 944 So. 2d 954 (Ala. 2006)

Ware v. Timmons, 954 So. 2d 545 (Ala. 2006), as modified on denial of reh'g (Sept. 22, 2006)

Ex parte E. Alabama Mental Health-Mental Retardation Bd., Inc., 939 So. 2d 1 (Ala. 2006)

FabArc Steel Supply, Inc. v. Composite Const. Sys., Inc., 914 So. 2d 344 (Ala. 2005)

State Farm Mut. Auto. Ins. Co. v. Motley, 909 So. 2d 806 (Ala. 2005)

Tolbert v. Tolbert, 903 So. 2d 103 (Ala. 2004)

Briarcliff Nursing Home, Inc. v. Turcotte, 894 So. 2d 661 (Ala. 2004)

Newman v. Cole, 872 So. 2d 138 (Ala. 2003)(discussing purpose of wrongful death statute)

Spain v. Brown & Williamson Tobacco Corp., 872 So. 2d 101 (Ala. 2003)

Ex parte Gen. Nutrition Corp., 855 So. 2d 475 (Ala. 2003)

Ex parte Fontaine Trailer Co., 854 So. 2d 71 (Ala. 2003)

Ex parte Wilson, 854 So. 2d 1106 (Ala. 2002)

Hannah v. Gregg, Bland & Berry, Inc., 840 So. 2d 839, 862 (Ala. 2002)

Bassie v. Obstetrics & Gynecology Assocs. of Nw. Alabama, P.C., 828 So. 2d 280 (Ala. 2002) (dissent discussing how the wrongful death statute produced "only in Alabama" conundrums due to its failure to allow families to recover compensatory damages for the death of a loved one)

Ex parte Showers, 812 So. 2d 277 (Ala. 2001)

Sharrief v. Gerlach, 798 So. 2d 646 (Ala. 2001)

Judge Harwood also serves as a member of the Court's Standing Committee on Civil Pattern Jury Instructions, which contain instructions on wrongful death damages, personal injury damages, and punitive damages. (Harwood Aff. at p. 2); see APJI 11.28, 11.09, 11.03. Therefore, Judge Harwood is qualified to testify on how Alabama's Wrongful Death Statute is applied in practice

14

since it is based on his personal knowledge, experience, and observations as a trial judge, an
Alabama Supreme Court judge, a member of the Alabama Pattern Jury Instructions Committee,
and private practitioner.

15.    For instance, in Brown-Criscuolo v. Wolfe, another case cited by FCA, the Court
refused to strike a portion of an affidavit defendant alleged contained a legal conclusion. 2007 WL
2439421, at *2 (D. Conn. Aug. 24, 2007). There, the plaintiff, a school principal, sued the school
superintendent for various violations of state and federal laws regarding the educational rights of
students with disabilities. Id. The plaintiff submitted an affidavit stating, "the defendant
implemented a systematic policy of intentionally violating federal and state laws relating to the
educational rights of students suffering from disabilities," and "policies were implemented which
violated federal and state law on special education...." Id. The court refused to strike those
sentences because they were based on the affiant's personal experiences. Id. Further, the affiant
had established a "sufficient foundation to establish that, in her capacity as principal, she observed
Wolfe implement allegedly unlawful policies." Id. The court recognized that while it would
determine whether these policies were ultimately unlawful, the affiant's statements were
observations and not legal conclusions. Id. Similarly, Judge Harwood's affidavit is based on his
personal observations of how Alabama lawyers and courts handle wrongful death damages in
practice.

16.    Finally, FCA has failed to point to any specific portion of Judge Harwood's
affidavit that is an inadmissible legal opinion. However, if FCA's reply should do so, and if this
Court should agree, this Court should strike only the portions it deems to be inadmissible and admit
the rest of Judge Harwood's affidavit. See Scott v. Chipotle Mexican Grill, Inc., 315 F.R.D. 33,
49 (S.D.N.Y. 2016)(striking portions of expert affidavit found to include inadmissible legal

conclusions).  Alternatively, should the Court deem Justice Harwood's affidavit inadmissible,

Plaintiffs respectfully request an opportunity to update and amend their response to reflect the

Court's decision.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request this Court DENY FCA's Motion to

Strike the Affidavit of Retired Justice R. Bernard Harwood.

DATED:       Montgomery, Alabama
             May 31, 2018

Respectfully submitted,

_____/s/ *Parker Miller*_____
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C**
Parker Miller  (*pro hac vice*)
Stephanie Monplaisir  (*pro hac vice*)
P. O. Box 4160
Montgomery, Alabama 36103-4160
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
Parker.Miller@beasleyallen.com
Stephanie.Monplaisir@beasleyallen.com
*Lead Counsel for Plaintiffs Frankie
Overton, as Executor of the Estate of Sue
Ann Graham; and Scott Graham, as legal
guardian of J.G., a minor child*

**COLE SCHOTZ P.C.**
Mark Tsukerman
1325 Avenue of the Americas, 19th Floor
New York, NY  10019
(212) 752-8000- Telephone
mtsukerman@coleschotz.com
*Bankruptcy Counsel for Plaintiffs Frankie
Overton, as Executor of the Estate of Sue
Ann Graham; and Scott Graham, as legal
guardian of J.G., a minor child*

16