UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                                            :

In re:                                                    :     Chapter 11
                                            :

OLD CARCO LLC, *et al.*,                                  :     Case No. 09-50002 (SMB)
                                            :

                     Debtors.                           :     Jointly Administered
                                            :
-------------------------------------------------------X

## MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART FCA US LLC'S MOTION TO ENFORCE THE SALE ORDER

**A P P E A R A N C E S :**

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004

      Brian D. Glueckstein, Esq.
          Of Counsel

*Attorneys for FCA US LLC*

COLE SCHOTZ P.C.
1325 Avenue of the Americas
19th Floor
New York, New York 10019

      Mark Tsukerman, Esq.
          Of Counsel

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, Alabama 36103

      J. Parker Miller, Esq. (*pro hac vice*)
      Stephanie Monplaisir, Esq. (*pro hac vice*)
          Of Counsel

*Attorneys for Frankie Overton, as Executor*
  *of the Estate of Sue Ann Graham; and*
  *Scott Graham, as legal guardian of J.G.,*
  *a minor child*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge**

This case, which arises out of a fatal motor vehicle accident, involves the clash between Alabama law, which limits the recovery in wrongful death actions to punitive damages, and the terms of a Court-approved section 363 sale, which excludes the defendant's liability for punitive damages.  FCA US LLC f/k/a/ Chrysler Group LLC ("New Chrysler") moves to enforce the Court's *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief*, dated June 1, 2009 (the "Sale Order")[1] (ECF Doc. # 3232) asserting, *inter alia*, that certain claims alleged in the *Complaint* filed in the Circuit Court of Jefferson County, Alabama ("Alabama State Court") on October 17, 2017 in a case styled *Overton v. Chrysler Group LLC*, No. 01-CV-2017-904376.00 ("*Complaint*")[2] are barred by the limitation on punitive damages.  For the reasons that follow, New Chrysler's motion is granted in part and denied in part.

---

[1]    A copy of the Sale Order is annexed as Exhibit A to the *Declaration of Brian D. Glueckstein in Support of FCA US LLC's Motion to Enforce the Sale Order*, dated Mar. 12, 2018 ("*Glueckstein Declaration*") (ECF Doc. # 8512).  Technically, the relevant provision is contained in a post-sale amendment discussed below and separately approved by the Court.  For ease of reference, this opinion will simply refer to the Sale Order.

[2]    A copy of the *Complaint* is annexed as Exhibit 2 to the *Declaration of J. Parker Miller in Support of Plaintiffs' Opposition to FCA US LLC's Motion to Enforce the Court's Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief*, dated May 4, 2018 ("*Miller Declaration*") (ECF Doc. # 8523-1).

## BACKGROUND

### A.    The Bankruptcy Sale

On April 30, 2009, Old Carco LLC f/k/a Chrysler LLC ("Old Chrysler") filed these chapter 11 cases.  That same day, Old Chrysler and New Chrysler entered into a Master Transaction Agreement (the "MTA")[3] by which New Chrysler agreed to purchase substantially all of the assets of Old Chrysler.  The Bankruptcy Court approved the transaction set forth in the MTA, as amended, and the sale closed on June 10, 2009 ("Closing Date" or "Closing").

The Sale Order authorized the transfer of the purchased assets "free and clear of all Claims except for Assumed Liabilities" (as defined in the MTA) and free of successor liability.  (Sale Order ¶ 9.)  It stated, in pertinent part:

> Except for the Assumed Liabilities expressly set forth in the Purchase Agreement or described therein or Claims against any Purchased Company, none of the Purchaser, its successors or assigns or any of their respective affiliates shall have any liability for any Claim that (a) arose prior to the Closing Date, (b) *relates to the production of vehicles prior to the Closing Date* or (c) otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing Date. . . .  Without limiting the foregoing, the Purchaser shall not have any successor, derivative or vicarious liabilities of any kind or character for any Claims . . . now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

(Sale Order ¶ 35 (emphasis added); *see also id.* ¶¶ 39, 42.)

Section 2.09 of the MTA enumerated, "for the avoidance of doubt," certain "Excluded Liabilities" that New Chrysler did not assume.  They included "all Product

---

[3]    The MTA is attached to the *Glueckstein Declaration* as Exhibit B.

Liability Claims arising from the sale of Products or Inventory prior to the Closing."

(MTA § 2.09(i).)  The MTA broadly defined an excluded Product Liability Claim as:

> any Action arising out of, or otherwise relating to in any way in respect of claims for personal injury, wrongful death or property damage resulting from exposure to, or any other warranty claims, refunds, rebates, property damage, product recalls, defective material claims, merchandise returns and/or any similar claims, or any other claim or cause of action, whether such claim is known or unknown or asserted or unasserted with respect to, Products or items purchased, sold, consigned, marketed, stored, delivered, distributed or transported by [Old Chrysler].

(MTA Definitions Addendum, at p. 90, *as amended* by Amendment No. 1 to MTA, at ¶ 36.)

By Stipulation and Order, dated Nov. 19, 2009, the parties amended section 2.08(h) to the MTA to expand the scope of Assumed Liabilities relating to Product Liability Claims.  (ECF Doc. # 5988.)  As amended, New Chrysler assumed liability for post-Closing accidents involving vehicles manufactured and sold by Old Chrysler before the Closing, but the assumption expressly excluded liability for punitive damages. Under the amendment ("Amendment No. 4"), Assumed Liabilities included:

> (i) all Product Liability Claims arising from the sale after the Closing of Products or Inventory manufactured by Sellers or their Subsidiaries in whole or in part prior to the Closing and (ii) all Product Liability Claims arising from the sale on or prior to the Closing of motor vehicles . . . solely to the extent such Product Liability Claims (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and (D) *do not include any claim for exemplary or punitive damages.*

(MTA, Amendment No. 4, ¶ 1 (emphasis added).)[4]

---

[4]        Copies of the November 19, 2009 Stipulation and Order and Amendment No. 4 are annexed to the *Glueckstein Declaration* as Exhibit C.

Finally, the Sale Order acknowledged New Chrysler's obligation to comply with the National Transportation and Motor Vehicle Safety Act ("NTMVSA"), as applicable to the business of New Chrysler after the Closing, and New Chrysler further

> agreed to assume as Assumed Liabilities under the Purchase Agreement and this Sale Order the Debtors' notification, remedy and other obligations under 49 U.S.C. §§ 30116 through 30120 of the NTMVSA relating to vehicles manufactured by the Debtors prior to the Closing Date that have a defect related to motor vehicle safety or do not to [sic] comply with applicable motor vehicle safety standards prescribed under the NTMVSA. The Purchaser shall not otherwise be liable for any failure by the Debtors to comply with the provisions of the NTMVSA.

