UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------X
 In re:                                                    :
                                                           :
 OLD CARCO LLC k/k/a CHRYSLER LLC.                         :
                                                           :
-----------------------------------------------------------:    1:18-cv-6756-GHW
                                                           :
 FCA US LLC,                                               :    SUMMARY ORDER
               Appellant,                                  :
                                                           :
               -v-                                         :
                                                           :
 AMKENNNA BENNET,                                          :
               Appellee.                                   :
-----------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/7/2019
```

GREGORY H. WOODS, United States District Judge:

On June 26, 2018, Bankruptcy Judge Bernstein issued a memorandum decision denying Appellant's motion to dismiss claims which arose from liabilities assumed under a bankruptcy sale order (the "Sale Order") and the associated Master Transaction Agreement (the "MTA"). *In re Old Carco, LLC, et al*, 9-cv-50002-SMB, Adv. Pro. No. 18-01035. (Bnkr. S.D.N.Y. June 26, 2018) (ECF No. 15 at A297) (the "Opinion"). On July 27, 2018, Appellant noticed its appeal of Judge Bernstein's decision to this Court. (ECF No. 1). And on September 7, 2018, the Court exercised jurisdiction over this appeal, with the consent of both parties. (ECF No. 9). The Court assumes the parties' familiarity with the facts and the underlying Opinion.

The issue before the Court is whether Judge Bernstein erred in his interpretation of the Sale Order and the MTA by holding that Appellant assumed liability for Product Liability Claims[1] which sound in negligence and arose from the sale of products prior to the closing of the MTA. The Court appreciates the well-drafted arguments presented by Appellant's capable counsel, but they are

---

[1] "Product Liability Claim" is a defined term in the MTA, as opposed to the more general "product-liability claim." App'x to Appellant's Br. (ECF 15) at A182.

ultimately inadequate to disturb Judge Bernstein's decision, which is well-reasoned and compelling. While the Court could expound on the virtues of the Opinion at length, it is not necessary to do so as the Opinion speaks for itself.  Accordingly, the ruling of the Bankruptcy Court is AFFIRMED.

   **I.    STANDARD**

A district court has jurisdiction to hear appeals from bankruptcy courts under 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees;  . . . [and] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a)(1), (3).  Part VIII of the Federal Rules of Bankruptcy Procedure outlines the procedure governing such appeals. Fed. R. Bankr. P. 8001.

The Court reviews the Bankruptcy Court's legal conclusions *de novo*.  *ASM Capital v. Ames Dep't Stores (In re Ames Dep't Stores, Inc.)*, 582 F.3d 422, 426 (2d Cir. 2009); *see In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007).  Because Judge Bernstein was not the Bankruptcy Judge who handled the approval of the MTA or the Sale Order, "this is not a case where the Judge is afforded special deference in interpreting [his] own order." *Saudi Am. Bank v. Shaw Group Inc. (In re Stone & Webster, Inc.)*, 558 F.3d 234, 240 (3d Cir. 2009).

Both parties agree that the only issue before the Court is the interpretation of an unambiguous contract, which is a question of law.  The parties further agree that there is no relevant extrinsic evidence.  Accordingly, the contract interpretation issues before the Court are questions of law, and even if the Court were to find that the provisions of the contract were ambiguous, the lack of relevant extrinsic evidence renders the issues purely legal in nature.  *See Peterson v. Regina,* 935 F. Supp. 2d 628, 635 (S.D.N.Y. 2013) (citing *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000) (noting that "the meaning of an unambiguous contract is a question

2

of law for the court to decide" and "the meaning of an ambiguous agreement as to which no extrinsic evidence exists is a question of law to be determined solely by the court.").

## II. THE OPINION IS AFFIRMED

The Court has reviewed the Opinion, the briefing, and the record on appeal. Having done so, the Court adopts the reasoning and conclusions of the Opinion. The Court need not, and does not, address every aspect of the Opinion, which it affirms in its entirety. The Court writes separately merely to further discuss one issue raised by Appellant, which serves to reinforce the wisdom of Judge Bernstein's decision.

Appellant's central argument is that the Opinion fails to give effect to § 2.09(j) of the MTA, which excluded "all Liabilities in strict liability, negligence, gross negligence or recklessness for acts or omissions arising prior to or ongoing at the Closing."[2] App'x to Appellant's Br. (ECF 15) ("App'x") at A99; *see* Appellant's Br. (ECF No. 14) ("Br.") at 19-20. Appellant contends that § 2.09(j) excludes liability for negligence-based clams, while at the same time admitting that § 2.09(j) allows for the assumption of Product Liability Claims which sound in strict liability. Br. at 23; Appellant's Reply (ECF. No. 17) ("Reply") at 8-9; Opinion at A312-13 ("New Chrysler concedes, however, that the Appellee's strict liability claim . . . was assumed").

Fatally, this construction of the contract is not supported by the text of the MTA. Section 2.09(j) excludes all liabilities arising in both strict liability and negligence without drawing a

---

[2] For reference, the relevant provisions of § 2.09, as amended, are reproduced below:
"Section 2.09 Excluded Liabilities. Purchaser shall not assume and shall be deemed not to have assumed, and Sellers shall be solely and exclusively liable with respect to, any Liabilities of Sellers other than the Assumed Liabilities (collectively, the "Excluded Liabilities"). For the avoidance of doubt, the Excluded Liabilities include the following: . . .
