# **EXHIBIT D**

MANDATE

19-1901-bk
*In re: Old Carco LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of May, two thousand twenty.

PRESENT:   DENNY CHIN,
           SUSAN L. CARNEY,
           STEVEN J. MENASHI,
                   *Circuit Judges.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

IN RE: OLD CARCO LLC, AKA CHRYSLER LLC,
                   *Debtor.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SCOTT GRAHAM, AS LEGAL GUARDIAN OF
J.G., A MINOR CHILD,
                   *Plaintiff,*

FRANKIE OVERTON, AS EXECUTOR OF
THE ESTATE OF SUE ANN GRAHAM,
                   *Appellant,*

                   -v-                                                 19-1901-bk

MANDATE ISSUED ON 06/10/2020

FCA US LLC,

      *Appellee*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| FOR APPELLANT: | J. PARKER MILLER (Stephanie S. Monplaisir, *on the brief*), Beasley, Allen, Crow, Methvin, Portis & Miles P.C., Montgomery, Alabama. |
| FOR APPELLEE: | BRIAN D. GLUECKSTEIN, Sullivan & Cromwell LLP, New York, New York. |
| FOR AMICUS CURIAE STATE OF ALABAMA: | EDMUND G. LaCOUR JR., Alabama Solicitor General, *for* Steve Marshall, Alabama Attorney General, Montgomery, Alabama. |

  Appeal from the United States District Court for the Southern District of New York (Nathan, *J.*).

  **UPON DUE CONSIDERATION, IT IS ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

  Appellant Frankie Overton, as executor of the estate of Sue Ann Graham, appeals from the district court's judgment entered June 3, 2019 affirming the bankruptcy court's decision to bar Overton's wrongful death claim brought under the Alabama Wrongful Death Act (the "AWDA"), Ala. Code § 6-5-410, against appellee FCA US LLC ("New Chrysler") in state court in Alabama. The bankruptcy court and district court held that the claim, which arose from a car accident involving a 2002 Jeep Liberty that resulted in Graham's death, was for punitive damages under Alabama law and was

2

therefore barred by the governing documents by which New Chrysler had assumed certain tort liabilities in the 2009 Chrysler bankruptcy proceedings.

On appeal, Overton raises three main arguments: (1) the punitive damages exclusion in the bankruptcy sale documents is ambiguous because it does not define "punitive damages"; (2) damages under the AWDA are not punitive damages and therefore do not fall within the punitive damages exclusion; and (3) enforcing the punitive damages exclusion would violate Alabama public policy. The State of Alabama (the "State") has filed an amicus brief in support of Overton's second and third arguments. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

On April 30, 2009, Old Carco LLC, formerly Chrysler LLC, and its affiliates (collectively, "Old Chrysler") filed for Chapter 11 bankruptcy. On June 1, 2009, the bankruptcy court approved a sale order (the "Sale Order") and master transaction agreement (the "MTA"). The Sale Order and MTA set forth, among other things, the liabilities assumed by New Chrysler. The MTA was eventually amended to extend New Chrysler's assumed liabilities to include, *inter alia*, product liability claims for personal injuries or wrongful deaths that arose before or on June 10, 2009, but it excluded "exemplary or punitive damages" in such cases (the "Punitive Damages Exclusion"). App'x at 226.

After proceedings began in Alabama, New Chrysler moved in the bankruptcy court below to reopen the bankruptcy case to enforce the Sale Order and the MTA on the ground that Overton's claim for damages under the AWDA was barred by the Punitive Damages Exclusion. On June 25, 2018, the bankruptcy court granted New Chrysler's motion to reopen the bankruptcy proceedings, and it later held that Overton's AWDA claim was barred by the Punitive Damages Exclusion. Overton appealed to the district court. The district court affirmed the bankruptcy court's judgment for substantially the reasons given by the bankruptcy court. This appeal followed.

