**Hearing Date: August 11, 220 at 10:00 a.m. (ET)**
**Objection Deadline: August 4, 2020 at 4:00 p.m. (ET)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Old Carco LLC, *et al.*, | : | Case No. 09-50002 (SMB) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | |

**FRANKIE OVERTON'S REPLY TO FCA US LLC'S OPPOSITION TO HER MOTION FOR RELIEF FROM THE COURT'S "ENFORCEMENT ORDER" TO PERMIT HER TO PURSUE AN INDEPENDENT CLAIM AGAINST FCA US LLC**

| | |
|---|---|
| **Cole Schotz P.C.** | **Beasley, Allen, Crow, Methvin** |
| Mark Tsukerman | **Portis & Miles, P.C.** |
| 1325 Avenue of the Americas, 19th Floor | J. Parker Miller  (*pro hac vice*) |
| New York, NY 10019 | Stephanie Monsplaisir  (*pro hac vice*) |
| Tel: (212) 752-8000 | P.O. Box 4160 |
| *Bankruptcy Counsel for Plaintiff* | Montgomery, Alabama 36103-4160 |
| *Frankie Overton, as Executor of the* | Tel: (334) 269-2343 |
| *Estate of Sue Ann Graham* | *Lead Counsel for Plaintiff Frankie Overton,* |
| | *as Executor of the Estate of Sue Ann Graham* |

57860/0001-20996404v2

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITY .................................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.  OVERTON SEEKS A NON-SUBSTANTIVE MODIFICATION TO THE ENFORCEMENT ORDER WHICH MAY BE BROUGHT PURSUANT TO RULE 60(A) AFTER AN APPEAL ............................................................................. 3

    A.  FCA'S INVOKATION OF THE SECOND CIRCUIT'S MANADATE IS UNAVAILING ............................................................................................... 3

    B.  FCA'S CONTENTION THAT OVERTON SEEKS A SUBSTANTIVE MODIFICATION TO THE ENFORCEMENT ORDER IS BELLIED BY THE COURT'S DECISION ITSELF AND THE RECORD UPON WHICH IT IS BASED ........................................................................................................... 8

II. SHOULD THE COURT DETERMINE THAT THE OVERTON'S REQUESTED MODIFICATION TO THE ENFORCEMENT ORDER IS SUBSTANTIVE, THE COURT MAY RELY ON RULE 60(b)(6) TO GRANT THE MOTION ....................... 10

III. FCA'S CONTENTION THAT OVERTON HAS NOT PROPERLY PLEADED IN AN INDEPENDENT CLAIM IN THE PROPOSED SECOND AMENDED COMPLAINT IS WITHOUT MERIT AND BARRED BY LAW OF THE CASE .................................... 12

CONCLUSION ..................................................................................................................... 15

57860/0001-20996404v2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of New York v. Michalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011) ............................................................................................. 6

*Dearden v. FCA US LLC*,
   582 B.R. 838 (Bankr. S.D.N.Y. 2018) ............................................................................ 13

*Matarese v. LeFevre*,
   807 F.2d 98 (2d Cir. 1986) ........................................................................................ 11, 12

*In re Old Carco LLC*,
   809 Fed. Appx. 36 (2d Cir. 2020) .................................................................................... 6

*Panama Processes, S.A. v. Cities Service Co.*,
   789 F.2d 991 (2d Cir. 1986) ......................................................................................... 3, 4

*U.S. v. Quintieri*,
   306 F.3d 1217 (2d Cir. 2002) ........................................................................................ 6, 7

*United States v. Greenfield*,
   831 F.3d 106 (2d Cir. 2016) ............................................................................................. 6

57860/0001-20996404v2

Frankie Overton ("**Overton**"), as executor of the estate of Sue Ann Graham, by and through her undersigned counsel, hereby files this reply brief in response to FCA's opposition [Docket No. 8551] (the "**Opposition**") to *Frankie Overton's Motion for Relief from the Court's "Enforcement Order" to Permit Her to Pursue an Independent Claim Against FCA US LLC* [Docket No. 8549] (the "**Motion**")[1] and respectfully represents as follows:

## **PRELIMINARY STATEMENT**

1. Through its Opposition, FCA is seeking to escape from having to defend a legitimate independent claim – the exact same claim that has already been upheld by this Court and the Alabama state court for Graham – by attempting to exploit a clear oversight in language of the Enforcement Order. FCA's position is despicable.

