**GIBBONS P.C.**
Robert K. Malone, Esq.
Brett S. Theisen, Esq.
One Pennsylvania Plaza, 37th Fl.
New York, New York 10119
Telephone:  (212) 613-2000
Facsimile:  (212) 290-2018
E-mail:  rmalone@gibbonslaw.com
 btheisen@gibbonslaw.com

*Counsel for FCA US LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| OLD CARCO LLC, *et al.*, | Case No. 09-50002 (DSJ) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF WILLIAM E. MCDONALD, III, ESQ. IN SUPPORT OF**
**FCA US LLC'S MOTION TO ENFORCE THE COURT'S SALE ORDER**

WILLIAM E. MCDONALD, III, ESQ. declares as follows:

1.      I am a member of Bush Seyferth PLLC, counsel for FCA US LLC ("FCA") in the Takata Airbag Products multidistrict litigation (the "Takata MDL") and in the above-captioned proceedings.  I am one of the responsible attorneys for *FCA US LLC's Motion to Enforce the Court's Sale Order [Docket No. 3232]* (the "Motion") and as such I have personal knowledge of the facts and statements herein.

2.      I submit this declaration in support of the Motion and to provide the Court with copies of certain materials filed on this Court's docket and referenced in the Motion.

3.      Attached as Exhibit A is a true and correct copy of *Excerpts from the Deposition Transcript of Walter J. Boyle, III,* from the Takata MDL.

4.      Attached as Exhibit B is a true and correct copy of an *Excerpt from the Deposition Transcript of James Webber*, from the Takata MDL.

5.      Attached as Exhibit C is a true and correct copy of a *2012 Takata Presentation to FCA US,* as produced in the Takata MDL.

6.      Attached as Exhibit D is a true and correct copy of *a 2013 Takata Presentations to FCA US*, as produced in the Takata MDL.

7.      Attached as Exhibit E is a true a correct copy of an *Email from James Webber (FCA) to Robert Raymore (FCA), dated June 14, 2013*.

8.      Attached as Exhibit F is a true and correct copy of the *Takata Defect Information Report, Dated November 2013*.

9.      Attached as Exhibit G is a true and correct copy of the *Part 573 Safety Recall Report for Recall No. 14C-770, Submitted to the National Highway Traffic Safety Administration ("NHTSA"), Dated December 3, 2014*.

10.     Attached as Exhibit H is a true and correct copy of *NHTSA Coordinated Remedy Order, Dated November 3, 2015*.

11.     Attached as Exhibit I is a true and correct copy of an *Email from Bob Hardenburg (Takata) to Kevin Fitzgerald (Takata), Dated October 19, 2006*, as produced in the Takata MDL.

12.     Attached as Exhibit J is a true and correct copy of an *Excerpt from the Second Day of the Deposition of Steven L. Stram (November 19, 2020)*, from the Takata MDL.

13.     Attached as Exhibit K is a true and correct copy of an *Excerpt from the Brandon S. Marriot Deposition*, from the Takata MDL.

14.     Attached as Exhibit L is a true and correct copy of is a true and correct copy of *FCA US LLC Safety Recall 15V-313 Chronology submitted to the NHTSA, updated on June 10, 2015*.

I declare under penalty of perjury under the laws of the United States that, to the best of my

knowledge and belief, that the foregoing is true and correct.


Executed on:   September 30, 2021
Troy, Michigan

By:   /s/ William E. McDonald, III
        William E. McDonald, III

# EXHIBIT A

08/20/2020

Boyle, Joe

# TAKATA AIRBAG PRODUCTS LIABILITY LITIGATION

UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF FLORIDA

MDL No. 2599


Master File No. 15-2599-MDMORENO

S.D. Fla. Case No. 15-20664-CV-MORENO

(Personal Injury Track)

S.D. Fla. Case No. 14-24009-CV-MORENO

(Economic Loss Track)


IN RE:

TAKATA AIRBAG PRODUCTS

LIABILITY LITIGATION

_____/


Remote Proceeding

Fort Lauderdale, Florida

August 20, 2020

9:05 a.m. – 5:40 p.m.



VIDEO DEPOSITION OF JOE BOYLE

(Via Teleconference)

(Highly Confidential)

Taken before SUZANNE VITALE, R.P.R., F.P.R.
and Notary Public for the State of Florida at Large,
pursuant to Notice of Taking Deposition filed in the
above cause.

1   BY MR. WEINSHALL:

2      Q.   So is he part of Fiat Chrysler or part of

3   a different Fiat organization?

4         MR. GLUECKSTEIN:  Object to the form.

5         THE WITNESS:  Yes, Chrysler.  We're all

6      one organization.

7   BY MR. WEINSHALL:

8      Q.   I see.

9         During your career, did you come to learn

10   of Takata airbag inflator ruptures?

11         MR. GLUECKSTEIN:  Object to the form.

12         THE WITNESS:  Did you ask did I learn?

13   BY MR. WEINSHALL:

14      Q.   Yes.

15      A.   Yes, during my career, I am aware of

16   ruptures.

17      Q.   When, approximately, did you first learn

18   of Takata airbag inflator ruptures?

19         MR. GLUECKSTEIN:  Object to the form.

20         THE WITNESS:  It was during 2014 when

21      Takata brought to our attention that there were

22      ruptures of their inflators, that I became

23      aware of.

24   BY MR. WEINSHALL:

25      Q.   So 2014 is -- your testimony is the first

1    area.

2        Q.   Do you have any reason to believe that the

3    information that Takata provided FCA, as reflected

4    in this document, was inaccurate?

5        MR. GLUECKSTEIN:  Object to the form.

6        THE WITNESS:  I have no reason -- no, I

7    don't know that at all.

8    BY MR. WEINSHALL:

9        Q.   You have no reason to believe it was

10   inaccurate; is that right?

11       A.   Correct.

12       Q.   Okay.  Do you believe, at some point -- at

13   any point working with Takata on inflators, from

14   2000 to 2014, that Takata misled you?

15       A.   I have no -- I don't have any evidence of

16   that.  I can't -- you know, there's nothing that I

17   saw that indicated any deception at any level.

18          Of course, mind you, I didn't work that

19   closely with the inflator folks.  We worked with the

20   module engineers on a regular basis and only

21   infrequently with inflator team members.

22       Q.   So who were the inflator team members?

23       A.   The only one I distinctly remember is a

24   gentleman by the name of Cox.  He's probably on the

25   cover page.

08/20/2020    09-50002-mg    Doc 8560-3    Filed 09/30/21    Entered 09/30/21 21:25:21    Declaration
of William E. McDonald    Royal Joe  Esq.    Pg 9 of 96

Page 193

1    BY MR. WEINSHALL:

2        Q.   Please let me know when you've had a

3    chance to review it.

4        A.   Yes.

5        Q.   So this is an e-mail exchange that you

6    were copied on in April of 2013; is that right?

7        A.   Yes.

8        Q.   And it concerns a recall of Takata

9    inflators, passenger airbags; is that right?

10       A.   Yes.

11       Q.   The internal discussion at Chrysler was

12   whether this impacted Chrysler's vehicles because

13   Chrysler also installed Takata inflators in its

14   vehicles, correct?

15       A.   Yes, correct.

16       Q.   So you were aware, at least in 2013, that

17   these recalls might or might not relate to the

18   inflators on Chrysler vehicles, correct?

19       MR. GLUECKSTEIN:  Object to the form.

20       THE WITNESS:  Yeah.  And to that end, our

21   reaction was to go to Takata immediately and

22   say, please let us know if we are affected by

23   this recall, which we did.

24       We don't know what products they used in

25   Japan.  We don't know what our customers used

08/20/2020

09-50002-mg    Doc 8560-3    Filed 09/30/21    Entered 09/30/21 21:25:21    Declaration
of William E. McDonald Esq.    Pg 10 of 96
Boyle, Joe

1    in terms of their inflators.  We needed them to

2    come to us and tell us we have an issue that

3    needs to be addressed.  And their response was,

4    no, you're fine, you have different -- you

5    have betas, not alphas, or you have different

6    designs.

7    BY MR. WEINSHALL:

8        Q.   And you were told by other engineers at

9    other OEMs that this was not a production error.

10    This was a core design issue or process, correct?

11        MR. GLUECKSTEIN:  Object to the form.

12        THE WITNESS:  No.  I'm not sure what

13        you're referring to.

14        (Thereupon, the referred-to document was

15    marked for Identification as Plaintiffs' Exhibit

16    34.)

17    BY MR. WEINSHALL:

18        Q.   Let me show you Exhibit 34.

19        Please tell me when you've had a chance to

20    review Exhibit 34.

21        A.   Okay.  I read it.

22        Q.   And this is an e-mail you received from

23    Mr. Knowlden at GM; is that right?

24        A.   Correct.

25        Q.   And Mr. Knowlden, in reference to the

# EXHIBIT B

09/22/2020

Webber, Jim

# TAKATA AIRBAG PRODUCTS LIABILITY LITIGATION

Page 1

1      UNITED STATES DISTRICT COURT FOR THE

      SOUTHERN DISTRICT OF FLORIDA

2        MDL No. 2599

3      Master File No. 15-2599-MDMORENO

    S.D. Fla. Case No. 15-20664-CV-MORENO

4       (Personal Injury Track)

    S.D. Fla. Case No. 14-24009-CV-MORENO

5       (Economic Loss Track)

6  IN RE:

7  TAKATA AIRBAG PRODUCTS

8  LIABILITY LITIGATION

9  _____/

10

11      Remote Proceeding

    Fort Lauderdale, Florida

12      September 22, 2020

    9:02 a.m. - 3:21 p.m.

13

14

15    VIDEO DEPOSITION OF JIM WEBBER

16     (via teleconference)

17     (Highly Confidential)

18   Taken before SUZANNE VITALE, R.P.R., F.P.R.

19  and Notary Public for the State of Florida at Large,

20  pursuant to Notice of Taking Deposition filed in the

21  above cause.

22

23

24

25

09/22/2020    09-50002-mg    Doc 8560-3    Filed 09/30/21    Entered 09/30/21 21:25:21    Declaration
of William E. McDonald, Esq.    Pg 14 of 96

Webber, Jim

Page 127

1    A.   In 2013, I wasn't a manager yet.

2    Q.   So this e-mail is forwarded to you and

3    your question was when FCA started to put Takata

4    inflators into production, right?

5    A.  Yes.

6    Q.   And you were concerned here that the

7    recall might affect inflators in FCA vehicles?

8         MR. PORPORA:  Objection to the form.

9         THE WITNESS:  No.  I was responding to

10        what Takata told us, which was we were not

11        affected.  And I was verifying their

12        information that said we had no inflators in

13        that time frame, and I was double-checking what

14        they told us with what we knew internally.

15    BY MR. WEINSHALL:

16    Q.   Did FCA typically monitor recalls from

17    other automakers to determine whether it impacted

18    components that are also in FCA vehicles?

19        MR. PORPORA:  Objection to the form.

20        THE WITNESS:  I'm sure there was some

21        department in FCA whose job it was to monitor

22        all that.  We just kept our -- if something

23        came out in the news and it had something to do

24        with airbags, we would look into it.  It wasn't

25        a formal process.

# EXHIBIT C



# Relation of Honda Field Issue to Chrysler DAB Inflators

**Highly Confidential - Subject to Protective Order**

**TKH-MDL-0004416237**

# Summary

- Takata is participating in a field action involving a Honda dual-stage driver inflator (PSDI).

  - The field action is limited to batwing-style main generant made on a single wafer press in 2000 and 2001.

  - The PSDI-4 inflator provided to Chrysler uses the same propellant chemistry and geometry as the PSDI, but ***no Chrysler product was ever manufactured on the suspect press***.

- There is no basis to link the Honda field action on PSDI to any Chrysler inflator.

