**Hearing Date: December 2, 2021 at 10:00 a.m. Eastern Time**
**Objection Deadline: November 4, 2021 at 4:00 p.m. Eastern Time**

**GIBBONS P.C.**
Robert K. Malone, Esq.
Brett S. Theisen, Esq.
One Pennsylvania Plaza, 37th Fl.
New York, New York 10119
Telephone: (212) 613-2000
Facsimile: (212) 290-2018
E-mail: rmalone@gibbonslaw.com
        btheisen@gibbonslaw.com

*Counsel for FCA US LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re: | Chapter 11 |
|---|---|
| Old Carco LLC, *et al*. | Case No. 09-50002 (MG) |
| Debtors. | Jointly Administered |

**FCA US LLC's REPLY IN FURTHER SUPPORT OF**
**MOTION TO ENFORCE THE COURT'S SALE ORDER [DOCKET NO. 3232]**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 4

    I.    *Burton* Controls the Issues *Sub Judice* and Bars the MDL Claims. ....................... 4

    II.    The Proximate Cause of Plaintiffs' Alleged Damages—Pre-Closing Defects—is Relevant and Determinative to the Court's "Gatekeeper" Role, and Supports Enjoining the MDL Claims. ............................ 6

    III.    Generalized Pleading as to Old Chrysler Knowledge is Not Enough to Support "Independent" Post-Closing Claims Against FCA US. ................................................................................................................ 7

    IV.    Enforcing the Sale Order Does Not Violate Due Process. ...................................... 8

    V.    FCA US is Not Precluded from Enforcing the Sale Order in this Court, and Such Relief Does Not Require an Adversary Proceeding. ................................................................................................................ 9

CONCLUSION ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ball v. A.O. Smith Corp.*,
  451 F.3d 66 (2d Cir. 2006)..................................................................................................10

*Bradley v. School Board of Richmond*,
  416 U.S. 696, 40 L. Ed. 2d 476, 94 S. Ct. 2006 (1974).........................................................3

*Burton v. Chrysler Group LLC*,
  492 B.R. 392 (Bankr. S.D.N.Y. 2013)........................................................................ passim

*In re Chrysler LLC*,
  576 F.3d 108 (2d Cir. 2009)....................................................................................................4

*In re Chrysler LLC*,
  592 F.3d 370 (2d Cir. 2010)....................................................................................................4

*Dearden v. FCA US LLC (In re Old Carco LLC)*,
  582 B.R. 838 (Bankr. S.D.N.Y. 2018).....................................................................................6

*Drexel Burnham Lambert*,
  151 B.R. 674 (Bankr. S.D.N.Y. 1993))...................................................................................9

*Elliott v. Gen. Motors LLC*,
  829 F.3d 135 (2d Cir. 2016).........................................................................................3, 4, 9

*Greene v. United States*,
  376 U.S. 149, 11 L. Ed. 2d 576, 84 S. Ct. 615 (1964)............................................................3

In *Motors Liquidation Co.*,
  613 B.R. 570 (Bankr. S.D.N.Y. 2020)................................................................................7, 8

*Indiana State Police Pension Trust v. Chrysler LLC*,
  130 S.Ct. 1015 (2009)...........................................................................................................4

*Leber-Krebs, Inc. v. Capitol Records*,
  779 F.2d 895 (2d Cir. 1985)...................................................................................................3

*Motors Liquidation Co.*,
  585 B.R. 708 (Bankr. S.D.N.Y. 2018)................................................................................8, 9

*Tulacro v. Chrysler Group LLC (In re Old Carco LLC)*,
  Adv. No. 11-09401 (AJG), Dkt. 18, slip. op. (Bankr. S.D.N.Y. Oct. 28, 2011).........................1

**Rules**

Bankruptcy Rule 7001 .......................................................................................................10

FCA US LLC ("FCA US") submits this Reply in further support of its Motion [Dkt. No. 8560][1] ("Motion") for entry of an order enforcing this Court's *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief [Docket. No. 3232]* ("Sale Order") and in response to the Opposition [Dkt. 8568] ("Opp'n") to the Motion filed by the Plaintiffs' Steering Committee in In re: Takata Airbag Product Liability Litigation MDL ("Plaintiffs").

