UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

1

2  In re:                                            Case No. 09-50002-mg
   OLD CARCO LLC AND RJM I, LLC,                     New York, New York
3  AS LIQUIDATION TRUSTEE FOR OLD CARCO L,           December 2, 2021
                                      Debtors.       9:57 a.m. - 11:11 a.m.
4

5          09-50002-MG, OLD CARCO LLC AND RJM I, LLC,
        AS LIQUIDATION TRUSTEE FOR OLD CARCO L, CHAPTER 11

6      HEARING USING ZOOM FOR GOVERNMENT RE MOTION TO COMPEL
       ENFORCEMENT OF THE COURT'S SALE ORDER (DOCKET NO. 3232)
7        FILED BY ROBERT K. MALONE ON BEHALF OF FCA US LLC
      (Docs 8560-8563, 8566, 8567, 8218, 8568-8570, 8572, 8574)
8

                      - A P P E A R A N C E S -
9

   For FCA US LLC:              ROBERT K. MALONE, ESQ.
10                              BRETT S. THEISEN, ESQ. (NJ Ofc)
                                Gibbons P.C.
11                              One Pennsylvania Plaza, 37th Floor
                                New York, New York 10119-3701
12                              (212) 613-2000; (212) 290-2018 fax

13 For FCA in MDL action:       JOHN BERG, ESQ.
                                Clark Hill PLC
14                              500 Woodward Avenue, #3500
                                Detroit, Michigan 48226
15                              (313) 965-8300

   For MDL Plaintiffs:          PETER PRIETO, ESQ.
16                              MATTHEW P WEINSHALL, ESQ.
                                Podhurst Orseck, P.A.
17                              One S.E. 3rd Avenue, Suite 2300
                                Miami, Florida 33131
18                              (305) 358-2800

19 For MDL Plaintiffs:          PETER D'APICE, ESQ.
                                SANDER L. ESSERMAN, ESQ.
20                              KAITLYN FLETCHER, ESQ.
                                Stutzman Bromberg Esserman Plifka
21                              2323 Bryan Street, Suite 2200
                                Dallas, Texas 75201
22                              (214) 969-4900

23 Transcriber:                 AA EXPRESS TRANSCRIPTS
                                195 Willoughby Avenue, Suite 1514
24                              Brooklyn, New York 11205
                                (888) 456-9716
25                              aaexpress@court-transcripts.net

         (Proceedings recorded by electronic sound recording)

Old Carco LLC - 12/2/21                                    2

1          THE COURT:  Good morning, everybody.  Mr. Malone, are

2    you going to be arguing in support of the motion?

3          MR. MALONE:  Your Honor, I will be arguing the motion.

4    Right now, if you can hear me, I can't see anybody or see

5    anything on my screen.  So, they're still working on that issue

6    but yes.

7          THE COURT:  All right.  Why don't you begin?

8          MR. MALONE:  Your Honor, as it may please the Court,

9    Robert Malone of the Gibbons law firm.  Co-counsel for

10   Stellantis.  With me is Brett Theisen of my firm and John Berg,

11   who is not arguing, from the Clark Hill firm out of Michigan.

12         Your Honor, we're before the Court today on what we

13   believe is a straightforward motion, and that is a motion to

14   enforce the sale order that was entered in the Old Carco LLC

15   case.  I guess you're the third judge having it before you with

16   respect to the order and it's terms.  This is not seeking a new

17   or amendment to the order, it's been amended four times to my

18   knowledge.  This is an order that is, I believe, almost 600

19   pages in length, and was highly negotiated among the parties,

20   including the parties on the other side who had the opportunity

21   on several occasions to negotiate and have certain things placed

22   into this sale order.  The sale order in and of itself has

23   certain specific terms that were heavily negotiated.

24         As this Court's aware, going back even through some

25   judicial history, the Southern District is probably the Court

Old Carco LLC - 12/2/21                                3

1    where it first became commonplace to use, in the **Lionel** case,

2    sale orders for the sale of assets as a going concern or even

3    through liquidation, and simply became more and more the way

4    that people used to transfer assets under §363.  Orders over

5    time, for approval of §363 sales have become heavily negotiated

6    as was this one, and this order in particular, as I said in

7    length, longer than most orders that I'm accustomed to seeing

8    myself.

9           In this case, what was specifically bargained for was

10   that anything concerning economic loss, and that is, not for

11   personal injury, because that went back and was carved out, but

12   economic loss was specifically excluded among the assumed

13   liabilities when this company was purchased.  And as Judge

14   Bernstein pointed out in a couple of the other opinions, this

15   company, now Stellantis, and just to take one step back.  The

16   original company that bought the assets from Old Chrysler was

17   Fiat Chrysler, FCA, which did not come into existence until

18   2009, which is important to note as part of this record, but is

19   now owned by Peugeot, which bought Fiat and is now called

20   Stellantis.  So, it's not even the people who bought it.  But

21   with respect to the way this order was carved out and made was

22   that, if there were cars or anything that happened after the

23   demarcation date, that being the closing date of the sale, that

24   would obviously become the responsibility of FCA US LLC.  But

25   any cars that were manufactured prior to the closing date, those

Old Carco LLC - 12/2/21                                    4

1   liabilities were specifically excluded from the liabilities that

2   were being assumed in this case.

3        What has happened here is different from the GM case

4   in many respects.  And I know he Court is very familiar with the

5   GM case.  And quite honestly, Your Honor was right in your

6   reasoning in GM.  And as the 2nd Circuit even said in the GM

7   case, these things are taken on a case-by-case basis.  So, we

8   believe that the Court should correctly follow **Burton v.**

9   **Chrysler Group**, which is one of the decisions at 492 B.R. 392.

10  The interpretation here is, when did these things happen?  And

11  what happen here is, you have an MDL action that is down in the

12  Southern District of Florida, and there it is based on a Takata

13  Airbag situation and whether or not there's knowledge that can

14  be imputed to my client.

15       A couple of things I think the Court can take judicial

16  notice of.  Unlike the GM case where GM was the "bad actor" and

17  was the one who concealed the problems with their ignition

18  switch and actually tried to correct it and use the same serial

19  number, this is something that was not known to my client and

20  probably to a certain extent was not known to Old Chrysler.  But

21  be as it may, that's not the issue.  The issue --

22       THE COURT:  Mr. Malone, I'll call it New Chrysler or

23  FCA.  Whether or not New Chrysler had knowledge is an issue of

24  fact that I certainly can't determine on the motion to enforce.

25  Don't you agree with that?

Old Carco LLC - 12/2/21                                    5

1          MR. MALONE:  No, Your Honor.  Respectfully, --

2          THE COURT:  No?  Has any court made a factual

3   determination that New Chrysler did not have knowledge of

4   defective Takata Airbags?

5          MR. MALONE:  It's not the court, it's the allocution

6   by Takata.

7          THE COURT:  Excuse me, Mr. Malone, has any court made

8   a factual determination that New Chrysler through its employees,

9   not Old Chrysler, new Chrysler through its employees, did not

10  have knowledge of defective Takata Airbags?  Yes or no?

11         MR. MALONE:  To my knowledge, Your Honor, no.  But I

12  don't think that's relevant to the discussion here because --

13         THE COURT:  I'm sorry, but you just told me that your

14  client did not have knowledge of a defective Takata Airbags, and

15  you've now acknowledged that no court has made a factual

16  determination that employees of New Chrysler did not have

17  knowledge of the defective airbags.