(Sale Order ¶ EE.)  Aside from any obligations that the NTMVSA might impose relating to safety concerns, New Chrysler did not undertake a contractual obligation to repair any defects in cars manufactured by Old Chrysler, *Grimstad v. FCA US LLC* (*In re Old Carco LLC*), Adv. Pro. No. 16–01204 (SMB), 2017 WL 1628888, at *4 (Bankr. S.D.N.Y. Apr. 28, 2017), except to the extent required by the factory or extended warranties, and in those cases, New Chrysler's obligation was limited to the cost of parts and labor.[5] *Burton v. Chrysler Grp., LLC* (*In re Old Carco LLC*), 492 B.R. 392, 398 (Bankr. S.D.N.Y. 2013).

## B.    The *Complaint*

On October 17, 2017, Frankie Overton ("Overton"), as administrator of the estate of Sue Ann Graham (the "Decedent"), and Scott Graham ("Graham," and together with Overton, the "Plaintiffs"), as legal guardian of the Decedent's minor son, J.G., filed the

---

[5]    Given the age of the Vehicle at the time of the accident (approximately fifteen years), I assume that any factory or extended warranty had expired long before the sale.  In any event, the *Complaint* does not assert a repair claim under a factory or extended warranty.

*Complaint* in Alabama State Court against, among others, New Chrysler.[6]  The subject

of the *Complaint* is a car accident that occurred in Alabama on June 10, 2016.  The

Decedent and J.G. were riding as passengers in a 2002 Jeep Liberty (the "Jeep" or

"Vehicle") when a vehicle driven by defendant Rodericus Obyran Carrington struck the

Jeep causing it to overturn.  (*Complaint* ¶ 24.)  The Decedent sustained fatal injuries;

J.G. sustained non-fatal injuries as well as mental and emotional injuries.  (*Id.* ¶¶ 26,

27.)

     The Plaintiffs brought claims in Alabama State Court pursuant to the Alabama

Extended Manufacturer's Liability Doctrine ("AEMLD")[7] and under theories of

negligence and wantonness.  (*See Complaint* ¶¶ 29-34, 41-59.)  The claims directed at

New Chrysler alleged that the proximate cause of the Plaintiffs' injuries was the

defective design, manufacture and sale of the Vehicle, (*id.* ¶¶ 27, 31, 45, 52), or

alternatively, the failure to warn or recall the Vehicle despite New Chrysler's knowledge

of the defective condition.  (*Id.* ¶¶ 32, 47, 56.)  The *Complaint* alleged in numerous

places that New Chrysler, among others, designed, manufactured and sold the Vehicle,

(*Complaint* ¶¶ 25, 30, 42, 50, 51), but this is not plausible.  The Vehicle was apparently

---

[6]     The *Complaint* separately named Chrysler Group LLC and FCA US LLC as defendants, but they refer to the same entity: New Chrysler.

[7]     To establish liability under the AEMLD, the plaintiff must establish that:

he suffered injury or damage[] to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it [was] sold.

*Tanksley v. ProSoft Automation, Inc.*, 982 So.2d 1046, 1049-50 (Ala. 2007) (citations omitted).

6

manufactured and sold in or around 2002, and New Chrysler did not come into existence until the 2009 sale transaction.

Overton sought damages under the Alabama Wrongful Death Act ("AWDA," and collectively with its predecessors, the "Wrongful Death Act") as a result of the death of the Decedent (the "Overton Claims").  (*See Complaint* at pp. 8, 11, 14-15.)  Graham, on behalf of J.G. who survived the accident, sought compensatory damages on all of his claims and punitive damages with respect to claims based on New Chrysler's post-Closing conduct (the "Graham Claims").  (*Id.* at pp. 8, 12, 15.)

## C.    Proceedings in Alabama

After the *Complaint* was filed, New Chrysler removed the action to the United States District Court for the Northern District of Alabama, and moved to sever claims and transfer venue and for partial dismissal.  *See Overton v. Chrysler Grp. LLC*, No. 2:17-cv-01983(RDP), 2018 WL 847772, at *1 (N.D. Ala. Feb. 13, 2018) ("*Overton*").  The Plaintiffs moved to remand the action back to Alabama State Court.  *Id.*

Initially, the District Court ruled that it had subject matter jurisdiction under 28 U.S.C. § 1334 over the Overton Claims because the action required the interpretation and enforcement of the Bankruptcy Court's order approving Amendment No. 4.  *Id.*, at *5; *see Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders.").  As discussed in more detail below, recovery under the AWDA is limited to punitive damages, but Amendment No. 4 expressly excluded the assumption of punitive damage liability by New Chrysler.  Therefore, the Overton Claims, which sought damages under

the AWDA, "directly implicate[d] and challenge[d]" the Bankruptcy Court's order

approving Amendment No. 4. *Overton*, 2018 WL 847772, at \*5; *see also id.*, at \*5 n. 6.

The District Court was "less convinced" that it had subject matter jurisdiction over the

Graham Claims. *Id.*, at \*5 n. 6. The Graham Claims sought compensatory damages and

limited the request for punitive damages to New Chrysler's post-Closing conduct. As a

result, "the MTA and Amendment No. 4 [did] not govern whether [the Graham Claims

were] proper." *Id.*

Ultimately, the District Court abstained from exercising jurisdiction pursuant to

28 U.S.C. § 1334(c)(1) and remanded the action back to the Alabama State Court. The

action asserted only state law claims between non-debtors, the only basis for federal

bankruptcy jurisdiction was that Overton sought punitive damages, and severance of the

Overton Claims was impractical. *Id.*, at \*7-8. Moreover, the Alabama State Court was

capable of interpreting the MTA, and, "[i]n the unlikely event that the state court does

not honor" the Bankruptcy Court orders, New Chrysler could appeal or petition the

Bankruptcy Court to enforce the orders against the Plaintiffs. *Id.*, at \*7.