 (i) all Product Liability Claims arising from the sale of Products or Inventory on or prior to the Closing that are not described in Section 2.08(h);
 (j) all Liabilities in strict liability, negligence, gross negligence or recklessness for acts or omissions arising prior to or ongoing at the Closing . . ."
App'x at A97-99.

3

distinction between the two categories.

To limn this distinction, therefore, Appellant argues that the MTA distinguishes between conduct-based claims (where no liability is assumed) and product-based claims (where liability is assumed). Reply at 8-9 ("the reference to 'strict liability' in Section 2.09(j) . . . does not bar *all* strict liability claims but rather only those for Old Chrysler's 'acts or omissions.'") (emphasis in original).

The MTA, as amended, is in parts perhaps imperfectly drafted, and as a result, there is some tension between its various provisions. That said, the Court agrees with Judge Bernstein, that Appellant's proposed interpretation leads to an "internally inconsistent" and "absurd" result. Opinion at A312. Simply put, any interpretation of subsection (j) in which liability for certain classes of strict liability claims is assumed, but liability for all negligence claims is excluded, is difficult, if not impossible, to square with the text of subsection (j). This is especially so when § 2.09 allows for a simpler construction which avoids the internal inconsistencies inherent in Appellant's position.

The language of the MTA prior to its amendment in 2009, shows how the contracting parties originally intended §§ 2.09(i) and (j) to interact. "In short, the Sale Order and original MTA excluded any Liabilities, including Product Liability Claims, relating to any vehicle manufactured by Old Chrysler unless it was sold by New Chrysler." Opinion at A303. To that end, the contracting parties drafted the original § 2.09(i) to exclude "all Product Liability Claims arising from the sale of Products or Inventory prior to the Closing." App'x at A99. Product liability, for an automobile manufacturer, both as defined in the MTA and under the common understanding of the term "product liability," encompasses product-liability claims which sound in either strict liability or negligence. Opinion at A309-11. As a result, if subsection (j) were construed to also exclude certain categories of Product Liability Claims, as Appellant's argue, it would have substantial

4

overlap with the original subsection (i), and would constitute surplusage. "Principles of contract construction favor interpretation which does not render an agreement—or any provision thereof—surplusage." *In re Lehman Bros. Inc.*, 478 B.R. 570, 594 (S.D.N.Y. 2012), *aff'd sub nom. In re Lehman Bros. Holdings Inc.*, 761 F.3d 303 (2d Cir. 2014), and *aff'd sub nom. In re Lehman Bros. Holdings Inc.*, 590 F. App'x 92 (2d Cir. 2015). Furthermore, the original § 2.08(h) assumed liability for Product Liability Claims which arose from post-closing sales of products manufactured prior to the closing. App'x A98. Appellant's construction would create tension between the original § 2.08(h) and § 2.09(j) by subtracting Product Liability Claims arising from negligence from the scope of the liabilities expressly assumed pursuant to the original § 2.08(h). A better construction of the original MTA, which avoids such overlaps and inconsistencies, is that the original subsection (i) excluded Product Liability Claims arising from sales prior to closing, while subsection (j) excluded other forms of liability. Under that construction, the tension between subsections (i) and (j) dissipates. For example, subsection (j) would exclude liabilities arising from workplace accidents or dangerous conditions on Old Chrysler's property, while (i) excluded Product Liability Claims.

Viewed in that context, the effect of the 2009 amendment to the MTA is clear—liability for an expanded set of Product Liability Claims is assumed pursuant to § 2.08(h), as amended; § 2.09(i), as amended, excludes non-assumed Product Liability Claims. And subsection (j) excludes forms of liability other than Product Liability Claims as it did prior to the amendment. There is no tension between subsections (i) and (j) under Judge Bernstein's construction, as they speak to different categories of liabilities. Subsection (i) references the amended § 2.08(h) to make it clear that liability for certain categories of Product Liability Claims is assumed, and § 2.09(j) continues to categorically exclude liabilities other than Product Liability Claims, as it did prior to amendment.

In contrast with this rational construction of the MTA, Appellant advocates for a tortured

5

alternative. Appellant's proposed construction would require the Court to construe subsection (j) in a fashion that is inconsistent with the text of the clause itself, which treats strict liability and negligence claims in the same way. It would also create substantial tension between § 2.09(j) and §§ 2.08(h) and 2.09(i)—by suggesting that subclause (j) excludes negligence claims from the category of Product Liability Claims expressly assumed in § 2.08(h). The Court declines to adopt that construction, especially when the alternative is the logical and non-contradictory construction endorsed by Judge Bernstein. Accordingly, for the reasons expressed here as well as the reasons expressed in the Opinion itself, the Court adopts and affirms Judge Bernstein's ruling.

### III. CONCLUSION

For the reasons stated above, the Opinion is AFFIRMED. The Clerk of Court is directed to enter judgment accordingly, and to close this case.

SO ORDERED.

Dated: February 7, 2019
New York, New York

GREGORY H. WOODS
United States District Judge