Although the AWDA allows recovery of "such damages as the jury may assess," Ala. Code § 6-5-410(a), it does not explain what type of damages a litigant may recover. Alabama courts, however, long ago established and have consistently since held that damages under the AWDA are punitive, as they are intended to punish and deter, not compensate. *See Stinnett v. Kennedy*, 232 So. 3d 202, 212-13 (Ala. 2016) ("[T]he damages recoverable under [the Wrongful Death Act] are entirely punitive and are based on the culpability of the defendant." (brackets in original) (quoting *Eich v. Town of Gulf Shores*, 300 So. 2d 354, 356 (Ala. 1974)); *Lance, Inc. v. Ramanauskas*, 731 So. 2d 1204, 1221 (Ala. 1999) ("[U]nder the crushing weight of 150 years of stare decisis, [the Alabama Supreme Court has] consistently held that [the Alabama] wrongful-death statute allows for the recovery of punitive damages only."); *Tatum v. Schering Corp.*, 523

4

So. 2d 1042, 1045 (Ala. 1988) ("[D]amages recoverable in a wrongful death action are *punitive* in nature."). Despite unambiguous precedent to the contrary, Overton asserts several arguments for why she should be permitted to recover under the AWDA. None is persuasive.

First, Overton argues that the Punitive Damages Exclusion is ambiguous because "punitive damages" is not defined in the MTA, and, therefore, under New York law, we should consider extrinsic evidence to uncover the parties' intentions. We disagree. Under New York law, "'[w]here a contract is clear and unambiguous on its face,'" the court may only consider the language in the "four corners of the instrument, and not . . . extrinsic evidence." *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) (quoting *De Luca v. De Luca*, 751 N.Y.S.2d 766, 766 (2d Dep't 2002)). Here, the MTA, as amended, clearly states the parties' intent to exclude punitive damages from the scope of New Chrysler's liability, and the meaning and purpose of "punitive damages" is clear. *See Damages*, Black's Law Dictionary (11th ed. 2019); *see also BMW of N. Am. v. Gore*, 517 U.S. 559, 568 (1996) (explaining the purpose of punitive damages is "punishment and deterrence"). Moreover, nothing in the Sale Order or MTA renders this term ambiguous. *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997) ("Contract terms are considered ambiguous if they are capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the

5

customs, practices, usages and terminology as generally understood in the particular trade or business." (internal quotation marks omitted)). Accordingly, we conclude that the Punitive Damages Exclusion is unambiguous.

Second, Overton and the State argue that the damages Overton seeks under the AWDA are not punitive because they are not awarded in addition to compensatory damages and are not necessarily predicated on recklessness, malice, or deceit. We are not persuaded. Black's Law Dictionary defines "punitive damages" as damages "awarded in addition to actual damages when the defendant acted with recklessness, malice, or deceit; specif., damages assessed by way of penalizing the wrongdoer or making an example to others." *Damages*, Black's Law Dictionary (11th ed. 2019). While it is true that the AWDA does not contemplate a separate award in addition to "actual damages," the Alabama Supreme Court has made clear that an award of punitive damages under the AWDA does not require a predicate award of compensatory damages. *See Trott v. Brinks, Inc.*, 972 So. 2d 81, 84 (Ala. 2007) ("[T]he *only* recoverable damages [under the AWDA] are punitive damages intended to punish the tortfeasor for its actions -- *not to compensate* the plaintiff." (emphasis added)). Moreover, the Alabama Supreme Court has also made clear that wrongful death damages are awarded under the AWDA to punish and deter -- traditional goals of punitive damages. *Stinnett*, 232 So. 3d at 212-13 (recognizing that the "primary purpose" of damages under AWDA is "to punish the defendant and to deter others

6

from like conduct"); *Trott*, 972 So. 2d at 84 (noting that punitive damages are intended "to punish the tortfeasor for its actions -- not to compensate the plaintiff").