2. FCA's argument that Overton seeks to make a substantive modification to the Court's Decision, as mistakenly transcribed in the Enforcement Order, is unsupported in the record and without merit. Indeed, it strains credulity to suggest this Court contemplated and intended to bar Overton's ability to bring an independent claim, considering such a ruling would not only be contrary to binding Second Circuit law, but would internally contradict the Court's own rulings in the Decision that "a § 363 sale order may not bar a claim that arises from wrongful conduct occurring after the sale." (Decision at p. 28; *see also* Decision at p. 11 ("Truly independent claims, that is, those based solely on New Chrysler's post-Closing, wrongful conduct, are not barred by a section 363 sale order" (internal quotation marks omitted)).

3. It is clear from the Decision that the Court intended to bar Overton from pursuing AWDA claims based on Old Chrysler's conduct, *i.e.*, Assumed Liability Claims, as violative of the punitive damages exclusion in the *Sale Documents*. The Motion does not challenge this

---

[1] Capitalized terms used but not defined herein shall have the meanings assigned to them in the Motion.

1

57860/0001-20996404v2

ruling, but rather, seeks to give effect to the Court's rulings, by clarifying that the Sale Order does not preclude the assertion on a truly independent claim. Because the Motion seeks to implement the result actually intended by the Court and does not change the original meaning of the Court's ruling, it is non-substantive.

4. The fact that FCA settled the order on Overton before submitting it to the Court is beside the point and merely evidences Overton's oversight of the clerical error in paragraph 2 of the Enforcement Order. Furthermore, the argument that Overton's conduct on appeal is somehow indicative of the intended scope of the Court's ruling is clearly wrong. The Court intended what it intended, regardless of Overton's conduct subsequent to the Decision.

5. FCA's reliance on the "mandate rule" presupposes that the arguments made in the Motion were required to be made on appeal (rather than through a Rule 60 motion) and were actually adjudicated on appeal. Neither premise is correct, however. As discussed below, Overton's arguments in the Motion are properly brought pursuant to Rule 60(a), which may be made at any time, even after a case is decided on appeal. Furthermore, the Second Circuit's mandate does not bar the arguments in the Motion because, as even the Second Circuit made clear, those arguments were never properly before or decided by the Second Circuit. There is no preclusion.

6. Finally, the Court should reject outright FCA's contention that the Amended Complaint does not allege an independent claim. The Court already allowed Graham's independent failure to warn claim as alleged in the Complaint to pass through the "bankruptcy gate." Overton alleges the same claim, based on the same allegations, which are meticulously drafted to comply with the Sale Order. FCA never appealed the Court's Decision and, thus, is barred by law of the case from attempting to relitigate same issue here.

2

**ARGUMENT**

I. **OVERTON SEEKS A NON-SUBSTANTIVE MODIFICATION TO THE ENFORCEMENT ORDER WHICH MAY BE BROUGHT PURSUANT TO RULE 60(A) AFTER AN APPEAL**

   A. **FCA'S INVOKATION OF THE SECOND CIRCUIT'S MANADATE IS UNAVAILING**

7.  There is no time restriction to seek relief under Rule 60(a), *see* 12 MOORE'S FEDERAL PRACTICE – CIVIL § 60.12[1][a] (hereinafter, "*Moore's*"), and a "court may correct a clerical mistake even after an appellate court has decided the case." *Id*. at § 60.12[b]. "The pendency of an appeal and the pendency of a motion for Rule 60(a) corrections of clerical mistakes usually operate completely independently of each other. After all, correction of truly 'clerical' errors does nothing more than make the judgment reflect what the court actually decided." *Id.* at § 60.12[b][2][a].

8.  The Second Circuit squarely addressed this issue in *Panama Processes, S.A. v. Cities Service Co.*, 789 F.2d 991 (2d Cir. 1986). There, following the district court's decision conditionally dismissing an action based on forum non conveniens, the court directed the parties to submit a Consent Judgment and Order. *See id.* at 992. The parties submitted, and the court entered, an order which provided, *inter alia*, that the defendant consented to jurisdiction in any court in Brazil, and in a separate provision, agreed to "waive any statute of limitations defense with respect to claims based upon facts or events which have arisen since the commencement of the action in this Court[.]" *Id.* The Consent Judgement and Order was affirmed by the Second Circuit. The plaintiff then brought an action in a state court in Oklahoma, instead of Brazil. The defendant moved the district court pursuant to FRCP 60(a) to amend the Consent Judgment and Order to provide that the waiver of the statute of limitations defense only applied to an action commenced by the plaintiff in Brazil. *See id.* The district court agreed with the defendant and

amended the order. *See id.* On appeal to the Second Circuit, the plaintiff argued "district court had no power to entertain a Rule 60 motion because a lower court may not deviate from the mandate issued by an appellate tribunal." *Id.* at 993.