**Highly Confidential - Subject to Protective Order**

**TKH-MDL-0004416238**

# Relation to Chrysler DAB Platforms

| Program | MY02<br>DR | MY04+<br>DR/HB/ND<br>HG/DA/NM<br>LX/LD/LC | MY11<br>WK, JK, KK, MK,<br>LX, SRT |
|---|---|---|---|
| SOP | Mid, 2001 | Mid, 2003 | Mid, 2010 |
| Inflator Name | NADI | PSDI-4 | PSDI-X |
| Relationship to field issue | None – different propellant chemistry, geometry and production process | Same propellant geometry and chemistry, but never produced on suspect equipment | None – different propellant chemistry, geometry and production process |

**Highly Confidential - Subject to Protective Order**

TKH-MDL-0004416239

# Timeline



Suspect press permanently removed from service

Chrysler SOP for this propellant type

The press implicated in the Honda field action was taken out of service ~21 months before the Chrysler SOP on this propellant type

**Highly Confidential - Subject to Protective Order**

**TKH-MDL-0004416240**

# EXHIBIT D

# Takata Passenger Airbag Inflator Field Issue

April 11, 2013

Takata Corporation

Quality Department

Confidential

# Agenda

1. Overview
2. Field Data
3. Root Cause Assessment
4. Suspect Population
5. Propellant Wafer – Compaction Force
6. Inflator Assembly – In-Process Moisture Control
7. Summary

Confidential

Highly Confidential

FCA_US_LLC_000267993

# 1. Overview

- Takata has received reports with evidence of abnormal deployments using passenger airbag inflators manufactured from 2000-2002, using SPI, PSPI, and PSPI-L inflators
- There are 12 reported cases from a population of approx. 7 million inflators
- **NO REPORTED INJURIES from these 12 cases**

Confidential

Highly Confidential



Highly Confidential

# PSPI Inflator



| No | Parts Name |
|----|------------|
| 1 | Body |
| 2 | Partition |
| 3 | Burst Foil x 2 |
| 4 | Closure (D-Flat) |
| 5 | Closure |
| 6 | O-Ring x 2 |
| 7 | Filter Ass'y Primary |
| 8 | Filter Ass'y Secondary |
| 9 | Initiator x 2 |

| No | Parts Name |
|----|------------|
| 10 | Initiator Gasket x 2 |
| 11 | Igniter Stand Off x 2 |
| 12 | Igniter Burst Foil x 2 |
| 13 | Igniter Plate x 2 |
| 14 | Propellant Retainer x 2 |
| 15 | Spring x 2 |
| 16 | Autoignition Cup x 2 |
| 17 | Autoignition Burst foil (Φ28) |
| 18 | Autoignition Burst Foil (Φ41) |

| No | Propellant |
|----|------------|
| A | 3110 Tablet |
| B | Al-1 |
| C | 2004 Tablet |
| D | 2004 10.8g Wafer |
| E | 2004 5g Wafer |

Confidential

5

Highly Confidential

# 2.  Field Data

- From 2000 to Nov. 2002, we produced approx. 7 million SPI, PSPI, and PSPI-L inflators, globally

- There have been an estimated 500,000 deployments in the field from this inflator population

- From 2000 through Sept 2011, there were no reported field issues from these inflators

Confidential

6

Highly Confidential

FCA_US_LLC_000267997

# Field Data

- From Oct 2011 to present we have 12 reported cases of abnormal behavior ( 2 vehicle manufacturers)
  - 9are from inflators assembled in 2001
  - 3 are from inflators assembled in 2002
    - 8 SPI (single stage)
    - 1 PSPI (dual stage)
    - 3 PSPI-L (dual stage long version)
  - 6 of these cases are from end of vehicle life recycling operations in Japan
  - 6 of these cases are field events
    - 2 Japan
    - 3 Puerto Rico
    - 1 Maryland
    - 3 of the field events occurred on cars that subsequently had their airbag control module recalled due to faulty firing circuits (we do not know what the time delay was for these events)

Confidential

Highly Confidential

FCA_US_LLC_000267998

# 3.  Root Cause Assessment

- Long term exposure to environmental aging conditions **combined** with(1 or 2):

  1. Propellant wafers that may have been produced outside of specification limits for compaction force.

  2. Propellant wafers that may have been allowed to absorb excessive moisture during the inflator assembly process.

Confidential

# 4.  Suspect Population

1. Propellant wafers manufactured from April 2000 thru Sept 11, 2002 that may have been produced with low compaction force
2. A portion of Inflators assembled from Oct 2001 thru Oct 31, 2002 that may have propellant with an uncontrolled moisture condition, potentially due to in-process exposure
3. Approx. 3.1 million vehicles (globally) in the suspect population
   A. 6 Vehicle manufacturers
   B. North America, Asia, Europe, Others

Confidential

Highly Confidential

FCA_US_LLC_000268000

# 5. Propellant Wafer - Compaction Force

- A review of the propellant manufacturing process during 2000 thru 2002 has revealed the possibility that some wafers may have been produced that do not meet the compaction force specifications

- The process was revised on Sept 12, 2002 to automatically reject any wafer outside of the specification limits

Confidential

10

Highly Confidential



FCA_US_LLC_000268002



**Auto Reject**

Load cell monitors compaction force of press machine. Therefore, compaction force for each single propellant is assured when propellant is produced with AR function.

Confidential

12

Highly Confidential



# Compression force and heat aging tests.

### Results
*Moisture content : 0.2wt.% (controlled upper limit)

| Compression load | Initial | TCx1 | TCx2 | TCx3 |
|---|---|---|---|---|
| 25K lbs. | ✖ | | | |
| 30K lbs. | △ | | | |
| 35K lbs. | ○ | ○ | ○ | △ |
| 44K lbs. | ○ | ○ | ○ | ○ |
| 54K lbs. | ○ | ○ | ○ | ○ |

✖ : Body fractured(ED)  /  △ : Abnormal output  /  ○ : No problem

| Thermal Cycle (TC) conditions | Number of cycles |
|---|---|
| (1) -40℃ × 2hours <br> (2) -40℃→80℃ × 2 hours <br> (3) 80℃ × 2 hours <br> (4) 80℃→-40℃ × 2 hours <br><br> (1) to (4) is a set of cycle | TCx1＝45 cycles <br><br> (TCx1 is equivalent to 15 years aging.) |

The inflator body is fractured when the compression load is low.
No problem observed when the load is within the specification (52.5klbs minimum).

14

Highly Confidential

# 6.  Inflator Assembly – In Process Moisture Control

- A review of the inflator assembly process, During 2002, in Monclova, Mexico has revealed the possibility that <u>some</u> in-process propellant wafers may have been exposed to uncontrolled moisture conditions for a prolonged period.

- Under these conditions, these wafers can absorb moisture beyond the allowable limits.

- Production processes were revised in November 2002 to assure proper handling and environmental protection of all in-process propellant

Confidential

FCA_US_LLC_000268006



Propellant Moisture Control at Inflator Plant (Normal Production)

# Moisture and heat aging tests.

<u>Results</u>

|  | Propellant moisture | Base Line | TCx1 | TCx2 | TCx3 |
|---|---|---|---|---|---|
|  | Firing condition | After leaving 4 hours in 60°C | | | |
| Moisture against the weight of propellant (wt.%) | 0.3wt% | O | O | O | O |
|  | 0.4wt% | O | O | △ | × |
|  | 0.5wt% | O | O | × | × |
|  | 0.6wt% | O | × | - | × |

× : Body fractured(ED) / △ : Abnormal output / O : No problem

| Thermal Cycle (TC) conditions | Number of cycles |
|---|---|
| (1) -40°C × 2hours<br>(2) -40°C→80°C × 2 hours<br>(3) 80°C × 2 hours<br>(4) 80°C→-40°C × 2 hours<br><br>(1) to (4) is a set of cycle | TCx1＝45 cycles<br><br>(TCx1 is equivalent to 15 years aging.) |

The inflator body is fractured when the moisture content is high.
No problem observed when the moisture content is within the specification (0.2wt% maximum).

17

Highly Confidential

## Suspected Range – moisture



Confidential

# 7. Summary

- 12 field cases of abnormal deployment after long term field exposure for SPI, PSPI, and PSPI-L inflators
- Takata has identified 2 possible sources (using FTA analysis) of out of specification propellant that may have been produced up to Oct 31, 2002
  - Low compaction force
  - Moisture content
- We have demonstrated the potential adverse effect of long term exposure to environmental aging conditions and out of specification propellant (compaction force and moisture)
- 3.1 million inflators in suspect population (globally)

Confidential

Highly Confidential

# EXHIBIT E

This Document is Subject to a Protective Order in Brett Williams v. FCA US LLC, et al.
09-50002-mg    Doc 8560-3    Filed 09/30/21    Entered 09/30/21 21:25:21    Declaration
of William E. McDonald    Esq.    Pg 41 of 96

| | |
|---|---|
| **From:** | Jim Webber |
| **Sent:** | Friday, June 14, 2013 1:33 PM |
| **To:** | Robert Raymor; Christian Aguilar Jasso; Samuel Millan Ramirez |
| **Cc:** | David Rogers; John Joyce; Bijal Patel; Joe Boyle III |
| **Subject:** | Takata Monclova inflator plant visit |

I reviewed the Takata Monclova inflator facility/assembly lines on June 12th. The primary intent of this trip was to verify the proper controls are in place to assure that Chrysler does not experience the issues that resulted in a large recall for other OEMs. Takata gas generant formulations have a known sensitivity to tablet compaction force and moisture content. Takata produces all gas generant tablets in their Moses Lake, Washington facility. So that was not a part of this review. I am confident that Takata has the process controls in place to keep moisture out of the gas generant tablets at the inflator manufacturing facility.

1) The gas generant tablets are received in Mylar bags packed with desiccant.
2) Each incoming lot is checked for proper moisture level.
3) The material is transferred to sealed "day carts" in a humidity controlled room.
4) The carts are only re-opened in the inflator assembly area.
5) The entire inflator assembly area is humidity controlled.
6) There are warning systems and procedures for the case where the humidity level would rise too high.

The overall humidity control system was added in 2010. Prior to that, each inflator line had an individual humidity system for the "day cart". This method allowed the gas generant on the line to be exposed to a potential high moisture environment for a short period of time during the inflator assembly. All inflator PVs include tear down samples that are evaluated for moisture content of the gas generant and the desiccant. The older inflator designs with 2004 gas generant formulation (LX/LD/LC/JK PABs) do not include desiccant in the inflator build. This was added to meet a stringent Nissan life cycle test protocol for the latest generation of inflators.

Takata is in the final stages of validating a new gas generant formulation designated AMP. This formulation is much less sensitive to moisture. They will be looking to switch the current inflators from 2004L to this formulation in the future.

*Jim Webber*

Jim Webber
Restraint Technical Specialist
DFSS Black Belt/ Master Black Belt Candidate
Phone: 248 576 1391
Cell: 248 321 8809
Location: CTC N4002 N16E3
Fax: 248 576 7923
Email: jw854@chrysler.com

FCA_Williams 038347

# EXHIBIT F

OMB Control No.: 2127-0004

**Part 573 Safety Recall Report**    **14E-073**

---

**Manufacturer Name :** Takata Corporation
**Submission Date :** NOV 10,2014
**NHTSA Recall No. :** 14E-073
**Manufacturer Recall No. :** NR



---

**Manufacturer Information :**

  Manufacturer Name : Takata Corporation
  Address : 4-30, ROPPONGI 1-CHOME
                 MINATO-KU, TOKYO, JAPAN 00 106-8510
  Company phone : 202-637-2434

**Population :**

  Number of potentially involved : 0
  Estimated percentage with defect : 0

---

**Equipment Information :**

  Brand / Trade :  Takata
  Model :    SPI, PSPI, PSPI-L
  Part No.  : Multiple
  Size :     NR
  Function : Airbag Inflator

  Descriptive Information : Certain airbag inflators installed in frontal passenger side airbag modules from a period between April 13, 2000 (start of production) through July 31, 2004.  The inflators are designated by Takata as SPI, PSPI, and PSPI-L.  They were installed in vehicles that were originally sold, or currently registered, in areas with high levels of absolute humidity.
  Production Dates : APR 13, 2000 - JUL 31, 2004

---

**Description of Defect :**

  Description of the Defect : Certain Takata passenger inflators exposed to consistently high absolute humidity regions could be susceptible to rupture and the front passenger air bag could deploy abnormally in a crash, increasing the risk of injury to the occupant.  The cause of the potential for ruptured inflators and the influence of high absolute humidity are under investigation.
  Description of the Safety Risk : This defect may cause inflator components to separate and potentially be propelled toward the interior of the vehicle.
  Description of the Cause : The cause is under investigation
  Identification of Any Warning that can Occur : NR

---

The information contained in this report was submitted pursuant to 49 CFR §573

**Part 573 Safety Recall Report    14E-073**

---

**Supplier Identification :**

**Component Manufacturer**

Name : NR

Address : NR

NR

Country : United States

---

**Chronology :**

On October 19, 2014, Toyota Motor Corporation (Toyota) submitted a defect information report (DIR) to NHTSA to advise the agency that it was recalling certain model year 2002-2005 Toyota, Lexus, and Pontiac Vibe vehicles that were originally sold, or are currently registered, in Florida, along the Gulf Coast, Puerto Rico, Hawaii, the U.S. Virgin Islands, Guam, Saipan and American Samoa to address a problem with the inflators in the front passenger air bags. The inflators at issue in these vehicles are SPI, PSPI, and PSPI-L inflators manufactured by Takata.