## PRELIMINARY STATEMENT

1. Bankruptcy courts' "gatekeeper" role—determining claims that can proceed despite a "free and clear" sale of assets under Section 363—is of paramount importance to chapter 11 cases. The final terms of sale orders, particularly in large cases where a debtor's business is sold as a going concern, are usually heavily negotiated among the parties in interest. The Sale Order[2] here is no different. Myriad interested parties—including counsel for Plaintiffs, among a very active plaintiffs' bar that filed numerous objections to the Sale Order on behalf of potential warranty claimants, lemon-law claimants, and other consumer claimants (Motion at ¶ 54, n.30)—negotiated the very language now at issue. That is, which liabilities were to be assumed by FCA US, and which were not. In fact, those objectors were successful: the Sale Order was amended (multiple times) to provide for additional Assumed Liabilities, namely (i) certain claims based upon motor vehicle accidents that occur after the Closing Date, and (ii) certain "Lemon Law" claims, as that term is defined in paragraph 19 of the Sale Order. *See, e.g., Tulacro v. Chrysler*

---

[1] Unless otherwise specified, "Dkt." refers to the docket for the above-captioned chapter 11 case, Case No. 09-5002 (MG) in the United States Bankruptcy Court for the Southern District of New York.
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

*Group LLC (In re Old Carco LLC)*, Adv. No. 11-09401 (AJG), Dkt. 18 at 5-7, slip. op. (Bankr. S.D.N.Y. Oct. 28, 2011) (Gonzalez, J.). Neither exception applies to the MDL Claims, however, and the objectors failed to win a carve out for economic loss claims.

2.  Purely economic loss claims related to vehicles made and sold by Old Chrysler prior to Closing are not Assumed Liabilities under the Sale Order. Those claims are predicated on defects that originated and "relate[] to the production of vehicles prior to the Closing Date" (Sale Order at ¶ 35); they existed at the time of the Sale and belonged to Plaintiffs' predecessors—the prior vehicle owners. Plaintiffs can take no greater rights related to those assets than their predecessors enjoyed, and as the record of these proceedings shows, such rights were adequately represented during the sale process. *See e.g., Burton v. Chrysler Group LLC*, 492 B.R. 392, 402-03, 405 (Bankr. S.D.N.Y. 2013). Despite their best efforts, the plaintiffs' bar did not negotiate the survival of economic loss claims.

3.  Thus, it is not FCA US looking for the proverbial "second bite," but rather Plaintiffs—who lost the right to bring these claims under the Sale Order, and who also had the ability to pursue Takata (the culpable party) for their alleged losses. Plaintiffs and their counsel may be unhappy with the recovery (or lack thereof) extracted from Takata due to its own chapter 11 case, but that does not give them the right to now recover from FCA US. FCA US bargained and paid for the narrow limits on Assumed Liabilities under the Sale Order, and it has the absolute right to ask this Court to enforce those terms.

4.  There is good reason to enforce the Sale Order now: the eventual class has not been certified, and Plaintiffs effectively concede it may include purchasers of cars prior to closing. (Opp'n at ¶ 20 n.38). Further, Plaintiffs also concede—albeit calling it a "discrepancy"—that their

2

operative Complaints assert pre-Closing claims for cars purchased from June 1, 2009 to June 10, 2009. This Court is clearly the proper forum to delineate the scope of the Sale Order's injunction.

5.     Plaintiffs focus their opposition almost entirely on the General Motors ("GM") cases; but, this is not GM. To start, the Takata airbag defect—unlike the GM ignition switch defect—was the fault of a third party parts supplier, not Old Chrysler itself. Thus, issues of knowledge and concealment that were front and center to the due process concerns in GM are not applicable here. Further, this case is about the Old Chrysler Sale Order, not the GM Sale Order. As noted in *Elliott v. Gen. Motors LLC*, 829 F.3d 135, 155 (2d Cir. 2016), courts address the language in sale orders on a "case-by-case basis." Thus, *Elliott* does not control which claims are barred by the Old Chrysler Sale Order presently before the Court.

6.     Rather, this Court has in front of it *Burton*, which is law of the case, finding that economic loss claims against FCA US predicated on defects in Old Chrysler cars are barred—even for plaintiffs who purchased those cars after Closing.[3] As explained below, Plaintiffs twist Judge Bernstein's use of the phrase "post-closing purchasers" in *Burton* to suit their argument, and in so doing ignore the relevant holding, which unmistakably bars their claims against FCA US.