18         MR. MALONE:  Your Honor, I don't think that's the

19  operative issue here.  The issue is, at the time that this sale

20  was done.  Our client wasn't even in existence until 2009 and --

21         THE COURT:  Mr. Malone, I understand exactly when New

22  Chrysler came into existence.  And it continued to use Takata

23  Airbags with cars that it manufactured.  Isn't that true?

24         MR. MALONE:  That is correct, Your Honor.  And the

25  argument here is --

Old Carco LLC - 12/2/21                                    6

1        THE COURT:  I'm sorry, but my question to you was

2   whether any court has made a factual determination that New

3   Chrysler employees did not have knowledge of defective Takata

4   Airbags.  You made that point in your papers, but you cite to no

5   determination by any court, no finding by any court that that's

6   true.  That's an issue of fact.

7        MR. MALONE:  The only thing that I can point to, Your

8   Honor, and you're correct that there's been no judicial finding,

9   except for an allocution.  Maybe, yes, with respect to its plea

10  of guilty that was made before a court, but the allocution made

11  by Takata, they specifically said that they concealed this from

12  the LEM, the original equipment manufacturers.  So, there was no

13  knowledge at the time, especially, that there was closing with

14  respect to the sale.

15       The issue is that the allegations are by the

16  plaintiff, and those allegations all point to Old Chrysler.  And

17  if they do point to Old Chrysler, they're barred here.  The fact

18  that they're trying to argue that we took over the books and

19  records somehow gave us knowledge is of no moment with respect

20  to this.  You can't impute that knowledge onto our client.

21       THE COURT:  Mr. Malone, let me stop you there.  Isn't

22  the issue of imputation an issue of state law, not of bankruptcy

23  law?  I've certainly --

24       MR. MALONE:  No, Your Honor.  Actually, I think it's

25  bankruptcy law to the standpoint that this was heavily

Old Carco LLC - 12/2/21                                    7

1    negotiated, and there was a cutoff and a barring of things.  And

2    this, again, was something that if it was an economic loss,

3    unless this Court is going to go in the direction that it's

4    produce liability and personal injury, that's a different story.

5    But with respect to pure economic loss, it was negotiated very

6    heavily.  This order was modified --

7          THE COURT:  Excuse me, Mr. Malone?  Mr. Malone, Judge

8    Furman in the general Motors cases or in the Takata cases, have

9    any of those courts examined the issue of whether there was

10   either knowledge on the part of New GM in connection with

11   defective ignition switches or with respect to New Chrysler with

12   respect to defective Takata Airbags?  When I read the MDL

13   opinion, the courts very carefully examined what's required to

14   state causes of action under all of the different state laws

15   that may be applicable.  And as I understand the Court's

16   decision in Takata, it's looked at, based on alleged wrongful

17   conduct by New Chrysler, whether the operative complaint states

18   causes of action.  Isn't that what the court did?

19         MR. MALONE:  But, Your Honor, I don't think that court

20   addressed the differentiation between Old Chrysler and the

21   purchasers here, Stellantis.  I think the reason why we're back

22   in the bankruptcy court is we're looking for the interpretation

23   by a bankruptcy court, as a bankruptcy judge hearing this case,

24   whether or not that sale order, which was heavily negotiated,

25   barred claims against our client based on acts or knowledge of

1   Old Chrysler, and anything about economic loss we believe is an

2   absolute bar.  FCA does not --

3              THE COURT:  Are you representing New Chrysler in the

4   MDL?

5              MR. MALONE:  No, I'm not, Mr. Berg is.

6              THE COURT:  Okay.  So, none of this was clear from

7   your papers, but based on the Court's review, the earliest

8   motion to dismiss filed by FCA that I was able to find was its

9   Takata MDL ECF 2983, and that was filed on August 20, 2018.  And

10  that was briefed by both sides.  New Chrysler argued that the

11  sale order barred the claims; the MDL plaintiffs responded to

12  the argument; and Judge Moreno ruled.  In addition to that 2018

13  motion to dismiss, my clerks and I have reviewed the MDL docket

14  and the underlying cases that named FCA as defendant, and we

15  have found an earlier filing, a document titled "FCA US LLC's

16  opposition to plaintiff's motion for clarification," filed June

17  24, 2015.  In the MDL, it's ECF 590.  And the document makes the

18  following reference to the sale order.  "Plaintiffs request that

19  this court allow them to temporarily abandon the claims against

20  FCA US and to let the transfer of court deal with them later is

21  a clear attempt to thwart FCA US expressed contempt to be

22  finally dismissed with prejudice from these proceedings based on

23  a sale order, which bars the claims previously asserted against

24  it.  FCA US orally advised the few plaintiffs who previously

25  asserted some claims against it that their claims are barred by

1   a sale order entered by the United States Bankruptcy Court for

2   the Southern District of New York, and if the claims are not

3   voluntarily dismissed, FCA US will seek transfer to the

4   bankruptcy court, which issued the sale order."  It goes on.

5           So, that's at ECF 590 at page 4.  So, as early as

6   2015, FCA raised in the MDL court the issue of whether claims

7   were barred by the sale order.  I don't know how many cases that

8   are now part of the MDL had originally named FCA as a defendant.

9   I don't know whether there are any motion to dismiss in any of

10  those cases before they were transferred to the MDL court.  So,

11  we have found this reference in the 2015 document.  We've

12  certainly seen, in connection with the motion that FCA filed in

13  2018, it specifically raised the issue of the bar.  It argued

14  that the claims against FCA should be dismissed because of the

15  sale order.  So, FCA, rather than coming to the bankruptcy court

16  in 2018, raised those issues with the MDL court.  And the issue

17  was joined and the district court, the MDL court decided the

18  issue.  You're unhappy with it, but you're now talking three

19  years later or longer that you're now saying you want the

20  bankruptcy court to deal with this issue.  Until now, you were

21  perfectly happy staying in the MDL court.  Go ahead.

22          MR. MALONE:  Well, Your Honor, I think the thing that

23  maybe needs to be done by this Court, and quite honestly, I

24  can't address the issue of anything that happened post-closing,

25  but what I can say is, the claims that were asserted against FCA

Old Carco LLC - 12/2/21                    10

1   US in the MDL action are kind of conflated.  They relate to Old

2   Chrysler vehicles manufactured and sold prior to the closing

3   date.  They did not plead it, and maybe that's going to have to

4   be sorted out again before Judge Moreno.  But with respect to

5   the claims that are being made, what we need is for this Court

6   to say, hey, anything that you're trying to claim as far as the

7   Old Chrysler vehicles manufactured and sold prior to the closing

8   date, the sale order applies.

9           THE COURT:  Let me ask you this, because here's what's

10  bothering me, colloquially, you get one bite at the apple.  You

11  took that bite before Judge Moreno.  The was joined, it was

12  briefed by both sides, the issue was joined, and he ruled.  FCA

13  or its successors' rights are certainly preserved for appeal in

14  the 11th Circuit if it ever come to that, but can you point me to

15  any cases in which a bankruptcy court exercising the gatekeeper

16  role has been asked to enforce a sale order after the same

17  argument was made by the same party to the state or federal

18  court in which the underlying action was pending?

19          MR. MALONE:  Off the top of my head, Your Honor, no.

20  All I can do is point to the prior ruling of your predecessor,

21  Judge Bernstein, who I think got it correct on the **Burton** case

22  and other times that people came before the court.  And what

23  we're asking this Court --

24          THE COURT:  But Judge Bernstein, Judge Gerber, and I

25  have all recognized that a sale order cannot bar independent

Old Carco LLC - 12/2/21                          11

1   claims.  Do you agree with that?