## D.    New Chrysler's Motion

On March 12, 2018, New Chrysler moved to enforce the Sale Order. (*See FCA US

LLC's Motion to Enforce the Court's Order (I) Authorizing the Sale of Substantially all

of the Debtors' Assets Free and Clear of all Liens, Claims, Interests and Encumbrances,

(II) Authorizing the Assumption and Assignment of Certain Executory Contracts and

Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting*

09-50002-smb    Doc 8534    Filed 11/01/18    Entered 11/01/18 14:00:17    Main Document
Pg 9 of 29

*Related Relief*, dated Mar. 12, 2018 ("*Chrysler Brief*").)[8]  New Chrysler asserted that (i) the Overton Claims were barred by the Sale Order because Amendment No. 4 expressly excluded "any claim for exemplary or punitive damages," and recovery under the AWDA is limited to punitive damages, (*Chrysler Brief* ¶¶ 24-40), (ii) the Graham Claims, to the extent they sought punitive damages, were also barred by Amendment No. 4, (*id.* ¶¶ 41-44), and (iii) the allegations did not give rise to independent claims against New Chrysler.  (*Id.* ¶¶ 45-51.)

The Plaintiffs opposed New Chrysler's motion.  (*See Plaintiff's Opposition to FCA US LLC's Motion to Enforce the Court's Order (I) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief*, dated May 4, 2018 ("*Plaintiffs Brief*") (ECF Doc. # 8523).) They argued that (i) the Overton Claims were not barred because the phrase "exemplary or punitive damages" as used in Amendment No. 4 is ambiguous, extrinsic evidence shows that the amendment was intended to exclude exemplary and punitive damages as traditionally defined, "punitive" damages under the AWDA include damages that are compensatory in effect, and excluding recovery under the AWDA is against Alabama public policy and would lead to absurd results, (*Plaintiffs Brief* 13-23), and (ii) the

---

[8]    New Chrysler moved to reopen the Chapter 11 case on the same day, (*see* ECF Doc. # 8508), and the Court granted that motion for the limited purpose of adjudicating New Chrysler's motion to enforce the Sale Order.  (*See Transcript of June 7, 2018 Hearing* at 13:10 (ECF Doc. # 8533); *see also Order, pursuant to Section 350 of the Bankruptcy Code, Bankruptcy Rule 5010 and Local Bankruptcy Rule 5010-1, Reopening the Chapter 11 Case of Old Carco LLC for the Limited Purpose of Considering FCA US LLC's Motion to Enforce the Sale Order*, dated June 25, 2018 (ECF Doc. # 8531).)

Court's lack of subject matter jurisdiction over the Graham Claims was law of the case, and in any event, those claims gave rise to independent claims based on post-Closing conduct.  (*Id.* 23-28.)[9]

New Chrysler's reply reiterated arguments made in the *Chrysler Brief* and responded to arguments in the *Plaintiffs Brief.*  (*See FCA US LLP's Reply in Support of its Motion to Enforce the Court's Order (I) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of all Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief*, dated May 18, 2018 ("*Chrysler Reply*") (ECF Doc. # 8526).)  New Chrysler, acknowledged, however, that the Court's ruling in *Dearden v. FCA US LLC* (*In re Old Carco LLC*), 582 B.R. 838, 844-46 (Bankr. S.D.N.Y. 2018) (claims arising from post-sale conduct of New Chrysler not barred by the Sale Order), which was issued after New Chrysler filed the instant motion, narrowed the issues with respect to the Graham Claims.  (*Chrysler Reply* ¶ 35.)  Nevertheless, New Chrysler repeated its argument that the Graham Claims did not constitute truly independent claims based solely on New Chrysler's conduct.  (*Id.* ¶ 41.)

---

[9]     In support of their objection, the Plaintiffs submitted the affidavit of R. Bernard Harwood, sworn to Apr. 30, 2018.  (ECF Doc. # 8523-8.)  Mr. Harwood is a retired Associate Justice of the Alabama Supreme Court where he served from November 2000 until January 2007.  New Chrysler moved to strike the affidavit as improper expert testimony regarding Alabama law.  (*See* ECF Doc. # 8527.)  The Court granted New Chrysler's motion, but allowed the affidavit into the record as legal argument.  (*See Order Regarding the Affidavit of Retired Justice R. Bernard Harwood*, dated June 25, 2018 (ECF Doc. # 8532).)  The affidavit duplicates the arguments in the *Plaintiffs Brief.*

## DISCUSSION

### A.    Standards Governing the Motion

In this contested matter to enforce the Sale Order and related agreements, the Court's role is to serve as a gatekeeper to determine whether the claims asserted against New Chrysler are barred by the Sale Order, the MTA, Amendment No. 4 and the order approving Amendment No. 4 (collectively, the "*Sale Documents*").  *See Goodall v. Chrysler, Inc.* (*In re Old Carco LLC*), Adv. Pro. No. 17-01185 (SMB), 2018 WL 3854047, at *4 (Bankr. S.D.N.Y. Aug. 10, 2018); *Bennett v. FCA US LLC* (*In re Old Carco LLC*), 587 B.R. 809, 815 (Bankr. S.D.N.Y. 2018); *Dearden*, 582 B.R. at 843.  "[T]ruly independent" claims, that is, those based solely on New Chrysler's post-Closing, wrongful conduct, are not barred by a section 363 sale order.  *In re Motors Liquidation Co.*, 568 B.R. 217, 230 (Bankr. S.D.N.Y. 2017) (citing *Elliott v. Gen. Motors LLC* (*In re Motors Liquidation Co.*), 829 F.3d 135, 157 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1813 (2017)), *aff'd*, 590 B.R. 39 (S.D.N.Y. ), *appeal docketed*, No. 18-1939 (2d Cir. June 28, 2018).  To the extent the claim passes through the gate, it is the role of the court presiding over the underlying action, here, the Alabama State Court, to adjudicate the legal sufficiency and, ultimately, the merits of the claims in accordance with applicable non-bankruptcy law.  *Dearden*, 582 B.R. at 843.

### B.    The Overton Claims

The Overton Claims are brought pursuant to the AWDA which provides in pertinent part:

> A personal representative may commence an action and recover *such damages as the jury may assess* in a court of competent jurisdiction within the State of Alabama where provided for in subsection (e), and not elsewhere, for the wrongful act, omission, or negligence of any person,

persons, or corporation, his or her or their servants or agents, whereby the death of the testator or intestate was caused, provided the testator or intestate could have commenced an action for the wrongful act, omission, or negligence if it had not caused death.