Third, Overton and the State claim that the Punitive Damages Exclusion is unenforceable because it would be, as applied to her, contrary to Alabama's public policy. Overton attempts to analogize to insurance contracts, asserting that Alabama courts have voided punitive damages exclusions for wrongful death, and the State contends that prohibiting wrongful death claims would create a perverse incentive that rewards tortfeasors for killing victims rather than just injuring them. To establish a violation of public policy, a party must show "well defined and dominant [public policy that can be] ascertained by reference to the laws and legal precedents." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 43 (1987) (internal quotation marks omitted). Overton's insurance examples and the State's "death bonus" argument, Amicus Br. at 9, however, fall short of this standard.

As to Overton's insurance analogy, the only court to find that Alabama's public policy prohibits punitive damages exclusions in insurance contracts acknowledged that such a policy "is not itself embodied in a statute" and is "not in a holding" from Alabama's highest court. *Wingard v. Lansforsakringar AB*, No. 2:11-CV-45-WKW, 2013 WL 5493177, at *14 (M.D. Ala. Sept. 30, 2013). Indeed, neither of the Alabama state court cases Overton cites involved a wrongful death, *see Omni Ins. Co. v. Foreman*, 802 So. 2d 195, 195-96 (Ala. 2001) (cuts, bruises, torn meniscus); *Hill v.*

7

*Campbell*, 804 So. 2d 1107, 1108 (Ala. Civ. App. 2001) ("injured"), and one of those cases disagreed with the result it reached -- that a tort victim's insurance company is liable for punitive damages that were awarded based on a third-party tortfeasor's wanton conduct when the tortfeasor is underinsured -- but felt constrained by the plain language of an insurance statute. *Hill*, 804 So. 2d at 1116. Accordingly, such a public policy -- made by analogy, no less -- is hardly "well defined." *United Paperworkers*, 484 U.S. at 43.

The State's public policy argument that the Sale Order and MTA "provide[] a 'death bonus' to tortfeasors who cause death instead of only lesser injuries," Amicus Br. at 9, is equally unavailing. In overturning an antiquated maritime law that prevented recovery for wrongful death, the Supreme Court acknowledged that "nothing in ordinary notions of justice suggests that a violation should be nonactionable simply because it was serious enough to cause death." *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 381 (1970). The State relies on this case to argue that the district court's order should be reversed because it violates Alabama public policy. *Moragne*, however, involved a federal maritime common-law rule that was based on English law, *id.* at 381-82; Overton's case involves a state-enacted statute most recently amended in 2011. And were it not for the confluence of the AWDA -- a statute that, anomalously, permits the recovery of punitive damages only -- and a court-approved punitive damages exclusion -- one that "was a critical inducement" to complete a

8

bankruptcy sale and save tens of thousands of jobs, *In re Chrysler LLC*, 576 F.3d 108, 126 (2d Cir. 2009), *cert. granted, judgment vacated sub nom. Indiana State Police Pension Tr. v. Chrysler LLC*, 558 U.S. 1087 (2009), and *vacated sub nom. In re Chrysler, LLC*, 592 F.3d 370 (2d Cir. 2010) -- the State would not be intervening to complain about the results that flow directly from its own law. Indeed, this quite particular situation does not evoke the "well defined and dominant" public policy considerations required to establish a violation. *United Paperworkers*, 484 U.S. at 43. Accordingly, the district court did not err in affirming the bankruptcy court's enforcement of the Sale Order and MTA.[1]

* * *

We have considered Overton's remaining arguments and conclude they are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

[1] Finally, Overton argues that it was clear error for the lower courts to bar her claim to the extent it was based on New Chrysler's post-sale conduct. Although in her complaint Overton specifically requested "punitive damages for [New Chrysler's] post-bankruptcy sale conduct" only with respect to Jordan Graham's injuries, App'x 274, 278, 281, she did allege that "[a]s a proximate result" of New Chrysler's post-sale failure "to warn, recall or otherwise eliminate the defective condition" of the 2002 Jeep Liberty, "Sue Ann Graham suffered catastrophic injuries that resulted in her death," App'x at 277. Because Overton raised this argument only in a footnote to the district court, it is "forfeited." *United States v. Greenfield*, 831 F.3d 106, 118 n.9 (2d Cir. 2016); D. Ct. Dkt. No. 13 at 6 n.4.

9