9. The Second Circuit declared that "the fact that a judgment has been reviewed on the appellate level does not preclude an action pursuant to an appropriate Rule 60 motion." *Id.* (citing *Marc Rich & Co. A.G. v. U.S. (In re Marc Rich & Co. A.G.)*, 739 F.2d 834 (2d Cir. 1984)). The court explained that Rule 60(a) "explicitly allows the district court to correct clerical mistakes or errors arising from oversight or omission. ***The focus of the inquiry should be whether the correction is of the type contemplated by the rule***." *Id.* at 994 (emphasis added). Furthermore, "[w]hile it is true that issues considered and disposed of by an appellate court on appeal cannot thereafter be altered by a district court, it may consider a matter not explicitly or implicitly decided" by the appellate court. *Id.* (citing cases) (internal citations omitted). The Second Circuit reasoned that, in its affirmance of the district court's judgment, it did not explicitly or implicitly consider the merits of the statute of limitations waiver.[2] *See id.*

10. The same is true here. As an initial matter, Overton never challenged the Enforcement Order with respect to her ability to bring an independent claim on the district court

---

[2] The Second Circuit also considered, and rejected, plaintiff's argument that the district court erred because defendant's motion was not within the purview of Rule 60(a). *See id.* at 993. The Second Circuit held that "[t]he district court's amendment was properly within the scope of Rule 60(a) which speaks of clerical mistakes or errors arising from oversights or omissions. 'The relevant distinction is between what is erroneous because the thing spoken, written or recorded is not what the person intended to speak, write or record, and what is erroneous because the person later discovers that the thing said, written or recorded was wrong. The former comes within Rule 60(a); the latter does not.'" *Id.* at 994 (quoting *Marc Rich*, 739 F.2d at 837). The Second Circuit concluded that "it is clear that the court intended the statute of limitations waiver to apply only to an action brought in Brazil." *Id.* at 995.

The instant matter is analogous. Through this Motion, Overton does not seek in anyway to modify the substance of the Court's determination that AWDA damages fall within the purview of the Sale Order's punitive damages exclusion. Overton seeks only to rectify an oversight of in the language of paragraph 2 of the Enforcement Order which goes so far as to bar even truly independent claims against FCA, which certainly was not the result the Court intended. It is clear that this Court intended only to bar claims that fall with the scope of the Sale Order, *i.e.*, Assumed Liability Claims.

4

level. FCA's contention that "there can be no doubt that Overton engaged squarely on the issue [to the District Court], arguing that the Decision and the Enforcement order should be reversed on the merits, in part, because the "enforcement Order currently improperly bars Overton from pursuing claims against FCA for its own post-Closing Date conduct," (Opposition at ¶ 14 (citing Overton's appellate brief at p. 6 n.4)), is disingenuous and misleading.

11. As determined by the Second Circuit, Overton's appeal to the District Court was limited to the issues that this Court decided in its Decision, *to wit*: (a) whether, as a matter of contract, AWDA damages fell within the purview of the Sale Order's punitive damages bar, and (b) if they did, whether the bar of AWDA damages under the *Sale Documents* violated Alabama's public policy. The Second Circuit determined that Overton's independent claim argument was not properly before it, as the only reference to the argument was in footnote 4 to the District Court.[3] Overton did not argue anywhere in her brief that the Enforcement Order should be reversed on that basis, and the District Court never once mentioned the footnote or argument in its order. Instead, Overton realized that an error or oversight existed in the Enforcement Order and identified that error in the footnote. Here, Overton merely seeks to correct the issue identified by that footnote.