On or about November 4, 2014, Takata was advised that Nissan North America (Nissan) had submitted a DIR to NHTSA to advise the agency that it was recalling certain Nissan vehicles that were originally sold, or are registered, in similar areas to address a problem with the inflators in the front passenger air bags. The inflators at issue in these Nissan vehicles are SPI and PSPI inflators manufactured by Takata.

On or about November 5, 2014, Takata was advised that American Honda Motor Company (Honda) had submitted a DIR to NHTSA to advise the agency that it was recalling certain Honda vehicles that were originally sold, or are registered, in similar areas to address a problem with the inflators in the front passenger air bags. The inflators at issue in these Honda vehicles are PSPI and PSPI-L inflators manufactured by Takata. Although the inflators provided by Takata to the three vehicle manufactures differ from one another in certain respects, in view of the DIRs submitted by these manufacturers, Takata has decided that, in view of the language of 49 CFR 573.3(f), it would be appropriate to submit this report to NHTSA at this time.

---

**Description of Remedy :**

Description of Remedy Program : Takata will work with each of the manufacturers of the vehicles in which the covered air bag inflators were installed to implement an appropriate field action.

How Remedy Component Differs from Recalled Component : NR

Identify How/When Recall Condition was Corrected in Production : NR

---

**Recall Schedule :**

Description of Recall Schedule : NR

Planned Dealer Notification Date : NR        - NR

Planned Owner Notification Date : NR        - NR

---

**Purchaser Information :**

The following manufacturers purchased this defective/noncompliant equipment for possible use or installation in new motor vehicles or new items of motor vehicle equipment:

Name : BMW of North America
Address : PO Box 1227
          Woodcliff Lake NJ 07677-7731
Country : US
Company Phone : 201-307-4000

Name : Chrysler Group LLC
Address : 800 Chrysler Drive
          Auburn Hills MI 48326-2757
Country : US
Company Phone : NR

Name : Ford Motor Company
Address : 330 Town Center Drive
          Dearborn MI 48126-2738
Country : US
Company Phone : NR

Name : General Motors LLC
Address : 30001 Van Dyke Road
          Warren MI 48090-9020
Country : US
Company Phone : NR

Name : American Honda Motor Co.
Address : 1919 Torrance Blvd
          Torrance CA 90501-2746
Country : US
Company Phone : 310-783-2000

Name : Mazda North American Operations
Address : 46976 Magellan Dr
          Wixom MI 48393
Country : US
Company Phone : NR

Name : Mitsubishi Motors North America
Address : 6400 Katella Ave.
　　　　Cypress CA 90630
Country : US
Company Phone : 714-372-6000

Name : Nissan North America
Address : Corporate Headquarters
　　　　One Nissan Way Franklin TN 37068
Country : US
Company Phone : 615-725-1000

Name : Fuji Heavy Industries USA Inc.
Address : c/o Subaru of America
　　　　PO Box 6000 Cherry Hill NJ 08034-6000
Country : US
Company Phone : 856-488-8500

Name : Toyota Motor Engineering & Manufacturing
Address : Mail Code S-104
　　　　19001 South Western Ave Torrance CA 90501
Country : US
Company Phone : 800-331-4331

\* NR - Not Reported

# EXHIBIT G

# Part 573 Safety Recall Report   14V-770

**Manufacturer Name :** Chrysler Group LLC
**Submission Date :** DEC 03,2014
**NHTSA Recall No. :** 14V-770
**Manufacturer Recall No. :** P40 Expanded



**Manufacturer Information :**
  Manufacturer Name : Chrysler Group LLC
  Address : 800 Chrysler Drive
        CIMS 482-00-91 Auburn Hills MI 48326-2757
  Company phone : 1-800-853-1403

**Population :**
  Number of potentially involved : 149,150
  Estimated percentage with defect : 0

**Vehicle Information :**

  Vehicle :  2003-2003 Dodge Ram 1500, 2500, 3500 Pickup
  Vehicle Type : LIGHT VEHICLES
  Body Style : PICKUP TRUCK
  Power Train : GAS
  Descriptive Information : The vehicles being recalled are those equipped with Takata "SPI" front passenger
                airbag inflators and that were originally sold in or ever registered in areas known
                for high absolute humidity: including the states of Alabama, Florida, Georgia,
                Hawaii, Louisiana, Mississippi, and Texas, along with the US Territories of
                American Samoa, Guam, Puerto Rico, Saipan, and the Virgin Islands.
  Production Dates : JUN 20, 2002 - JUL 31, 2003

  **VIN (Vehicle Identification Number) Range**

  Begin : NR                    End : NR                    ☐ Not sequential VINs

**Description of Defect :**
  Description of the Defect : Per Takata's 573 Safety Defect Information Report, in certain vehicles that were
                originally sold or ever registered in areas known for high absolute humidity: areas
                along the Gulf coast of Alabama, Louisiana, Mississippi, and Texas, along with
                southern Georgia, Florida, Hawaii, American Samoa, Guam, Puerto Rico, Saipan, and
                the Virgin Islands; the front passenger's airbag inflator may rupture when
                deploying during an accident.
  Description of the Safety Risk : In the event of an airbag deployment, if the airbag inflator were to rupture
                metal fragments may contact the vehicle's occupant(s), resulting in an
                increased risk of injury.
  Description of the Cause : The cause is under investigation.
  Identification of Any Warning that can Occur : None.

**Supplier Identification :**

**Component Manufacturer**
Name : Takata Corporation
Address : 2500 Takata Drive
              Auburn Hills MICHIGAN 48326
Country : United States

**Chronology :**
• On November 10, 2014, Takata Corporation ("Takata") submitted a 573 Safety Defect Information Report to the National Highway Traffic Safety Administration ("NHTSA"), stating that certain front passenger airbag inflators could contain a safety defect.
• Per Takata's 573 Defect Information Report, certain inflators produced from April 13, 2000 – July 31, 2004, and "...exposed to consistently high absolute humidity regions, could be susceptible to rupture and the front passenger air bag could deploy abnormally in a crash, increasing the risk of injury to the occupant."
• As of December 1, 2014, Takata has laboratory tested 524 SPI front passenger airbag inflators, from multiple manufacturers and from high humidity regions.  Of the 524 tested, Chrysler is aware of 8 failures, all from other manufacturers.
• Chrysler is aware of 2 SPI inflator field failures involving vehicles from other manufacturers.
• Chrysler is not aware of any SPI inflator laboratory or field failures involving a Chrysler vehicle.
• Chrysler currently has no information to distinguish the SPI inflator it used from the SPI inflator used by other manufacturers.
• Although Chrysler is not aware of any incident from the field or laboratory testing where a SPI front passenger airbag inflator from a Chrysler vehicle ruptured, out of an abundance of caution and concern for the safety of our customers, on December 2, 2014 the Chrysler Vehicle Regulatory Committee approved the execution of a voluntary safety recall of all SPI front passenger airbag inflators that were originally sold in or ever registered in the states of Alabama, Florida, Georgia, Hawaii, Louisiana, Mississippi, and Texas, along with the US Territories of American Samoa, Guam, Puerto Rico, Saipan, and the Virgin Islands.

**Description of Remedy :**

Description of Remedy Program : • Replace the front passenger airbag inflator.
                                • Chrysler has a longstanding policy and practice of reimbursing owners who have incurred the cost of repairing a problem that subsequently becomes the subject of a field action.  To ensure consistency, Chrysler, as part of the owner letter, will request that customers send the original receipt and/or other adequate proof of payment to the company for confirmation of the expense.

How Remedy Component Differs from Recalled Component : Replacement inflators are of the same design and materials as the inflators being replaced, pursuant to continuous process control improvements.
Identify How/When Recall Condition was Corrected in Production : Unknown.

09-50002-mg    Doc 8560-3    Filed 09/30/21    Entered 09/30/21 21:25:21    Declaration
of William E. McDonald    Esq.    Pg 50 of 96

**Recall Schedule :**
  Description of Recall Schedule : NR

  Planned Dealer Notification Date : JAN 19, 2015 - JAN 19, 2015

  Planned Owner Notification Date : JAN 19, 2015 - JAN 26, 2015

* NR - Not Reported

# EXHIBIT H

**UNITED STATES DEPARTMENT OF TRANSPORTATION**
**NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION**
1200 New Jersey Avenue SE
Washington D.C. 20590

| | |
|---|---|
| In re: | ) |
| | ) |
| Docket No. NHTSA-2015-0055 | ) |
| Coordinated Remedy Program Proceeding | ) |
| | ) |
| | ) |

## <u>COORDINATED REMEDY ORDER</u>

This Coordinated Remedy Order ("Order") is issued by the Administrator of the National

Highway Traffic Safety Administration ("NHTSA"), an operating administration of the U.S.

Department of Transportation.  Pursuant to NHTSA's authority under the National Traffic and

Motor Vehicle Safety Act of 1966, as amended and recodified (the "Safety Act"), 49 U.S.C. §

30101, *et seq.*, and specifically, 49 U.S.C. §§ 30118-30120, 30120(a)(1), 30120(c)(2)-(3),

30166(b), 30166(c), 30166(e), 30166(g)(1), and 49 CFR §§ 573.6, 573.14, this Coordinated

Remedy Order establishes a Coordinated Remedy Program and sets forth the requirements and

obligations of certain motor vehicle manufacturers[1] and TK Holdings, Inc., ("Takata") in

connection with the recall and remedy of certain types of Takata air bag inflators.

---

[1]    Currently, BMW of North America, LLC ("BMW"), FCA US, LLC ("FCA") (formerly Chrysler), Daimler
Trucks North America, LLC ("Daimler Trucks"), Daimler Vans USA, LLC ("Daimler Vans"), Ford Motor
Company ("Ford"), General Motors, LLC ("GM"), American Honda Motor Company ("Honda"), Mazda North
American Operations ("Mazda"), Mitsubishi Motors North America, Inc. ("Mitsubishi"), Nissan North America,
Inc. ("Nissan"), Subaru of America, Inc. ("Subaru"), and Toyota Motor Engineering and Manufacturing ("Toyota").
In accordance with Paragraphs 45, 46, and 48 below, this list may expand at some future date to include other motor
vehicle manufacturers who have sold or otherwise made available in the United States motor vehicles equipped with
Takata air bag inflators containing phase-stabilized ammonium nitrate.

## I.    NATURE OF THE MATTER AND FINDINGS.

1.    On June 5, 2015, NHTSA opened the Coordinated Remedy Program Proceeding and public Docket Number NHTSA-2015-0055 to address the recalls of certain Takata air bag inflators, which together constitute the largest Safety Act recall in NHTSA's history and one of the largest consumer product recalls in United States history. *See Notice of Coordinated Remedy Program Proceeding for the Replacement of Certain Takata Air Bag Inflators*, 80 FED. REG. 32,197 (June 5, 2015). As of the date of this Order, the number of recalled air bag inflators (currently, approximately 23 million), impacted vehicles (currently, approximately 19 million), and affected vehicle manufacturers (currently, twelve), in combination with the potential for expansion of existing recalls and issuance of new recalls, and the remedy part supply challenges related to the existing recalls, presents an unprecedented level of complexity to the routine recall and remedy process. Given the potential severity of the harm to vehicle occupants when an inflator rupture occurs and the wide-spread exposure to the risk across a large vehicle population, the risk of harm presented by the defective Takata air bag inflators transcends the scope of the processes ordinarily followed in a recall under the Safety Act. Accordingly, for the reasons that follow, and upon consideration of the entire record in this proceeding, NHTSA now issues this Order.