7.     Following *Burton* will not violate the Plaintiffs' due process rights. *Elliott* is inapposite here, because in that case Old GM knew about (and was culpable for, as the parts manufacturer) the ignition switch defect, but failed to provide adequate notice of the proposed

---

[3] *Burton*, 492 B.R. at 405. Should the Court disagree and find *Elliott* controls Plaintiffs' rights as purchasers of used Chrysler-branded vehicles after the Closing, FCA US respectfully submits that the Court should still follow *Burton*, because to do otherwise would work a manifest injustice. Even in cases of an intervening change in law, the law of the case doctrine permits courts to ignore a change in the law during the course of a litigation, when special circumstances indicate that applying an intervening change in the law will result in manifest injustice. *Leber-Krebs, Inc. v. Capitol Records*, 779 F.2d 895, 898-99 (2d Cir. 1985) (citing *Greene v. United States*, 376 U.S. 149, 158-64, 11 L. Ed. 2d 576, 84 S. Ct. 615 (1964); *Bradley v. School Board of Richmond*, 416 U.S. 696, 711, 40 L. Ed. 2d 476, 94 S. Ct. 2006 (1974)). Here, overruling *Burton*'s interpretation of the Sale Order would give Plaintiffs' an unfair windfall over similarly-situated creditors, and deny FCA US the protection it has enjoyed for over a decade since the Sale Order was entered.

3

Section 363 sale to potential claimants—a due process violation, according to the Second Circuit. *Elliott*, 829 F.3d at 166. Here, however, Old Chrysler did not manufacture the defective airbag inflators, and was itself a victim of Takata's concealment. Old Chrysler did not know of the defect, much less the identity of potential claimants. Thus, Plaintiffs' MDL Claims are akin to the Non-Ignition Switch Plaintiffs' claims in GM, for which the Second Circuit found no due process violation on the record before it. *Id.* Where claims and claimants are unknown at the time of the sale, publication notice—which Old Chrysler provided here—suffices.

8.  Finally, as noted above, this is not the first time Plaintiffs' counsel has been before the Court on the issue of Assumed Liabilities under the Sale Order.[4] Plaintiffs' counsel—among many other members of the plaintiffs' bar—failed to negotiate a carve out in the Sale Order for the economic loss claims they now pursue. Although counsel represented a different client at the time, the underlying interest—expanding the universe of Assumed Liabilities—was identical. Economic loss claims related to Old Chrysler vehicles were not assumed. The Sale Order is a final order for which all appellate remedies have been exhausted. *See Indiana State Police Pension Trust v. Chrysler LLC,* 130 S.Ct. 1015 (2009); *In re Chrysler LLC,* 592 F.3d 370 (2d Cir. 2010); *In re Chrysler LLC*, 576 F.3d 108 (2d Cir. 2009). Plaintiffs should be estopped from relitigating and expanding the terms of the Sale Order a decade later.

## ARGUMENT

### I. *Burton* Controls the Issues *Sub Judice* and Bars the MDL Claims.

9.  Plaintiffs make much of a single line in *Burton* referring to "post-closing purchasers" that they say justifies their continued violation of the Sale Order (Opp'n at ¶¶ 5, 20,

---

[4] Counsel represented Patricia Pascale, a member of the Unsecured Creditors Committee [Dkts. 2117 & 2182]; they objected to the Sale [Dkt. 1175] concerning, *inter alia*, the Assumed Liabilities; appealed entry of the Sale Order [Dkt. 3322], and objected to MTA Amendment No. 4 [Dkt. 5887], again related to the Assumed Liabilities.

4

22, n.42, 44, n.85). Plaintiffs are wrong. The phrase "post-closing purchasers" used by Judge Bernstein in *Burton* does not mean what the Plaintiffs say it means.

10. Judge Bernstein used the phrase to refer to a person who purchased a vehicle made or sold by FCA US (a so-called "Category 1" car, Opp'n at ¶ 4), *Burton*, 492 B.R. at 401, 404. Not, as Plaintiffs suggest, a person who purchased any Chrysler-branded vehicle after the Closing. FCA US's Motion does not seek relief with respect to Category 1 cars; it does, however, seek to enforce the same rights against Plaintiffs as to so-called "Category 2" cars (Opp'n at ¶ 4)—those made or sold by Old Chrysler—that Judge Bernstein upheld in *Burton*.