2          MR. MALONE:  Correct.  So, long as where they fall.

3   In this case, Your Honor, what we have to look at is not the

4   issue of what kind of claims they are, but when did they arrive.

5   That, I think is the most important thing here.  Under the sale

6   order, it makes no difference when the plaintiffs brought their

7   vehicles, but it's what vehicles were bought.  So, we have to

8   kind of separate out from here on economic losses, the

9   demarcation of --

10          THE COURT:  If state law imposes a duty on New

11   Chrysler, which it breached, a sale order --

12          MR. MALONE:  But it didn't, Your Honor.

13          THE COURT:  No!

14          MR. MALONE:  And that's the issue here.

15          THE COURT:  Do not interrupt.  Wait till I finish.  As

16   I read the operative complaint, it alleges the claims against

17   New Chrysler are all based on alleged wrongful conduct by New

18   Chrysler.  Whether that's the case or not raises issues for the

19   nonbankruptcy court, not for the bankruptcy court.  The

20   gatekeeper function doesn't include evaluating claims based on

21   alleged wrongful conduct by New Chrysler, New GM, or any other

22   purchaser.  The sale order can't bar those claims.  That's

23   clear.  Isn't that true?

24          MR. MALONE:  No, Your Honor.  Respectfully, even Judge

25   Bernstein said, it doesn't matter.  Because of the proximate

Old Carco LLC - 12/2/21                    12

1  cause of the loss was a defect here, it's economic.  He pointed

2  out that FCA is not a successor to Old Chrysler, and "shall have

3  no successor or vicarious liabilities of any kind or character

4  in the sale order.  And that just shows --

5          THE COURT:  Independent claim.  Mr. Malone,

6  independent claims are not based on successor liability, they're

7  based on wrongful conduct by the purchaser.

8          MR. MALONE:  Correct.

9          THE COURT:  A sale order can't bar that.  **Elliot** made

10 that clear, cases elsewhere have made that clear.  Whether or

11 not New Chrysler committed wrongful conduct that's actionable is

12 not for the gatekeeper to determine, it's for the nonbankruptcy

13 court.  Whether that's the federal district court or state

14 court, it's for another court.

15         MR. MALONE:  But Your Honor, you can --

16         THE COURT:  I'm sorry.  Do you have cases that say or

17 suggest that a bankruptcy court can adjudicate independent

18 claims an asset buyer?

19         MR. MALONE:  Your Honor, I'm not asking Your Honor

20 to --

21         THE COURT:  Could answer my question?

22         MR. MALONE:  -- do that.

23         THE COURT:  No, could you answer my question?

24         MR. MALONE:  I don't know of any cases, but that's not

25 what I'm asking this Court to do.  What I'm asking this Court to

Old Carco LLC - 12/2/21                    13

1   do, respectfully, Your Honor, is to say that you cannot allow

2   the bootstrapping in any claims against the New FCA by taking

3   and conflating the issue by bringing in claims based on cars

4   that were manufactured prior to the closing dates.  And we had

5   pointed that out in our original papers.  What they're trying to

6   do here is take all claims back in the history of time, whether

7   it was after the closing date or prior to the closing date and

8   bringing them all against our client.

9        Now, if this Court were to say, hey, look, anything

10  that happened before the closing date on economic loss to the

11  plaintiffs in the MDL action, that order stands.  The order says

12  what the order says.  If you have independent claims against

13  FCA --

14       THE COURT:  Mr. Malone, I would like an answer to the

15  following question.  Do you have any cases that support coming

16  to the bankruptcy court for its gatekeeping role after the party

17  has litigated the claim in the nonbankruptcy court and lost?

18  When I say litigated the claim, New Chrysler specifically moved

19  to dismiss on grounds of the sale order; the MDL plaintiffs

20  joined issue on that, and Judge Moreno decided it adversely to

21  New Chrysler.  He decided he'll take it up again in summary

22  judgment, but he decided that issue against you.  Do you have

23  any cases that say that the bankruptcy court should exercise its

24  gatekeeper role after the party has already litigated that issue

25  in another court?

Old Carco LLC - 12/2/21                           14

1          MR. MALONE:  Your Honor, as I've said, I don't have

2     any cases.  I think I've said that before.  What happened with

3     respect to before Judge Moreno, I think was a motion to dismiss,

4     so the issues are, at best, interlocutory at this moment.  I

5     think you correctly stated that the --

6          THE COURT:  It is interlocutory, but I read the

7     briefs, I read both sides' briefs.  I read Judge Moreno's

8     decision; New Chrysler squarely raised that issue.  The MDL

9     plaintiffs in their brief cite other cases involving Chrysler

10    where nonbankruptcy courts dealt with the issue.  Not everybody

11    comes back to the bankruptcy court to exercise the gatekeeping

12    function.  Do you agree there's concurrent jurisdiction in the

13    nonbankruptcy court and the bankruptcy court?

14         MR. MALONE:  There is, Your Honor, especially since

15    it's a federal court.  However, all I'm asking this court is a

16    very narrow issue, and that is to not allow the bootstrapping of

17    Old Chrysler.  I'm not saying that this Court should rule or

18    exonerate my client in the MDL action.  If there are claims that

19    arise --

20         THE COURT:  How many bites at the apple does New

21    Chrysler get?

22         MR. MALONE:  I think this is the first bite, Your

23    Honor.  I don't think this is the second bite, respectfully.

24         THE COURT:  Stop.  You acknowledge that they did raise

25    this issue in the motion to dismiss in the 2018, we're now about

Old Carco LLC - 12/2/21                                    15

1   to embark on 2022.  I found the reference in pleadings from

2   2015.  There could be others, I don't know, but certainly in

3   2018 that was one of the basis for the motion to dismiss.  The

4   MDL plaintiffs opposed it; Judge Moreno decided it.  And I guess

5   your answer is, you don't know of any other case where having

6   raised the issue and lost that you can then come to a bankruptcy

7   court and ask it to reach a different decision.

8            MR. MALONE:  Your Honor, no.  but what I am asking the

9   Court to do is, there's a final non-appealable order that had

10  been heavily negotiated, which the other side was well aware of

11  that completely carved out economic loss from anything that

12  happened prior to the 2009 closing date, and they still,

13  notwithstanding, are raising those very issues in the MDL

14  action.  Now, maybe they're going to have to raise it there, but

15  I think the client in consultation felt that this is the

16  appropriate court to interpret the orders entered by a

17  bankruptcy court who are best suited to interpret 363 orders

18  versus a district court judge sitting in Florida, who may not

19  have heard bankruptcy cases, hears them probably on appeal, but

20  this Court may be the more appropriate court with respect to

21  this issue.

22           The only thing I can say is, you've asked me a couple

23  of times, about whether or not this has happened.  I know of no

24  cases, but I'll be happy to, after this argument, try to

25  supplement the record and research and give you a brief with

Old Carco LLC - 12/2/21                    16

1  respect to that issue.  But again, my narrow issue today was to

2  try to get this Court to prevent the bootstrapping of Old

3  Chrysler claims against my client, and that was the purpose.  It

4  was not the purpose to come before this Court and ask this Court

5  to tell the MDL court, look, you can't allow anything to go

6  against FCA.