ALA. CODE § 6-5-410(a) (1975) (emphasis added).  The Wrongful Death Act is Overton's sole remedy under Alabama law.  *King v. Nat'l Spa & Pool Inst., Inc.*, 607 So. 2d 1241, 1243 (Ala. 1992).  New Chrysler argues that the AWDA only permits the recovery of punitive or exemplary damages which are barred under the unambiguous language of Amendment No. 4.  The Plaintiffs counter that Amendment No. 4's limitation on damages gives rise to a patent or latent ambiguity because "exemplary or punitive damages" is not defined in Amendment No. 4, and the punitive damages that are recoverable under the AWDA are not the same "punitive or exemplary damages" excluded under Amendment No. 4.

The MTA and Amendment No. 4 are governed by and construed in accordance with New York law.  (MTA § 11.08; Amendment No. 4 ¶ 6.)  Under New York law, "[a] basic precept of contract interpretation is that agreements should be construed to effectuate the parties' intent."  *Welsbach Elec. Corp. v. Mastex N. Am., Inc.*, 859 N.E.2d 498, 500 (N.Y. 2006).  When contractual language is "clear, unequivocal and unambiguous, the contract is to be interpreted by its own language."  *R/S Assocs. v. N.Y. Job Dev. Auth.*, 771 N.E.2d 240, 242 (N.Y. 2002) (quoting *Springsteen v. Samson*, 32 N.Y. 703, 706 (1865)), *reargument denied*, 775 N.E.2d 1291 (N.Y. 2002); *accord Evans v. Famous Music Corp.*, 807 N.E.2d 869, 872 (N.Y. 2004) ("If that intent is discernible from the plain meaning of the language of the contract, there is no need to look further.").  Therefore, if a contract "on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness

12

and equity." *Selective Ins. Co. of Am. v. Cty. of Rensselaer*, 47 N.E.3d 458, 461 (N.Y. 2016) (quoting *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 171 (N.Y. 2002)). A court should not "strain[] to find an ambiguity which otherwise might not be thought to exist." *Uribe v. Merchs. Bank of N.Y.*, 693 N.E.2d 740, 743 (N.Y. 1998) (quoting *Loblaw, Inc. v. Emp'rs' Liab. Assurance Corp., Ltd.*, 442 N.E.2d 438, 441 (N.Y. 1982)). Moreover, contractual language does not become ambiguous merely because the parties "urge different interpretations." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)).

A contractual provision is patently ambiguous where the ambiguity arises from the language itself. *L&L Painting Co., Inc. v. Contract Dispute Resolution Bd. of the City of N.Y.*, 892 N.Y.S.2d 55, 57 (N.Y. App. Div. 2009), *aff'd*, 926 N.E.2d 1228 (2010); *accord In re Tikijian*, 76 B.R. 304, 318 (Bankr. S.D.N.Y. 1987). Although a court may consider extrinsic evidence to determine the meaning of a patently ambiguous contractual provision, *JA Apparel Corp.*, 568 F.3d at 397, extrinsic evidence is inadmissible "to create an ambiguity" in an otherwise unambiguous provision. *R/S Assocs.*, 771 N.E.2d at 242 (quoting *W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990)). Conversely, a latent ambiguity arises when one of the terms may "apply equally to two different things or subject-matters, and then evidence is admissible to show which of them was the thing or subject-matter intended." *Leather Form S.R.L. v. Knoll, Inc.*, 205 F. App'x 861, 864 n. 1 (2d Cir. 2006) (quoting *Petrie v. Trs. of Hamilton Coll.*, 53 N.E. 216, 217 (1899)) (summary order); *accord Short v. Churchill Benefit Corp.*, No. 14-CV-4561 (MKB), 2016 WL 8711349, at *13 (E.D.N.Y.

Apr. 8, 2016); *see also* 11 WILLISTON ON CONTRACTS § 33.43 (4th ed. 2018) ("latent ambiguities are those which appear only as the result of considering extrinsic or collateral evidence that shows that a word, thought to have a single meaning, actually has two or more meanings").

Amendment No. 4's restriction against exemplary and punitive damage claims is not patently ambiguous. "Exemplary" and "punitive" damages are commonly used legal terms that are well-understood. They refer to damages intended to punish the wrongdoer and deter future wrongdoing rather than actual damages designed to compensate the victim. *See* BLACK'S LAW DICTIONARY 474 (10th ed. 2014) (defining "punitive damages" as "[d]amages awarded in addition to actual damages when the defendant acted with recklessness, malice, or deceit; specif., damages assessed by way of penalizing the wrongdoer or making an example of others," and providing "exemplary damages" as a synonym for punitive damages). New York courts commonly refer to the dictionary to determine the meaning of words in a contract, *10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 120 (2d Cir. 2011), and the lack of a separate definition within a contract of a well-understood term does not create an issue of patent ambiguity. *See United States v. Am. Soc'y of Composers, Authors & Publishers*, 309 F. Supp. 2d 566, 573 (S.D.N.Y. 2004) ("the mere fact that a contractual term is undefined does not render it ambiguous"), *clarified by* 323 F. Supp. 2d 588 (S.D.N.Y. 2004), *request for partial final judgment or interlocutory appeal denied*, 333 F. Supp. 2d 215 (S.D.N.Y. 2004).

Nor have the Plaintiffs identified any latent ambiguity. They argue that the "punitive" damages awardable under the AWDA are not the same as traditional punitive

damages excluded under Amendment No. 4.  (*Plaintiffs Brief* at 16.)[10]  In the Plaintiffs' view, "punitive" damages under the AWDA include damages that are compensatory, and as such, were assumed by New Chrysler pursuant to Amendment No. 4.  (*Id.* at 16-19.)

This argument regarding the compensatory nature of an award under the AWDA ignores over 140 years of settled Alabama law.  The predecessor to the current Wrongful Death Act dates back to 1852 and was intended to prevent homicides.  *Campbell v. Williams*, 638 So. 2d 804, 810-11 (Ala.), *cert. denied*, 513 U.S. 868 (1994).  Its goal was to punish and deter wrongdoing, not compensate the injured party.  *Trott v. Brinks, Inc.*, 972 So. 2d 81, 84 (Ala. 2007); *Airheart v. Green*, 104 So. 2d 687, 690 (Ala. 1958).  Although the words "punitive" or "exemplary" do not appear in its text, the Supreme Court of Alabama, beginning with *Savannah & Memphis R.R. Co. v. Shearer*, 58 Ala. 672, 680 (1877), has consistently construed the Wrongful Death Act to limit recovery to punitive damages and to exclude recovery of compensatory damages.[11]  *E.g., Trott*, 972 So. 2d at 84 ("The instant action is a wrongful-death action under Ala. Code 1975, § 6–5–410.  In such a case, the only recoverable damages are punitive damages intended to punish the tortfeasor for its actions—not to compensate the plaintiff."); *Tillis Trucking*

---

[10]    The Plaintiffs submitted as extrinsic evidence supporting their theory an August 27, 2009 letter from a New Chrysler executive to Senator Richard Durbin, in which New Chrysler stated that it was willing to "accept product liability claims on vehicles manufactured by Old Carco before June 10 [2009] that are involved in accidents on or after that date . . . [and that it was] confident today that the future viability of the company will not be threatened if we assume these obligations."  (*See Miller Declaration*, Ex. 1.)  Under the subsequent Amendment No. 4, New Chrysler agreed to accept post-Closing claims involving vehicles manufactured by Old Chrysler, subject, however, to certain limitations including the exclusion of liability for punitive damages.