12. Overton presented the issue regarding the Enforcement Order's bar of her independent claim for the first time on appeal to the Second Circuit. The Second Circuit never actually decided the argument, however. Instead, in a footnote, it determined the argument was forfeited, which means the was not adequately raised or preserved for appellate review. *See In re Old Carco LLC*, 809 Fed. Appx. 36, 40 n.1 (2d Cir. 2020) (citing *United States v. Greenfield*, 831 F.3d 106, 118 n.9 (2d Cir. 2016)). The *Greenfield* decision cited by the Second Circuit

---

[3] Footnote 4 notes that "[t]he Enforcement Order currently improperly bars Overton from pursing claims against FCA for its own post-Closing Date conduct."

5

relied on *City of New York v. Michalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011). In *Machilis Pawn Shop*, the Second Circuit explained it "ordinarily deem[s] an argument to be forfeited where it has not been sufficiently argued in the briefs . . . ." *Id.* at 137 (internal citations and quotation marks omitted). The court explained:

> We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review. The enormous volume of briefs and arguments pressed on each panel of this court at every sitting precludes our scouring through footnotes in search of some possibly meritorious point that counsel did not consider of sufficient importance to include as part of the argument.

*Id.* (quoting *U.S. v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993)). Thus, the Second Circuit never considered or determined the merits, nor did the Second Circuit's ruling imply in any way that the argument was one that should have been presented on appeal (as opposed to a motion for relief under Rule 60).[4] Thus, no such mandate, as FCA contends, exists from the Second Circuit on this issue, and Overton is not precluded from seeking the relief in the Motion.

13. The case principally relied on by FCA for application of the "mandate rule" to this matter, *U.S. v. Quintieri*, 306 F.3d 1217 (2d Cir. 2002), is wholly inapposite. *Quintieri* was criminal case and did not even involve Rule 60. In *Quintieri*, the defendant was resentenced by the district court upon remand, after a decision by the Second Circuit vacating his first sentence. *See id.* at 1221. When the defendant appealed the district court's second sentencing, he challenged a number of issues which he could have, and should have, raised in his first appeal. *See id.* at 1224-25. The Second Circuit held defendant's arguments were barred by the law of the case, which in this context is referred as the "mandate rule." *Id.* at 1225. The mandate rule "requires a trial court to follow an appellate court's previous ruling on an issue in the same case."

---

[4] Had the Second Circuit considered the argument on the merits, the Second Circuit may likely have remanded the issue for this Court to consider it in the first instance given that, as discussed below, there is no evidence in the record that the Court ever considered the issue.

6

*Id.* The defendant sought to "raise some issues that he waived by not raising them during his initial sentencing proceedings or on his previous appeal." *Id.* The Second Circuit concluded that because its remand was for reconsideration of a limited issue, not *de novo*, defendant could not in his second appeal "raise arguments that he had an incentive and an opportunity to raise previously but did not raise, absent a cogent and compelling reason for permitting him to do so." *Id.* Thus, *Quintieri* generally stands for the proposition that arguments that should have, and could have, been made on appeal, but were not, are waived for purposes of a subsequent appeal, absent a cogent and compelling reason.

14. Here, however, as discussed further below, Overton is not challenging and does not seek to alter in any way the Court's rulings in the Decision. The Court intended in its Decision to bar Overton only from bringing claims that fall within scope of the Sale Order, i.e., Assumed Liability Claims. The Court did not rule that Overton should be foreclosed from seeking to bring an independent claim, which is the unintended result of an oversight with respect to the unique AWDA language in paragraph 2 of the Enforcement Order. There is nothing in the record that reflects the Court ever even considered whether Overton may assert an independent claim, thus, it was not an issue that had to be raised on appeal. In fact, the Court recognized elsewhere in the Decision that the Sale Order cannot bar independent claims. Thus, it was implicit in the Decision that the Court's ruling only applied to claims that were implicated by the Sale Order. Through the Motion, Overton seeks only to clarify the Enforcement Order to reflect the Court's intended result.

15. FCA complains that Overton should have sought Rule 60 relief sooner. However, Overton did not bring this Motion while it was pursuing its appeals precisely because its appeals were pending. As discussed above, there is no time restriction for seeking relief under Rule

7

57860/0001-20996404v2

60(a) and, of course, had Overton succeeded in her appeal, there would have been no need to bring this Motion. Moreover, in order to bring this Motion during the appeal, Overton would have had to seek leave from the appellate court to do so. *See* Fed. R. Civ. P. 60(a) ("[A]fter an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with appellate court's leave."). Rather than bringing potentially unnecessary litigation, Overton filed the Motion following the conclusion of her appeal and the issuance of the Second Circuit's mandate, when it became certain that she needed to amend her complaint to allege an independent claim.