### Factual Background

2.    An air bag inflator ("inflator") is a component inside an air bag module that contains explosive materials[2] which, when ignited, rapidly release gases to inflate air bags that protect vehicle occupants in vehicle crashes. Because inflators must fit into small and unique

---

[2]    More precisely, air bag inflators contain pyrotechnic propellants, stored high pressure gases, or a combination of the two. To aid the reader's understanding, by using more familiar terminology, this is described herein as an "explosive."

spaces including vehicle steering wheels and front instrument panels (i.e., dashboards), and
because they must also satisfy specific performance requirements, inflators must meet exacting
size and configuration requirements for each air bag module they are paired with and each
vehicle in which they are installed. When functioning properly, air bag inflators are life-saving
devices.

3.      The first recall involving a rupturing Takata driver side frontal air bag inflator
was initiated by Honda on November 11, 2008. At that time, the defect was thought to be the
result of a specific manufacturing issue involving a propellant press at Takata's Moses Lake,
Washington plant. Due to various purported discrepancies in Takata's record keeping for the
affected parts, and changing theories as to the root cause of the defect, Honda expanded the
scope of the recall several times between 2009 and 2011.

4.      The first recall involving a rupturing Takata passenger side frontal air bag
inflator was initiated by Takata on April 11, 2013, and involved BMW, Honda, Mazda, Nissan,
and Toyota. At that time, the defect was thought by Takata to be the result of two specific
manufacturing issues: (1) the possibility that the auto-reject function on a propellant press had
been manually disabled, and (2) the possibility that certain propellant lots were exposed to
uncontrolled moisture conditions at Takata's Monclova, Mexico plant. In 2013 and 2014, GM
recalled vehicles to address separate manufacturing problems specific to a limited number of
inflators Takata supplied only to GM.

5.      Between August 2013 and April 2014, NHTSA received three Vehicle Owner
Questionnaires (VOQs) that alleged air bag inflator ruptures in vehicles outside the scope of the
prior driver side and passenger side frontal air bag inflator recalls. In late May 2014, Takata
confirmed the three ruptures with NHTSA's Office of Defects Investigation (ODI), and notified

3

ODI of an additional three ruptures (for a total of six rupture incidents between August 2013 and

May 2014). All of these ruptures occurred in vehicles experiencing long-term exposure to hot

and humid climate conditions in Florida and Puerto Rico.

6.      On June 10, 2014, at NHTSA's urging, Takata and the affected vehicle

manufacturers agreed to initiate various field actions in Florida, Hawaii, Puerto Rico, and the

U.S. Virgin Islands. The data supporting these field actions indicated that certain Takata frontal

air bag inflators in regions prone to consistent long-term[3] exposure to high absolute humidity

("HAH") and high temperatures posed a safety risk. The field actions were designed to mitigate

the demonstrated risks in the HAH region, to make inflators available for future testing, and to

produce data to guide future actions.

7.      On June 11, 2014, NHTSA opened a preliminary evaluation (PE14-016) to

investigate the six identified rupture incidents involving driver side and passenger side frontal

air bag inflators manufactured by Takata.

8.      During the period of October through December 2014, at NHTSA's direction,

field actions were converted to recalls and the recalls were expanded, though some recalls

remained limited to certain regions with higher absolute humidity. Also during this period,

NHTSA urged Takata and the affected vehicle manufacturers to, among other things, speed up

the remedy programs by increasing the supply of remedy air bag inflators. NHTSA emphasized

the need to promptly and effectively remedy the serious safety risk posed to consumers by the

defective Takata air bag inflators. Further, as part of its ongoing investigation and oversight,

NHTSA issued two Special Orders to Takata on October 30, and November 18, 2014, a Special

Order to Honda on November 5, 2014, and General Orders to BMW, FCA, Ford, GM, Honda,

---

[3]    Consistent long-term exposure means multiple years of mostly continuous exposure throughout the year. It is not seasonal exposure.

Mazda, Mitsubishi, Nissan, Subaru, Toyota, and Takata on November 18, 2014. All these

Special and General Orders were designed and issued by NHTSA to obtain additional data

required to assess and mitigate the risk of harm to the motoring public.

9.      On November 18, 2014, NHTSA demanded that the five vehicle manufacturers

with affected driver side frontal air bag inflators expand their regional field actions and conduct

nationwide actions. This decision was based on, among other things, NHTSA's evaluation of a

driver side frontal air bag failure in a vehicle outside the existing regional recall area. In

response, beginning in December 2014, BMW, FCA, Ford, Honda and Mazda initiated national

service campaigns or safety improvement campaigns on vehicles with driver side frontal air bag

inflators.

10.      On November 26, 2014, NHTSA demanded that Takata submit Defect

Information Reports ("DIRs") of driver side frontal air bag inflators. While Takata declined to

do so in a December 2, 2014 response, NHTSA continued to insist that Takata accept

responsibility for the rupturing air bag inflators and file DIRs.

11.      On February 24, 2015, NHTSA upgraded PE14-016 to an engineering analysis

(EA15-001).

12.      On May 18, 2015, after NHTSA's consistent demands, and pursuant to its legal

obligations under the Safety Act, 49 U.S.C. § 30118(c)(1) and 49 C.F.R. § 573.6(c), Takata filed

four DIRs with NHTSA (15E-040, 15E-041, 15E-042, 15E-043) ("Takata DIRs"). In the Takata

DIRs, Takata admitted that certain types of air bag inflators manufactured by Takata with a

phase-stabilized ammonium nitrate-based propellant (specifically, the PSDI, PSDI-4, PSDI-4K,

SPI, PSPI and PSPI-L) contain defects constituting an unreasonable risk to safety.

13.    Between May 13, 2015 and June 24, 2015, BMW, FCA, Daimler Trucks,[4]

Daimler Vans, Ford, GM, Honda, Mazda, Mitsubishi, Nissan, Subaru, and Toyota (the "Initial

Vehicle Manufacturers") each filed DIRs with NHTSA for vehicles containing the air bag

inflators covered by the Takata DIRs (the "Inflator Recalls").

14.    As part of the Coordinated Remedy Program Proceeding, launched on June 5,

2015, NHTSA sought information from each of the Initial Vehicle Manufacturers, Takata, and

other major inflator suppliers[5] (the "Suppliers").  As an initial matter, this included gathering

data from the Initial Vehicle Manufacturers, Takata, and the other Suppliers through

correspondence, and a Special Order to Takata, sent on June 18 and 19, 2015.[6]  Thereafter, each

of these companies provided answers responsive to NHTSA's correspondence, which were

available in the public docket.

15.    Among other things, NHTSA engaged in numerous teleconferences and in-

person meetings with the Suppliers to enhance NHTSA's understanding of, among other things,

each Supplier's current production capacities, capabilities or plans for increasing production,

existing contractual obligations, and product reliability.  NHTSA also engaged in

teleconferences and in-person meetings with the Initial Vehicle Manufacturers to enhance

NHTSA's understanding of, among other things, each Vehicle Manufacturer's anticipated

timelines for receipt of replacement air bag units, anticipated timelines for remedy program

---

[4]    Daimler Trucks' remedy program of approximately 2,500 vehicles is being conducted in cooperation with
FCA.

[5]    ARC Automotive, Inc. ("ARC"), Autoliv Americas ("Autoliv"), Key Safety Systems ("Key Safety"),
Toyoda Gosei North America Corporation ("Toyoda"), Daicel Safety Systems America, LLC ("Daicel"), and TRW
Automotive ("TRW") which has subsequently become ZF TRW ("ZF TRW").

[6]    The correspondence sent to Takata and each of the Suppliers and Initial Vehicle Manufacturers, and their
responses, are available for inspection in public Docket Number NHTSA-2015-0055. Given NHTSA's ongoing
investigation into the defective Takata air bag inflators under EA15-001, the correspondence sent to Takata was in
the form of a Special Order, with a cover letter.  As with the other industry responses to the correspondence of June
18-19, Takata's response to the Special Order was made publicly available as a comment to the Docket.

launch and completion, number of impacted vehicles, number of replacement air bag units

needed, and plans and efforts for promptly conducting recall remedies and effectively reaching

consumers.

16.    On September 22, 2015, NHTSA gathered supplemental data from additional

vehicle manufacturers that NHTSA had learned were supplied with Takata air bag inflators

containing phase-stabilized ammonium nitrate ("PSAN")[7] not covered by the Takata DIRs

(collectively, the "Potential Expansion Vehicle Manufacturers").    Thereafter, each of these

companies provided public comments to the docket responsive to the questions and issues raised

in NHTSA's correspondence.

17.    On September 23 and 24, 2015, NHTSA convened problem-solving meetings

with the Initial Vehicle Manufacturers to examine aggregate data and engage in a collaborative

risk analysis to aid NHTSA in developing a principled, rational, risk-mitigation based approach

for the prioritization and phasing of recall plans.    Factors considered included those currently

associated with a higher risk of inflator rupture, specifically: age of the inflator (with older

inflators presenting a greater risk); geographic location of vehicles with the recalled inflators

(with HAH areas presenting a greater risk); position of the inflator in the vehicle (with the driver

side frontal air bag inflator presenting a greater risk of serious injury or death when a rupture

occurs); and the presence of recalled inflators in both the driver and passenger side airbag

modules.    During the meetings, the Initial Vehicle Manufacturers provided input on factors

supporting a technically supported risk-assessment methodology for the Inflator Recalls.

Following the meeting, each Initial Vehicle Manufacturer submitted a vehicle prioritization list

---

[7]    Correspondence was sent to Jaguar Land Rover North America, LLC ("Jaguar"); Mercedes-Benz US, LLC
("Mercedes-Benz"); Spartan Motors, Inc. ("Spartan"); Suzuki Motor of America, Inc. ("Suzuki"); Tesla Motors, Inc.
("Tesla"); Volkswagen Group of America, Inc. ("Volkswagen"); and Volvo Trucks NA ("Volvo"). The
correspondence to each of these vehicle manufacturers, and their responses, are available for public inspection in
public Docket Number NHTSA-2015-0055.

that applied these factors, and other factors specific to their products, that prioritized vehicles

into three risk categories. NHTSA analyzed these submissions and determined that the Initial

Vehicle Manufacturers generally identified reasonable and appropriate priority groups based on

the evidence known at this time.

18.     Throughout this process, the public has been able to engage in this dialogue

through submissions to the public Docket, NHTSA-2015-0055. In addition to the actions set

forth above, NHTSA reviewed and considered all public comments to the docket.

19.     While Takata is a manufacturer of air bag inflators, other Suppliers also

manufacture inflators, some of which closely match the performance requirements of the

original Takata inflator and thus can be modified and safely installed in Takata air bag modules

for use as remedy parts for the Inflator Recalls. This is significant because Takata alone does

not have sufficient manufacturing capacity to produce remedy inflators for the Initial Vehicle

Manufacturers within an adequate timeframe. According to Takata, it was capable of

manufacturing approximately 85,000 replacement kits per week as of October 30, 2014.

Takata's production capacity increased to 91,000 replacement kits per week by December 1,

2014, and to 122,000 replacement kits per week by January 26, 2015. By July 2015, Takata

reported to NHTSA that, in May 2015, it had produced approximately 730,000 remedy inflators

and 1,167,000 remedy kits, which included inflators obtained from other Suppliers. Takata

further reported that these numbers were expected to reach 850,000 remedy inflators and

1,900,000 remedy kits produced per month, including inflators obtained from other Suppliers,

by October 2015. Takata also reported that, as of June 2015, it had produced a total of

approximately 8,900,000 replacement inflators. However, this production is not all directed to

the U.S. market; it also serves the global market requiring replacement air bag inflators. Even at

8

the increased rate of nearly 850,000 remedy inflators per month by October 2015, if working

alone it would take Takata at least twenty-seven (27) months to produce enough remedy

inflators for the Inflator Recalls, assuming all of that production went solely to the United States

market.

20.    Further, some of the Takata driver inflators, sometimes referred to as containing

propellant in the shape of a "batwing," have been used as interim replacement parts that will

degrade if continuously exposed to long-term to HAH conditions, and are themselves subject to

recall. These inflators will not be used as a final remedy of driver side frontal air bags. Further,

Takata's passenger side frontal air bag inflators subject to the Inflator Recalls have not

previously been recalled for vehicles later than model year 2008.