11. A review of *Burton's* Second Amended Complaint proves that among the plaintiffs whose economic loss claims were barred, at least some of them purchased cars after the Closing. *Suppl. Decl. of Robert K. Malone* ("Suppl. Malone Decl."), filed herewith, at Ex. E (Adv. Proc. No. 13-01109, Dkt. 15, Ex. A at ¶¶ 27-28). Yet, as noted in *Burton*, "none of the Plaintiffs purchased a vehicle that was ***manufactured*** after the closing, and they cannot, therefore, assert the rights of ***post-closing purchasers***." *Burton*, 492 B.R. at 401 (emphases added).[5] It is clear that "post-closing purchasers," as used in *Burton*, does not refer to the category of people who (like Plaintiffs) bought an Old Chrysler car after the closing. Those claims were barred by *Burton*.

12. The problem with Plaintiffs' economic loss claims, as explained by Judge Bernstein, is that they derive from defects that existed in the cars at the time of manufacture, and thus fall squarely within the claims barred by the Sale Order: "None of the statements attributed to New Chrysler state or imply that it assumed liability to pay consequential or other damages based upon pre-existing defects in vehicles manufactured and sold by Old Carco." *Burton*, 492

---

[5] *See also Burton,* 492 B.R. at 404: "Nor do I decide whether the post-closing purchasers have alleged legally sufficient breach of warranty claims….the Sale Order does not affect any claims held by owners who purchased cars ***manufactured or sold by New Chrysler*** after the closing." (emphasis added).

5

B.R. at 404. Thus, under the Sale Order it makes no difference *when* Plaintiffs bought their vehicles; the relevant question is *what vehicles* were bought. If it is a Category 2 vehicle—one manufactured, sold, distributed, or leased by Old Chrysler—then Plaintiffs' claims are based on defects that existed at the time of the closing, were not assumed under the Sale Order, and cannot now be revived against FCA US. The same result must obtain here.

> II. **The Proximate Cause of Plaintiffs' Alleged Damages—Pre-Closing Defects— is Relevant and Determinative to the Court's "Gatekeeper" Role, and Supports Enjoining the MDL Claims.**

13. Plaintiffs misleadingly assert that *Dearden* supports their argument that issues of proximate cause have no relevance to "gatekeeping" questions (Opp'n at ¶ 43) and must be left for the factfinder. However, *Dearden* dealt with claims arising from a fatal post-Closing motor vehicle accident—not economic loss claims, *Dearden v. FCA US LLC (In re Old Carco LLC)*, 582 B.R. 838, 840 (Bankr. S.D.N.Y. 2018)—making the proximate cause issues inapposite. Moreover, though, in the preceding paragraph to the language Plaintiffs cite, Judge Bernstein expressly stated that (1) proximate cause is not only relevant, but can be outcome determinative to the gatekeeping role, and (2) that **in *Burton* it was determinative as to economic loss claims**:

> Although the contours of the gate I keep are relatively easy to articulate, the ultimate question of New Chrysler's liability for punitive damages under Count Three comes down to a question of proximate cause. *Cf. Burton*, 492 B.R. at 392 (concluding that plaintiff's post-Closing failure to warn claim was barred by the Sale Order because the breach of any post-Closing duty to warn did not proximately cause plaintiff's economic injury).

*Dearden*, 582 B.R. at 845. Because Plaintiffs' alleged damages result from the alleged defect itself, and the defects are on Category 2 cars, the Sale Order is an absolute bar. Plaintiffs cannot distinguish their claims from *Burton* by arguing that they "purchased their vehicles after the Closing." (Opp'n at ¶ 44); *Burton* also enjoined claims based on post-Closing purchases if the car was made and sold by Old Chrysler.

6

### III. Generalized Pleading as to Old Chrysler Knowledge is Not Enough to Support "Independent" Post-Closing Claims Against FCA US.