7       We're not coming here in the form of an appeal of the

8  Southern District of Florida.  Rather, we're only coming here

9  for the interpretation of the sale order, and whether or not the

10 economic loss provision prevails.  And if this Court says it, I

11 guess the next step would be for Mr. Berg or somebody else to go

12 back down to Judge Moreno and say, we went to the bankruptcy

13 court, and they said economic loss, as they read it, and the

14 bankruptcy orders state, you cannot proceed against FCA for the

15 prior acts or knowledge of anything of Old Chrysler.  That was

16 litigated, it was negotiated, it was a final order.  As to FCA,

17 this Court takes no opinion as to any claims as far as their

18 conduct going forward.

19      Again, I'm not trying to come before this Court,

20 asking this Court to make any determination other than having

21 read the sale order itself, the four corners of that sale order,

22 and what it says with respect to what's excluded and what's

23 included as far as assumed liabilities.  This is a liability

24 that was excluded.  This was heavily negotiated, and the reason

25 that we're here is that bankruptcy courts find that when you do

Old Carco LLC - 12/2/21                    17

1   these type of sales, these orders have to be sacrosanct.

2   Otherwise, what faith is anyone going to have in the bankruptcy

3   court that if you're going to have a 363 sale of assets that are

4   supposed to be free and clear of all liens to attach to the

5   proceeds, and there's an issue with respect to later on, will

6   there be or will there not be successor liability, which was

7   addressed not once, but in four amendments.  We believe that

8   this is the appropriate court to say, well, as far as the

9   bankruptcy order state, and what was negotiated here in the

10  Southern District, this is considered an economic loss, FCA is

11  not a successor to Old Chrysler.

12          And then even if the Court were to say that the MDL

13  are product liability claims, they are nevertheless outside the

14  scope of assume warranty claims.  I think we've pointed that

15  out, Section 2.08(g) of MTA.  Only claims arising out of express

16  warranties, factory or extended.  Section 2.09(j) expressly

17  excludes all liabilities and strict liability negligence, gross

18  negligence or reckless acts or omissions arising prior to or

19  ongoing.

20          All we're asking for this Court to do today, and it is

21  a narrow issue, and that is whether or not the order that was

22  negotiated and signed, and as I said, Mr. Esserman had every

23  opportunity.  In fact, he cross examined people at the hearing,

24  a Mr. Nordelli at the sale hearing.  So, it's not like they had

25  no knowledge or denied any kind of due process here.  They had

Old Carco LLC - 12/2/21                    18

1    every opportunity with respect to try to get economic loss in or

2    not, and if it wasn't put I at that point in time, they had a

3    right to take the order up on appeal.  What we're really looking

4    for is judicial estoppel.

5         THE COURT:  Let me ask you something.  I have some

6    other questions I want to ask.  In at least two cases in the

7    southern district, the bankruptcy court abstained under

8    1334(c)(1) from interpreting the sale order, applying its

9    gatekeeping function.  **In re Motors Liquidation**, Judge Gerber,

10   and the cite is 457 B.R. 276 (Bankr. S.D.N.Y. 2011), and the

11   second case is an opinion by Judge Drain, **In re Portrait Corp of**

12   **America, Inc.**, 406 B.R. 637 (Bankr. S.D.N.Y. 2009), and in both

13   of those cases, the courts refrained from interpreting and

14   enforcing a sale order and did so by exercising permissive

15   abstention under 1334(c)(1).

16        In light of the history that shows that New Chrysler

17   chose to litigate this issue before Judge Moreno, certainly no

18   later than 2018 with its motion to dismiss, but apparently,

19   having raised the issue in the MDL at least as early as 2015

20   that it's appropriate for the bankruptcy court now to abstain

21   from addressing the ruling.  I'll give you a chance to respond.

22        MR. MALONE:  Your Honor, that of course, is within

23   your purview that if you believe that you should abstain either

24   mandatory or permissive abstention, you have that right.  The

25   reason --

Old Carco LLC - 12/2/21                        19

1          THE COURT:  Let me give you one other cite.  **In re Old**

2    **Carco LLC**, 593 B.R. 182 (Bankr. S.D.N.Y. 2018) affirmed, 603

3    B.R. 877 (S.D.N.Y. 2019), Affirmed, 809 Fed App'x. 36 (2d Cir.

4    2016).  In **Old Carco**, Judge Bernstein refused to abstain by

5    abstention under 1334(c)(1) from interpreting the sale order.

6    He did.  On the appeal, Judge Nathan in the District Court of in

7    the Southern District, now been nominated to the 2nd Circuit,

8    affirmed Judge Bernstein and found that he didn't abuse his

9    discretion in declining to abstain.  So, those are case that I

10   have found from the Southern District, either the bankruptcy

11   court or Judge Nathan's opinion in the District which was

12   affirmed in summary ruling by the 2nd Circuit, finding that the

13   bankruptcy court didn't oppose it's discretion in denying

14   abstention.

15          There is jurisprudence about the bankruptcy court

16   abstaining from exercising its gatekeeping function.  Here, what

17   should be clear from my comments, New Chrysler made the decision

18   at least as early as 2018, perhaps earlier than that, to

19   litigate the issue of the effect of the sale order in barring

20   claims in the nonbankruptcy court.  The district court before

21   Judge Moreno, I don't know whether New Chrysler had moved to

22   dismiss any of the actions before they were transferred to the

23   MDL court, so I don't know about that.  And I certainly didn't

24   view it as my role to go through every docket entry.  My clerks

25   and I tried to look and see when the first time was that New

Old Carco LLC - 12/2/21                                    20

1   Chrysler raised the issue in the MDL.  I've already given you

2   record references to that.

3          That's what's bothering me.  I don't like the idea of

4   the disappointed litigant taking a second bite of the apple.  It

5   could have but did not when the complaints were filed if it

6   believed the claims were barred.  Certainly, I had that issue

7   after I inherited Motors Liquidation from Judge Gerber.  He had

8   decisions; I had decisions; Judge Gonzalez had decisions in

9   Chrysler; Judge Bernstein had decisions in Chrysler.  But I

10  didn't find any decisions where the disappointed litigant tried

11  to get a second bite of the apple.  Can you point me to anywhere

12  a court has said, okay, I'll go ahead and exercise the

13  gatekeeping function, even though you tried unsuccessfully in

14  nonbankruptcy court?

15         MR. MALONE:  Judge, offhand, I can't, but what I can

16  note is that you do have concurrent jurisdiction, you can still

17  decide a very narrow issue here.  There's good reason to enforce

18  the sale order here.  the eventual class has not been certified

19  in the MDL action, and the plaintiffs effectively concede, "it

20  may include purchases of cars prior to closing."  And that's

21  right in their opposition at prior 20, note 38.  The plaintiffs

22  also concede --

23         THE COURT:  They've also made clear, Mr. Malone, that

24  they're basing their claims against New Chrysler on alleged

25  wrongful conduct by New Chrysler.  That's for the nonbankruptcy

Old Carco LLC - 12/2/21                    21

1  court to determine.  The first is pleading --

2          MR. MALONE:  I don't disagree.

3          THE COURT:  Hold on.  Wait, wait, wait.  The first is

4  a pleading matter where they satisfactorily pleaded it, and then

5  either on summary judgment or trial, whether they've been able

6  to prove it.  And the bankruptcy court gatekeeping function does

7  not include deciding independent claims.

8          MR. MALONE:  Right.

9          THE COURT:  I read their papers to say, these are

10 independent claims.  We're basing out claims on wrongful conduct

11 by New Chrysler.  The issues of imputation are state law issues.