[11]    In 1886, the phrase in the Wrongful Death Act was modified from permitting juries to award damages that they "deemed just" to the current formulation awarding "damages as the jury may assess." JENELLE MIMS MARSH, ALABAMA LAW OF DAMAGES § 37:2 (6th ed. Feb. 2018 Update).  The modification of the language was "purely a verbal one, and in no sense material."  *Richmond & D. R. Co. v. Freeman*, 11 So. 800, 802 (1892); *accord Campbell v. Williams*, 638 So. 2d at 809.

*Co., Inc. v. Moses*, 748 So. 2d 874, 888-89 (Ala. 1999) ("From the time the Legislature

enacted the predecessor of this provision in 1852, this Court has understood the

legislative intent behind the phrase 'such damages as the jury may assess' to be that the

jury is to award punitive or exemplary damages."); *Campbell v. Williams*, 638 So. 2d at

812 ("Alabama has historically permitted juries to assess only punitive damages in

wrongful death cases. . . ."); *King v. Nat'l Spa & Pool Inst., Inc.*, 607 So. 2d at 1247 ("A

wrongful death claim does not provide compensation for injuries that cause death.

Punitive damages are not compensation, and our system should not be contorted to

treat them as such."); *Black Belt Wood Co. v. Sessions*, 514 So. 2d 1249, 1262 (Ala. 1986)

("The purpose of Alabama's wrongful death statute, of course, has been twofold: (1)

punishment based on the quality of the wrong, and (2) punishment based upon the

wrong or degree of culpability."). Accordingly, evidence regarding the decedent's loss is

inadmissible. *Airheart v. Green*, 104 So. 2d at 689 (instructing the jury that "in

assessing damages they could not consider the pecuniary value of the life of the

decedent; that the amount of the damages should not be measured by the value of the

decedent's life; further, that no damages are recoverable to compensate the family of the

deceased, from a pecuniary standpoint, on account of his death nor could the jury award

any damages to compensate the plaintiff for any financial or pecuniary loss sustained by

her or the family of the decedent on account of his death"); *Ala. G.S.R. Co. v. Burgess*,

22 So. 913, 915 (Ala. 1897) ("Damages recoverable . . . are entirely punitive, and to

prevent homicides. Evidence of loss of services, or mere pecuniary loss, and evidence of

mental suffering on the part of the parents of the deceased child, are immaterial and

irrelevant."); *Buckalew v. Tenn. Coal, Iron & R.R. Co.*, 20 So. 606, 611 (Ala. 1896)

("[E]vidence tending to show actual pecuniary loss by reason of the death is not

16

admissible."); *see Louisville & N.R. Co. v. Tegnor*, 28 So. 510, 513 (Ala. 1900).

That punitive damages can be recovered under the Wrongful Death Act based on mere negligence does not change their punitive nature. The degree of culpability is one of the elements a jury can consider in assessing the amount of the award. *See Black Belt Wood*, 514 So. 2d at 1262 (purpose of the Wrongful Death Act is "punishment based on the quality of the wrong" and "degree of culpability"); *Blount Bros. Constr. Co. v. Rose*, 149 So. 2d 821, 833 (Ala. 1962) (damages under the Wrongful Death Act are based on "the culpability of defendant, the enormity of the wrongful act, and the necessity of deterring similar wrongs"). However, the argument that the damages available under the Wrongful Death Act are compensatory in any sense rather than punitive has been rejected:

> [W]e reject the argument that the damages awarded under the statute are, regardless of the label applied by the Alabama courts, inherently compensatory to any extent. Since the objectives of punitive damage awards are totally unrelated to the purposes of compensation, it would be a mere happenstance if a verdict for punitive damages equalled compensatory damages in this cause. The purpose of this law as declared of the courts of Alabama is binding on this court. It simply will not do to allow plaintiff's [sic] to utilize Alabama's wrongful death law authorizing punitive recovery as a surrogate authority to recover compensatory damages by assuming our own view of its true purpose or measure of damages to be awarded which the statute does not authorize and Alabama courts declare is not present.

*See Painter v. Tenn. Valley Auth.*, 476 F.2d 943, 944 (5th Cir. 1973).[12]

---

[12]    In a case that neither side cited, the Fifth Circuit sought to distinguish *Painter* in *Lor, Inc. v. Cowley*, 28 F.3d 19 (5th Cir. 1994). There, the Court relied on the Louisiana principles of contract interpretation and ruled that an exclusion for punitive damages in an insurance policy did not cover the punitive damages awarded under the Wrongful Death Act because the "punitive damages" exclusion referred to traditional punitive damages that required proof of more than ordinary negligence. *Id.* at 23. The Court distinguished *Painter* on the basis that *Painter* was dealing with the question of the TVA's sovereign immunity rather than a private insurance contract, and waivers of sovereign immunity must be unequivocally expressed. *Id.* at 22 n. 5.

Indeed, the seeming unfairness of permitting an award of punitive damages based on mere negligence has been the subject of several unsuccessful Constitutional challenges, challenges that would not arise if the Wrongful Death Act did not limit recovery to traditional punitive damages.  In *U.S. Cast Iron Pipe & Foundry Co. v. Sullivan*, 3 F.2d 794 (5th Cir.), *cert. denied*, 268 U.S. 696 (1925), the decedent's estate sued the defendant under the Wrongful Death Act to recover damages arising from the defendant's negligence.  The defendant contended that the Wrongful Death Act violated the due process clause of the Fourteenth Amendment by subjecting the defendant to punitive damages based on ordinary negligence.  Disagreeing, the Court of Appeals ruled:

> We are of opinion that there is no merit in this contention.  In the absence of statute, punitive or exemplary damages are recoverable in civil actions for certain kinds of wrongful conduct.  It is clearly within legislative competency to give a civil right of action for the negligent or wrongful killing of a human being, and to make the wrongdoer liable for punitive or exemplary damages.