16. Accordingly, the Court should reject FCA's contention that the Motion is barred by the mandate rule.

**B. FCA'S CONTENTION THAT OVERTON SEEKS A SUBSTANTIVE MODIFICATION TO THE ENFORCEMENT ORDER IS BELLIED BY THE COURT'S DECISION ITSELF AND THE RECORD UPON WHICH IT IS BASED**

17. Although FCA argues that relief Overton seeks constitutes a substantive modification to the Court's ruling, FCA has not, and cannot, point to anything in the Decision or in record before this Court to support its position. (*See* Opposition at ¶¶ 18-20). Rather, FCA makes two arguments for why the modification is substantive:

(a) *First*, FCA contends that the modification must be substantive because FCA "settled the order" on Overton before submitting to the Court. Of course, Overton does not dispute that fact. But that is beside the point and merely evidences Overton's oversight of the non-substantive mistake in paragraph 2 of the Enforcement Order. "One may obtain relief under Rule 60(a) from a 'clerical' mistake, but that does not mean that the mistake must be committed by the clerk or by the court. The Rule may also be used to correct mistakes made by the jury or by a party." *Moore's* at § 60.10[2].

8

(b) *Second*, FCA contends that the modification must be substantive because Overton raised the issue on appeal to the Second Circuit. This argument puts the cart before the horse. The focus of the inquiry in determining the scope of a Rule 60(a) inquiry is whether the proposed modification comports with the court's ruling and intention. The best evidence of the Court's intent is, of course, the Decision, as well as the arguments and statements in the record upon which the Decision is based. Overton's subsequent conduct cannot be indicative of the Court's intent. Of course, the Court itself is best positioned to opine on the meaning and scope of its own ruling.

18.   Critically, there is nothing in the record that reflects this Court ever considered whether Overton may assert an independent claim. As discussed in the Motion, the issue that was presented to the Court with respect to Overton's claims in the parties' briefing, and addressed in the Court's Decision, was limited to whether Overton could continue to prosecute any Assumed Liability Claims given the punitive nature of AWDA damages and the exclusion of punitive damage in Amendment No. 4. of the MTA. (*See* Decision at 11-26). Of course, the latter issue is not applicable to an independent claim against FCA.[5]

---

[5] The one and only reference to Overton's post-sale claim in the record before this Court is a statement made by Overton's counsel at oral argument. Overton's lawyers divided the arguments they were presenting to the Court amongst themselves. Mrs. Monplaisir handled the argument with respect to Overton's claims. Mr. Miller handled the argument with respect to Graham's claims. During Mr. Miller's presentation he noted:

> And Your Honor I think it's important to note, we've been talking about Graham a lot, but the complaint does not differentiate between Graham and Overton. In fact, it is very possible that the facts will show that it's the post-sale wrongful conduct of FCA that was the cause of Overton's death. And obviously, if that's the case, as the case precedent shows, it - -

(Transcript at 32:6-12). The Court immediately respond: "[t]hey're a little [different] situation because Graham can certainly sue for compensatory damages. Nobody is disputing that, whether it's pre-sale or post-sale conduct[.] This just relates to his failure to warn claim and the punitive damages claim." (Transcript at 32:13-17). The discussion then proceeded to questions of causation with respect to Graham's claims. This colloquy suggests that the Court, understandably, was not focused on and did not consider any argument that Overton could assert an independent claim. No such argument was ever made in the parties' briefing.

9

19. Overton did not plead her failure to warn claim against FCA in the Complaint as an independent claim the way Graham did, however. Nor could she have given the nature of AWDA damages. Overton's claims were pleaded all together (without delineating an independent claim) and were described as such in the parties' briefs. The Court, thus, defined the "Overton Claims" as all claims brought under the Alabama Wrongful Death Act and, understandably, used that definition when it concluded "the Overton Claims" are barred by the *Sale Documents*." (Decision at 7). The very fact that the Court held the Overton Claims are barred by the Sale Order, however, implies that the Court only intended to bar those claims which, by definition, fall within the scope of the Sale Order. This is particularly clear given that the Court also ruled in the Decision that "a § 363 sale order may not bar a claim that arises from wrongful conduct after the sale." (Decision at 28).