21.    The Initial Vehicle Manufacturers recognized the need to increase the remedy

parts supply in order to have sufficient remedy parts available. To do so, they were required

find alternative suppliers to meet their demands for remedy air bag inflator parts. The Initial

Vehicle Manufacturers found that necessary alternative supply source in other inflator suppliers,

specifically, Autoliv, Daicel, and ZF TRW (collectively, the "Alternative Inflator Suppliers").

22.    According to Takata, in October 2015, the Alternative Inflator Suppliers were

scheduled to provide over 1.9 million remedy inflator parts per month for installation in remedy

air bag kits. This totaled approximately seventy percent (70%) of the 2.8 million remedy

inflator kits produced by Takata that month for global demand. Nonetheless, the sheer volume

of remedy parts required across the vehicle manufacturing industry, for both U.S. and foreign

markets, has created challenges for the Initial Vehicle Manufacturers in obtaining sufficient

remedy parts to remedy all of the recalled inflators within a reasonable time.

23.     Despite the efforts of each of the Initial Vehicle Manufacturers to procure

remedy parts in a timely fashion, some vehicle manufacturers will not be able to obtain

sufficient remedy parts to launch their remedy programs, in part or in full, until late 2015 or

early 2016, more than six (6) months after filing their initial DIRs in regard to the Inflator

Recalls.

24.     Further, pursuant to a November 3, 2015 Consent Order to Takata ("November

2015 Takata Consent Order"), additional Takata air bag inflators not previously subject to a

recall may need to be replaced.  This would cause the Potential Expansion Vehicle

Manufacturers to join the existing field of Initial Vehicle Manufacturers (collectively, the

"Vehicle Manufacturers") in need of remedy air bag inflator parts.

25.     Each time Takata air bag inflator recalls are issued under the November 2015

Takata Consent Order, or current recalls are expanded, similar challenges will arise for the

Vehicle Manufacturers regarding supply chain and the need for risk-assessments based on

principled rationales that utilize the most-current available science and data.

26.     Throughout this sequence of events, Takata has conducted inflator testing in an

effort to determine the "root cause" of the inflator ruptures and, by testing modules recovered

from vehicles that have been remedied, to determine which inflators posed the greatest risk of

rupture.  While production issues at Takata manufacturing plants in Monclova, Mexico and

Moses Lake, Washington, were identified early on as the purported root cause in some rupture

incidents, those theories (even if correct) do not account for the ongoing issues with inflator

rupture.  For example, inflators installed in vehicles spending many consecutive years of their

service lives in hot and humid climates have also ruptured even though they appear to have been

manufactured within Takata's specifications.  While Takata now believes that the ruptures are

10

related to long-term exposure to HAH conditions, their root cause testing has not produced any conclusive answers regarding why the inflators rupture.

27.     Moreover, Takata has been unable to provide a definitive explanation for other inflators rupturing, including the rupture of an SSI-20 side air bag inflator on June 7, 2015, in a Volkswagen vehicle involved in a crash, or the rupture of a PSDI-X inflator during Takata's testing of an air bag module on September 29, 2015 with a resulting recall by Honda. Takata has also been unable to definitively explain the October 2015, rupture of an SSI-20 inflator during Takata quality control testing. It therefore appears to the agency that Takata continues to have ongoing quality control issues with the volatile, explosive compound it has chosen as the propellant for most of its air bag inflators: PSAN.

28.     While the ultimate responsibility for determining root cause rests squarely with Takata, testing has also been conducted by NHTSA and third parties in an effort to establish the root cause of the defect and to verify the results of Takata's testing of inflators returned from the field. NHTSA has conducted testing through Battelle Memorial Institute, 3D Engineering Solutions, and the Transportation Research Center of Ohio, testing organizations located in Ohio, to verify Takata's test results and examine the root cause of the defect. Testing has also been undertaken by the Independent Testing Coalition ("ITC"), which is comprised of BMW, FCA, Ford, GM, Honda, Mazda, Mitsubishi, Nissan, Subaru, and Toyota. Orbital ATK, a testing company located in Utah, has commenced testing on behalf of the ITC, and hopes to conclude root cause analysis in 2016. Multiple individual vehicle manufacturers have also conducted testing in efforts to confirm Takata's results or establish root cause for the defect. While this multitude of independent testing efforts have largely confirmed the observations made and patterns identified from Takata's test results, none of these efforts has identified any

11

specific root cause(s) for the propellant failures and inflator ruptures. While progress is being

made, it is unknown when, or if, root cause will ever be definitively determined.

29.    Without a conclusive determination of root cause, the source of the problems

with certain Takata inflators remains unknown. What is known, however, is that the propellant

in inflators covered by the Inflator Recalls and the recalls within the scope of this Order have, at

various rates of frequency, a propensity to ignite and/or burn in an unexpected way that may

cause the pressure inside the inflator to increase too quickly, causing the inflator to rupture.

That rupture causes the metal canister of the inflator to break away in hot, shrapnel-like

fragments, which shoot out of the air bag into the passenger cabin and towards the driver or any

occupants who are nearby.

30.    As of October 30, 2015, there have been 99 confirmed incidents in the United

States where a ruptured Takata air bag inflator allegedly caused death or injury. Many of these

incidents resulted in serious injury to vehicle occupants. In seven of the incidents, the vehicle's

driver died as a result of injuries sustained from the rupture of the air bag inflator. In other

incidents, vehicle occupants suffered injuries including cuts or lacerations to the face or neck,

broken or fractured facial bones, loss of eyesight, and broken teeth. The risk of these tragic

consequences is greatest for individuals sitting in the driver seat, where one in ten individuals'

whose air bag inflator ruptured has died.

**Findings**

Based upon the agency's analysis and judgment, and upon consideration of the entire

record, NHTSA finds that:

31.    (1) there is a risk of serious injury or death if the remedy program of each of the Initial Vehicle Manufacturers is not accelerated; (2) acceleration of each Initial Vehicle Manufacturer's remedy program can be reasonably achieved by expanding the sources of replacement parts; and (3) each Initial Vehicle Manufacturer's remedy program is not likely to be capable of completion within a reasonable time without acceleration.

32.    Each air bag inflator with the capacity to rupture, as the recalled Takata inflators do, presents an unreasonable risk of serious injury or death. Seven individuals have already been killed in the United States alone, with at least 92 more injured. Since the propensity for rupture increases with the age of the inflator, and increases even more when the vehicle has been exposed to consistent long-term HAH conditions, the risk for injurious or lethal rupture increases with each passing day. While each of the Initial Vehicle Manufacturers has made efforts towards the remedy of these defective air bag inflators, acceleration and coordination of the inflator remedy programs is necessary to reduce this risk to public safety. Acceleration and coordination will enable vehicle manufacturers to establish priorities based on principled rationales for risk-assessment, coordinate on safety-focused efforts to successfully complete their respective remedy programs, and allow for the organization and prioritization of remedy parts, if and as needed, with NHTSA's oversight.

33.    Acceleration of the inflator remedy programs can be reasonably achieved by, among other things, expanding the sources of replacement parts. This acceleration can be accomplished in part by a vehicle manufacturer contracting with any of the Alternative Inflator Suppliers for remedy parts as Takata cannot manufacture sufficient remedy parts in a reasonable time for the estimated 23 million inflators in the U.S. market alone that require remedy under the Inflator Recalls.

13

34.    In light of all the circumstances, including the safety risk discussed above, the
Initial Vehicle Manufacturers' recall remedy programs are not likely capable of completion
within a reasonable amount of time without acceleration of each remedy program.  It is critical to
the timely completion of each remedy program that the Initial Vehicle Manufacturers obtain
remedy inflators from sources other than Takata.  Takata's inflator production for October 2015
will make up only around thirty percent (30%) of the remedy inflators produced that month.
Further, Takata's ability to supply remedy parts going forward may decrease, such that other
Suppliers will need to fill the resulting void.

35.    Pursuant to the conditions for expansion of the recalls in the Takata DIRs for
Recall Nos. 15E-042 and 15E-043, Paragraphs 27 – 30 of the November 2015 Takata Consent
Order, and as otherwise agreed by Takata, and after consultation throughout this Coordinated
Remedy Program Proceeding with Takata and all of the vehicle manufacturers affected by said
Recalls, NHTSA further finds that continued testing and analysis of Takata air bag inflators is
necessary.  If circumstances warrant the issuance of an Order expanding the production or
geographic scope of the Inflator Recalls, the agency will do so in accordance with the November
2015 Takata Consent Order.

36.    The issuance of this Coordinated Remedy Order is an appropriate exercise of
NHTSA's authority under the Safety Act, 49 U.S.C. § 30101, *et seq.*, as delegated by the
Secretary of Transportation, 49 C.F.R. §§ 1.95, 501.2(a)(1), to inspect and investigate, 49
U.S.C. § 30166(b)(1), to ensure that defective vehicles and equipment are recalled and remedied
and that owners are notified of a defect and how to have the defect remedied, 49 U.S.C. §§
30118-30120, to ensure the adequacy of the remedy, including through acceleration of the
remedy program, 49 U.S.C. § 30120(c), to require vehicle manufacturers and equipment

manufacturers to keep records and make reports, 49 U.S.C. § 30166(e), and to require any person

to file reports or answers to specific questions, 49 U.S.C. § 30166(g).

37.    This Coordinated Remedy Order, developed after taking into account the input

and concerns of each of the Vehicle Manufacturers, Suppliers, Takata, other interested parties

and the public, will reduce the risk of serious injury or death to the motoring public and enable

the Initial Vehicle Manufacturers and Takata to implement, and complete, the necessary remedy

programs on an accelerated basis.


Accordingly, it is hereby ORDERED by NHTSA as follows:


## II.    TERMS OF THE COORDINATED REMEDY ORDER.

### Priority Groups and Target Recall Program Completion Deadlines for the Coordinated Remedy Program

38.    Each Initial Vehicle Manufacturer has previously submitted to NHTSA a vehicle

prioritization plan based on a risk-assessment that takes into account the primary factors related

to Takata inflator rupture, as currently known and understood, and other factors specific to that

vehicle manufacturer's products. The primary factors utilized by all of the Initial Vehicle

Manufacturers are: (1) age of the inflator (with older presenting a greater risk of rupture); (2)

geographic location of the inflator (with continuous long-term exposure to high absolute

humidity ["HAH"] areas,[8] as defined by each vehicle manufacturer, presenting a greater risk of

---

[8]    Each vehicle manufacturer has defined an HAH region for its vehicle prioritization and recall remedy program, resulting in slight variations as to which states and territories are included in the HAH area. However, **all** of the prioritizations include in the HAH area vehicles that were originally sold, or ever registered, in Alabama, Florida, Georgia, Hawaii, Louisiana, Mississippi, Texas, Puerto Rico, American Samoa, Guam, Saipan, and the U.S. Virgin Islands. None of the slight variations impact the risk mitigation established through this Order.

rupture); and (3) location of the Takata inflator in the vehicle (with both driver side and

passenger side frontal air bag inflators in the same vehicle presenting the greatest risk of

rupture,[9] and driver side only presenting an elevated risk of rupture, resulting in serious injury or

death). In order to timely and adequately complete its remedy program, each Initial Vehicle

Manufacturer shall, pursuant to 49 U.S.C. § 30120(a)(1) and (c), carry out its remedy program in

accordance with its prioritization plan as submitted to NHTSA. A complete listing of the

vehicles in each priority group ("Priority Group") developed using the above risk factors is

attached hereto as Annex A,[10] and is hereby incorporated by reference as if fully set forth herein.

The Priority Groups are as follows:

### a. **Priority Group 1**

Vehicles in Priority Group 1 are equipped with Takata inflators that pose the highest risk

of rupture and thus the highest risk of injury or death to the vehicle occupants. Generally,

Priority Group 1 vehicles are currently model year 2008 and earlier, and have spent time[11] in the

HAH region, and have either a recalled driver side inflator or *both* recalled driver side and

passenger side inflators in the same vehicle.

### b. **Priority Group 2**

Vehicles in Priority Group 2 are equipped with Takata inflators that pose an intermediate

risk of rupture; that is, a lower risk of rupture and resulting injury or death to vehicle occupants

---

[9]     All recalled Takata inflators have previously been determined to pose an unreasonable risk of death or
serious injury in a crash, as established in the filing of each of the many DIRs for the recalled inflators.
Comparative statements of risk in the priority groups are provided to explain relative risk among the inflators, all of
which pose an unreasonable risk of death or serious injury in a crash.