14. Plaintiffs agree that "allegations based on generalized knowledge of [Old Chrysler and FCA US] are not sufficient" to pass through the gate. (Opp'n at ¶ 26). In *Motors Liquidation Co.,* 613 B.R. 570, 575, n.3 (Bankr. S.D.N.Y. 2020), the Court reiterated that independent claims against New GM based on allegedly imputed knowledge of Old GM's pre-Sale conduct or knowledge cannot stand; such claims must either be re-pled or barred. Plaintiffs summarily dismiss FCA US's argument that the Complaints' allegations cannot support independent claims because the allegations are not based <u>solely</u> on FCA US's wrongful conduct, but actually rest on the allegation that everything Old Chrysler did and knew prior to closing ought to be imputed to FCA US. (Motion at ¶¶ 27-30). Plaintiffs deride FCA US's argument as "conclusory" (Opp'n at ¶ 23) but, ironically, do not attempt to explain why FCA US is wrong as to the overwhelming amount of generalized pleading and "inherited" knowledge discussed in the Motion. Plaintiffs do not want to focus on the details for good reason: they underscore just how hollow the allegedly "independent" claims against FCA US are. Without Old Chrysler's imputed knowledge, there is simply no good faith claim against FCA US. If anything, the Opposition only serves to highlight just how reliant the Complaints are on Old Chrysler knowledge and conduct. (Opp'n at ¶ 34).

15. Disconcertingly, the Opposition actually attempts to *conceal* the dependency of the allegations on Old Chrysler. For example, paragraph 36 says "[s]pecifically" (as if directly quoting from the Complaints) that "New Chrysler engineers continued to approve [inflator use] after the Closing." (Opp'n at ¶ 36). However, the actual Consumer Complaint reads as follows:

> Despite being presented with deviation requests and test results from Takata showing that the ammonium nitrate inflators did not meet USCAR specifications, ***New Chrysler engineers*** continued to

7

approve the use of ammonium nitrate inflators. ***This occurred as early as 2004*** and continued after the 363 sale.[6]

But, FCA US did not exist until June 2009. This is not "independent" pleading, but rather impermissible lumping of Old Chrysler and FCA US that the Court determined was improper in GM. *Motors Liquidation Co.*, 585 B.R. 708, 726-27 (Bankr. S.D.N.Y. 2018). The Complaints fail to make a single allegation that any individual FCA US employees obtained knowledge of the Takata defect; rather, everything is premised on this conclusory statement: "When New Chrysler acquired Old Chrysler's books, records, and personnel, it acquired the knowledge of the Inflator Defect that those books, records, and personnel held." (Fletcher Decl., Ex. F, ¶ 115). As Judge Bernstein found, that is simply "successor liability…dressed up to look like something else, and is prohibited by the [Sale Order]." *Burton*, 492 B.R. at 405. It is an "impermissible [basis] for an Independent Claim" against FCA US. *Motors Liquidation,* 613 B.R. at 582.

## IV. Enforcing the Sale Order Does Not Violate Due Process.

16. Unlike Old GM, Old Chrysler did not have knowledge of the airbag defect at issue prior to the Sale because it was a victim of Takata's fraudulent concealment. Even if the economic loss claims existed at the time in the hands of Plaintiffs' predecessors (the prior owners of Category 2 cars), the identity of those creditors was unknown to Old Chrysler. Due process only requires that "unknown" creditors be afforded constructive notice. *Motors Liquidation*, 585 B.R. at 724. Old Chrysler provided publication notice of the sale. [Dkt. 1255, 3232 (¶ E)].

---

[6] *Decl. of Kaitlyn C. Fletcher* [Dkt. 8569] ("Fletcher Decl."), Ex. F, ¶ 118 (p.36)) (emphasis added). The Opposition's laundry list of disjointed allegations fails to show even culpable *Old Chrysler* knowledge, much less its imputation to FCA US. For instance, though inapposite, it is true that Old Chrysler and FCA US both granted substantially the same "slope test" deviation to certain Takata inflators. *See* Opp'n at ¶ 35 (citing Cons. Compl. ¶ 120). Yet FCA US granted this deviation to Takata inflators *that were not defective and have not been recalled* (the SDI-X inflators, in April, 2013, as the Opposition correctly states), *see id.* FCA US also entertained the same deviation for non-defective inflators from other suppliers. *See Decl. of Andrew M. Mast*, filed herewith, Deviation for TRW Inflator, Ex M. Therefore, rather than indicating that either Old Chrysler or FCA US had "knowledge" of the defect, this shows the deviations *had nothing to do with the defect*.