12 Judge Gerber certainly so held in **Motors Liquidation.**  He has

13 decisions that look at what's the basis for imputation, can the

14 knowledge of Old Chrysler employees be imputed to New Chrysler,

15 when were the circumstances of that.  Those are state law issues

16 of imputation.  I guess Judge Moreno is going to be the one -- I

17 don't know at what point, if the cases remain, he transfers them

18 back to the transferor court for trial if they get to trial, but

19 that's for Judge Moreno.

20         MR. MALONE:  Your Honor, what I'm only asking this

21 Court to do, and I think you are the proper forum and I do think

22 that you should not abstain, we ask this Court on the very

23 narrow issue, and I think this is, respectfully, the proper

24 forum, to delineate the scope of the sale order's injunction.

25 There's already an injunction in place.  Whether or not that

Old Carco LLC - 12/2/21                    22

1   injunction has been violated or not is definitely within the

2   purview and this Court has jurisdiction.  I'm not asking this

3   Court at any point in time, to determine whether or not FCA

4   post-closing was a bad actor.  That's not before this Court, nor

5   am I asking this Court to take that on.

6        THE COURT:  Why didn't New Chrysler bring this issue

7   to the bankruptcy court in 2015 when it first put in a pleading

8   in the MDL or in 2018 when it raised the issue in the motion to

9   dismiss before Judge Moreno?

10       MR. MALONE:  Well, Your Honor, anything that I could

11   say would be pure conjecture.  You probably see that the record

12   reflects in August I was brought in after the sale to Peugeot.

13   Sullivan & Cromwell was prior counsel.  So, I can't speak, I

14   can't think about why strategically or otherwise, something was

15   not done.  All I know is with respect to where things stand.

16   And it's at a point, because there has been no certification or

17   class, I think that Stellantis thought this was the most

18   appropriate time to at least get the scope narrowed before there

19   is any kind of certification of the class and because it is

20   still, believe it or not, at the early stages.  I think

21   discovery closed in I believe July of this past year.  But with

22   respect to the narrow issue of, okay, these claims can proceed,

23   but they've done the sale order entered  by the bankruptcy

24   court.  These types of issues have to be excluded.  I think that

25   was the biggest reason for coming before this Court now.

Old Carco LLC - 12/2/21                    23

1    I can't honestly say that.  I would be more than happy

2    to supplement the record, speaking with Mr. Berg.  Mr. Berg is

3    on, but is not prepared to argue, but he is involved in the MDL

4    action.  I can't speak to the MDL action, nor would I try to and

5    mislead this Court not intentionally.  So, I can't really answer

6    that question for you in all fairness.

7         THE COURT:  Is there anything else?

8         MR. MALONE:  Your honor, I think I will just reserve

9    some time to respond to the argument of the MDL plaintiffs.

10   Thank you.

11        THE COURT:  Okay.  Mr. Esserman are you going to

12   argue?

13        MR. ESSERMAN:  Yes, Your Honor.  And I have a

14   PowerPoint presentation That I prepared that I will go through

15   quickly with your honor.  And I --

16        MR. MALONE:  And there's an objection to it.

17        THE COURT:  You know, Mr. Esserman, I certainly permit

18   the use of PowerPoint or slides as aids to argument.  Obviously,

19   I haven't had any conferences with any of you before, other than

20   responding to requests to move a hearing date or something like

21   that or just on papers.  I ordinarily would require that any

22   slides in support of argument be exchanged before the morning of

23   the argument.  I see from emails that you sent a copy to the

24   Court, and you sent a copy to opposing counsel today.  As to the

25   slides, your deck is 23 pages long.  If I exclude the cover, 22

Old Carco LLC - 12/2/21                    24

1   pages long.  I glanced at it.  Mr. Malone, let me hear your

2   argument why it ought to be excluded.

3          MR. MALONE:  Your Honor, thank you.  Basically, as the

4   Court knows, it was first brought to our attention at 9:15 this

5   morning.  This motion was filed, as the Court is aware, back in

6   September.  There was plenty of time, adequate time, for counsel

7   to discuss that they would want to bring in any kind of

8   supplemental -- and I would look at this as written -- it may be

9   called a slide deck, but as far as I'm concerned, it is a sur-

10  reply.

11         The rules are pretty tight, Your Honor, I know.  And

12  as soon as this case moves over to you, ten pages means ten

13  pages.  I know Your Honor has even told pages I shouldn't even

14  read it if it's over ten pages, or I'll stop reading at ten

15  pages.  This is an attempt to supplement the record improperly.

16  If they wanted to do this, they should have done it on more

17  notice to both the Court and to me, rather than to spring it up

18  45 minutes before the commencement of argument.  As Your Honor

19  knows, in those 45 minutes, I was trying to get power on, so I

20  really haven't researched or done anything more than to say that

21  procedurally, affording us due process, that they should not be

22  introduced.

23         Obviously, counsel may say, oh, they're just using it

24  as an aid to the Court, but in fact, I'm sure if there's a

25  record on appeal, the slide deck will become part of that record

1  on appeal.  And I object to its inclusion at this time.  We're

2  all operating under circumstances.  I have not seen the slide

3  deck.  I haven't even had a chance to peruse that slide deck, so

4  I object to its use at this particular hearing, Your Honor.

5         THE COURT:  Mr. Esserman, do you want to respond to

6  that?

7         MR. ESSERMAN:  Yes, please, Your Honor.  The slide

8  deck is strictly an argument aid.  It doesn't expand the record.

9  It's based on the record.  It's just a pure argument aid.  It's

10  not a sure reply, it's basically the outline of what my argument

11  is going to be.  It's very common to use this type of aid for

12  the Court, and there's nothing new in here that isn't already in

13  the record.

14         THE COURT:  I'm going to overrule the objection.  But

15  I've got to tell you, Mr. Esserman, I hope you're not going to

16  go through 24 slides.

17         MR. ESSERMAN:  How about this, Your Honor, I'm going

18  to do it quickly.

19         MR. MALONE:  Your Honor, again, could I be heard?

20         THE COURT:  No.  It did not appear to raise arguments

21  that had not already been included in the briefs.  I do permit

22  counsel to use slide decks in support of their argument.  I'm

23  going to allow it to be done.  I think you're timing -- I'm not

24  happy about your timing, Mr. Esserman.  It should have been

25  provided to counsel beforehand.  But let's move forward.  Go

Old Carco LLC - 12/2/21                           26

1   ahead, Mr. Esserman.

2          MR. MALONE:   Your Honor, could I be heard for one --

3          THE COURT:  No more.

4          MR. MALONE:  I just want to --

5          THE COURT:  No more.  Go ahead, Mr. Esserman.

6          MR. MALONE:  I heard you.

7          THE COURT:  Let's go.

8          MR. ESSERMAN:  Thank you, Your Honor.  Let's see Slide

9   No. 2.

10          MR. D'APICE:  Your Honor, it's Peter D'Apice, Mr.

11   Esserman's law partner.  May I share the screen, please?

12          COURTROOM DEPUTY:  Yes, I gave you co-host ability,

13   Mr. Esserman.

14          MR. D'APICE:  Thank you.

15          COURTROOM DEPUTY:  You're welcome.

16          THE COURT:  Go ahead.

17          MR. ESSERMAN:  Yes, Your Honor.

18          THE COURT:  If you plan to go through all 24, I'm

19   going to cut you off.  I'll tell you that right now.

20          MR. ESSERMAN:  I'm going to skip a lot of them, Your

21   Honor.

22          THE COURT:  Let's go.

23          MR. ESSERMAN:  Okay.  How about if I keep it to 10

24   minutes or under?  Is that okay?