*Id.* at 795-96.

In *Louis Pizitz Dry Goods Co. v. Yeldell*, 274 U.S. 112 (1927), the Supreme Court extended this principle to vicarious liability.  There, the plaintiff sued an employer under the Wrongful Death Act (then, the Homicide Act) seeking to impose vicarious

---

*Lor* has been cited by only one court for an entirely different proposition, *see Dallas Glen Hills, L.P. v. Underwriters at Lloyds*, Civil Action No. 3:03-CV-0295-D (SAF), 2003 U.S. Dist. LEXIS 10490, at *10 n. 10 (N.D. Tex. June 19, 2003) (referencing *Lor* to show that Lloyd's of London had been sued through an individual syndicate acting in a representative capacity), and its construction of the punitive damages exclusion in the insurance policy is suspect.  As discussed in the succeeding text, subsequent Alabama case law has declined to enforce a punitive damage insurance coverage exclusion in wrongful death actions on public policy grounds.  If punitive damages recoverable under the Wrongful Death Act meant something different from the punitive damages excluded under an insurance contract, it would not be necessary to resort to public policy.

liability for punitive damages based on the negligence of its employee.  The defendant

contended that the imposition of vicarious liability without any fault violated the

Fourteenth Amendment of the United States Constitution.  *Id.* at 113-14.  Focusing on

the purpose of the Wrongful Death Act to prevent homicides and punish the wrongdoer,

the Supreme Court concluded that it was within the province of the legislature to extend

the vicarious liability for punitive damages to employers who are not directly at fault:

> As interpreted by the state court, the aim of the present statute is to strike
> at the evil of the negligent destruction of human life by imposing liability,
> regardless of fault, upon those who are in some substantial measure in a
> position to prevent it.  We cannot say that it is beyond the power of a
> Legislature, in effecting such a change in common law rules, to attempt to
> preserve human life by making homicide expensive.  It may impose an
> extraordinary liability such as the present, not only upon those at fault but
> upon those who, although not directly culpable, are able nevertheless, in
> the management of their affairs, to guard substantially against the evil to
> be prevented.

*Id.* at 116.

Subsequent Constitutional challenges have similarly failed.  *See Kirksey v.*

*Schindler Elevator Corp.*, CIVIL ACTION 15-0115-WS-N, 2016 WL 3189242, at *21

(S.D. Ala. June 7, 2016) (denying equal protection challenge based on "[t]he distinction

employed by the Alabama legislature . . . between negligent conduct not causing a

fatality (as to which punitive damages are unavailable as a matter of law) and negligent

conduct causing a fatality (as to which the Act allows punitive damages)"), *denying*

*reconsideration*, CIVIL ACTION 15-0115-WS-N, 2016 WL 6462176 (S.D. Ala. Oct. 28,

2016); *Cherokee Elec. Coop. v. Cochran*, 706 So. 2d 1188, 1194 (Ala. 1997) (stating that

"the Supreme Court [in *Louis Pizitz*] held that Alabama could authorize the recovery of

punitive damages for simple negligence if death resulted, without violating a defendant's

constitutional rights"); *Ala. Power Co. v. Turner*, 575 So. 2d 551, 556 (Ala.) ("By

allowing punitive damages to be assessed against defendants in wrongful death actions in a manner different from the way punitive damages are assessed in other civil actions, the legislature has undoubtably [sic] recognized that no arbitrary cap can be placed on the value of human life. . . ."), *cert. denied*, 500 U.S. 953 (1991); *cf. Campbell v. Williams*, 638 So. 2d at 812 (rejecting due process and equal protection challenges despite the absence of any requirement to apportion punitive damages among multiple defendants).

In short, the damages awarded under the Wrongful Death Act are still punitive damages, whether based on mere negligence or on more egregious wrongdoing, because they are intended to punish and deter rather than compensate.

The Plaintiffs' contrary argument results from their misreading of *Louis Pizitz*. In describing the Wrongful Death Act, Justice Stone quoted *S. Ry. Co. v. Bush*, 26 So. 168 (Ala. 1899):

> The [Wrongful Death Act] is *remedial, and not penal*, and was designed as well to give a right of action where none existed before, as to "prevent homicides," and the action given is purely civil in its nature for the redress of private, and not public wrongs.

*Louis Pitziz*, 274 U.S. at 114 (quoting *Bush*, 26 So. at 174) (emphasis added). The Plaintiffs maintain that the quoted portion of the *Louis Pizitz* decision signifies that recovery under the Wrongful Death Act is not limited to punitive damages. (*Plaintiffs Brief* 19.)

Their argument ignores the context of the *Bush* quotation as well as the distinction *Bush* drew between the nature of the proceeding and the nature of the damages. *Bush* involved claims brought under the Wrongful Death Act by the

20

representative of a decedent killed when he was struck by a train. *Bush*, 26 So. at 170. The plaintiff sought to prove his case through the interrogatory answers provided by the defendant's employee. *Id.* at 173. The defendant objected, arguing that the wrongful death action was akin to "proceedings for penalties and forfeiture," and the Fifth Amendment right against self-incrimination prevented the disclosure of the interrogatory answers on that basis. *Id.*

The *Bush* Court disagreed ruling that wrongful death claims were civil claims notwithstanding that the plaintiff's recovery was limited to punitive damages:

> If the damages recoverable in an action of this character were, strictly speaking, a penalty imposed by law, we would be inclined to give our constitutional provision on the subject the same construction that has been placed on the similar provision of the federal constitution, and to hold that the defendant could not be compelled, even by statute, to give or furnish evidence in aid of a recovery against it. *But while the damages recoverable are undoubtedly, under our former rulings, punitive in their nature, and not compensatory, they are not, in a strict sense, a penalty; nor is the action penal, or quasi criminal, within the meaning of the constitutional provisions as above construed.* The statute is remedial, and not penal, and was designed as well to give a right of action where none existed before, as to "prevent homicides"; and the action given is purely civil in its nature.

*Id.* at 173-74 (emphasis added). Thus, *Bush* simply distinguished a wrongful death case—a civil proceeding—from a penalty, forfeiture or other quasi-criminal proceeding for the purpose of determining the availability of the Fifth Amendment right against self-incrimination. The Court did not suggest that compensatory damages were available under the Wrongful Death Act, and, in fact, expressly stated that the "damages recoverable . . . [are] punitive in their nature, and not compensatory." *Id.* at 174.