20. Accordingly, the Court should reject FCA's contention that the proposed modification to the Enforcement Order is a substantive one that alters the original meaning of the Court's Decision.

## II. SHOULD THE COURT DETERMINE THAT THE OVERTON'S REQUESTED MODIFICATION TO THE ENFORCEMENT ORDER IS SUBSTANTIVE, THE COURT MAY RELY ON RULE 60(B)(6) TO GRANT THE MOTION

21. To the extent the Court finds that the Motion seeks a substantive modification to the Enforcement Order, it is hard to imagine a more appropriate and "extraordinary" case to grant Rule 60(b)(6) relief. "It is properly invoked where there are extraordinary circumstances" or "where the judgment may work an extreme and undue hardship." *Matarese v. LeFevre*, 807 F.2d 98, 106 (2d Cir. 1986) (citing cases; internal citations and quotations omitted).

22. FCA contends that Overton's argument is "conclusory," and disingenuously asserts that "this precise scenario was discussed all the way back at the hearing before this Court

10

with respect to FCA US's Motion to Enforce the Sale Order." (Opposition at ¶ 26 (citing to the colloquy between the Court and Mr. Miller discussed in footnote 4 above)). As discussed above, however, the colloquy to which FCA refers does not in any way suggest that the Court contemplated this scenario.

23. Critically, Overton does not allege a mistake in the Court's Decision within the meaning of Rule 60(b)(1). Overton does not challenge in anyway the Court's conclusion that Overton's claims, as pleaded in the Complaint, violated the *Sale Documents*. There was no mistake in the Decision, which is now law of the case in this matter. Overton challenges only the error in the parties' transcription of the Court's ruling into the Enforcement Order, which improperly exceeds the scope of the of the Court's rulings in the Decision. While the Court's Decision referred to and barred the "Overton Claims" as sought and alleged in the Complaint, the Enforcement Order goes much further than that by enjoining Overton from even attempting to assert an independent claim, which the Court ruled cannot be barred by the Sale Order. This is an extraordinary matter.

24. As a threshold matter, the Bankruptcy Court's jurisdiction to consider and preclude non-debtor claims in its role as "bankruptcy gatekeeper" is limited to claims that violate the Sale Order. Under binding Second Circuit precedent, as this Court recognized in its Decision, truly independent claims, by definition, are not implicated by the Sale Order. As such, the scope of the Enforcement Order currently exceeds Bankruptcy Court's jurisdiction and is directly contrary to binding Second Circuit law. That is extraordinary. Furthermore, it would be an extreme and undue hardship, and a grave miscarriage of justice, for this Court, as a court of equity, to foreclose Overton from pursuing the same independent claim against FCA that

11

Graham was permitted to pursue, both by this Court and the Alabama state court, based on an improper, unintended injunction that violates Second Circuit law.

25. Based on the unique and extraordinary circumstances presented by this case, this Court certainly has the power and authority to rectify the language in its own Order pursuant to Bankruptcy Code section 105, its inherent authority to interpret and enforce its own orders, and Rule 60(b)(6), which constitutes a "grand reservoir of equitable power to do justice in a particular case." *Matarese*, 807 F.2d at 106.

### III. FCA'S CONTENTION THAT OVERTON HAS NOT PROPERLY PLEADED IN AN INDEPENDENT CLAIM IN THE PROPOSED SECOND AMENDED COMPLAINT IS WITHOUT MERIT AND BARRED BY LAW OF THE CASE

26. FCA argues that the proposed Amended Complaint cannot pass through the bankruptcy gate because it "does not, and cannot, allege that FCA US's post-Closing conduct is the sole proximate cause of death." (Opposition at ¶ 30). FCA's theory is that "if there is another cause of action set forth asserting that a design defect is a proximate cause of the death, then it cannot be that FCA US's post-Closing conduct was the sole proximate cause." (Opposition at ¶ 29).