[10]    Because information about the risk factors may change throughout this Coordinated Remedy Program,
these prioritizations are subject to change by a vehicle manufacturer, with NHTSA's oversight of the recall program
including vehicle prioritization.

[11]    While continuous long-term exposure to HAH is an identified risk factor, the Priority Groups take this into
account by including in the risk-assessment vehicles originally sold or ever registered in the HAH region. Vehicle
manufacturers are able to obtain registration information and have used that data in formulating their risk-
assessment based Priority Groups.

than the inflators and vehicles in Priority Group 1, but a higher likelihood of rupture and injury

or death than vehicles in Priority Groups 3 and 4.  Generally, Priority Group 2 includes: (1) all

remaining vehicles with recalled *driver* side inflators (this includes, vehicles 2009 and newer,

and/or vehicles with recalled driver inflators only that have not spent time in the HAH region),

and; (2) vehicles with certain recalled passenger inflator types that have a higher rupture

frequency and that have also spent time in the HAH region.

### c.  **Priority Group 3**

Vehicles in Priority Group 3 are equipped with Takata inflators that pose an unreasonable

risk of serious injury or death to vehicle occupants and should be remedied as soon as possible

following the remedy of the highest risk vehicles in Priority Groups 1 and 2.  The likelihood of

these inflators rupturing is lower than Priority Groups 1 and 2.  Generally, Priority Group 3

includes the remaining vehicles, specifically, vehicles that are model year 2009 and later and

either: (1) are outside the HAH region and contain only a passenger side inflator, or; (2) are in

the HAH region and contain a specific passenger side inflator type with a lower rupture rate (the

PSPI type) than other passenger side inflator types.

### d.  **Priority Group 4**

Some Initial Vehicle Manufacturers are replacing recalled inflators with newly

manufactured "like-for-like" inflators while they work towards an alternative, final remedy.

Vehicles in Priority Group 4 include those vehicles with driver side frontal air bag inflators that

have received, or will receive, an "interim remedy," meaning they have been, or will be,

remedied with a Takata inflator that has been recalled, and will require a second remedy once the

final remedy is available.[12]  Once repaired with the interim remedy, these vehicles are at the

---

[12]    NHTSA has entered into Remedy Agreements with BMW and Mazda, which can be found in the
investigation file for EA15-001 on www.safercar.gov.

lowest risk of an inflator rupture because the inflator is new and has not yet been subject to long-term continuous exposure to HAH conditions. Unless specifically added at a later date to a higher Priority Group for re-remedy by their vehicle manufacturer, all remaining vehicles requiring a second, final, remedy of the inflator(s) are included in Priority Group 4.

39.    Pursuant to their obligations to remedy a defect within a reasonable time, as set forth in 49 U.S.C. § 30120(a)(1) and § 30120(c)(2), each Initial Vehicle Manufacturer shall acquire a sufficient supply of remedy parts to enable it to provide remedy parts, in a manner consistent with customary business practices, upon demand to dealers within their dealer network by the timelines set forth in this Paragraph. Each Initial Vehicle Manufacturer shall ensure that it has a sufficient supply of remedy parts on the following schedule:

| Priority Group | Sufficient Supply Timelines |
|---|---|
| Priority Group 1 | March 31, 2016 |
| Priority Group 2 | September 30, 2016 |
| Priority Group 3 | December 31, 2016 |

40.    Further pursuant to their obligations to remedy a defect within a reasonable time, as set forth in 49 U.S.C. § 30120(a)(1) and § 30120(c)(2), each Initial Vehicle Manufacturer shall implement and execute its recall remedy program pursuant to the Safety Act with the target deadline to complete the recall remedy program for all vehicles in Priority Groups 1 through 3 of December 31, 2017, and a target deadline to remedy all vehicles in Priority Group 4 of December 31, 2019, as shown below:

| Priority Group | Remedy Completion Target Deadline |
|---|---|
| Priority Group 1 | December 31, 2017 |
| Priority Group 2 | December 31, 2017 |
| Priority Group 3 | December 31, 2017 |
| Priority Group 4 | December 31, 2019 |

## Remedy Completion Maximization Efforts

41.     Pursuant to 49 U.S.C. § 30166(e), within 90 days of this Order, a vehicle manufacturer recalling inflators subject to this Order shall provide to NHTSA and the Monitor (as set forth at Paragraph 44 below), a written recall engagement process or plan for maximizing remedy completion rates for all vehicles covered by the Inflator Recalls. Such a process or plan shall, at a minimum, include but not be limited to the methodology and techniques presented at the Retooling Recalls Workshop[13] held by NHTSA on April 28, 2015, at the U.S. Department of Transportation Headquarters.

42.     Pursuant to 49 U.S.C. § 30166(e), a vehicle manufacturer recalling inflators subject to this Order shall, upon request, provide to NHTSA and the Monitor any and all information demonstrating the reasonableness of the efforts made by that vehicle manufacturer to maximize remedy completion rates.

43.     The facts relating to supply, demand, and root cause may change during this Coordinated Remedy Program. Pursuant to Paragraph 32 of the November 2015 Takata Consent Order, Takata shall continue to cooperate with NHTSA in all ways to coordinate and accelerate remedy programs, and to adequately remedy the air bag inflators covered by the Inflator Recalls.

## Monitor

44.     Pursuant to Paragraphs 35 through 46 of the November 2015 Takata Consent Order, Takata has agreed to retain, at its sole cost and expense, an independent monitor (the "Monitor"). The Monitor's authority includes, among other things, certain monitoring, review and assessment of progress of the Coordinated Remedy Program and of compliance with this Order. The powers, rights and responsibilities of the Monitor are set forth more fully in the

---

[13]     Each of the Initial Vehicle Manufacturers, other than Daimler Vans, registered to attend this Workshop. Presentations from the Workshop are available at: http://www.nhtsa.gov/nhtsa/symposiums/april2015/index.html#.

November 2015 Takata Consent Order, which are hereby incorporated by reference as if fully set
forth herein.

    a.  The Monitor shall have the authority to take such reasonable steps, in the
Monitor's view, as are necessary to be fully informed about the operations of
the Coordinated Remedy Program and this Order.

    b.  It is expected that the Monitor will develop and implement written procedures
and may make additional recommendations aimed at enhancing the
Coordinated Remedy Program and ensuring that all Coordinated Remedy
Program deadlines, including those in this Order, are met.

    c.  The Monitor is not intended to supplant NHTSA's authority over decisions
related to the Coordinated Remedy Program, this Order, motor vehicle safety,
or otherwise.  If the Monitor identifies a problem or issue, the Monitor shall
make appropriate recommendations to NHTSA and provide all supporting
information, including information contrary to the Monitor's
recommendation, to enable NHTSA to make an informed decision on that
recommendation.

    d.  Takata and Vehicle Manufacturers, along with all of their respective officers,
directors, employees, agents, and consultants, shall have an affirmative duty to
cooperate with and assist the Monitor in connection with the Coordinated
Remedy Program and this Order.

### Potential Future Recalls

45.    The provisions of the November 2015 Takata Consent Order regarding future
recalls and possible future recalls, contained at Paragraphs 29 – 30 of that document, are hereby

incorporated by reference into this Order. Accordingly, any future recall(s) of Takata inflators

pursuant to, or contemplated by, Paragraphs 29 – 30 of that Order shall become part of the

Coordinated Remedy Program established herein.

46.    Upon Takata's filing of a DIR pursuant to 49 CFR § 573, the affected vehicle

manufacturer(s) shall timely file a DIR. Upon the filing of such DIRs NHTSA may, pursuant to

49 U.S.C. §§ 30118-30119, 49 U.S.C. § 30120(c), 49 CFR § 573.14, and 49 U.S.C. § 30166(b),

(c), and (e), convene a meeting with the affected vehicle manufacturers to take place within

forty-five (45) days of Takata's DIR filing, at an appropriate location within the United States, as

determined by NHTSA, to address issues related to the Coordinated Remedy Program including,

but not limited to, establishing a risk-assessment framework for the prioritization of vehicles

and/or phasing of remedy programs, as appropriate. Any such prioritizations shall be made

publicly available, and shall be annexed to this Order, in a format similar to the Priority Group

lists in Annex A of this Order.

### Record Keeping & Reports

47.    Pursuant to 49 U.S.C. § 30166(b), (c), (e), and (g), in carrying out any recall

remedy program covered by this Order, each affected vehicle manufacturer and Takata shall

make any report, submit any information, and accommodate any inspection and/or investigation,

as requested by NHTSA or the Monitor.

### Miscellaneous

48.    NHTSA may, after consultation with affected vehicle manufacturers, and/or

Takata, or upon a recommendation of the Monitor, modify or amend provisions of this Order to,

among other things: account for and timely respond to newly obtained facts, scientific data,

changed circumstances, and/or other relevant information that may become available throughout

the term of the Coordinated Remedy Program. This includes but is not limited to, changes to the

Priority Groups contained in Annex A; allowing for reasonable extensions of time for the

timelines contained in Paragraphs 39 and 40; facilitating further recalls as contemplated by

Paragraphs 45 and 46; or for any other purpose arising under, or in connection with, the

Coordinated Remedy Program and/or this Coordinated Remedy Order.

49.    This Coordinated Remedy Order shall become effective upon issuance by the

NHTSA Administrator. In the event of a breach of, or failure to perform, any term of this Order

by Takata or any vehicle manufacturer, NHTSA may pursue any and all appropriate remedies,

including, but not limited to, actions compelling specific performance of the terms of this Order,

and/or commencing litigation to enforce this Order in any United States District Court.

50.    This Coordinated Remedy Order shall not be construed to create rights in, or grant

any cause of action to, any third party not subject to this Order.

51.    In carrying out the directives of this Coordinated Remedy Order, vehicle

manufacturers and vehicle equipment manufacturers (i.e. suppliers) shall not engage in any

conduct prohibited under the antitrust laws, or other applicable law.

IT IS SO ORDERED:

NATIONAL HIGHWAY TRAFFIC SAFETY
ADMINISTRATION,
U.S. DEPARTMENT OF TRANSPORTATION

Dated: November 3, 2015          By:    **// ORIGINAL SIGNED BY //**

Mark R. Rosekind, Ph.D.
Administrator

22

## ANNEX A

### Coordinated Remedy Program Priority Groups

In the Priority Groups listed below, the area of high absolute humidity ("HAH") is defined by each vehicle manufacturer individually, but in **all** instances includes vehicles originally sold or ever registered in Alabama, Florida, Georgia, Hawaii, Louisiana, Mississippi, Texas, Puerto Rico, American Samoa, Guam, Saipan, and the U.S. Virgin Islands. In limited instances, parts for some HAH recalls are currently only available to a limited area within the HAH with the highest risk of rupture. "Non-HAH" means any vehicle that has not been identified by the vehicle manufacturer as having been originally sold or ever registered in the HAH region, as defined by the vehicle manufacturer.