8

17. Plaintiffs' reliance on *Elliott* is misplaced. "It is well-settled that to be a 'known' creditor, a claimant must be known or reasonable ascertainable from the debtor's own books and records." *Motors Liquidation*, 585 B.R. at 728 (citation omitted). Here, in stark contrast to *Elliott*, "where Old GM both knew about the defect and could have ascertained the identities of the plaintiffs by determining the purchasers of GM cars," *id.*, Old Chrysler could not have discovered the airbag inflator defect by looking at its own books and records because it was not the manufacturer and Takata took active measures to conceal the defect.[7] In its criminal plea agreement, Takata admitted that "had the victim OEMs known the true and accurate test information and data relating to [Takata airbag inflators], [they] would not have been installed in vehicles as they were."[8] At the time of the Sale, Old Chrysler "was merely required to conduct a search 'reasonable under the circumstances' of its own books and files for known creditors, and was not required to be 'omnipotent or clairvoyant'" and conduct investigations into every single component part in its vehicles. *Motors Liquidation*, 585 B.R. at 729 (citing *Drexel Burnham Lambert*, 151 B.R. 674, 680-81 (Bankr. S.D.N.Y. 1993)). Here, Takata's concealment precluded Old Chrysler from discovering the defect, in addition to the complexity of the defect itself.[9]

### V. FCA US is Not Precluded from Enforcing the Sale Order in this Court, and Such Relief Does Not Require an Adversary Proceeding.

18. The MDL Court's ruling on FCA US's motions to dismiss certain claims in the MDL does not stop this Court from interpreting the provisions of its own Sale Order. (Opp'n at ¶ 17). Collateral estoppel is not applicable here because the MDL Court's order was not a final

---

[7] *See* Malone Decl., Ex. B (criminal plea) at Section 1(E) and Attachment B, ¶¶ 7, 10, ,13-18, 19-31, and 32-33.
[8] *Id.*, Attachment B at ¶ 33.
[9] The defect and its root causes are complex; it typically does not manifest until years after vehicle manufacture and only then under certain sustained environmental conditions. *See* McDonald Decl., [Dkt. 8560-3], NHTSA Coordinated Remedy Order, Ex. H at ¶6. This is why the first Takata inflator rupture in a Chrysler vehicle occurred in 2013 (in a 2006 Dodge Charger) – more than four years after the Sale – and why Old Chrysler was not aware of the defect. *See* McDonald Decl., [Dkt. 8560-3], Chronology, Ex. L.

9

judgment on the merits of the Sale Order's injunctive provisions, nor was it fully litigated. *See Ball v. A.O. Smith Corp.,* 451 F.3d 66, 69 (2d Cir. 2006). Even the MDL Court recognized it was not deciding the issue of whether any of Plaintiffs' claims were barred by the Sale Order. (Motion at ¶ 4, citing Consumer MTD Order at 41-43). The claims in the MDL Court against FCA US—and numerous other automakers—go far beyond the economic loss claims FCA US asserts are barred by the Sale Order. As such, the issue of the Sale Order was barely addressed in briefing[10] or by the MDL Court in its decision. (Consumer MTD Order at 41-43). Further, no adversary proceeding is required because FCA US is not seeking to expand the Sale Order, only to have it interpreted and to enforce the existing terms to ensure FCA US obtains the same protection against Plaintiffs' claims that Judge Bernstein afforded it in *Burton*. This Court previously considered the same relief on motion. [Dkt. 8535]. To be clear, FCA US is not seeking injunctive relief or any other type of relief specified in Bankruptcy Rule 7001 that requires the initiation of an adversary proceeding.

## CONCLUSION

For the foregoing reasons and those stated in the Motion, FCA US respectfully requests that the Court enforce the Sale Order as to Plaintiffs' MDL Claims and enter the Proposed Order.

Dated: November 19, 2021
New York, New York

Respectfully submitted,

By: */s/ Robert K. Malone*
Robert K. Malone, Esq.
Brett S. Theisen, Esq.
**GIBBONS P.C.**
One Pennsylvania Plaza, 37th Fl.
New York, New York 10119
Telephone: (212) 613-2000
Facsimile: (212) 290-2018
E-mail: rmalone@gibbonslaw.com
btheisen@gibbonslaw.com

*Counsel for FCA US LLC*

---

[10] *See* Fletcher Decl., Ex. B, FCA US MTD Brief. A single page out of fifty addressed bankruptcy sale order issues.

10