25          THE COURT:  Just go ahead, Mr. Esserman.

Old Carco LLC - 12/2/21                    27

1          MR. ESSERMAN:  I think it's also important to und

2    we've got two class actions here.  The consumer action is the

3    consumer plaintiffs; the recycler action, people who have

4    brought the parts.  Next slide, please.

5          THE COURT:  Let me just ask you, what's the status of

6    the recycler action?  I thought it had been dismissed, but

7    there's a motion to amend the complaint.  What is the status of

8    the recycler action?

9          MR. ESSERMAN:  I will ask Matt Weinshall, who is

10   counsel in the MDL or Peter Prieto to the answer the status.

11   It's my understanding that it's currently pending.

12         MR. PRIETO:  Good morning, Your Honor, this is Peter

13   Prieto.  Good to see the Court.  Your Honor, it's still pending.

14   The short answer is that the recycler action is still pending;

15   we're in the midst of discovery currently.

16         THE COURT:  Are there any pending motions to dismiss?

17         MR. PRIETO:  No, sir.

18         THE COURT:  Okay.  Go ahead, Mr. Esserman.

19         MR. ESSERMAN:  Okay.  So, basically, in the MDL, we've

20   got two categories of vehicles.  The first vehicle is

21   manufactured, sold, distributed or leased by New Chrysler.  The

22   second is manufactured, sold, or leased by Old Chrysler,

23   acquired by a particular plaintiff after closing.  So, all the

24   plaintiffs acquired their vehicles post-closing; none are suing

25   based on acquisition of Old Chrysler vehicles pre-closing.  I

Old Carco LLC - 12/2/21                                    28

1    just want to make sure that it's clear that PSA is now

2    Stellantis.  This is the first time I heard of this.  It makes

3    it clear it does not seek relief with respect to category one.

4    Just category two.  Next slide.

5            THE COURT:  Is there a separate class for purchasers

6    or used car purchasers?  Are cars manufactured by New Chrysler?

7    In other words, post-2009 sale?  Is that in the MDL as well?

8    Because they were still using the Takata Airbags until --

9            MR. ESSERMAN:  Yes, correct.

10           THE COURT:  But not in the actions we're dealing with

11   now?

12           MR. ESSERMAN:  Mr. Prieto and Mr. Weinshall can answer

13   that, but I believe that those cars are still in this action.

14           THE COURT:  Is it a separate purported class for this

15   same case?  How are buyers of New Chrysler manufactured cars

16   with defective Takata Airbags, how are they being treated in the

17   MDL?

18           MR. ESSERMAN:  They're in the category one vehicle.

19   So, they've divided it in two different categories.

20           THE COURT:  And the only thing I'm dealing with today

21   are category two vehicles.

22           MR. ESSERMAN:  Correct.

23           THE COURT:  Go ahead, Mr. Esserman.

24           MR. ESSERMAN:  Okay.  In sum, just to sum up page 4,

25   the actions concern New Chrysler's wrongful conduct regarding

Old Carco LLC - 12/2/21                          29

1   the defective airbags.  The plaintiffs alleged that the New

2   Chrysler airbags were defective and concealed the facts.  The

3   inflaters are in both category one and two.

4          THE COURT:  Just to be clear, the claims based by the

5   category two purchasers are based exclusively on alleged

6   misconduct by New Chrysler, correct?

7          MR. ESSERMAN:  Correct.  And not only that, but

8   paragraph 3 of the complaint states the causes of action in this

9   complaint are directed solely to New Chrysler and are based

10  solely on New Chrysler's wrongful conduct.

11         THE COURT:  Go ahead.

12         MR. ESSERMAN:  And in fact, we did a word count in the

13  consumer action and New Chrysler and FCA are referred to 908

14  times in the complaint, and Old Chrysler is only referred to 54

15  times, about 5 or 6 percent, and only for historical purposes.

16  The causes of action are strictly against New Chrysler and this

17  complaint was tailored really based on **Elliot.**

18         We've discussed the MDL.  I don't think we need to go

19  into that anymore.  I believe Your Honor understands it.

20         THE COURT:  Well, let me ask you the question I asked

21  Mr. Malone.

22         MR. ESSERMAN:  Sure.

23         THE COURT:  Are you able to tell me when was the

24  earliest time that New Chrysler raised issues with the MDL court

25  about the interpretation or effect of the sale order?  As I

1  said, I've read the briefs from 2018, we found the reference

2  that New Chrysler raised in 2015, I am quite interested in

3  knowing when the first time was that New Chrysler raised the

4  issue with Judge Moreno.  And were there any earlier complaints

5  in 2018 that New Chrysler moved to dismiss on grounds of the

6  sale order?

7        MR. ESSERMAN:  I think 2018, and I'll let Mr.

8  Weinshall and Mr. Prieto supplement my statement.  But I think

9  2018 was the first time that New Chrysler filed a motion to

10 dismiss.  Actually, filed a motion to dismiss.  They may have

11 referenced it earlier in 2015, but they actually filed a motion

12 to dismiss in 2018.

13       THE COURT:  Go ahead.

14       MR. ESSERMAN:  Okay.  Once again, I think Your Honor

15 is very familiar that the inquiry as to whether a claim is

16 barred or not requires a claim-specific review and that was

17 ordered by Judge Moreno.

18       The next slide, Slide No. 2, once again is a

19 reiteration of the actions that we alleged post-closing, which

20 show the copiability of New Chrysler.  That's pages 7 and 8, and

21 I'm not going to go through these.  None of these are new,

22 they're all based on materials in the record and are referenced

23 as such in the recycler complaint or the consumer complaint for

24 various actions on page 8, continued on page 9, which New

25 Chrysler took for which the MDL seeks to hold them liable.  Page

Old Carco LLC - 12/2/21                    31

1    10, similar allegations.

2          So, we then go to the core legal issues, the claims

3    based on category two vehicles barred by the sale order.  We

4    think the 2nd Circuit is clear.  Page 13, we think the caselaw is

5    very developed on this.  Page 13, please.

6          THE COURT:  Let me ask you if you would?

7          MR. ESSERMAN:  Yes.

8          THE COURT:  We talked about the **Burton** case because

9    New Chrysler argues it's law of the case, but I don't want to

10   deal with whether it's law of the case.  But why doesn't Judge

11   Bernstein's decision in **Burton**, specifically his reference as to

12   proximate cause, why isn't that determinative of the outcome

13   here?

14         MR. ESSERMAN:  First of all, there's an issue as to

15   whether or not **Burton** is still good law, and whether or not it

16   was overruled, if you will, by either subsequent writings of

17   Your Honor, or the other judges in the Southern District, or the

18   2nd Circuit in **Elliot.**

19         THE COURT:  Certainly, I couldn't overrule Judge

20   Bernstein.  We all know that.

21         MR. ESSERMAN:  No, but certainly the 2nd Circuit could.

22   And also, you've got to recall that Burton talked of the duty to

23   warn the Old Carco customers of the defect, none of our

24   plaintiffs were Old Carco customers.  So, you've got some

25   distinguishing features and what the circuit pointed out was

1    that there was no privity.  And in **Burton**, there was privity

2    with the customers.  In our case, there is no privity.