The Plaintiffs' remaining arguments are unpersuasive. They assert that interpreting Amendment No. 4's restriction on punitive damages to preclude claims

under the Wrongful Death Act would lead to the absurd result of preventing wrongful

death claims brought by Alabamians against New Chrysler while permitting the same

claims brought by citizens of other states.  (*Plaintiffs Brief* 20-21.)  This argument is not

new.  It has been considered and rejected in analogous situations involving federal

statutes that preclude the recovery of punitive damages.  For example, in *Painter v.*

*Tenn. Valley Auth.,* the personal representative of decedent's estate brought an action

under the Wrongful Death Act against the TVA.  The District Court dismissed the action

because the Wrongful Death Act was limited to the recovery of punitive damages, and

punitive damages could not be recovered against the United States or its agencies.

*Painter v. Tenn. Valley Auth.*, 476 F.2d at 944.

On appeal, the Fifth Circuit affirmed.  Noting the anomaly that would permit

recovery in any other jurisdiction that permitted the recovery of compensatory damages,

the Court stated that corrective action resided with the appropriate legislature and not

the courts:

> It is altogether anamolous [sic] that similarly situated survivors could
> maintain this action against the TVA under the law of practically any other
> state while those who have the misfortune of being relegated to the use of
> Alabama law are permitted no right of action at all.  This lack of uniformity
> of tort responsibility of a federal institution based on the fortuity of
> geography is irrational. . . .
>
> The aberration in such cases must find its remedy through an appropriate
> Congressional waiver of the TVA's immunity to punitive damages or by the
> creation of some uniform federal right of action, or by Alabama's
> amendment or reinterpretation of its law.

*Id.* at 944-45 (footnotes omitted); *accord Springer v. Bryant*, 897 F.2d 1085, 1090-91

(11th Cir. 1990); *see Brown v. Morgan Cty., Ala.*, 518 F. Supp. 661, 665 (N.D. Ala. 1981)

(striking claim for compensatory damages in action brought under 42 U.S.C. § 1983

pursuant to the Wrongful Death Act because the Wrongful Death Act only permitted recovery of punitive damages, and punitive damages were not recoverable in a § 1983 action).

The limitation on the recovery of punitive damages against New Chrysler is contractual rather than statutory, but the foregoing principles require the same result. Alabama adheres to the rule that a plaintiff may recover only punitive damages in a wrongful death case, and Amendment No. 4 precludes such recovery against New Chrysler.

Lastly, the Plaintiffs make an argument based on public policy. Amendment No. 4 provides:

> If any term or other provision of this Amendment is invalid, illegal or incapable of being enforced by any rule of Law, or public policy, then to the maximum extent permitted by Law, all other conditions and provisions of this Amendment shall nevertheless remain in full force and effect.

(Amendment No. 4 ¶ 9.) According to the Plaintiffs, "it is Alabama's public policy that wrongful death damages are not treated as punitive if the application of a contract or federal regulatory scheme would unfairly deprive an Alabama decedent's estate from the same benefit granted to other wrongful death claimants." (*Plaintiffs Brief* 21.)

This contention, a variation of the "absurd result" argument, overstates Alabama's public policy. The refusal to enforce punitive damage exclusions appears to be limited to punitive damage exclusions in insurance policies in wrongful death cases. *Wingard v. Länsförsäkringar AB,* No. 2:11−CV−45−WKW, 2013 WL 5493177, at *14 (M.D. Ala. Sept. 30, 2013); *see Hill v. Campbell*, 804 So. 2d 1107, 1109 (Ala. Ct. Civ.

23

App. 2001); *see also Letter from Assistant Attorney General Ronald B. Hatcher to Charles H. Payne, Commissioner of Insurance*, dated Feb. 1, 1978.[13]  In addition, the Plaintiffs point out that the Internal Revenue Code includes punitive damages in gross income, 26 U.S.C. § 104(a)(2), unless they are awarded for wrongful death where applicable state law limits recovery to punitive damages.[14]

The result in this case is not driven by federal tax policy.  Moreover, there are strong federal policies that favor the interpretation of Amendment No. 4 advocated by New Chrysler.  The exclusion at issue was contained in a contract of sale approved by the Court.  The terms of a section 363 sale are the product of a negotiation.  *See Motors*

---

[13]    A copy of Mr. Hatcher's letter is annexed as Exhibit 4 to the *Miller Declaration*.  The Plaintiffs also quote Mr. Hatcher's criticism of the majority view that permits the exclusion of punitive damage coverage in insurance policies and his opinion that punitive damages are now largely or exclusively compensatory in many jury verdicts.  (*Plaintiffs Brief* 22.)  His view about the compensatory components of jury awards is wholly conclusory and contrary to Alabama law.

[14]    IRC § 104 provides in pertinent part:

(a) In general.--Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include—

. . . .

   (2) the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness. . . .

. . . .

(c) Application of prior law in certain cases.--The phrase "(other than punitive damages)" shall not apply to punitive damages awarded in a civil action--

   (1) which is a wrongful death action, and

   (2) with respect to which applicable State law (as in effect on September 13, 1995 and without regard to any modification after such date) provides, or has been construed to provide by a court of competent jurisdiction pursuant to a decision issued on or before September 13, 1995, that only punitive damages may be awarded in such an action.

This subsection shall cease to apply to any civil action filed on or after the first date on which the applicable State law ceases to provide (or is no longer construed to provide) the treatment described in paragraph (2).

24

*Liquidation Co.*, 829 F.3d at 163.  "A § 363 sale can often yield the highest price for the assets because the buyer can select the liabilities it will assume and purchase a business with cash flow (or the near prospect of it)."  *Ind. State Police Pension Trust v. Chrysler LLC* (*In re Chrysler LLC*), 576 F.3d 108, 116 (2d Cir.), *vacated & remanded with instructions to dismiss the appeal as moot*, 558 U.S. 1087 (2009).