27. The Court has already considered and squarely rejected FCA's argument in the Decision. As the Court described in the Decision, Graham's claims in the Complaint "consist of (i) compensatory damage claims based on the actions of Old Chrysler and/or New Chrysler whether pre- or post-Closing, and (ii) punitive damage claims based on the post-Closing actions of New Chrysler." (Decision at 26). Furthermore, the Complaint alleges "the defective condition of the Jeep Liberty was known by [New Chrysler] and/or former Chrysler companies absorbed by [New Chrysler], and that knowledge was transferred to [New Chrysler]. Despite such knowledge, [New Chrysler] took no action to warn, recall or otherwise eliminate the

12

defective condition." (Decision at 27 (citing Complaint)). Based on those allegations, the Court held that "Graham's punitive damage claims cannot be barred by the *Sale Documents* to the extent they are based solely on the post-Closing conduct of New Chrysler." (Decision at 28).

28.   Thus, the premise of New Chrysler's entire argument here – that a plaintiff cannot, consistent with the Sale Order, seek punitive damages against FCA based on its own post-Closing conduct if the plaintiff also asserts a claim against FCA based on the design defect – is inconsistent with the Court's holding in the Decision.[6]  Overton is asserting the same independent failure to warn claim as Graham. Overton's independent claim for failure to warn is based on the same allegations of FCA's own post-Closing knowledge and conduct that was asserted by Graham in the Complaint and more. Moreover, unlike Graham, in the Amended Complaint Overton is not asserting any claim against FCA based on Old Chrysler's conduct. As stated in Amended Complaint, "Plaintiff Overton only asserts claims against FCA based upon FCA's own knowledge and conduct after the Closing Date; Overton does not assert any claims against FCA based on Old Chrysler's conduct." (Amended Complaint at ¶ 27). (Overton is asserting claims based on the design defect against other defendants).

29.   Furthermore, with respect to Overton's independent failure to warn claim, the Amended Complaint expressly states that:

> As to FCA, Frankie Overton seeks damages under the Alabama Wrongful Death Act for the death of Sue Ann Graham against **solely for FCA's own post-Closing Date conduct,**

---

[6] Similarly, FCA's position is inconsistent with the Court's decision *Dearden v. FCA US LLC*, 582 B.R. 838 (Bankr. S.D.N.Y. 2018), upon which FCA primarily relies. In that case, the plaintiff also asserted claims against FCA based on the design defect, while at the same time seeking punitive damages against FCA in connection an independent claim for failure to warn. *Dearden*, 582 B.R. at 840. Indeed, the Court in *Dearden* expressly rejected the argument FCA is making here. *See id.* at 846 ("Old Chrysler's defective design is the *sine qua non* of the Plaintiff's post-Closing claim. However, assuming that the Plaintiff can assert legally sufficient claims based solely on New Chrysler's post-Closing wrongful conduct, the question of what proximately caused the Decedents' fatal injuries is for the factfinder. Accordingly, the *Motion* is granted dismissing the claim in Count Three to recover punitive damages except to the extent that the Plaintiff can assert legally sufficient claims against New Chrysler based solely on its own post-Closing wrongful conduct.").

13

57860/0001-20996404v2

**transactions, actions, or failures to act which proximately caused Sue Ann Graham's death**, together with interest from the date of injury, and the costs of this proceeding. **Frankie Overton does not assert a claim or seek any damages against FCA based upon Old Chrysler's conduct**.

(*See* Amended Complaint at ¶ 56, wherefore clause).

30.   FCA chose not to appeal the Court's Decision and Enforcement Order, which is now final and binding law in this case. Accordingly, FCA's argument here is barred by doctrine of law of the case and should be rejected.

*[The remainder of this page is intentionally blank]*

## **CONCLUSION**

31.     Overton respectfully requests that the Court grant the Motion and such other and further relief the Court deems just and proper.


DATED:     New York, New York
           August 7, 2020

Respectfully submitted,

/s/ *Mark Tsukerman*
**COLE SCHOTZ P.C.**
Mark Tsukerman
1325 Avenue of the Americas, 19th Floor
New York, NY  10019
(212) 752-8000- Telephone
mtsukerman@coleschotz.com

*Bankruptcy Counsel for Frankie Overton, as Executor of the Estate of Sue Ann Graham*


**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C**
Parker Miller  (*pro hac vice*)
Stephanie Monsplaisir  (*pro hac vice*)
P. O. Box 4160
Montgomery, Alabama 36103-4160
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
Parker.Miller@beasleyallen.com
Stephanie.Monsplaisir@beasleyallen.com

*Lead Counsel for Frankie Overton, as Executor of the Estate of Sue Ann Graham*