## PRIORITY GROUP 1

**BMW:**

| | | |
|---|---|---|
| 2002-2006 | BMW | 3 Series, M3 (HAH) |

**Daimler Vans USA:**

| | | |
|---|---|---|
| 2007-2008 | Freightliner | Sprinter (HAH) |
| 2007-2008 | Dodge | Sprinter (HAH) |

**Daimler Truck North America-DTNA:**

| | | |
|---|---|---|
| 2008-2009 | Sterling | Bullet (HAH and non-HAH) |

**FCA:**

| | | |
|---|---|---|
| 2006-2008 | Chrysler | 300, 300C, SRT8 (HAH) |
| 2005 | Chrysler | 300, 300C, SRT8 (HAH and non-HAH) |
| 2008 | Dodge | Challenger (HAH) |
| 2006-2008 | Dodge | Charger (HAH) |
| 2005 | Dodge | Dakota (HAH) |
| 2004-2005 | Dodge | Durango (HAH) |
| 2006-2008 | Dodge | Magnum (HAH) |
| 2005 | Dodge | Magnum (HAH and non-HAH) |
| 2004-2005 | Dodge | Ram 1500, 2500, 3500 Pickup (HAH) |

**Ford:**

| | | |
|---|---|---|
| 2005-2006 | Ford | GT (HAH) |
| 2005-2008 | Ford | Mustang (HAH) |
| 2004-2005 | Ford | Ranger (HAH) |

**GM:**

| | | |
|---|---|---|
| 2003-2007 | Pontiac | Vibe (HAH) |
| 2005 | GM-Saab | 9-2X (HAH) |

*Priority Group 1 continued…*

*Priority Group 1 continued from prior page...*

**Honda:**

| | | |
|---|---|---|
| 2003 | Acura | 3.2CL (HAH and non-HAH) |
| 2002-2003 | Acura | 3.2TL (HAH and non-HAH) |
| 2001-2003 | Honda | Accord (HAH and non-HAH) |
| 2001-2003 | Honda | Civic (HAH and non-HAH) |
| 2004-2005 | Honda | Civic (HAH) |
| 2003-2005 | Honda | Civic IMA-Hybrid (HAH) |
| 2003 | Honda | Civic IMA-Hybrid (non-HAH) |
| 2002 | Honda | CR-V (HAH and non-HAH) |
| 2003-2004 | Honda | CR-V (HAH) |
| 2003-2006 | Honda | Element (HAH) |
| 2002 | Honda | Odyssey (HAH) |
| 2003 | Honda | Pilot (HAH and non-HAH) |
| 2004-2005 | Honda | Pilot (HAH) |
| 2006 | Honda | Ridgeline (HAH) |

**Mazda:**

| | | |
|---|---|---|
| 2003-2008 | Mazda | Mazda6 (HAH) |
| 2004-2008 | Mazda | RX8 (HAH) |
| 2006-2007 | Mazda | Speed6 (HAH) |

**Mitsubishi:**

| | | |
|---|---|---|
| 2004-2006 | Mitsubishi | Lancer and Lancer Evolution (HAH) |
| 2004 | Mitsubishi | Lancer Sportback (HAH) |
| 2006-2009 | Mitsubishi | Raider (HAH) |

**Nissan:**

| | | |
|---|---|---|
| 2002-2003 | Infiniti | QX4 (HAH) |
| 2002-2004 | Nissan | Pathfinder (HAH) |
| 2002-2004 | Nissan | Sentra (HAH) |

**Subaru:**

| | | |
|---|---|---|
| 2004-2005 | Subaru | Impreza/WRX/STI (HAH) |
| 2005 | Subaru | Legacy, Outback (HAH) |

**Toyota:**

| | | |
|---|---|---|
| 2007 | Lexus | SC430 (HAH) |
| 2003-2007 | Toyota | Corolla (HAH) |
| 2003-2007 | Toyota | Matrix (HAH) |
| 2005-2007 | Toyota | Sequoia (HAH) |
| 2003-2004 | Toyota | Tundra (HAH) |
| 2005-2006 | Toyota | Tundra (non-HAH) |

2

## PRIORITY GROUP 2

**BMW:**

| | | |
|---|---|---|
| 2000-2001 | BMW | 3 Series (HAH) |
| 2002-2006 | BMW | 3 Series (non-HAH) |
| 2002-2003 | BMW | 5 Series (HAH and non-HAH) |
| 2003-2004 | BMW | X5 SUV (HAH and non-HAH) |

**Daimler Vans USA:**

| | | |
|---|---|---|
| 2007-2008 | Freightliner | Sprinter (non-HAH) |

**FCA:**

| | | |
|---|---|---|
| 2006-2008 | Chrysler | 300, 300C, SRT8 (non-HAH) |
| 2009-2010 | Chrysler | 300, 300C, SRT8 (HAH and non-HAH) |
| 2005 | Chrysler | 300, 300C, SRT8 (HAH) |
| 2007-2008 | Dodge | Aspen (HAH and non-HAH) |
| 2008 | Dodge | Challenger (non-HAH) |
| 2009-2010 | Dodge | Challenger (HAH) |
| 2006-2008 | Dodge | Charger (non-HAH) |
| 2009-2010 | Dodge | Charger (HAH and non-HAH) |
| 2005-2011 | Dodge | Dakota (HAH and non-HAH) |
| 2004-2008 | Dodge | Durango (HAH and non-HAH) |
| 2005 | Dodge | Magnum (HAH) |
| 2006-2008 | Dodge | Magnum (non-HAH) |
| 2004-2005 | Dodge | Ram 1500 Pickup (HAH) |
| 2003 | Dodge | Ram 1500, 2500, 3500 Pickup (HAH and non-HAH) |
| 2006-2009 | Dodge | Ram 1500, 2500, 3500 Pickup (HAH and non-HAH) |
| 2006 | Dodge | Ram 2500 (HAH) |
| 2007-2008 | Dodge | Ram 3500 Cab Chassis (HAH and non-HAH) |
| 2008-2010 | Dodge | Ram 4500, 5500 Cab Chassis (HAH and non-HAH) |
| 2007-2008 | Dodge | Sprinter (non-HAH) |

**Ford:**

| | | |
|---|---|---|
| 2005-2006 | Ford | GT (HAH) |
| 2005-2008 | Ford | Mustang (non-HAH) |
| 2009-2014 | Ford | Mustang (HAH) |
| 2006 | Ford | Ranger (HAH) |

**GM:**

| | | |
|---|---|---|
| 2003-2007 | Pontiac | Vibe (non-HAH) |
| 2007-2008 | Chev/GMC | Silverado/Sierra (HAH) |

*Priority Group 2 continued…*

*Priority Group 2 continued from prior page…*

**Honda:**

| | | |
|---|---|---|
| 2003-2006 | Acura | MDX (HAH and non-HAH) |
| 2004-2007 | Honda | Accord (HAH and non-HAH) |
| 2004-2005 | Honda | Civic (non-HAH) |
| 2004-2005 | Honda | Civic Hybrid (non-HAH) |
| 2005-2006 | Honda | CR-V (HAH) |
| 2003-2006 | Honda | CR-V (non-HAH) |
| 2007-2011 | Honda | Element (HAH) |
| 2003-2007 | Honda | Element (non-HAH) |
| 2003-2004 | Honda | Odyssey (HAH) |
| 2002-2004 | Honda | Odyssey (non-HAH) |
| 2006-2008 | Honda | Pilot (HAH) |
| 2004-2007 | Honda | Pilot (non-HAH) |
| 2006 | Honda | Ridgeline (non-HAH) |

**Mazda:**

| | | |
|---|---|---|
| 2003-2008 | Mazda | Mazda6 (non-HAH) |
| 2004-2006 | Mazda | B-Series (HAH) |
| 2004-2005 | Mazda | MPV (HAH) |
| 2004-2008 | Mazda | RX8 (non-HAH) |
| 2006-2007 | Mazda | Speed6 (HAH) |

**Mitsubishi:**

| | | |
|---|---|---|
| 2004-2006 | Mitsubishi | Lancer, Lancer Evolution (non-HAH) |
| 2004 | Mitsubishi | Lancer Sportback (non-HAH) |
| 2006-2009 | Mitsubishi | Raider (non-HAH) |

**Nissan:**

| | | |
|---|---|---|
| 2003 | Infiniti | FX (HAH) |
| 2001 | Infiniti | I30 (HAH) |
| 2002-2003 | Infiniti | I35 (HAH) |
| 2002-2003 | Infiniti | QX4 (non-HAH) |
| 2001-2003 | Nissan | Maxima (HAH) |
| 2002-2004 | Nissan | Pathfinder (HAH and non-HAH) |
| 2004-2006 | Nissan | Sentra (HAH and non-HAH) |

**Subaru:**

| | | |
|---|---|---|
| 2003-2005 | Subaru | Legacy, Outback, Baja (HAH) |

*Priority Group 2 continued…*

*Priority Group 2 continued from prior page...*

**Toyota:**

| | | |
|---|---|---|
| 2007 | Lexus | SC430 (non-HAH) |
| 2003-2007 | Toyota | Corolla (non-HAH) |
| 2003-2007 | Toyota | Matrix (non-HAH) |
| 2004-2005 | Toyota | RAV4 (HAH and non-HAH) |
| 2002-2004 | Toyota | Sequoia (HAH) |
| 2005-2007 | Toyota | Sequoia (non-HAH) |
| 2003-2004 | Toyota | Tundra (HAH) |
| 2005-2006 | Toyota | Tundra (non-HAH) |

## PRIORITY GROUP 3

**BMW:**

| 2000-2001 | BMW | 3 Series (non-HAH) |

**Daimler Vans USA:**

| 2007-2008 | Freightliner | Sprinter (non-HAH) |
| 2007-2008 | Dodge | Sprinter (non-HAH) |

**Ford:**

| 2005-2006 | Ford | GT (non-HAH) |
| 2009-2014 | Ford | Mustang (non-HAH) |
| 2004-2006 | Ford | Ranger (non-HAH) |

**GM:**

| 2007-2008 | Chev/GMC | Silverado/Sierra (non-HAH) |
| 2005 | GM-Saab | 9-2X (non-HAH) |

**Honda:**

| 2005 | Honda | RL (HAH and non-HAH) |
| 2008-2011 | Honda | Element (non-HAH) |
| 2008 | Honda | Pilot (non-HAH) |

**Mazda:**

| 2004-2006 | Mazda | B-Series (non-HAH) |

**Nissan:**

| 2003 | Infiniti | FX (non-HAH) |
| 2004-2005 | Infiniti | FX (HAH and non-HAH) |
| 2001 | Infiniti | I30 (non-HAH) |
| 2002-2004 | Infiniti | I35 (HAH and non-HAH) |
| 2006 | Infiniti | M (HAH and non-HAH) |
| 2001-2003 | Nissan | Maxima (non-HAH) |

**Subaru:**

| 2004-2005 | Subaru | Impreza/WRX/STI (non-HAH) |
| 2003-2004 | Subaru | Legacy, Outback, Baja (non-HAH) |

**Toyota:**

| 2002-2006 | Lexus | SC430 (HAH and non-HAH) |
| 2002-2004 | Toyota | Sequoia (non-HAH) |
| 2003-2004 | Toyota | Tundra (non-HAH) |

# EXHIBIT I

| From: | Hardenburg, Bob |
|---|---|
| To: | Fitzgerald, Kevin; Schubert, Bob; Boucher, John |
| Sent: | 10/19/2006 9:00:37 AM |
| Subject: | RE: DCX Ballistic LAT.ppt |

I have asked KK for all of the DV (if any) and PV Reports.

One root cause of the challenges is the fact that we signed up to meet USCAR gates with an
inflator that is not capable.
PV Reports were cherry picked and S. Schram was schmoozed to accept certain deviations. PK and
DC intimidated the shit out of Yow to "create" these wonderful fictitious PV reports. The
"integral flange" on these parts also contributes to variability.

It is yet another mess-o-shit we will be handed with no real fix possible.
The plant should have been screaming bloody murder long ago.

When we launched these programs in LaGrange we were on the phone with Vic Howser multiple
times each week because he could not meet gates. That's how far back this story goes.

Looking at Carlos' charts, it appears there may be some process and some testing challenges as
well- percentages are all over the place.

Let's talk.

-----Original Message-----
From: Fitzgerald, Kevin
Sent: Wednesday, October 18, 2006 11:04 PM
To: Iruegas, Carlos; Jimenez, Homero
Cc: Phillion, Robert; Hardenburg, Bob; Boucher, John; Martinez, Sergio; Rodriguez, Luis;
Gutierrez, Jorge; Martin, Cory; Matsuda, Toshifumi; Luke, Dal
Subject: Re: DCX Ballistic LAT.ppt

LAT procedures need to be revisited right now.
Carlos: I will be in MON next week. Set up a meeting.
Bob: We need to talk.


-----Original Message-----
From: Iruegas, Carlos <Carlos.Iruegas@takata.com>
To: Jimenez, Homero <Homero.Jimenez@takata.com>
CC: Phillion, Robert <Robert.Phillion@takata.com>; Fitzgerald, Kevin
<Kevin.Fitzgerald@takata.com>; Hardenburg, Bob <Bob.Hardenburg@Takata.com>; Boucher, John
<John.Boucher@Takata.com>; Martinez, Sergio <Sergio.Martinez@takata.com>; Rodriguez, Luis
<Luis.Rodriguez@takata.com>; Gutierrez, Jorge <Jorge.Gutierrez@takata.com>; Martin, Cory
<Cory.Martin@Takata.com>; Matsuda, Toshifumi <Toshifumi.Matsuda@takata.com>
Sent: Wed Oct 18 21:21:21 2006
Subject: FW:DCX Ballistic LAT.ppt

Homero this problem is happening since these two programs started (SOP) More that 2 Years ago
(These two programs started at LGO), see bellow information regarding the extra cost that this
represent only for Ballistic Re-Test and we are not considering additional costs like
(Logistics, Procedures, Over time, Storage, etc...)