3         Also, in **Burton**, it was not very clear what was meant

4    by post-closing purchasers and the phrase was only used a couple

5    of times, so we think the order in **Burton** does not necessarily

6    define the post-closing purchaser to mean only those purchasers

7    who own vehicles or purchase vehicles after the closing.  We

8    think the decision could exclude post-closing purchasers.  So,

9    we think there's been intervening law, we think **Burton** is

10   different.  It's got a different defect.  There are different

11   claims.  And we've got a much clearer record which was not

12   apparent in **Burton** of different and expanded alleged misconduct

13   by New Chrysler.  Back to my presentation, if that's okay, Your

14   Honor?

15        THE COURT:  Yes.

16        MR. ESSERMAN:  Page 13 summarizes the **Elliot** case and

17   highlights certain provisions.  I'm not going to go through

18   that.

19        THE COURT:  I'm quite familiar with **Elliot**.

20        MR. ESSERMAN:  I know you are.  Page 15 cites some of

21   the key holdings in **Dearden**, which we think are important here,

22   which Your Honor is also familiar with.  Page 16 is a discussion

23   of imputed knowledge, which Your Honor is very familiar with

24   also as to whether or not imputed knowledge from Old Chrysler

25   engineers to New Chrysler engineers could be used to prove

Old Carco LLC - 12/2/21                    33

1  claims.  This was also addressed on page 17 by Judge Furman.  We

2  discuss **Burton** and some of the distinguishing features on pages

3  18 and 19.  Once again pointing out all the plaintiffs and class

4  members here purchased after the closing.  So, it's FCA's sales

5  practices, whether it was failure to warn or vehicles that

6  caused these plaintiffs to overpay for their vehicles when they

7  acquired them after closing.  This has nothing to do with what

8  New Chrysler did.

9         Page 21, once again, a statement from the Southern

10 District of New York Bankruptcy Court, **Motors Liquidation**,

11 613570, where the Court found the failure to warn claim against

12 New GM based solely on New GM's wrongful conduct, they pass

13 through, the Bankruptcy gate is an independent claim.  That's

14 exactly how we crafted this complaint.

15        With these cases in mind, once again, page 22, the

16 court in Motors Liquidation found a path to bankruptcy gated

17 complaint was clearly alleged that it's causes of action are

18 based solely on New GM's post-closing wrongful conduct.  I read

19 you the statements from the complaint.  That's all I've got to

20 say, Your Honor.  I tried to comply with --

21        THE COURT:  This was in neither sides' brief, but I

22 raised the issue with Mr. Malone, and it's the issue of

23 permissive abstention under 1334(c)(1).  And I pointed to the

24 opinions by Judge Gerber in **Motors Liquidation** and to Judge

25 Drain in the **Portrait** case where he applied permissive

Old Carco LLC - 12/2/21                    34

1   abstention where he declined to interpret or enforce the sale

2   order.  Mr. Malone acknowledged I believe that the bankruptcy

3   court has the authority to applied permissive abstention.  Do

4   you have any comments about whether or not permissive abstention

5   should apply in these circumstances where New Chrysler

6   essentially has litigated this issue before Judge Moreno?

7            MR. ESSERMAN:  We don't see any case that can be made

8   to allow New Chrysler, if you will, a second bite at the apple

9   or a third bite at the apple.  The issues have been joined

10  before Judge Moreno in the District Court in Miami; he's dealt

11  with it.  He's had findings that are consistent with this Court,

12  consistent with the circuit, and has ruled.  New Chrysler made

13  their choice.  They could have come to this Court perhaps, but

14  they didn't, and we don't see any reason in jurisprudence in

15  America why you'd get two bites of the apple on this.

16           THE COURT:  Anything else, Mr. Esserman?

17           MR. ESSERMAN:  No.  Thank you.

18           THE COURT:  All right.  Mr. Malone?

19           MR. MALONE:  I'll be brief, Your Honor.  With respect

20  to the 2nd Circuit decision in **Elliot v. General Motors**, as it

21  states there, the language of sale orders are to be interpreted

22  on a case-by-case basis.  So, I do think that **General Motors** is

23  much different than this case.  And I believe that the **Burton**

24  case is still the law of this particular case.  And following

25  **Burton** will not violate their due process right.  **Elliot** is not

Old Carco LLC - 12/2/21                                    35

1   applicable here.  Because in that case, Old GM knew about the

2   manufacturing condition, the switch problem but failed to

3   provide adequate notice, and I don't think we have that issue

4   here.  Again, all we're asking this Court to do, and again, with

5   respect to the reasons why I wasn't brought here in between

6   communicated, I communicated with Mr. Berg, and apparently, it's

7   the reason why they waited.  They were waiting for discovery to

8   be closed, so there would not be factual issues.  So, whether

9   this court would abstain and then send it back down to Judge

10  Moreno for decision or not, with respect to the reason why they

11  did not bring it up in the beginning was to wait for discovery

12  to close, not for issue to be joined.  So, that's the reason for

13  at the delay that I'm being told why we came to this Court at

14  the time we did come to this Court.

15          As I said, Your Honor, and I think it's in our papers,

16  July of this past year is when discovery finally closed; the

17  motion was filed in --

18          THE COURT:  Wait.  New Chrysler raised the issue in

19  2020, in its motion to dismiss in 2020.  Had discovery been

20  completed when they filed the motion to dismiss?

21          MR. MALONE:  Correct.  But you asked, why did they

22  wait to bring it to the bankruptcy court, and I'm being advised

23  that they waited till after discovery was closed.  Whether that

24  was the right decision or not, Your Honor asked for an answer to

25  it, and I got the best answer I could get.

1        THE COURT:  Mr. Malone, had discovery been completed

2   when New Chrysler filed its motion to dismiss with its sales

3   order argument before Judge Moreno in 2018?

4        MR. MALONE:  I don't believe discovery had been

5   closed.  It closed, I believe, this summer.

6        THE COURT:  All right.  Anything else you want to add?

7        MR. MALONE:  No, Your Honor.  We're going to rely on

8   our papers and the record.  The only thing, Your Honor, I was

9   not trying to re-argue with respect to the slide deck.  When I

10  was asking the question, just so it's clear, I didn't have the

11  slide deck up, and I hadn't been able to get it, and I just

12  wanted a moment before they proceeded to get the slide deck up,

13  but they put it on the screen.  I did not want you to think I

14  was trying to re-argue.  My objection was noted, and that's all

15  I was trying to bring to the Court's attention.  I wanted to see

16  the slide deck as they argued.  So, thank you, Your Honor, for

17  your time.

18       THE COURT:  Can somebody please provide me with the

19  current status before Judge Moreno.  I've now been told

20  discovery is completed.  Are there any pending motions, class

21  certifications, other issues, what's the status of the MDL?

22       MR. MALONE:  Your Honor, I would endeavor to get that

23  to you.  And if we could, we would also ask the indulgence of

24  the Court to supplement.  After reading the cases Your Honor has

25  pointed out and you've asked us if we know of certain cases, if

Old Carco LLC - 12/2/21                              37

1   we could have a limit of even ten pages to respond and give you

2   also a status, we would appreciate it.

3          THE COURT:  I don't want any further briefs.  Mr.

4   Prieto, were you going to update me on the status?

5          MR. PRIETO:  Yes, Your Honor.  Your Honor, in the

6   consumer track involving consumer claims, the class

7   certification motions and motions for summary judgment are due

8   on February 14th of next year.  Fact discovery did in fact close

9   during the summer, this past summer, for the consumer claims,

10  and we're in the midst of expert discovery, which closes on

11  December 23rd.  I can have the two orders on both the recycler

12  claims and the consumer claims filed with the Court if the Court

13  desires.