Here, Old Chrysler, New Chrysler and other stakeholders that participated in the negotiation struck a bargain under which New Chrysler agreed, in relevant part, to assume liability for compensatory damages for post-Closing accidents involving vehicles manufactured and sold by Old Chrysler, but not to assume liability for punitive damages.  The Plaintiffs do not make the untenable argument that the parties to Amendment No. 4 understood that they were limiting New Chrysler's liability for punitive damages based on egregious conduct but not based on ordinary negligent conduct.  Regardless of the evidentiary standard, the nature and amount of the award are still punitive and not compensatory.[15]

In the end, Amendment No. 4 did not create the unfair or anomalous result in this case.  The result flows from interpretation accorded to the nature of the damages recoverable under the Wrongful Death Act.  Since *Savannah,* the Alabama Supreme Court has consistently ruled that the plaintiff in a wrongful death action may recover only punitive damages, and evidence supporting a compensatory award is irrelevant. Despite judicial and academic criticism, *see, e.g., King v. Nat'l Spa & Pool Inst., Inc.*,

---

[15]    In addition, the award is paid to the decedent's survivors rather than to her estate, and creditors of her estate cannot look to the award to satisfy their claims.  *See* ALA. CODE § 6-5-410(c) (1975) ("The damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions.").

607 So. 2d at 1251 (Maddox, J., dissenting), the Alabama Supreme Court has not overruled its precedent.

Nor has the Alabama legislature acted.  The anomaly, or absurd result, noted by the *Painter* Court forty-five years ago still persists, and despite major tort reform legislation in 1987 (and decisions like *Painter* and academic and judicial criticism), the Alabama legislature has chosen not to change the Wrongful Death Act to permit the award of compensatory damages in wrongful death actions.  *Tillis Trucking v. Moses*, 748 So. 2d at 889-90 (quoting *Lemond Constr. Co. v. Wheeler*, 669 So.2d 855, 864 (Ala. 1995) (Maddox, J., concurring)).  While the result is unsatisfactory, the Court is powerless to change the result.  Accordingly, New Chrysler's motion to enforce the *Sale Documents* and enjoin the prosecution of the Overton Claims is granted.

**C.     The Graham Claims**

The Graham Claims do not implicate the Wrongful Death Act because J.G. survived.  They consist of (i) compensatory damage claims based on the actions of Old Chrysler and/or New Chrysler whether pre- or post-Closing, and (ii) punitive damage claims based on the post-Closing actions of New Chrysler.  The compensatory damage claims clearly fall within the purview of the additional claims assumed by New Chrysler under Amendment No. 4.  (*See* Amendment No. 4 ¶ 1 (New Chrysler will assume "all Product Liability Claims arising from the sale . . . prior to the Closing of motor vehicles . . . manufactured by [Old Chrysler] and distributed and sold as a . . . Jeep . . . brand vehicle . . . .").)  They are not barred by the Sale Order or the relevant contractual provisions.

26

The allegations pertaining to the punitive damage claims based on post-Closing conduct are sparse and conclusory. The *Complaint* states that "the defective condition of the Jeep Liberty was known by [New Chrysler] and/or former Chrysler companies absorbed by [New Chrysler], and that knowledge was transferred to [New Chrysler]. Despite such knowledge, [New Chrysler] took no action to warn, recall or otherwise eliminate the defective condition." (*Complaint* ¶ 32; *see also id.* ¶¶ 44, 47, 54, 56.) The *Complaint* does not allege who owned the Vehicle, or whether any of the Plaintiffs or the persons they represent had any contractual or prior relationship or business with Old Chrysler or New Chrysler. In *Overton*, the Alabama District Court was "less convinced" that the post-Closing duty to warn claims were barred by Amendment No. 4, and ultimately concluded that the District Court lacked subject matter jurisdiction over the Graham Claims under 28 U.S.C. § 1334: "In light of the carefully-pled manner of the Complaint, the MTA and Amendment No. 4 do not govern whether Plaintiff Scott Graham's claims are proper," *Overton*, 2018 WL 847772, at *5 n. 6, and "do not fall within the scope of the Bankruptcy Court's Orders." *Id.* at *8.

Graham argues that the Alabama District Court's jurisdictional ruling is law of the case. (*Plaintiffs Brief* 24-25.) New Chrysler counters that law of the case does not apply because this Court has not ruled on the issue and law of the case only applies to proceedings before the same court. (*Chrysler Reply* ¶ 33 (citing *In re Motors Liquidation Co.*, 576 B.R. 313, 321 (Bankr. S.D.N.Y. 2017).) While this is not the same case that was before the Alabama District Court, and law of the case may not apply, I conclude on the only issue before me that the failure to warn claim passes through the gate.

A § 363 sale order may not bar a claim that arises from wrongful conduct occurring after the sale. *Dearden*, 582 B.R. at 844; *see also Motors Liquidation Co.*, 829 F.3d at 156. Consequently, Graham's punitive damage claims cannot be barred by the *Sale Documents* to the extent they are based solely on the post-Closing conduct of New Chrysler. *Motors Liquidation Co.*, 568 B.R. at 231 ("To pass the bankruptcy gate, a complaint must clearly allege that its causes of action are based solely on New GM's post-closing wrongful conduct."); *accord Dearden*, 582 B.R. at 844 (listing cases). New Chrysler contends that the *Complaint* fails to allege post-Closing tortious conduct and is enjoined by the *Sale Documents* for that reason. (*Chrysler Brief* ¶ 45.)

Initially, the *Sale Order* bars any claim based on injuries proximately caused by the failure to repair a pre-existing defect in a vehicle manufactured and sold by Old Chrysler. The only repair obligations that New Chrysler assumed were those imposed under the factory or extended warranties, and Graham has not asserted such a claim.

On the other hand, injuries proximately caused by the post-Closing breach of any duty to warn or recall would not be barred to the extent they are cognizable claims under Alabama law. While federal law does not provide a private right of action based on the failure under federal law to recall a vehicle for safety reasons, *Grimstad*, 2017 WL 1628888, at *5, I leave to the Alabama State Court whether Alabama law recognizes such a claim. New Chrysler opposes the duty to warn claim arguing that the *Complaint* fails to allege a legally sufficient post-Closing claim based on the breach of that duty. *Id.* New Chrysler may be right, but it is within the province of the Alabama State Court to make that determination. This Court has fulfilled its limited role by concluding that the *Sale Documents* do not bar such a claim.

28

## CONCLUSION

For the reasons stated, the Overton Claims are barred by the *Sale Documents*, and Overton is enjoined from prosecuting the Overton Claims in the Alabama State Court.  The Graham Claims are not barred by the *Sale Documents* to the extent they seek compensatory damages or punitive damages based on the post-Closing breach of a duty to warn or recall, but the Court does not decide whether the *Complaint* asserts legally sufficient claims under Alabama law.  Settle Order.

Dated:  New York, New York
            November 1, 2018

                                        /s/ *Stuart M. Bernstein*
                                        STUART M. BERNSTEIN
                                        United States Bankruptcy Court