But the more important thing is our records, if we go back to our record we will find a lot of
failures and if the customer request records or make an audit we will have a lot of failures
(Some times 38% at week of failures)


Let us know if you need any additional information

**Highly Confidential - Subject to Protective Order**

**TKH-MDL-0003278218**
TKH-MDL-0003278218

Note: This information is from January '06 to October '06

Regards

BALLISTIC LAT FAULTS (JAN-OCT 06)

PRODUCT

CODE

Total (pieces)

total cost (dollars)

PSDI 4 DCX DR

ME

616

8864.24

PSDI 4 DCX LX

ZH

365

5252.35

**Highly Confidential - Subject to Protective Order**

14,116.59

--------------------------------------
The information in this email and attachments hereto may contain legally privileged,
proprietary or confidential information that is intended for a particular recipient. If you
are not the intended recipient(s), or the employee or agent responsible for delivery of this
message to the intended recipient(s), you are hereby notified that any disclosure, copying,
distribution, retention or use of the contents of this e-mail information is prohibited and
may be unlawful. When addressed to Takata customers or vendors, any information contained in
this e-mail is subject to the terms and conditions in the governing contract, if applicable.
If you have received this communication in error, please immediately notify us by return

**Highly Confidential - Subject to Protective Order**

e-mail, permanently delete any material copy of this communication and destroy any paper
copies.

----------------------------------------

_____


From: Jimenez, Homero
Sent: Wednesday, October 18, 2006 10:33 AM
To: Iruegas, Carlos; Phillion, Robert; Fitzgerald, Kevin; Hardenburg, Bob; Boucher, John
Cc: Martinez, Sergio; Rodriguez, Luis; Gutierrez, Jorge; Martin, Cory; Matsuda, Toshifumi;
Subject: RE: DCX Ballistic LAT.ppt


Since when do we have this issue?

How much money does this represent?


_____


From: Iruegas, Carlos
Sent: Wednesday, October 18, 2006 2:32 AM
To: Phillion, Robert; Fitzgerald, Kevin; Hardenburg, Bob; Boucher, John
Cc: Martinez, Sergio; Rodriguez, Luis; Gutierrez, Jorge; Martin, Cory; Matsuda, Toshifumi;
Jimenez, Homero
Subject: FW: DCX Ballistic LAT.ppt


FYI,


We are having a lot of Ballistics failures especially at PSDI-4 Chrysler DR and LX


We really need your support on this from the design side we are Re Testing a lot of times.


Note: PSPI Chrysler MK is about same failure rate


Regards


Highly Confidential - Subject to Protective Order   **TKH-MDL-0003278221**

TKH-MDL-0003278218

# EXHIBIT J

11/19/2020
Stram, Steve

# BRETT A. WILLIAMS, Plaintiff, No. 18-CA-001823NC vs. FCA US LLC f/k/a Chrysler Group Inc., Defendant

IN THE CIRCUIT OF THE TWELFTH JUDICIAL CIRCUIT

IN AND FOR SARASOTA COUNTY, FLORIDA


BRETT A. WILLIAMS,

      Plaintiff,              No. 18-CA-001823NC

vs.

FCA US LLC f/k/a Chrysler Group Inc.,

      Defendant,

_____/

PAGE 1 TO 179

HIGHLY CONFIDENTIAL


The Deposition of STEVE STRAM,

Taken at 737 Woodlawn Ave,

Jackson, Michigan,

Commencing at 9:38 a.m.,

Thursday, November 19, 2020,

Before Melinda R. Womack, CSR3611.

1     answered.

2     A.   My answer would be no.

3     Q.   (By Mr. Burrow, continuing)  Okay.  So is it fair to

4          say that you are not a licensed professional

5          engineer, correct?

6     A.   Correct.

7              MR. PORPORA:  Objection to the form.

8     Q.   (By Mr. Burrow, continuing)  And you do not have a

9          degree from an undergraduate college, correct?

10    A.   Correct.

11    Q.   Are you familiar with the word schmooze?

12    A.   Not exactly.

13    Q.   Sure.  Showing you a definition that I pulled up

14         regarding the word schmooze.  Verb form is to talk

15         with someone in a lively and friendly manner

16         typically in order to impress or manipulate them.

17         The noun version is a lively and friendly

18         conversation typically one conducted in order to

19         impress or manipulate others.  Does that refresh your

20         memory as to what the word schmooze means?

21             MR. PORPORA:  Objection to the form.

22    A.   I would equate it to a car salesman, but I guess I

23         understand it now.

24    Q.   (By Mr. Burrow, continuing)  Understood.  Would you

25         agree that a design engineer or representative of

# EXHIBIT K

05/14/2021
Marriott, Brandon

# TAKATA AIRBAG PRODUCTS LIABILITY LITIGATION

UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF FLORIDA


CASE NO.:  MDL No. 2599

Master File No. 15-2599-MD-MORENO


IN RE:

TAKATA AIRBAG PRODUCTS

LIABILITY LITIGATION

_____/




VIDEOTAPED DEPOSITION OF

BRANDON MARRIOTT




Friday, May 14, 2021

9:37 a.m. - 1:23 p.m.

Remote Proceedings




Stenographically Reported By:

Gina Rodriguez, RPR, CRR, CCP

05/14/2021    09-50002-mg    Doc 8560-3    Filed 09/30/21    Entered 09/30/21 21:25:21    Declaration
of William E. McDonald, Esq.    Pg 92 of 96
Marriott, Brandon

Page 19

1    A.  Yes.

2    Q.  Okay.  And you have patents for the

3    development of airbags; is that right?

4    A.  Airbag modules, correct.

5    Q.  Okay.  Did you develop those patents when

6    you were working for Chrysler or Takata or both?

7    A.  I have patents on airbag technology from my

8    time at Chrysler and my time at Takata.

9    Q.  So do you consider yourself an airbag

10    expert?

11    A.  I'm a very experienced airbag engineer,

12    yes.  Expert's a broad term.

13    Q.  When you were working at Takata, did you

14    withhold any information from FCA regarding the

15    airbags being equipped in FCA vehicles?

16    A.  Absolutely not.

17    Q.  During your time at Takata, are you aware

18    of anyone else who withheld information from FCA

19    regarding the airbags in its vehicles?

20    A.  No, I am not.

21    Q.  Okay.  When you were working for Takata,

22    did you say anything that misled FCA regarding the

23    airbags being equipped in its vehicles?

24    A.  Absolutely not.

25    MR. PORPORA:  Objection to the form of the

05/14/2021
09-50002-mg    Doc 8560-3    Filed 09/30/21    Entered 09/30/21 21:25:21    Declaration
of William E. McDonald    Esq.    Pg 93 of 96
Marriott, Brandon

Page 20

1    last question.

2    BY MR. WEINSHALL:

3        Q.   Okay.

4              When you were working for Takata, are you

5    aware of anyone else who misled FCA regarding the

6    airbags being supplied for its vehicles?

7              MR. PORPORA:  Object to the form.

8        A.   No, I was not aware.

9    BY MR. WEINSHALL:

10       Q.   Have you become aware since then?

11       A.   Yes.

12             MR. PORPORA:  Objection to the form.

13   BY MR. WEINSHALL:

14       Q.   Okay.  What -- what are you aware of?

15       A.   I'm aware that Takata was found guilty of

16   manipulating data and not presenting full validation

17   profiles to their customers for certain inflators.

18       Q.   But are you aware of any of that conduct

19   being engaged in -- towards FCA in particular?

20       A.   No, I'm not aware of any particulars.

21       Q.   Okay.  So you just -- and what is your --

22   what is the source of your knowledge of this -- of

23   Takata's manipulation of data?

24       A.   Actually, most of what I've learned has

25   come from the training programs that Joyson initiated

# EXHIBIT L

FCA US LLC Chronology
Takata PSDI-4 Driver Airbag Inflators
Original Submission May 26, 2015
Updated June 10, 2015

- On June 11, 2014, Takata Holdings Inc. ("Takata") sent a letter to the National Highway Traffic Safety Administration ("NHTSA") supporting a regional field action to address potential driver and passenger airbag inflator issues. The root cause had not been identified.
- Takata defined a suspect "Beta" population of driver airbag inflators as being built between January 1, 2004 and June 30, 2007.
- Takata's letter identified four areas (Florida, Hawaii, Puerto Rico and U.S. Virgin Islands) where exposure to exceptionally high levels of absolute humidity, in conjunction with potential processing issues during certain manufacturing time periods, may influence the aging stability of the airbag inflators.
- On June 24, 2014, the FCA US LLC ("FCA US") Vehicle Regulations Committee ("VRC") authorized a Regional Field Action (P40) on certain 2003 – 2007 Ram 1500 ("DR"), 2500 ("DH"), 3500 ("D1"), and 3500 Cab Chassis ("DC") as well as Dodge Durango ("HB"), Aspen ("HG"), Charger ("LX"), and Dakota ("ND") vehicles produced in the same period, to replace the driver and/or passenger airbag inflators supplied by Takata, in vehicles sold to or currently registered in Florida, Hawaii, Puerto Rico and U.S. Virgin Islands. No defect determination was made.
- In a November 26, 2014 Recall Request Letter, NHTSA demanded Takata determine a defect for all affected driver side airbag inflators nationwide.
- In response to the Recall Request Letter from NHTSA, on December 2, 2014 Takata refused to determine a nationwide safety defect in all vehicles equipped with the subject driver side airbag inflators.
- As of December 18, 2014, Takata had not submitted a 573 Defect Information Report for the driver airbag inflator families.
- Certain FCA US vehicles were built with the Beta population Takata PSDI-4 driver airbag inflators. Among this population, there have been four Takata PSDI-4 driver airbag inflator ruptures in the field. The locations of the four failures were Florida (two), California (one), and North Carolina (one).
- One of the four field failures occurred in September of 2013, in a 2006 FCA US vehicle where a PSDI-4 driver airbag inflator ruptured and caused non-life threatening injuries. The remaining three PSDI-4 field incidents Takata has shared with FCA US occurred in other OEM vehicles.
- On December 17, 2014, FCA US decided to expand the Regional Field Action conducted on Takata PSDI-4 driver airbag inflators nationwide.
- On December 18, 2014, the VRC authorized the execution of a voluntary global safety recall (R81) to replace the front driver airbag inflator in the 2004-2007 affected vehicle families.
- On May 18, 2015, Takata submitted a 573 Safety Defect Information Report to NHTSA (15E-040), "Takata has determined that a defect related to motor vehicle safety may arise in some of the subject inflators."
- As of Takata's May 15, 2015 Beta Ballistics Report, Takata has tested 551 PSDI-4 front passenger airbag inflators removed from FCA US vehicles predominantly in Florida (420 from the 4-state region, 83 from the 7-state "plus" region, 48 from all other states). FCA US is aware of one (Florida) airbag inflator failure during such testing.
- As of May 21, 2015, FCA US is aware of one confirmed customer complaint involving one injury, 0 accidents, and 0 fatalities involving a PSDI-4 driver airbag inflator rupture in any FCA US vehicle.
- On May 21, 2015, FCA US authorized the execution of a voluntary safety recall to replace the Takata PSDI-4 front driver airbag inflator in the 2004-2011 affected vehicle families. This new recall will replace the previous Takata PSDI-4 front driver airbag recalls P40 and P81. Vehicles previously repaired with Takata PSDI-4 replacement front driver airbags inflators under the P40 and P81 recalls will be included in this new recall.

- On June 9, 2015, Daimler Trucks North America LLC ("Daimler") submitted a 573 Safety Defect Information Report to NHTSA, in response to the May 18, 2015 Takata submitted 573 Safety Defect Information Report to NHTSA where "Takata has determined that a defect related to motor vehicle safety may arise in some of the subject inflators."
- On June 10, 2015, FCA US has removed any reference to the 2008-2009 Dodge Ram (DA) 4500/5500 Cab Chassis vehicles from 15V313, in response to the June 9, 2015 573 submission by Daimler.
- Additionally, FCA US has not revised the number of potentially involved vehicles (4,066,732) that were reported at the time of the original submission of 15V313, because at the time the 2008-2009 Dodge Ram (DA) 4500/5500 Cab Chassis vehicle volumes from Daimler were unknown.