14         The recycler claims are a little bit behind in terms

15  of discovery.  The recycler claims, the fact discovery closes on

16  January 10th of next year, 2022, and the expert discovery for the

17  recycler claims will close May 9th of next year.  And then

18  motions for summary judgment and class certifications on the

19  recycler claims are due to be filed on or before June 24th of

20  2022.

21         THE COURT:  Mr. Prieto, let's assume that claims

22  survive summary judgment, has there been a discussion of whether

23  cases will be transferred back to the transferor courts, or

24  whether all future proceedings will be carried on before Judge

25  Moreno?

Old Carco LLC - 12/2/21                                    38

1          MR. PRIETO:  Your Honor, there's been some general

2    discussion about what is retained by Judge Moreno, what cases or

3    claims are retained by Judge Moreno, and which claims are

4    transferred back to the transferor courts, but it's been a

5    general discussion, and no decision has been finally made about

6    what gets tried in the Southern District of Florida and what

7    doesn't get tried.  I think he's always said that he will try

8    only those claims over which he has personal jurisdiction.

9          THE COURT:  Has there been a discussion about whether

10   there'll be any trials of bellwether cases before Judge Moreno?

11         MR. PRIETO:  Your Honor, that is a good question.

12   There has not been any discussion on bellwether as of today.

13   the MDL had both a personal injury track and an economic loss

14   track, unlike for example, the GM ignition switch case, there

15   had been no trials of personal injury cases.  Most of those have

16   settled.  And mostly because when there's been a rupture, an

17   inflater, I think both parties have basically said, if there's a

18   rupture, it's clear liability, and all those cases have settled.

19   So, we have not tried any personal injury cases in the MDL.

20         THE COURT:  Okay.

21         MR. PRIETO:  Your Honor, I may have misspoken when I

22   told the Court that there were no pending motions in the

23   recycler claims, there may be a pending motion for lack of

24   personal jurisdiction.  I'm not sure that there is, but I wanted

25   to clarify the record and make sure that I had not misspoke

Old Carco LLC - 12/2/21                    39

1    before the Court.

2          THE COURT:  With respect to the recycler class action,

3    is it also true that the only claims against New Chrysler are

4    based on its alleged wrongful conduct?

5          MR. PRIETO:  I believe that is correct, Your Honor.

6    And I'll make one final comment because very aware of the **Elliot**

7    case in the 2nd Circuit, and we were very aware of the sale

8    order, which we alleged in the complaint.  So, we were pre-

9    cognizant and careful to plead and try to plead around **Elliot**

10   and around the sale order, and that's why all our claims are

11   based on post-sale order conduct or cars purchase post-sale

12   order.

13         THE COURT:  That last part, would you clarify for me

14   what you mean by cars purchased.  New cars purchased post-sale

15   order?

16         MR. PRIETO:  No, the definition of our class vehicles

17   in our complaint, and I'll read from page 28, paragraph 70.

18   Class vehicles refer to all vehicles in the United States that

19   have defective airbags that were manufactured, sold,

20   distributed, or leased by New Chrysler, or manufactured, sold,

21   distributed, or leased by Old Chrysler, and purchased or leased

22   by a class member after June 2009.

23         THE COURT:  But solely based on alleged wrongful

24   conduct by New Chrysler?

25         MR. PRIETO:  That is correct.

Old Carco LLC - 12/2/21                    40

1          THE COURT:  All right.

2          MR. BERG:  Your Honor, can I --

3          THE COURT:  Who's this?

4          MR. BERG:  This is John Berg.  I participated in the

5  class actions.  May I have a minute?  My video is not operating

6  correctly.  I apologize for that, but --

7          THE COURT:  Mr Berg, who's your client?

8          MR. BERG:  FCA is --

9          MR. MALONE:  He's my co-counsel, Your Honor.

10          THE COURT:  Okay.

11          MR. MALONE:  Stellantis.

12          THE COURT:  Go ahead, Mr. Berg.

13          MR. BERG:  So, there is a motion to dismiss pending

14  with respect to the recycler cases, I have been informed.  I

15  think Peter has corrected the record on that.  With respect to

16  the class definition, my understanding is that they're trying to

17  impute new conduct from Old Chrysler to New Chrysler and there

18  is a guilty plea that was accepted in 2017, so I'm not sure how

19  Old Chrysler could have known when we were "the victims".

20          Finally, Your Honor, you had asked a question about

21  whether there's any caselaw that suggests that once the issue

22  has been litigated in a state court, whether it can be revisited

23  by the bankruptcy court.  I was involved in the original

24  bankruptcy proceeding, and I believe there was case by Judge

25  Bernstein where he did revisit the issue and barred the claim.

Old Carco LLC - 12/2/21                    41

1   And I know that you don't want any additional briefing, Your

2   Honor, but if we could just email you the cite to that case, if

3   my memory is correct, it would be greatly appreciated.

4          THE COURT:  I will permit you to file a one-page

5   pleading, so it's available to everybody, that just lists the

6   name and citation of the case in which you believe Judge

7   Bernstein addressed the effect of the sale order after a

8   nonbankruptcy court had already addressed it.

9          MR. BERG:  Yup.

10         THE COURT:  I don't want any argument; I just simply

11  want the citation to the decision.

12         MR. BERG:  Yup.  We're going to respect the Court,

13  obviously, and we'll only give you the citation without any

14  argument.  It's a faint recollection; it's a long time ago.  You

15  know, it was 2009, 2010, but I would appreciate that, Your

16  Honor.  I appreciate it.

17         THE COURT:  All right.  My other question, Mr. Berg

18  is, you indicated you believe there is a motion to dismiss the

19  recycler action; do you know the grounds for the motion?  in

20  just looking at the docket quickly, I know there were still

21  issues about personal jurisdiction.  Is it only a personal

22  jurisdiction motion or are there other issues raised in the

23  motion to dismiss?

24         MR. BERG:  I believe it is just personal jurisdiction,

25  as Mr. Prieto points out.  I didn't file the motion; my

Old Carco LLC - 12/2/21                    42

1  predecessor counsel filed the motion, and it's been pending for

2  some time.  So, I haven't really looked into it more deeply.

3  We've been really ensconced in the consumer class action.  There

4  are depositions going on right now.  I mean we've been literally

5  working every day on the consumer portion of this, and we

6  haven't really been focusing on the recycler portion at this

7  point.

8          THE COURT:  Thank you, Mr. Berg.  Anything else?  Mr.

9  Esserman, go ahead.

10          MR. ESSERMAN:  Yes, I just wanted to answer Your

11  Honor's question about the recycler complaint.

12          THE COURT:  Yes.

13          MR. ESSERMAN:  Whether there were similar statements.

14  It's in paragraph 54 in the recycler complaint.  The cause of

15  action is complaint directed solely to New Chrysler and are

16  based on New Chrysler's wrongful conduct.  That appears in both

17  the recycler, in paragraph 54, if I can read my own writing, and

18  in paragraph 3 of the consumer complaint.

19          THE COURT:  Thank you, Mr. Esserman.  Anybody else

20  have any last comments they want to make?

21          (No response.)

22          THE COURT:  All right.  I'm going to take the matter

23  under advisement and rule in due course.  Thank you very much.

24          ALL COUNSEL:  Thank you.

25                          - o0o -

Old Carco LLC - 12/2/21                                    43

1                           CERTIFICATION

2            I, Rochelle V. Grant, certify that the foregoing is a

3    correct transcript from the official electronic sound recording

4    of the proceedings in the above-entitled matter.

5    *Rochelle V. Grant*

6    December 5, 2021

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25