1              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF FLORIDA
2
                  MDL NUMBER 15-2599
3         MASTER FILE NO.:15-2599-MD-MORENO
            CASE NUMBER 14-24009-CV-MORENO
4
5  IN RE:
   TAKATA AIRBAG PRODUCTS LIABILITY        Courtroom 13-3
6  LITIGATION,
                                           Miami, Florida
7  _____/
                                           December 11, 2018
8  ============================================================
9    PROCEEDINGS ON FINAL APPROVAL OF THE FORD CLASS SETTLEMENT
             GENERAL MOTORS LLC'S MOTION TO STAY
10                    MOTIONS TO DISMISS
          BEFORE THE HONORABLE FEDERICO A. MORENO
11             UNITED STATES DISTRICT JUDGE

12 ============================================================

   APPEARANCES:
13
   FOR PLAINTIFFS:         PETER PRIETO, ESQ.
14                         AARON S. PODHURST, ESQ.
                           MATTHEW P. WEINSHALL, ESQ.
15                         Podhurst Orseck, P.A.
                           25 West Flagler Street
16                         Suite 800
                           Miami, Florida 33130
17                                            305-358-2800
                                       Fax:  305-358-2382
18
                           CURTIS MINER, ESQ.
19                         Colson Hicks Eidson, P.A.
                           255 Alhambra Circle
20                         Penthouse
                           Coral Gables, Florida 33134
21                                            305-476-7400
                                       Fax:  305-476-7444
22
                           DAVID BOIES, ESQ.
23                         Boies Schiller & Flexner, LLP
                           333 Main Street
24                         Armonk, New York 10504
                                              914-749-8200
25                                     Fax: 914-749-8300

```
 1                                    RICHARD B. DRUBEL, ESQ.
                                      Boies Schiller Flexner, LLP
 2                                    26 South Main Street
                                      Hanover, New Hampshire 03755
 3                                                   603-643-9090
                                               Fax: 603-643-9010
 4
     FOR FORD MOTOR COMPANY:          PERRY W. MILES, IV, ESQ.
 5                                    McGuireWoods, LLP
                                      Gateway Plaza
 6                                    800 East Canal Street
                                      Richmond, Virginia 23219
 7                                                   804-775-1000
                                               Fax: 804-775-1061
 8
     FOR OBJECTOR BARBARA M.
 9   OWENS:                           JAN L. WESTFALL, ESQ.
                                      29896 Blue Water Way
10                                    Menifee, California 92584
                                                     650-281-3003
11
     FOR OBJECTOR ANGIE
12   ELDER-JOHNSON:                   ADAM L. HOIPKEMIER, ESQ.
                                      Epps, Holloway, Deloach &
13                                    Hoipkemier, LLC
                                      6 Concourse Parkway
14                                    Suite 2920
                                      Atlanta, Georgia 30328
15                                                   706-508-4000
                                               Fax: 706-042-6750
16
     FOR OBJECTOR DOLLY L.
17   WRIGHT:                          PAUL ROTHSTEIN, ESQ.
                                      626 Northeast 1st Street
18                                    Gainesville, Florida 32601
                                                     352-376-7650
19                                             Fax: 352-374-7133
20   FOR OBJECTOR DOUG R.
     PERKOWSKI:                       JOHN J. PENTZ, ESQ.
21                                    The Law Offices of John J. Pentz
                                      19 Widow Rites Lane
22                                    Sudbury, Massachusetts 01776
                                                     978-261-5725
23                                             Fax: 978-405-5161
24
25
```

```
 1  FOR GENERAL MOTORS:        LEONID FELLER, ESQ.
                               RENEE D. SMITH, ESQ.
 2                             Kirkland & Ellis, LLP
                               300 North LaSalle
 3                             Chicago, Illinois 60654
                                             312-862-2954
 4                                      Fax: 312-862-2200
 5  FOR DAIMLER AG and
    MERCEDES-BENZ USA, LLC:    JAIME A. BIANCHI, ESQ.
 6                             White & Case, LLP
                               200 South Biscayne Boulevard
 7                             Suite 4900
                               Miami, Florida 33131
 8                                           305-995-5259
                                        Fax: 305-358-5744
 9
    FOR VOLKSWAGEN and
10  AUDI AKTIENGESELLSCHAFT:   SUHANA S. HAN, ESQ.
    FCA US LLC:                BRIAN D. GLUECKSTEIN, ESQ.
11                             Sullivan & Cromwell, LLP
                               125 Broad Street
12                             New York, New York 10004
                                             212-558-4647
13                                      Fax: 212-291-9608
14                             JAMES H. CONGDON, ESQ.
                               Sullivan & Cromwell, LLP
15                             1700 New York Avenue, N.W.
                               Suite 700
16                             Washington, DC 20006
                                             202-956-6960
17                                      Fax: 202-293-6330
18  FOR HONDA MOTOR CO.:       MICHAEL MALLOW, ESQ.
                               Sidley Austin, LLP
19                             1999 Avenue of the Stars
                               17th Floor
20                             Los Angeles, California 90067
                                             310-595-9488
21                                      Fax: 310-595-9501
22  FOR BMW AG:                STEVEN D. JANSMA, ESQ.
                               Norton Rose Fulbright US LLP
23                             300 Convent Street
                               Suite 2100
24                             San Antonio, Texas 78205
                                             210-224-5575
25                                      Fax: 210-270-7205
```

```
 1  FOR NISSAN NORTH AMERICA
    INC.:                      S. VANCE WITTIE, ESQ.
 2                             Drinker Biddle & Reath, LLP
                               1717 Main Street
 3                             Suite 5400
                               Dallas, Texas 75201
 4                                               469-357-2537
                                            Fax: 469-327-0860
 5
    SPECIAL ADMINISTRATOR:     PATRICK A. JUNEAU, ESQ.
 6                             Juneau David, APLC
                               1018 Harding Street
 7                             Suite 202
                               Lafayette, Louisiana 70503
 8                                               337-269-0052
                                            Fax: 337-269-0061
 9
    REPORTED STENOGRAPHICALLY
10  BY:                        GILDA PASTOR-HERNANDEZ, RPR, FPR
                               Official United States Court Reporter
11                             Wilkie D. Ferguson Jr. US Courthouse
                               400 North Miami Avenue - Suite 13-3
12                             Miami, Florida  33128   305.523.5118
                               gphofficialreporter@gmail.com
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

## TABLE OF CONTENTS

2                                                                    Page

3

4

Reporter's Certificate ................................... 236

5

6

7

8

9

10

11                          **EXHIBITS**

12   Exhibits                  Marked for          Received
                               Identification      in Evidence
13
     Description                 Page     Line      Page    Line
14

15

16

17

18

19

20

21

22

23

24

25

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 6 of 259
Final Approval of Class Settlement

6

1          (The following proceedings were held at 10:03 a.m.:)

2          THE COURT:  Let's do the Takata/Ford.  I call it

3   Takata, but it's really the Ford Fairness Hearing.  So if some

4   of the lawyers want to move up.

5          The interpreters are excused.  Thank you very much.  I

6   think all these folks speak English, so I appreciate it.

7          We have chairs in front if anybody who is going to be

8   at the Fairness Hearing, any lawyer who's going to speak at the

9   Fairness Hearing, not on the Motion to Dismiss, but at the

10  Fairness Hearing, then grab a chair there.  If you're not going

11  to speak, then it doesn't matter, because I assume if you're

12  not -- if you haven't gone past the bar, you don't want to

13  speak.  See, that way I know.  I'm not inviting speakers.  I'm

14  allowing whatever the law requires, but if you're back there, it

15  means you've elected to be an observer or wait until the Motion

16  to Dismiss.

17         Okay.  We're here on the proposed Ford settlement.  Who

18  do we have on behalf of the plaintiffs?

19         MR. PRIETO:  Your Honor, Peter Prieto, Matt Weinshall,

20  and Aaron Podhurst on behalf of the plaintiffs.

21         MR. BOIES:  Good morning, Your Honor.  David Boies on

22  behalf of the plaintiffs.

23         THE COURT:  I heard you took senior status, is the way

24  I say it.

25         MR. BOIES:  I'm working on it.  I'm working on it.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 7 of 259
Final Approval of Class Settlement

7

 1          THE COURT:  Something I wish I would do considering

 2    I've done three trials this month already.

 3          MR. MINER:  Good morning, Your Honor.  Curtis Miner on

 4    behalf of the plaintiffs.

 5          MS. WESTFALL:  Your Honor, Jan Westfall on behalf of

 6    the objector.  I'm not sure which table I should be sitting at.

 7          THE COURT:  I don't know.

 8          MS. WESTFALL:  Third table.

 9          THE COURT:  Okay.  All right.  You don't like either

10    side.

11          Okay.  What is your name?

12          MS. WESTFALL:  Jan Westfall, Your Honor, on behalf of

13    objector Barbara Owens.

14          THE COURT:  Okay.  Welcome.

15          All right.  Who else do we have?

16          MR. MILES:  Your Honor, on behalf of Ford Motor

17    Company, Perry Miles.

18          MR. HOIPKEMIER:  Good morning, Your Honor.  Adam

19    Hoipkemier on behalf of objector Angie Elder-Johnson.

20          MR. PENTZ:  Good morning, Your Honor.  John Pentz on

21    behalf of objector Doug Perkowski.

22          MR. ROTHSTEIN:  And Paul Rothstein on behalf of

23    objector Dolly Wright.

24          THE COURT:  All right.  Why don't we hear from the

25    objectors first?  You're closest to that microphone.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 8 of 259
Final Approval of Class Settlement

8

1          Tell us again who you represent and why you object.

2          MS. WESTFALL:  Thank you, Your honor.

3          Jan Westfall and I present Barbara Owens and I'm going

4    to just focus on -- our fundamental concern with the settlement

5    has to do with the degree to which the settlement piggybacks on

6    the work of NHTSA and the mandates under the Coordinated Remedy

7    Order.  I'm picking up on a concern that was raised, that you,

8    yourself, raised in the hearing on approval of the second set of

9    settlements, which is, how do we tell the public that the

10   plaintiffs have achieved value added for the public and how do

11   we distinguish what the Government has done from what is

12   achieved in this lawsuit?

13         Our concern here is we have a $300 million settlement

14   where only a little over 20 percent, if we calculate it

15   correctly, is monetary benefit that will be going to the class,

16   and a lot of the other benefits are non-monetary.  In

17   particular, the Outreach Program is a hundred million dollars,

18   it's one-third of the settlement.

19         THE COURT:  That's one of the objections before that

20   was made, right, with the other settlement?

21         MS. WESTFALL:  Correct.

22         THE COURT:  What do I do since I've approved it before?

23   Now what do I do?

24         MS. WESTFALL:  So, Your Honor, I realize that that puts

25   you in a bit of a conundrum.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 9 of 259
Final Approval of Class Settlement

9

1          THE COURT:  What do I do?

2          MS. WESTFALL:  I think that these objections were

3    raised previously and in the prior hearing --

4          THE COURT:  Did they go up on appeal?

5          MS. WESTFALL:  I was not involved in the first two.  I

6    believe there was some settlement of some of the issues and I

7    think that -- well, I can really only speak to this settlement,

8    Your Honor.

9          THE COURT:  I know, but what do I do?  You know, I kind

10   of always want to find a remedy to issues.  I sometimes fail

11   miserably which is why so many of my cases are making my court

12   reporter wealthy because everybody is going to trial, but she is

13   going to end up in the hospital.  But if people don't want to

14   reach an agreement, people go to trial.  In a class action case

15   if you don't like a settlement, what's the solution in a class

16   action?  Opt out.

17         MS. WESTFALL:  Here, Your Honor, I'm not concerned so

18   much with the settlement itself, but more that the Court value

19   the benefits that are achieved for the class.

20         THE COURT:  So you want me to reduce the value of it.

21         MS. WESTFALL:  So in particular --

22         THE COURT:  How does that help your client?

23         MS. WESTFALL:  Well, so we have $300 million of nominal

24   value for the settlement.  If you were to say the hundred

25   million dollars in the Outreach Program is duplicative of what

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 10 of 259
Final Approval of Class Settlement

10

1    was mandated by NHTSA and that Ford was already engaging in the

2    development process of conducting this sophisticated Outreach

3    Program that is contemplated here, so I'm going to exclude that

4    from the valuation of settlement, then you have a $200 million

5    settlement.  If you take attorneys' fees out of a $200 million

6    settlement, even if you give them their 25 percent, you're still

7    getting a lot more money for the class.  You're getting that

8    extra 25 million that will go to the class that would have gone

9    to attorneys' fees to fund the --

10        THE COURT:  So your objection comes down to saying the

11   attorneys' fees are too high, give the class members more money.

12   I mean, I hate -- you know, I'm not as eloquent as you are, but

13   is that the bottom line would you say?

14        MS. WESTFALL:  Well, it is true that if you exclude

15   these non-monetary benefits, the class will get more money.

16        THE COURT:  How much more money, each member?

17        MS. WESTFALL:  Well, if you take out the Outreach

18   Program, or at least significantly discount it, because we know

19   that Ford was doing a lot of the hundred million dollar plan

20   already, if you take out part of the Rental Program because Ford

21   had already committed to at least a component of the Rental

22   Program --

23        THE COURT:  But why were they doing that?  Good

24   marketing, you know, you want to still sell cars, a little push.

25   It was almost like a coalition here.  The issue here is, who

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 11 of 259
Final Approval of Class Settlement

11

1   deserves the credit?  You know, who deserves the credit for the

2   first Iraq war, right?  The United States probably, but there

3   were what -- I mean, I forget, since I saw all of the funeral,

4   what, 40 countries or whatever it is.  Everybody put in

5   something because it was a team effort.

6            So what do I do?  I start --

7            MS. WESTFALL:  You can discount it.  You know, you

8   could say I think that --

9            THE COURT:  Who does that help, if I discount it?

10           MS. WESTFALL:  Again, it helps the class because the

11  amount that you exclude from the total pool to be considered for

12  an award of attorneys' fee results in more money for the class.

13           THE COURT:  How much money?

14           MS. WESTFALL:  Okay.  So let's say --

15           THE COURT:  More or less.

16           MS. WESTFALL:  -- you exclude the Outreach Program and

17  most of the Rental Car Program, then your settlement is only

18  worth $150 million.  Instead of $75 million in attorneys' fees,

19  you are paying 37 and a half million in attorneys' fees.

20           THE COURT:  And they would get cash.

21           MS. WESTFALL:  That 37 and a half goes to the class.

22  So their cash goes up from roughly 60 million to, you know, a

23  hundred million.

24           THE COURT:  Well, let's say that that's reasonable.  I

25  am not suggesting it is or it isn't, at least not yet.  What's

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 12 of 259
Final Approval of Class Settlement

12

1    my power?  I'm not a party.  I'm just a judge.  I know you all

2    think a judge can do anything he wants.  It's really not true.

3    What do I do?

4           All I can do is say yea or nay.  I can't modify.  I

5    mean I could modify a Consent Decree after a lot of evidence,

6    and it seems like that's in vogue now with the homeless, the

7    water case.  Everybody wants to do that, the Everglades.

8           But this one, I can't get in there and say, hey, what

9    do you think about this?  I can say, yea or nay.  If I say nay,

10   who gets hurt, who gets helped?

11          MS. WESTFALL:  Well, so without saying nay, you can

12   actually value the settlement differently and award attorneys'

13   fees based on what you consider the real value that plaintiffs

14   have achieved for the class.

15          THE COURT:  Which is kind of what I did the last time.

16   I approved it and reduced, the plaintiffs' lawyers would say

17   substantially, some people may say not enough.  Everybody always

18   disagrees about that.  So that's really what you want me to do.

19          MS. WESTFALL:  You know, I think that there are other

20   problems and I know that some of the other objectors are going

21   to speak to some of the class conflict issues, but at a

22   baseline, Your Honor, I believe if you did reduce, you know, or

23   only give credit for half of the benefits that the plaintiffs

24   have achieved -- the problem here is that we know that some of

25   these benefits were already in the works, that Ford was doing

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 13 of 259
Final Approval of Class Settlement

13

 1  it.  And to award --

 2          THE COURT:  Totally unrelated to the lawsuit.

 3          MS. WESTFALL:  Sorry?

 4          THE COURT:  Totally unrelated to the lawsuit because

 5  the Government is always the first one and the most efficient.

 6  Our executive branch is always at the top of everything.

 7          MS. WESTFALL:  Maybe not the most efficient, but I

 8  think if you look at the Outreach Program in particular --

 9          THE COURT:  The judiciary is, by the way.

10          MS. WESTFALL:  -- and compare the Settlement Agreement

11  to the Coordinated Remedy Order and other NHTSA publications,

12  and in our objection we actually went through several of the

13  NHTSA --

14          THE COURT:  You did.  I read that.

15          MS. WESTFALL:  -- publications and documents, you'll

16  see that the language of the settlement tracks what NHTSA is

17  requiring.  They couch them as recommendations, but they require

18  the companies to submit written engagement plans.  They require

19  the company -- their focus was on completion of the recall

20  remedy.  They did not assign a specific dollar amount that had

21  to be spent on this outreach, that's true, but they did the

22  require the companies to do it.  To say that it was just, you

23  know, sort of a suggestion is minimizing what the Government was

24  doing.

25          THE COURT:  All right.  And this is on behalf of

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21    12-11-18
Transcript of MDL Hearing   Pg 14 of 259
Final Approval of Class Settlement

14

1  Barbara Owens?

2          MS. WESTFALL:  Yes, Your Honor.

3          THE COURT:  All right.  You wrote everything in at

4  Docket Entry 3108.

5          MS. WESTFALL:  Thank you, Your Honor.

6          THE COURT:  Okay.  What other objector wants to speak?

7  Grab a microphone that's closest to you.

8          MR. HOIPKEMIER:  Good morning, Your Honor.  Adam

9  Hoipkemier.

10         THE COURT:  You can raise that.  You're taller than the

11 criminal defendant.  No, there's a button that nobody sees.

12 There is a sign on it.  I checked it out, but I might as well

13 put that wreath on there.  That way they have an excuse.  Okay.

14 I'm sorry.  Go ahead, again.

15         MR. HOIPKEMIER:  Your Honor, we represent Angie

16 Elder-Johnson.  Ms. Elder-Johnson is the Clerk of Oconee Court

17 in Georgia, which is outside Athens.  I expect you're going to

18 hear a lot about professional objectors when the plaintiffs make

19 their presentation.

20         THE COURT:  Okay.  Could you tell me your name again?

21         MR. HOIPKEMIER:  It's Adam Hoipkemier, Your Honor.

22         THE COURT:  You told me that.  And you represent who?

23         MR. HOIPKEMIER:  Angie Elder-Johnson.

24         THE COURT:  Okay.  I got it.  You said she is who?

25         MR. HOIPKEMIER:  She is the Clerk for the Oconee County

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 15 of 259
Final Approval of Class Settlement

15

 1  Court in Georgia.  She's the Clerk of Court for a State Court in

 2  Georgia.

 3         THE COURT:  And she is speaking for that court or just

 4  individually?

 5         MR. HOIPKEMIER:  No, I only made that point to --

 6         THE COURT:  I thought I had missed something.

 7         MR. HOIPKEMIER:  -- say that she's not a professional

 8  objector.  We aren't either.  Whenever they come up here and say

 9  mean things about the objectors, that doesn't apply to us.

10         THE COURT:  Okay.

11         MR. HOIPKEMIER:  We do agree --

12         THE COURT:  You complain about insufficient information

13  for me to evaluate it and you don't like the $74 million fee.

14  You think 35 million is reasonable.  Is that a summary of it?

15         MR. HOIPKEMIER:  So it's similar to the things that

16  Ms. Westfall said.

17         THE COURT:  I know.  That's why I said it that way.

18         MR. HOIPKEMIER:  So I won't repeat what she said.  We

19  do agree with one thing that Ford made a point in their papers

20  about, which is that to the extent professional objectors didn't

21  comply with Your Honor's instructions in the Preliminary

22  Approval Order, you should deny those objections.  There are

23  some ghost written objections that are copied and pasted.  We

24  agree with the parties that that's an issue and you should

25  overrule objections that they are boilerplate --

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 16 of 259
Final Approval of Class Settlement

16

 1          THE COURT:  Yours are not ghost written, you wrote

 2   them.

 3          MR. HOIPKEMIER:  Correct.

 4          THE COURT:  Okay.  So we won't deal with that in your

 5   case.

 6          MR. HOIPKEMIER:  Okay.  So we're going to focus on two

 7   aspects of the settlement.  Does Your Honor have a copy of the

 8   Settlement Agreement?

 9          THE COURT:  Oh, I read the whole thing, unfortunately.

10          MR. HOIPKEMIER:  Okay.  All right.

11          THE COURT:  That's what I do when I want to go to bed.

12   It's better than any pills you want to take or warm milk or

13   anything, but I want you to summarize it because you put it in

14   in Docket Entry 3091.

15          MR. HOIPKEMIER:  We did.

16          THE COURT:  Yeah.  I can still read.  What do you think

17   I should do?  Reject the settlement.

18          MR. HOIPKEMIER:  As to Section III.A.2.h and Section

19   III --

20          THE COURT:  Can I do that?  Can I reject the portion

21   and approve the others?  I can do that?

22          MR. HOIPKEMIER:  No, you cannot do that as to the

23   settlement, but you can do that as to fees.  So it's not yea or

24   nay on fees.  Under Rule 23, your Honor can completely disregard

25   the --

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 17 of 259
Final Approval of Class Settlement

17

 1          THE COURT:  So I should approve the settlement and

 2   reduce the fees from 74 million to 35 million.  That's what you

 3   said.

 4          MR. HOIPKEMIER:  No.  You should not approve Section

 5   III of the settlement because it gives the parties discretion to

 6   change the categories of payments without Your Honor's

 7   supervision.

 8          THE COURT:  So you want me to decide which lawyer gets

 9   what within the plaintiffs.

10          MR. HOIPKEMIER:  No, that's not it.  The point is

11   that --

12          THE COURT:  What do you want me to do?

13          MR. HOIPKEMIER:  -- there are three categories,

14   essentially, of credits or payments under the settlement.  After

15   Your Honor grants -- if Your Honor were to grant preliminary

16   approval, Section III gives the lawyers the option to change the

17   distributions that they have put in the Settlement Agreement,

18   and so that is a violation of Your Honor's obligation to look at

19   the settlement.  They could come in and change 50 million from

20   one category to another without any Court oversight and that

21   circumvents Rule 23.

22          THE COURT:  And the reason they could do that is to

23   decide who gets what.

24          MR. HOIPKEMIER:  They can move money under the terms of

25   the settlement from --

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 18 of 259
Final Approval of Class Settlement

18

1          THE COURT:  From who to whom?

2          MR. HOIPKEMIER:  -- cash payments to the class to the

3     Outreach Program.

4          THE COURT:  Okay.  You don't like the Outreach Program

5     either.

6          MR. HOIPKEMIER:  We do not like the Outreach Program.

7          THE COURT:  So eliminate the Outreach Program and give

8     more cash to whom?  To nobody.

9          MR. HOIPKEMIER:  I'm only talking about this specific

10    term that allows the lawyers discretion to change the pot of

11    money as they see fit if Your Honor were to approve the

12    settlement.  All we are suggesting is that you include a term in

13    the Final Approval Order that requires any sort of suggested

14    change to the allocation of funds to come to Your Honor first.

15         THE COURT:  I can do that.

16         MR. HOIPKEMIER:  All right.

17         THE COURT:  No, it's a question.  Can I do that?

18         MR. HOIPKEMIER:  Yes.

19         THE COURT:  I can do that and say, I approve it, but I

20    don't approve this section.

21         MR. HOIPKEMIER:  I think you could include a sentence

22    in the Final Approval Order that said, any change to the terms

23    of the distribution under the terms of the settlement requires

24    notice to the Court or approval of the Court.  Your Honor has

25    broad discretion.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 19 of 259
Final Approval of Class Settlement

19

1          THE COURT:  So when they give notice, then what am I

2     going to do?  What do I do?  I hear evidence?

3          MR. HOIPKEMIER:  It's just a Rule 23 issue where Your

4     Honor at least can look at it.  I don't think you would have to

5     enter any sort of order, but at least it's going past the Court.

6          THE COURT:  No, but if it goes past the Court -- there

7     are a lot of things I like to read and it's very interesting,

8     but when it comes to a case, it's only interesting for me

9     personally if I can do something about it.  If I cannot do

10    something, it's like reading about another case, right?  So what

11    happens if -- what notice?  They're going to tell me, hey, we're

12    moving this from A to B.  What do I do?

13         MR. HOIPKEMIER:  That's within the Court's discretion.

14         THE COURT:  I read it and I go, oh, okay.  Do I bring

15    them in and say why or don't?  And then what happens?

16         MR. HOIPKEMIER:  That's up to Your Honor.

17         THE COURT:  Do you come in and say, I told you so,

18    Judge.  Then what do I do?

19         Mr. HOIPKEMIER:  It's up to Your Honor under Rule 23 I

20    would say.

21         THE COURT:  After I approve it, I can continue to

22    supervise it.  It's like a Consent Decree.

23         MR. HOIPKEMIER:  You can maintain continuing

24    jurisdiction over the enforcement of the settlement.

25         THE COURT:  For how long?

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 20 of 259
Final Approval of Class Settlement

20

1          MR. HOIPKEMIER:  As long as you want.

2          THE COURT:  Oh, my goodness gracious.  I may not live

3   that long though.  See, that's the problem.  All right.  What

4   else?

5          MR. HOIPKEMIER:  Turning to the issue of the fee

6   application, our objection is to the inclusion of the

7   non-monetary relief in the common fund.  It's similar.

8          THE COURT:  That's kind of like the same thing.

9          MR. HOIPKEMIER:  Right.  So I'm not going to talk about

10  the Outreach Program again.  I'm going to talk about the Loaner

11  Vehicle Program and the extended warranty on the airbag

12  inflator.

13         THE COURT:  That's not a good thing?

14         MR. HOIPKEMIER:  I think it's useless.

15         THE COURT:  An extended warranty is useless.

16         MR. HOIPKEMIER:  On the inflator piece of the airbag.

17         THE COURT:  Because?

18         MR. HOIPKEMIER:  For one thing, no one would ever know

19  prior to an accident that an airbag inflator was faulty as far

20  as I can tell and would have no way to make a claim to get their

21  airbag repaired.  How would you ever know?

22         THE COURT:  Well, don't they get notices now, the class

23  members?

24         MR. HOIPKEMIER:  No, this is a warranty on the

25  replacement inflator.  So a class member goes in, gets their

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 21 of 259
Final Approval of Class Settlement

21

1  airbag inflator replaced.  Now they have a warranty on that for

2  the next X number of years, so if it fails again, then Ford will

3  repair or replace it.

4        THE COURT:  Why isn't that a good thing?  You said

5  useless.

6        MR. HOIPKEMIER:  What I'm saying, I think it's illusory

7  and useless because -- has Your Honor ever looked at the airbag

8  inflator in your vehicle?  I couldn't find an airbag inflator

9  and I don't know if it is faulty or not.

10       THE COURT:  All right.  What else?

11       MR. HOIPKEMIER:  So the way the Supreme Court has

12 defined the common fund, we think that the common fund is

13 limited to the $140 million that's allocated to reimbursement of

14 expenses and residual payments to the class, and we agree that a

15 25 percent fee, the benchmark, would be appropriate for the 140

16 million common fund.  We disagree that class counsel can include

17 the nine figures in purported value of non-monetary relief,

18 which is the airbag inflator and the loaner vehicles.  Your

19 Honor denied our --

20       THE COURT:  Because that's useless, too.  The loaner

21 vehicle is useless, too?

22       MR. HOIPKEMIER:  Your Honor has no way to reliably

23 value what these loaner vehicles are worth to the class.  To be

24 part of the common fund, it needs to be a lump sum that's

25 mathematically ascertainable to determine --

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 22 of 259
Final Approval of Class Settlement

22

1          THE COURT:  So it's better to say, settle, don't

2   include that.  That's a better settlement.

3          MR. HOIPKEMIER:  That's not what I'm saying.  I'm only

4   talking about the fee application --

5          THE COURT:  Well, that's what I'm saying though.

6          MR. HOIPKEMIER:  You can approve the settlement and

7   still look at what is actually consisting of the common fund for

8   the purposes of determining a percentage fee.

9          THE COURT:  So approve the loaner vehicle portion of

10  the settlement, even approve what you say is a worthless

11  extended warranty, but just give them less money.

12          MR. HOIPKEMIER:  We aren't challenging --

13          THE COURT:  I would probably not write it like that,

14  but you've written it kind of like that.  That's what it is.  So

15  the class member is better off, worse off, or the same?

16          MR. HOIPKEMIER:  We aren't --

17          THE COURT:  Ford is better off because they spent less

18  money, or what happens?

19          MR. HOIPKEMIER:  We haven't objected to the fairness of

20  the loaner vehicles or the airbag warranty.  We're only saying

21  that --

22          THE COURT:  It's the value.

23          MR. HOIPKEMIER:  We're saying, if this is the deal you

24  want to make, then this is your common fund, it's 140 million,

25  it's not 300 million.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 23 of 259
Final Approval of Class Settlement

23

1           THE COURT:  So what happens if I agree with you?  The

2    lawyers get less, the class members get the same thing, you

3    think some things are useless, and Ford gets more money.  Tell

4    me no.

5           MR. HOIPKEMIER:  The lawyers get less because you're

6    calculating --

7           THE COURT:  Okay.

8           MR. HOIPKEMIER:  So the class gets that cash, that goes

9    back into the residual payments.  So the class directly

10   benefits.

11          THE COURT:  How much?  I've asked your other counsel

12   how much.

13          MR. HOIPKEMIER:  About 40 million.

14          THE COURT:  Based upon what we expect the return rate

15   would be of people who actually seek it, what do you think, how

16   much?

17          MR. HOIPKEMIER:  Are you asking me to estimate the

18   claims payments in this case?

19          THE COURT:  Yeah.

20          MR. HOIPKEMIER:  It will be minuscule.

21          THE COURT:  Okay.  So I just wanted to make sure.  So

22   you want me to do all of that for a minuscule benefit.  So I

23   want to balance out the minuscule benefit to the class, the

24   worthless warranty, and the loaner car, which is good, but don't

25   give any value to it.  I am doing a balancing test, but way down

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 24 of 259
Final Approval of Class Settlement

24

1    here, right?  Seems like it.

2           MR. HOIPKEMIER:  The plaintiffs' lawyers were the ones

3    who structured this case with the claims process.  They could

4    have distributed cash to every class member that got the recall,

5    and then it would not have been a minuscule claims rate.

6           THE COURT:  And then you wouldn't object.

7           MR. HOIPKEMIER:  If this was a $299 million cash

8    settlement with checks to every class member who made a claim,

9    we would not object.

10          THE COURT:  All right.  I got it.  Thank you.

11          MR. HOIPKEMIER:  Just a final point:  Your Honor denied

12   our motion related to the opinions of Kirk Kleckner.  That makes

13   a difference to the common fund because his opinion --

14          THE COURT:  You want him to testify.

15          MR. HOIPKEMIER:  We would like to call him to testify.

16          THE COURT:  Oh, I don't do that.  You've made your

17   point.

18          MR. HOIPKEMIER:  Okay.

19          THE COURT:  Okay?  All right.  Thank you.

20          Kleckner is with a K.

21          Next.

22          MR. PENTZ:  Good morning, Your Honor.  I'm John Pentz

23   on behalf of objector Doug Perkowski.

24          THE COURT:  Hold on, hold on.  Okay.  I got it.  I've

25   got to look at my notes.  This is a lot.  Docket Entry 1088.  I

09-50002-mg    Doc 8576-1    Filed 01/04/22    Entered 01/04/22 12:35:21    12-11-18
Transcript of MDL Hearing    Pg 25 of 259
Final Approval of Class Settlement

25

1    don't know if you knew that but okay.  Because that's in case

2    14-24009.  Some cases have more docket entries than others.

3              MR. PENTZ:  You are correct.  That is the docket

4    number.

5              THE COURT:  You don't like the attorneys' fees, they're

6    grossly excessive, they should be determined like all the other

7    settlements, you don't like the Outreach Program.  That's

8    similar to what others have said, right?

9              MR. PENTZ:  Right.

10             THE COURT:  Then you say there are class conflicts,

11   intra-class conflicts.  What do you want to say about that?  And

12   you don't like the Rental Car Program.

13             MR. PENTZ:  What is different -- well, the rental car

14   is fine here because, ironically, Ford was not providing rental

15   cars apparently before the settlement, unlike Honda and many of

16   the other companies.  They were one of the holdouts and,

17   therefore, it does appear the rental car benefit may actually be

18   a true benefit here.

19             But the Outreach Program continues to be, in my opinion

20   and my client's opinion, a colossal waste of money, but also

21   what's unusual, this is the only settlement I can think of where

22   the lead plaintiffs negotiated an enormous benefit that's

23   one-third of the settlement for people who are unlike

24   themselves, they're not similarly situated to the lead

25   plaintiffs who by definition know about the problem, know about

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 26 of 259
Final Approval of Class Settlement

26

1   the urgency of getting their airbag replaced and presumably have

2   already done so.

3         THE COURT:  What do you mean, presumably have already

4   done so?

5         MR. PENTZ:  Well, I know there's a shortage of

6   replacement parts, so maybe some of the lead plaintiffs may not

7   have been able to replace their airbag inflator yet, but they

8   certainly don't need additional outreach to tell them to do so.

9         THE COURT:  But other people might, right?

10        MR. PENTZ:  Yes, other people might, but none of those

11  other people are like the lead plaintiffs and that's somewhat

12  ironic and unusual here.

13        THE COURT:  What do you mean, they're not like the

14  plaintiffs?

15        MR. PENTZ:  Well, they're not similarly situated.  The

16  benefit of --

17        THE COURT:  In what sense are they not similarly

18  situated?

19        MR. PENTZ:  Because the benefit of the Outreach Program

20  can't benefit the lead plaintiffs.

21        THE COURT:  Because they know.  They are lead

22  plaintiffs.

23        MR. PENTZ:  Because they know, right.

24        THE COURT:  Well, lead plaintiffs will always know more

25  than the others.  That's the reason we want to give notice,

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 27 of 259
Final Approval of Class Settlement

27

1  right?

2          MR. PENTZ:  Right.  And I think that if the notice in

3  this case had been a little better and different, it could have

4  made the entire class aware of the need to go in and replace

5  their inflators right away.

6          THE COURT:  How could notice have been better?

7          MR. PENTZ:  Well, as the parties argued, that the

8  notice doesn't really duplicate the Outreach Program because the

9  notice was about exercising your right to object and opt-out

10  and, you know, make a claim at the end of the four years.  But

11  it could have been different, right?  It could have been

12  formatted differently, it could have --

13          THE COURT:  Like what?

14          MR. PENTZ:  Well, more like what the Outreach Program

15  is doing and what --

16          THE COURT:  So it's a good Outreach Program?

17          MR. PENTZ:  Well, it is good to tell people to take

18  their car in and get them replaced.

19          THE COURT:  But it's not good because?

20          MR. PENTZ:  Well, because --

21          THE COURT:  It's valued too high.

22          MR. PENTZ:  -- as Ms. Westfall said, NHTSA already

23  requires it.

24          The third Coordinated Remedy Order, the plaintiffs

25  argue, well, we pick up -- the Outreach Program picks up where

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 28 of 259
Final Approval of Class Settlement

28

1  that leaves off.  But as I read it, it doesn't leave off

2  anywhere.  It encourages the companies to be very creative and

3  it --

4          THE COURT:  What do you mean, very creative?

5          MR. PENTZ:  Well, the methods of contact, banner ads,

6  email, you know, graphics, all of those things that are

7  recommended in the Coordinated Remedy Order.

8          THE COURT:  What's wrong with that?

9          MR. PENTZ:  Oh, nothing, but that means that the

10 companies were already under an obligation to do those things.

11 The Outreach Program does those things.  That clearly is going

12 to save the companies money that they would have otherwise

13 spent.

14         THE COURT:  So it's duplicative basically.

15         MR. PENTZ:  Right.  That's the argument there.  A

16 smaller Outreach Program, a smaller portion of the settlement

17 may have been okay, may have been permissible.  We're talking

18 about one-third of the total amount here --

19         THE COURT:  Yeah, you said that.

20         MR. PENTZ:  -- and we have some experience, too.  As

21 the parties say, this is supposed to be a scientific process

22 where we look at what's happened up to now and we make

23 adjustments.

24         I would argue even though you approved those other

25 settlements, we now have enough information and we should make

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 29 of 259
Final Approval of Class Settlement

29

1   some adjustments and we should use that money to incentivize

2   people to bring their cars in.  If the part is available, they

3   get the replacement; if it's not, they get a rental car and they

4   don't have to drive around in their dangerous vehicle that has a

5   defective airbag.

6        THE COURT:  And this settlement doesn't provide for

7   that?

8        MR. PENTZ:  Well --

9        THE COURT:  It does.

10        MR. PENTZ:  Well, yeah, it does.

11        THE COURT:  If I'm in left field, bring me home.

12        MR. PENTZ:  It doesn't provide the financial incentive

13   to bring your car in.  That has not been --

14        THE COURT:  Financial incentive.  Bring in your car and

15   we give you $100 cash, that would do it.

16        MR. PENTZ:  I would think that would motivate a large

17   portion of people who right now are dragging their feet.

18        THE COURT:  Oh, there would probably be people who

19   don't have a damaged airbag that would come in probably.  Okay.

20        MR. PENTZ:  The dealer can verify that.

21        THE COURT:  Of course.

22        MR. PENTZ:  There's no chance of outsiders coming in

23   and stealing that.

24        THE COURT:  Of course.

25        MR. PENTZ:  Moving on to the fees, I would urge Your

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 30 of 259
Final Approval of Class Settlement

30

1   Honor to follow the framework that Your Honor laid out at the

2   Honda hearing, which is that the percentage award should get

3   lower in each successive settlement and the multiplier.  Class

4   counsel have disclosed that their total lodestar or they claim

5   that their total lodestar to date is 139 million, and we know

6   that as of last February at the Honda hearing, they said it was

7   121, which means they've generated $18 million in lodestar in

8   one year.

9          Now, maybe that's true, but certainly a portion of that

10  is related to the implementation of the other six settlements,

11  and therefore, their lodestar related to Ford settlement could

12  be as low as 10 million, which means they're asking for a

13  multiplier here of over 7.  And in my client's opinion, the fee

14  here should be no more than 10 percent, and the multiplier in

15  the last of the cases which had the least risk because the risk

16  was eliminated --

17          THE COURT:  Is this the last of the cases?

18          MR. PENTZ:  Well, I don't know.  Maybe there was one

19  more.

20          THE COURT:  I want you to hang around and help me

21  decide the Motions to Dismiss.  Okay.

22          MR. PENTZ:  Okay.  There may be one more.

23          THE COURT:  It's the seventh I guess.

24          MR. PENTZ:  Yes, the seventh case.  Well, as soon as

25  class counsel was fully compensated for their lodestar with the

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 31 of 259
Final Approval of Class Settlement

31

 1  multiplier of 2.5, you know, the risk went away and, therefore,

 2  this is the least risky.  They should get the lowest multiplier

 3  and the lowest percentage.

 4       THE COURT:  All right.  "All right" means I understand.

 5  Okay?

 6       MR. PENTZ:  Okay.  Thank you.

 7       THE COURT:  All right.  Thank you.

 8       Who else?

 9       MR. ROTHSTEIN:  Good morning, Your Honor.  Paul

10  Rothstein on behalf of Dolly Wright.

11       Your Honor, I have --

12       THE COURT:  Hold on a second.

13       MR. ROTHSTEIN:  Sure.

14       THE COURT:  Let me find you here.  Okay.  I've got you.

15       MR. ROTHSTEIN:  Your Honor, I have two witnesses in the

16  courtroom that I'd like to --

17       THE COURT:  Oh, you wanted to call Brian Fitzpatrick,

18  Kirk Kleckner and Patrick Juneau, who is here.

19       MR. ROTHSTEIN:  Right.  Patrick Juneau is here, Your

20  Honor.

21       THE COURT:  I'm going to let Patrick Juneau talk.

22  You're right.

23       MR. ROTHSTEIN:  Well, Your Honor, I have two other

24  witnesses that I filed a Supplemental Witness List.  They're

25  marketing and advertising individuals.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 32 of 259
Final Approval of Class Settlement

32

    1            THE COURT:  I'm not going to hear them.

    2            MR. ROTHSTEIN:  They're in the courtroom, Your Honor.

    3            THE COURT:  A lot of people are.  The courtroom is

    4    always open for anything you want.  Unfortunately, or

    5    fortunately, there's always activity in this courtroom.

    6            But you wanted Patrick Juneau to speak.  I'm going to

    7    let him speak.  He's going to make a presentation.

    8            MR. ROTHSTEIN:  Your Honor, I would like to proffer the

    9    testimony of the two individuals that are in the courtroom.

   10            THE COURT:  Did you do it in writing?

   11            MR. ROTHSTEIN:  Yes, I filed a notice --

   12            THE COURT:  No, did you proffer what they were going to

   13    say or did they sign an affidavit indicating what they were

   14    going to say?

   15            MR. ROTHSTEIN:  No, they did not.

   16            THE COURT:  The reason they didn't is because they

   17    didn't have the time, they didn't want to put it under oath, or

   18    you thought oral is better than writing, or what's the reason?

   19            MR. ROTHSTEIN:  The reason is, Your Honor, I came up

   20    with the idea to improve the Outreach Program at a later date.

   21            THE COURT:  What date was that?

   22            MR. ROTHSTEIN:  That was last week, Your Honor, Friday.

   23            THE COURT:  You dictated something?

   24            MR. ROTHSTEIN:  It was Friday, Your Honor.  I can

   25    certainly summarize their testimony.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 33 of 259
Final Approval of Class Settlement

33

1          THE COURT:  You should have summarized it in writing

2     before.  They should have signed an affidavit and you would have

3     a proffer.

4          MR. ROTHSTEIN:  Your Honor, I also proved proffered

5     their testimony to class counsel and Ford.  We had a

6     conversation for 45 minutes yesterday.

7          THE COURT:  I wasn't there so --

8          MR. ROTHSTEIN:  I am just letting the Court know that

9     I made --

10          THE COURT:  I was taking a verdict yesterday, another

11     one.  Sorry, I missed it.

12          MR. ROTHSTEIN:  I made the opportunity available to

13     them.  They spoke about what can be done in terms of an Outreach

14     Program.

15          THE COURT:  Did you convince them?

16          MR. ROTHSTEIN:  The conversation went on for 45

17     minutes, so I think it had an impact in terms of whether or not

18     the Outreach Program currently in existence is effective and how

19     these two individuals would be able to make it an effective

20     program and increase the rate of vehicles being brought into

21     dealerships at a significantly different --

22          THE COURT:  And who's in charge of the Outreach

23     Program?

24          MR. ROTHSTEIN:  Well, the Outreach Program is --

25          THE COURT:  I'm sorry.  Who is in charge of the

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 34 of 259
Final Approval of Class Settlement

34

1   Outreach Program to bring in these individuals who would be

2   helpful?

3           MR. ROTHSTEIN:  Well, I mean, it's part of the

4   Settlement Agreement, Your Honor.

5           THE COURT:  Who?  You said you talked with them for 45

6   minutes.

7           MR. ROTHSTEIN:  Class counsel.

8           THE COURT:  And you convinced them.

9           MR. ROTHSTEIN:  Well, I wouldn't -- I don't know if I

10  convinced them.  They're sitting here, some of them that were on

11  that conversation.  They entertained a series of questions.  I

12  think these two individuals have a lot to contribute to make

13  this Outreach Program effective and based on --

14          THE COURT:  So what do you want me to do?

15          MR. ROTHSTEIN:  I would like the Court to be able to

16  listen to these two individuals.  One individual is very --

17          THE COURT:  I won't because they didn't submit anything

18  in writing before.

19          MR. ROTHSTEIN:  Well, I would ask the Court --

20          THE COURT:  Otherwise I'm going to have, what, a parade

21  of witnesses and then cross-examination?  Is that what I'm

22  supposed to do?

23          MR. ROTHSTEIN:  Your Honor, only from the standpoint

24  that this Outreach Program is such a significant component, I

25  would ask the Court to relax that rule to be able to hear their

09-50002-mg    Doc 8576-1    Filed 01/04/22    Entered 01/04/22 12:35:21    12-11-18
Transcript of MDL Hearing    Pg 35 of 259
Final Approval of Class Settlement

35

1    testimony for a few minutes in regard to the benefits of

2    having -- and let me just say this, Your Honor --

3        THE COURT:  Your request to relax those rules is

4    denied.

5        MR. ROTHSTEIN:  Okay.

6        THE COURT:  But you went with the plaintiffs' counsel,

7    you should be credited for doing that.  That's a good thing it

8    seems to me.  You'll get your reward, if not in this world, in

9    the next world for doing that.  I mean --

10        MR. ROTHSTEIN:  I am looking for in this world.

11        THE COURT:  Go listen to all these eulogies in these

12    funerals.  Isn't it good?  People do good things, sometimes not

13    expecting a reward.  Good for you.  What do you want me to do?

14    I'm not going to hear them.

15        MR. ROTHSTEIN:  Okay.

16        THE COURT:  I will hear from Patrick Juneau since you

17    want to hear from him.  Do you want to hear from him now?

18        MR. ROTHSTEIN:  I do want to hear from Patrick Juneau

19    and I would like to be able to question him, or is only the

20    Court going to question him?

21        THE COURT:  I don't know.  It depends on what he says.

22    I don't know what he's going to say.

23        MR. ROTHSTEIN:  Oh, okay.  So am I allowed to question

24    him before he gives his presentation?

25        THE COURT:  You want to question him before he gives

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 36 of 259
Final Approval of Class Settlement

36

1  his presentation.

2           MR. ROTHSTEIN:  Based on the report that he submitted.

3           THE COURT:  Oh, because he did something in writing.

4           MR. ROTHSTEIN:  He did it in writing, Your Honor.

5           THE COURT:  Look at that.  Isn't that great?  And then

6  you want to question him afterwards, too?

7           MR. ROTHSTEIN:  Well, it depends on how his responses

8  are to the questions that I have.

9           THE COURT:  Let's say whatever he says is consistent

10  with what he wrote.

11           MR. ROTHSTEIN:  Then I probably -- I would just want

12  basically to know what his plans are to improve the Outreach

13  Program because based on the report --

14           THE COURT:  Okay.  Let's hear from him.  Have a seat.

15           Do you want to say something?

16           MR. JUNEAU:  Yes, sir.

17           THE COURT:  Is this a good time?

18           MR. JUNEAU:  Yes.

19           MR. ROTHSTEIN:  Your Honor, before --

20           THE COURT:  Thank you.  Have a seat.  We'll hear from

21  him.  You want to hear from him --

22           MR. ROTHSTEIN:  Yes.

23           THE COURT:  -- we'll let you.  He's here.  Is it better

24  at the witness stand or at the lectern?  What do you prefer?

25           MR. JUNEAU:  The lectern will be fine.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 37 of 259
Final Approval of Class Settlement

37

1          THE COURT:  You got it.  State your name, who you are,

2    what you do in this case.

3          MR. JUNEAU:  Good morning, Your Honor.

4          THE COURT:  Good morning.

5          MR. JUNEAU:  My name is Patrick Juneau, Your Honor.  I

6    was appointed by this Court to be the special administrator who

7    was charged with the responsibility of administering the

8    settlement program that was entered into by the settling parties

9    in this case.

10          THE COURT:  You were appointed at the request of the

11    parties.

12          MR. JUNEAU:  That's correct, Your Honor, and I have

13    been serving in that capacity roughly seven months.  That's been

14    really kind of the activation part of this program.

15          THE COURT:  When do you think you'll get paroled?

16          MR. JUNEAU:  What I'd like to do, I just spent some

17    time, Your Honor -- I thought it would be appropriate at this

18    stage to report to the Court what we have done, how we have done

19    it, and essentially what the results of those efforts have been

20    thus far, with the permission of the Court.

21          The goal of the Outreach Programs in each of these

22    settlements, Your Honor, which have been entered is to maximize,

23    to the extent practical, the completion of repairs of the

24    defective vehicles, and to do so, we have met and continue to

25    meet extensively with each of the OEMs who are involved as

09-50002-mg    Doc 8576-1    Filed 01/04/22    Entered 01/04/22 12:35:21    12-11-18
Transcript of MDL Hearing    Pg 38 of 259
Final Approval of Class Settlement

38

1    settling parties, as well as the NHTSA, the independent Takata

2    monitor, to hone this approach and to determine how best we can

3    reach the goal within restraints of the Settlement Agreement.

4    As a result, we have developed and have been implementing in

5    fact a comprehensive process to achieve that goal.

6         First, the Outreach Programs are generally, and this is

7    important, aggregated under my oversight, in other words all of

8    the respective settlements, as the independent court-appointed

9    administrator.  This consolidation, Your Honor, has provided us

10   with a collective benefit in several ways to the settling OEMs

11   as well as the drivers of the vehicles.

12        Third, because the Outreach Programs are generally

13   consistent across the settling OEMs, we were able to continually

14   improve the process by contrasting and comparing what is working

15   and what isn't working through testing, analysis, and

16   measurement.  We did that with all of the operational OEMs in

17   this case.  This approach to learning about what drives

18   responses, which is critical in this case, and the remedies is

19   unique, and in my humble opinion from what I've observed, is on

20   the cutting edge of the recall industry.

21        Fourthly, and this dovetails with the last point I just

22   made, we are able to engage consumers in a coordinated and

23   integrated manner through direct Outreach Programs like mail,

24   email, outbound phone calls, mass media, and public relations to

25   create a more acute understanding of the issue and its potential

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 39 of 259
Final Approval of Class Settlement

39

1    effect on the individual beyond just the general awareness of

2    the existing recall.

3          To do all of this, Your Honor, we begin with the -- and

4    this is critical -- state registration data from each of the

5    affected vehicles for which repair has not been completed.  The

6    quality of that data, which generally consists of the name and

7    address, is sometimes deficient for a variety of reasons, mostly

8    because people sometimes don't update their vehicle registration

9    with the state departments in which they live and when the

10   vehicles move or change hands amongst owners.

11         The problem most often arises with older vehicles, and

12   some of the vehicles in this recall are up to 19 years old, and

13   simply finding those individuals who are driving these old cars

14   is a real, real challenge.  Since the age of these vehicles is

15   directly related to level of the risk that these defective

16   inflators present, we tried to append the basic state

17   registration information with a variety of other sources to try

18   to confirm who the true owner is, whether they are still on the

19   road.  We also updated the contact information from mailing

20   addresses, telephone numbers, emails, and social media from

21   different sources to try to increase our chances of actually

22   getting in touch with the people we are trying to reach.  There

23   have been numerous attempts in the past to reach a lot of these

24   consumers.  We've added information on each of the consumer's

25   demographics and behavioral characteristics.  By using this

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 40 of 259
Final Approval of Class Settlement

40

 1  information, we're able to group the outstanding consumer

 2  population into segments based on similarities, that is, whether

 3  based on age, marital status, children, no children.  Wealth is

 4  another example.

 5       Each of these segments, created segments for this

 6  program, reacts differently to different people, different

 7  messages, to whether it's an email or a post card, to whether

 8  images are emotional or more straightforward like a formal

 9  letter.  Each of those segments which we have developed may have

10  different barriers preventing them from having had a repair

11  completed.

12       Let me give you some examples:  A parent can't find

13  time to bring the car for repair.  Two, a young driver who

14  simply does not appreciate the urgency of the recall.  Three, an

15  elderly driver who may have a problem with the dealer who would

16  be completing the repair.  Those, again, are just examples.

17       What we then have done is developed creative assets

18  like mail pieces, post cards, letters, emails, different images

19  and different languages depending on the segment we are dealing

20  with, to personalize the message to the characteristics of the

21  individual we are trying to reach and to overcome the particular

22  barrier that they have.

23       We also looked at the priority groups that the vehicle

24  is in.  Since Priority Groups 1 through 3 have generally

25  received dozens, literally dozens, and even hundreds of outreach

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 41 of 259
Final Approval of Class Settlement

41

1    attempts, whereas in the past Priority Groups 7 through 9 have

2    not, the message is going to be different.

3         We also considered language preference amongst these

4    people as opposed to simply sending out post cards and letters

5    just on a routine basis and maybe just change the color.

6         To give you some perspective, across the settling OEMs

7    we have developed over 500 creative assets to date with several

8    hundred or more currently being drafted and circulated for

9    review amongst the totality of the parties.

10        Now, to be clear, not all of those 500 are being used

11   at once, and in fact, some of them have been retired so-to-speak

12   because they perform poorly relative to other assets that we

13   have available to us.  To do this, I think it's a very good

14   example to these Outreach Programs -- and this is critical -- we

15   have been testing what works and does not work and improving on

16   those learners.

17        THE COURT:  Have been in touch -- do you know Kirk

18   Kleckner, Brian Fitzpatrick?

19        MR. JUNEAU:  Excuse me, I didn't hear you, Your Honor.

20        THE COURT:  Kirk Kleckner and Brian Fitzpatrick, have

21   you spoken with them?

22        MR. JUNEAU:  No, sir.

23        THE COURT:  Okay.  If they had things to help you with,

24   you would be willing to speak with them?

25        MR. JUNEAU:  I've never spoken to them, do not know who

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 42 of 259
Final Approval of Class Settlement

42

 1  they are.

 2          THE COURT:  Okay.  But they'll tell you -- this is the

 3  beautiful thing about coming here, is when you walk out -- we

 4  probably don't have as good food as New Orleans, but we're

 5  pretty good and you can meet with some people and see what ideas

 6  they have and you can do it.  But what you've got to tell me is

 7  basically the same thing as has been done in writing, or you're

 8  adding more stuff to it?

 9          In other words, I'm kind of like cutting you off a

10  little bit as elegantly as I can because, even though I didn't

11  know you until this case, I know how influential you are because

12  your son got confirmed as a Federal judge, so I kind of want to

13  see whether you have the same magic for our five vacancies and

14  three nominees that we have here.  Maybe you can have an

15  Outreach Program with the United States Senate, though I don't

16  think post cards would do it, but just the direct contact.  Just

17  kidding, but just in case, you can always put in a good word.

18          MR. JUNEAU:  I get that, Your Honor.

19          THE COURT:  And congratulations.  I haven't met your

20  son, but congratulate him.

21          MR. JUNEAU:  Oh, thank you very much.

22          THE COURT:  Maybe we will transfer some cases over

23  there.

24          MR. JUNEAU:  And this is critical, Your Honor.

25          THE COURT:  Go ahead.  This is the fourth thing that is

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 43 of 259
Final Approval of Class Settlement

43

1   critical, though.  Go ahead.

2        MR. JUNEAU:  Each of those assets we talked about is

3   assigned a specific 800 number, which when dialed by the

4   recipient, routes to the call center.  When we outreach to those

5   consumers with these assets and they respond by calling that 800

6   number, they are being monitored and we know from which those

7   calls came and what the asset is identified with.  We're able

8   through that process, it's a very detailed process, to monitor

9   the success rate of each asset.  We can measure success in terms

10  of how many calls are received relative to how many pieces went

11  out and in terms of cost per response.

12       All of this is an innovative approach and has proved to

13  be very effective, and I'd like to spend just a little time on

14  this point:

15       One particular activity that appears thus far to have

16  been very successful, we are communicating with state

17  Departments of Motor Vehicles.  These are where the basic

18  registration data came from, and we have done this in connection

19  with the OEMs across the board and with the cooperation of the

20  state departments, we have been able in four states thus far --

21  and I'll tell you how we did that -- to send out letters,

22  official letters under the letterhead of the state departments

23  calling to the consumers the particular importance of this

24  recall.

25       So a lot of barriers that you'd normally see about

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 44 of 259
Final Approval of Class Settlement

44

1  flooding of letters and communications is to a large extent

2  eliminated by this communication.  We have done this across the

3  board.  The results have been phenomenal.

4       I just received -- and anybody can get it on their

5  website -- a publication by the Federal monitor who took

6  knowledge or recognition of this fact.  I met personally --

7  because we had to start somewhere, I started in Louisiana

8  because there's where I'm from.

9       THE COURT:  Really?  I wouldn't have been able to tell.

10      MR. JUNEAU:  In spite of the end results of the

11  football season.

12      THE COURT:  LSU is not that bad.

13      MR. JUNEAU:  I met with the Governor there, Your Honor,

14  and through the cooperation of the state, we sent out a letter

15  with all involvement of all the OEMs to the consumers in

16  Louisiana about these affected vehicles, and we sent these to

17  the consumers, and here is what is reported:  This is not my

18  report, this comes from the monitor.  He's talking about

19  Louisiana in particular.  Four states have already done this.  I

20  have communication with other states that are ongoing.

21      The impact of these letters on Takata recall are

22  remarkable.  Excuse me.  Repair rates in Louisiana were

23  approximately 175 percent higher than in other states where the

24  DMV didn't send out such a letter.  That's a pretty impressive

25  statistic.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 45 of 259
Final Approval of Class Settlement

45

 1          THE COURT:  Do you want some water?

 2          MR. JUNEAU:  If we can.

 3          THE COURT:  I will at the end, is what I do.  That's my

 4   incentive.

 5          MR. JUNEAU:  We are making a huge push, Your Honor, to

 6   get this done by states and I think it's a real, real --

 7          THE COURT:  Which are the four states?

 8          MR. JUNEAU:  I've reached out to a lot more states than

 9   that, but I had to start somewhere and we got it done in states.

10   Four states that have done that, and the results have been

11   similar to what I have indicated here.  That's a huge source of

12   accomplishment for us to keep pushing that and we're dealing

13   with that.

14          I have meetings currently set up for the rest of the

15   southern states; Texas, Mississippi, and Alabama, with the

16   Governors I'm meeting personally with because, as the Court

17   knows -- thank you very much -- in this process, high humidity

18   increases the risk.  So we're going to the --

19          THE COURT:  That's what I hear.

20          MR. JUNEAU:  And we have high humidity, so we're

21   addressing that as we speak, but I'm particularly pumped up and

22   charged about that.  It's been a combined effort.  It wasn't

23   just my office doing this, Your Honor.  I dealt with the OEMs.

24   I dealt with the Federal Government.  We have a coordinated

25   effort to get this accomplished and get these vehicles off the

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 46 of 259
Final Approval of Class Settlement

46

 1  road.

 2          Now, on top of those direct activities that we're

 3  dealing with with the OEMs, we're beginning to roll out what I

 4  call an indirect activity, such as mass marketing, public

 5  relations campaign both on earned media, on national and local,

 6  as well as paid television ads and so on.  All of that is in

 7  play as we're going forward.

 8          An example of one of the points I mentioned earlier,

 9  given the significant cost of these activities, this is another

10  example where economies of scale, the accumulation of all these

11  people together, allows us to do things which would be very

12  difficult to do if it was singly about one OEM.  We plan to

13  coordinate these mass media campaigns in a targeted manner to

14  the extent possible with direct mail pieces and emails to be

15  sending out on a regular basis.

16          Let me give you an example.  A local news segment on

17  Takata recall might say something like:  If you receive a post

18  card in the mail that looks like this, just don't throw it away.

19  It is important for you and to save your life.  This is a

20  comprehensive and integrative approach to tie together the media

21  together with what we're dealing with in the publications.

22          Let me give you some specific statistics.

23          THE COURT:  You're towards the end, though, right?  Are

24  you towards the end?

25          MR. JUNEAU:  Yes.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 47 of 259
Final Approval of Class Settlement

47

1          THE COURT:  Okay.  I just want to make sure it's not a

2    filibuster or anything.

3          MR. JUNEAU:  To provide a broad statistical overview of

4    what we've achieved to date under the Outreach Programs which

5    we've activated with all of the innovations I've told you about

6    over the past several months, we've made over 63 million

7    outreach attempts targeted to owners of impacted vehicles.

8    Those include 19.5 million direct mail pieces, over 13.5 million

9    emails, nearly 6 million outbound calls, and 24 million Facebook

10   impressions.

11         The call centers, which is a huge operation, has

12   received 643,000 inbound calls and has scheduled 365,000

13   appointments with dealerships.  We have seen 1,188,000 repairs

14   completed.

15         To be clear about this, Your Honor, the OEMs or the

16   settlements that I'm dealing with have continued on their own to

17   conduct some different outreach efforts outside of, in addition

18   to what we're doing, in an effort to reach the consumer.  So

19   that the total remedies attributable is not just because of the

20   efforts of what we're doing, it's attributable to  this combined

21   effort that has taken place.

22         I would like to say what I presented, Your Honor, is a

23   general high-level overview of the process, but it's an

24   elaborate detail process.  We worked extensively.  I have met

25   with NHTSA, the monitor, the PSC and the OEMs, who are all

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 48 of 259
Final Approval of Class Settlement

48

1   tackling, all of them, the Government, everybody is tackling it

2   the same with utmost seriousness and commitment.

3          This process I've outlined for Your Honor may seem or

4   is incredibly complex from a management perspective, from a data

5   gathering and analysis perspective, from a vendor perspective --

6   we have a lot of vendors involved in this -- from a

7   developmental perspective, and from a coordination perspective,

8   and this is what's key:  Despite these challenges and

9   considering the fact we are only seven months basically since

10  initiation of this process, substantial progress has been made

11  in my opinion.

12         It is very important that I reported percentages in the

13  reports that I made to the Court on appointment rates by

14  activity alone and, while impressive, should not serve as a

15  single measurement of the significant process that's been made.

16  If you're doing that, you're reading the reports wrong.  And the

17  overall success of the program shouldn't be judged on a

18  percentage of one activity.  It's a cumulative effect of all of

19  these factors I've talked about.

20         Here is the bottom line:  The cumulative effect of

21  these responses, that's all these detail things that we are

22  doing, tying them all together with all the testing going on,

23  contributes to the ultimate goal, and that is to get these

24  vehicles repaired.

25         In just the last seven months 24 percent of the

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 49 of 259
Final Approval of Class Settlement

49

1  affected vehicles in our program, in our program, on the road

2  have been repaired.  That's 24 percent in seven months.  That's

3  the statistic, that's the measure of whether this thing is

4  working.

5          I would be remiss if I didn't say we have calls every

6  week, sometimes multiple parts of the week, with each of those

7  OEMs.  We're dealing with all of the vendors who are putting out

8  all this massive material to continue to coordinate and adapt

9  and change.  This is a progress, a moving target.

10          In answer to some of the questions I just heard sitting

11  here in the courtroom, we're always receptive if someone has

12  ideas to increase and to help with the progress.  We are

13  certainly willing to entertain and do that.  A lot of those

14  steps and procedures were put in place before today, so a lot of

15  that is already activated.  The results speak for themselves.

16  There is a lot more to be done and let me make a comment of

17  this.  I'm talking about the past seven months.  There are 44

18  months left for us to go to get this thing done, so there's a

19  lot of work left to be done, but it was done through a

20  accumulative effort of all of these OEMs and in a committed

21  fashion to get this done.

22          I didn't come here, Your Honor, to be candid with you,

23  prepared to give you a statistical report.  I would have brought

24  a whole mass of people in here if that's what --

25          THE COURT:  Oh, I thought that's what you did.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 50 of 259
Final Approval of Class Settlement

50

 1           MR. JUNEAU:  I'm being very candid with the Court, but

 2   I would like to make this comment:

 3           If there is someone who has an expert or someone who

 4   has a knowledge in this field that we are talking about, which

 5   is a cutting edge field, we have been and will continue today --

 6   they can submit to me whatever their thoughts, collective wisdom

 7   is, and if there are benefits and things we should consider,

 8   they're going to be incorporated in this program.

 9           THE COURT:  All righty.  Thank you.  I am sure they

10   will reach out either out in the lobby, in the attorney

11   conference room on the 14th floor, or later on.

12           Thank you very much, Mr. Juneau.

13           MR. JUNEAU:  Thank you very much, Your Honor.

14           THE COURT:  Thank you.  Any other objector who's here

15   who wishes to be heard?  You wanted to hear from Mr. Juneau, who

16   wrote the report.  You can later on talk to him.

17           Now, there were, of course, some objectors who

18   announced that they were not going to be here and the record is

19   clear as to who they are:  Kearney Dee Hustler about the

20   attorneys' fees, they should be delayed.  Carolyn McGlown, she

21   objected to only $250.  Craig Huhman, saying his 2008 Lincoln is

22   not covered.  Mark Mulholland, $500 wasn't enough.  Raymond

23   Arth, the attorneys' fees.  William Youndt, Benjamin Majchrzak,

24   M-a-j-c-h-r-z-a-k, about the attorneys' fees should be reduced

25   and the Rental Car Program.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 51 of 259
Final Approval of Class Settlement

51

1          So a lot of these things, of course -- the Outreach

2    Program, we have heard a lot about that; and their argument is

3    it does not provide a substantial benefit to the class, the

4    Customer Support Program doesn't provide a substantial benefit.

5    That's what some of the objectors are saying.  The Rental Car

6    Program doesn't provide a substantial benefit.  There were some

7    writings about intra-class conflicts precluding certification

8    because claims were not typical, and I couldn't conduct the

9    predominance analysis under Rule 23, and that the attorneys'

10   fees were not reasonable for the different reasons, both as a

11   percentage of the common fund under Florida law, et cetera.

12          So that's basically the objections.

13          Do the defendants want to say anything?  Does the

14   plaintiff want to say anything in response?

15          MR. PRIETO:  Briefly, Your Honor.

16          THE COURT:  Okay.  Lawyers always say "briefly."  If

17   you say "briefly," I may hold you to it.

18          MR. PRIETO:  Just a couple of comments, Your Honor.

19   Peter Prieto on behalf of the plaintiffs to start.

20          Two introductory comments so that we put --

21          THE COURT:  Well, if you're saying introductory

22   comments, it's not "briefly" already.

23          MR. PRIETO:  Two things that I think the Court should

24   know.  Number one is, the reason you have so many objectors

25   present in the courtroom today is not because this settlement

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 52 of 259
Final Approval of Class Settlement

52

1  has issues that the other ones didn't have.  In fact, the same

2  arguments that were made in the first six settlements were made

3  today and the Court rejected them.

4          THE COURT:  It's because they thought there would be

5  warm weather in Miami or not?

6          MR. PRIETO:  No.  As of December 1st, Rule 23 was

7  amended, and I think there is an impetus for objectors to come

8  forward now and appear in person because the rule changed in one

9  interesting way, which is, if after this Court enters a judgment

10  and while the case is on appeal a settlement is reached and that

11  objector withdraws the appeal, this Court has to approve a

12  payment to that objector.

13          So I think what's happening now is that objectors feel

14  compelled to come in here because if they're going to request a

15  fee eventually or a payment is going to be made to them, they

16  want the Court to see them, and I think there's a basis that

17  they're going to make the argument they're entitled to

18  attorneys' fees.

19          I don't want the Court to think that the fact that we

20  have these objectors coming --

21          THE COURT:  I've always allowed objectors to come in --

22          MR. PRIETO:  Correct.

23          THE COURT:  -- even before December 1st.

24          MR. PRIETO:  Correct, and that's not a problem and they

25  can come in and we are not going to -- we don't really want to

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 53 of 259
Final Approval of Class Settlement

53

1    attack the messenger, we're going to attack the message.

2         The second point that I want to make is that every

3    single objection that was made by these objectors --

4         THE COURT:  Has been made before.

5         MR. PRIETO:  And you specifically, before the last

6    hearing, you sent out a supplement saying, look, the objectors

7    have made all these objections.  I want you to brief this

8    carefully and give me the argument in response and we did.

9         THE COURT:  You did in writing.

10        MR. PRIETO:  We did in writing.

11        THE COURT:  And I read it.

12        MR. PRIETO:  Correct.

13        THE COURT:  Is there anything you want to change --

14        MR. PRIETO:  No.

15        THE COURT:  -- withdraw --

16        MR. PRIETO:  No.

17        THE COURT:  -- that was a mistake?

18        MR. PRIETO:  Nothing.  The only thing that I would like

19   to say to the Court is, this whole argument about --

20        THE COURT:  What is the best argument of your

21   opponents?

22        MR. PRIETO:  They have none, they really don't.

23        THE COURT:  What is the worst argument of your

24   opponent?

25        MR. PRIETO:  That's a good question.  That the outreach

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 54 of 259
Final Approval of Class Settlement

54

1    has no value.

2          THE COURT:  Okay.  What is the second worst argument?

3          MR. PRIETO:  You're pretty good, Your Honor.  I think

4    the second worst argument is that these fees are unreasonable

5    and you --

6          THE COURT:  Oh, you put that as the second worst

7    argument.  Okay.

8          MR. PRIETO:  You know why?  Because the Outreach

9    Program, Your Honor, saves lives.  I mean, it would have been

10   crazy for us to send out a check, as one of the objector's

11   counsel says --

12         THE COURT:  What do I do with the attorneys' fees?

13   Because I chopped them before, too, and I'm sure it was

14   upsetting.  But the issue that each time it should be lower,

15   that seems to be probably their best argument, that the seventh

16   time, the risk goes down, the work is less, the attorneys' fees

17   should be less.  I'm simplifying it because they do have Motions

18   to Dismiss.  I thought it would be a half an hour Fairness

19   Hearing.  I was wrong again.  So what about that argument?

20         MR. PRIETO:  That argument, we addressed it before,

21   Your Honor.

22         THE COURT:  You did.

23         MR. PRIETO:  First of all, the fee here --

24         THE COURT:  You won in part.

25         MR. PRIETO:  In part, and so the Court may remember, we

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 55 of 259
Final Approval of Class Settlement

55

1   asked for 30 percent in the last two settlements.  The Court

2   reduced us by --

3            THE COURT:  Okay.

4            MR. PRIETO:  We asked for 30, you reduced us to 20

5   percent, which was about $70 million in fees.  That was the

6   reduction the second time.

7            The argument that we should get less as these

8   settlements progress -- this time we're not asking for 30.  We

9   believe that we're entitled to 30, but we heard you loud and

10  clear the last time.

11           THE COURT:  Yeah, you reduced it on your own.  I got

12  it.

13           MR. PRIETO:  Because we heard you, we heard the

14  argument you made the last time and we said we're not going to

15  ask for 30, we are going to ask for 25 percent, because we

16  believe that 25 percent as to Ford -- which Your Honor knows

17  fought us long and hard, longer than any defendant in this

18  MDL -- we believe that 25 percent is reasonable.  And Ford said

19  up to 25 is fine, beyond that, we're not going to agree.

20           The argument that we should get less for successive is

21  not appropriate in this case because, even though there was

22  some, some what you would call duplication in terms of the

23  actual Settlement Agreements, some of the same issues came up,

24  that was basically it.  As we told you before, these cases were

25  prosecuted separately, individually.  The evidence against Ford

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 56 of 259
Final Approval of Class Settlement

56

 1    was different than the evidence against Honda and different than

 2    the evidence against Toyota.

 3          So number one, these cases were litigated separately.

 4    To the extent that there was duplication, Your Honor, it was de

 5    minimis and it's not worth a lower fee than 25 percent.  That's

 6    number one.

 7          Two, there are policy reasons why the Court should not

 8    decrease settlements as either the fee goes up or in successive

 9    settlements, and we told you what one of those policy reasons

10    was.

11          I mean, look, lawyers, like the farmer in Kansas, are

12    economic actors, that's just the reality.  So if the argument

13    from the Court is, I'm going to award less as you settle

14    successively, or as the settlements get bigger, then there's an

15    incentive for the lawyers to basically hold and settle

16    everything at once, which some lawyers will do if that's going

17    to be the Court's reasoning.

18          So we don't want that.  We have not done that, and I'm

19    reminded of what the Court said a couple of years ago, which is,

20    divide and conquer.  You said divide and conquer, don't wait

21    until everybody settles, don't litigate against everybody,

22    divide and conquer.  We followed that, we settled with four

23    automakers first and then we settled with two later.  And, you

24    know, the Court knows that --

25          THE COURT:  Are you going to settle against a few more

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 57 of 259
Final Approval of Class Settlement

57

1   or not?

2        MR. PRIETO:  You know, we're plaintiffs' lawyers, so we

3   would like to settle --

4        THE COURT:  Because they're all here.

5        MR. PRIETO:  They're all here.

6        THE COURT:  Okay.

7        MR. PRIETO:  And we're willing to settle on reasonable

8   terms, but the 25 percent, Your Honor, that we're asking for we

9   believe is reasonable.  It's 25 percent of the cash and it's

10  13.9 percent of the total value of the fund if Your Honor takes

11  into consideration the warranty, which the Eleventh Circuit has

12  on many occasions said non-monetary benefits can get valued.

13  They should get valued, and as a matter of law, they do get

14  valued.

15       There are two cases we cited to the Court, both from

16  the Eleventh Circuit.  One was Carter versus Forjas where the

17  Court specifically held that non-monetary benefits should be

18  valued, and I'll just give you a very brief quote from that

19  Court.

20       THE COURT:  But you did already, didn't you?

21       MR. PRIETO:  All right.  Then if I did, I did.

22       THE COURT:  Didn't you?

23       MR. PRIETO:  There are two cases -- yes.  There are two

24  cases that we put in our memo, it's Carter versus Forjas Taurus

25  from last year by the Eleventh Circuit and also Poertner versus

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 58 of 259
Final Approval of Class Settlement

58

1  The Gillette Company, which essentially said that a warranty was

2  a significant non-tangible benefit that should  be included in

3  the Settlement Agreement.  We also included in our memo various

4  cases not only in this district but in other districts where the

5  Court has awarded the same percentage in successive settlements.

6        So we're not asking for the Court to go beyond anything

7  that's not reasonable.  As the Court knows, 25 percent is the

8  benchmark in this circuit, so we believe that what we're asking

9  for is reasonable.  We're not asking for 30 percent like we did

10  last time, because we heard the Court loud and clear.  We think

11  the Court should approve the settlement, certify the classes,

12  and award us the attorneys' fees that we've requested, as well

13  as give the class representatives the award that we are

14  requesting for them, which is $5,000 each.

15        If the Court has any other questions --

16        THE COURT:  You know, there was an objection to that, I

17  think to the 5,000, but that seems to be kind of a standard

18  thing, right?

19        MR. PRIETO:  It is.  5,000 is standard.  In fact, I was

20  reading some cases over last several days and some Courts have

21  awarded as much as 10,000.

22        THE COURT:  Okay.  You know, I guess some people who

23  have not had their airbags replaced kind of get upset that

24  someone is getting $5,000.  That's basically it, right?

25        MR. PRIETO:  That's part of it, but there's no conflict

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 59 of 259
Final Approval of Class Settlement

59

1   in that.  I mean --

2        THE COURT:  No, it's done.  All right.  Give me a

3   couple of days.

4        Obviously some, if not all of the objections, have been

5   in the past overruled, so I probably would lean towards being

6   consistent, even though on occasion, as I mentioned

7   before, Ralph Waldo Emerson said, "A foolish consistency is the

8   hobgloblin of small minds," but I'm sure I've been called worse

9   things than that in 32 years as a judge.

10       I know I reduced substantially the last request for

11  attorneys' fees, but I appreciate that now it has been reduced

12  by the lawyers to 25 percent, and you've actually convinced your

13  opponents -- the objectors at least, not your opponents, the

14  objectors that 25 percent is reasonable.  The disagreement is 25

15  percent of what?  So there's that disagreement, but I've ruled

16  on that before.  I'm glad both in writing and orally, not just

17  me, but all of you now know more about the Outreach Program and

18  Mr. Juneau's willingness to hear from anybody else to improve

19  the outreach.  It can be done not just for this and other

20  settlements, but as we move on.  So I appreciate that, and I'll

21  try to rule before the end of the week if I can.

22       MR. PRIETO:  Your Honor, we have orders if the Court

23  wants them.

24       THE COURT:  You can submit them, I can change them, put

25  it in a format.  Give it to somebody, so that the format needs

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 60 of 259
Motions to Dismiss

60

1   to be changed.

2          Thank you very much for being here.  Sorry it took so

3   long.  And now we will hear on the Motion to Dismiss once

4   there's a little switcheroo of some players.  Thank you so much.

5   Happy New Year, Merry Christmas.

6          If anybody wants to leave your card with the court

7   reporter for whatever reason, feel free to do so.  If you want

8   to leave your card with the court reporter, she would love that,

9   if you spoke or wish to be recognized.

10      (There was a brief discussion off the record.)

11          THE COURT:  We're here on the hearing on Motions to

12   Dismiss the Amended Consolidated Complaints in the multidistrict

13   case.  I know we've got a lot of people.

14          This is how I think -- I guess I do say this a lot,

15   divide and conquer.  That's what I want to do, and because I

16   haven't been as efficient as I wanted to be because of my

17   meeting this morning that delayed a couple of things, this is

18   what I wanted to do in order to hear from those who want to be

19   heard.

20          It was pretty general, but you wanted -- you saw the

21   claims and arguments on the Motions to Dismiss.  You all got in

22   writing what I wanted to hear from and, of course, that's

23   already a lot and we probably won't get through with it in the

24   morning, but I blocked off the afternoon, too.

25          So what I wanted to do was hear first, if someone

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 61 of 259
Motions to Dismiss

61

1    wanted to be heard, on Puhalla, the Complaint against

2    Volkswagen, Audi, Mercedes-Benz, and Daimler, specifically

3    whether the injury claim is traceable to the defendants'

4    actions.  I kind of wanted to hear from both the defendants and

5    the plaintiffs from Volkswagen, Audi, Mercedes-Benz on that

6    first, and then I thought it would be good to hear from General

7    Motors, from both sides of course, on why I should or should not

8    stay because of the action of the National Highway

9    Transportation and Safety Administration.

10          Then I wanted to hear, if you all kind of agree, but

11   we've got to have some order, on the personal jurisdiction

12   arguments, the ones that I guess they refer to as directly filed

13   into the Southern District of Florida, so whoever is going to

14   speak about that.  I thought we would do that first.  It doesn't

15   include everything obviously.  So what I thought would be

16   helpful is, I'm going to pass out -- those are the things I want

17   to hear from you all now, whoever is going to speak on that very

18   briefly.

19          You've got everything in writing so there's no point

20   regurgitating.  This isn't the busy State Court judge -- though

21   it's kind of like a busy Federal judge, it is getting like

22   that -- where I don't know what the case is about, and you say

23   this is a breach of contract case, Judge, plaintiff sues the

24   defendant, A, B, and C.  We don't have that because you all have

25   written copiously about it.  I have help, too, with law clerks,

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 62 of 259
Motions to Dismiss

62

1  so I'm not going to rule from the bench and grant Motions to

2  Dismiss left and right.

3          Obviously, a lot of the issues have been decided

4  before, and I should be consistent with the claims with what

5  I've done before, for better or for worse, at this stage, but as

6  long as you preserve your right to appeal eventually.

7          There are some Complaints bringing new claims that I

8  have not addressed before, new state consumer protection

9  statutes, and some Motions to Dismiss advance arguments that I

10  have not heard before or directly ruled on, including, as I

11  mentioned, the personal jurisdiction standing, the group

12  pleading and splitting, and I may be at fault the way I kind of

13  forced you all to do certain things.  So that I want to hear

14  from.

15          So other than what I've just said, if you want to be

16  heard, we are going to pass out for -- I guess I'll call it the

17  bride and groom side.  Any lawyer who wishes to speak, I want

18  you to put your name, who you represent, and in one or two

19  sentences the issue that you want to discuss that I have not

20  mentioned as three big groups.  If you're covered on those three

21  groups that I've already mentioned, then you can speak.  If not,

22  you've got to put it there.

23          Now, I can't give you a lot of time.  It's kind of

24  like -- I'll give you more than the Multidistrict Panel gives

25  you here in this courtroom, and they're coming again.  I may not

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 63 of 259
Motions to Dismiss

63

1    let them use my courtroom in case they want to send another

2    case, but I won't give you as much as the Court of Appeals does

3    because it would be arrogance on my part if I gave you as much

4    time.  So more than the Multidistrict Panel, but less than --

5    just to see what you want to say regarding the specific issue.

6    So you have to pick the one that you really want to talk about

7    that you think I may be missing the boat on.

8          So we'll pass out two notebooks.  I'm going to give the

9    court reporter a needed bathroom break, and I'll come back in

10   five minutes.  Even if you haven't written on it, you can pass

11   two notebooks around.  Put a number next to it, put your name,

12   who you represent, and you've got to put underneath what the

13   issue is.  There's plenty of room.  We're not going to get to

14   it.  Once I see that, those people in the notebook, we're not

15   going to get to you in the morning.  So unless someone is

16   willing to yield on a particular issue, you're going to be here

17   in the afternoon unless someone doesn't want to, then you're

18   free to go.  I'm not ruling from the bench.  I rule on the

19   pleadings, but I don't know how else to do it, unless someone

20   has a better suggestion than what I've just suggested.

21         Mr. Prieto, you have a better suggestion than what I've

22   suggested.

23         MR. PRIETO:  I just have a --

24         THE COURT:  I'm willing to take if you grab a

25   microphone.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 64 of 259
Motions to Dismiss

64

1          MR. PRIETO:  So --

2          THE COURT:  You could just settle and I could deny the

3    motions as moot, and say it's the eighth settlement, don't

4    reduce the attorneys' fees.

5          MR. PRIETO:  Your Honor, this notebook is only for

6    those who wish to speak on topics other than the ones --

7          THE COURT:  Other than the three that I have mentioned

8    if you followed.  I don't know if you followed the three that I

9    mentioned.

10         MR. PRIETO:  Other than those, we don't have to --

11         THE COURT:  You don't have to.  Okay?

12         MR. PRIETO:  Okay.

13         THE COURT:  Does that make sense?  I don't know if I

14   was clear.  Lawyers always file Motions for Clarification

15   because they know if they file Motions for Reconsideration, I

16   usually deny that, so now it's clarification.  They're smart.

17   So if anybody wants to say anything from any of the sides -- no,

18   no, keep passing it around.

19         MR. PRIETO:  There are two.

20         THE COURT:  I know, but it's not one for the plaintiffs

21   and one for the defendant, it's for everybody.  I suspect there

22   are more defendants than plaintiffs.  That's it?  No one wants

23   to speak?

24         MR. MILES:  Your Honor, we're passing one around on the

25   defense side.  We thought there was one for plaintiffs.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 65 of 259
Motions to Dismiss

65

1          THE COURT:  No, no, no, two sides.  I meant by bride

2    and groom is where you're sitting.  I don't know.  Nobody

3    follows that anymore.  Everybody sits wherever they want to in

4    churches and temples.

5          Let me give my court reporter -- now, you want to make

6    her happy?  The thing that would make her happier than a

7    midmorning break at 11:30, which I haven't been able to give her

8    for the last couple of weeks, I've been her working really hard,

9    is a business card from a lawyer who wishes to be heard.  That's

10   the second favorite thing for Gilda.  So you can make someone

11   happy, give her -- even though Hanukkah is over, give her a

12   ninth gift by a card.  With Christmas around the corner, do

13   that.  It makes her happy.  I'll be back in five minutes.  You

14   can keep passing it, but we will keep the hearing.

15         Is that all right with everybody?  All right.  Even if

16   it isn't, that's what we're doing.

17      (There was a brief recess taken at 11:30 a.m. and the

18   following proceedings were held at 11:53 a.m.)

19         THE COURT:  All right.  Who wants to talk about the

20   Puhalla, or Puhalla Complaint against Volkswagen, Audi,

21   Mercedes-Benz and Daimler?  On behalf of the plaintiffs, who

22   wants to talk about that?

23         MR. PRIETO:  I'm sorry.  What is the issue again, Your

24   Honor?

25         THE COURT:  You don't want to talk about it?  Okay.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 66 of 259
Motions to Dismiss

66

1  Which defendant wants to talk about that?  Come forward.

2       MR. BIANCHI:  Your Honor, Daimler is going to talk

3  about standing in conjunction with that, which I believe is the

4  first question you put on the table.

5       THE COURT:  All right.

6       You've got cards and everything?

7       THE COURT REPORTER:  Some gave me cards, but if they

8  could state their names, I'd appreciate it.

9       THE COURT:  Of course.  Everybody state your name, no

10  matter how famous you are, and who you represent.

11       MR. BIANCHI:  Good morning.  My name is Jaime Bianchi.

12  I represent Daimler AG, Mercedes USA, LLC, and Your Honor, we're

13  addressing the issue that you first posed, the standing issue.

14       First, I should say I am standing here for my

15  colleague, Raoul Cantero, who wished he could be here, but

16  unfortunately had a conflict.  The issue really --

17       THE COURT:  You can defer to him and we will hear from

18  him in the future if you want.

19       MR. BIANCHI:  Trust me, I will be deferring to him in

20  the future.

21       But the question really that you posed at the top was,

22  you're looking at a new series or a new set of OEMs before you

23  in a new Complaint, and the question is:  What is different?

24  What would be different here that wasn't true at least when you

25  looked at some of these very same issues and you ruled on last

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 67 of 259
Motions to Dismiss

67

1  time.  And obviously, there are a few very important issues that

2  my colleagues all sitting here and in the back really want you

3  to know about.

4         The first, of course, is the plea bargain, and I know

5  there are a lot of issues on the papers on that, and in

6  conjunction with that, it's clear, at least based on that Plea

7  Agreement, that Takata misled the OEMs.  It's clear on that plea

8  bargain agreement that these OEMs are the victims of that fraud,

9  and that essentially it's quite clear, and people have gone to

10  jail and companies have gone through bankruptcy and all kinds of

11  other issues have happened, that Takata misled the OEMs with

12  respect to the inflators.

13         THE COURT:  Well, at least they convinced the

14  Government of that and a judge accepted a plea as to that.

15         MR. BIANCHI:  But even more than convincing the

16  Government, right, if you look at the Plea Agreement, it

17  contemplated that there was a restitution mechanism --

18         THE COURT:  Yes.

19         MR. BIANCHI:  -- and those were all subject to a

20  Special Master and there was an adjudicatory process associated

21  with that.  So it wasn't just, you know, someone standing here

22  and doing a plea, there was kind of a fact finding associated

23  with that.

24         THE COURT:  Okay.

25         MR. BIANCHI:  The other thing that's important here is,

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 68 of 259
Motions to Dismiss

68

1  at least in the case of Daimler AG, and certainly, as I

2  understand it, also for Audi and Volkswagen -- and if I'm

3  incorrect on the Audi and Volkswagen, I'm sure someone will

4  stand here and correct me -- there have been no ruptures in any

5  vehicles.

6        THE COURT:  So we wait until that happens?

7        MR. BIANCHI:  No, this is not a manifestation argument,

8  it's a little different.  Right?  We're at the pleading stage,

9  and we're not really trying to deal with manifestation.  You've

10  ruled on that.  We're not really going there.

11        But our point is this:  If you look through the briefs

12  that were prepared by the plaintiffs here, the notion that

13  ammonium nitrate was used and that other OEMs were having issues

14  with it should be enough.  Right?  It should be self-evident.

15  And there's incredibly graphic language that's been used in

16  various transcripts that I've read about how ammonium nitrate is

17  like, you know, whatever.  It's the end of it.  Right?  It's

18  like I joke with some friends, it's ammonium nitrate, stupid,

19  that's it.

20        But if that were true and these OEMs are not having any

21  ruptures, that creates an issue when it comes to what did the

22  OEMs know about the inflators that were installed in these

23  vehicles because, really, that is the key to the issue of

24  standing.  It is the causal link between the notion of the

25  injury that's suffered by the plaintiffs or the putative

09-50002-mg    Doc 8576-1    Filed 01/04/22    Entered 01/04/22 12:35:21    12-11-18
Transcript of MDL Hearing    Pg 69 of 259
Motions to Dismiss

69

1  class --

2       THE COURT:  Well, they just want discovery and then

3  that way they can prove it.

4       MR. BIANCHI:  Well, not for fraud.  Right?  Under Rule

5  9(b), the allegations have to be fairly specific, and there's

6  been plenty of discovery here already of Takata.  I think -- I

7  mean, again, I can't be held to it because we're coming to this

8  party quite late, but as I understand it, over 10 million pages

9  have been produced.

10       THE COURT:  I'll make it up to you, don't worry.

11       MR. BIANCHI:  Fair enough.

12       So then the question really is, this is not a normal

13  Complaint that's being filed in the absence of discovery.  This

14  is a Complaint which is being filed with the benefit of four

15  years' worth of discovery where the company that just pled

16  guilty for fraud and misleading has opened its books and

17  discovery has happened and basically at least they would know

18  what we allegedly knew.

19       THE COURT:  So it should be more specific, that's

20  basically it.

21       MR. BIANCHI:  Well, not solely that, but if I can, then

22  the other point I want to get to is the proposition, because the

23  gist of what their argument has to be -- they don't say this,

24  it's not in their pleadings, but the gist of their argument is,

25  notwithstanding the Plea Agreement that Takata defrauded the

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 70 of 259
Motions to Dismiss

70

1   OEMs, notwithstanding the fact that we have now taken four years

2   of discovery and 1.4 million documents and 10 million pages, or

3   whatever the standard is, notwithstanding that, it has to say,

4   notwithstanding the fact that these OEMs have gone through a

5   process where, at least through a Special Master has concluded

6   that they should get restitution to a certain extent from Takata

7   with respect to those inflators for being misled, they did, in

8   fact, know.  Right?  Because that's the causal link.  They knew

9   at the time the inflators were being installed that they were

10  defective.

11        Really, when you're looking at it from the totally

12  standard and the Rule 9(b) standard, you have to look at a

13  plausibility standard and you have to see what allegations have

14  been made that would circumvent this, circumvent the facts that

15  are the real world facts that we're looking at in this case, at

16  least with this group of OEMs, and those are the crucial issues.

17        Then I have something a little bit more particular with

18  respect to Daimler because there are some allegations of emails

19  there, and we asked to file them with the Court.  The Court

20  denied our request to file them.

21        THE COURT:  Well, no, I never deny the request to file

22  anything.  You missed the word "sealed" --

23        MR. BIANCHI:  That's correct.  Sorry.

24        THE COURT:  -- and that's the big one, see?  That's the

25  big one.  You can file whatever you want.

09-50002-mg    Doc 8576-1    Filed 01/04/22    Entered 01/04/22 12:35:21    12-11-18
Transcript of MDL Hearing    Pg 71 of 259
Motions to Dismiss

71

1          I'm very much against sealing hardly anything.  I think

2    only one judge probably more than I, Judge King hates sealing

3    more.   I think everything should be transparent, which puts you

4    guys sometimes in a box, but what I don't like is -- so make

5    your argument without the sealed documents and then, if

6    necessary, I can look at the sealed document.

7          MR. BIANCHI:  Fair enough.

8          THE COURT:  The problem is, on a Motion to Dismiss, I

9    don't know, I don't know.

10         MR. BIANCHI:  You have some opinions out there and

11   we're very respectful of that, but you don't want to be turning

12   this into essentially a Motion for Summary Judgment, nor do we.

13         THE COURT:  Oh, I would love to do that.  If you're

14   ready, let's go.  That makes it easier.

15         MR. BIANCHI:  That's not what we want, but this is it:

16   If you look at the Complaint, specifically the allegations are

17   all centering in paragraph, I think, 183, 185, and 314.  Those

18   are the specific allegations directed at Daimler and the basis

19   of it is, as we can best tell, there are citations to emails

20   there and we've been able to locate among the production --

21         THE COURT:  Oh, you don't know the emails?

22         MR. BIANCHI:  Well, we don't know the emails per se.

23   We know the dates, we know the people, so we can construct them

24   in the discovery which emails we believe they are.

25         THE COURT:  Well, your opponents have the emails.  They

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 72 of 259
Motions to Dismiss

72

1  won't give them to you.

2       MR. BIANCHI:  Well, I believe we both have access to

3  the same fountain of information.

4       THE COURT:  It's a big fountain.

5       MR. BIANCHI:  Yes, and that's the problem.  It's so big

6  that sometimes you want to make sure that you're not saying

7  something incorrectly.  But we've been able to track 15 of those

8  emails which are the substance of emails -- the allegations

9  there.  Those emails concern another company called at the time

10 Daimler Chrysler Corporation, which is not Daimler AG, who is

11 the defendant here.  And without getting too much into --

12      THE COURT:  Is Daimler Chrysler Corporation still in

13 existence?

14      MR. BIANCHI:  I believe -- you know, I don't -- let me

15 say this:  There's someone here --

16      THE COURT:  It's not a trick question.

17      MR. BIANCHI:  I don't know the answer to that because

18 that would be -- I think the assets of that entity were bought

19 by FCA, who's standing here, and they would probably know that

20 much better than I would or could ever answer that question.

21      THE COURT:  Okay.  All right.

22      MR. BIANCHI:  But my only point to it is:  If you even

23 look at the emails without like getting into engineering speak,

24 which is what mostly is in them, you can tell two things.  One

25 thing is there are emails directed to or about Daimler

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 73 of 259
Motions to Dismiss

73

1  Chrysler --

2      THE COURT:  The emails are part of the Complaint?

3      MR. BIANCHI:  Correct and they're cited and they're

4  incorporated so you can look at them.

5      THE COURT:  And they're public.

6      MR. BIANCHI:  They have been stamped "highly

7  confidential."  That's why we can't --

8      THE COURT:  So they're not part of the Complaint.

9      MR. BIANCHI:  They're referenced in the Complaint at

10  length.  The verbiage that's in the emails seems to be reflected

11  in the Complaint, however, the emails themselves have been

12  designated highly confidential under the Protective Order that

13  was entered into.

14      THE COURT:  Which can be modified because I signed the

15  Protective Orders because that's what you all want.  If it were

16  up to me, I wouldn't sign any of them.

17      MR. BIANCHI:  Right, but unfortunately, I believe it

18  was Takata that designated them and --

19      THE COURT:  The ones who pled guilty to everything, so

20  it's kind of meaningless by now.

21      MR. BIANCHI:  We asked them to waive it and they didn't

22  respond to us.

23      THE COURT:  Well, they just want to wave good-bye if

24  you think about it.

25      MR. BIANCHI:  Maybe, but this is the key point I want

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 74 of 259
Motions to Dismiss

74

1  to get to --

2          THE COURT:  I can modify that and make everything

3  public, right?

4          MR. BIANCHI:  I don't know --

5          THE COURT:  You certainly would want that.

6          MR. BIANCHI:  Well, I don't know enough --

7          THE COURT:  That way you know this is evidence.  The

8  issue is:  What did your client, and others, know and when did

9  they know it?

10          MR. BIANCHI:  Exactly.

11          THE COURT:  I mean, I don't want to sound like

12  Watergate, but that's what it is.

13          MR. BIANCHI:  Right, right, right, exactly.  But this

14  is the key though:  The allegations in the Complaint that sort

15  of support the proposition that Daimler AG knew of it before the

16  Takata misleading and all the other stuff and the plea, those

17  emails were not directed at Daimler AG.  They were directed at

18  Chrysler and concerned overwhelmingly -- 13 of the 15 emails

19  concerned Jeeps.  They don't even concern Chrysler -- I mean

20  Daimler AG automobiles or Mercedes automobiles.

21          Let me just make sure.  Two of the emails are between

22  Takata individuals and those do reference Daimler AG, but they

23  don't say anything to us or about us.  Like they don't say, oh,

24  Daimler knew that the inflators are bad and we're meeting with

25  them to cover it up.  No, no.  This is them talking about

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 75 of 259
Motions to Dismiss

75

1    Daimler automobiles, but that's it.

2           So if you look at those emails, we go back to the main

3    proposition:  What are the allegations in the Complaint that

4    support the proposition that, in fact, there's a causal link?

5    Meaning that Daimler AG, Volkswagen, Audi knew that the

6    inflators were defective at the time they were being installed

7    in the automobiles.

8           And then we've also added in there, on the Motion for

9    Standing, it's our 12(b)(1) motion, we added three letters from

10   Takata saying there's nothing wrong with your inflators.

11          Now, you may not want to look at that.  Counsel makes a

12   good point that in this circuit in particular, in the Eleventh

13   Circuit, when issues of standing and merit are intertwined --

14   and certainly what Daimler would know would be an element for

15   fraud and for RICO and for everything else -- you may want to

16   push that off and it may not be appropriate for 12(b)(6).  So if

17   you want to put the letters to the side, that's sign, but I go

18   back to the main proposition, the plea bargain and the emails

19   make it all very clear.

20          THE COURT:  Okay.  I got it.

21          MR. BIANCHI:  Okay.

22          THE COURT:  All right.  Is there someone from Audi or

23   Volkswagen who wants to chime in?  No one responds.  So you've

24   covered all of them.

25          MR. BIANCHI:  I believe I have.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 76 of 259
Motions to Dismiss

76

 1          THE COURT:  Look at that.  All right.  So does the

 2   plaintiff wish to respond?

 3          MR. PRIETO:  Yes, Your Honor.

 4          THE COURT:  Now, what's the easiest thing to do with

 5   these emails in order to modify the Confidentiality Order so

 6   that we know exactly who knew what when?  That makes it easier,

 7   right?

 8          MR. PRIETO:  That's correct.  I mean, we are --

 9          THE COURT:  So what do I need to do regarding that?

10          MR. PRIETO:  If they're willing to waive

11   confidentiality, we can make them public.

12          THE COURT:  Okay.  Who is "they?"

13          MR. PRIETO:  Mercedes Daimler.

14          THE COURT:  Okay.  Make it public.  They say it's not

15   us, so you don't have standing.

16          MR. BIANCHI:  Right.  Your Honor, we would love to do

17   that.  The problem is, we didn't designate them confidential and

18   we don't want to be -- we don't want the Court or someone else

19   to run in there at some future point and say, ah, Bianchi

20   violated the Protective Order.

21          THE COURT:  No, no one would do that.  Who can modify

22   that Protective Order?

23          MR. PRIETO:  It would be probably us and Takata

24   agreeing to --

25          THE COURT:  No, but who -- okay.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 77 of 259
Motions to Dismiss

77

```
 1            MR. PRIETO:  You would modify it if necessary.

 2            THE COURT:  Can I do it on my own?

 3            MR. PRIETO:  You can do it on your own.

 4            THE COURT:  Why shouldn't I do that?

 5            MR. PRIETO:  You should.  We have no problem.

 6            THE COURT:  Let the cat out of the bag.

 7            MR. PRIETO:  We have no problem with that, Your Honor,

 8    except that Takata, I think, in whatever form they are --

 9            THE COURT:  Is there anyone here from Takata?  They

10    never come.  You know why they don't come?  They're guilty and

11    bankrupt.  I mean, I hate to be so bottom line, but that's it.

12    Right?  They've got more problems than filing a Motion for

13    Violation of Confidentiality.  They pled guilty.  That was all

14    public.  It's all public.

15            See, that's why I don't like to seal things at this

16    stage.  There's nothing to seal.  Everybody knows about it,

17    except you have to prove, do you not, that these defendants

18    knew.  Right?  They're not just victims.  So what do I do with

19    that?  And the way you prove it is through these emails

20    directly.

21            MR. PRIETO:  We prove it through emails and other

22    information.  But this issue --

23            THE COURT:  But you have to have it in the Complaint,

24    don't you think?

25            MR. PRIETO:  We do have it, we have a lot of
```

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 78 of 259
Motions to Dismiss

78

1  information in the Complaint.

2          THE COURT:  Why not put these emails and that takes

3  care of it --

4          MR. PRIETO:  We did reference --

5          THE COURT:  -- by quotes.

6          MR. PRIETO:  Your Honor, we did reference a lot of

7  these emails in the Complaint without actually saying because we

8  didn't want violate the Protective Order --

9          THE COURT:  Let's modify the Protective Order.

10         MR. PRIETO:  We put some general -- I think we reached

11 agreement with Takata to be able to --

12         THE COURT:  You don't need agreement, you've got my

13 order.  I'm modifying the Confidentiality Order.  Why am I

14 modifying?  Because it was for the benefit of the plaintiffs,

15 who waived, and Takata, which has pled guilty, and there's a

16 Restitution Order and sanctions imposed by another judge in

17 another district.  So it is modified.  They've waived.  When you

18 plead guilty, you waive just about everything, including that.

19 You can't have that confidentiality.  And these defendants are

20 saying they're victims.  The judge who accepted the guilty plea

21 accepted the fact that these defendants are guilty.

22         You disagree with that, that they are victims?

23         MR. PRIETO:  I disagree, Your Honor, for a couple of

24 reasons.

25         THE COURT:  No one said they're victims?

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 79 of 259
Motions to Dismiss

79

1          MR. PRIETO:  They did.  There was a general reference

2     that certain automakers were victims of Takata.

3          THE COURT:  Which ones?

4          MR. PRIETO:  It's unclear.  The plea has --

5          THE COURT:  Let's make it clear.  That's the issue.

6          MR. PRIETO:  Here's the other issue:  A Special

7     Master -- now, they told you that there was fact-finding

8     involved with this plea.  There really wasn't, except Takata

9     essentially admitting, as you know in a corporate plea, to

10    certain facts.  One of those facts that Takata admitted to was

11    that the OEMs -- excuse me -- the automakers, not Takata, would

12    not have bought these cars had it not been for Takata's --

13    excuse me -- the inflators but for Takata's fraud.

14         Now, listen to what the Special Master said.  This is

15    what happened:  Takata enters into a plea where the allegation

16    is that the automakers were the victims.  No automakers are

17    named in the plea or any of the information in that plea.  The

18    automakers then get together and do an allocation, okay.

19    There's $800 million.  Let's allocate it amongst ourselves.

20    They reached agreement and this is what the Special Master

21    appointed in that case said about whether any of these

22    automakers were victims.  No such finding was ever made, and

23    this was from the Special Master's Request for Final Approval of

24    Allocation and Distribution of OEM Restitution Fund.

25         It's United States versus Takata Corporation,

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 80 of 259
Motions to Dismiss

80

1    16-CR-2081004, filed on February the 1st, 2018.  This is what

2    the Special Master said at paragraph 13, Page 5 of this

3    document, Your Honor:

4         "The proposed final allocation is based on three main

5       principles.  First, the two OEM restitution funds are

6       combined into one single" --

7         THE COURT:  Slow down for the court reporter.

8         MR. PRIETO:  I'm sorry.  -- "into one single global

9       fund.  Each eligible OEM," which stands for original

10       equipment maker, "will recover from the single fund."

11         And here is what's important, this is what the Special

12   Master says:

13         "This is consistent with the recommendation of the

14       consenting OEMs and obviates the need to determine whether a

15       particular OEM can demonstrate that it was a victim of

16       Takata's fraud."

17         And the Special Master puts "victim" in quotes.  So the

18   Special Master never made a finding as to which of the

19   automakers were victims as a result of the criminal --

20         THE COURT:  Well, this was in February.

21         MR. PRIETO:  This was in February of this year.

22         THE COURT:  The Restitution Order was entered.

23         MR. PRIETO:  Correct.

24         THE COURT:  What has happened since then about that?

25         MR. PRIETO:  I assume that they received their monies

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 81 of 259
Motions to Dismiss

81

1  but there was never --

2         THE COURT:  So there had to be some decision before

3  they got their money.

4         MR. PRIETO:  I think the only decision was that they

5  came to agreement on an allocation, and the monies flowed based

6  on the agreement of that allocation.

7         THE COURT:  And I can't infer from that anything?

8         MR. PRIETO:  You cannot infer because the Special

9     Master has said that this "obviates the need to determine

10     whether a particular OEM can demonstrate that it was a

11     victim of Takata's fraud."

12         So no such finding was ever made.  And, Your Honor, the

13  important thing about the Takata Plea Agreement, which the Court

14  heard argument before, is they may claim that this absolves

15  them.  That's what Honda came in here and said about a year and

16  a half ago.

17         Our position has always been the same.

18         THE COURT:  Well, when they came was before or after

19  the plea?

20         MR. PRIETO:  It was after the plea.  They said it was a

21  game changer, and our position has been consistent.  Takata may

22  have told you certain things in certain testing that was not

23  true, but we have independent evidence that you knew -- despite

24  what Takata was telling you -- you knew that these inflators

25  were defective.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 82 of 259
Motions to Dismiss

82

1              THE COURT:  You have independent evidence.

2              MR. PRIETO:  Yes.  We've alleged independent evidence.

3              THE COURT:  And that is in which paragraph of the

4      Complaint?

5              MR. PRIETO:  I'll read it to you.

6              THE COURT:  183, 185, or 314?

7              MR. PRIETO:  As to Mercedes, I'll give you just a few

8      examples.  Paragraph 10:  Before equipping -- this is not a

9      quote, this is a summary of the allegation.  Excuse me.

10             Paragraph 10:  "Before equipping its vehicles with

11          ammonium nitrate Takata airbags --"

12             THE COURT:  Slow down.

13             MR. PRIETO:  I'm sorry.

14             Paragraph 10:  "Before equipping its vehicles with

15          ammonium nitrate Takata airbags, Mercedes expressed concerns

16          over signs of over-pressurization, module cover tearing,

17          cushion tearing, all signs of serious inflator and

18          propellant problems."

19             Paragraph 11:  "Despite testing concerns and despite

20          Mercedes' knowledge that Takata airbags failed to meet a key

21          set of industry standards, Mercedes approved multiple models

22          of ammonium nitrate inflators.  Indeed, Mercedes went so far

23          as to waive key performance variables and accept deviations

24          to get the airbags approved."

25             So that Your Honor understands, all these automakers

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 83 of 259
Motions to Dismiss

83

1  give Takata specifications.  Takata must meet them.  In a lot of

2  instances, several of these automakers waived those

3  specifications because Takata simply couldn't meet them.

4       Here is another one:  "Mercedes knew prior to approving

5       the defective airbags that Takata used an ammonium nitrate

6       as a propellent which it market as an inexpensive propellent

7       to reduced Mercedes' costs."

8       Paragraph 183:  "In April or May of 2003 --" 2003.

9  Remember that the first major recall was in 2014.  We are going

10 back to 2003.

11      Paragraph 183:  "In April or May of 2003, Mercedes

12      recognized that the defective airbags failed to meet

13      Mercedes' own standards for approval.  Prior to approval,

14      Mercedes employees raised concerns that the inflator was the

15      cause of module performance issues, including, 'module cover

16      tearing,' and 'cushion tearing'."

17      "In July of 2005, a Daimler Chrysler airbag engineer

18      sent an email to Takata reflecting that Mercedes engineers

19      were aware of inflator performance problems and Takata's

20      difficulty in meeting U.S. car standards prior to approving

21      the defective inflators for installation in Mercedes

22      vehicles."

23      Paragraph 185:  "The same Mercedes engineers repeatedly

24      expressed concerns with the PSD 15 inflator in pre-approval

25      testing."

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 84 of 259
Motions to Dismiss

84

1          THE COURT:  But there's no denial by you that Takata

2  provided false, fraudulent, and misleading test information and

3  data to the so-called OEMs, right?  Right?

4          MR. PRIETO:  We don't quibble with the fact that Takata

5  has pled guilty to that.

6          THE COURT:  No, no, no.  That's not I'm saying.  What

7  I'm saying is that they provided misleading and fraudulent

8  information and data to the OEMs.

9          MR. PRIETO:  To some OEMs, yes.  They pled to that and

10  we take that for a fact.

11          THE COURT:  It's true.  So that --

12          MR. PRIETO:  Some OEMs, unknown OEMs.

13          THE COURT:  Unknown.

14          MR. PRIETO:  Yes.

15          THE COURT:  So the issue is:  Who are the victim OEMs?

16          MR. PRIETO:  That's not the issue, Your Honor,

17  because --

18          THE COURT:  That's one of the issues.

19          MR. PRIETO:  That's their position, that they were

20  victims.  Our position --

21          THE COURT:  But that's also what happened in court.

22          MR. PRIETO:  That's what Takata pled guilty to, but

23  just because one person in a conspiracy -- and we make this

24  argument in terms of RICO.  There's no honor among thieves,

25  okay, and in a conspiracy for example, let's talk about RICO --

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 85 of 259
Motions to Dismiss

85

1          THE COURT:  I understand.  But you agree that some

2     fraud was committed by Takata upon these defendants.

3          MR. PRIETO:  Some misrepresentations were made by

4     Takata to some of these defendants, we don't know who, but to

5     some of these.

6          THE COURT:  Your opponents say you've got to know who

7     because under Rule 9, you've got to be specific when it comes to

8     fraud, right?

9          MR. PRIETO:  Your Honor, that's an affirmative defense.

10    Number one, it's an affirmative defense that they need to make

11    and raise, that they had no knowledge.

12         THE COURT:  You don't have to be specific in fraud?

13         MR. PRIETO:  We have been specific in terms of what we

14    have alleged they knew about the problem.  Just because somebody

15    lies to somebody about certain things --

16         THE COURT:  But this is no secret, right, who the OEMs

17    are?  It seems like it's a secret?  Everybody knows who they

18    are.

19         MR. PRIETO:  We know who they are generally.  We have

20    no idea --

21         THE COURT:  What do you mean, generally?  You don't

22    know who they are specifically?

23         MR. PRIETO:  Based on the documents that we've

24    reviewed, we don't know who the OEMs are --

25         THE COURT:  Really?

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 86 of 259
Motions to Dismiss

86

1          MR. PRIETO:  -- that were lied to, that Takata lied to

2    or misrepresented to.

3          THE COURT:  So who's getting money?  So some people are

4    getting money for nothing.

5          MR. PRIETO:  They came to an agreement, and as I said,

6    the Special Master said there is no need to determine who was a

7    victim of the Takata fraud.

8          THE COURT:  So someone is getting tens of millions of

9    dollars without being a victim.

10         MR. PRIETO:  They didn't have to prove it to anyone.

11         THE COURT:  Wow.  Because everybody agreed.

12         MR. PRIETO:  Correct.  I'm reading from --

13         THE COURT:  That doesn't count for anything.

14         MR. PRIETO:  I'm reading from the Special Master's

15   report.

16         THE COURT:  Wow.

17         MR. PRIETO:  But I think, you know, the other issue is

18   that --

19         THE COURT:  It's hard enough to get victims restitution

20   money.  Here it doesn't mean anything you're saying.

21         MR. PRIETO:  That case could have been charged

22   differently.  That case could have been charged as a wire/mail

23   fraud case to the consumers.  It wasn't charged that way.

24         THE COURT:  But it means something.  It has to mean

25   something.  It doesn't help you.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 87 of 259
Motions to Dismiss

87

1           MR. PRIETO:  Your Honor --

2           THE COURT:  Does it?

3           MR. PRIETO:  No, it doesn't help us, but it doesn't --

4    in any way, shape, or form does it hurt our case.  We're going

5    to be able to prove that they knew independent of what Takata

6    was telling them about the defect.

7           THE COURT:  And the main proof that you allege are

8    these emails.

9           MR. PRIETO:  Not only the emails.

10          THE COURT:  The emails is the main thing.

11          MR. PRIETO:  I don't know if they're emails -- not all

12   of these allegations are based on emails.  I mean, we did some

13   independent investigation.  I want you to know --

14          THE COURT:  Now that I've modified the Confidentiality

15   Order, the better thing to do would be let you amend that

16   Complaint and set out what the emails say about a specific OEM.

17          MR. PRIETO:  Your Honor --

18          THE COURT:  Wouldn't that be better?  You're going to

19   have to do it anyway.

20          MR. PRIETO:  We have already done that.

21          THE COURT:  That specifically?

22          MR. PRIETO:  Well, we haven't quoted from like this

23   email in terms of --

24          THE COURT:  Why not do it that way?

25          MR. PRIETO:  We could, but here's the other --

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 88 of 259
Motions to Dismiss

88

1          THE COURT:  Why not?

2          MR. PRIETO:  Let me clarify something also for the

3    Court, because counsel for Daimler got up here and said there's

4    a huge fountain of information.  Well, there is a huge fountain

5    of information that we got from Takata, but none of these

6    automakers have produced -- I shouldn't say all of them.  The

7    four new ones have not produced -- well, they produced recently,

8    which we've not reviewed yet, they produced recently records,

9    but in the original litigation, none of these automakers, the

10   new ones, produced records to us.

11         THE COURT:  Well, they weren't in the case.

12         MR. PRIETO:  Correct.  So my only point is that you

13   have to understand that the information we got to use in these

14   Complaints were information we gleaned from Takata, not from

15   these automakers.

16         THE COURT:  Okay.

17         MR. PRIETO:  I want to make that clear.

18         THE COURT:  But now you've got more.  Put it in there.

19   What's wrong with putting it in there?

20         MR. PRIETO:  Your Honor, we can put it in here, but I

21   think what we've put in there --

22         THE COURT:  That way we know what you say they knew and

23   when.  Email 1, email 2, email 3, this proves knowledge, they

24   know.  They can defend themselves.  Yeah, you weren't really a

25   victim.  I don't know what that does to the Restitution Order.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 89 of 259
Motions to Dismiss

89

1   I don't know if you can change that.  I'm not going to get into

2   whether you can change prior orders or not.  It's none of my

3   business, that.  But this case, it seems fair that they should

4   know.  You're going to have to tell them anyway.

5          MR. PRIETO:  Your Honor, if we're talking about --

6   maybe I misunderstand.  When we drafted this Complaint we had

7   some documents and emails --

8          THE COURT:  I understand that, but now you are clear

9   about what emails he's talking about that they wanted to say

10  they're sealed.  They're no longer going to be sealed, nothing

11  is going to be sealed.  Just say whoever, Mercedes, Chrysler,

12  Audi, Volkswagen, this is how we prove they knew as of this

13  date.  You know how we can prove that they knew as of this date?

14  They were told, look at this email.  What's wrong with doing it

15  that way?

16         MR. PRIETO:  We can put as much information as the

17  Court wants us --

18         THE COURT:  I just want the emails that have not been

19  previously made public, how about that, that directly show

20  knowledge of a fraud on the part of a defendant.

21         MR. PRIETO:  And we are operating under the

22  plausibility standard, correct?

23         THE COURT:  Always.

24         MR. PRIETO:  Always.

25         THE COURT:  But if you have a direct email, you don't

1  have any problems.

2          MR. PRIETO:  That's fine, we can do that.

3          THE COURT:  You say you have that.  Do you?

4          MR. PRIETO:  We have some emails from Takata --

5          THE COURT:  Then it won't even be that many.  You can

6  put them in there and they know.

7          MR. PRIETO:  They were referenced in the Complaint,

8  they just weren't identified as a particular email.

9          THE COURT:  But, see, if you identify it as a

10  particular email on a particular date to a particular person,

11  then it's foolproof, right?

12          MR. PRIETO:  That's fine.

13          THE COURT:  They know how to defend, you know how to

14  attack.  We know, let's go, play ball.

15          MR. PRIETO:  We can do that, Your Honor, and just to be

16  clear --

17          THE COURT:  Is there anything wrong with that?

18          MR. PRIETO:  Nothing wrong, but we think we've met more

19  so than -- we've met the plausibility standard based on what

20  we've alleged.

21          THE COURT:  But this is better.

22          MR. PRIETO:  If that's what the Court wants --

23          THE COURT:  And you can do that in a couple of days

24  because you've got them already.  The only issue is that they

25  were sealed, part of a Confidentiality Order that has been

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 91 of 259
Motions to Dismiss

91

1  modified.  So, boom, you can flick it on, put it in there as

2  indicated in the email as to this defendant, done.

3           MR. PRIETO:  We can put all the emails concerning these

4  defendants assuming they have no problem with us revealing

5  certain information about them in the public record, but we're

6  willing to do that.

7           THE COURT:  Well, you're not going to reveal that at

8  trial --

9           MR. PRIETO:  Yes, of course.

10           THE COURT:  -- or at the summary judgment?

11           MR. PRIETO:  Your Honor, the Protective Order is never

12  our issue; it's their issue.  They have reasons --

13           THE COURT:  It's not their issue if they weren't part

14  of it, right?

15           MR. PRIETO:  Right.

16           THE COURT:  It's Takata's issue and people don't have

17  standing if they weren't.  You've got to prove fraud.  They're

18  saying you have not even alleged sufficient fraud.

19           MR. PRIETO:  And we have.

20           THE COURT:  The best way to say it, okay, you want me

21  to be more specific?  Here it comes.  Here are the bullets.

22  Now, I don't want you to do a shotgun and all kinds of shells

23  all over the place.  Be specific, this email as to this

24  defendant, this email as to that defendant.  Can we do that?

25           MR. PRIETO:  We have done that already, but we will do

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 92 of 259
Motions to Dismiss

92

1   it in the specificity that you're asking because --

2          THE COURT:  Then, that takes care of it, right?

3          MR. PRIETO:  That's fine, we can do that.

4          THE COURT:  You wouldn't even need -- the next Motion

5   to Dismiss, denied, they've done enough.  Let's move.  That

6   makes sense, right?  That's what I should do.

7          MR. PRIETO:  You can do that, but I think you're asking

8   us to do something --

9          THE COURT:  That you don't really have to do.

10          MR. PRIETO:  Of course, but we --

11          THE COURT:  But you're going to do later on anyway.

12          MR. PRIETO:  Not necessarily.

13          THE COURT:  So do it earlier.

14          MR. PRIETO:  We could do that.  The only difference,

15   Your Honor, is we don't have any records from these defendants

16   yet.

17          THE COURT:  Okay.  But you say you've got enough from

18   other people.

19          MR. PRIETO:  We have sufficient, which we've included

20   in these Complaints, from Takata.

21          THE COURT:  Without reference to --

22          MR. PRIETO:  Yes.

23          THE COURT:  -- who got what.

24          MR. PRIETO:  Yes.

25          THE COURT:  Well, that's what I want you to do.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 93 of 259
Motions to Dismiss

93

1          MR. PRIETO:  I don't want to belabor it, Your Honor.

2    We did say who got what, but not with the specificity that Your

3    Honor is requiring.

4          THE COURT:  I know, but that's what they're complaining

5    about.

6          MR. PRIETO:  I'm not sure that's their only complaint,

7    but that's okay.

8          THE COURT:  That's not their only complaint, just like

9    it's not the only emails that you have.  You're afraid that --

10   you want to get more, I know.  Of course, you're going to get

11   more, you think, because you always get more.  Complaints

12   shouldn't have everything in the case, that would be ridiculous.

13         MR. PRIETO:  I think defendants would sometimes differ

14   in terms of how much should be in the Complaint.  That's why

15   Complaints now are a hundred pages, where in the old days it

16   used to be 20 pages.

17         THE COURT:  Okay.  But that's because today we dismiss

18   more Complaints than we used to.

19         MR. PRIETO:  Probably because of the higher standard.

20         THE COURT:  So meet the higher standard and you're

21   safe.

22         MR. PRIETO:  We've met it and we'll meet it again, Your

23   Honor.

24         THE COURT:  Okay.  Meet the higher standard again in

25   your view, for the first time in the defendants' view.  I don't

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 94 of 259
Motions to Dismiss

94

 1  care what the word is.  If you've got to do it, you do it.  The

 2  thing that was blocking it was the Confidentiality Order and

 3  I've opened that up.  Right?

 4          MR. PRIETO:  That's fine, Your Honor.

 5          THE COURT:  Or am I missing something?

 6          MR. PRIETO:  No, I don't think that we -- there was a

 7  Confidentiality Order --

 8          THE COURT:  That's been taken care of, right?

 9          MR. PRIETO:  Right.

10          THE COURT:  It seems like you're afraid of doing

11  something.  I'm not understanding.

12          MR. PRIETO:  No, I'm not afraid.  It's doing something

13  where we think we've already met the standard, but we'll do it

14  again.  Your Honor --

15          THE COURT:  It won't be the first time --

16          MR. PRIETO:  Of course not.

17          THE COURT:  -- that a lawyer does something thinking

18  that they don't have to do, that they've already done, but if

19  you do it, it takes care of it.  In your view, it should help

20  you because then you're more specific, you've alleged it, and

21  you say, well, now they even want more.  No.  You get more now

22  in discovery if it's true.  But if I think you don't have enough

23  once we have those specifics, then you are in trouble.  Right?

24          MR. PRIETO:  Your Honor, we think we have enough now.

25          THE COURT:  Obviously.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 95 of 259
Motions to Dismiss

95

 1          MR. PRIETO:  Yes.

 2          THE COURT:  Every plaintiff thinks they have enough.

 3    If not, they wouldn't have filed the Complaint in the first

 4    place.

 5          Okay.  Now, what about this:  You agree with this,

 6    right, do you not?

 7            "Each plaintiff within the proposed class must show

 8        that he suffered an injury that is traceable to a

 9        defendant's action."

10            You agree with that.

11          MR. PRIETO:  Of course.

12          THE COURT:  Okay.  Usually I start out with the first

13    statement and I get you to first base.

14          Now, if I look at this Complaint with Volkswagen and

15    Audi, you've done that in your view.

16          MR. PRIETO:  Of course.

17          THE COURT:  And how have you done that?

18          MR. PRIETO:  We've done it very simply and I'll make

19    one point and answer your question.

20            What you're seeing here are the same arguments made

21    previously repackaged.  For example, manifestation is really

22    standing.  There's no injury because it hasn't manifested, so

23    therefore, there's no standing.  So the arguments about

24    injury --

25          THE COURT:  You think Volkswagen and Audi are in the

1 | same boat as the others?

2 |         MR. PRIETO:  Your Honor, we've alleged very specific

3 | concrete financial harm.  One, our class members overpaid.

4 |         THE COURT:  By Volkswagen and Audi.

5 |         MR. PRIETO:  Of course.  As to each automaker we have

6 | alleged --

7 |         THE COURT:  I just want to talk about Volkswagen and

8 | Audi.

9 |         MR. PRIETO:  Volkswagen and Audi, we have alleged

10 | specifically they overpaid for their cars, which is a benefit of

11 | the bargain theory of damages, which the Eleventh Circuit has

12 | accepted, because when a defective car by definition and by

13 | common sense is worth less than a --

14 |         THE COURT:  And it's traceable to these defendants how,

15 | the same thing?

16 |         MR. PRIETO:  Very easy.  They knew of the defect, they

17 | failed to disclose it, they misrepresented the cars were safe,

18 | and these people bought the cars; and each class plaintiff, each

19 | plaintiff has alleged had I known of this, had I known of this,

20 | I would not have purchased the car or I would have paid less.

21 |         THE COURT:  So we're back to the original issue of when

22 | did they know about the fraud since they're allegedly victims of

23 | the fraud themselves.

24 |         MR. PRIETO:  And we've alleged that they knew about the

25 | fraud before our class members purchased these cars and that,

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 97 of 259
Motions to Dismiss

97

1   Your Honor, to be frank with the Court, we can allege it, but

2   that's a jury question, what they knew and when did they know

3   it.

4          THE COURT:  It could be a summary judgment question,

5   too.

6          MR. PRIETO:  Well, of course, but once we have

7   discovery from them, yes.

8          THE COURT:  All right.

9          MR. PRIETO:  Just so the Court is aware, injury in fact

10  for standing purposes can be alleged generally.  It doesn't have

11  to be alleged -- we have alleged it with more specificity than

12  is required.  So for allegation purposes, injury in fact -- the

13  Eleventh Circuit has said this and I think Your Honor has also

14  said it -- needs to be alleged generally.  And like I said, you

15  know, there's a case where Your Honor was involved in in terms

16  of -- you may remember, it's a recent case involving some

17  weapons.  The same argument was made that these defendants are

18  making here, and this is what this Court said:

19          "Plaintiffs argue that standing is sufficient where

20     plaintiffs claim economic harm such as overpayment, loss of

21     value, or loss of usefulness emanating from the loss of

22     their benefit of the bargain.  Indeed, if benefit of the

23     bargain damages are theoretically available for the causes

24     of action that have been asserted, dismissal on the

25     pleadings is premature."

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 98 of 259
Motions to Dismiss

98

 1          THE COURT:  Which case is that?

 2          MR. PRIETO:  That's the case where there was a defect

 3  in the safety of the guns and four out of the five plaintiffs in

 4  that case had never sustained -- the gun had never misfired when

 5  it was placed on safety, and the Court basically said that when

 6  you allege overpayment --

 7          THE COURT:  It's a Fort Lauderdale case.

 8          MR. PRIETO:  I'm sorry?

 9          THE COURT:  It's a Fort Lauderdale case that I hope I

10  can dump on a new Fort Lauderdale judge.

11          MR. PRIETO:  Your Honor, we have been very specific as

12  to injury in fact.

13          THE COURT:  I got it.  I got it.

14          MR. PRIETO:  And again, this whole issue of tracing,

15  traceability, that's causation by another name, which we dealt

16  with previously.  So the so-called standing injury in fact,

17  that's manifestation by any other name.

18          THE COURT:  While I've got you on the floor, what do

19  you want to say -- rather than you standing up each time, what

20  do you want to say about this direct filing into the Southern

21  District argument, if you are going to be the one arguing that?

22          MR. PRIETO:  I am, Your Honor, because we've had

23  discussions about direct filing, and we did essentially what we

24  told the Court we were going to do.  We didn't direct file.

25  What we did was, when Your Honor said -- you may remember, there

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 99 of 259
Motions to Dismiss

99

1  was a point in time when you said, what are we going to do with

2  the new defendants?  I told the Court I believe back in 2016, or

3  early 2017, we have two defendants that are already in the MDL.

4  That was VW and GM I believe, or maybe FCA and GM.  And you

5  said, look --

6         THE COURT:  They were in, transferred from the

7  Multidistrict Panel.

8         MR. PRIETO:  Correct.  They were already here and you

9  actually asked us:  Can you direct file here?  We researched it

10 and the JPML permits you to direct file here, and basically,

11 once you direct file here, the local rules require the Court or

12 the judge that received it that's not the MDL Court, to transfer

13 it here.

14        So one, you basically said, I don't want you bringing

15 in new defendants under this current Complaint because discovery

16 is far along and they're going to say, it's too far along, you

17 know, we don't have any chance for discovery.  So we

18 essentially, after two or three hearings, did what you wanted us

19 to do, and what we did was as follows:

20        We filed in the home districts, either the principal

21 place of business or headquarters, for each of these defendants

22 as to non-Florida plaintiffs.  We filed there.  Then we filed a

23 JPML tagalong notice with the JPML and then we filed a

24 Consolidated Complaint with all the plaintiffs, non-Florida and

25 Florida, here based on your request that we do that.  That's

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21    12-11-18
Transcript of MDL Hearing    Pg 100 of 259
Motions to Dismiss

100

1   what we did.

2         THE COURT:  Was I wrong in doing that?

3         MR. PRIETO:  No, you were not wrong in doing that.  I

4   have the transcripts if the Court wants to --

5         THE COURT:  No, no, no, I remember saying it.  I could

6   be wrong even when you have a transcript.  I know I said it.

7         MR. PRIETO:  So here's the alternative world --

8         THE COURT:  On occasion I'm wrong.

9         MR. PRIETO:  I don't know what they would want us to

10  do.

11        THE COURT:  Well, that's what I'm going to ask them.

12        MR. PRIETO:  Because if you unravel this Complaint, you

13  know, we're going to have to go file in the other districts and

14  then, you know -- I just don't know exactly what the solution

15  is.

16        THE COURT:  Let's find out what they want us to do.

17        MR. PRIETO:  But we did everything appropriately, we

18  filed in the home districts, filed the tagalong, and then filed

19  the Consolidated Complaint with all the plaintiffs, Florida and

20  non-Florida, here per your instructions.

21        The last point I'll make on this issue is, they raise

22  this issue about, well, they've trying to sort of take away our

23  jury right in our in the transferor district.  That's not an

24  issue that the Court needs to make now.  Your Honor is a 1407

25  MDL Court and you're going to do all the pretrial proceedings.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 101 of 259
Motions to Dismiss

101

1  When these cases are ripe for trial, then Your Honor will say,

2  okay, this case can be tried here and that case can go back to

3  its district.

4         THE COURT:  Well, in order to go back to the district,

5  it has to come from there in the first place.

6         MR. PRIETO:  And we did, that's what I'm telling the

7  Court that --

8         THE COURT:  So every defendant that's complaining about

9  this direct file has had a case filed in another district?

10         MR. PRIETO:  In their home district, their so-called

11  home district.  We filed there and then we filed a Consolidated

12  Complaint with those and these Florida plaintiffs here.

13         THE COURT:  And those cases have been transferred also?

14         MR. PRIETO:  Correct.

15         THE COURT:  So it's like duplicate.

16         MR. PRIETO:  Well, because we wanted to obviate --

17         THE COURT:  But that's what has happened, we have

18  duplication.  We have the case that has been transferred that

19  has been placed in civil suspense, and the Amended Complaint

20  that includes all of these defendants.

21         MR. PRIETO:  Right, but I wouldn't call it duplication;

22  I would call it consolidation.  So we consolidated the claims --

23         THE COURT:  Well, what happened to the case that you

24  filed in another district?

25         MR. PRIETO:  Came here and you placed --

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 102 of 259
Motions to Dismiss

102

  1          THE COURT:  It came here.

  2          MR. PRIETO:  I would assume it's been placed on civil

  3  suspense, but the allegations in those cases --

  4          THE COURT:  -- are in the Amended Complaint.

  5          MR. PRIETO:  Correct.

  6          THE COURT:  All right.  I understand.  That's what I

  7  thought.  Let me find out from your opponents why they don't

  8  like that.

  9          Okay.  Who's going to speak for a defendant?

 10          MR. GLUECKSTEIN:  Good now afternoon, Your Honor.

 11          THE COURT:  Yeah, I'm sorry.

 12          MR. GLUECKSTEIN:  It's okay.  We're here.  We

 13  appreciate you taking the time to hear from us today.

 14          My name is Brian Glueckstein with Sullivan & Cromwell.

 15  I represent FCA US, LLC.

 16          THE COURT:  Okay.

 17          MR. GLUECKSTEIN:  In response to Your Honor's question,

 18  the issue here and the reason why we're making this an issue is

 19  because the question is one that the plaintiffs are trying to

 20  rely on general jurisdiction in each defendant's home district.

 21  And the issue here, Your Honor --

 22          THE COURT:  So you'd rather be in these other

 23  districts.  You don't want to be transferred by the

 24  Multidistrict Panel as a tagalong, right?

 25          MR. GLUECKSTEIN:  That claim --

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 103 of 259
Motions to Dismiss

103

1          THE COURT:  You don't want to be transferred.  You've

2    objected.  You said, Multidistrict Panel, do not send us to

3    Moreno in Miami.  You did that?

4          MR. GLUECKSTEIN:  No, Your Honor.

5          THE COURT:  What happened before the Multidistrict

6    Panel?

7          MR. GLUECKSTEIN:  All that has happened with respect to

8    the case that was filed there, and it was filed mere hours

9    before the case was filed here on this Court's docket, is that

10   the case was transferred here and put into civil suspense.

11         THE COURT:  Well, but when it was transferred here, the

12   Multidistrict Panel is very conscientious, they do things

13   conditionally, they give you notice to see if anybody objects.

14   True?

15         MR. GLUECKSTEIN:  I believe that is typically the way

16   the Multidistrict Panel works, Your Honor.

17         THE COURT:  They didn't do it in this case?  They said,

18   we're not doing this right now, we don't even want to hear from

19   anybody opposing it.  It goes to Moreno in Miami no matter what

20   anybody says.  Did they do that?  They didn't do that, did they?

21         MR. GLUECKSTEIN:  I can't represent that that's what

22   happened, Your Honor.

23         THE COURT:  They gave you a chance to object.  You

24   don't object.  So if you don't object, why are you objecting

25   here?  You'd rather be there, you should have told the

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 104 of 259
Motions to Dismiss

104

1  Multidistrict Panel, unless you really don't want to be in a

2  bunch of different districts.

3       MR. GLUECKSTEIN:  Well, Your Honor, we certainly would

4  be happy -- not happy -- but willing to defend that action, at

5  least as to FCA, where it was filed in Michigan.  But the

6  question Your Honor --

7       THE COURT:  So you should have objected to a transfer.

8       MR. GLUECKSTEIN:  Your Honor just asked the question of

9  plaintiffs whether the claims are duplicative, whether these

10 Complaints --

11      THE COURT:  No, but before we get to that, even if

12 they're duplicative, the reason they might be duplicative is

13 because -- and maybe I made mistake in doing one Amended

14 Complaint including everyone, you know.  There's probably

15 different ways of doing it.  I should have divided and conquer

16 maybe, just do one at a time.  All right.  I said, let's put

17 everything together.

18      But your issue here is, as I understood it, perhaps

19 wrongly, hey, they're bypassing the Multidistrict, I'm not even

20 going to get my jury trial.  They didn't really do that, did

21 they?

22      MR. GLUECKSTEIN:  The issue, Your Honor --

23      THE COURT:  Did they do that?

24      MR. GLUECKSTEIN:  Did they bypass the --

25      THE COURT:  -- Multidistrict Panel.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 105 of 259
Motions to Dismiss

105

 1             MR. GLUECKSTEIN:  No, Your Honor.

 2             THE COURT:  Okay.  So they sent it to me.  What can I

 3     do?

 4             MR. GLUECKSTEIN:  The question here --

 5             THE COURT:  I have to accept it, right?

 6             MR. GLUECKSTEIN:  I'm sorry, Your Honor.  The question

 7     is -- of course, you can accept the claim that was tagged in and

 8     transferred in.  The question here and the issue that the

 9     defendants have raised is one of personal jurisdiction.  That's

10     not an issue that's addressed by the panel.  That's not an issue

11     that's addressed by the tag-in process.

12             THE COURT:  That's an issue that would be raised in

13     every case that the Multidistrict Panel sends.  See, if I ruled

14     your way on this -- oh, my goodness, it's a dramatic order that

15     you want that basically would eliminate what the Multidistrict

16     Panel and what Congress wanted, don't you think?

17             MR. GLUECKSTEIN:  I don't, Your Honor.

18             THE COURT:  That's a big one, which, by the way,

19     doesn't help defendants in many cases.

20             MR. GLUECKSTEIN:  In that situation, Your Honor, you

21     have a Complaint that was filed.  That Complaint would have been

22     transferred to Your Honor.

23             THE COURT:  It was.

24             MR. GLUECKSTEIN:  And that is not the Complaint that's

25     before Your Honor on the Motion to Dismiss.  That's the problem.

Motions to Dismiss

1   The problem is, that Complaint is sitting in civil suspense.

2   That Complaint is a subset of the claims that are asserted in

3   this Complaint.

4        THE COURT:  So you'd rather be separate in that

5   Complaint.  So if I take you out, have that Complaint

6   separately, then you have no objections to anything because it

7   was transferred by the Multidistrict.  You'd rather be that way.

8        MR. GLUECKSTEIN:  That Complaint, Your Honor --

9        THE COURT:  Would you rather be that way?

10        MR. GLUECKSTEIN:  We would have to defend that

11   Complaint, and we're happy to do so.

12        THE COURT:  So that's what I should do.  So what I

13   should do is reactivate that particular Complaint, eliminate it

14   from the civil suspense, boom, put it on a fast-track pretrial,

15   get it ready for trial, and send it back to Detroit, Michigan,

16   wherever it was, right?  You would be in agreement with that?

17        MR. GLUECKSTEIN:  We agree that that's how the rules

18   would work.

19        THE COURT:  That's what you want.

20        MR. GLUECKSTEIN:  Yes, Your Honor, because --

21        THE COURT:  Okay.  What's wrong with doing that for

22   this particular defendant?

23        MR. PRIETO:  Because it doesn't make any sense.

24        THE COURT:  Well, it may not be administratively the

25   ideal thing, but it's divide and conquer.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 107 of 259
Motions to Dismiss

107

 1          MR. PRIETO:  So we're having two Complaints,

 2    non-Florida plaintiffs, one Complaint here, and Florida

 3    plaintiffs also in another Complaint here.

 4          THE COURT:  You filed it there, we will move it super

 5    fast, we'll give it top priority.  It's easy.  Divide and

 6    conquer.  What's wrong with that?

 7          MR. PRIETO:  Because the claims, Your Honor, are the

 8    same as to all the plaintiffs.

 9          THE COURT:  I understand.  It's more work for me, more

10    work for you, less work for this defendant, but we can move this

11    one fast, which the plaintiff would like.

12          MR. PRIETO:  And this is contrary, Your Honor, to,

13    number one, MDL practice, which is to consolidate all the claims

14    because they all share the same sort of issues, facts, number

15    one.

16          Number two, you know, we've got RICO claims here that

17    encompass not simply Florida plaintiffs, but also non-Florida

18    plaintiffs, so this belongs in one Complaint.  This doesn't make

19    any sense at all.  I mean it's -- and the fact that we're here

20    is to do everything that needs to be done pretrial among all the

21    plaintiffs and all the claims in one court.

22          THE COURT:  Okay.  But then, at the end, let's say

23    summary judgment is denied, some claims remain, some are thrown

24    out, there's something left.  It's going to be sent back.  The

25    whole Complaint can't be sent back to -- how do we send it back

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 108 of 259
Motions to Dismiss

108

1   to the other districts?  How do I do that?

2          MR. PRIETO:  Your Honor, assuming a RICO nationwide

3   class needs to be sent back to the other district, which I don't

4   believe that's necessary -- I think you can try a RICO class

5   action here in this courtroom.

6          THE COURT:  But there are other claims.  What do I do

7   with the other claims?

8          MR. PRIETO:  Well, the other claims --

9          THE COURT:  You could always voluntarily dismiss, and

10  then that would take care of it.

11         MR. PRIETO:  We could voluntarily dismiss the other

12  claims if --

13         THE COURT:  You could do it beforehand and that would

14  be easier.

15         MR. PRIETO:  Well, I think it's premature to say which

16  claims we would dismiss, but, you know, I think that the -- in

17  terms of the other claims, you would have jurisdiction under

18  pendent or supplemental jurisdiction as to the other claims

19  assuming we needed to try those, assuming we needed to try

20  those.

21         THE COURT:  Then, that would mean that anytime there's

22  RICO and supplemental jurisdiction, I can keep the case and try

23  it.  Is that how it's done?

24         MR. PRIETO:  I think, Your Honor --

25         THE COURT:  Nothing is sent back.  So in your view,

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 109 of 259
Motions to Dismiss

109

1   nothing is sent back.  In your opponent's view, everything

2   should be sent back, but he really doesn't want to say that

3   because he hasn't said that.  He hasn't been cornered

4   sufficiently to say that because be careful what you want, this

5   judge may be crazy enough to give you what you want, and then

6   all of a sudden, oh, my goodness.

7            MR. PRIETO:  I am not saying that.  I think when it

8   comes to State law claims only --

9            THE COURT:  You agree it should be sent back.

10           MR. PRIETO:  No.  Depending on what the State law

11   claims are.

12           THE COURT:  So then nothing gets sent back.  So Lexecon

13   is out the window.

14           MR. PRIETO:  No, no.  Obviously, this is a little bit

15   different because we're not talking about individual claims;

16   we're talking about a class action.  So individual claims

17   obviously go back to their districts, and I think certain class

18   actions based on State law claims may go back.  When you're

19   talking about a national class action under RICO or a Federal

20   statute, I think this Court has jurisdiction to try that class

21   assuming it's got Florida plaintiffs and Florida class members,

22   which this Court has a lot of.

23           THE COURT:  So that would mean that, in essence, if you

24   file a class action and include RICO, you've gotten rid of

25   Lexecon.

09-50002-mg    Doc 8576-1    Filed 01/04/22    Entered 01/04/22 12:35:21    12-11-18
Transcript of MDL Hearing    Pg 110 of 259
Motions to Dismiss

110

1          MR. PRIETO:  Your Honor, I don't know the answer to

2     that.

3          THE COURT:  But that's kind of what you're saying.

4          MR. PRIETO:  I think if you have a nationwide class --

5          THE COURT:  Lexecon is Supreme Court, right?  I

6     certainly wouldn't want to do that.

7          MR. PRIETO:  Yes.  I think that if you've got

8     jurisdiction here because you have Florida plaintiffs and you're

9     dealing with a Federal statute like RICO --

10          THE COURT:  Well, but the judge who gets the case would

11     obviously have a reason to get the case transferred to him or

12     her, right, probably on a class action?  I'm not sure they would

13     pick a judge -- maybe they could.  They've done that I guess,

14     but usually there's some connection, right?

15          MR. PRIETO:  They tend to send it to jurists with a lot

16     of experience.

17          THE COURT:  With some connection with the case, too.

18     They don't just pick out --

19          MR. PRIETO:  That's true, Your Honor, yes.

20          MR. GLUECKSTEIN:  Your Honor, if I may, this gets to

21     the heart of the issue Mr. Prieto is hitting on.  The question

22     is, Your Honor is being asked to adjudicate this direct file

23     case.  There's no transferred case and we just heard counsel

24     say --

25          THE COURT:  No, there is one.  There is a transferred

09-50002-mg    Doc 8576-1    Filed 01/04/22    Entered 01/04/22 12:35:21    12-11-18
Transcript of MDL Hearing    Pg 111 of 259
Motions to Dismiss

111

1  case.

2          MR. GLUECKSTEIN:  There is, but that's not the case

3  that's before you for any of these defendants.

4          THE COURT:  It is, it's part of it.

5          MR. GLUECKSTEIN:  It's part of the MDL, but there's a

6  separate Complaint with a separate docket number.

7          THE COURT:  But it has the same claims.

8          MR. GLUECKSTEIN:  It has those claims plus other

9  claims.

10          THE COURT:  No question about that.

11          MR. GLUECKSTEIN:  Okay.  That includes the RICO claims

12  that --

13          THE COURT:  That gives more nationwide jurisdiction.

14          MR. GLUECKSTEIN:  If those claims are sustained.  The

15  defendants have all moved that those should be dismissed

16  pursuant to 12(b)(6).  My colleagues here are prepared to talk

17  about that if Your Honor wants to hear it today.

18          But certainly the question is -- the reason why this

19  issue and the filing place matters, Your Honor, is the

20  plaintiffs have put in their briefing -- they have been

21  forthcoming -- what they're seeking to do is utilize the

22  transferred in cases on civil suspense for each of the

23  defendants; the case filed in Michigan as to FCA, the case filed

24  in Michigan as to General Motors, cases in Virginia and New

25  Jersey for VW, Audi, and Georgia for Mercedes.  They've taken

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 112 of 259
Motions to Dismiss

112

1  those cases and they've said, Your Honor, you can assert general

2  jurisdiction as a result of those cases having been filed

3  against each of these defendants with respect to all of the

4  claims.

5          THE COURT:  Because they filed a RICO claim, too.

6          MR. GLUECKSTEIN:  They filed a RICO claim, but the RICO

7  claim, Your Honor --

8          THE COURT:  It can't be the only multidistrict case

9  that has that.

10          MR. GLUECKSTEIN:  If the RICO claim -- again, Your

11  Honor, the premise of the defendants is that on the merits the

12  RICO claim must be dismissed.  If Your Honor were to agree with

13  that -- I understand that the plaintiffs, you know, vehemently

14  disagree, that they've pled a RICO claim.  But if Your Honor

15  were to agree that the defendants' motion should be granted with

16  respect to the RICO claim, the plaintiffs are still saying that

17  Your Honor can exercise general jurisdiction over all claims,

18  pendent jurisdiction over the non-Florida claims and the direct

19  filed actions against these defendants in this Court, and that's

20  what we submit, Your Honor, is not permissible.  The cases were

21  tagged in --

22          THE COURT:  Which judge in a multidistrict transfer

23  case has ruled that way by dismissing a Complaint?

24          MR. GLUECKSTEIN:  I don't have a citation, Your Honor.

25  I also don't know that --

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 113 of 259
Motions to Dismiss

113

 1          THE COURT:  I would be the first one to have done that.

 2          MR. GLUECKSTEIN:  I don't know that plaintiffs have

 3   tried to do what has happened here, which is they've taken Your

 4   Honor's guidance with respect to Consolidated Complaints and

 5   what they've done is filed new actions, right, before this

 6   Court, and are asking this Court to exercise plenary

 7   jurisdiction, general jurisdiction over each defendant with

 8   respect to every claim that's in these Complaints for all

 9   purposes.  We just heard Mr. Prieto say, if the RICO claim

10   stands, then Your Honor should try these cases.

11          So, Your Honor, this doesn't sound at all like a

12   typical MDL.  This isn't what the MDL Panel is talking about

13   doing.  What the plaintiffs now want to do is they want Your

14   Honor to adjudicate these actions in full, in their entirety, by

15   exercising general jurisdiction.  We submitted in our papers,

16   Your Honor, and are prepared to talk about it if Your Honor

17   would like to hear about it, that if you get beyond the RICO

18   claim -- I understand that if the RICO claim is upheld, it goes

19   forward.  If the RICO claim goes forward --

20          THE COURT:  You concede that.

21          MR. GLUECKSTEIN:  -- you would have specific

22   jurisdiction.

23          THE COURT:  So the answer is, yes, you concede that.

24          MR. GLUECKSTEIN:  Yeah, if the RICO claim --

25          THE COURT:  Okay.  I got a "yeah."  I'll take it.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 114 of 259
Motions to Dismiss

114

          1           MR. GLUECKSTEIN:  If the RICO claim is upheld, there

          2   would be specific jurisdiction.  It doesn't cure this issue.  It

          3   doesn't cure the question as to whether Your Honor could

          4   exercise general plenary jurisdiction as if we were the case

          5   that was actually filed in each defendant's home jurisdiction --

          6           THE COURT:  What do you want me to do with the case

          7   that was transferred?  I interrupt a lot.  You've got to be

          8   quiet when I interrupt --

          9           MR. GLUECKSTEIN:  No problem.

         10           THE COURT:  Yeah, but see, you interrupt me, too.  The

         11   court reporter is going crazy.  Okay.

         12           Now, what do you want me to do with the case that I

         13   placed on civil suspense, reactivate it?

         14           MR. GLUECKSTEIN:  Well, the motions that are pending

         15   before Your Honor today for each defendant have to do with the

         16   Consolidated Complaint that we submit was improperly filed.

         17           THE COURT:  I know, but then what do I do with the

         18   other one?

         19           MR. GLUECKSTEIN:  We believe these claims -- these

         20   Complaints should be dismissed.

         21           THE COURT:  I know.  What do I do with the case that

         22   has been transferred that I placed, in order to organize it, in

         23   a civil suspense file, so you wouldn't be fighting different

         24   battles in different places?

         25           MR. GLUECKSTEIN:  Those cases, Your Honor, as I

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 115 of 259
Motions to Dismiss

115

1   understand it, are before Your Honor now.  If Your Honor wanted

2   to activate those cases, they could be activated and we would

3   deal with those Complaints.

4            THE COURT:  You want to do that.

5            MR. GLUECKSTEIN:  But these Complaints --

6            THE COURT:  You want to do that.

7            MR. GLUECKSTEIN:  If that's what's required to get

8   these Complaints dismissed, we will deal with that as the next

9   phase.  Yes, let's activate that Complaint, at least as to FCA,

10  and we will deal with that Complaint.

11           THE COURT:  And for that I do have jurisdiction.

12           MR. GLUECKSTEIN:  You have jurisdiction to deal with

13  that Complaint as it's filed right now.  That was filed in

14  Michigan as to FCA and transferred in here.  But this

15  Complaint --

16           THE COURT:  How would that case proceed?

17           MR. GLUECKSTEIN:  That case would proceed as an MDL

18  case.  We would have pretrial proceedings on the allegations

19  that are in that Complaint and then it would go back to

20  Michigan.

21           THE COURT:  Well, eventually.  And how many other cases

22  do I have that are in the same category?

23           MR. GLUECKSTEIN:  I believe, Your Honor, the way --

24  what the plaintiffs did here is, they filed --

25           THE COURT:  I'm sorry.  Do you know how many other

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 116 of 259
Motions to Dismiss

116

1  cases?

2          MR. GLUECKSTEIN:  I believe there was one filed against

3  each of the new defendants --

4          THE COURT:  Okay.

5          MR. GLUECKSTEIN:  -- that was dragged in, so four or

6  five.

7          THE COURT:  So I should do the same thing, if they

8  want, on all of those cases.  So what I should do is do it

9  separately.  If I do it separately, I have jurisdiction, we have

10  separate Motions to Dismiss, we have hearings.  I don't need to

11  have you all together.  I could have you separate.  The

12  plaintiff would have to be here all the time.  That's the better

13  way of doing it in your view, that's easier, more manageable,

14  it's the intent of the Multidistrict Panel.  So we would have

15  six, seven Complaints with RICO claims separately.  That's

16  better in your view.

17          MR. GLUECKSTEIN:  Your Honor, you would be able to --

18          THE COURT:  Is it better?

19          MR. GLUECKSTEIN:  I don't think what you're describing

20  is what would happen.  We have separate Complaints now.  FCA is

21  in a different Complaint than Volkswagen, Audi, different

22  Complaint than General Motors.  You're administering and hearing

23  complaints on common issues amongst the various cases as you are

24  right now.  There's no reason why that couldn't be done.

25          The issue that we have here, again, is because of the

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 117 of 259
Motions to Dismiss

117

1 breadth of the Complaint that was filed directly on the docket

2 of this Court, the expanded breadth of that, and then the

3 request to Your Honor that you exercise general jurisdiction

4 over all those claims for all purposes including, potentially --

5 it sounds like plaintiffs are going to make an argument at some

6 point potentially for trial.

7        THE COURT:  Well, we don't have to deal with that now,

8 but it seems like it's the same thing with a lot of other

9 multidistrict cases.

10        MR. GLUECKSTEIN:  I don't believe, Your Honor, in those

11 cases they have filed directly on the docket.  And, Your Honor,

12 there's a case cited by the plaintiffs --

13        THE COURT:  Do you know, Mr. Prieto, about that?

14        MR. PRIETO:  I think he's dead wrong, Your Honor.

15        THE COURT:  Well, you've got to tell me why though.

16        MR. PRIETO:  It depends on the timing.  In every MDL,

17 before cases get centralized, cases come from every single

18 district where they've been filed.

19        THE COURT:  I know that.

20        MR. PRIETO:  Right.  You understand that.  So his

21 argument makes no sense, you know, and --

22        MR. GLUECKSTEIN:  Well --

23        MR. PRIETO:  Let me finish.  So, number one --

24        THE COURT:  I guess you're not going to settle this

25 one, right?  I can tell.  Okay.  That's all right.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 118 of 259
Motions to Dismiss

118

1          MR. PRIETO:  So what he's asking you is to sort of

2    unravel the Consolidated Complaint into two Complaints, Florida

3    plaintiffs, non-Florida plaintiffs.

4          THE COURT:  Yes.

5          MR. PRIETO:  It makes absolutely no sense.  The whole

6    purpose for an MDL is to consolidate the claims pretrial,

7    pretrial, of all the plaintiffs and let them bring, especially

8    in a class action, let them bring whatever claims they believe

9    they have sufficient facts to bring.

10         THE COURT:  Of course, by the time we get to trial, we

11   are going to be in trouble because you've said, I think you can

12   try it, too, because you've got some Florida plaintiffs in a

13   RICO case.

14         MR. PRIETO:  But I think you -- we don't have to make

15   that decision, Your Honor.  If I know anything about this Court,

16   is this Court likes to think ahead, but also addresses the

17   issues before it.  This issue is way, way in advance as to where

18   these cases get tried, but let me just say this, that that

19   proposal of splitting these two Complaints up makes absolutely

20   no sense.

21         THE COURT:  All right.

22         MR. PRIETO:  Because if you were to revive the one in

23   civil suspense, we have two choices; we're going to amend that

24   Complaint to add the Florida plaintiffs back in, or we can

25   basically have two identical Complaints with Florida plaintiffs

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 119 of 259
Motions to Dismiss

119

 1   and non-Florida plaintiffs.  That makes absolutely no sense.

 2         THE COURT:  All right.

 3         MR. PRIETO:  One last point:  This whole concept of you

 4   inheriting the jurisdiction over a transferor court, that is

 5   Hornbook MDL law.  All the cases around the country say that

 6   you, as a transferee court, inherit the jurisdiction of the

 7   transferor court.  It's Hornbook.

 8         THE COURT:  All right.  Well, I think I've already

 9   violated my rule by giving you more time than the Court of

10   Appeals, and I don't want them thinking I'm getting too cocky in

11   giving you so much time.  Plus, it's close to 1:00.

12         Do you all eat lunch or not?  You don't?  Because you

13   bill.  I don't bill by the hour, so I eat lunch, so I'm going to

14   do that.  I've got to do that, I'm sorry, and give my court

15   reporter, who's been working -- you've heard me already, you're

16   tired of hearing that.  She may leave me soon if I do that.

17         Did you all get that -- did that notebook ever come

18   back without any names?  Do you have it?  Oh, my goodness.  GM

19   wants to talk, Honda, FCA, BMW, Audi and Nissan, and then, of

20   course, the plaintiffs.

21         Can you all come back at 2:15?  Is that all right?  I

22   know some of you have flights.  I don't know what else to tell

23   you.  This Fairness Hearing took longer.  I mean, you're here, I

24   can try to accommodate you.  There's nothing else I can do.

25   Your pleadings were excellent.  You can rest on your -- someone

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 120 of 259
Motions to Dismiss

120

 1   wants to be heard I can tell.

 2          MR. JANSMA:  Yes, Your Honor, I just want to add one

 3   comment on behalf --

 4          THE COURT:  Because you won't be back in the afternoon.

 5          MR. JANSMA:  I'm trying to avoid talking this

 6   afternoon.

 7          THE COURT:  Go ahead.  We'll let you do that because

 8   you will be brief.  The Multidistrict Panel gives you what, two

 9   minutes; is that right?

10          MR. PRIETO:  Maybe.

11          THE COURT:  Maybe.

12          MR. PRIETO:  Sometimes one.

13          THE COURT:  So since they've sat in this courtroom,

14   we'll give you that.

15          State your name, who you represent, and what you want

16   to say before you take your flight.

17          MR. JANSMA:  Yes, Your Honor.  My name is Steve Jansma,

18   I represent BMW AG.  Excuse my voice.  The cold weather kind of

19   got me a little bit.

20          THE COURT:  But you're from where?

21          MR. JANSMA:  San Antonio.

22          THE COURT:  I don't think it's that cold there.  Okay.

23   Go ahead.

24          MR. JANSMA:  Your Honor, we only have the recycler

25   claim left for us, and so the issues that we're applying to this

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing    Pg 121 of 259
Motions to Dismiss

121

1  defendant -- the defendants that just argued don't really apply

2  to us because we're saying that the direct filing, whether it's

3  direct filed or it's not direct filed, we're challenging

4  jurisdiction on behalf of BMW AG for both, for that Court and

5  for this Court.  So --

6          THE COURT:  Your case was transferred to me, too,

7  right?

8          MR. JANSMA:  That's correct, Your Honor.

9          THE COURT:  By the Multidistrict Panel, right?

10          MR. JANSMA:  That's correct.

11          THE COURT:  You didn't object to that transfer when it

12  was conditionally ordered to be transferred.  They give you a

13  little time to object, and you said, we're good with that.

14          MR. JANSMA:  We did not object, Your Honor.

15          THE COURT:  Now you're objecting.

16          MR. JANSMA:  We're objecting to the jurisdiction

17  under --

18          THE COURT:  You don't have the right to object on

19  jurisdiction when they're going to send it and say, wait a

20  second, Judge Vance and panel, you can't send it over there.  It

21  makes no sense.  They don't let you do that?

22          MR. JANSMA:  Your Honor, I believe the appropriate

23  place for us to file the jurisdictional challenge --

24          THE COURT:  Is here.

25          MR. JANSMA:  Yes, Your Honor.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 122 of 259
Motions to Dismiss

122

1          THE COURT:  Okay.  That would happen in a lot of

2    multidistrict transfer cases, wouldn't it?

3          MR. JANSMA:  Yes.

4          THE COURT:  So if I rule in your favor here, I've made

5    new law that will impact the whole Multidistrict Panel system.

6          MR. JANSMA:  I don't believe that that would create new

7    law.

8          THE COURT:  Tell me why.

9          MR. JANSMA:  I mean, the tradition in the MDL situation

10   like this would be to file the Motion to Transfer -- excuse

11   me -- to challenge the jurisdiction here in your court.

12         THE COURT:  And then what do I do, transfer it back?

13         MR. JANSMA:  You would rule on the jurisdictional

14   motion and if you determine that we did not have personal

15   jurisdiction from either the transferor court or from Your

16   Honor, then the case would be dismissed.

17         THE COURT:  Okay.  And the reason I don't have personal

18   jurisdiction is?

19         MR. JANSMA:  There are a number of reasons.  I can talk

20   about RICO and I can talk about the other underlying cases, but

21   primarily the RICO one was the one that was just addressed here

22   and there's several bases for --

23         THE COURT:  What's the most important basis?

24         MR. JANSMA:  The most important basis, Your Honor -- if

25   you'd give me just one second.  I promise I'll talk quickly.

09-50002-mg    Doc 8576-1    Filed 01/04/22    Entered 01/04/22 12:35:21    12-11-18
Transcript of MDL Hearing    Pg 123 of 259
Motions to Dismiss

123

 1          THE COURT:  Oh, I'll give you more than one second, but

 2    not much more.

 3          MR. JANSMA:  Your Honor, on the RICO claim they have to

 4    prove a Federal statute authorizing the jurisdiction.  They must

 5    perfect service under the statute, and that's point one.  They

 6    have not perfected service under the RICO claim and Your Honor

 7    had --

 8          THE COURT:  And the reason in your case is because you

 9    are representing BMW from where?

10          MR. JANSMA:  Germany, Your Honor.

11          THE COURT:  Okay.  What do you want to say about that?

12    That's kind of an issue, isn't it?

13          MR. PRIETO:  Well, we had this issue litigated

14    before --

15          THE COURT:  I know.

16          MR. PRIETO:  -- and we're a little confused because the

17    Special Master, Ryan Stumphauzer, ruled that --

18          THE COURT:  Recommended.

19          MR. PRIETO:  Recommended, I'm sorry.

20          THE COURT:  He doesn't have all the friends that I

21    have.

22          MR. PRIETO:  Recommended that BMW AG be acceptable to

23    service alternatively under 4(k)(2) of the rules.

24          THE COURT:  And what happened?

25          MR. PRIETO:  And I think either Your Honor approved

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 124 of 259
Motions to Dismiss

124

1    that or --

2            THE COURT:  And you weren't the lawyer for BMW then?

3            MR. JANSMA:  Yes, Your Honor, I was the lawyer for BMW

4    then, but still that was not service under the provisions of the

5    RICO Act.

6            As Your Honor said in this General Cigar case, service

7    has to come through that Act, not through the Hague.  And that's

8    what they tried to do here, is the Hague, and that's 205 F.Supp.

9    1335.  I can give you the quote from Your Honor if you'd like.

10           THE COURT:  Go ahead.  People use my words against me

11   all the time.

12           MR. JANSMA:  You were actually quoting from another

13   case, the Doe versus --

14           THE COURT:  That's even worse.

15           MR. JANSMA:  -- Unocal:

16           "It would be inappropriate for a Federal Court to

17       effectively extend the territorial reach of a Federal

18       statute by applying a national context test for personal

19       jurisdiction where service is not affected pursuant to the

20       Federal statute," meaning RICO.

21           In fact, that's exactly what happened in the Doe versus

22   Unocal case, is that they tried to serve under the Hague instead

23   of serving under RICO.  So that is point number one, Your Honor.

24           Point number two is as equally a big point, that in

25   order to establish the initial pleading jurisdiction to carry

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 125 of 259
Motions to Dismiss

125

1  the prima facie case, they have to plead nationwide

2  jurisdiction, which they did not do in this case, and I'm

3  talking about the recyclers here.  And since they didn't meet

4  their pleading burden, then it never shifted to BMW AG to

5  establish any kind of national jurisdiction.  However, Your

6  Honor, in this case we went -- we were the only defendant to do

7  this, but we went --

8        THE COURT:  You're the only one who filed an affidavit.

9        MR. JANSMA:  That's right.

10        THE COURT:  See, I know, that's why.

11        MR. JANSMA:  Right.  And then finally --

12        THE COURT:  What about that, Mr. Prieto, the only one

13  to file an affidavit?

14        MR. PRIETO:  They're the only ones who filed an

15  affidavit, Your Honor, but I am still at a loss because we did

16  serve BMW AG in the prior case, not the recycler case, but that

17  case.  They either agreed or this Court granted our motion and

18  we may have actually agreed or settled the case before the Court

19  ruled, but they had --

20        THE COURT:  You settled that case.

21        MR. PRIETO:  That case, the economic loss.

22        THE COURT:  Well, why don't you go out to lunch and

23  maybe you can settle this one?

24        MR. PRIETO:  We'd love to do that.

25        THE COURT:  Just with BMW AG.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 126 of 259
Motions to Dismiss

126

         1              MR. PRIETO:  But I think that doesn't -- I don't

         2    believe that that resolves the issue of personal jurisdiction.

         3              THE COURT:  It does.  If you settle it, it does.

         4              MR. PRIETO:  Well, of course, but I think we also have

         5    two other arguments on why we have personal jurisdiction as to

         6    BMW AG, the German company.

         7              THE COURT:  What is that, without service?

         8              MR. PRIETO:  Number one, that we have specific

         9    jurisdiction because we served -- I am at a loss as to --

        10              THE COURT:  You know why?  Because you haven't eaten

        11    lunch.  You know, I know you want to go to San Antonio, it's a

        12    great city, great district.  It's in the same district as

        13    Austin; is that right?

        14              MR. JANSMA:  No, Your Honor.

        15              THE COURT:  Oh, it's a different district.

        16              MR. JANSMA:  It's a different district.

        17              THE COURT:  I always get that confused.  Okay.

        18              MR. PRIETO:  Your Honor, I just remembered --

        19              THE COURT:  I'm not going to rule from the bench.

        20    You've done it in writing.

        21              MR. JANSMA:  We've done it in writing, yes, Your Honor.

        22    Thank you.

        23              THE COURT:  You wanted to make that point.

        24              MR. JANSMA:  That's it.

        25              THE COURT:  I had the point before, see, on the

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 127 of 259
Motions to Dismiss

127

1  affidavit, so I got it.  It is a unique circumstance.

2           MR. PRIETO:  No, it is, and they were the only -- BMW

3  AG, to their credit or discredit, depending on how you look at

4  it, were the only foreign defendant that did not waive service.

5  They only waived service after the Special Master recommended.

6  We tried the Hague and the German authority said, we don't do

7  service under the Hague for these kinds of claims.  So then we

8  tried alternative service.  The Special Master --

9           THE COURT:  So what are you going to do now?

10          MR. PRIETO:  If he's right -- you know, I think we have

11  jurisdiction or --

12          THE COURT:  Why don't you talk?  When is your flight?

13          MR. JANSMA:  Midafternoon, Judge.

14          THE COURT:  Okay.  Go and talk, and then file

15  something.

16          MR. PRIETO:  Right.  Well, I think --

17          THE COURT:  What do you want me to do?

18          MR. PRIETO:  No, no, I think the only point I want to

19  make is, we have alleged that we have personal jurisdiction over

20  all the defendants, including the foreign ones, under Florida's

21  Long Arm Statute.  We've made that argument in our pleadings.

22          To the extent that there's an issue that hasn't been

23  briefed, we would like the ability to brief that particular

24  issue.  To be frank, we were not focused on the recyclers at

25  this hearing.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 128 of 259
Motion to Stay

128

1   THE COURT:  Fair enough.

2   MR. PRIETO:  We were focused on the other issues.

3   THE COURT:  Fair enough.  I'll give you time.  I won't

4 rule until you've had a chance to file something else.

5   All of these people who signed up, do you want to come

6 back in the afternoon, or you don't, or you do?

7   MR. MALLOW:  Yes, Your Honor.

8   THE COURT:  You do?

9   MR. MALLOW:  I'm sorry.

10   THE COURT:  No, no.  That's all right.  The court

11 reporter is sorry more than I am.

12   Give me a little bit more time.  How about 2:45?  No.

13 It's 1:10.  Is that all right?  You've said your piece

14 already --

15   MR. BIANCHI:  I'm done.

16   THE COURT:  -- for Mr. Cantero, so you don't have to

17 come back.

18   I'm not going to rule from the bench.  I've got your

19 pleadings.  This is only if you want to add something in oral

20 argument, you're free to do so, and at 2:45 I'll let you.  Okay?

21 Thank you.  Have a good lunch.

22   MR. BIANCHI:  Thank you.

23   THE COURT SECURITY OFFICER:  All rise

24  (There was a luncheon recess taken at 1:10 p.m.)

25       *   *   *

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 129 of 259
Motion to Stay

129

1                       AFTERNOON SESSION

2        (The following proceedings were held at 3:08 p.m.)

3            THE COURT:  I'm sorry, folks, it took a little longer.

4   I had a visit from Judge Conrad from North Carolina who sits

5   with me on the Executive Committee and he wanted to see the

6   courthouse.  It's a nice courthouse, he said.

7            So let's see.  In order to accommodate some people, if

8   anybody is going to take a flight or needs to go, if there's

9   someone like that and you're not fighting among yourselves and

10  you need that and you want to go first, I have no problems with

11  that.

12           Okay.  That means whoever needed to go, left already.

13  So they took care of that which is fine with me.

14           Do we need to do anything else on the -- we have

15  exhausted, I think, the direct file issues, it seems to me,

16  orally, unless someone else wants to say something about the

17  personal jurisdiction arguments who hasn't been heard.  Okay.

18           Does anybody for General Motors want to say something

19  on the Motion to Stay, why I should change what I've done before

20  in order to let the National Highway Transportation Safety

21  Administration proceed at the rapid pace that all Federal

22  agencies proceed in protecting us?

23           MS. SMITH:  Good afternoon, Your Honor.

24           THE COURT:  I'm going to tell you where I'm coming

25  from.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 130 of 259
Motion to Stay

130

 1          Okay.  I'm sorry.  Go ahead.  Tell us who you are and

 2  who you represent.

 3          MS. SMITH:  I'm Renee Smith and I represent General

 4  Motors, and I would like to just briefly address the stay issues

 5  which I know have been thoroughly briefed before you.

 6          THE COURT:  You've waited long enough, you're entitled

 7  to say something.

 8          MS. SMITH:  Thank you.

 9          THE COURT:  What do you think I should do?  Do nothing

10  for how long?

11          MS. SMITH:  Well, we believe you should do nothing for

12  at least six months --

13          THE COURT:  Oh, my goodness gracious.

14          MS. SMITH:  -- which is absolutely consistent with what

15  other Courts have felt are appropriate stays.  In this case,

16  this is a case --

17          THE COURT:  In what type of cases?

18          MS. SMITH:  In other cases where Courts exercise

19  judicial discretion to have stays, Courts have -- I think

20  there's an Ortega case from the Eleventh Circuit -- and Courts

21  will revisit issues every six months.

22          In this case in particular --

23          THE COURT:  I may not be around every six months.

24          MS. SMITH:  I'm optimistic you will be.  I hope GM will

25  not be in this case in six months.  I think that is the issue --

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 131 of 259
Motion to Stay

131

1          THE COURT:  I hope GM is still around in six months,

2    too.

3          MS. SMITH:  We certainly hope GM is still around in six

4    months as well, but we don't think GM should be in this case,

5    and that is the precise issue that these petitions raise.

6          The question Your Honor raised is:  Why is this

7    different than the stay you already ruled on in September 2015,

8    three years ago?  And three years is a really important point.

9    I think when Mr. Prieto was discussing in a jurisdictional

10   context a hearing that happened long ago when he said, we are

11   going to bring in GM and Chrysler back into this case, we looked

12   to see when that hearing was.  That hearing was in November -- I

13   want to make sure I've got the right time here.

14         THE COURT:  You make me feel really bad.

15         MS. SMITH:  It was November 2016.  At that hearing

16   Mr. Prieto said:  I think we're going to make a decision on

17   whether to bring GM and Chrysler into that case in 30 days, and

18   this is Docket Number 1310, Page 20.  And the Court, going

19   through the issues of whether to be on the same Complaint or a

20   different Complaint said, why delay everybody?

21         You gave this very nice analogy and I know you don't

22   want your words brought back against you, but I actually thought

23   it was a very --

24         THE COURT:  That happens when you talk too much.

25         MS. SMITH:  I thought it was a very good point, which

09-50002-mg    Doc 8576-1    Filed 01/04/22    Entered 01/04/22 12:35:21    12-11-18
Transcript of MDL Hearing    Pg 132 of 259
Motion to Stay

132

1    is you said -- you gave the analogy where there's a wedding

2    bus, and you said, "You take a bus to a wedding, there's an

3    early bus that people take when they go home early and then

4    GM is on the second bus."  And you asked Mr. Prieto, "What's

5    wrong with that?"  And Mr. Prieto said, "Nothing is wrong

6    with that.  We agree."

7         That was November 2016.  They didn't get this next bus

8    even geared up until March 2018.

9         THE COURT:  It's a long wedding I guess.

10        MS. SMITH:  It was a really, really --

11        THE COURT:  One of those Indian weddings.

12        MS. SMITH:  Exactly.  So the question here is:  Why are

13   plaintiffs fighting this stay, it's a modest stay, to let NHTSA

14   do its job and exercise expertise?

15        THE COURT:  When did they start doing their job?

16        MS. SMITH:  So GM first --

17        THE COURT:  It seems like you got two years already.

18        MS. SMITH:  Exactly.  So GM first filed the Petition

19   for Inconsequentiality in November 2016.  So NHTSA had gotten on

20   the bus and has been working on this since --

21        THE COURT:  For two years.  So you got two years.

22        MS. SMITH:  For two years, exactly, for two years, and

23   they've done a lot in two years.

24        First of all, what they did that is unprecedented in

25   this litigation is they granted -- they took the extraordinary

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 133 of 259
Motion to Stay

133

1  step of considering GM's petitions for determination that any of

2  these airbags are inconsequential to motor vehicle safety, and

3  they exempted GM from recall repairs and remedy obligations.

4  Why did they do that?

5       They did that based on GM's scientific evidence that

6  they found could ultimately grow and develop to support GM's

7  position with respect to the long-term safety of the covered

8  inflators.

9       That issue NHTSA has been working on for two years,

10 but --

11      THE COURT:  So you're going to win this case.

12      MS. SMITH:  We are going to win this case.  We are

13 absolutely going to win this --

14      THE COURT:  Why do you want to postpone your victory?

15      MS. SMITH:  Because how NHTSA rules -- regardless of

16 how NHTSA rules will frame the issues in this case.  Neither GM

17 nor plaintiffs are going to be able to frame where they stand on

18 the merits of this case.

19      THE COURT:  Why not?  Why can't you do it independent

20 of what the Government does?

21      MR. SMITH:  Because while these petitions are pending,

22 however these petitions come out -- if the petitions come out in

23 new GM's favor, which we absolutely believe they will --

24      THE COURT:  All right.

25      MS. SMITH:  -- and they should, this case should be

09-50002-mg    Doc 8576-1    Filed 01/04/22    Entered 01/04/22 12:35:21    12-11-18
Transcript of MDL Hearing    Pg 134 of 259
Motion to Stay

134

1    over.  This is going to be directly contrary, at least as to

2    GM --

3          THE COURT:  You mean on a summary judgment.

4          MS. SMITH:  At a summary judgment, or we believe

5    plaintiffs won't pursue this case.

6          THE COURT:  Well, you never know that.  That's

7    persuasive, but the problem with staying it -- because it makes

8    sense, if the Government is already that far ahead, then we can

9    have discovery.

10         See, the problem with the six-month automatic stay,

11   which is really what you're asking for, is that, number one,

12   maybe the Government agency won't be done with whatever they're

13   doing, and it may be a reasonable thing for them not to be

14   finished with whatever they're doing.  But if they come out

15   against you, then you're six months behind in any event.

16         If they come out in favor of you, your opponents are

17   going to say, well, we need discovery because we can act

18   independent of what the Government bureaucracy said.  So I've

19   got to give you discovery and that means you've got to do things

20   six months from now.  How does that help your client?

21         MS. SMITH:  Well, it helps our client because -- first

22   of all, plaintiffs are not going to be six months behind.  Even

23   if they were going to be six months behind, where is the

24   prejudice when plaintiffs have just unilaterally decided after a

25   year and a half to bring the case?

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 135 of 259
Motion to Stay

135

1          THE COURT:  Okay.

2          MS. SMITH:  GM has already agreed to give plaintiffs

3    discovery on what plaintiffs have prioritized, which are

4    productions to NHTSA.

5          THE COURT:  So if I stay it, discovery proceeds.

6          MS. SMITH:  Absolutely not.  We have given --

7          THE COURT:  Okay.

8          MS. SMITH:  We have agreed --

9          THE COURT:  It's a weird stay, but I'm willing to do

10   that kind of a stay, a fakey stay.

11         MS. SMITH:  Right, exactly.  Plaintiffs already have

12   from GM -- we agreed, even though we have filed this Motion to

13   Stay, to give what plaintiffs prioritized, which were certain of

14   our productions to NHTSA.

15         THE COURT:  You have done that already.

16         MS. SMITH:  We have done that already.  It's still in

17   progress, but they've got at least 20,000 documents, 400,000

18   pages, and of course, plaintiffs have millions of pages of

19   documents from the prior productions in this case.  They have

20   plenty to do over six months.  To have GM incur the cost of

21   going through discovery to have yet another set of lawyers at

22   this table when we believe --

23         THE COURT:  I don't think you need another set, you're

24   fine.

25         MS. SMITH:  I'm not as exciting as some of these other

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 136 of 259
Motion to Stay

136

1   lawyers so --

2           THE COURT:  I think you're fine.

3           MS. SMITH:  There's not a prejudice to the plaintiffs,

4   but there is a great benefit to waiting here.  What NHTSA does,

5   regardless of however they rule, regardless of how they do it,

6   will help frame the issues; whether plaintiffs want to try this

7   case, whether they want to proceed with it.  The Court, the

8   parties, GM should not waste their resources on this when what

9   NHTSA does is drastically going to frame this case going forward

10  one way or another.

11          THE COURT:  What do I do with General Motors' other

12  arguments?

13          You don't have other arguments or motions?

14          MS. SMITH:  Of course, we have other arguments and --

15          THE COURT:  I should deny those and grant the stay.

16          MS. SMITH:  No.

17          THE COURT:  So that way we are kind of ahead.  We give

18  you the six months, you do other discovery, and we are ready to

19  go.

20          MS. SMITH:  I think this Court can use its inherent

21  authority to control its docket and in the interest of

22  justice --

23          THE COURT:  I'm not sure I can, but I'll try.

24          MS. SMITH:  -- if it has a basis to dismiss GM, which

25  we believe we have several meritorious bases to dismiss GM, the

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 137 of 259
Motion to Stay

137

1   Court should go ahead and rule on that because it is unclear

2   when there will be rulings.  In the meantime, we request this

3   Court grant a modest stay to let NHTSA finish doing its job.

4           Just one other point.  I know they have been doing it

5   for two years.  The fact is the process is nearing its end.

6   GM's submissions are substantially complete, the comment period

7   is over.

8           This is not in the same procedural posture with NHTSA

9   that it was two years ago.  This is not the time where we

10  shouldn't wait an additional six months when we're on the cusp

11  of getting something from NHTSA that will help frame the issues

12  in this case.

13          THE COURT:  You have to help me out.  Okay?  I love

14  these words though, but you're going to help me, Petitions for

15  Inconsequentiality.  I mean, it seems like we do a lot of that

16  in court --

17          MS. SMITH:  Or a lot of inconsequential petitions.

18          THE COURT:  -- but I'm not sure we're talking about the

19  same thing.  All right?

20          MS. SMITH:  Yes.

21          THE COURT:  Your opponents say, listen, that's not

22  really helpful, it's not relevant, it doesn't have anything to

23  do -- it's not going to help you decide whether these vehicles

24  have defective airbags.  What do you say to that?

25          MS. SMITH:  I say that is absolutely wrong.  To say

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 138 of 259
Motion to Stay

138

1  that it is irrelevant whether NHTSA determines -- it's not just

2  whether there's a defect --

3          THE COURT:  Well, I said, not helpful first, but the

4  words were relevant.

5          MS. SMITH:  Yes, exactly.  I think plaintiffs do use in

6  one of their headings -- they say it's irrelevant, which, to me,

7  was particularly striking when one of plaintiffs' main theories

8  is that ammonium nitrate inflators have a uniform defect.  They

9  argued, in response to our motion -- it's Docket 3032 at 4 --

10 that NHTSA determined that the airbags are defective and

11 dangerous regardless of architecture, humidity, exposure, or

12 other factors.  If the NHTSA rules in GM's favor on these

13 petitions --

14         THE COURT:  Now, we are talking about eight vehicles,

15 right?

16         MS. SMITH:  I'm sorry?

17         THE COURT:  How many vehicles on the petition?

18         MS. SMITH:  The petitions are specific, address a

19 specific platform of vehicles called GMT900 --

20         THE COURT:  And how many?

21         MS. SMITH:  Potentially millions.

22         THE COURT:  No, no, but the petitions don't have --

23 there are eight recall numbers, right?

24         MS. SMITH:  Yes.  They're staggered, like they are for

25 the coordinated remedy, so as NHTSA will do the defect

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 139 of 259
Motion to Stay

139

1   information report, then GM would do a Petition for

2   Inconsequentiality on those recalls.  That's why we have three

3   petitions.

4          THE COURT:  So a recall number has thousands of

5   vehicles.

6          MS. SMITH:  Depending, exactly.

7          THE COURT:  The plaintiffs say we're talking about

8   700,000 cars, right?  So the recall with the seven or eight --

9   eight numbers, I'm sorry, cover hundreds of thousands of cars?

10          MS. SMITH:  Right.  The recalls at issue that are

11  subject to these petitions are and will be in the millions as

12  the stagger goes.  The 700,000 number is, there were a few

13  hundred thousand that --

14          THE COURT:  That may even be worse for you if we wait,

15  it could get expanded.

16          MS. SMITH:  How both sides perceive a case that either

17  involves a few hundred thousand versus several million vehicles,

18  after everything we heard this morning, is going to be another

19  significant issue that will help be framed by these petitions.

20          THE COURT:  Tell me -- you know, they waited a long

21  time to file these Complaints, but the petitions have been

22  pending for kind of the same amount of time, two years, right?

23          MS. SMITH:  Yes, but they've actually been progressing.

24          THE COURT:  How do they progress?  Tell me how that

25  works.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 140 of 259
Motion to Stay

140

1          MS. SMITH:  So GM had monthly meetings, monthly updates

2     with NHTSA, has done extensive submissions to NHTSA.  That

3     process is now essentially complete.

4          THE COURT:  How long does it take normally?

5          MS. SMITH:  I actually don't know if there has ever

6     been a process similar to this, but what I will tell you is the

7     comment period has closed on the most recent petition and that,

8     as plaintiffs state in their brief, new GM submissions on the

9     petition are complete.  This happened in July 2018.  We are not

10    where we were two years ago, unlike plaintiffs who chose -- and

11    I understand that there are a lot of competing issues going on

12    in this case.  This is not to be critical of plaintiffs for not

13    bringing in GM sooner.

14         THE COURT:  Well, no.  Your client may say, hey, you

15    complained that they didn't sue us sooner.

16         MS. SMITH:  Exactly, and then I would be in big

17    trouble.  So what we're saying is:  What is the rush?  NHTSA is

18    on the cusp and has everything before it --

19         THE COURT:  If I do it with you -- you're the only one

20    who has petitions.

21         MS. SMITH:  Correct.

22         THE COURT:  What does that do to the other automakers?

23         MS. SMITH:  The other automakers will either proceed or

24    not proceed, depending on how the Court rules on the Motions to

25    Dismiss.

1        THE COURT:  Obviously, but they don't want a stay.

2   You're the only one who wants a stay.

3        MS. SMITH:  We are the only ones in this unique

4   situation.  This is unprecedented that NHTSA has done this.

5   This is unprecedented.  It's directly contrary to --

6        THE COURT:  And the reason they've done it with you is

7   because you've asked them to.

8        MS. SMITH:  No.  Other plaintiffs -- excuse me, other

9   OEMs have also requested NHTSA to do it.  Plaintiffs refer to

10  this in their response.  They refer to requests by Mazda and

11  Ford, both of which were roundly rejected by NHTSA.  This is an

12  extraordinary situation where NHTSA has found, based on robust

13  evidence, there's a real issue here and this real issue would

14  impact every facet of this litigation.

15       THE COURT:  All right.  "All right" means I hear you.

16       Who wants to say something against a six-month stay?

17  The way we're proceeding, we kind of do that anyway without

18  granting it, and it's my fault.  Who do we have?

19       MR. MINER:  Curtis Miner for the plaintiffs, Your

20  Honor, and I'll respond to GM's argument for a stay.

21       Just picking up on your last point, actually, in

22  effect, their motion, this Motion to Stay was filed on August

23  20th.  In a way they have had a quasi stay for three and a half

24  months now.

25       THE COURT:  That's my fault.  So I should give them

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 142 of 259
Motion to Stay

142

1    credit time served?  No?

2         MR. MINER:  In that three and half months NHTSA has not

3    ruled on the petitions.

4         THE COURT:  What are you going to do?  Are you going to

5    be deposing?  What are you actually going to do?  They say it

6    costs money and time, lay off for six months, you've got enough

7    work to do with the other automakers.  The judge isn't going to

8    rule on these Motions to Dismiss for a little bit anyway because

9    he is trying all these cases, some big, some little.  What's the

10   big deal?

11        MR. MINER:  We're going to pursue discovery.  We are

12   going to start taking depositions.  And also, if the other --

13        THE COURT:  Of whom, General Motors people?

14        MR. MINER:  We'll start on all of this round of

15   automaker defendants.

16        THE COURT:  Why don't you do all the others and put

17   General Motors at the end?

18        MR. MINER:  Then you are going to have a two-track

19   system.

20        THE COURT:  It's not two tracks.

21        MR. MINER:  If this is the last bus leaving the

22   wedding --

23        THE COURT:  Someone is in the caboose, you know, of the

24   train.

25        MR. MINER:  What GM really is asking for is not to be

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 143 of 259
Motion to Stay

143

1  on the last bus leaving the wedding, but for someone to call

2  them a custom ride the next morning on a different time table.

3          THE COURT:  Some people sometimes have two wedding

4  lists, right, the first one, and then, depending on how many

5  people RSVP, the second one.

6          MR. MINER:  Here are two reasons it just doesn't make

7  sense to put it off even for a short amount of time.  I think

8  you were citing the 700,000 car figure.  What that is is the

9  number of GM cars that aren't even affected by these Petitions

10  for Inconsequentiality.  These are GM cars --

11          THE COURT:  Well, how do I know that?  The eight recall

12  numbers are totally different from the 700,000 cars?

13          MR. MINER:  The cars that are subject to the Petitions

14  for Inconsequentiality is a much larger number, but there is a

15  significant number of cars that aren't even subject to it, that

16  are under recall regardless.

17          THE COURT:  Who are part of this case.

18          MR. MINER:  Pardon?

19          THE COURT:  Who are part of this case.

20          MR. MINER:  That are part of this case.

21          Now, GM quibbles with our number.  They say it's more

22  like half a million.  We have a figure more like three-quarters

23  of a million.  Either way you cut it, it's a lot of cars.

24          THE COURT:  Should I separate the recall number cars?

25  Does that make sense?

09-50002-mg    Doc 8576-1    Filed 01/04/22    Entered 01/04/22 12:35:21    12-11-18
Transcript of MDL Hearing    Pg 144 of 259
Motion to Stay

144

1          MR. MINER:  That would make no sense at all.  Then

2    you're getting into multiple tracks and multiple inefficiencies.

3    Imagine if discovery proceeded against the cars that are --

4          THE COURT:  It would actually be shorter and less

5    expensive.  Heaven forbid that discovery be that way.

6          MR. MINER:  But then, when you get to the discovery

7    against the GMT900 platform vehicles, you could end up deposing

8    engineers twice, you could depose an engineer once, and that's

9    not efficient.

10         THE COURT:  But that would inure to the detriment of

11   General Motors.

12         MR. MINER:  I think it inures to everyone's detriment.

13   We want to do the case efficiently, too.  We don't want to

14   depose people twice.

15         There's another reason.  I think you were also starting

16   to hit on this.  NHTSA is going to do something.  Who knows when

17   they're going to do it.  The petitions have been pending --

18         THE COURT:  Do you?  Do you know how that works?

19         MR. MINER:  We know what the process is.  We have no

20   idea when they'll rule.  The petitions were filed in November of

21   2016, November 15th of 2016, so we're at two years and a month

22   now.  We don't know when they will rule, we don't know how they

23   will rule, and they could find in a whole number of different

24   ways.  We think the petitions should be rejected and, in fact,

25   these petitions have been hotly contested.  You know, the Center

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 145 of 259
Motion to Stay

145

 1   for Automotive Research has put a filing into the NHTSA docket

 2   saying that this is just an effort at delay.

 3            THE COURT:  What's the impact if they rule in favor of

 4   General Motors?  What does that mean?

 5            MR. MINER:  And they could rule in a whole number of

 6   different ways.

 7            THE COURT:  Okay.

 8            MR. MINER:  They could grant them partly.  Who knows?

 9   It's very difficult to predict, but it doesn't put an end to

10   plaintiffs' claims.  It's not collateral estoppel or res

11   judicata here.

12            The plaintiffs have claims ranging from state consumer

13   deception and trade practices act statutes, state common law

14   claims, RICO claims.  An administrative ruling by NHTSA and

15   whether it's going to impose the recall or modify the recall for

16   these GM vehicles isn't going to affect those claims.

17            GM, at some point, may want to give the information

18   that NHTSA decides in ruling on the petitions to its expert.  I

19   could see it coming into expert discovery, but whatever they

20   rule at some point, they're going to be able to use it in the

21   case, in this case, but whatever NHTSA rules is not going to put

22   a hard stop on plaintiffs' case.  Plaintiffs' case is still

23   going to proceed, not just involving these half a million or

24   700,000 unaffected vehicles, vehicles that aren't part of the

25   petition, but our case will proceed even against the vehicles

09-50002-mg    Doc 8576-1    Filed 01/04/22    Entered 01/04/22 12:35:21    12-11-18
Transcript of MDL Hearing    Pg 146 of 259
Motion to Stay

146

1    that are built on the GMT900 platform.  So there really just is

2    no efficiency in putting it off in any way.

3            THE COURT:  All right.

4            MR. MINER:  It really sort of frames the debate and,

5    you know, GM's arguments all go to why it would be nice for GM

6    if there was a stay and why it might be more efficient, but

7    under the primary jurisdiction doctrine, that's really not what

8    we look at.  The primary jurisdiction doctrine -- and you know

9    it well, Your Honor, from the first opinion that you wrote -- it

10   looks at whether the claims are outside the conventional

11   competence of the Courts.  GM doesn't even touch that argument

12   because obviously these are claims that are well within the

13   competence of the Courts.  You've been hearing them all morning

14   and afternoon, you've been hearing them for three years.

15           The second thing the Court is supposed to look at under

16   primary jurisdiction is whether proceeding in this case will

17   unduly interfere with NHTSA's administrative process.  Well, we

18   have been proceeding in this case --

19           THE COURT:  We're not interfering.

20           MR. MINER:  We're not interfering.  NHTSA has never

21   said a word.  In fact, what we're doing is buttressing the NHTSA

22   process, as you heard from Mr. Juneau.

23           THE COURT:  What is the process?  Is it a body of

24   individuals, or how does that work?

25           MR. MINER:  The internal workings of NHTSA, how they

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 147 of 259
Motion to Stay

147

 1  will actually or how they rule on the petitions, I don't know

 2  the answer to that.

 3          THE COURT:  Okay.  All right.

 4          MR. MINER:  And however they do, it's not collateral

 5  estoppel, it's not res judicata in this case.  They don't have

 6  the benefit of a lot of things that we have.

 7          THE COURT:  They won't convince you to drop this case.

 8          MR. MINER:  Not today.

 9          THE COURT:  That one I figured.

10          You're going to tell me who does the rulings?

11          MS. SMITH:  For NHTSA?

12          THE COURT:  Yeah.  How does that work?  A jury of

13  experts, right?

14          MS. SMITH:  That is exactly the point.  I'm not exactly

15  sure the precise person, but what it is, it's people with a

16  specialized expertise in this area which have been looking at

17  this for two years.

18          THE COURT:  Can I give them an Allen Charge or not?

19          MS. SMITH:  I cannot comment on that.  But just one

20  quick point, which is, there is not a requirement either under

21  primary jurisdiction or the Court's inherent discretion to stay

22  a case, that it be dispositive of an issue.  Setting aside

23  primary jurisdiction, the factors are prejudice to the nonmoving

24  party, there is none; whether the stay would simplify and

25  clarify the issues, clearly it would do so in this case.  It

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 148 of 259
Motion to Stay

148

1    doesn't have to dispose of the issues.

2              THE COURT:  All right.  I'll give you that.

3              MS. SMITH:  And it will reduce the burdens on the

4    Court.  There is no reason to rush to proceeding.

5              THE COURT:  Don't worry about the Court.  We are going

6    to get five judges before two years, so we'll be okay.

7              But how does it hurt you?  That means you're going to

8    have depositions if you lose, or even if you win, before the

9    administrative agency.  That means some people may get deposed

10   twice.

11             MS. SMITH:  We have requested a stay of the case

12   against GM, period.

13             THE COURT:  Totally.

14             MS. SMITH:  Totally, because even though there may be

15   some, some claims, there's only, I think, one out of 32 named

16   plaintiffs for GM that does not have one of the GMT900 vehicles

17   subject to the petitions, or that will be subject to the

18   petitions.  So here, even if there may incidentally be some

19   issues that aren't quite covered by the petitions, for judicial

20   economy, for managing the docket, the whole case should be

21   stayed.  There should not be two depositions of deponents.

22             THE COURT:  So if I stay it for six months from today,

23   at the end of June you'll say, we're ready to go.

24             MS. SMITH:  I think we will see as the way --

25             THE COURT:  No matter what happens.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 149 of 259
Motion to Stay

149

1          MS. SMITH:  What I will say is --

2          THE COURT:  You'll be ready to go, they can set up

3   depositions and put you on the fast train, right?

4          MS. SMITH:  No.  Let me just say, first of all, I don't

5   want to give short shrift to our dismissal arguments --

6          THE COURT:  I understand.

7          MS. SMITH:  -- which I think the Court should do, but

8   second of all, the way we have requested is that the Court make

9   a stay for six months.  That stay will expire in six months.

10         THE COURT:  Oh, then you come back and get an

11   extension.

12         MS. SMITH:  We can see where we are.  Depending on what

13   has happened, we may ask you to extend it.  You may deny it.

14   But I can't say where we're going to be six months from now, but

15   I do know there's no reason that we cannot wait for those six

16   months to see how this critical issue turns out.

17         THE COURT:  All right.  I understand.

18         MS. SMITH:  Thank you very much, Your Honor.

19         THE COURT:  No problem.  Thank you.

20         All right.  Anybody else for General Motors who wants

21   to talk about RICO and the Takata guilty plea?

22         MR. FELLER:  Good afternoon, Your Honor.  I am Lenny

23   Feller, I am the second set of GM lawyers after Ms. Smith.

24         Your Honor, so the basic question is -- and I think

25   you've asked it in a couple of different contexts today -- which

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 150 of 259
Motions to Dismiss

150

1   is, three years ago you denied a Motion to Dismiss by Takata and

2   by Honda of plaintiffs' RICO claim.  And plaintiffs come to you

3   and say, Your Honor, this is done, this is decided, this is

4   over.  You already dealt with this.  And I think there are two

5   very simple and very straightforward reasons why that's not true

6   and why this RICO claim against these four defendants has to be

7   dismissed.

8           THE COURT:  Against which defendants?

9           MR. FELLER:  Against the four consumers --

10          THE COURT:  All of them.

11          MR. FELLER:  The four consumer defendants; General

12  Motors, Volkswagen, FCA, and Mercedes.

13          THE COURT:  Okay.

14          MR. FELLER:  Your Honor, number one, really important,

15  the prior RICO counts were only against Takata, which we'll get

16  to the guilty plea in a second, but we agree, pled guilty, is

17  the bad guy; and Honda and that's it.  Against the other six,

18  what we call legacy OEMs, the original OEM defendants, Toyota,

19  Nissan, Mazda, BMW, Subaru, there was no RICO count in those

20  Complaints, or Ford.  Ford, right before they pled guilty in

21  April of 2018, was amended to add RICO, but at the time of your

22  Motion to Dismiss it was only --

23          THE COURT:  My order.  I haven't done motions in a long

24  time.

25          MR. FELLER:  I'm sorry, your Motion to Dismiss Order.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 151 of 259
Motions to Dismiss

151

1   I apologize, Your Honor.

2          THE COURT:  No problem.

3          MR. FELLER:  It was only Takata and it was only Honda,

4   Your Honor, and those allegations against -- again, allegations

5   against those two defendants about evidence being destroyed,

6   about secret joint testing between those two defendants, about

7   those two defendants -- Honda is the OEM, misleading regulators.

8   There is nothing remotely like that in these Complaints against

9   these four defendants.  And so RICO -- and Ms. Han is going to

10  come up after me for Volkswagen and talk about some of the

11  specific elements or at some point on your piece of paper --

12         THE COURT:  It doesn't have to be in order.

13         MR. FELLER:  -- about the specific elements, Your

14  Honor, but the point is that the allegations in these Complaints

15  against these four new defendants three years later --

16         THE COURT:  I agree with you that there's a difference

17  obviously.

18         MR. FELLER:  Okay.

19         THE COURT:  But the issue still remains that it's --

20  why is it so difficult for judges to grant Motions to Dismiss?

21  We're always reluctant to do that, less so probably in Federal

22  Court, but we're always reluctant because we want to know more

23  about the case, and a Motion for Summary Judgment, if it's

24  granted, is a stronger order.  And when you go up on appeal as a

25  defendant, you're better off, are you not, with a summary

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 152 of 259
Motions to Dismiss

152

 1  judgment in your favor than with an order of dismissal that

 2  someone may say is premature?

 3          MR. FELLER:  And, Your Honor, I think my second point

 4  is the reason why it should be, I think, pretty easy to grant a

 5  Motion to Dismiss -- and, again, I'm here to talk about RICO,

 6  all right, not some other count.  RICO, the racketeering --

 7          THE COURT:  So grant it on RICO and leave the others.

 8          MR. FELLER:  Well, I don't know that we're here today

 9  to argue about everything.  Right?  We have an agenda, you know,

10  some of it --

11          THE COURT:  Okay.  Fair enough.

12          MR. FELLER:  You know, jurisdiction covers everything,

13  but RICO was one of the topics we got to talk about and I think

14  we can deal with the other stuff.

15          THE COURT:  All right.

16          MR. FELLER:  Your Honor, the reason this should be an

17  easy grant of the Motion to Dismiss is the Plea Agreement; and I

18  am hoping, after Mr. Prieto's comments this morning quoting from

19  different documents in the Takata case, we're past whether or

20  not this Court can consider the Plea Agreement or consider the

21  substance.

22          THE COURT:  Well, I think I can consider the Plea

23  Agreement.  The issue is:  Is it sufficiently detailed?  I mean,

24  it's sufficiently detailed -- I don't mean to say the judge

25  didn't have enough to accept a guilty plea.  Is it sufficiently

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 153 of 259
Motions to Dismiss

153

1  detailed to decide that General Motors is an absolute total

2  innocent victim, so much that the case should be dismissed

3  without an opportunity for discovery?  That's really the issue.

4         MR. FELLER:  And so I think the -- I think that's right

5  and so I want to take the Court in my five minutes through --

6         THE COURT:  You can have more if you want.

7         MR. FELLER:  -- through the Plea Agreement and

8  establish that.

9         THE COURT:  Okay.

10        MR. FELLER:  But also, I think, the question is, as

11 framed under Iqbal and Twombly and really under 9(b), are

12 plaintiffs' allegations plausible as pled in light of the Plea

13 Agreement?

14        THE COURT:  Do you think it has changed that much after

15 Twombly?  I wonder what the statistics are.  You probably don't

16 know.

17        MR. FELLER:  Your Honor, I don't know the statistics.

18 I do think it clarified the standard, and I think, again, in

19 this case on this Plea Agreement, it makes it simple.  So I did

20 hand up some documents to your clerk.  I don't know if that's --

21        THE COURT:  Yeah, I've got them.

22        MR. FELLER:  So very quickly --

23        THE COURT:  Your opponent has them as well, right?

24        MR. FELLER:  Of course, of course.

25        And, Your Honor, again, in the briefing there's some

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 154 of 259
Motions to Dismiss

154

1   back and forth about the Plea Agreement and it being considered.

2   It's not just the Plea Agreement.  So the first document is the

3   Restitution Order, and if you go to Page 2, paragraph 1, about

4   seven or eight lines down, it references and incorporates the

5   Plea Agreement, and I want to address what Mr. Prieto said this

6   morning about the restitution and --

7        THE COURT:  Where does it talk about General Motors?

8        MR. FELLER:  Your Honor, General Motors --

9        THE COURT:  I kept on looking.  I looked through it.

10       MR. FELLER:  So that's going to be the third document

11  and you'll see General Motors as well as the four --

12       THE COURT:  C?

13       MR. FELLER:  No.  So that's the Plea Agreement.  It's

14  this one, it's Exhibit 2, it's only a couple of pages.

15       THE COURT:  Okay.

16       MR. FELLER:  It's Docket Number 30982 [sic] in this

17  case.

18       THE COURT:  Well, I'm looking at your package.  Three

19  what?

20       MR. FELLER:  30982 is the docket number.  It's the

21  third document, I think, in your packet.  It's the first page,

22  says Exhibit 2.

23       THE COURT:  You've got them in different order here

24  so -- Exhibit 2, that's what you want me to look at?

25       MR. FELLER:  I want you to look at Exhibit 2, and I

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 155 of 259
Motions to Dismiss

155

1    want you to look at the third page of it.

2             THE COURT:  The Allocation Schedule.

3             MR. FELLER:  Correct.

4             THE COURT:  Okay.

5             MR. FELLER:  And the Restitution Fund Distribution

6    Amounts and it's conveniently in alphabetical order and so you

7    will see all four of the new consumer defendants on there; FCA,

8    General Motors, Mercedes-Benz, and at the bottom Volkswagen.

9             THE COURT:  Okay.

10            MR. FELLER:  And so, Your Honor, Mr. Prieto --

11            THE COURT:  I don't think there's any dispute they got

12   a lot of money.

13            MR. FELLER:  Well, they didn't just get a lot of money,

14   Your Honor, they got a lot of money as restitution pursuant to a

15   Plea Agreement.  Okay?  So you asked:  Where do we have General

16   Motors?  That's where we have General Motors.

17            THE COURT:  All right.

18            MR. FELLER:  And then again, Your Honor, if you can go

19   to the big one marked Exhibit C.

20            THE COURT:  All right.

21            MR. FELLER:  You know, we spent a lot of time talking

22   about, oh, the Plea Agreement, and I think how plaintiffs tried

23   to make the case, and you may have mentioned it this morning,

24   was, well, this is some sort of unilateral statement by Takata.

25   Your Honor, that's not what this is, and you know because we

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 156 of 259
Motions to Dismiss

156

1   were here before the Ford Fairness Hearing for a sentencing.  A

2   Plea Agreement isn't a unilateral statement by a defendant.  It

3   is an agreement with the United States Government, ultimately a

4   finding accepted by a Court, in this case Judge Steeh in the

5   Eastern District of Michigan.

6          So, Your Honor, very quickly just to go through this,

7   on Page 2, count of conviction, what is Takata convicted of?

8   Wire fraud.  Okay.  Why is that important?  Because it's the

9   same predicate act that plaintiffs allege these OEMs are liable

10  for under RICO.

11         Your Honor, if you could go to Page 7.

12         THE COURT:  So the bottom line is:  You say you can't

13  be a victim and a co-conspirator at the same time.

14         MR. FELLER:  I think --

15         THE COURT:  Right?

16         MR. FELLER:  Your Honor, I think to get to that

17  conclusion, to get to that conclusion --

18         THE COURT:  Because if there's a case that says you

19  can, then I should deny the Motion to Dismiss.

20         MR. FELLER:  Your Honor, this is --

21         THE COURT:  I don't have a case right here.

22         MR. FELLER:  There is no --

23         THE COURT:  I usually do have a case when I ask

24  questions like that.

25         MR. FELLER:  Your Honor, what I can promise you is

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 157 of 259
Motions to Dismiss

157

1  there is no RICO case and no count, at least plaintiffs haven't

2  cited one and we haven't been able to find one, never.  In the

3  jurisdiction argument, you were talking about doing something

4  for the first time.  This would be the first case ever where a

5  RICO charge is upheld as pled against Takata, who has pled

6  guilty and admitted responsibility, admitted committing a fraud,

7  and that RICO charge is then upheld against the victims of that

8  fraud who were paid $850 million in restitution, in restitution.

9  That has never happened.

10       Again, we're talking about RICO, right?  We're not

11  saying some consumer protection statute, we're not talking about

12  unjust enrichment.

13       THE COURT:  I got it.  I got it.

14       MR. FELLER:  We're talking about RICO.

15       THE COURT:  I got it.  It's a good argument.

16       MR. FELLER:  And, Your Honor, again, I want to go

17  through a couple of these provisions in detail to understand

18  what this is because we're going to end with the factual basis,

19  which is the important thing.  Right?

20       So relevant considerations, Page 7, A1:  "Beginning on

21     or about January 28, 2016, the defendant, Takata, began

22     fully cooperating with the office's" -- the U.S. Attorney's

23     Office for the Eastern District of Michigan --

24     "investigation, including reporting the conduct to the

25     offices, assisting and facilitating timely interviews of

09-50002-mg    Doc 8576-1    Filed 01/04/22    Entered 01/04/22 12:35:21    12-11-18
Transcript of MDL Hearing    Pg 158 of 259
Motions to Dismiss

158

1      current and former employees of the defendant, promptly

2      collecting and producing evidence located in a foreign

3      country, along with translations, engaging in frequent

4      communication with the offices about relevant facts and

5      providing all nonprivileged facts relating to individual

6      involvement in the conduct described in the Information and

7      the Statement of Fact attached hereto as Exhibit B."

8          Your Honor, if we could, Page 18, which follows along

9  on a similar line, this is the defendant's cooperation and

10  reporting obligations, again Takata.

11         Quote:  "The defendant agrees that its cooperation

12      pursuant to this paragraph shall include, but not be limited

13      to the following:  The defendant shall truthfully disclose

14      all factual information, not covered by privilege, with

15      respect to its activities, those of its parent company and

16      affiliates, and those of its present and former directors,

17      officers, employees, agents, and consultants, including any

18      evidence or allegations and internal or external

19      investigations about which the defendant has any knowledge

20      or about which the office may inquire.

21          "This obligation of truthful disclosure includes, but

22      is not limited to the obligation of the defendant to provide

23      to the offices upon request any document, record, or other

24      tangible evidence about which the offices may inquire of the

25      defendant."

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 159 of 259
Motions to Dismiss

159

1          Your Honor, last one I think in this series, and it's

2     going to be Page 23, and it talks about breach of the agreement.

3     And I'll skip over some of it just for time, but it says:

4          "If the defendant commits any felony," is A; B,

5          "provides in connection with this agreement deliberately

6          false, incomplete, or misleading information" -- and you go

7          down to the third line from the bottom -- "the defendant

8          shall thereafter be subject to prosecution for any Federal

9          criminal violation of which the offices have knowledge,

10          including but not limited to, Federal criminal violations

11          relating to the conduct set forth in the Information."

12          So, Your Honor, pursuant to this agreement, Takata is

13     required to be truthful.  It is required to cooperate.  It is

14     required to provide documents and interviews.  It is required to

15     assist in the prosecution of individuals who were in fact

16     prosecuted.  Right?  Actually one of the few large sort of

17     corporate frauds where individuals ended up -- Takata employees

18     ended up being prosecuted.  If they don't do that, if they don't

19     do all that truthfully and substantially and completely, the

20     Plea Agreement goes out the window and they, themselves, can be

21     prosecuted again.

22          And so what is it -- and again, there is a very lengthy

23     factual basis, but just for time, if you can go to page B --

24     I'll start quickly at B1, Statement of Facts:

25          "The following statement of facts is incorporated by

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 160 of 259
Motions to Dismiss

160

1    reference as part of the Plea Agreement dated January 13,

2    2017, between the United States Department of Justice and

3    Takata Corporation, and the parties" -- the United States

4    and Takata -- "hereby agree and stipulate that the following

5    information is true and accurate."

6         Skip one line down.  "Had this matter proceeded to

7    trial, Takata acknowledges that the fraud section and the

8    office would have proven beyond a reasonable doubt by

9    admissible evidence the facts alleged below and set forth in

10   the criminal first Superseding Information."

11        And, Your Honor, last thing I promise, B6, this is the

12   heart of the factual recitation in the agreement incorporated

13   into the judgment, incorporated into the Restitution Order.  B6,

14   paragraph 19:  "From in or around 2000 until in or around

15   2015" -- why is that important?  Because it captures the entire

16   time period of the conduct alleged in the Complaints and

17   stretches into when the original Complaints in this case were

18   filed.

19        "From in or around 2000 until in or around 2015,

20   Takata, through its executives, employees, and agents,

21   knowingly devised and participated in a scheme to obtain

22   money and enrich Takata by, among other things, inducing the

23   victim OEMs to purchase airbag systems from Takata that

24   contained faulty, inferior, nonperforming, nonconforming, or

25   dangerous PSAN inflators by deceiving the OEMs through the

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 161 of 259
Motions to Dismiss

161

1      submission of false and fraudulent reports and other

2      information that concealed the true and accurate test

3      results for the inflators for which the OEMs would not have

4      otherwise purchased as they were."

5          Your Honor, the reason I think this is a fairly

6   straightforward Motion to Dismiss on RICO is that you have to

7   balance two things, and you have to determine which of those two

8   things is plausible.

9          Either you accept the Plea Agreement and its

10   recitation, in which case the OEMs cannot be co-conspirators,

11   they cannot have participated in an enterprise, there cannot be

12   an agreement; or you accept that the Federal Government, after a

13   multi-year investigation, after access to millions of pages of

14   documents and interview, being able to interview anyone they

15   wanted after charging Takata and its employees, not only gave

16   the car companies a pass, not only gave them a pass, didn't

17   charge the car companies, but required Takata to pay $850

18   million to parties that plaintiffs here say are co-conspirators.

19          Your Honor, at the first -- plaintiffs want to keep

20   referring to the first Motion to Dismiss.  I'm going to quote

21   Mr. Prieto, and this is what he said to you.  This is the

22   transcript of the October 2015 argument.  It's Docket 826, Page

23   50.

24          And he says:  "Let me just, Your Honor, tell you a

25      little bit about some of the interesting things that -- I

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 162 of 259
Motions to Dismiss

162

1           just want to make one point concerning plausibility.  You

2           know, Iqbal says that when Your Honor is looking at

3           determining whether to move to dismiss and whether something

4           is plausible or not plausible, you are to use your judicial

5           experience and common sense."

6                That's Mr. Prieto, he is a very smart lawyer.

7                Your Honor, it is completely outside of the realm -- I

8    don't want to speak for you -- outside of my experience, whether

9    as a prosecutor or in private practice, for a plea like that to

10   take place and for co-conspirators to be rewarded with nearly a

11   billion dollars.

12               THE COURT:  It's a good point.  I got it.

13               MR. FELLER:  And again, we talked about some of the --

14   I don't want to spend time going through all of the GM

15   allegations.

16               THE COURT:  So I wouldn't.

17               MR. FELLER:  Yeah.  So I'm not going to.

18               THE COURT:  Then don't.

19               MR. FELLER:  Just one last point, Your Honor, which is

20   all that plaintiffs really allege in this Complaint as it exists

21   is that these OEMs should have known that something happened

22   during testing, that something happened out there.  There is

23   no --

24               THE COURT:  Is there such a thing as deliberate

25   ignorance, closing your eyes, that kind of thing?

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 163 of 259
Motions to Dismiss

163

1          MR. FELLER:  Not for RICO, absolutely not, and there is

2     not a single allegation anywhere in any of these four Complaints

3     of any agreement, of any meeting between anyone at Takata and GM

4     saying, hey, let's agree, we think it's a great idea to put

5     defective airbags in our cars that are going to blowup.  It's

6     just not there.

7          Thank you, Your Honor.

8          THE COURT:  Thank you.

9          Anybody else for any defendant who wishes to add to

10    this issue?

11         MS. HAN:  Good afternoon, Your Honor.  Suhana Han from

12    Sullivan & Cromwell on behalf of the Volkswagen Audi defendants.

13         I think Mr. Feller made some very compelling points

14    with respect to the plausibility in light of the Plea Agreement,

15    but I think we can go even beyond that by actually looking at

16    what's alleged in the Complaint.  And Your Honor asked --

17         THE COURT:  This is only related to RICO, right?

18         MS. HAN:  Yes, exactly, RICO.

19         We touched upon this a little bit earlier, but I think

20    you look at the big picture and how this RICO claim came up in

21    the first instance.  We talked a little bit about personal

22    jurisdiction.  We talked about the way in which plaintiffs

23    brought the lawsuit, and I know that Mr. Glueckstein raised

24    those, but I think it's worth mentioning again, that the

25    original Complaints --

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 164 of 259
Motions to Dismiss

164

1          THE COURT:  You didn't think I heard it or I'm getting

2     too old?

3          MS. HAN:  No, no, no, I think it helps set the stage.

4     So we talked earlier about how the Complaints were, certain of

5     the Complaints were filed in other jurisdictions and then there

6     was the direct filed Complaint.

7          THE COURT:  Oh, we're not going to go through that for

8     an hour.

9          MS. HAN:  No, no, no.  My only point, Your Honor, is

10    that in the direct filed Complaint --

11         THE COURT:  That's the Sullivan & Cromwell specialty

12    already.  I got it.  It's a great firm.  I've had law clerks go

13    there.

14         MS. HAN:  The RICO claims were raised in the direct

15    filed Complaint, and as laid out in our papers, we believe that

16    there's no personal jurisdiction, but plaintiffs are desperately

17    holding on to the RICO claim in an attempt to try and establish

18    jurisdiction, but as Mr. Feller noted, they have some real

19    problems.

20         I want to note a couple of allegations that existed in

21    the Honda Complaint and, as Mr. Feller noted earlier, what's

22    really important here is recognizing that on these issues Your

23    Honor hasn't previously ruled on them.

24         THE COURT:  Has not?

25         MS. HAN:  Has not.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 165 of 259
Motions to Dismiss

165

1          THE COURT:  I think it's different, I agree with you,

2   because of the Takata plea.  You think it's different for other

3   reasons.

4          MS. HAN:  Yes.

5          THE COURT:  And that's what you're going to tell me.

6          MS. HAN:  Yes.

7          THE COURT:  All right.

8          MS. HAN:  I think that the Takata Plea Agreement really

9   sets it up and really hits home the point that there is no

10  plausibility argument here.

11         THE COURT:  But you think you have other grounds.

12         MS. HAN:  Yes, we have other grounds.

13         THE COURT:  Okay.

14         MS. HAN:  And you mentioned earlier about granting a

15  Motion to Dismiss and how the Appellate Court is going to react

16  to that, but, Your Honor, the RICO case law is very robust, and

17  we have very helpful guidance by recent Eleventh Circuit

18  decisions which we believe, and laid out in our papers, really

19  set out the standards.  The allegations in those cases as well

20  we believe really, in our view, should inform the decision here

21  to grant the dismissal.

22         So I want to start off first by talking about the RICO

23  enterprise, and I'm not going to go through the elements.  Your

24  Honor is very familiar with all of that.

25         THE COURT:  Oh, you don't have to do that.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 166 of 259
Motions to Dismiss

166

1          MS. HAN:  So I want to point out that with respect to

2     the RICO claims, there are no factual allegations about an

3     agreement between Takata and the newly added OEMs to conceal the

4     alleged defect, no agreement, and I want to contrast that with

5     the types of allegations that were included in the Honda

6     Complaint.

7          THE COURT:  That's no longer a viable Complaint, right?

8          MS. HAN:  That is correct, Your Honor.

9          THE COURT:  I just want to make sure I'm revisiting a

10    Complaint that's no longer in existence.

11         MS. HAN:  Well, the reason why I'm pointing it out is

12    so that I can highlight for Your Honor the types of allegations

13    that at the time you deemed were sufficient for purposes of a

14    conspiracy Complaint -- conspiracy claim.  Here, I think it's

15    important to bear in mind that there are no such allegations.

16         THE COURT:  Okay.

17         MS. HAN:  So for example, in the Honda Complaint

18    plaintiffs alleged that Takata and Honda co-drafted a letter to

19    NHTSA, and they fraudulently omitted that one of those

20    deployments caused the death of a particular individual.  So

21    there in the Honda Complaint they talked about an agreement

22    between Takata and another OEM.

23         THE COURT:  Sounds easy.

24         MS. HAN:  They also talked about -- they also alleged

25    in that Complaint that Honda collected inflators from scrap

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 167 of 259
Motions to Dismiss

167

 1  yards and transmitted them to Takata to perform secret --

 2          THE COURT:  What do they say about your clients?

 3          MS. HAN:  So with respect to the newly added OEMs, they

 4  talk a lot about exchange of information, adverse test results,

 5  communications that the new OEMs had with the regulators, the

 6  advertisements that the OEMs provided to consumers, the

 7  communications that the new OEMs had with other OEMs, and as

 8  were laid out in our papers --

 9          THE COURT:  Well, they kind of want to say that you

10  should have known at least.  They say more than that, but I want

11  to start with that, that you should have known by all of this.

12  Do you agree you should have known?

13          MS. HAN:  That's what they're trying to allege.

14          THE COURT:  Oh, no.  They allege that you knew, but do

15  you agree that you should have known?

16          MS. HAN:  Actually, Your Honor they allege both.  They

17  allege that we knew and we should have known.

18          THE COURT:  Okay.

19          MS. HAN:  And that is not enough for purposes of RICO

20  claims.

21          THE COURT:  Maybe, maybe.

22          MS. HAN:  So, again, we're talking about just RICO

23  here.  There are a lot of other claims that they're raising, but

24  the standard is very clear in terms of what you need to allege

25  for RICO and there is not one allegation whereby they claim that

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 168 of 259
Motions to Dismiss

168

1    Takata and one of the new OEMs acted in concert together to try

2    and conceal the alleged defect, and that is completely

3    consistent with what Mr. Feller talked about in terms --

4              THE COURT:  If they tell you about all of these

5    problems and you knew, that would be enough.

6              MS. HAN:  No, Your Honor.

7              THE COURT:  It wouldn't be enough.

8              MS. HAN:  Right, because the law is very clear that --

9              THE COURT:  Knowledge is not enough.

10             MS. HAN:  Knowledge is not enough because, in fact, you

11   could have, at best, conscious parallelism.

12             THE COURT:  Okay.

13             MS. HAN:  Right?  And the Eleventh Circuit has made

14   crystal clear that that is insufficient to allege a RICO

15   enterprise.  So let's say --

16             THE COURT:  And your best case on a Motion to Dismiss,

17   not on a Motion for Summary Judgment, is what?

18             MS. HAN:  Even on a motion --

19             THE COURT:  Give me the best case from the Eleventh

20   Circuit.

21             MS. HAN:  So the best --

22             THE COURT:  A Motion to Dismiss that says granted,

23   affirmed, great opinion, District Judge.

24             MS. HAN:  So I am going to refer you to three

25   decisions.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 169 of 259
Motions to Dismiss

169

 1            THE COURT:  Oh, three.

 2            MS. HAN:  The first one is Almanza, A-l-m-a-n-z-a.

 3            THE COURT:  I know.

 4            MS. HAN:  851 F.3d 1060, that's a 2017 Eleventh Circuit

 5   decision.  And in that case, again, the Eleventh Circuit looked

 6   at the particular allegations and the conduct involved ordinary

 7   business conduct and that's what's at issue here.

 8            What plaintiffs say, and it's really question begging

 9   because they claim that what made this enterprise illegal was

10   that the OEMs engaged in unlawful conduct.

11            As you can tell, that's very circular arguing because

12   at the end of the day, what they're really pointing to are the

13   examples that I provided.  They are talking about communications

14   that the OEMs had with Takata with respect to test results.  Of

15   course, that's what a normal relationship between a supplier and

16   a purchaser is, you would expect to see that.  You would expect

17   that a car company would have communications with their

18   regulators.  Again, that's very typical, that's ordinary

19   business conduct.  That is insufficient to allege a RICO

20   enterprise.

21            I think a good case to contrast that with, Your Honor,

22   is what plaintiffs rely on in their papers, and that's the

23   Mohawk Industries case, that's a 2005 Eleventh Circuit decision,

24   411 F.3d 1252, and in that case what Plaintiffs argued --

25            THE COURT:  It's a Motion to Dismiss case?

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 170 of 259
Motions to Dismiss

170

1          MS. HAN:  Yes.  What they argued was that defendants

2    hired recruiters to bring in illegal workers, and what makes

3    that case different from ours is the conduct at issue was that

4    the defendant was alleged to have been involved with the actual

5    recruiters by supplying Social Security cards for use when an

6    illegal employee was required to demonstrate identity.  Right?

7    So there you've got some conduct that nobody would say is part

8    of the ordinary course --

9          THE COURT:  So the Motion to Dismiss was denied in that

10   case.

11         MS. HAN:  The Motion to Dismiss in that case was

12   granted and it was affirmed.

13         THE COURT:  Even though all of that activity was done?

14         MS. HAN:  I'm sorry?

15         THE COURT:  Even though all that activity was done?

16         MS. HAN:  Yes.  But the point there is, that was the

17   type of activity where you have conduct that is not ordinary

18   business, right, so you don't --

19         THE COURT:  But the Motion to Dismiss was granted.

20         MS. HAN:  Yes, the Motion to Dismiss was granted.

21         THE COURT:  Even though there was activity.  I'm

22   missing something and it's probably my fault.

23         MS. HAN:  So in that particular case, plaintiffs argued

24   that this constituted a RICO enterprise.

25         THE COURT:  And the Motion to Dismiss was granted.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 171 of 259
Motions to Dismiss

171

1          MS. HAN:  I'm sorry, the Motion to Dismiss was denied.

2    Sorry, Your Honor.

3          THE COURT:  That's why you got me confused.

4          MS. HAN:  I'm sorry, I misheard, yes.  No, it was

5    denied.

6          THE COURT:  But I think what's helpful to you is if the

7    Motion to Dismiss is granted and affirmed, because you want me

8    to grant the Motion to Dismiss.

9          MS. HAN:  But the reason is that --

10          THE COURT:  Those are the cases I prefer.

11          MS. HAN:  But the allegation --

12          THE COURT:  You prefer all of them, but then we get

13    confused.

14          MS. HAN:  The reason why I'm highlighting that point is

15    that the allegations are different in that case.

16          THE COURT:  I know, I got it.  There are hundreds of

17    cases that are different in RICO.

18          MS. HAN:  Right.  And so our case, the new defendants,

19    our case, we fall in the category of ordinary business conduct.

20          THE COURT:  The Almanza case I understand.  Mohawk I

21    don't like.  So give me the third one that you have.

22          MS. HAN:  So other cases that we would refer you to --

23          THE COURT:  Where the Motion to Dismiss was granted and

24    affirmed -- you've got it, it's in your pleadings -- and

25    affirmed by the Eleventh Circuit.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 172 of 259
Motions to Dismiss

172

 1          MS. HAN:  Yes, we have all of those cases --

 2          THE COURT:  Give me the third one.

 3          MS. HAN:  Okay.  So then there's Ray versus Spirit

 4    Airlines, 836 F.3d 1340.

 5          THE COURT:  The Motion to Dismiss was granted.

 6          MS. HAN:  Yes.

 7          THE COURT:  And the Eleventh Circuit affirmed?

 8          MS. HAN:  Yes.

 9          THE COURT:  And now you can talk about that.

10          MS. HAN:  Right.

11          THE COURT:  What were the allegations?

12          MS. HAN:  So in the Ray versus Spirit Airlines, again,

13    this was allegations against an airline whereby they were

14    accused of entering into RICO enterprise with respect to fees

15    charged by the airlines.

16          Again, this is the type of conduct involving normal

17    course, what businesses would do in terms of using computers and

18    charging fees, and that was not enough.

19          THE COURT:  Tell me the wrongful conduct in that

20    Complaint.

21          MS. HAN:  So there --

22          THE COURT:  They obviously didn't have a lawyer like

23    Mr. Prieto.  He would have included something that looked bad in

24    that Complaint.

25          MS. HAN:  So there the allegation was that the RICO

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 173 of 259
Motions to Dismiss

173

1   enterprise included technology vendors who worked together to

2   misrepresent the fee.

3           THE COURT:  That's it.  And the Spirit Airline was a

4   victim in that case?

5           MS. HAN:  No, they were accused of being part of the

6   RICO enterprise.

7           THE COURT:  Okay.  And it was dismissed because there

8   weren't enough allegations --

9           MS. HAN:  Yes.

10          THE COURT:  -- of fraud.

11          MS. HAN:  Right, because the Court held plaintiff

12  alleged wholly innocent activity undertaken as a course of

13  regular business.

14          THE COURT:  Okay.  Sounds like a bad Complaint, I

15  agree, and he wrote a whole opinion on that.  Okay.

16          MS. HAN:  But I also want to highlight here -- we

17  talked about this earlier at the outset -- that plaintiffs have

18  had the benefit of years of discovery, and granted --

19          THE COURT:  With the other defendants --

20          MS. HAN:  Right.

21          THE COURT:  -- who are the bad guys, too, you say.

22          MS. HAN:  Well, because what they need to show is an

23  agreement, a meeting of the minds with Takata, and they've had

24  access to Takata's documents.  So Mr. Prieto talked earlier that

25  not all of the newly added defendants have produced documents,

1  although many of us have already or are in the process of

2  producing the NHTSA documents, but they have had Takata's

3  documents.  They have had the benefit of years and years of

4  discovery --

5          THE COURT:  They want yours.

6          MS. HAN:  I'm sorry?

7          THE COURT:  They want yours.

8          MS. HAN:  Yes, Your Honor, but they've had Takata's --

9          THE COURT:  Your emails --

10         MS. HAN:  They have had Takata's --

11         THE COURT:  -- that say, hey, we got it, we're willing

12 to gamble on those airbags and make money.

13         MS. HAN:  But if there was an agreement --

14         THE COURT:  There wouldn't be an email like that.

15         MS. HAN:  If there was an agreement with Takata, we

16 would expect that Takata's documents would reflect that, and

17 they have Takata's documents.

18         THE COURT:  Okay.  I got it.

19         MS. HAN:  Your Honor, so I talked a little bit about

20 the enterprise, but I also want to talk about the second element

21 with respect to the racketeering activity, and here, again, I

22 think the law is pretty clear in terms of the fact that you need

23 to demonstrate scienter.

24         THE COURT:  Oh, I know that.  That's another way of

25 saying knowledge, no?

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 175 of 259
Motions to Dismiss

175

1          MS. HAN:  Yes, knowledge, you're right, and one of the

2    topics --

3          THE COURT:  Do you know who drafted the RICO statute?

4          MS. HAN:  No, I'm afraid I don't, Your Honor.

5          THE COURT:  All right.  It wasn't me, someone older and

6    smarter than me.  They taught at a great law school, that I

7    didn't go to, I went to the undergraduate school, and his son is

8    a judge in Chicago, a Federal judge.

9          Go ahead.  See, now you're going, to have to Google

10   that.

11         MS. HAN:  Going back to the idea of scienter, I want to

12   introduce the concept of group pleading which Your Honor

13   mentioned in your notice, and I'm going to just say very briefly

14   that of the 1,135 paragraphs in the Puhalla Complaint

15   referencing defendants, only six of the more than a thousand

16   paragraphs break out the entities separately, and those six

17   paragraphs relate to only the corporate entity.  I highlight

18   that statistic, Your Honor, because that is very telling in

19   terms of how they have lumped all of the defendants together to

20   make their allegations of scienter.  They attempt to try and

21   establish scienter based on that.

22         THE COURT:  I should make them redraft the Complaint

23   and put the sections with each defendant, so that way they'll

24   have this is what Volkswagen did, this is what Audi did, this is

25   what General Motors did, right?

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 176 of 259
Motions to Dismiss

176

```
 1              MS. HAN:  They have --

 2              THE COURT:  You would like that.

 3              MS. HAN:  The law requires it, Your Honor.

 4              THE COURT:  All right.

 5              MS. HAN:  And they have failed to satisfy the clear

 6    burden to allege scienter along with, you know, failing to

 7    allege with sufficient particularity.  I just want to highlight,

 8    Your Honor, some of the examples of the way in which they rely

 9    on this group pleading.

10              So paragraph 281 of the Puhalla Complaint, they say the

11    Volkswagen defendants, and again, they define Volkswagen

12    defendants as lumping together four separate corporate entities.

13              THE COURT:  Volkswagen, Audi.

14              MS. HAN:  Volkswagen AG, Audi AG, Volkswagen Group of

15    America, Inc., and Audi of America, four separate corporate

16    entities lumped together in the vast bulk of the allegations in

17    the Complaint.

18              So paragraph 281:  "The Volkswagen defendant's conduct

19        in furtherance of the scheme was intentional."

20              That is totally conclusory.

21              In the Boyd Complaint, paragraph 212:  "New Chrysler's

22        conduct in furtherance of the scheme was intentional."

23              That is the type of allegation that we're dealing with

24    as plaintiffs try and demonstrate scienter, which, again, the

25    law is very clear that that is insufficient.
```

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 177 of 259
Motions to Dismiss

177

1           THE COURT:  All right.  I got it.

2           MS. HAN:  Group pleading also comes into play -- we

3    talked earlier this morning about personal jurisdiction and

4    Mr. Glueckstein talked about that, but again, the way in which

5    plaintiffs try and satisfy their pleading burden is they just

6    throw in all of the defendants together, and contrary to their

7    argument, this is not an acceptable form of pleading.  The fact

8    that they're related corporate entities, that does not excuse

9    their lack of particularity and specificity.

10          The last point I would like to make, Your Honor,

11   relates to what I alluded to earlier about Rule 9(b) requirement

12   for particularly.

13          Again, the law is clear that this is required, and this

14   is set out in Brooks v Blue Cross and Blue Shield, an Eleventh

15   Circuit decision, 116 F.3d 1364.

16          "Plaintiffs must allege the precise statements,

17      documents, or misrepresentations made; the time, place, and

18      person responsible for the statement."

19          That's clearly written in this decision.

20          If you look at the Complaint, the vast majority of the

21   allegations, again, are very general.  They don't specify time,

22   place, and person; and in fact, with respect to the allegations

23   against the Volkswagen and Audi defendants, they do not identify

24   a single person who allegedly was responsible.  So we submit,

25   Your Honor, that those such allegations again are insufficient

Motions to Dismiss

1    as a matter of law.

2         And then the final point about 12 -- I mean 1962(d),

3    this is the conspiracy claim, our view is that they failed to

4    allege a primary violation, so, therefore, they fail to allege

5    any form of conspiracy.  And to the extent that they claim that

6    they do, again, we go back to all of the allegations I pointed

7    to earlier failing to show that there was any type of agreement

8    between Takata or any of the newly added OEMs.

9         THE COURT:  All right.  Thank you.

10        MS. HAN:  Okay.

11        MR. FELLER:  Your Honor, two things.

12        THE COURT:  Didn't you speak before?

13        MR. FELLER:  I did.  I wanted to give you my best case

14   cites since you didn't ask.

15        THE COURT:  Your what?

16        MR. FELLER:  My best case cites.  First of all, I want

17   to tell you Robert Blakey wrote RICO.  And second of all, I

18   wanted to give you my best case cites.

19        THE COURT:  He's still around, but retired.

20        MR. FELLER:  Oh, I know.  Your Honor, I think on all

21   fours, and you know the case well since you granted the RICO

22   Motion to Dismiss and the Eleventh Circuit affirmed you, is

23   American Dental Association, 605 F.3d 1283.  The pincite is

24   1293.  It's an allegation that a bunch of insurance companies

25   got together --

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 179 of 259
Motions to Dismiss

179

1          THE COURT:  Yeah, I remember.

2          MR. FELLER:  -- to screw the dentists.  This is the

3    Eleventh Circuit.

4          THE COURT:  I don't think they quite said it like that.

5    That's probably the way I probably said it.

6          MR. FELLER:  Well, I think the point, Judge, though

7    is -- and again, the pincite is 1293, you can look at it, but

8    the quote is "We find no specific representation in any of the

9    communications plaintiffs reference."  It's exactly what we have

10   here.

11         THE COURT:  Okay.  All right.  You want to save your

12   RICO claim or -- any other defendant?

13         MR. MALLOW:  Your Honor, Michael Mallow.  Would you

14   like to hear about proximate cause and the recyclers, or would

15   you like to hear from Mr. Prieto first on --

16         THE COURT:  It's easier to keep it like this I think.

17   I may bring him up on that, kind of like a preemptive attack

18   though.

19         You don't want those cases?

20         MR. PRIETO:  Excuse me?

21         THE COURT:  You don't want those cases?

22         MR. PRIETO:  No, there were notes, so I didn't want to

23   read them.

24         Your Honor, let me address first Mr. Feller's

25   arguments.  In all those documents that he took you through, you

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 180 of 259
Motions to Dismiss

180

1   never heard once the words GM, VW, Mercedes, or FCA.  There was

2   no factual finding that they were victims in those cases.

3           THE COURT:  I got it.  You made that point before, but

4   it means something though, right?

5           MR. PRIETO:  Of course.

6           THE COURT:  It's unusual.

7           MR. PRIETO:  It means something, it means something,

8   Your Honor --

9           THE COURT:  It kind of means a lot though.

10          MR. PRIETO:  -- at summary judgment or at trial, and

11  I'll tell you why.  Because we've always made this very clear,

12  this goes to the weight of the evidence, all right, number one.

13          THE COURT:  See, I don't know because I had that

14  problem when it originally occurred.  Remember I said -- I think

15  I heard it even before any pleading was filed.  The media

16  today -- with social media, I haven't checked today, but

17  sometimes I find out what happens in my cases by looking at

18  social media before I even can look at the pleadings.

19          When Takata pled guilty, do you remember I said, oh,

20  that's a big deal because they're the lead defendant, the lead

21  wrongdoer, right?  But it got even better for the Government,

22  and perhaps worse for you, in the sense that some of the other

23  defendants who eventually became defendants were considered

24  victims and it seems inconsistent, especially when their order

25  -- when Takata, the wrongdoer, the lead wrongdoer without any

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 181 of 259
Motions to Dismiss

181

1  question, is ordered to pay restitution to the victims.

2         So even though there's no need for a prosecutor or a

3  judge to make any findings, the fact that you're ordering

4  restitution, a massive amount, to victims puts the so-called

5  victims in a good position.  They'd say, hey, hold on, folks,

6  we're victims and now we are being sued, not by the Government,

7  but we are being sued by the plaintiffs, so we get it from both

8  ends.

9         MR. PRIETO:  Because it's not mutually exclusive.

10         THE COURT:  Well, that's the issue.

11         MR. PRIETO:  It is not.

12         THE COURT:  I don't know.  I am very uncomfortable,

13  especially in a RICO claim.

14         MR. PRIETO:  Actually, I think you should be less --

15  you should be more comfortable in a RICO claim than in any other

16  claim because RICO is based on conspiracy.

17         THE COURT:  Yeah, but, you know, when it originally

18  passed -- there's no denial it's been expanded a lot by the

19  courts that I have to follow -- The original meaning of all of

20  that was for the Mafia, right?  So think about it.  If we were

21  to simplify it, it would be like the victims of extortion then

22  get sued at some point, you know, when they're victims.  They're

23  being extorted or penalized somehow by the big Mafia guys, and

24  then all of a sudden, there's a civil lawsuit because maybe

25  they're owners of a bunch of grocery stores in Little Italy in

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 182 of 259
Motions to Dismiss

182

1   New York.  Okay?  Let's think of that hypothetical.  Then they

2   get sued and they say, wait a second, we were being extorted by

3   the Mafia guys, now you're suing us because we knew something,

4   or we should have known that they were bad guys?

5           MR. PRIETO:  It's not that they knew.

6           THE COURT:  What did they do?  What did they do?

7           MR. PRIETO:  It's not that they knew only.

8           THE COURT:  What did they do?

9           MR. PRIETO:  What they did was, they together, in

10  cahoots with Takata, created a scheme to defraud.

11          THE COURT:  But it has to be more individualized,

12  doesn't it?  You can't just say they -- if you went in your

13  closing argument in front of the jury, they, in cahoots with

14  Takata, were in a scheme to defraud --

15          MR. PRIETO:  Yes.

16          THE COURT:  -- I wouldn't even let you go to the jury.

17  You would have to tell me what they did specifically

18  individually.  Don't you agree?

19          MR. PRIETO:  Absolutely.

20          THE COURT:  Individually and separately, even

21  corporations that are related, they're cousins.

22          MR. PRIETO:  That's a different issue.

23          THE COURT:  Even that, you have to say they did this,

24  this one did that, this one did the other.

25          MR. PRIETO:  Your Honor, let me just back up.  We have

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 183 of 259
Motions to Dismiss

183

1    alleged specifically as to GM and VW, very specifically that

2    they had knowledge with Takata, both of them had knowledge

3    together about this defect and they failed to disclose it for

4    years and for years and for years.

5         This is a classic RICO case applied in the civil

6    context and the reason is, why?  Because civil -- RICO in

7    general is designed to combat wrongful conduct over a period of

8    years.  That's why you have RICO.  And this case is a classic

9    example of why RICO should apply in the civil context.  For

10   years and years and years they failed to disclose both together

11   that there was a problem with these cars and for their own

12   selfish economic reasons, they failed to disclose it and went

13   along.

14        And our Complaint -- and I can go as long as you want

15   me to go --

16        THE COURT:  You gave me the paragraphs.

17        MR. PRIETO:  Well, that was as to another defendant.

18   If you want the paragraphs as to GM and VW, I have them in front

19   of me.

20        THE COURT:  Okay.  Give them to me.

21        MR. PRIETO:  Paragraph 9, 102, and 103, and this is

22   what those three paragraphs in combination start off with as it

23   relates to GM:

24        "When Takata approached GM with its cheaper ammonium

25      nitrate inflators, GM asked Autoliv," which was a competitor

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 184 of 259
Motions to Dismiss

184

1    to Takata, "to match Takata's price.  Autoliv tested

2    Takata's ammonium nitrate inflators and told GM ammonium

3    nitrate was so unstable that, quote, 'blew the inflator to

4    bits.'  Totally destroyed the fixture."  And quote, "turned

5    it into shrapnel."  That's a quote.  "And notified GM of the

6    results no later than 1999."

7        That's just one of the allegations in our Complaint.

8        Again, paragraph 10:  "Takata's testing of airbag

9    inflators from 2000 to 2007 confirm inflator stability

10   problems, overly aggressive behavior when deployed which

11   could lead to ruptures and inflator's tendency to flame or

12   catch fire when airbags rupture.  Takata shared these

13   results with GM's head of inflator technology who stayed on

14   with New GM after the bankruptcy.  Also, several GMs from

15   before the bankruptcy were also aware and raised significant

16   concerns about the Takata inflators."

17       "Takata continued" -- paragraph 14:  "Takata continued

18   to report testing results to GM showing energetic

19   disassembly" -- that's a euphemism for a rupture -- and

20   "nonconformances," involving "high ballistics."

21       In 2011, according to paragraph 15, "GM reported to

22   Takata that a driver in a GM vehicle suffered from burns

23   when the airbag deployed.  In late 2003 (sic) and early

24   2014, airbag explosions occurred in two 2013 Chevy Cruze

25   vehicles, in one case completely blinding the driver in one

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 185 of 259
Motions to Dismiss

185

1      eye.  GM convinced Takata to come up with an excuse to limit

2      the scope of the problem, allowing GM -- and GM to blame

3      Takata airbag ruptures on a manufacturing defect to avoid

4      issuing a larger recall."

5           THE COURT:  Where does that come from, that GM

6   convinced Takata?

7           MR. PRIETO:  I would assume it comes from some of the

8   documents that we got from Takata, Your Honor, that related to

9   some of these automakers.

10          THE COURT:  You're getting a lifeline.  See, it's good

11   to have a lifeline.

12          MR. PRIETO:  Let me make sure that I read one or two

13   other -- if you'd give me one second, Your Honor.

14          THE COURT:  We are losing our audience.  See, if I wait

15   long enough, we won't have anybody in the courtroom.

16          MR. PRIETO:  No, I have it.  I have it.  I just need to

17   find it.

18          So paragraph 306:  The head of inflator technology

19      demanded that Takata, "put the story together that may

20      potentially limit the scope of a recall, rather than

21      disclose the inflator defect to ensure the safety of drivers

22      and passengers in new and old GM vehicles."

23          THE COURT:  But who did that?  Who said that?

24          MR. PRIETO:  Noldan, who I believe is the head of

25   inflator technology for GM.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 186 of 259
Motions to Dismiss

186

1          So engineers at GM knew there were problems, they

2     discussed them with Takata, and they still failed to disclose

3     this defect for years and for years and for years.

4          So there's no question that we're alleged -- and I

5     could go on, I have more paragraphs that I can go on.  I can

6     give you the paragraphs if you want me to give them to you.

7          You know, the funny thing is that they really didn't

8     focus on our Complaints.  They talked about the case law, they

9     talked about the Takata plea, they talked about cases where the

10    Eleventh Circuit and Your Honor had interpreted different

11    Complaints.  But if you look closely at the factual

12    allegations about knowledge --

13          THE COURT:  What do you want me to say about the Takata

14    plea?

15          MR. PRIETO:  Your Honor, what I would like the Court to

16    say is, first of all, the Takata plea at this stage, under Rule

17    201, should not be considered; but even if it's considered, even

18    if it's considered, it should be an issue for either summary

19    judgment or trial.

20          THE COURT:  Okay.  So we go to summary judgment and we

21    have the plea still.  That's not going to change.

22          MR. PRIETO:  It's not going to change, but it doesn't

23    negate their knowledge independent of what Takata may have told

24    them.

25          THE COURT:  So then they shouldn't have been

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 187 of 259
Motions to Dismiss

187

1  compensated as victims.  It's inconsistent.

2       MR. PRIETO:  It is not inconsistent.  Well, in fact, if

3  you remember when this came up back in February of 2017 or 2018,

4  when Takata pled guilty --

5       THE COURT:  That has been done already I take it.

6  They've been compensated already.

7       MR. PRIETO:  I assume they've got their money.

8       THE COURT:  I wanted to sound more elegant for a

9  change.

10       MR. PRIETO:  Someone from the Plaintiffs' Bar objected

11  at sentencing and the judge said this should not impact the

12  civil case because you can be a victim in one case and not in

13  another.

14       THE COURT:  He said that?

15       MR. PRIETO:  That's what he said.  In fact, if Your

16  Honor wants, I can supplement the record because we said it, I

17  think, back in September 2017.  I think this plea took place in

18  January of 2017.  So it is an issue that we need to contend with

19  at trial, but it's not an issue that's going to negate our case.

20  It's an issue of fact, assuming it comes in.

21       By the way, if it comes in, we're also going to bring

22  in the fact -- I mean, these defendants that are making these

23  arguments are not babes in the woods.

24       VW's counsel talks about or FCA's counsel talks about

25  ordinary business conduct.  Well, you know, they participated,

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 188 of 259
Motions to Dismiss

188

 1  both these defendants.  GM participated in business conduct

 2  which led to criminal charges because they hid an ignition

 3  switch defect.  They had to pay $900 million.  VW, also during

 4  ordinary business conduct, cheated and failed to disclose an

 5  emissions trick where they misrepresented the emission standards

 6  for their cars.  I looked at the Plea Agreement by VW.  You know

 7  what the baseline fine was?  I had to look again at the numbers.

 8  I think it was $8 billion.  So they paid billions of dollars for

 9  criminal conduct, and at the same time they come here and

10  everything that we have alleged is simply ordinary business

11  conduct.  Well, this is not the first rodeo of them committing

12  unlawful conduct, both as to VW and as to GM.

13          So when this case at summary judgment or trial gets

14  tried, they can bring in Takata's plea.  We will bring

15  independent knowledge that they knew, independent of what Takata

16  was telling them, that there was a defect and they failed to

17  disclose it.  And Your Honor has tried a lot of conspiracy cases

18  in the 30 years that you've been on the bench and if RICO was

19  premised on a couple --

20          THE COURT:  32, but who's counting.

21          MR. PRIETO:  Okay.  So RICO was basically modeled after

22  the Clayton Act, or at least the civil provisions of it, but

23  it's also modeled after basically criminal conspiracy law, and

24  this argument that a conspirator cannot lie to another, as a

25  matter of law should be rejected by RICO, and I'll give you an

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 189 of 259
Motions to Dismiss

189

1  example.

2         THE COURT:  But a conspirator is generally not a

3  victim, you would agree --

4         MR. PRIETO:  Let me give you an example.

5         THE COURT:  -- who gets restitution ordered by a

6  Federal judge.

7         MR. PRIETO:  No.  Four people rob a bank.  The guy that

8  goes in to get the money puts something in his pocket that he

9  shouldn't have, so he takes more money for himself and doesn't

10  tell the other co-conspirators.  Those co-conspirators are

11  victims, okay, but the overall agreement --

12         THE COURT:  I wouldn't order restitution.

13         MR. PRIETO:  But that's what RICO is based on, and

14  that's why the case that we cited to Your Honor --

15         THE COURT:  I don't know if I would let that RICO

16  Complaint stand, but yours seems better.  I don't know.  I just

17  don't know.

18         MR. PRIETO:  So here's a quote from a case, a

19  conspiracy case, a Motion for New Trial, criminal case,

20  conspiracy case.  The defendant in that case got convicted and

21  he said, look, the co-conspirator lied to me, and this is what

22  the Court said:  It's U.S. versus Gohari which we quoted in our

23  documents.

24         "It is also true that Cabrera admitted that he at times

25     lied to his co-conspirators, but the Court does not agree

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 190 of 259
Motions to Dismiss

190

1        with defendant's claim that this negates the existence of a

2        conspiratorial scheme.  As suggested by the age-old maxim

3        'no honor among thieves' co-conspirators may reach some

4        basic agreements among themselves but also engage in

5        self-interested lying to each other on other points.  It is

6        commonplace, for example, for co-conspirators to agree in

7        principle to share proceeds of their illegal acts and yet,

8        in practice, to try to cheat each other out of parts of the

9        proceeds."

10            THE COURT:  And is that what this case is about, do you

11   think?

12            MR. PRIETO:  I think this case --

13            THE COURT:  Takata was cheating these other defendants.

14            MR. PRIETO:  Takata was in some respects

15   misrepresenting because they wanted to continue to do business

16   with them, and they, in turn, for example --

17            THE COURT:  Looked the other way.

18            MR. PRIETO:  In certain parts looked the other way --

19            THE COURT:  Is that enough, to look the other way?

20            MR. PRIETO:  No, but I'm not -- the other statement is

21   that in other parts, they knew there was a defect.  Takata may

22   have been telling them only most of the story, but maybe in some

23   respects --

24            THE COURT:  And knowing is enough for RICO, for

25   racketeering?

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 191 of 259
Motions to Dismiss

191

1              MR. PRIETO:  Of course knowing is enough.

2              THE COURT:  Just knowing?

3              MR. PRIETO:  Yes, absolutely.  It's absolutely enough

4     for RICO.

5              Let me make just a couple of more comments, and again,

6     I want the Court -- it is completely, completely plausible that

7     Takata may have lied to them in some respects and yet conspired,

8     and we've alleged they conspired, to conceal this defect.

9              I think the issue is:  Are they mutually exclusive?

10    The answer is no, as this Court has held and as we have alleged

11    and been consistent with for the last couple of years.

12             I'll give you another example.  You heard what the

13        Special Master said, and I quote again, "This is consistent

14        with the recommendation of the consenting OEMs and obviates

15        the need to determine whether a particular OEM can

16        demonstrate that it was a" -- and this Special Master says,

17        quote -- "a victim of Takata's fraud."

18             So no finding was made of any specific OEM being a

19    victim of Takata's fraud.

20             THE COURT:  Because it's in quotes.

21             MR. PRIETO:  Well, No, not because it's in quotes,

22    because they all agreed to basically allocate their money, and

23    there was never any finding as to who actually was an OEM or

24    automaker victim of Takata.

25             Let me give you another example.  Each of these new

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 192 of 259
Motions to Dismiss

192

1   defendants, if they say that they were somehow victims and the

2   Government considered victims, and Mr. Feller said they've been

3   investigating this thing for years, not one of any of these new

4   defendants produced records to the Department of Justice.  The

5   original ones, the legacy ones did.  We've asked them whether

6   they produced records to the Department of Justice, these

7   so-called victims, these four new defendants.  They've

8   represented to us that none of the new defendants produced any

9   records to the Department of Justice.

10          THE COURT:  Well, how did the money -- how was it

11   apportioned?

12          MR. PRIETO:  They agreed.

13          THE COURT:  There had to be some method.

14          MR. PRIETO:  There was a pot of money.  There was a pot

15   of money and there was an agreement and there was no finding,

16   according to the Special Master, of who was the victim and who

17   wasn't.  That's more appropriate --

18          THE COURT:  It's kind of like attorneys' fees are

19   divided, huh?

20          MR. PRIETO:  Like attorneys' fees, Your Honor.

21          THE COURT:  Okay.

22          MR. PRIETO:  I think the bottom line is, this debate

23   should be a debate for trial.

24          THE COURT:  I got it.  I got it.

25          MR. PRIETO:  Mr. Feller should be able to link up -- if

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 193 of 259
Motions to Dismiss

193

1  GM was truly a victim, at trial he should be able to put on

2  evidence that he was a victim and show Takata's records going to

3  his client --

4          THE COURT:  Well, he says it's your burden in the first

5  place.

6          MR. PRIETO:  Judge, but we have alleged independent

7  knowledge on their part very specifically.

8          THE COURT:  I got it.

9          MR. PRIETO:  Very specifically.

10         THE COURT:  Do you push the "I got it" button every

11 once in a while.

12         I got it.

13         MR. PRIETO:  I want to address the -- You know, we have

14 alleged classic -- both a substantive RICO claim under 18 U.S.C.

15 1962(c) and 1962(d).

16         Let me tell you about the cases that they cite, and

17 you'll see this as a common thread in all of the cases, In Re:

18 Managed Care, American Dental, Almanza, what those Courts all

19 said, that there was no allegation of RICO, is that there was

20 parallel conduct.

21         In other words, the defendants were doing unlawful

22 things in parallel, but they weren't talking to each other about

23 an agreement or an enterprise.  That's what you held in In Re:

24 Managed Care --

25         THE COURT:  You've got emails here.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 194 of 259
Motions to Dismiss

194

1          MR. PRIETO:  Of course, we have emails where they're

2     talking to each other about a defect that they know about and

3     they failed to disclose.  Almanza was such a case.

4          THE COURT:  For each defendant separately.

5          MR. PRIETO:  Yes, Takata with each defendant

6     separately.

7          THE COURT:  And the new Amended Complaint is going to

8     have that with the identification of the date and the email?

9          MR. PRIETO:  We could do that.  I don't know whether

10    you want that as to all four defendants or simply with respect

11    to Daimler Mercedes.

12         THE COURT:  Well, what's good for one is good for the

13    other.

14         MR. PRIETO:  But let me just say, so Almanza, there was

15    parallel conduct and that's what the Court said.  That was a

16    case, an Eleventh Circuit case, written by Judge Rosenbaum where

17    she went through the analysis and there was an allegation that

18    airlines were charging a tax that Mexico imposes on tourists and

19    they were actually imposing it also on Mexican nationals which

20    they should not have.

21         The argument there was and the allegations of the

22    Complaint were that these airlines were doing this in parallel

23    but not as part of an agreement amongst themselves, and the

24    Court said that even if you have parallel conduct, even if they

25    know that they're doing but they're not talking to each other,

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 195 of 259
Motions to Dismiss

195

1   that's not enough for an agreement.  There must be an agreement.

2         THE COURT:  Who talked in this case, just Takata and

3   each defendant --

4         MR. PRIETO:  Yes.

5         THE COURT:  -- or the defendants with each other?

6         MR. PRIETO:  No.  The RICO is basically one defendant

7   per Complaint.  The defendant is VW, Mercedes, GM, and FCA,

8   which is Chrysler.  That is the defendant.  The RICO enterprise

9   is the defendant and Takata.  All right?  Because classically

10  it's always been, under Eleventh Circuit law, that you can't

11  have the defendant and the enterprise be one in the same, just

12  can't do that.  That goes back to that case you mentioned at the

13  last hearing, U.S. versus Golden.

14        Back in the day the Eleventh Circuit was the only

15  circuit that said you could do that, you could have a defendant

16  be the same as the enterprise.

17        We have alleged distinct entities.  The defendant is

18  VW, GM, the new defendants, and the enterprise is a combination

19  of two people, two entities that were in cahoots and were part

20  of the enterprise, knew about it, Takata and the defendant.

21  That's what distinguishes this case from Ray versus Spirit

22  Airlines.  That wasn't my case, but that was my firm's case.  We

23  lost that case, and the reason we lost that case is because

24  Judge Marcus, writing for the Eleventh Circuit, said, you have

25  not alleged that every member of the enterprise -- in that case

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 196 of 259
Motions to Dismiss

196

there were vendors who designed the website that, the allegation

was, Spirit Airlines had used as a fraud.  In that case, the

Court said you've not alleged that these vendors that you have

in the enterprise are aware of the website or were involved in

the concealment.  That's what distinguished Ray versus Spirit

Airlines from this case.

Here in the enterprise both members, we have alleged,

knew about the scheme and hid it, and those two members are

Takata and then the individual defendants.  We allege their

roles in the enterprise, and I could quote from them if you

want, we allege that they had a common purpose, which was to

make money through fraud, and that's what Mohawk requires.

Let me just give you a quote from Mohawk because in

reading all these RICO cases over the years, Your Honor --

THE COURT:  I thought I wasn't going to use Mohawk.

You want me to use Mohawk.

MR. PRIETO:  Well, because Mohawk is --

THE COURT:  It helps you.

MR. PRIETO:  It helps, but it treats RICO -- what

people don't understand about RICO is that the U.S. Supreme

Court and the Eleventh Circuit and this Court have always said

for years and years and years, despite defendants' argument to

the contrary, it should be liberally construed.  It is a

remedial statute.  That's what this Court said in In Re:

Managed Care.  That's what Justice Thomas, writing for the

Motions to Dismiss

1  Court, said in Bridge versus Phoenix Bond, and that's what

2  Mohawk said.  It's a remedial statute that should be interpreted

3  liberally.

4           This whole argument about the enterprise --

5           THE COURT:  You're almost done, right?

6           MR. PRIETO:  I'm almost done.

7           Paragraph 272 of the Volkswagen Complaint, quote:  "The

8  members of the Volkswagen/Takata RICO enterprise" -- and

9  again, two distinct entities in the enterprise -- "all

10  served a common purpose, to sell as many airbags and

11  vehicles containing such airbags as possible and thereby

12  maximized their revenue and profitability of the

13  Volkswagen/Takata RICO enterprise's members.  Members of the

14  Volkswagen/Takata RICO enterprise shared the bounty

15  generated by the enterprise, that is, by sharing the benefit

16  derived from increased sales revenue generated by the scheme

17  to defraud.  Each member of the Volkswagen/Takata RICO

18  enterprise benefited from the common purpose.

19           "The Volkswagen defendants sold or leased more class

20  vehicles and received more for those vehicles than they

21  would have otherwise had the scope and nature of the

22  inflator defect not been concealed.  Takata sold more

23  defective airbags to the Volkswagen defendants than they

24  would have otherwise had the scope and nature of the

25  inflator defect not been concealed."

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 198 of 259
Motions to Dismiss

198

1          Then we went through the pattern of racketeering

2    activity and we listed various mails and mailings and wires that

3    served as the pattern of racketeering activity, not one, not

4    two, but many.  So we have alleged a classic RICO.

5          Judge, I have been alleging RICO for a long time.  I

6    did it as a prosecutor back in the day.  I'm not even sure they

7    do RICO anymore at the U.S. Attorney's Office because it used to

8    be used when you wanted to enhance a defendant's sentence.

9    Given the Sentencing Guidelines these days, there's no need to

10   use RICO anymore to do that.  So we have alleged a classic RICO.

11         THE COURT:  Oh, you wonder whether there would be so

12   many civil RICO cases if we didn't have treble damages, don't

13   you?

14         MR. PRIETO:  I think if Your Honor steps back --

15         THE COURT:  That's for the professors and philosophers.

16         MR. PRIETO:  I think whenever we look at a RICO case,

17   if it's long-term wrongful conduct and there's underlying fraud

18   and it's been going on for a long time and there are people that

19   have been defrauded, that's the classic RICO case.

20         I think what happens is that you have people that --

21   you know, for example, especially when you're dealing with

22   competitors, and also, if you look at those cases that they've

23   cited to you, especially Almanza and American Dental, there you

24   basically have competitors that basically are doing the same

25   thing, they know they're doing the same thing.  They may be

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 199 of 259
Motions to Dismiss

199

1  doing something illegal, and again, in the antitrust context,

2  what is called conscious parallelism, conscious parallelism is

3  not unlawful.

4        And that means that, you know, if Chevron is competing

5  with Mobil Oil, they could drive around South Florida and find

6  out what the other one is charging and raise or lower their gas

7  prices accordingly, but that's perfectly fine in the marketplace

8  as long as they don't agree and talk to each other to lower or

9  raise prices.  If they don't talk to each other, it's called

10 conscious parallelism.

11       We have not alleged that.  We have alleged clearly,

12 more so than most people allege, that these folks, VW, Mercedes,

13 GM, and FCA, were talking specifically to Takata and they had

14 knowledge of the defect for many years and failed to disclose

15 it.

16       THE COURT:  All right.  Thank you.

17       Should we get new people to talk in case they want to

18 leave?

19       MR. FELLER:  I just want to respond for GM.

20       THE COURT:  Oh, I know.  I feel like I'm in a ping-pong

21 match.

22       MR. FELLER:  I promise I won't --

23       THE COURT:  It's a ping-pong match.  I'm not going to

24 rule from the bench.

25       MR. PRIETO:  Your Honor, do you want -- my partner,

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 200 of 259
Motions to Dismiss

200

 1  Mr. Weinshall, can address the group pleading.

 2         THE COURT:  You know what I would like is for some of

 3  the people who haven't spoken before, who signed up, who wish to

 4  say anything, can do so.  I think that's what's fair since it's

 5  close to five o'clock.

 6         There may not be anybody who's never spoken before who

 7  wants to speak.  I don't know.

 8         MR. MALLOW:  Your Honor, Michael Mallow on behalf of

 9  the Honda defendants.

10         What I want to talk to you about, Your Honor, is the

11  recyclers' RICO claim.

12         THE COURT:  Okay.

13         MR. MALLOW:  The primary argument in opposition to the

14  auto manufacturers' Motion to Dismiss is that Your Honor has

15  rule on this issue already when Your Honor addressed Takata's

16  Motion to Dismiss the consumer plaintiffs a number of years ago.

17  In fact, Your Honor, there was no distinction made in Takata's

18  motion between initial consumer purchasers and subsequent

19  consumer purchasers, and that is the issue that the plaintiffs

20  focus on in their opposition.

21         The truth is, Your Honor has not addressed a proximate

22  cause argument in the RICO context as it relates to plaintiffs

23  such as the recyclers.

24         Your Honor, Holmes, Hemi, Anza, Bridge, and the Second

25  Circuit case of Empire make it clear that for proximate cause

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 201 of 259
Motions to Dismiss

201

1  you need to have at least two things:  One, that there needs to

2  be a direct relation between the injury claimed and the

3  injurious conduct or the conduct of the RICO enterprise.  The

4  second thing is there can be no more directly injured victims.

5  And the reason that that proximate cause construction is what it

6  is, is that the Supreme Court is concerned about multiplicities

7  of recoveries for the same alleged conduct.

8        So let's look at the recyclers' claims.  The recyclers

9  claim that they have been injured not because necessarily of the

10  misrepresentations or omissions that they contend that the

11  defendants engaged in as part of the RICO enterprise.  In fact,

12  footnote 12 of their opposition brief makes that emphatically

13  clear.  They did not rely on misrepresentations and omissions.

14  The injury that the recyclers suffered was as a result of the

15  cessation of secondary sales of their products as a result of

16  the recall.

17        In other words, the recyclers were able to sell

18  recycled airbags up until the recalls weren't announced, and at

19  that point, sales were prohibited and the recyclers were left

20  with airbags that they had purchased as a result of purchasing

21  vehicles as is, whether it be from auctions, insurance auctions,

22  or what have you.

23        In other words, Your Honor, the recycler plaintiffs

24  didn't get injured as a result of the RICO conduct.  They were

25  actually directly benefiting from the RICO conduct because so

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 202 of 259
Motions to Dismiss

202

1  long as no information was coming out, according to the

2  allegations in the Complaint, so long as no information was

3  coming out from Takata or the auto manufacturers suggesting that

4  the airbags should be recalled, the recyclers were able to

5  recover those airbags and sell them to consumers.  So there is

6  no direct relationship between what the RICO harm is and the

7  injury that they suffered.  In fact, it's an inverse

8  relationship.

9       Once the, quote, "true information" came out about the

10  inflators that led to the recall, it's at that point that they

11  become or they claim to have become injured.  That's point

12  number one.

13       Point number two is, of course, there is a more direct

14  injured party, assuming anybody was injured, and that's the

15  initial purchasers of the vehicles who the recycler plaintiffs

16  themselves state, and this is in their opposition brief and in

17  their Complaints, as a result of the misrepresentations and

18  omissions, consumers purchased the vehicles and it's the

19  consumers who purchased the vehicles, who purchased them either

20  at an inflated price, according to the plaintiffs, or lost

21  value, according to the plaintiffs.  The initial purchasers, and

22  in this case all of the consumer plaintiffs, actually did bring

23  suit.  So they, Your Honor, are the more injured parties, and

24  because you have these more injured parties, the recyclers lack

25  proximate cause to bring the same claims.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 203 of 259
Motions to Dismiss

203

1          If there's any doubt that they are the same claims,

2     just look at the Complaint and, Your Honor, look at the

3     Settlement Agreements that have been executed in this case.

4     It's the same activity, leading to the same type of injury,

5     according to the recyclers, for which they are seeking the same

6     type of damage, either lost value or benefit of the bargain.

7          The last point, Your Honor, is, as the Supreme Court

8     made clear, the reason we have this proximate cause requirement

9     is to avoid a multiplicity of payments on the same claims.  Your

10    Honor, the Settlement Agreements make clear all of the vehicles

11    that the recyclers seek recovery on are the same vehicles that

12    the consumer plaintiffs pursued their recoveries on.

13         To the extent that the recyclers are seeking payment

14    from the defendants, they are seeking payment from defendants

15    again for the same vehicles, for the same conduct, and for the

16    same types of damages.

17         Your Honor, we have looked and we have found not a

18    single case where recyclers have sued auto manufacturers as a

19    result of having recalled parts in vehicles that they had

20    purchased as is.  There's never been a case like that, and for

21    good reason.  The case doesn't make any sense.

22         The recyclers purchased their products, the vehicles,

23    on spec, as is, to recover what they can recover; and if a part

24    is subject to a recall subsequent to their purchase, that's just

25    the cost of doing business.  And they cannot turn around as

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 204 of 259
Motions to Dismiss

204

1    remote purchasers, nonusers of vehicles, and say to the auto

2    manufacturers, you need to pay me now because I bought a car on

3    spec, as is, to sell used parts and now I can't.

4          Proximate cause requirement directly addresses that and

5    that's why the RICO claims pursued by the recyclers have to be

6    dismissed.

7          Thank you, Your Honor.

8          THE COURT:  Thank you.

9          Who wants to respond to the recyclers?

10         MR. PRIETO:  I will respond briefly.  Your Honor, this

11   whole issue of proximate cause is only being raised as to RICO

12   because RICO has something that's very ordinary, which is a

13   proximate cause requirement.  This is very easy.  They failed to

14   disclose a defect for years and years.  The recyclers bought

15   these cars that they then would sell the parts, including the

16   inflators and airbags, to others.  When they bought these cars

17   they didn't know that they had this defect.  So these recyclers,

18   these mom-and-pops, which are basically mom-and-pops all over

19   the country, were never told that these cars had a defect in the

20   inflators.  They bought the car to then sell the inflator and

21   they basically, literally and figuratively, got caught holding

22   the bag because they couldn't sell it.

23         So where is the lack of proximate cause when somebody

24   omits or conceals a defect, you buy a product as a result of

25   that defect, and then you can't resell the product, which is

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 205 of 259
Motions to Dismiss

205

 1   your business?  So I don't know where this proximate cause

 2   argument is coming from.

 3         If there's an issue about damages and what are their

 4   damages, that is totally separate.  The damages suffered by the

 5   recyclers are separate from the damages suffered by the

 6   consumer.  The recyclers had bought a car and now they can't

 7   resell that inflator in their car, like they're stuck with it,

 8   and they paid for a car that included that inflator.  That's a

 9   damage issue; that's not a proximate cause issue.

10         THE COURT:  But the party that committed the wrong is

11   who?

12         MR. PRIETO:  It's the same, the automaker.

13         THE COURT:  Not Takata.

14         MR. PRIETO:  Correct, because they failed to

15   disclose --

16         THE COURT:  Because there is no connection to Takata.

17         MR. PRIETO:  Well, in terms of RICO.  I mean, they are

18   both -- they're part of the enterprise, but they're not

19   defendants.

20         The other thing, too, is that the settlements that we

21   reached with the consumers excluded the recyclers, had nothing

22   to do with -- they were carved out.  That's always been the

23   intention because we decided to pursue the recyclers separately

24   on a separate track.  In fact, you told us split your Complaint,

25   consumers and recyclers, so that we can go on two separate

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 206 of 259
Motions to Dismiss

206

1 tracks.  So they were excluded.

2          I'm not sure what he means, that these are the same

3 vehicles.  You know, I guess -- it can't be the vehicles owned

4 by the current consumers.  I guess what he's saying is that if a

5 consumer sells the car that eventually winds up in a recycler,

6 that maybe that's the same vehicle, but that would be a small

7 portion of what he's alluding to.

8          But the bottom line is, we've alleged easily proximate

9 cause under RICO and that this is really not a proximate cause

10 issue; it's a damage issue that should be left for another day.

11          THE COURT:  How is that going to be resolved

12 eventually?

13          MR. PRIETO:  We've always thought that that's an easier

14 case to resolve, Your Honor, in terms of -- you mean the

15 resolution?

16          THE COURT:  Yeah.

17          MR. PRIETO:  We've not really had the opportunity,

18 because we've been doing a lot of other things, to try to

19 resolve that, but we --

20          THE COURT:  If I granted a six-month stay, you could do

21 it.

22          MR. PRIETO:  But I think proximate cause -- I mean,

23 it's a red herring.  It's alleged and the issue really is one of

24 damages and how you quantify it and that has nothing to do with

25 proximate cause.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 207 of 259
Motions to Dismiss

207

 1            THE COURT:  In the recycling there's also the argument

 2     that's made again on the Plea Agreement.  Does that have

 3     anything to do with it?

 4            MR. PRIETO:  It's the same argument.

 5            THE COURT:  You know, there was a case -- and I don't

 6     know if I asked you.  That case, the General Motors case,

 7     ignition, what impact does that case have?

 8            MR. PRIETO:  You know, I think a couple of things:

 9     One --

10            THE COURT:  You don't like that case.

11            MR. PRIETO:  The GM ignition switch -- are you talking

12     about the plea?

13            THE COURT:  Yeah.

14            MR. PRIETO:  The charge?

15            THE COURT:  Yeah.

16            MR. PRIETO:  Well, I mean, GM was charged with crimes,

17     not only crimes, but they're charged basically with what we have

18     alleged here in a different context, which is a wire fraud or a

19     mail fraud.

20            THE COURT:  What happened?

21            MR. PRIETO:  What happened is that just like -- I guess

22     analogous, for years and year and years they hid an ignition

23     switch defect and that ignition switch defect -- what would

24     happen is, as you're driving on the highway the ignition switch

25     would go from the run position to the off position, and would

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 208 of 259
Motions to Dismiss

208

1   happen is that you could not brake and your airbags would not

2   work.  The deaths in that case were a lot more than the deaths

3   in this case.  I mean, there were hundreds of people, if I

4   remember correctly, because I am involved in the MDL, but I

5   wasn't involved in anything else.  There were a lot of deaths as

6   a result of that case, so there was a deferred prosecution

7   agreement.

8          THE COURT:  And what happened to the civil case?

9          MR. PRIETO:  The civil case is still ongoing.

10          THE COURT:  But wasn't there a denial?  Wasn't there

11   the granting -- didn't the district judge find that the damages

12   were incompatible with RICO, speculative, et cetera?

13          MR. PRIETO:  No.  What happened in that case --

14          THE COURT:  Or words like that, though.

15          MR. PRIETO:  As to another issue.  What happened in

16   that case, there was originally RICO alleged in that case, but

17   the enterprise consisted of GM and the law firm of King &

18   Spalding, and the theory was that the law firm who handled the

19   personal injury claims had conspired with GM to conceal the

20   defect, and the Court said that's not normal because law firms

21   get hired to defend defendants in exactly those kinds of claims.

22   So the Court denied the RICO claim and dismissed it because one

23   of the members of the enterprise, in fact I think the only

24   member other than GM in the enterprise was King & Spalding,

25   which is a law firm.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 209 of 259
Motions to Dismiss

209

 1          THE COURT:  And that's what makes it different from

 2   this case?

 3          MR. PRIETO:  We have two members of the enterprise that

 4   knew of the scheme and pushed it for years.

 5          THE COURT:  All right.  Since we were at it, I thought

 6   I would ask.  I forgot to ask it before.

 7          MR. FELLER:  Your Honor --

 8          THE COURT:  Anyone else who hasn't been heard who

 9   wishes to be heard?

10          The sun -- I've got some of that closed, so it's not

11   that late, but the sun kind of blinds you.  That's why it's

12   great to have your witnesses come in right around five o'clock

13   in the afternoon to make sure they see the light.  It really

14   is very -- the jury sees that.  So whenever we go to trial,

15   remember that.

16          Okay.  Who do we have on behalf of whom and on what

17   issue?

18          MR. WITTIE:  Your Honor, my name is Vance Wittie on

19   behalf of the Nissan defendants, and my issue is something

20   completely different, as they used to say on Monty Python, it is

21   the Lanham Act.

22          THE COURT:  The Lanham Act.

23          MR. WITTIE:  This is something completely different

24   because it occurs only in the recycler claims and has not

25   previously been the subject of any order by this Court.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 210 of 259
Motions to Dismiss

210

1          THE COURT:  So you've got an open-minded Judge, an

2    open-minded Judge on this, right?  What do you want me to do?

3          MR. WITTIE:  Yours may be open, mine is merely empty.

4          The Lanham Act, Your Honor, is a Federal statute

5    directed to unfair competition.  It is not a consumer protection

6    statute, and it provides no remedies for disappointed

7    purchasers.  There are several different ways that the Act can

8    be violated.  The only way that is alleged in this case is

9    through alleged false advertising.

10         Now, it's important to note that the false advertising

11   prong is just that, it requires the identification of particular

12   statements that are false and misleading and does not create a

13   duty to disclose information, nor does it make an omission

14   actionable except where there are representations that are made

15   that are rendered misleading as a result of that omission.  So

16   it's necessary in every false advertising case under the Lanham

17   Act to look at specific advertising to determine whether it was

18   false or misleading.

19         Basically, there are three fatal flaws with the

20   recyclers' Lanham Act claims in this case.  The first is the

21   failure to identify specific actionable false advertising.  All

22   of the advertising that they refer to in the Complaint are

23   excessively generalized or could constitute puffery.

24         THE COURT:  Which count are we talking about?

25         MR. WITTIE:  Which count?

09-50002-mg    Doc 8576-1    Filed 01/04/22    Entered 01/04/22 12:35:21    12-11-18
Transcript of MDL Hearing    Pg 211 of 259
Motions to Dismiss

211

 1              THE COURT:  Yeah.

 2              MR. WITTIE:  I don't know what count it is in the

 3    Complaint, Your Honor.

 4              THE COURT:  Well, that kind of helps me.  21?

 5              MR. DRUBEL:  Yes, Your Honor, it's Count 21.

 6              THE COURT:  21.  Okay.  So that way we look at that,

 7    and you're going to tell me what it is.

 8              MR. WITTIE:  And I don't intend to go through --

 9              THE COURT:  Now, this doesn't just apply to your

10    client, right?

11              MR. WITTIE:  Correct.

12              THE COURT:  But you represent all of them?

13              MR. WITTIE:  I am making argument on behalf of all of

14    the automotive defendants as it relates to --

15              THE COURT:  Which is everybody?

16              MR. WITTIE:  Which is everybody.

17              THE COURT:  Okay.  Not just Nissan.  Go ahead.

18              MR. WITTIE:  But it's necessary ultimately to identify

19    the alleged advertising by each of the defendants that is

20    identified in the Complaint.  I'm not going to, obviously, go

21    through all of those.  We believe that they are excessively

22    general, they're not actionable representations of fact that are

23    necessary to state a claim under the --

24              THE COURT:  What are the representations there in Count

25    21?

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 212 of 259
Motions to Dismiss

212

1          MR. WITTIE:  Well, there are numerous ones.  You know,

2    they go through each defendant.  For example, for my client --

3          THE COURT:  Nissan, take that one.

4          MR. WITTIE:  Nissan, there's a representation that

5    there is a brochure for some vehicle back in 2005, which says,

6    in essence, that these vehicles contain airbags, next generation

7    airbags, and that airbags are useful in helping safeguard you in

8    the event of a crash, and then there is a website statement from

9    2015, which is several years after the last of the vehicles

10   involved in this case were sold and the website statement is

11   simply a statement to the effect that Nissan has a commitment to

12   safety as a corporation and that's it.

13         THE COURT:  And the statements regarding the others,

14   Subaru, Volkswagen, Honda, et cetera, are similar?

15         MR. WITTIE:  Of a similar vein, yes, Your Honor, that's

16   correct.

17         THE COURT:  General, we have got airbags, airbags are

18   safe; or they don't even go that far.

19         MR. WITTIE:  We believe in safety here at Acme Motors,

20   it's literally that kind of level of generality in the

21   statements that have been identified.

22         THE COURT:  Who's going to speak on the Lanham Act for

23   the plaintiffs?

24         MR. DRUBEL:  I will, Your Honor.

25         THE COURT:  Okay.  Why don't you grab that microphone

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 213 of 259
Motions to Dismiss

213

 1  so we can deal with that.  Seems pretty -- I'm sorry.  State

 2  your name and who you represent.

 3          MR. DRUBEL:  Richard Drubel representing the

 4  plaintiffs, Your Honor.

 5          THE COURT:  Okay.  Tell me.  It seems pretty general,

 6  don't you agree?

 7          MR. DRUBEL:  Yeah.  Although it's general, but it's --

 8          THE COURT:  So I should grant it.

 9          MR. DRUBEL:  No, Your Honor.

10          THE COURT:  Okay.

11          MR. DRUBEL:  I mean, the fact that -- what my colleague

12  overlooks is the fact that, I will say, while every defendant

13  makes the statement in its advertising and its brochures to

14  consumers that it has airbags, what they omit to say, no

15  defendant has disclosed that those airbags could explode and

16  kill the main occupants.  So I think it's very --

17          THE COURT:  Probably not a good selling point.

18          MR. DRUBEL:  Not a very good selling point, Your Honor.

19  As Your Honor described it in 2016, it would be as if the

20  defendants put grenades in their airbags that may or may not

21  explode on impact.  But that omission is key because the Lanham

22  Act says if a defendant misrepresents the quality or

23  characteristics of its product, it may be liable for false

24  advertising and I think it --

25          THE COURT:  You don't think that's stretching the

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 214 of 259
Motions to Dismiss

214

 1 | Lanham Act?

 2 |        MR. DRUBEL:  No, Your Honor.

 3 |        THE COURT:  No?

 4 |        MR. DRUBEL:  I think that omission is a huge, huge

 5 | misrepresentation.  When somebody says, here, buy my car, it's

 6 | got airbags, doesn't tell you that those airbags, instead of

 7 | saving your life, may kill you or the occupants of your vehicle

 8 | or put out your eye --

 9 |        THE COURT:  So they would have to say it's got airbags

10 | that are unsafe?

11 |        MR. DRUBEL:  I don't think there's any way they could

12 | honestly market their vehicles with airbags that will kill the

13 | occupants.

14 |        THE COURT:  So if they didn't say anything about the

15 | airbags, they would be okay.

16 |        MR. DRUBEL:  If they didn't say anything about the

17 | airbags, Your Honor, it would be a harder case for us, but each

18 | one of them --

19 |        THE COURT:  Each one has said something about airbags.

20 |        MR. DRUBEL:  Absolutely.  And if I could draw Your

21 | Honor's attention to paragraph 847 of the recyclers' Complaint,

22 | we go through for each defendant and describe what they say,

23 | some examples of what they've said.  But the common denominator

24 | is, the easiest point of decision on this is, they all say they

25 | had airbags, they never say they could explode and kill you.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21    12-11-18
Transcript of MDL Hearing   Pg 215 of 259
Motions to Dismiss

215

 1  That misrepresents the quality and characteristics of their

 2  product.

 3          THE COURT:  You would agree that if they didn't say

 4  airbags, the general statements about it's a safe car or we

 5  believe in safety, that would not be enough?

 6          MR. DRUBEL:  That probably would not be.  That, to me,

 7  tends towards puffery.

 8          THE COURT:  Okay.  So the issue is what is mentioned

 9  about the airbags.  Agreed?

10          MR. WITTIE:  Yes, Your Honor.

11          THE COURT:  You don't think that's enough.

12          MR. WITTIE:  Just saying we have airbags is not a

13  statement --

14          THE COURT:  That they are good airbags or defective

15  airbags.

16          MR. WITTIE:  It's not specific and testable enough for

17  making a claim about the ability to perform any particular type

18  of accident to be actionable under the Lanham Act.  This is not

19  a consumer protection statute where they can claim based upon a

20  pure omission.

21          THE COURT:  And which case is where I hang my hat on?

22          MR. WITTIE:  Lexmark, Your Honor, that's a U. S.

23  Supreme Court case from 2014.

24          THE COURT:  And that's the one that helps in a Lanham

25  Act case?

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 216 of 259
Motions to Dismiss

216

1              MR. WITTIE:  A disappointed purchaser is not within the

2     Act's zone of interest.

3              THE COURT:  And was there false advertisement there?

4              MR. WITTIE:  Yes, Your Honor.

5              THE COURT:  What was it?

6              MR. WITTIE:  It was advertising about toner cartridges

7     and the ability or the inability of people in the secondary

8     market to also sell toner cartridges that this printer company

9     was trying to sell.

10             THE COURT:  So it wasn't anything that would have

11    anything to do with safety.

12             MR. WITTIE:  No, it was not a safety issue in that case

13    at all.

14             THE COURT:  But that doesn't make any difference,

15    though, does it, that this one involved safety?

16             MR. WITTIE:  No, it doesn't as far as what the

17    requirement of the statute are.  I mean, there's never been even

18    before Lexmark --

19             THE COURT:  But it's kind of an unusual thing, right,

20    because you don't usually have Lanham Act cases with a defective

21    unsafe product, right, or do you?

22             MR. WITTIE:  No, you don't.

23             THE COURT:  Okay.  Do we have a Lanham Act case with

24    defective unsafe products where the defendant of whatever

25    product it is did not disclose that it was an unsafe product,

Motions to Dismiss

1   and as a result, it was a violation of the Lanham Act?

2           MR. DRUBEL:  I don't have any such case, Your Honor

3           THE COURT:  So I'd be the first one.

4           MR. DRUBEL:  I think you're the first, Your Honor, to

5   have a defendant who advertises its vehicles as having airbags

6   which in fact, instead of saving people, kill people, so --

7           THE COURT:  Of course, you have to prove that they knew

8   and that's related to the other issues.

9           MR. DRUBEL:  Yeah.  So although the Lanham Act doesn't

10  explicitly have a knowledge requirement, there is -- I mean, the

11  essence of a Lanham Act claim is that the defendant has

12  misrepresented its product.

13          THE COURT:  He has to know that it was false obviously.

14          MR. DRUBEL:  So, I mean, I guess you could have a

15  situation where the defendant closed its eyes, but that would

16  be, I think -- probably that kind of recklessness would be the

17  equivalent of knowledge.

18          I would point out, Your Honor, that while my colleague

19  makes the point -- and I agree with him, it's not a consumer

20  protection statute, but my clients, the recyclers, are not

21  consumers, and you don't have to take my word for it because the

22  defendants admitted it.  They state it in their brief.  They say

23  in their reply brief at Page 1:  "Recyclers are not consumers

24  who purchased vehicles to drive."  And we don't.  So the fact

25  that it's not a consumer protection statute is irrelevant.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 218 of 259
Motions to Dismiss

218

1          To come within the zone of interest of false

2  advertising under the Lanham Act, Your Honor, a plaintiff has to

3  alleged an injury to a commercial interest in reputation or

4  sales.  What my clients, the recyclers, have alleged is an

5  injury to sales.  They are claiming lost sales because they

6  cannot sell by law the airbags that have proved to be dangerous

7  and fatally defective.

8          THE COURT:  It's a clever argument.  You want me to

9  dismiss that clever argument, huh?

10          MR. WITTIE:  It's too clever by half, Your Honor.

11          An interest in sales is not in itself sufficient to

12  state a claim and put you under the interest of the Lanham Act

13  if you are claiming as a disappointed purchaser.  Whether they

14  are an initial consumer or buying to resell, their ultimate

15  claim is that we bought these airbags or we bought vehicles that

16  contain airbags hoping that we could resell them, speculating

17  that we could resell them, and we can't.  That doesn't put you

18  in the Lanham Act zone of interest alone.  That's what the

19  Locust Telecommunications case that we cite in our brief talks

20  about.  If you're just suing as a disappointed consumer and not

21  as a result of some anti-competitive false advertising -- and

22  that's where the distinction that they fail to make is -- the

23  Lanham Act protects you from faulty competition.

24          The archetypical case in false advertising is I falsely

25  disparage your product, say it's not a good product, you

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 219 of 259
Motions to Dismiss

219

1    shouldn't buy it; or I make a representation about my own

2    competitive product which is false and it drives away customers

3    for the plaintiffs.  That's what a Lanham Act false advertising

4    case is, but that's not what these -- that's not the situation

5    that these purchasers are in.

6         They have this multi-step approach that they try to get

7    their proximate causation by.  In fact, that alone is reason

8    enough to dismiss the case.  They say that there was some

9    initial false advertising which caused consumers, not

10   themselves, to purchase these products, to purchase these

11   vehicles, and that ultimately, over a long period of time, a

12   secondary market in used airbag components developed which they

13   then chose to speculate in by buying vehicles which contained

14   these airbag components, but that ultimately, as a result of the

15   fact that these vehicles were recalled and the airbags were no

16   longer saleable, that they lost business.  They're not suing us

17   because we made a representation which drove away their

18   business, which is what the Lanham Act zone of interest is.  If

19   anything --

20        THE COURT:  And it's exclusively that?  They're pushing

21   the envelope and they can't?

22        MR. WITTIE:  They can't.  They can't do that without

23   turning this into a general statute for disappointed purchasers.

24        THE COURT:  All right.  I don't know.

25        MR. WITTIE:  What is unique about their particular

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 220 of 259
Motions to Dismiss

220

1  claim here, and I don't think that we've seen this in any other

2  Lanham Act case that I'm aware of, is they're seeking to recover

3  profits for lost sales occurring in a market that they say

4  should never have existed.  They say you should never -- if we

5  had never engaged in the advertising, then a market would not

6  have existed for these parts that they would have tried to

7  fulfill.

8       So if you take away the Lanham Act violation, you have

9  a situation where they have no investment in these vehicles,

10  they have no attempts to make sales in these vehicles, and if

11  that's the case, then the advertising actually promoted their

12  sales, if anything, and what causes them damage is the recall

13  and the inability for them to make further sales.  It's not the

14  false advertising, and that's where you have a cutoff in the

15  causation.  But even aside from the causation, you have the zone

16  of interest problem.

17       THE COURT:  All right.  I'll give you the last word.

18       MR. DRUBEL:  Your Honor, two points.  One is, that

19  argument kind of reminds me of somebody -- if I falsely claim

20  that shares of stock are worth more than they really are and

21  when the truth comes out, people lose money, and my defense is,

22  hold on, it wasn't me who caused your loss, it was the truth, it

23  wasn't me.  I mean, you know, you were making money while you

24  were trading in stock that I falsely inflated the value of.  I

25  mean, the answer here is not that their misrepresentations about

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 221 of 259
Motions to Dismiss

221

1    their product helped us.  The fact is that when the truth

2    inevitably came out and the market collapsed, we were, as

3    Mr. Prieto said, literally left holding the bag and lost sales,

4    which are imminently compensable under the Lanham Act.

5          The Lanham Act -- and I hear my colleague saying, well,

6    you know, the paradigm case in the Lanham Act is where you

7    divert customers, but that's not the only type of case under the

8    Lanham Act.

9          In Lexmark itself, for example, the Supreme Court

10    sustained a Lanham Act claim by a supplier of a defendant's

11    competitor, not by a competitor itself, but by the supplier of

12    the defendant's competitor.

13          In the Syngenta case that we cite in our brief, Your

14    Honor, a District of Kansas case involving corn purchasers and

15    the contamination of the corn market by a producer of

16    genetically modified corn that caused the market to collapse for

17    a period of time, the District Court in that case largely upheld

18    Lanham Act claims.

19          The Lexmark case that my colleague cited to the Court,

20    and we agree, is the governing case on Lanham Act claims, it's

21    probably the most important case on private Lanham Act claims,

22    says at U.S. 136:

23          "It is a mistake to infer that because the Lanham Act

24       treats false advertising as a form of unfair competition, it

25       can protect only false advertisers' direct competitors."

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 222 of 259
Motions to Dismiss

222

1          In other words, unfair competition does not require

2    that only competitors can bring cases.  So in this case, there's

3    absolutely no reason why the recyclers can't bring a good Lanham

4    Act claim, and we have done so.  We've alleged that we're within

5    the zone of interest of the Lanham Act and that the injury

6    proximately caused our losses.  Nothing more is required.

7          THE COURT:  All right.

8          MR. DRUBEL:  Thank you, Your Honor.

9          THE COURT:  Thank you.

10          Anyone else who signed up who wishes to be heard, who

11    has not already left the war of attrition here?

12          MR. FELLER:  Your Honor, two points very, very briefly.

13          THE COURT:  You know what you have to do.

14          MR. FELLER:  Lenny Feller for GM, second set of

15    attorneys.  We're actually both from the same firm, so just the

16    second attorney.

17          Your Honor, two very brief points because these are, in

18    my view, misrepresentations that just need to be corrected.

19          First, General Motors ignition switch litigation and

20    Mr. Prieto admitted --

21          THE COURT:  That's that Southern District of New York

22    case?

23          MR. FELLER:  Southern District of New York, Judge Jesse

24    Furman, Your Honor, and I think the question you were trying to

25    get to -- first of all, I think you know there's a problem when

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 223 of 259
Motions to Dismiss

223

1   Mr. Prieto starts talking about allegations in a different case

2   that have nothing to do with this case whatsoever.  But I think

3   the point Your Honor was trying to --

4            THE COURT:  I was the one who asked the question.

5            MR. FELLER:  Oh, no, no, no, before you asked it, he

6   talked about it before that and started talking about how VW had

7   their diesel issue and General Motors so --

8            THE COURT:  Well, you know, that's kind of like to come

9   back.  No problem.

10           MR. FELLER:  Your Honor, look, the point I want to make

11  is, there was a civil RICO claim in that case.  That case was

12  dismissed or that claim was dismissed.

13           THE COURT:  And whatever happened on appeal?

14           MR. FELLER:  Well, the case is still going on, so that

15  hasn't been appealed.

16           THE COURT:  So we'll never know.

17           MR. FELLER:  Well, but we know at the District Court

18  level the RICO claim was dismissed.

19           THE COURT:  But we don't know if he's right or not.

20           MR. FELLER:  Well, we know that there's only one

21  opinion from a District Court judge that says he's wrong.

22           THE COURT:  Okay.

23           MR. FELLER:  Right?  I can't tell you what the Second

24  Circuit would say, but I can tell you --

25           THE COURT:  Okay.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 224 of 259
Motions to Dismiss

224

1          MR. FELLER:  And the issue there was not King &

2     Spalding or the law firm.  The reason that the RICO claim was

3     dismissed in that case was based on the damages claim, which is

4     the exact same damages claim in this case which is -- plaintiffs

5     have three damages theories, right?  One is we paid too much or

6     never would have bought it; two is we have diminished value; and

7     three, we have out-of-pocket expenses.  Right?

8          So the first two are what was addressed in the ignition

9          switch litigation, and it's 2016 Westlaw 3920353 at star 18,

10         quote, "rejected the contention that consumers could bring a

11         RICO claim for harm to property based on the benefit of the

12         bargain theory, defect theory pressed here."

13         What Judge Furman held in ignition switch is that you

14    cannot, under RICO, claim damages -- if your damages claim is

15    only that you paid too much or if it's only that your value is

16    diminished, that is not a concrete injury for RICO purposes.

17    And so if the Court --

18         THE COURT:  Of course, I kind of disagreed with that in

19    a prior ruling.

20         MR. FELLER:  You did.  You did.  Well, I don't know

21    that you did.  In your RICO --

22         THE COURT:  I did it before that case.

23         MR. FELLER:  One, you did it before that case and it's

24    not entirely clear that you disagreed with it because you said,

25    plaintiffs have three theories and I'm going to let it go

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 225 of 259
Motions to Dismiss

225

1  forward.  So one way to read your prior order consistent with

2  Judge Furman --

3          THE COURT:  Okay.

4          MR. FELLER:  -- is the third theory, what you allowed

5  to go forward was the third theory of out-of-pocket expenses.

6  Now, the problem here is that the third theory doesn't exist.

7  In the GM Complaint we have 32 plaintiffs, not a single one of

8  them alleges out-of-pocket expenses.

9          Now, part of the reason for that is that 31 out of the

10  32 have GMT900 vehicles that Ms. Smith was talking about that

11  haven't been recalled, so you can't have out-of-pocket expenses.

12  And the 32nd, which I'll get to as my second point in a minute,

13  is a different recall altogether, it has nothing to do with

14  ammonium nitrate, and alleges I had the recall repair performed

15  and that's it.  Okay?

16          THE COURT:  That case I know is from 2016, the opinion,

17  but the case is older than that.

18          MR. FELLER:  It was filed in 2014, Your Honor, and

19  unlike Mr. Prieto, I have been involved in that case and

20  Ms. Cabraser, who was here before, is involved in that case.

21          THE COURT:  And what's happening to that case?

22          MR. FELLER:  So, Your Honor, there's a personal injury

23  track, there's an economic loss track.  There have been -- you

24  know, there were, I think, at some point on the order of 3,000

25  plus personal injury claims.  Many have been resolved; many have

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 226 of 259
Motions to Dismiss

226

1    been dismissed.   --

2              THE COURT:   So we'll never know or we won't know for

3    years what the Second Circuit thinks about that issue.

4              MR. FELLER:   If the RICO claim is appealed to the

5    Second Circuit, you're right.   But, Your Honor, the weight of

6    authority -- and among the opinions Judge Furman looks at is

7    your opinion in this case, so there's a discussion of it.   And

8    again, Courts can obviously disagree, but the weight of

9    authority is that if you in a very generic sense -- and all 32

10   of these plaintiffs in our Complaint, it's copied and pasted,

11   it's literally the same words copied and pasted 32 times; this

12   person paid too much, the value of this person's vehicle is

13   diminished -- that if that's all you have, if you don't have an

14   economic analysis, if you don't have a description of why it's

15   diminished, if you don't have a concrete explanation of the

16   specific dollar amount, you've lost, that's not enough, again,

17   for RICO.   It may be enough for something else, but not for

18   RICO.   That's point one.

19             Point two, Your Honor:   And, Your Honor, again, this is

20   where we just get into territory where there are objective and

21   verifiable facts in the public domain and it is not fair for

22   plaintiffs to come to this Court and say something that is

23   demonstrably false and say, well, you should believe it because

24   it's in my Complaint for a Motion to Dismiss.

25             Mr. Prieto got up here and said that there was an

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 227 of 259
Motions to Dismiss

227

1  incident in 2013 or 2014, where a GM Takata airbag ruptured

2  because of ammonium nitrate, because of this issue, and GM

3  should have known.  Your Honor, that is demonstrably and

4  verifiably false.  It is attached as Exhibit 1 to our reply

5  brief.  There was a lawsuit about that incident.  A woman named

6  Brandi Owens was injured, in fact lost an eye.  There was also a

7  recall.  It's Recall Number 14V372 by NHTSA, by NHTSA.  So,

8  again, this has been disclosed, this has been litigated, this

9  has been resolved.

10      There was a manufacturing issue, happened to be Takata

11  airbags, where a part called an outer baffle and the wrong part

12  was used, and as a result of that, over something like a

13  two-month period there was a recall for those airbags.  And

14  again, that's something that's gone through NHTSA, that's gone

15  through litigation in another case, and we know beyond doubt

16  what the cause of that incident was.

17      So for Mr. Prieto to come in here and say, oh, well, GM

18  should have known about it, that case had nothing to do with

19  ammonium nitrate.  And again, we've attached the Complaint and

20  the recall and these are all public documents available to the

21  Court.

22      Thank you.

23      THE COURT:  All right.  I think I have heard enough,

24  don't you?  Look at that.  It's already 5:30.  I know I made you

25  wait until the afternoon.  I'm sure there are so many things you

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 228 of 259
Motions to Dismiss

228

1  all want to say.

2         Remember, on a Motion to Dismiss I have to look at,

3  what do they say, the four corners of the Complaint.  Sometimes

4  you can go a little bit beyond.  And I let you argue some of the

5  things because it's kind of a duel, and that's fine.  You've

6  waited long enough and I feel guilty that it takes so long and

7  I'm not as efficient as I should be.  But we can't keep on

8  having the ping-pong because then we'll never be done.

9         MR. PRIETO:  Your Honor, I don't like when they tell

10  the Court that I have misrepresented or I have said a falsity to

11  the Court.  I just have two points on that because I take it as

12  a personal, frankly, comment on me.  Number one --

13         THE COURT:  Oh, you know, nothing in court should be

14  personal, it's always business.  Okay?

15         MR. PRIETO:  I've never accused them of misrepresenting

16  anything and in the first two --

17         THE COURT:  I know, but you threw a couple of things at

18  some of the other defendants.

19         MR. PRIETO:  That's fine, but I never accused counsel

20  of misrepresenting.  I just have two very minor points.

21         THE COURT:  Okay.

22         MR. PRIETO:  Number one, the GM ignition switch case,

23  he said I misrepresented --

24         THE COURT:  Shouldn't have even asked that.  I don't

25  know why I did.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 229 of 259
Motions to Dismiss

229

1          MR. PRIETO:  What I said was that one of the issues

2     that the Court said RICO did not exist was the enterprise and

3     that was true.  There were two findings in that, at least two.

4     One:  There was no enterprise because King & Spalding was not a

5     knowing member of the enterprise.  They were just basically

6     helping GM defend these PI cases.  So that was number one.  So

7     clearly, that was one of the findings, that there was no

8     enterprise.

9          There was also a finding that Mr. Feller alluded to

10    which said that the overpayment in that context, according to

11    Second Circuit law, was not appropriate under RICO.

12         You alluded to that.  In Managed Care you rejected that

13    strict interpretation of RICO, citing the reader --

14         THE COURT:  I know, but this case came way after that.

15         MR. PRIETO:  Correct, and in this case you rejected it

16    again, and you are not an outlier.

17         THE COURT:  This case came after that.

18         MR. PRIETO:  Correct, but other cases have gone against

19    GM ignition switch.  You are not an outlier.  I'm just going to

20    reference the pages, Pages 70 through 71.  There are several

21    cases that agree with your interpretation of the RICO injury

22    because it basically says that when you lose money by

23    overpaying, that's an injury to property which RICO prohibits

24    and makes unlawful.

25         THE COURT:  The only way to fix these things though --

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 230 of 259
Motions to Dismiss

230

1  the problem is, when a Motion to Dismiss is denied, it hardly

2  ever gets appealed because these cases take so long, things

3  settle, and we have great district judges who rule.  Sometimes

4  the best way to get good rulings is to grant the Motion to

5  Dismiss and that way it goes up on appeal and then you have

6  something good one way or another, because it could go either

7  way.  I agree with you all.

8          You've all made good arguments.  I have learned a lot.

9  Some of my colleagues disagree with oral arguments.  I find oral

10 arguments extremely interesting, and at the District Court it

11 makes it easier because I don't have to give you only 15

12 minutes, though I say that and look what happens, we're here

13 until sundown.  But I'm going to let you go before it gets dark.

14         MR. MALLOW:  Your Honor, before you do, I apologize,

15 Michael Mallow.  This is not related to the Motion to Dismiss.

16         THE COURT:  It is related to what?

17         MR. MALLOW:  It's related to a ruling Your Honor made

18 earlier this morning about the Protective Order as it related to

19 Daimler Chrysler and the Takata emails related to Daimler

20 Chrysler.  Your Honor indicated you were modifying the

21 Protective Order to remove the confidentiality designation as to

22 those emails.  That caused a little bit of a stir.

23         THE COURT:  I didn't hear anything.

24         MR. MALLOW:  We have spoken to Mr. Prieto.

25         THE COURT:  I didn't hear anything.

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 231 of 259
Motions to Dismiss

231

1          MR. MALLOW:  It is our understanding, Your Honor, that

2   the modification of the Protective Order relates solely to the

3   Daimler Chrysler -- the Takata documents marked confidential

4   related to the Daimler Chrysler emails and not to any of the

5   other auto manufacturers, the Takata documents related to any of

6   the other auto manufacturers who are here, do have standing to

7   be heard on the issue of modification.  And Mr. Prieto does not

8   disagree with that interpretation.

9          THE COURT:  I know, but I do, see, because this is

10  going to come out anyway.

11         MR. MALLOW:  Well, not for the OEMs particularly who

12  settled the case.  So, Your Honor, for sure those documents

13  should be left the way that they are.

14         THE COURT:  Well, unless they -- but see, are they

15  going to come out at trial eventually?

16         MR. MALLOW:  Considering the recycler claim should be

17  dismissed, I suspect not.  No, we don't know, but right now --

18         THE COURT:  Eventually, it's going to come out.

19         MR. MALLOW:  Then I think Your Honor would have to give

20  an opportunity to the auto manufacturers who are still in

21  existence, who still are in the case, to argue why those

22  designations need to be maintained.  But for now --

23         THE COURT:  What would be the argument?  See, I don't

24  think -- why would something need to be sealed?

25         See, the only things that really need to be sealed --

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 232 of 259
Motions to Dismiss

232

1  if you have trade secrets to protect, you know, that makes

2  sense.  Right?  But if it's something negative, which is the

3  only way it would come out here, it's not a trade secret

4  anymore.  So the reason people like to have things sealed is

5  because it's embarrassing to them in one way or another, either

6  financially, morally.  So I don't believe in that and I don't

7  think the Court should and most judges agree.

8         You know, I sign -- and maybe I shouldn't.  Maybe I

9  won't sign any more Confidentiality Orders because we really

10  shouldn't unless it's a trade secret.  Someone brings us to

11  court, not a defendant obviously, you bring us to court.

12  Eventually, it's going to be before a jury, or even if it's in

13  summary judgment, I've got to look at it.  You know, you all

14  file things -- in this case there were some, you know, it's

15  blacked out.  Right?  Well, I'm looking at this, how in the

16  world can I rule when most of the stuff is blacked out or whited

17  out, whichever word you want to use, that gets blocked off and I

18  don't even understand what it is?  So you say we'll file another

19  one sealed, so then I'm looking at something.  So who else is

20  looking at it?

21         MR. MALLOW:  Well, there are two issues, Your Honor.

22  One is the Protective Order issue and that's the one we're

23  discussing right now.  And I understand Your Honor's position on

24  documents that are filed with the Court under seal.  We're not

25  talking about documents filed with the Court under seal.

09-50002-mg    Doc 8576-1    Filed 01/04/22    Entered 01/04/22 12:35:21    12-11-18
Transcript of MDL Hearing    Pg 233 of 259
Motions to Dismiss

233

1          THE COURT:  All right.

2          MR. MALLOW:  What we're talking about is Your Honor's

3    statement earlier this morning removing -- essentially modifying

4    the Protective Order to remove confidential designations for

5    documents that have not yet been submitted to the Court, but are

6    contemplated to be submitted to the Court.  That's a very narrow

7    universe.

8          THE COURT:  I meant to do that in relationship to what

9    was being filed, attempted to be filed sealed in order to

10   convince me to do one thing or the other.  That's certainly the

11   way I interpreted my own words, so I should be able to -- you

12   know, I can be an originalist with my own words I think.  That's

13   what I meant.  In other words, if someone says, I want you to

14   consider this, but I want it sealed, it's going to be open.

15         Now, if it's something in the past in a settled case

16   that doesn't come up, what's done is done.  It's a fried egg

17   already.  You can't do anything except eat it.  But if it's

18   something new that comes up, so you know, my tendency is I'm not

19   going to have things sealed, and if it's something that is going

20   to be kept confidential because of a trade secret of some type

21   that you're disclosing, then don't disclose it.

22         I mean, most of the arguments that are made -- I've had

23   things under seal that have case law and Complaints.  That's

24   ridiculous, right?  That's what I don't like.  So you understand

25   where I'm coming from.  Maybe I painted it with too broad of a

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 234 of 259
Motions to Dismiss

234

1   brush.  Certainly my concern is what's happening now.  You're

2   raising a concern for your clients and also as a friend of

3   others, right --

4           MR. MALLOW:  Correct, Your Honor.

5           THE COURT:  -- for people who have settled and paid up.

6   Now what are you doing?  You're opening it up.  But if there's a

7   RICO claim that involves them, too, then somehow it may come up.

8           MR. MALLOW:  Again, Your Honor, there's a procedure in

9   place under the Protective Order, if the plaintiffs want to use

10  a document, we do have an opportunity --

11          THE COURT:  They have to let you know.

12          MR. MALLOW:  Exactly.

13          THE COURT:  I know.  I know.

14          MR. MALLOW:  Our concern is that your order regarding

15  the emails today isn't read too broadly, and I think we're on

16  the same page now.

17          THE COURT:  All right.  How do you want me to write it?

18  What should it say?

19          MR. MALLOW:  Essentially what I think -- the

20  interpretation that we had, which is, the emails that are the

21  subject of the Takata confidentiality designation as it relates

22  to the Daimler Chrysler emails, those you've modified the

23  Protective Order.  Everything else stays in place and the

24  procedure --

25          THE COURT:  The first part, I agree.  The second part,

09-50002-mg   Doc 8576-1   Filed 01/04/22   Entered 01/04/22 12:35:21   12-11-18
Transcript of MDL Hearing   Pg 235 of 259
Motions to Dismiss

235

1  I don't know, but we'll leave it as it is until it comes up.

2  How is that?

3          MR. MALLOW:  Satisfactory, Your Honor.  Thank you.

4          THE COURT:  Does that make sense to everybody who's

5  left here, which is still a lot of people.

6          MR. MALLOW:  Yes.

7          THE COURT:  Govern yourselves accordingly.  Do people

8  still do that when they write letters?  Okay.

9          MS. SMITH:  Your Honor, Renee Smith for General Motors,

10  and I'm not arguing anything.  I just needed to correct

11  something I misspoke on in the record that a very nice gentleman

12  from Ford pointed out because it was about Ford.

13          I erroneously said that NHTSA had denied Ford's

14  Petitions for Consequentiality flat out.  They had denied Ford's

15  request for a deferral and that's an important issue to Ford.

16          So I apologize for the error.  I would worry about it

17  if I didn't correct it on the record, so I'm correcting it.

18          THE COURT:  No problem.  That's a fair thing to say

19  because there's a lot of coverage for this, and especially since

20  Ford kind of wants to leave.

21          That's it?  Have a good afternoon.  I'm not going to

22  tell you when I'm going to rule because I don't know when I'm

23  going to rule.  Okay?  But I'll try to rule as quickly as I can.

24          Thank you for being patient with me.

25          MR. PRIETO:  Thank you, Your Honor.

1            MR. MALLOW:  Thank you, Your Honor.

2            MS. SMITH:  Thank you, Your Honor.

3            THE COURT SECURITY OFFICER:  All rise.

4        (The hearing concluded at 5:45 p.m.:)

5

6                  C E R T I F I C A T E

7        I hereby certify that the foregoing is an accurate

8    transcription of proceedings in the above-entitled matter.

9

10   _____        _____
         DATE                GILDA PASTOR-HERNANDEZ, RPR, FPR
11                           Official United States Court Reporter
        01-18-19             Wilkie D. Ferguson Jr. U.S. Courthouse
12                           400 North Miami Avenue, Suite 13-3
                             Miami, Florida  33128    305.523.5118
13                           gphofficialreporter@gmail.com

14

15

16

17

18

19

20

21

22

23

24

25

## A

**Aaron** 1:14 6:20
**ability** 127:23 215:17 216:7
**able** 26:7 33:19 34:15,25 35:19
38:13,22 40:1 43:7,20 44:9
65:7 71:20 72:7 78:11 87:5
116:17 133:17 145:20 157:2
161:14 192:25 193:1 201:17
202:4 233:11
**about** 12:9,18 14:18 15:9,12,20
18:9 19:9,10 20:9,10 22:4
23:13 25:11,25,25 27:9 28:18
33:13 38:17 42:3 43:2,25
44:16,18 45:22 46:12 47:5,15
48:19 49:17 50:4,19,24 51:2,7
53:19 54:19 55:5 59:17 61:14
61:22,25 63:6 65:19,22,25
66:1,3 67:3 68:16,22 72:25
73:24 74:23,25 77:16 78:18
79:21 80:24 81:13,15 84:25
85:14,15 87:6,16 89:5,9,9,19
91:5 93:5 95:5,23 96:7,22,24
98:20,23 100:22 101:8 109:15
109:16,19 111:10,17 113:12
113:16,17 117:13 118:15
122:20,20 123:11 125:3,12
128:12 129:16 137:18 138:14
139:7 148:5 149:21 151:5,6,6
151:10,13,23 152:5,9,13
154:1,3,6,7 155:22 157:3,10
157:11,14,2 1 158:4,19,20,24
159:2 161:25 162:13 163:21
163:22 164:4 165:14,22 166:2
166:21,24 167:2,4,22 168:3,4
169:13 172:9 173:17 174:19
174:20 177:3,4,11 178:2
179:14 181:20 183:3 184:16
186:8,9,9,12,1 3 187:24,24
190:10 193:16,22 194:2,2
195:20 196:8,20 197:4 200:10
201:6 202:9 205:3 207:12
210:24 214:14,16,19 215:4,9
215:17 216:6 218:20 219:1,25
220:25 223:1,6,6 225:10
226:3 227:5,18 230:18 232:25
233:2 235:12,16
**above-entitled** 236:8
**absence** 69:13
**absolute** 153:1
**absolutely** 118:5,19 119:1
130:14 133:13,23 135:6
137:25 163:1 182:19 191:3,3
214:20 222:3
**absolves** 81:14
**accept** 82:23 105:5,7 152:25
161:9,12
**acceptable** 123:22 177:7
**accepted** 67:14 78:20,21 96:12
156:4
**access** 72:2 161:13 173:24
**accident** 20:19 215:18
**accommodate** 119:24 129:7
**accomplished** 45:25
**accomplishment** 45:12
**according** 184:21 192:16 202:1
202:20,21 203:5 229:10
**accordingly** 199:7 235:7
**accumulation** 46:10
**accumulative** 49:20
**accurate** 160:5 161:2 236:7
**accused** 172:14 173:5 228:15,19
**achieve** 38:5
**achieved** 8:10,12 9:19 12:14,24
47:4
**acknowledges** 160:7
**Acme** 212:19
**across** 38:13 41:6 43:19 44:2
**act** 124:5,7 134:17 145:13 156:9
188:22 209:21,22 210:4,7,17

210:20 212:22 213:22 214:1
215:18,25 216:20,23 217:1,9
217:11 218:2,12,18,23 219:3
219:18 220:2,8 221:4,5,6,8,10
221:18,20,21,23 222:4,5
**acted** 168:1
**action** 9:14,16 61:8 95:9 97:24
104:4 108:5 109:16,19,24
110:12 118:8
**actionable** 210:14,21 211:22
215:18
**actions** 61:4 109:18 112:19
113:5,14
**activate** 115:2,9
**activated** 47:5 49:15 115:2
**activation** 37:14
**activities** 46:2,9 158:15
**activity** 32:5 43:15 46:4 48:14
48:18 170:13,15,17,21 173:12
174:21 198:2,3 203:4
**actors** 56:12
**acts** 190:7
**actual** 55:23 170:4
**actually** 12:12 13:12 22:7 23:15
25:17 39:21 59:12 78:7 99:9
114:5 124:12 125:18 131:22
139:23 140:5 141:21 142:5
144:4 147:1 159:16 163:15
167:16 181:14 191:23 194:19
201:25 202:22 220:11 222:15
**Act's** 216:2
**acute** 38:25
**Adam** 2:12 7:18 14:8,21
**adapt** 49:8
**add** 118:24 120:2 128:19 150:21
163:9
**added** 8:10 39:24 75:8,9 166:3
167:3 173:25 178:8
**adding** 42:8
**addition** 47:17
**additional** 26:8 137:10
**address** 39:7 130:4 138:18 154:5
179:24 193:13 200:1
**addressed** 54:20 62:8 105:10,11
122:21 200:15,21 224:8
**addresses** 39:20 118:16 204:4
**addressing** 45:21 66:13
**adjudicate** 110:22 113:14
**adjudicatory** 67:20
**adjustments** 28:23 29:1
**administering** 37:7 116:22
**Administration** 61:9 129:21
**administrative** 145:14 146:17
148:9
**administratively** 106:24
**administrator** 4:5 37:6 38:9
**admissible** 160:9
**admitted** 79:10 157:6,6 189:24
217:22 222:20
**admitting** 79:9
**ads** 28:5 46:6
**advance** 62:9 118:17
**adverse** 167:4
**advertisement** 216:3
**advertisements** 167:6
**advertisers** 221:25
**advertises** 217:5
**advertising** 31:25 210:9,10,16
210:17,21,22 211:19 213:13
213:24 216:6 218:2,21,24
219:3,9 220:5,11,14 221:24
**affect** 145:16
**affected** 39:5 44:16 49:1 124:19
143:9
**affidavit** 32:13 33:2 125:8,13,15
127:1
**affiliates** 158:16
**affirmative** 85:9,10
**affirmed** 168:23 170:12 171:7

171:24,25 172:7 178:22
**afraid** 93:9 94:10,12 175:4
**after** 12:5 17:14 19:21 52:9
139:18 149:23 151:10 152:18
153:14 161:12,13,15 184:14
188:21,23 212:9 229:14,17
**afternoon** 60:24 63:17 102:10
120:4,6 128:6 129:1,23
146:14 149:22 163:11 209:13
227:25 235:21
**afterwards** 36:6
**AG** 3:5,22 66:12 68:1 72:10
74:15,17,20,2 2 75:5 120:18
121:4 123:22 125:4,16,25
126:6 127:3 176:14,14
**again** 8:1 11:10 14:14,20 20:10
21:2 40:16 54:19 62:25 65:23
69:7 93:22,24 94:14 98:4
112:10 116:25 151:4 152:5
153:18,25 155:18 157:10,16
158:10 159:21,22 162:13
163:24 167:22 169:5,18
172:12,16 174:21 176:11,24
177:4,13,21,25 178:6 179:7
184:8 188:7 191:5,13 197:9
199:1 203:15 207:2 226:8,16
226:19 227:8,14,19 229:16
234:8
**against** 55:25 56:1,2,21,25 61:1
65:20 71:1 112:3,19 116:2
124:10 131:22 134:15 141:16
144:3,7 145:25 148:12 150:6
150:8,9,15,17 151:4,5,8,15
157:5,7 172:13 177:23 229:18
**age** 39:14 40:3
**agencies** 129:22
**agency** 134:12 148:9
**agenda** 55:2
**agents** 158:17 160:20
**age-old** 190:2
**aggregated** 38:7
**aggressive** 184:10
**ago** 56:19 81:16 131:8,10 137:9
140:10 150:1 200:16
**agree** 15:11,19,24 21:14 23:1
55:19 61:10 85:1 95:5,10
106:17 109:9 112:1,12,15 132:6
150:16 151:16 164:0 163:4
165:1 167:12,15 173:15
182:18 189:3,25 190:6 199:8
213:6 215:3 217:19 221:20
229:21 230:7 232:7 234:25
**agreed** 86:11 125:17,18 135:2,8
135:12 191:22 192:12 215:9
**agreeing** 76:24
**agreement** 9:14 13:10 16:8
17:17 34:4 38:3 58:3 67:7,8
67:16 69:25 78:11,12 79:20
81:5,6,13 86:5 106:16 152:17
152:20,23 153:7,13,19 154:1
154:2,5,13 155:15,22 156:2,3
159:2,5,12,20 160:1,12 161:9
161:12 163:3,14 165:8 166:3
166:4,21 173:23 174:13,15
178:7 188:6 189:11 192:15
193:23 194:23 195:1,1 207:2
208:7
**agreements** 55:23 190:4 203:3
203:10
**agrees** 158:11
**ah** 76:19
**ahead** 14:14 42:25 43:1 118:16
120:23 124:10 130:1 134:8
136:17 137:1 175:9 211:17
**airbag** 1:5 20:11,16,19,21 21:1,7
21:8,18 22:20 26:1,7 29:5,19
83:17 160:23 184:8,23,24
185:3 219:12,14 227:1

**airbags** 58:23 82:11,15,20,24
83:5,12 133:2 137:24 138:10
163:5 174:12 184:12 197:10
197:11,23 201:18,20 202:4,5
204:16 208:1 212:6,7,7,17,17
213:14,15,20 214:6,6,9,12,15
214:17,19,25 219:4,12,14,15
217:5 218:6,15,16 219:15
227:11,13
**airline** 172:13 173:3
**airlines** 172:4,12,15 194:18,22
195:22 196:2,6
**AKTIENGESELLSCHAFT**
3:10
**Alabama** 45:15
**Alhambra** 1:19
**allegation** 79:15 82:9 97:12
163:2 167:25 171:11 172:25
176:23 178:24 193:19 194:17
196:1
**allegations** 69:5 70:13,18 71:16
71:18 72:8 74:14 75:3 87:12
102:3 115:18 151:4,4,14
153:12 158:18 162:15 164:20
165:19 166:2,5,12,15 169:6
171:15 172:11,13 173:8
175:20 176:16 177:21,22,25
178:6 184:7 186:12 194:21
202:2 223:1
**allege** 87:7 97:1 98:6 156:9
162:20 167:13,14,16,17,24
168:14 169:19 176:6,7 177:16
178:4,4 196:9,11 199:12
**alleged** 82:2 85:14 90:20 91:18
94:20 96:2,6,9,19,2 4 97:10,11
97:11,14 127:19 160:9,16
163:16 166:4,18,24 168:2
170:4 173:12 183:1 186:4
188:10 191:8,10 193:6,14
195:17,25 196:3,7 198:4,10
199:11,11 201:7 206:8,23
207:18 208:16 210:8,9 211:19
218:3,4 222:4
**allegedly** 69:18 96:22 177:24
**alleges** 225:8,14
**alleging** 198:5
**Allen** 147:18
**allocate** 79:19 191:22
**allocated** 21:13
**allocation** 18:14 79:18,24 80:4
81:5,6 155:2
**allowed** 35:23 52:21 225:4
**allowing** 6:14 185:2
**allows** 18:10 46:11
**alluded** 177:11 229:9,12
**alluding** 206:7
**Almanza** 169:2 171:20 193:18
194:3,14 198:23
**almost** 10:25 197:5,6
**alone** 48:14 218:18 219:7
**along** 99:16,16 158:3,8 176:6
183:13
**alphabetical** 155:6
**already** 7:2 10:1,20,21 12:25
26:2,3 27:22 28:10 44:19
49:15 51:22 57:20 60:23
62:21 69:6 87:20 90:24 91:25
94:13,18 99:3,8 119:8,15
128:14 129:12 131:7 132:17
134:8 135:2,11,15,16 150:4
164:12 174:1 187:5,6 200:15
222:11 227:24 233:17
**alternative** 100:7 127:8
**alternatively** 123:23
**although** 174:1 213:7 217:9
**altogether** 225:13
**always** 9:10 12:17 13:5,6 26:24
32:4,5 42:17 49:11 51:16
52:21 64:14 81:17 89:23,24

93:11 108:9 126:17 151:21,22
180:11 195:10 196:21 205:22
206:13 228:14
**amend** 87:15 118:23
**amended** 52:7 60:12 101:19
102:4 104:13 150:21 194:7
**America** 4:1 176:15,15
**American** 178:23 193:18 198:23
**ammonium** 68:13,16,18 82:11
82:15,22 83:5 138:8 183:24
184:2,2 225:14 227:2,19
**among** 71:20 84:24 107:20
129:9 160:22 190:3,4 226:6
**amongst** 39:10 41:3,9 79:19
116:23 194:23
**amount** 11:11 13:20 28:18
139:22 143:7 181:4 226:16
**Amounts** 155:6
**analogous** 207:22
**analogy** 131:21 132:1
**analysis** 38:15 48:5 51:9 194:17
226:14
**Angeles** 3:20
**Angie** 2:11 7:19 14:15,23
**announced** 50:18 201:18
**another** 17:20 19:10 33:10 40:4
46:9 63:1 72:9 78:16,17 83:4
98:15 101:9,24 107:3 124:12
135:21,23 136:10 139:18
144:15 166:22 174:24 183:17
187:13 188:24 191:12,25
206:10 208:15 227:15 230:6
232:5,18
**answer** 49:10 72:17,20 95:19
110:1 113:23 147:2 191:10
220:25
**antitrust** 199:1
**anti-competitive** 218:21
**Antonio** 3:24 120:21 126:11
**anybody** 6:7 44:4 59:18 60:6
64:17 103:13,19,20 129:8,18
149:20 163:9 185:15 200:6
202:14
**anymore** 65:3 198:7,10 232:4
**anyone** 77:9 86:10 161:14 163:3
209:8 222:10
**anything** 12:2 16:13 32:4 34:17
47:2 51:13,14 53:13 58:6
64:17 70:22 71:1 74:23 81:7
86:13,20 90:17 106:6 118:15
129:14 137:22 200:4 207:3
208:5 214:14,16 216:10,11
219:19 220:12 228:16 230:23
230:25 233:17 235:10
**anytime** 108:21
**anyway** 87:19 89:4 92:11 141:17
142:8 231:10
**anywhere** 28:2 163:2
**Anza** 200:24
**APLC** 4:6
**apologize** 151:1 230:14 235:16
**apparently** 25:15
**appeal** 9:4 52:10,11 62:6 151:24
223:13 230:5
**appealed** 223:15 226:4 230:2
**Appeals** 63:2 119:10
**appear** 25:17 52:8
**APPEARANCES** 1:12
**appears** 43:15
**Appellate** 165:15
**append** 39:16
**application** 20:6 22:4
**applied** 183:5
**apply** 15:9 121:1 183:9 211:9
**applying** 120:25 124:18
**appointed** 37:6,10 79:21
**appointment** 48:13
**appointments** 47:13
**apportioned** 192:11

**appreciate** 6:6 40:14 59:11,20
66:8 102:13
**approach** 38:2,17 43:12 46:20
219:6
**approached** 183:24
**appropriate** 21:15 37:17 55:21
75:16 121:22 130:15 192:17
229:11
**appropriately** 100:17
**approval** 1:9 8:8 15:22 17:16
18:13,22,24 79:23 83:13,15
**approve** 16:21 17:1,4 18:11,19
18:20 19:21 22:6,9,10 52:11
58:11
**approved** 8:22 12:16 28:24
82:21,24 123:25
**approving** 83:4,20
**approximately** 44:23
**April** 83:8,11 150:21
**archetypical** 218:24
**architecture** 138:11
**area** 147:16
**argue** 27:25 28:24 97:19 152:9
228:4 231:21
**argued** 27:7 121:1 138:9 169:24
170:1,23
**arguing** 98:21 169:11 235:10
**argument** 28:15 51:2 52:17 53:8
53:19,20,23 54:2,4,7,15,19,20
55:7,14,20 56:12 68:7 69:23
69:24 71:5 81:14 84:24 97:17
98:21 117:5,21 127:21 128:20
141:20 146:11 157:3,15
161:22 165:10 177:7 182:13
188:24 194:21 196:22 197:4
200:13,22 205:2 207:1,4
211:13 218:8,9 220:19 231:23
**arguments** 52:2 60:21 61:12
62:9 95:20,23 126:5 129:17
136:12,13,14 146:5 149:5
179:25 187:23 230:8,9,10
233:22
**arises** 39:11
**Arm** 127:21
**Armonk** 1:24
**around** 29:4 30:20 63:11 64:18
64:24 65:12 119:5 130:23
131:1,3 160:14,14,19,19
178:19 199:5 203:25 209:12
**arrogance** 63:3
**Arth** 50:23
**ascertainable** 21:25
**aside** 147:22 220:15
**asked** 23:11 55:1,4 70:19 73:21
99:9 104:8 110:22 132:4
141:7 149:25 155:1,5 163:16
183:25 192:5 207:6 223:4,5
228:24
**asking** 23:17 30:12 55:8 57:8
58:6,8,9 92:1,7 113:6 118:1
134:11 142:25
**aspects** 16:7
**assert** 112:1
**asserted** 97:24 106:2
**asset** 43:7,9
**assets** 40:17 41:7,12 43:2,5
72:18
**assign** 13:20
**assigned** 43:3
**assist** 159:15
**assisting** 157:25
**associated** 67:20,22
**Association** 178:23
**assume** 6:11 80:25 102:2 185:7
187:7
**assuming** 91:4 108:2,19,19
109:21 187:20 202:14
**Athens** 14:17
**Atlanta** 2:14

**attached** 158:7 227:4,19
**attack** 53:1,1 90:14 179:17
**attempt** 164:17 175:20
**attempted** 233:9
**attempts** 39:23 41:1 47:7 220:10
**attention** 214:21
**attorney** 50:10 222:16
**attorneys** 10:5,9,11 11:12,18,19
12:12 25:5 50:20,23,24 51:9
52:18 54:12,16 58:12 59:11
64:4 192:18,20 222:15
**Attorney's** 157:22 198:7
**attributable** 47:19,20
**attrition** 222:11
**auctions** 201:21,21
**Audi** 3:10 61:2,5 65:20 68:2,3
75:5,22 89:12 95:15,25 96:4,8
96:9 111:25 116:21 119:19
163:12 175:24 176:13,14,15
177:23
**audience** 185:14
**August** 141:22
**Austin** 3:18 126:13
**authority** 127:6 136:21 226:6,9
**authorizing** 123:4
**auto** 200:14 202:3 203:18 204:1
231:5,6,20
**Autoliv** 183:25 184:1
**automaker** 96:5 142:15 191:24
205:12
**automakers** 56:23 79:2,11,16,16
79:18,22 80:19 82:25 83:2
88:6,9,15 140:22,23 142:7
185:9
**automatic** 134:10
**automobiles** 74:20,20 75:1,7
**automotive** 145:1 211:14
**available** 29:2 33:12 41:13 97:23
227:20
**Avenue** 3:15,19 4:11 236:12
**avoid** 120:5 185:3 203:9
**award** 11:12 12:12 13:1 30:2
56:13 58:12,13
**awarded** 58:5,21
**aware** 27:4 83:19 97:9 184:15
196:4 220:2
**awareness** 39:1
**away** 27:5 31:1 46:18 100:22
219:2,17 220:8
**A-l-m-a-n-z-a** 169:2
**a.m** 6:1 65:17,18
**A1** 157:20

**B**

**B** 2:1 19:12 61:24 158:7 159:4
159:23
**babes** 187:23
**back** 6:14 23:9 63:9 65:13 67:2
75:2,18 83:10 96:24 99:2
101:2,4 106:15 107:24,25,25
108:3,25 109:1,2,9,12,17,18
115:19 118:24 119:18,21
120:4 122:12 128:6,17 131:11
131:22 149:10 154:1 175:11
178:6 182:25 187:3,17 195:12
195:14 198:6,14 212:5 223:9
**bad** 44:12 74:24 131:14 150:17
172:23 173:14,21 182:4
**baffle** 227:11
**bag** 77:6 204:22 221:3
**balance** 23:23 161:7
**balancing** 23:25
**ball** 90:14
**ballistics** 184:20
**bank** 189:7
**bankrupt** 77:11
**bankruptcy** 67:10 184:14,15
**banner** 28:5
**bar** 6:12 187:10

**Barbara** 2:8 7:13 8:3 14:1
**bargain** 67:4,8 75:18 96:11
97:22,23 203:6 224:12
**barrier** 40:22
**barriers** 40:10 43:25
**base** 95:13
**based** 12:13 23:14 34:13 36:2,13
40:2,3 67:6 80:4 81:5 85:23
87:12 90:19 99:25 109:18
133:5 141:12 175:21 181:16
189:13 215:19 224:3,11
**baseline** 12:22 188:7
**bases** 122:22 136:25
**basic** 39:16 43:17 149:24 190:4
**basically** 28:14 36:12 42:7 48:9
51:12 55:24 56:15 58:24
69:17,20 98:5 99:10,14
105:15 118:25 188:21,23
191:22 195:6 198:24,24
204:18,21 207:17 210:19
229:5,22
**basis** 41:5 46:15 52:16 71:18
122:23,24 136:24 157:18
159:23
**bathroom** 63:9
**battles** 114:24
**bear** 166:15
**beautiful** 42:3
**became** 180:23
**become** 202:11,11
**bed** 16:11
**before** 1:10 8:19,22 25:15 33:2
34:18 35:24,25 36:19 49:14
52:23 53:4,5 54:13,20 55:24
59:7,16,21 62:4,5,8,10 66:22
74:15 81:2,14,18 82:8,10,14
96:25 103:5,9 104:11 105:25
111:3 113:5 114:15 115:1
117:17 118:17 120:16 123:14
125:18 126:25 129:19 130:5
140:18 148:6,8 150:20 156:1
178:12 180:3,15,18 184:15
200:3,6 209:6 216:18 223:5,6
224:22,23 225:20 230:13,14
232:12
**beforehand** 108:13
**began** 157:21
**begging** 169:8
**begin** 39:3
**beginning** 46:3 157:20
**behalf** 6:18,20,22 7:4,5,12,16,19
7:21,22 13:25 24:23 31:10
51:19 65:21 120:3 124:1
163:12 200:8 209:16,19
211:13
**behavior** 184:10
**behavioral** 39:25
**behind** 134:15,22,23
**being** 33:20 41:8,10 43:6 50:1
59:5 60:2 69:13,14 70:7,9
75:6 86:9 110:22 151:5 154:1
159:18 161:14 173:5 181:6,7
181:23 182:2 191:18 204:11
233:9 235:24
**belabor** 93:1
**believe** 9:6 12:22 55:9,16,18
57:9 58:8 66:3 71:24 72:2,14
73:17 75:25 99:2,4 103:15
108:4 114:19 115:23 116:2
117:10 118:8 121:22 122:6
126:2 130:11 133:23 134:4
135:22 136:25 164:15 165:18
165:20 185:24 211:21 212:19
215:5 226:23 232:6
**belongs** 107:18
**below** 160:9
**bench** 62:1 63:18 126:19 128:18
188:18 199:24
**benchmark** 21:15 58:8

**benefit** 8:15 23:22,23 25:17,18
25:22 26:16,19,20 38:10 51:3
51:4,6 58:2 69:14 78:14 96:10
97:22,22 136:4 147:6 173:18
174:3 197:15 203:6 224:11
**benefited** 197:18
**benefiting** 201:25
**benefits** 8:16 9:19 10:15 12:23
12:25 23:10 35:1 50:7 57:12
57:17
**Benjamin** 50:23
**best** 38:2 53:20 54:15 71:19
91:20 168:11,16,19,21 178:13
178:16,18 230:4
**better** 16:12 22:1,2,15,1 7 27:3,6
32:18 36:23 62:5 63:20,21
72:20 87:15,18 90:21 116:12
116:16,18 151:25 180:21
189:16
**between** 68:24 74:21 151:6
160:2 163:3 166:3,22 169:15
178:8 200:18 201:2 202:6
**beyond** 39:1 55:19 58:6 113:17
160:8 163:15 227:15 228:4
**Bianchi** 3:5 66:2,11,11,1 9 67:15
67:19,25 68:7 69:4,11,21
70:23 71:7,10,15,2 2 72:2,5,14
72:17,22 73:3,6,9,17,21,25
74:4,6,10,1 3 75:21,25 76:16
76:19 128:15,22
**Biddle** 4:2
**big** 62:20 70:24,25 72:4,5 105:18
124:24 140:16 142:9,10
155:19 163:20 180:20 181:23
**bigger** 56:14
**bill** 119:13,13
**billion** 162:11 188:8
**billions** 188:8
**Biscayne** 3:6
**bit** 8:25 42:10 70:17 109:14
120:19 128:12 142:8 161:25
163:19,21 174:19 228:4
230:22
**bits** 184:4
**blacked** 232:15,16
**Blakey** 178:17
**blame** 185:2
**blew** 184:3
**blinding** 184:25
**blinds** 209:11
**blocked** 60:24 232:17
**blocking** 94:2
**blowup** 163:5
**Blue** 2:9 177:14,14
**BMW** 3:22 119:19 120:18 121:4
123:9,22 124:2,3 125:4,16,25
126:6 127:2 150:19
**board** 43:19 44:3
**boat** 63:7 96:1
**body** 146:23
**Boies** 1:22,23 2:1 6:21,21,25
**boilerplate** 15:25
**Bond** 197:1
**books** 69:16
**boom** 91:1 106:14
**both** 46:5 51:10 57:15 59:16
61:4,7 72:2 121:4 139:16
141:11 167:16 181:7 183:2,10
188:1,12 193:14 196:7 205:18
222:15
**bottom** 10:13 48:20 77:11 155:8
156:12 159:7 192:22 206:8
**bought** 72:18 79:12 96:18 204:2
204:14,16,2 0 205:6 218:15,15
224:6
**Boulevard** 3:6
**bounty** 197:14
**box** 71:4
**Boyd** 176:21

**brake** 208:1
**branch** 13:6
**Brandi** 227:6
**breach** 61:23 159:2
**breadth** 117:1,2
**break** 63:9 65:7 175:16
**Brian** 3:10 31:17 41:18,20
102:14
**bride** 62:17 65:1
**Bridge** 197:1 200:24
**brief** 53:7 57:18 60:10 65:17
120:8 127:23 140:8 201:12
202:16 217:22,23 218:19
221:13 222:17 227:5
**briefed** 127:23 130:5
**briefing** 111:20 153:25
**briefly** 51:15,16,17,22 61:18
130:4 175:13 204:10 222:12
**briefs** 68:11
**bring** 19:14 29:2,11,13,1 4 34:1
40:13 118:7,8,9 131:11,17
134:25 170:2 179:17 187:21
188:14,14 202:22,25 222:2,3
224:10 232:11
**bringing** 62:7 99:14 140:13
**brings** 232:10
**broad** 3:11 18:25 47:3 233:25
**broadly** 234:15
**brochure** 212:5
**brochures** 213:13
**Brooks** 177:14
**brought** 33:20 49:23 131:22
163:23
**brush** 234:1
**built** 146:1
**bulk** 176:16
**bullets** 91:21
**bunch** 104:2 178:24 181:25
**burden** 125:4 176:6 177:5 193:4
**burdens** 148:3
**bureaucracy** 134:18
**burns** 184:22
**bus** 132:2,2,3,4,7,2 0 142:21
143:1
**business** 65:9 89:3 99:21 169:7
169:19 170:18 171:19 173:13
187:25 188:1,4,1 0 190:15
203:25 205:1 219:16,18
228:14
**businesses** 172:17
**busy** 61:20,21
**button** 14:11 193:10
**buttressing** 146:21
**buy** 204:24 214:5 219:1
**buying** 218:14 219:13
**bypass** 104:24
**bypassing** 104:19
**B1** 159:24
**B6** 160:11,13

**C**

**C** 61:24 154:12 155:19 236:6,6
**caboose** 142:23
**Cabraser** 225:20
**Cabrera** 189:24
**cahoots** 182:10,13 195:19
**calculate** 8:14
**calculating** 23:6
**California** 2:10 3:20
**call** 6:2 24:15 31:17 43:4 46:4
47:11 55:22 62:16 101:21,22
143:1 150:18
**called** 59:8 72:9 138:19 199:2,9
227:11
**calling** 43:5,23
**calls** 38:24 43:7,10 47:9,12 49:5
**came** 32:19 43:17,18 55:23 81:5
81:15,18 86:5 101:25 102:1
163:20 187:3 202:9 221:2

229:14,17
**campaign** 46:5
**campaigns** 46:13
**Canal** 2:6
**candid** 49:22 50:1
**Cantero** 66:15 128:16
**capacity** 37:13
**captures** 160:15
**car** 11:17 23:24 25:12,13,17
27:18 29:3,13,14 40:13 50:25
51:5 83:20 96:12,20 143:8
161:16,1 7 169:17 204:2,20
205:6,7,8 206:5 214:5 215:4
**card** 40:7 46:18 60:6,8 65:9,12
**cards** 40:18 41:4 42:16 66:6,7
170:5
**care** 78:3 92:2 94:1,8,19 108:10
129:13 193:18,24 196:25
229:12
**careful** 109:4
**carefully** 53:8
**Carolina** 129:4
**Carolyn** 50:20
**carry** 124:25
**cars** 10:24 25:15 29:2 39:13
79:12 96:10,17,18,2 5 139:8,9
143:9,10,12,13,15,23,2 4 144:3
163:5 183:11 188:6 204:15,16
204:19
**Carter** 57:16,24
**cartridges** 216:6,8
**carved** 205:22
**case** 1:3 3:6 9:14 12:7 16:5 19:8
12:18 23:18 24:3 25:1 27:3
30:24 37:2,9 38:17,18 42:11
42:17 52:10 55:21 60:13
61:22,23 63:1,2 68:1 70:15
79:21 86:21,22,23 87:4 88:11
89:3 93:12 97:15,16 98:4,2 4
98:7,9 101:2,2,9,18,23 103:8
103:9,10,17 105:13 108:22
110:10,11,17,23,2 3 111:1,2,23
111:23 112:8,23 114:4,6,12
114:21 115:16,17,18 117:12
118:13 121:6 122:16 123:8
124:6,13,22 125:1,2,6,16,16
125:17,18,20,2 1 130:15,16,20
130:22,25 131:4,11,17 133:11
133:12,16,18,2 5 134:5,25
135:19 136:7,9 137:12 139:16
140:12 143:17,19,20 144:13
145:21,21,22,22,2 5 146:16,18
147:5,7,22,25 148:11,20
151:23 152:19 153:2,19
154:17 155:23 156:4,18,21,23
157:1,4 160:17 161:10 165:16
168:16,19 169:5,21,23,24,25
170:3,10,11,23 171:15,18,19
171:20 173:4 178:13,16,18,21
183:5,8 184:25 186:8 187:12
187:12,19 188:13 189:14,18
189:19,19,20,20 190:10,12
194:3,16,16 195:2,12,21,22,22
195:23,23,25 196:2,6 198:16
198:19 199:17 200:25 202:22
203:3,18,20,2 1 206:14 207:5
207:6,6,7,10 208:2,3,6,8,9,13
208:16,16 209:2 210:8,16,20
212:10 214:17 215:21,23,25
216:12,23 217:2 218:19,24
219:4,8 220:2,11 221:6,7,13
221:14,17,19,20,2 1 222:2,22
223:1,2,11,11,1 4 224:3,4,22
224:23 225:16,17,19,20,21
226:7 227:15,18 228:22
229:14,15,1 7 231:12,21
232:14 233:15,23

**cash** 11:20,22 18:2,8 23:8 24:4,7
29:15 57:9
**cat** 77:6
**catch** 184:12
**categories** 17:6,13
**category** 17:20 115:22 171:19
**caught** 204:21
**causal** 68:24 70:8 75:4
**causation** 98:15 219:7 220:15,15
201:5 202:25 203:8 204:4,11
204:13,23 205:1,9 206:9,9,22
206:25 227:16
**caused** 166:20 219:9 220:22
221:16 222:6 230:22
**causes** 97:23 220:12
**center** 43:4 144:25
**centering** 71:17
**centers** 47:11
**centralized** 117:17
**certain** 62:13 70:6 79:2,10 81:22
81:22 85:15 91:5 109:17
135:13 164:4 190:18
**certainly** 26:8 30:9 32:25 49:13
68:1 74:5 75:14 104:3 110:6
111:18 131:3 233:10 234:1
**Certificate** 5:4
**certification** 51:7
**certify** 58:11 236:7
**cessation** 201:15
**cetera** 51:11 208:12 212:14
**chair** 6:10
**chairs** 6:7
**challenge** 39:14 121:23 122:11
**challenges** 48:8
**challenging** 22:12 121:3
**chance** 29:22 99:17 103:23
128:4
**chances** 39:21
**change** 17:6,16,19 18:10,14,22
39:10 41:5 49:9 53:13 59:24
89:1,2 129:19 186:21,22
187:9
**changed** 52:8 60:1 153:14
**changer** 81:21
**characteristics** 39:25 40:20
213:23 215:1
**charge** 33:22,25 147:18 157:5,7
161:17 207:14
**charged** 37:7 45:22 86:21,22,23
172:15 207:16,17
**charges** 188:2
**charging** 161:15 172:18 194:18
199:6
**cheaper** 183:24
**cheat** 190:8
**cheated** 188:4
**cheating** 190:13
**check** 54:10
**checked** 14:12 180:16
**checks** 24:8
**Chevron** 199:4
**Chevy** 184:24
**Chicago** 3:3 175:8
**children** 40:3,3
**chime** 75:23
**choices** 118:23
**chopped** 54:13
**chose** 140:10 219:13

Christmas 60:5 65:12
Chrysler 72:10,12 73:1 74:18,19
  83:17 89:11 131:11,17 195:8
  230:19,20 231:3,4 234:22
Chrysler's 176:21
churches 65:4
Cigar 124:6
Circle 1:19
circuit 57:11,16,2 5 58:8 75:12
  75:13 96:11 97:13 130:20
  165:17 168:13,20 169:4,5,23
  171:25 172:7 177:15 178:22
  179:3 186:10 194:16 195:10
  195:14,15,2 4 196:21 200:25
  223:24 226:3,5 229:11
circular 169:11
circulated 41:8
circumstance 127:1
circumvent 70:14,14
circumvents 17:21
citation 112:24
citations 71:19
cite 193:16 218:19 221:13
cited 57:15 73:3 117:12 157:2
  189:14 198:23 221:19
cites 178:14,16,18
citing 143:8 229:13
city 126:12
civil 101:19 102:2 103:10 106:1
  106:14 111:22 114:13,23
  118:23 181:24 183:5,6,9
  187:12 188:22 198:12 208:8,9
  223:11
claim 20:20 24:8 27:10 30:4 61:3
  81:14 97:20 102:25 105:7
  112:5,6,7,10,12,14,1 6 113:8,9
  113:18,18,19,2 4 114:1 120:25
  123:3,6 150:2,6 163:20
  164:17 166:14 167:25 169:9
  178:3,5 179:12 181:13,15,16
  190:1 193:14 200:11 201:9
  202:11 208:22 211:23 215:17
  215:19 217:11 218:12,15
  220:1,19 221:10 222:4 223:11
  223:12,18 224:2,3,4,11,14,14
  226:4 231:16 234:7
claimed 201:2
claiming 218:5,13
claims 23:18 24:3,5 51:8 60:21
  62:4,7 101:22 104:9 106:2
  107:7,13,16,21,2 3 108:6,7,8
  108:12,16,17,18 109:8,11,15
  109:16,18 111:7,8,9,11,14
  112:4,17,18 114:19 116:15
  117:4 118:6,8 127:7 145:10
  145:12,14,14,1 6 146:10,12
  148:15 164:14 166:2 167:20
  167:23 201:8 202:25 203:1,9
  204:5 208:19,21 209:24
  210:20 221:18,20,2 1 225:25
clarification 64:14,16
clarified 153:18
clarify 88:2 147:25
class 1:9 8:15 9:14,15,19 10:7,8
  10:11,15 11:10,12,21 12:14
  12:21 18:2 20:22,25 21:14,16
  21:23 22:15 23:2,8,9,23 24:4
  24:8 25:10 27:4 30:3,25 33:5
  34:7 51:3 58:13 69:1 95:7
  96:3,18,25 108:3,4 109:16,17
  109:19,20,21,2 4 110:4,12
  118:8 197:19
classes 58:11
classic 183:5,8 193:14 198:4,10
  198:19
classically 195:9
Clayton 188:22
clear 41:10 47:15 50:19 55:10
  58:10 64:14 67:6,7,9 75:19

79:5 88:17 89:8 90:16 167:24
  168:8,14 174:22 176:5,25
  177:13 180:11 200:25 201:13
  203:8,10 224:24
clearly 28:11 147:25 177:19
  199:11 229:7
clerk 14:16,25 15:1 153:20
clerks 61:25 164:12
clever 218:8,9,10
client 9:22 74:8 134:20,21
  140:14 193:3 211:10 212:2
clients 167:2 217:20 218:4 234:2
client's 25:20 30:13
close 119:11 200:5
closed 140:7 209:10 217:15
closely 186:11
closest 7:25 14:7
closing 162:25 182:13
CO 3:18
coalition 10:25
cocky 119:10
cold 120:18,22
collapse 221:16
collapsed 221:2
collateral 145:10 147:4
colleague 66:15 213:11 217:18
  221:5,19
colleagues 67:2 111:16 230:9
collected 166:25
collecting 158:2
collective 38:10 50:6
color 41:5
colossal 25:20
Colson 1:19
combat 183:7
combination 183:22 195:18
combined 45:22 47:20 80:6
come 15:8 17:19 18:14 19:17
  29:19 49:22 52:7,14,21,25
  63:9 66:1 77:10,10 101:5
  117:17 119:17,21 124:7 128:5
  128:17 133:22,22 134:14,16
  149:10 150:2 151:10 185:1,5
  188:9 209:12 218:1 223:8
  226:22 227:17 231:10,15,18
  232:3 233:16 234:7
comes 10:10 19:8 44:18 68:21
  85:7 91:21 109:8 177:2 185:7
  187:20,21 220:21 233:18
  235:1
comfortable 181:15
coming 29:22 42:3 52:20 62:25
  69:7 129:24 145:19 202:1,3
  205:2 233:25
comment 49:16 50:2 120:3
  137:6 140:7 147:19 228:12
comments 51:18,20,22 152:18
  191:5
commercial 218:3
commitment 48:2 212:11
commits 159:4
committed 10:21 49:20 85:2
  205:10
Committee 129:5
committing 157:6 188:11
common 20:7 21:12,12,16,24
  22:7,24 24:13 51:11 96:13
  116:23 145:13 162:5 193:17
  196:11 197:10,18 214:23
commonplace 190:6
communicating 43:16
communication 44:2,20 158:4
communications 44:1 167:5,7
  169:13,17 179:9
companies 13:18,22 25:16 28:2
  28:10,12 67:10 161:16,17
  178:24
company 2:4 7:17 13:19 58:1
  69:15 72:9 126:6 158:15

169:17 216:8
compare 13:10
comparing 38:14
compelled 52:14
compelling 163:13
compensable 221:4
compensated 30:25 187:1,6
competence 146:11,13
competing 140:11 199:4
competition 210:5 218:23
  221:24 222:1
competitive 219:2
competitor 183:25 221:11,11,12
competitors 198:22,24 221:25
  222:2
complain 15:12
complained 140:15
complaining 93:4 101:8
complaint 61:1 65:20 66:23
  69:13,14 71:16 73:2,8,9,11
  74:14 75:3 77:23 78:1,7 82:4
  87:16 89:6 90:7 93:6,8,14
  95:3,14 99:15,24 100:12,19
  101:12,19 102:4 104:14
  105:21,21,2 4 106:1,2,3,5,5,8
  106:11,13 107:2,3,18,25
  111:6 112:23 114:16 115:9,10
  115:13,15,19 116:21,22 117:1
  118:2,24 131:19,20 162:20
  163:16 164:6,10,15,21 166:6
  166:7,10,14,17,21,2 5 172:20
  172:24 173:14 175:14,22
  176:10,17,21 177:20 183:14
  184:7 189:16 194:7,22 195:7
  197:7 202:2 203:2 205:24
  210:22 211:3,20 214:21 225:7
  226:10,24 227:19 228:3
complaints 60:12 62:7 88:14
  92:20 93:11,15,18 104:10
  107:1 113:4,8 114:20 115:3,5
  115:8 116:15,20,23 118:2,19
  118:25 139:21 150:20 151:8
  151:14 160:16,17 163:2,25
  164:4,5 186:8,11 202:17
  233:23
complete 137:6 140:3,9
completed 39:5 40:11 47:14
completely 16:24 159:19 162:7
  168:2 184:25 191:6,6 209:20
  209:23
completing 40:16
completion 13:19 37:23
complex 48:4
comply 15:21
component 10:21 34:24
components 219:12,14
comprehensive 38:5 46:20
computers 172:17
conceal 166:3 168:2 191:8
  208:19
concealed 161:2 197:22,25
concealment 196:5
conceals 204:24
concede 113:20,23
concept 119:3 175:12
concern 8:4,7,13 72:9 74:19
  234:1,2,14
concerned 9:17 74:18,19 201:6
concerning 91:3 162:1
concerns 82:15,19 83:14,24
  184:16
concert 168:1
concluded 70:5 236:4
conclusion 156:17,17
conclusory 176:20
Concourse 2:13
concrete 96:3 224:16 226:15
conditionally 103:13 121:12
conduct 47:17 51:8 157:24

158:6 159:11 160:16 169:6,7
  169:10,19 170:3,7,17 171:19
  172:16,1,9 176:18,22 183:7
  187:25 188:1,4,9,11,12
  193:20 194:15,24 198:17
  201:3,3,7,24,2 5 203:15
conducting 10:2
conference 50:11
confidential 73:7,12 76:17 231:3
  233:4,20
confidentiality 76:5,11 77:13
  78:13,19 87:14 90:25 94:2,7
  230:21 232:9 234:21
confirm 39:18 184:9
confirmed 42:12
conflict 12:21 58:25 66:16
conflicts 25:10,11 51:7
confused 123:16 126:17 171:3
  171:13
CONGDON 3:14
congratulate 42:20
congratulations 42:19
Congress 105:16
conjunction 66:3 67:6
connection 43:18 110:14,17
  159:5 205:16
conquer 56:20,20,22 60:15
  104:15 106:25 107:6
Conrad 129:4
conscientious 103:12
conscious 168:11 199:2,2,10
Consent 12:5 19:22
consenting 80:14 191:14
Consequentiality 235:14
consider 12:13 50:7 152:20,20
  152:22 233:14
consideration 57:11
considerations 157:20
considered 11:11 41:3 154:1
  180:23 186:17,17,18 192:2
considering 7:1 48:9 133:1
  231:16
consisted 208:17
consistency 59:7
consistent 36:9 38:13 59:6 62:4
  80:13 81:21 130:14 168:3
  191:11,13 225:1
consisting 22:7
consists 39:6
consolidate 107:13 118:6
consolidated 60:12 99:24 100:19
  101:11,22 113:4 114:16 118:2
consolidation 38:9 101:22
conspiracy 84:23,25 166:14,14
  178:3,5 181:16 188:17,23
  189:19,20
conspirator 188:24 189:2
conspiratorial 190:2
conspired 191:7,8 208:19
constitute 210:23
constituted 170:24
construct 71:23
construction 201:5
construed 196:23
consultants 158:17
consumer 40:1 47:18 62:8
  145:12 150:11 155:7 157:11
  200:16,18,1 9 202:22 203:12
  205:6 206:5 210:5 215:19
  217:19,25 218:14,20
consumers 38:22 39:24 43:5,23
  44:15,17 86:23 150:9 167:6
  202:5,18,19 205:21,25 206:4
  213:14 217:21,23 219:9
  224:10
consumer's 39:24
contact 28:5 39:19 42:16
contain 212:6 218:16
contained 160:24 219:13

containing 197:11
contamination 221:15
contemplated 10:3 67:17 233:6
contend 187:18 201:10
contention 224:10
CONTENTS 5:1
contested 144:25
context 124:18 131:10 183:6,9
  199:1 200:22 207:18 229:10
contexts 149:25
continually 38:13
continue 19:21 37:24 49:8 50:5
  190:15
continued 47:16 184:17,17
continues 25:19
continuing 19:23
contract 61:23
contrary 107:12 134:1 141:5
  177:6 196:23
contrast 166:4 169:21
contrasting 38:14
contribute 34:12
contributes 48:23
control 136:21
conundrum 8:25
conveniently 155:6
Convent 3:23
conventional 146:10
conversation 33:6,16 34:11
convicted 156:7 189:20
conviction 156:7
convince 33:15 147:7 233:10
convinced 34:8,10 59:12 67:13
  185:1,6
convincing 67:15
cooperate 159:13
cooperating 157:22
cooperation 43:19 44:14 158:9
  158:11
coordinate 46:13 49:8
coordinated 8:6 13:11 27:24
  28:7 38:22 45:24 138:25
coordination 48:7
copied 15:23 226:10,11
copiously 61:25
copy 16:7
Coral 1:20
corn 221:14,15,16
corner 65:12
cornered 109:3
corners 228:3
corporate 79:9 159:17 175:17
  176:12,15 177:8
corporation 72:10,12 79:25
  160:3 212:12
corporations 182:21
correct 8:21 16:3 25:3 37:12
  52:22,24 53:12 68:4 70:23
  73:3 76:8 80:23 86:12 88:12
  89:22 99:8 101:14 102:5
  121:8,10 140:21 155:3 166:8
  205:14 211:11 212:16 229:15
  229:18 234:4 235:10,17
corrected 222:18
correcting 235:17
correctly 8:15 208:4
cost 43:11 46:9 135:20 203:25
costs 83:7 142:6
couch 13:17
counsel 21:16 23:11 30:4,25
  33:5 34:7 35:6 54:11 75:11
  88:3 110:23 187:24,24 228:19
count 86:13 150:19 152:6 156:7
  157:1 210:24,25 211:2,5,24
counting 188:20
countries 11:4
country 119:5 158:3 204:19
counts 150:15
County 14:25

couple 51:18 56:19 59:3 60:17
  65:8 78:23 90:23 149:25
  154:14 157:17 164:20 188:19
  191:5,11 207:8 228:17
course 29:21,24 50:17 51:1
  60:22 61:7 66:9 67:4 91:9
  92:10 93:10 94:16 95:11,16
  96:5 97:6 105:7 118:10
  119:20 126:4 135:18 136:14
  153:24,24 169:15 170:8
  172:17 173:12 180:5 191:1
  194:1 202:13 217:7 224:18
court 1:1 4:10 6:2,23 7:1,7,9,14
  7:24 8:19,22 9:1,4,9,11,18,20
  9:22 10:10,16,23 11:9,13,15
  11:20,24 12:15 13:2,4,9,14,25
  14:3,6,10,16,20,22,24 15:1,1
  15:1,3,3,6,10,12,1 7 16:1,4,9
  16:11,16,20 17:1,8,12,20,22
  18:1,4,7,15,17,19,24,24 19:1
  19:5,6,6,14,17,21,2 5 20:2,8
  20:13,15,17,22 21:4,10,11,21
  22:1,5,9,13,17,22 23:1,7,11
  23:14,19,21 24:6,10,14,16,19
  24:24 25:5,10 26:3,9,13,17,21
  26:24 27:6,13,16,19,2 1 28:4,8
  28:14,19 29:6,9,11,14,18,21
  29:24 30:17,20,2 3 31:4,7,12
  31:14,17,21 32:1,3,10,12,16
  32:21,23 33:1,7,8,10,15,22,25
  34:5,8,14,15,17,19,20,2 5 35:3
  35:6,11,16,20,21,2 5 36:3,5,9
  36:14,17,20,23 37:1,4,6,10,15
  37:18,20 41:17,20,23 42:2,19
  42:22,25 44:9,12 45:1,3,7,16
  45:19 46:23 47:1 48:13 49:25
  50:1,9,14 51:16,21,23 52:3,4
  52:9,11,16,19,21,2 3 53:4,9,11
  53:13,15,17,19,20,2 3 54:2,6
  54:12,22,24,2 5 55:1,3,11 56:7
  56:13,19,24,2 5 57:4,6,15,17
  57:19,20,22 58:5,6,7,10,11,15
  58:16,22 59:2,22,24 60:6,8,11
  61:20 63:2,9,24 64:2,7,11,13
  64:20 65:1,5,19,2 5 66:5,7,9
  66:17 67:13,18,24 68:6 69:2
  69:10,19 70:19,19,21,24 71:8
  71:13,21,25 72:4,12,16,21
  73:2,5,8,14,19,2 3 74:2,5,7,11
  75:20,22 76:1,4,9,12,14,18,21
  76:25 77:2,4,6,9,2 3 78:2,5,9
  78:12,25 79:3,5 80:7,7,20,22
  80:24 81:2,7,13,18 82:1,3,6
  82:12 84:1,6,11,13,15,18,21
  84:21 85:1,6,12,16,21,2 5 86:3
  86:8,11,13,16,19,24 87:2,7,10
  87:14,18,21,24 88:1,3,11,16
  88:18,22 89:8,17,18,23,25
  90:3,5,9,13,17,21,22,2 3 91:7
  91:10,13,16,20 92:2,4,9,11,13
  92:17,21,23,2 5 93:4,8,17,20
  93:24 94:5,8,10,15,17,2 5 95:2
  95:12,17,2 5 96:4,7,14,21 97:1
  97:4,8,9,18 98:1,5,7,9,13,18
  98:24 99:2,6,11,1 2 100:2,4,5
  100:8,11,16,24,2 5 101:4,7,8
  101:13,15,17,2 3 102:1,4,6,11
  102:16,22 103:1,5,11,17,23
  104:7,11,23,2 5 105:2,5,12,18
  105:23 106:4,9,12,19,21,24
  107:4,9,21,22 108:6,9,13,21
  108:25 109:9,12,20,22,23
  110:3,5,5,10,17,2 5 111:4,7,10
  111:13 112:5,8,19,22 113:1,6
  113:6,20,23,2 5 114:6,10,11,17
  114:21 115:4,6,11,16,21,25
  116:4,7,18 117:2,7,13,15,19
  117:24 118:4,10,15,16,21
  119:2,4,6,7,8,9,14 120:4,7,11

120:13,20,22 121:4,5,6,9,11
  121:15,18,24 122:1,4,8,11,12
  122:15,17,23 123:1,8,11,15,18
  123:20,24 124:2,10,14,16
  125:8,10,12,17,18,20,22,25
  126:3,7,10,15,17,19,23,25
  127:9,12,14,17 128:1,3,8,10
  128:10,16,23 129:3,24 130:6
  130:9,13,17,23 131:1,14,18,24
  132:9,11,15,17,2 1 133:11,14
  133:19,24 134:3,6,3 135:1,5,7,9
  135:15,23 136:2,7,11,15,17,20
  136:23 137:1,3,13,16,18,21
  138:3,14,17,20,22 139:4,7,14
  139:20,24 140:4,14,19,22,24
  141:1,6,15,25 142:4,13,16,20
  142:23 143:3,11,17,19,24
  144:4,10,18 145:3,7 146:3,15
  146:19,23 147:3,7,9,12,18
  148:2,4,5,5,13,22,2 5 149:2,6
  149:7,8,10,17,1 9 150:8,10,13
  150:23 151:2,12,16,19,22
  152:7,11,15,20,22 153:5,6,9
  153:14,21,23 154:7,9,12,15,18
  154:23 155:2,4,9,11,17,20
  156:4,12,15,18,21,2 3 157:13
  157:15 162:12,16,18,24 163:8
  163:17 164:1,7,11,24 165:1,5
  165:7,11,13,15,2 5 166:7,9,16
  166:23 167:2,9,14,18,21
  168:4,7,9,12,16,19,2 2 169:1,3
  169:25 170:9,13,15,19,21,25
  171:3,6,10,12,16,20,2 3 172:2
  172:5,7,9,11,19,2 2 173:3,7,10
  173:11,14,19,2 1 174:4,7,9,11
  174:14,18,24 175:3,5,22
  176:2,4,13 177:1 178:9,12,15
  178:19 179:1,4,11,16,21
  180:3,6,9,13 181:10,12,17
  182:6,8,11,16,20,2 3 183:16,20
  185:5,10,14,23 186:13,15,20
  186:25 187:5,8,14 188:20
  189:2,5,12,15,22,5 190:10,13
  190:17,19,24 191:2,6,10,20
  192:10,13,18,21,24 193:4,8,10
  193:25 194:4,7,12,15,24
  195:2,5 196:3,15,18,21,21,24
  197:1,5 198:11,15 199:16,20
  199:23 200:2,12 201:6 203:7
  204:8 205:10,13,16 206:11,16
  206:20 207:1,5,10,13,15,20
  208:8,10,14,20,22 209:1,5,8
  209:22,25 210:1,24 211:1,4,6
  211:9,12,15,17,24 212:3,13,17
  212:22,25 213:5,8,10,17,25
  214:3,9,14,19 215:3,8,11,14
  215:21,23,24 216:3,5,10,14,19
  216:23 217:3,7,13 218:8
  219:20,24 220:17 221:9,17,19
  222:7,9,13,21 223:4,8,13,16
  223:17,19,21,22,2 5 224:17,18
  224:22 225:3,16,21 226:2,22
  227:21,23 228:10,11,13,13,17
  228:21,24 229:2,14,17,25
  230:10,16,23,2 5 231:9,14,18
  231:23 232:7,11,11,24,25
  233:1,5,6,8 234:5,11,13,17,25
  235:4,7,18 236:3,11
courthouse 4:11 129:6,6 236:11
courtroom 5:1 31:16 32:2,3,5,9
  49:11 51:25 62:25 63:1 108:5
  120:13 185:15
courts 58:20 130:15,18,19,20
  146:11,13 181:19 193:18
  226:8
Court's 19:13 56:17 103:9
  147:21
court-appointed 38:8
cousins 182:21

cover 74:25 82:16 83:15 139:9
coverage 235:19
covered 50:22 62:20 75:24 133:7
  148:19 158:14
covers 152:12
co-conspirator 156:13 189:21
co-conspirators 161:10,18
  162:10 189:10,10,25 190:3,6
co-drafted 166:18
Craig 50:21
crash 212:8
crazy 54:10 109:5 114:11
create 38:25 122:6 210:12
created 40:5 182:10
creates 68:21
creative 28:2,4 40:17 41:7
credit 11:1,1 12:23 127:3 142:1
credited 35:7
credits 17:14
crimes 207:16,17
criminal 14:11 80:19 159:9,10
  160:10 188:2,9,23 189:19
critical 38:18 39:4 41:14 42:24
  43:1 140:12 149:16
Cromwell 3:11,14 102:14
  163:12 164:11
Cross 177:14
cross-examination 34:21
crucial 70:16
Cruze 184:24
crystal 168:14
cumulative 48:18,20
cure 114:2,3
current 99:15 158:1 206:4
currently 33:18 41:8 45:14
Curtis 1:18 7:3 141:19
cushion 82:17 83:16
cusp 137:10 140:18
custom 143:2
Customer 51:4
customers 219:2 221:7
cut 143:23
cutoff 220:14
cutting 38:20 42:9 50:5

D

D 3:1,10,22 4:11 236:11
Daimler 3:5 61:2 65:21 66:2,12
  68:1 70:18 71:18 72:10,10,12
  72:25 74:15,17,20,22,24 75:1
  75:5,14 76:13 83:17 88:3
  194:11 230:19,19 231:3,4
  234:22
Dallas 4:3
damage 203:6 205:9 206:10
  220:12
damaged 29:19
damages 96:11 97:23 198:12
  203:16 205:3,4,4,5 206:24
  208:11 224:3,4,5,14,14
dangerous 29:4 138:11 160:25
  218:6
dark 230:13
data 39:4,6 43:18 48:4 84:3,8
date 30:5 32:20,21 41:7 47:4
  89:13,13 90:10 194:8 236:10
dated 160:1
dates 71:23
David 1:22 4:6 6:21
day 169:12 195:14 198:6 206:10
days 58:20 59:3 90:23 93:15
  131:17 198:9
DC 3:16
de 56:4
dead 117:14
deal 16:4 22:23 68:9 115:3,8,10
  115:12 117:7 142:10 152:14
  180:20 213:1
dealer 29:20 40:15

dealerships 33:21 47:13
dealing 40:19 45:12 46:3,21
   47:16 49:7 110:9 176:23
   198:21
dealt 45:23,24 98:15 150:4
death 166:20
deaths 208:2,2,5
debate 146:4 192:22,23
deceiving 160:25
December 1:7 52:6,23
deception 145:13
decide 17:8,23 30:21 137:23
   153:1
decided 62:3 134:24 150:3
   205:23
decides 145:18
decision 81:2,4 118:15 131:16
   165:20 169:5,23 177:15,19
   214:24
decisions 165:18 168:25
decrease 56:8
Decree 12:5 19:22
Dee 50:19
deemed 166:13
defect 87:6 96:16 98:2 138:2,8
   138:25 166:4 168:2 183:3
   185:3,21 186:3 188:3,16
   190:21 191:8 194:2 197:22,25
   199:14 204:14,17,19,24,25
   207:23,23 208:20 224:12
defective 29:5 37:24 39:15 70:10
   75:6 81:25 83:5,12,21 96:12
   137:24 138:10 163:5 197:23
   215:14 216:20,24 218:7
defend 88:24 90:13 104:4
   106:10 208:21 229:6
defendant 14:11 55:17 61:24
   64:21 66:1 72:11 89:20 91:2
   91:24,24 101:8 102:9 106:22
   107:10 113:7 114:15 121:1
   125:6 127:4 151:25 156:2
   157:21 158:1,11,13,19,22,25
   159:4,7 163:9 170:4 175:23
   179:12 180:20 183:17 189:20
   194:4,5 195:3,6,7,8,9,11,15
   195:17,20 212:2 213:12,15,22
   214:22 216:24 217:5,11,15
   232:11
defendants 51:13 61:3,4 64:22
   77:17 78:19,21 85:2,4 91:4
   92:15 93:13,25 96:14 97:17
   99:2,3,15,21 101:20 105:9,19
   111:3,15,23 112:3,11,15,19
   116:3 121:1 127:20 142:15
   150:6,8,11,18 151:5,6,7,9,15
   155:7 163:12 170:1 171:18
   173:19,25 175:15,19 176:11
   176:12 177:6,23 180:23,23
   187:22 188:1 190:13 192:1,4
   192:7,8 193:21 194:10 195:5
   195:18 196:9,22 197:19,23
   200:9 201:11 203:14,14
   205:19 208:21 209:19 211:14
   211:19 213:20 217:22 228:18
defendant's 95:9 102:20 114:5
   158:9 176:18 190:1 198:8
   221:10,12
defense 64:25 85:9,10 220:21
defer 66:17
deferral 235:15
deferred 208:6
deferring 66:19
deficient 39:7
define 176:11
defined 21:12
definition 25:25 96:12
defraud 182:10,14 197:17
defrauded 69:25 198:19
degree 8:5

delay 131:20 145:2
delayed 50:20 60:17
deliberate 162:24
deliberately 159:5
Deloach 2:12
demanded 185:19
demographics 39:24
demonstrably 226:23 227:3
demonstrate 80:15 81:10 170:6
   174:23 176:24 191:16
denial 84:1 181:18 208:10
denied 21:19 24:11 35:4 70:20
   92:5 107:23 150:1 170:9
   171:1,5 208:22 230:1 235:13
   235:14
denominator 214:23
Dental 178:23 193:18 198:23
dentists 179:2
deny 15:22 64:2,16 70:21 136:15
   149:13 156:19
Department 160:2 192:4,6,9
departments 39:9 43:17,20,22
depending 40:19 109:10 127:3
   139:6 140:24 143:4 149:12
depends 35:21 36:7 117:16
deployed 184:10,23
deployments 166:20
deponents 148:21
depose 144:8,14
deposed 148:9
deposing 142:5 144:7
depositions 142:12 148:8,21
   149:3
derived 197:16
describe 214:22
described 158:6 213:19
describing 116:19
description 5:13 226:14
deserves 11:1,1
designate 76:17
designated 73:12,18
designation 230:21 234:21
designations 231:22 233:4
designed 183:7 196:1
desperately 164:16
despite 48:8 81:22 82:19,19
   196:22
destroyed 151:5 184:4
detail 47:24 48:21 157:17
detailed 43:8 152:23,24 153:1
determination 133:1
determine 21:25 38:2 80:14 81:9
   86:6 122:14 161:7 191:15
   210:17
determined 25:6 138:10
determines 138:1
determining 22:8 162:3
detriment 144:10,12
Detroit 106:15
develop 133:6
developed 38:4 40:9,17 41:7
   219:12
development 10:2
developmental 48:7
deviations 82:23
devised 160:21
dialed 43:3
dictated 32:23
diesel 23:7
differ 93:13
difference 24:13 92:14 151:16
   216:14
different 25:13 27:3,11 33:21
   39:21 40:6,6,10,18,19 41:2
   47:17 51:10 56:1,1 66:23,24
   68:8 104:2,15 109:15 114:23
   114:24 116:21,24 126:15,16
   131:7,20 143:2,12 144:23
   145:6 149:25 152:19 154:23

165:1,2 170:3 171:15,17
   182:22 186:10 207:18 209:1
   209:20,23 210:7 223:1 225:13
differently 12:12 27:12 40:6
   86:22
difficult 46:12 145:9 151:20
difficulty 83:20
diminished 224:6,16 226:13,15
direct 38:23 42:16 46:3,21 47:8
   89:25 98:20,23,24 99:9,10,11
   101:9 110:22 112:18 121:2,3
   121:3 129:15 164:6,10,14
   201:2 202:6,1,3 221:25
directed 71:18 72:25 74:17,17
   210:5
directly 23:9 39:15 61:12 62:10
   77:20 89:19 117:1,11 134:1
   141:5 201:4,25 204:4
directors 18:5
disagree 21:16 78:22,23 112:14
   226:8 230:9 231:8
disagreed 224:18,24
disagreement 59:14,15
disagrees 12:18
disappointed 210:6 216:1
   218:13,20 219:23
disassembly 184:19
disclose 96:17 158:13 183:3,10
   183:12 185:21 186:2 188:4,17
   194:3 199:14 204:14 205:15
   210:13 216:25 233:21
disclosed 30:4 213:15 227:8
disclosing 233:21
disclosure 158:21
discount 10:18 11:7,9
discovery 69:2,6,13,15,1 7 70:2
   71:24 94:22 97:7 99:15,17
   134:9,17,19 135:3,5,21
   136:18 142:11 144:3,5,6
   145:19 153:3 173:18 174:4
discredit 127:3
discretion 17:5 18:10,25 19:13
   130:19 147:21
discuss 62:19
discussed 186:2
discussing 131:9 232:23
discussion 60:10 226:7
discussions 98:23
dismiss 1:10 6:9,16 30:21 54:18
   60:3,12,21 62:2,9 71:8 92:5
   93:17 105:25 108:9,11,16
   116:10 136:24,25 140:25
   142:8 150:1,22,2 5 151:20
   152:5,17 156:19 161:6,20
   162:3 165:15 168:16,22
   169:25 170:9,11,19,20,25
   171:1,7,8,2 3 172:5 178:22
   200:14,16 218:9 219:8 226:24
   228:2 230:1,5,15
dismissal 97:24 149:5 152:1
   165:21
dismissed 111:15 112:12 114:20
   115:8 122:16 150:7 153:2
   173:7 204:6 208:22 223:12,12
   223:18 224:3 226:1 231:17
dismissing 112:23
disparage 218:25
dispose 148:1
dispositive 147:22
dispute 155:11
disregard 16:24
distinct 195:17 197:9
distinction 200:17 218:22
distinguish 8:11
distinguished 196:5
distinguishes 195:21
distributed 24:4
distribution 18:23 79:24 155:5
distributions 17:17

district 1:1,1,11 58:4 61:13
   78:17 98:21 100:23 101:3,4,9
   101:10,11,2 4 102:20 108:3
   117:18 126:12,12,15,16 156:5
   157:23 168:23 208:11 221:14
   221:17 222:21,23 223:17,21
   230:3,10
districts 58:4 99:20 100:13,18
   102:23 104:2 108:1 109:17
divert 221:7
divide 56:20,20,22 60:15 106:25
   107:5
divided 104:15 192:19
DMV 44:24
docket 14:4 16:14 24:25 25:2,3
   103:9 111:6 117:1,11 131:18
   136:21 138:9 145:1 148:20
   154:16,20 161:22
doctrine 146:7,8
document 71:6 80:3 154:2,10,21
   158:23 234:10
documents 13:15 70:2 71:5
   85:23 89:7 135:17,19 152:19
   153:20 159:14 161:14 173:24
   173:25 174:2,3,16,1 7 177:17
   179:25 185:8 189:23 227:20
   231:3,5,12 232:24,25 233:5
Doe 124:13,21
doing 10:19,23 12:25 13:24
   23:25 27:15 35:7,9 45:23
   47:18,20 48:16,22 65:16
   67:22 89:14 94:10,12 100:2,3
   103:18 104:13,15 106:21
   113:13 116:13 132:15 134:13
   134:14 137:3,4 146:21 157:3
   193:21 194:22,25 198:24,25
   199:1 203:25 206:18 234:6
dollar 10:19 13:20 226:16
dollars 8:17 9:25 86:9 162:11
   188:8
Dolly 2:16 7:23 31:10
domain 226:21
done 7:2 8:11 26:2,4 33:13 37:18
   37:18 40:17 42:7 43:18 44:2
   44:19 45:6,9,10 49:16,18,19
   49:19,21 56:18 59:2,19 62:5
   87:20 91:2,25 92:5 94:18
   95:15,17,18 107:20 108:23
   110:13 113:1,5 116:24 126:20
   126:21 128:15 129:19 132:23
   134:12 135:15,16 140:2 141:4
   141:6 150:3,23 170:13,15
   187:5 197:5,6 222:4 228:8
   233:16,16
doubt 160:8 203:1 227:15
Doug 2:20 7:21 24:23
dovetails 38:21
down 10:10 23:25 54:16 80:7
   82:12 154:4 159:7 160:6
dozens 40:25,25
drafted 41:8 89:6 175:3
dragged 116:5
dragging 29:17
dramatic 105:14
drastically 136:9
draw 214:20
Drinker 4:2
drive 29:4 199:5 217:24
driver 40:13,15 184:22,25
drivers 38:11 185:21
drives 38:17 219:2
driving 39:13 207:24
drop 147:7
drove 219:17
Drubel 2:1 211:5 212:24 213:3,3
   213:7,9,11,18 214:2,4,11,16
   214:20 215:6 217:2,4,9,14
   220:18 222:8
duel 228:5

**dump** 98:10
**duplicate** 27:8 101:15
**duplication** 55:22 56:4 101:18
    101:21
**duplicative** 9:25 28:14 104:9,12
    104:12
**during** 162:22 188:3
**duty** 210:13

**E**

**E** 236:6,6
**each** 10:16 30:3 37:21,25 39:4
    39:24 40:5,9 43:2,9 49:6
    54:14 58:14 80:9 95:7 96:5,18
    96:18 98:19 99:21 102:20
    111:22 112:3 113:7 114:5,15
    116:3 175:23 190:5,8 191:25
    193:22 194:2,4,5,25 195:3,5
    197:17 199:8,9 211:19 212:2
    214:17,19,22
**earlier** 46:8 92:13 163:19 164:4
    164:21 165:14 173:17,24
    177:3,11 178:7 230:18 233:3
**early** 99:3 132:3,3 184:23
**earned** 46:5
**easier** 71:14 76:6 108:14 116:13
    179:16 206:13 230:11
**easiest** 76:4 214:24
**easily** 206:8
**East** 2:6
**Eastern** 156:5 157:23
**easy** 96:16 107:5 152:4,17
    166:23 204:13
**eat** 119:12,13 233:17
**eaten** 126:10
**economic** 56:12 97:20 125:21
    183:12 225:23 226:14
**economies** 46:10
**economy** 148:20
**edge** 38:20 50:5
**effect** 39:1 48:18,20 141:22
    212:11
**effective** 33:18,19 34:13 43:13
**effectively** 124:17
**efficiency** 146:2
**efficient** 13:5,7 60:16 144:9
    146:6 228:7
**efficiently** 144:13
**effort** 11:5 45:22,25 47:18,21
    49:20 145:2
**efforts** 37:19 47:17,20
**egg** 233:16
**Eidson** 1:19
**eight** 138:14,23 139:8,9 143:11
    154:4
**eighth** 64:3
**either** 7:9 15:8 18:5 50:10 56:8
    99:20 122:15 123:25 125:17
    139:16 140:23 143:23 147:20
    161:9 186:18 202:19 203:6
    230:6 232:5
**elaborate** 47:24
**elderly** 40:15
**Elder-Johnson** 2:12 7:19 14:16
    14:16,23
**elected** 6:15
**elegant** 187:8
**elegantly** 42:10
**element** 75:14 174:20
**elements** 151:11,13 165:23
**Eleventh** 57:11,16,2,5 75:12
    96:11 97:13 130:20 165:17
    168:13,19 169:4,5,23 171:25
    172:7 177:14 178:22 179:3
    186:10 194:16 195:10,14,24
    196:21
**eligible** 80:9
**eliminate** 18:7 105:15 106:13
**eliminated** 30:16 44:2

**Ellis** 3:2
**eloquent** 10:12
**email** 28:6 38:24 40:7 83:18
    87:23 88:23,23,23 89:14,25
    90:8,10 91:2,23,24 174:14
    194:8
**emails** 39:20 40:18 46:14 47:9
    70:18 71:19,21,22,24,25 72:8
    72:8,9,23,25 73:2,10,11 74:17
    74:18,21 75:2,18 76:5 77:19
    77:21 78:2,7 87:8,9,10,11,12
    87:16 89:7,9,18 90:4 91:3
    93:9 174:9 193:25 194:1
    230:19,22 231:4 234:15,20,22
**emanating** 97:21
**embarrassing** 232:5
**Emerson** 59:7
**emission** 188:5
**emissions** 188:5
**emotional** 40:8
**emphatically** 201:12
**Empire** 200:25
**employee** 170:6
**employees** 83:14 158:1,17
    159:17 160:20 161:15
**empty** 210:3
**encompass** 107:17
**encourages** 28:2
**end** 9:13 27:10 44:10 45:3 46:23
    46:24 59:21 68:17 107:22
    137:5 142:17 144:7 145:9
    148:23 157:18 169:12
**ended** 159:17,18
**ends** 181:8
**energetic** 184:18
**enforcement** 19:24
**engage** 38:22 190:4
**engaged** 169:10 201:11 220:5
**engagement** 13:18
**engaging** 10:1 158:3
**engineer** 83:17 144:8
**engineering** 72:23
**engineers** 83:18,23 144:8 186:1
**English** 6:6
**enhance** 198:8
**enormous** 25:22
**enough** 12:17 28:25 50:22 68:14
    69:11 71:7 74:6 86:19 92:5,17
    94:22,24 95:2 109:5 128:1,3
    130:6 142:6 152:11,25 167:19
    168:5,7,9,10 172:18 173:8
    185:15 190:19,24 191:1,3
    195:1 215:5,11,1 6 219:8
    226:16,17 227:23 228:6
**enrich** 160:22
**enrichment** 157:12
**ensure** 185:21
**enter** 19:5
**entered** 37:8,22 73:13 80:22
**entering** 172:14
**enterprise** 161:11 165:23 168:15
    169:9,20 170:24 172:14 173:1
    173:6 174:20 193:5 195:8,11
    195:16,18,20,2 5 196:4,7,10
    197:4,8,9,14,15,1 8 201:3,11
    205:18 208:17,23,24 209:3
    229:2,4,5,8
**enterprise's** 197:13
**enters** 52:9 79:15
**entertain** 49:13
**entertained** 34:11
**entire** 27:4 160:15
**entirely** 224:24
**entirety** 113:14
**entities** 175:16 176:12,16 177:8
    195:17,19 197:9
**entitled** 52:17 55:9 130:9
**entity** 72:18 175:7
**entries** 25:2

**Entry** 14:4 16:14 24:25
**envelope** 219:21
**Epps** 2:12
**equally** 124:24
**equipment** 80:10
**equipping** 82:8,10,14
**equivalent** 217:17
**erroneously** 235:13
**error** 235:16
**especially** 118:7 180:24 181:13
    198:21,23 215:19
**ESQ** 1:13,14,14,18,2,2 2:1,4,9,12
    2:17,20 3:1,1,5,10,10,14,18
    3:22 4:1,5
**essence** 109:23 212:6 217:11
**essentially** 17:14 37:19 58:1
    67:9 71:12 79:9 98:23 99:18
    140:3 233:3 234:19
**establish** 124:25 125:5 153:8
    164:17 175:21
**estimate** 23:17
**estoppel** 145:10 147:5
**et** 51:11 208:12 212:14
**eulogies** 35:11
**euphemism** 184:19
**evaluate** 15:13
**even** 10:6 22:10 28:24 40:25
    42:10 52:23 55:21 59:6 63:10
    65:11,15 67:15 72:22 74:19
    90:5 91:18 92:4 94:21 100:6
    103:18 104:11,19 124:14
    132:8 134:22 135:12 139:14
    143:7,9,15 145:25 146:11
    148:8,14,18 163:15 168:18
    170:13,15,21 180:15,18,21
    181:2 182:16,20,23 186:17,17
    194:24,24 198:6 212:18
    216:17 220:15 228:24 232:12
    232:18
**event** 134:15 212:8
**eventually** 52:15 62:6 115:21
    180:23 206:5,12 231:15,18
    232:13
**ever** 20:18,21 21:7 72:20 79:22
    81:12 119:17 140:5 157:4
    230:2
**Everglades** 12:7
**every** 24:4,8 49:5 53:2 95:2
    101:8 105:13 113:8 117:16,17
    130:21,23 141:14 193:10
    195:25 210:16 213:12
**everybody** 9:12 11:4 12:7,17
    48:1 56:21,21 64:21 65:3,15
    66:9 77:16 85:17 86:11
    131:20 211:15,16 235:4
**everyone** 104:14
**everyone's** 144:12
**everything** 13:6 14:3 56:16
    61:15,19 66:6 71:3 73:19 74:2
    75:15 78:18 93:12 100:17
    104:17 107:20 109:1 139:18
    140:18 152:9,12 188:10
    234:23
**evidence** 5:12 12:5 19:2 55:25
    56:1,2 74:7 81:23 82:1,2
    133:5 141:13 151:5 158:2,18
    158:24 160:9 180:12 193:2
**exact** 224:4
**exactly** 74:10,13 76:6 100:14
    124:21 132:12,18,22 135:11
    138:5 139:6 140:16 147:14,14
    163:18 179:9 208:21 234:12
**example** 40:4 41:14 46:8,10,16
    84:25 95:21 166:17 183:9
    189:1,4 190:6,16 191:12,25
    198:21 212:2 221:9
**examples** 40:12,16 82:8 169:13
    176:8 214:23
**excellent** 119:25

**except** 77:8,17 79:8 210:14
    233:17
**excessive** 25:6
**excessively** 210:23 211:21
**exchange** 167:4
**exciting** 135:25
**exclude** 10:3,14 11:11,16
**excluded** 205:21 206:1
**exclusive** 181:9 191:9
**exclusively** 219:20
**excuse** 14:13 41:19 44:22 79:11
    79:13 82:9 120:18 122:10
    141:8 177:8 179:20 185:1
**excused** 6:5
**executed** 203:3
**executive** 13:6 129:5
**executives** 160:20
**exempted** 133:3
**exercise** 112:17 113:6 114:4
    117:3 130:18 132:14
**exercising** 27:9 113:15
**exhausted** 129:15
**Exhibit** 154:14,22,24,2 5 155:19
    158:7 227:4
**Exhibits** 5:11,12
**exist** 225:6 229:2
**existed** 164:20 220:4,6
**existence** 33:18 72:13 166:10
    190:1 231:21
**existing** 39:2
**exists** 162:20
**expanded** 117:2 139:15 181:18
**expect** 14:17 23:14 169:16,16
    174:16
**expecting** 35:13
**expenses** 21:14 224:7 225:5,8,11
**expensive** 144:5
**experience** 28:20 110:16 162:5,8
**expert** 50:3 145:18,19
**expertise** 132:14 147:16
**experts** 147:13
**expire** 149:9
**explanation** 226:15
**explicitly** 217:10
**explode** 213:15,21 214:25
**explosions** 184:24
**exposure** 138:11
**expressed** 82:15 83:24
**extend** 124:17 149:13
**extended** 20:11,15 22:11
**extension** 149:11
**extensive** 140:2
**extensively** 37:25 47:24
**extent** 15:20 37:23 44:1 46:14
    56:4 70:6 127:22 178:5
    203:13
**external** 158:18
**extorted** 181:23 182:2
**extortion** 181:21
**extra** 10:8
**extraordinary** 132:25 141:12
**extremely** 230:10
**eye** 185:1 214:8 227:6
**eyes** 162:25 217:15

**F**

**F** 236:6
**Facebook** 47:9
**facet** 141:14
**facie** 125:1
**facilitating** 157:25
**fact** 38:5 41:11 44:6 48:9 52:1
    52:19 58:19 67:22 70:1,4,8
    75:4 78:21 84:4,10 97:9,12
    98:12,16 107:19 124:21 137:5
    144:24 146:21 158:7 159:15
    168:10 174:22 177:7,22 181:3
    187:2,15,20,2,2 200:17 201:11
    202:7 205:24 208:23 211:22

213:11,12 217:6,24 219:7,15
221:1 227:6
factors 48:19 138:12 147:23
facts 70:14,15 79:10,10 107:14
118:9 158:4,5 159:24,25
160:9 226:21
factual 157:18 158:14 159:23
160:12 166:2 180:2 186:11
fact-finding 79:7
fail 9:10 178:4 218:22
failed 82:20 83:12 96:17 176:5
178:3 183:3,10,12 186:2
188:4,16 194:3 199:14 204:13
205:14
failing 176:6 178:7
fails 21:2
failure 210:21
fair 69:11 71:7 89:3 128:1,3
152:11 200:4 226:21 235:18
fairly 69:5 161:5
fairness 6:3,8,9,10 22:19 54:18
119:23 156:1
fakey 135:10
fall 171:19
false 84:2 159:6 161:1 210:9,10
210:12,16,18,2 1 213:23 216:3
217:13 218:1,21,24 219:2,3,9
220:14 221:24,2 5 226:23
227:4
falsely 218:24 220:19,24
falsity 228:10
familiar 165:24
famous 64:19
far 20:19 37:20 43:15,20 82:22
99:16,16 134:8 212:18 216:16
farmer 56:11
fashion 49:21
fast 107:5,11 149:3
fast-track 106:14
fatal 210:19
fatally 218:7
fault 62:12 141:18,25 170:22
faulty 20:19 21:9 160:24 218:23
favor 122:4 133:23 134:16
138:12 145:3 152:1
favorite 65:10
Fax 1:17,21,25 2:3,7,15,19,23
3:4,8,13,17,21,2 5 4:4,8
FCA 3:10 72:19 99:4 102:15
104:5 111:23 115:9,14 116:20
119:19 150:12 155:7 180:1
195:7 199:13
FCA's 187:24
February 30:6 80:1,20,2 1 187:3
Federal 42:12 44:5 45:24 61:21
109:19 110:9 123:4 124:16,17
124:20 129:21 151:21 159:8
159:10 161:12 175:8 189:6
210:4
FEDERICO 1:10
fee 11:12 15:13 20:5 21:15 22:4
22:8 30:13 52:15 54:23 56:5,8
173:2
feel 52:13 60:7 131:14 199:20
228:6
fees 10:5,9,11 11:18,19 12:13
16:23,24 17:2 25:5 29:25
50:20,23,24 51:10 52:18 54:4
54:12,16,5 55:5 58:12 59:11
64:4 172:14,18 192:18,20
feet 29:17
Feller 3:1 149:22,23 150:9,11,14
150:25 151:3,13,18 152:3,8
152:12,16 153:4,7,10,17,22,24
154:8,10,13,16,20,25 155:3,5
155:10,13,18,2 1 156:14,16,20
156:22,25 157:14,16 162:13
162:17,19 163:1,13 164:18,21
168:3 178:11,13,16,20 179:2

179:6 192:2,25 199:19,22
209:7 222:12,14,14,23 223:5
223:10,14,17,20,2 3 224:1,20
224:23 225:4,18,22 226:4
229:9
Feller's 179:24
felony 159:4
felt 130:15
Ferguson 4:11 236:11
few 35:1 56:25 67:1 82:7 139:12
139:17 159:16
field 29:11 50:4,5
fighting 114:23 129:9 132:13
figuratively 204:21
figure 143:8,22
figured 147:9
figures 21:17
file 1:3 64:14,15 70:19,20,21,25
98:24 99:9,10,1 1 100:13
101:9 109:24 110:22 114:23
121:23 122:10 125:13 127:14
128:4 129:15 139:21 232:14
232:18
filed 31:24 32:11 61:12 69:13,14
80:1 95:3 99:20,22,22,23
100:18,18,18 101:9,11,11,24
103:8,8,9 104:5 105:21 107:4
111:23,23 112:2,5,6,19 113:5
114:5,16 115:13,13,24 116:2
117:1,11,18 121:3,3 125:8,14
132:18 135:12 141:22 144:20
160:18 164:5,6,10,15 180:15
225:18 232:24,25 233:9,9
filibuster 47:2
filing 77:12 98:20,23 111:19
121:2 145:1
final 1:9 18:13,22 24:11 79:23
80:4 178:2
finally 225:11
financial 29:12,14 96:3
financially 232:6
find 9:10 21:8 31:14 40:12
100:16 102:7 144:23 157:22
179:8 180:17 185:17 199:5
208:11 230:9
finding 39:13 67:22 79:22 80:18
81:12 156:4 180:2 191:18,23
192:15 229:9
findings 181:3 229:3,7
fine 25:14 36:25 55:19 90:2,12
92:3 94:4 129:13 135:24
136:2 188:7 199:7 228:5,19
finish 117:23 137:3
finished 134:14
fire 184:12
firm 164:12 208:17,18,2 5 222:15
224:2
firms 208:20
firm's 195:22
first 7:25 9:5 11:2 13:5 18:14
38:6 52:2 54:23 56:23 60:25
61:6,14 66:4,13,14 67:4 80:5
83:9 93:25 94:15 95:3,12,13
101:5 113:1 129:10 132:16,18
132:24 134:21 138:3 143:4
146:9 149:4 154:2,21 157:4,4
160:10 161:19,20 163:21
165:22 169:2 178:16 179:15
179:24 186:16 188:11 193:4
210:20 217:3,4 222:19,25
224:8 228:16 234:25
fit 18:11
Fitzpatrick 31:17 41:18,20
five 42:13 63:10 65:13 98:3
116:6 148:6 153:5 200:5
209:12
fix 229:25
fixture 184:4
Flagler 1:15

flame 184:11
flat 235:14
flaws 210:19
Flexner 1:23 2:1
flick 91:1
flight 120:16 127:12 129:8
flights 119:22
flooding 44:1
floor 3:19 50:11 98:18
Florida 1:1,6,16,20 2:18 3:7
4:12 51:11 61:13 99:25
100:19 101:12 107:2,17
109:21,21 110:8 118:2,12,24
118:25 199:5 236:12
Florida's 127:20
flowed 81:5
focus 8:4 13:19 16:6 186:8
200:20
focused 127:24 128:2
folks 6:6 129:3 181:5 199:12
follow 30:1 181:19
followed 56:22 64:8,8
following 6:1 65:18 129:2
158:13 159:25 160:4
follows 65:3 99:19 158:8
food 42:4
foolish 59:7
foolproof 90:11
football 44:11
footnote 201:12
forbid 144:5
forced 62:13
Ford 1:9 2:4 6:3,17 7:16 10:1,19
10:20 12:25 15:19 21:2 22:17
23:3 25:14 30:11 33:5 55:16
55:18,25 141:11 150:20,20
156:1 235:12,12,15,20
Ford's 235:13,14
foregoing 236:7
foreign 127:4,20 158:2
forget 11:3
forgot 209:6
Forjas 57:16,24
form 77:8 87:4 177:7 178:5
221:24
formal 40:8
format 59:25,25
formatted 27:12
former 158:1,16
Fort 98:7,9,10
forth 154:1 159:11 160:9
forthcoming 111:21
fortunately 32:5
forward 46:7 52:8 66:1 113:19
113:19 136:9 225:1,5
fought 55:17
found 133:6 141:12 203:17
fountain 72:3,4 88:4,4
four 27:10 43:20 44:19 45:7,10
56:22 69:14 70:1 88:7 98:3
116:5 150:6,9,11 151:9,15
154:11 155:7 163:2 176:12,15
189:7 192:7 194:10 228:3
fours 178:21
fourth 42:25
Fourthly 38:21
FPR 4:10 236:10
frame 133:16,17 136:6,9 137:11
framed 139:19 153:11
frames 146:4
framework 30:1
frank 97:1 127:24
frankly 228:12
fraud 67:8 69:4,16 75:15 79:13
80:16 81:11 85:2,8,12 86:7,23
89:20 91:17,18 96:22,23,25
156:8 157:6,8 160:7 173:10
191:17,19 196:2,12 198:17
207:18,19

frauds 159:17
fraudulent 84:2,7 161:1
fraudulently 166:19
free 60:7 63:18 128:20
frequent 158:3
Friday 32:22,24
fried 233:16
friend 234:2
friends 68:18 123:20
from 7:24 8:11 10:4 11:11,22
17:2,19,25 18:1 19:12 34:23
35:16,17,17,1 8 36:14,20,21
38:19 39:4,19,20 40:10 43:6
43:18 44:8,18 48:4,4,5,6,7
50:15 56:13 57:15,18,25
59:18 60:18,22 61:4,5,6,7,17
62:1,14 63:18 64:17 65:9
66:17 70:6,11 75:9,22 77:9
79:23 80:10 81:7 86:12,14
87:22 88:5,14,14 90:4 92:15
92:17,20 97:7,21 99:6 101:5
102:7,13 103:18 106:14
117:17 120:20 122:15,15
123:9 124:9,12 126:19 128:18
129:4,4,25 130:20 133:3
134:20 135:12,19 137:11
143:12 145:12 146:9,22
148:22 149:14 152:18 159:7
160:14,19,23 163:11 166:25
168:19 170:3 179:15 181:7
184:9,14,22 185:5,7,8 187:10
189:18 195:21 196:6,10,13
197:16,18 199:24 201:21,25
202:3 203:14,14 205:2,5
207:25 209:1 212:8 215:23
218:23 220:15 222:15 223:21
225:16 233:25 235:12
front 6:7 182:13 183:18
Fulbright 3:22
fulfill 220:7
full 113:14
fully 30:25 157:22
fund 10:9 20:7 21:12,12,16,24
22:7,24 24:13 51:11 57:10
79:24 80:9,10 155:5
fundamental 8:4
funds 18:14 80:5
funeral 11:3
funerals 35:12
funny 186:7
Furman 222:24 224:13 225:2
226:6
further 220:13
furtherance 176:19,22
future 66:18,20 76:19
F.Supp 124:8
F.3d 169:4,24 172:4 177:15
178:23

---

G

Gables 1:20
Gainesville 2:18
gamble 174:12
game 81:21
gas 199:6
Gateway 2:5
gathering 48:5
gave 63:3 66:7 103:23 131:21
132:1 161:15,16 183:16
geared 132:8
general 1:9 3:1 39:1 47:23 60:20
61:6 78:10 79:1 102:20
111:24 112:1,17 113:7,15
114:4 116:22 117:3 124:6
129:18 130:3 136:11 142:13
142:17 144:11 145:4 149:20
150:11 153:1 154:7,8,11
155:8,15,16 175:25 177:21
183:7 207:6 211:22 212:17

213:5,7 215:4 219:23 222:19
223:7 235:9
**generality** 212:20
**generalized** 10:23
**generally** 38:6,12 39:6 40:24
85:19,21 97:10,14 189:2
**generated** 30:7 197:15,16
**generation** 212:6
**generic** 226:9
**genetically** 221:16
**gentleman** 235:11
**Georgia** 2:14 14:17 15:1,2
111:25
**German** 126:6 127:6
**Germany** 123:10
**gets** 12:10,10 17:8,23 20:25 23:3
23:8 109:12 110:10,20 188:13
189:5 230:2,13 232:17
**getting** 10:7,7 26:1 39:22 58:24
61:21 72:11,23 86:3,4,8
119:10 137:11 144:2 164:1
185:10
**ghost** 15:23 16:1
**gift** 65:12
**Gilda** 4:10 65:10 236:10
**Gillette** 58:1
**gist** 69:23,24
**give** 10:6,11 12:23 18:7 19:1
22:11 23:25 26:25 29:15
40:12 41:6 46:16,22 49:23
53:8 57:18 58:13 59:2,25
62:23,24 63:2,8 65:5,7,11,11
72:1 82:7 83:1 103:13 107:5
109:5 119:14 120:14 121:12
122:25 123:1 124:9 128:3,12
134:19 135:2,13 136:17
141:25 145:17 147:18 148:2
149:5 168:19 171:21 172:2
178:13,18 183:20 185:13
186:6,6 188:25 189:4 191:12
191:25 196:13 220:17 230:11
231:19
**given** 46:9 135:6 198:9
**gives** 17:5,16 35:24,25 62:24
111:13 120:8
**giving** 119:9,11
**glad** 59:16
**gleaned** 88:14
**global** 80:8
**Glueckstein** 3:10 102:10,12,14
102:17,25 103:4,7,15,21
104:3,8,22,2,4 105:1,4,6,17,20
105:24 106:8,10,17,20 110:20
111:2,5,8,11,1,4 112:6,10,24
113:2,21,24 114:1,9,14,19,25
115:5,7,12,17,2,3 116:2,5,17
116:19 117:10,22 163:23
177:4
**GM** 99:4,4 119:18 130:24 131:1
131:3,4,11,17 132:4,16,18
133:3,16 134:2 135:2,12,20
136:8,24,25 139:1 140:1,8,13
142:25 143:9,10,21 145:16,17
146:5,11 148:12,16 149:23
162:14 163:3 180:1 183:1,18
183:23,24,2,5 184:2,5,14,18,21
184:22 185:1,2,2,5,22,25
186:1 188:1,12 193:1 195:7
195:18 199:13,19 207:11,16
208:17,19,2,4 222:14 225:7
227:1,2,1,7 228:22 229:6,19
**GMs** 184:14
**GMT900** 138:19 144:7 146:1
148:16 225:10
**GM's** 133:1,5,6,2,3 137:6 138:12
141:20 146:5 184:13
**go** 9:4,14 10:8 14:14 16:11 19:14
27:4 35:11 42:25 43:1 49:18
58:6 63:18 71:14 75:2,17

90:14 100:13 101:2,4 109:17
109:18 115:19 120:7,23
124:10 125:22 126:11 127:14
129:8,10,12 130:1 132:3
136:19 137:1 146:5 148:23
149:2 151:24 154:3 155:18
156:6,11 157:16 159:6,23
163:15 164:7,12 165:23 175:7
175:9 178:6 182:16 183:14,15
186:5,5,2,0 205:25 207:25
209:14 211:8,17,20 212:2,18
214:22 224:25 225:5 228:4
230:6,13
**goal** 37:21 38:3,5 48:23
**goes** 11:21,22 19:6 20:25 23:8
54:16 56:8 103:19 113:18,19
139:12 159:20 180:12 189:8
195:12 230:5
**Gohari** 189:22
**going** 6:7,8,10 8:3,15 9:12,13
10:3 12:20 14:17 16:6 19:2,5
19:11 20:9,10 28:11 31:21
32:1,6,7,12,1,4 34:20 35:14,20
35:22 41:2 45:18 46:7 48:22
50:8,18 52:14,15,17,25 53:1
55:14,15,19 56:13,16,25
61:13,16,17 62:1,16 63:18,13
63:15,16 66:2 68:10 83:9 87:4
87:18 89:1,4,10,1 91:7 92:11
93:10 98:21,24 99:1,16
100:11,13,2,5 102:9 104:20
107:24 114:11 117:5,24
118:11,23 119:13 121:19
126:19 127:9 128:18 129:8,24
131:1,16,18 133:1,11,12,13,17
134:1,17,22,2,3 135:21 136:9
136:9 137:14,23 139:18
140:11 142:4,4,5,7,11,12,18
144:16,17 145:15,16,20,21,23
147:10 148:5,7 149:14 151:9
154:10 157:18 159:2 161:20
162:14,17 163:5 164:7 165:5
165:15,23 168:24 175:9,11,13
186:21,22 187:19,21 193:2
194:7 196:15 198:18 199:23
206:11 211:7,20 212:22
223:14 224:25 229:19 230:13
231:10,15,18 232:12 233:14
233:19,19 235:21,22,23
**Golden** 195:13
**gone** 6:12 10:8 67:9,10 70:4
227:14,14 229:18
**good** 6:21 7:3,18,20 10:23 14:8
20:13 21:4 23:24 24:22 27:16
27:17,19 31:9 35:7,12,12,13
36:17 37:3,4 41:13 42:4,5,17
53:25 54:3 61:6 66:11 75:12
102:10 121:13 128:21 129:23
131:25 149:22 157:15 162:12
163:11 169:21 181:5 185:10
194:12,12 203:21 213:17,18
215:14 218:25 222:3 230:4,6
230:8 235:21
**goodness** 20:2 105:14 109:6
119:18 130:13
**good-bye** 73:23
**Google** 175:9
**gotten** 109:24 132:19
**Govern** 235:7
**governing** 221:20
**Government** 8:11 13:5,23 45:24
48:1 67:14,16 133:20 134:8
134:12,18 156:3 161:12
180:21 181:6 192:2
**Governor** 44:13
**Governors** 45:16
*gphofficialreporter@gmail.com*
4:12 236:13
**grab** 6:10 14:7 63:24 212:25

**gracious** 20:2 130:13
**grant** 17:15 62:1 136:15 137:3
145:8 151:20 152:4,7,17
165:21 171:8 213:8 230:4
**granted** 112:15 125:17 132:25
151:24 168:22 170:12,19,20
170:25 171:7,23 172:5 173:18
178:21 206:20
**granting** 141:18 165:14 208:11
**grants** 17:15
**graphic** 68:15
**graphics** 28:6
**great** 36:5 126:12,12 136:4
163:4 164:12 168:23 175:6
209:12 230:3
**grenades** 213:20
**grocery** 181:25
**groom** 62:17 65:2
**grossly** 25:6
**grounds** 165:11,12
**group** 40:1 62:11 70:16 175:12
176:9,14 177:2 200:1
**groups** 40:23,24 41:1 62:20,21
**grow** 133:6
**guess** 30:23 58:22 60:14 61:12
62:16 110:13 117:24 132:9
206:3,4 207:21 217:14
**guidance** 113:4 165:17
**Guidelines** 198:9
**guilty** 62:19 73:19 77:10,13
78:15,18,20,2 1 84:5,22
149:21 150:16,16,20 152:25
157:6 180:19 187:4 228:6
**gun** 98:4
**guns** 98:3
**guy** 150:17 189:7
**guys** 71:4 173:21 181:23 182:3,4

| H |
| --- |

**H** 3:14
**Hague** 124:7,8,22 127:6,7
**half** 11:19,21 12:23 54:18 81:16
134:25 141:23 142:2 143:22
145:23 218:10
**Hampshire** 2:2
**Han** 3:10 151:9 163:11,11,18
164:3,9,14,2,5 165:4,6,8,12,14
166:1,8,11,17,2,4 167:3,13,16
167:19,22 168:6,8,10,13,8,21
168:24 169:2,4 170:1,11,14
170:16,20,23 171:1,4,9,11,14
171:18,22 172:1,3,6,8,10,12
172:21,25 173:5,9,11,16,20,22
174:6,8,10,13,15,1 9 175:1,4
175:11 176:1,3,5,14 177:2
178:10
**hand** 153:20
**handled** 208:18
**hands** 39:10
**hang** 30:20 215:21
**Hanover** 2:2
**Hanukkah** 65:11
**happen** 116:20 122:1 207:24
208:1
**happened** 28:22 67:11 69:17
79:15 80:24 84:21 101:17,23
103:5,7,22 113:3 123:24
124:21 131:10 140:9 149:13
157:9 162:21,22 207:20,21
208:8,13,15 223:13 227:10
**happening** 52:13 225:21 234:1
**happens** 19:11,15 22:18 23:1
68:6 131:24 148:25 180:17
198:20 230:12
**happier** 65:6
**happy** 60:5 65:6,11,13 104:4,4
106:19 130:16
**hard** 55:17 65:8 86:19 145:22
**harder** 214:17

**Harding** 4:6
**hardly** 71:1 230:1
**harm** 96:3 97:20 202:6 224:11
**hat** 215:21
**hate** 10:12 77:11
**hates** 71:2
**having** 35:2 40:10 68:13,20
107:1 112:2 203:19 217:5
228:8
**head** 184:13 185:18,24
**headings** 138:6
**headquarters** 99:21
**hear** 7:24 14:18 19:2 32:1 34:25
35:14,16,17,17,1 8 36:14,20,21
41:19 45:19 50:15 59:18 60:3
60:18,22,2,5 61:4,6,10,17
62:13 66:17 102:13 103:18
111:17 113:17 141:15 179:14
179:15 221:5 230:23,25
**heard** 6:23 49:10 50:15 51:2
55:9,13,13 58:10 60:19 61:1
62:10,16 65:9 81:14 110:23
113:9 119:15 120:1 129:17
139:18 146:22 164:1 180:1,15
191:12 209:8,9 222:10 227:23
231:7
**hearing** 6:3,8,9,10 8:8 9:3 30:2,6
53:6 54:19 60:11 65:14
116:22 119:16,23 127:25
131:10,12,12,1 5 146:13,14
156:1 195:13 236:4
**hearings** 99:18 116:10
**heart** 110:21 160:12
**Heaven** 144:5
**held** 6:1 57:17 65:18 69:7 129:2
173:11 191:10 193:23 224:13
**help** 9:22 11:9 30:20 41:23
49:12 61:25 86:25 87:3 94:19
105:19 134:20 136:6 137:11
137:13,14,23 139:19
**helped** 12:10 221:1
**helpful** 34:2 61:16 137:22 138:3
165:17 171:6
**helping** 212:7 229:6
**helps** 11:10 134:21 164:3 196:18
196:19 211:4 215:24
**Hemi** 200:24
**her** 65:6,6,7,8,11,11,1 3 110:12
**hereto** 158:7
**herring** 206:23
**hey** 12:8 19:11 104:19 140:14
163:4 174:11 181:5
**Hicks** 1:19
**hid** 188:2 196:8 207:22
**high** 10:11 27:21 45:17,20
184:20
**higher** 44:23 93:19,20,24
**highlight** 166:12 173:16 175:17
176:7
**highlighting** 171:14
**highly** 73:6,12
**highway** 61:8 129:20 207:24
**high-level** 47:23
**him** 24:14,15 32:7 35:17,17,19
35:20,24,2 5 36:6,14,21,21
42:20 50:16 66:17,18,19
110:11 179:17 217:19
**himself** 189:9
**hired** 170:2 208:21
**hit** 144:16
**hits** 165:9
**hitting** 110:21
**hobgloblin** 59:8
**Hoipkemier** 2:12,13 7:18,19
14:8,9,15,21,21,23,2 5 15:5,7
15:11,15,18 16:3,6,10,15,18
16:22 17:4,10,13,2 4 18:6,9,24
18:16,18,21 19:3,13,16,19,23
20:1,5,9,14,16,18,2 4 21:6,11

21:22 22:3,6,12,16,19,23 23:5
23:8,13,17,2,0 24:2,7,11,15,18
**hold** 24:24,24 31:12 51:17 56:15
181:5 220:22
**holding** 164:17 204:21 221:3
**holdouts** 25:16
**Holloway** 2:12
**Holmes** 200:24
**home** 29:11 99:20 100:18 101:10
101:11 102:20 114:5 132:3
165:9
**homeless** 12:6
**Honda** 3:18 25:15 30:2,6 56:1
81:15 119:19 150:2,17 151:3
151:7 164:21 166:5,17,18,21
166:25 200:9 212:14
**hone** 38:2
**honestly** 214:12
**honor** 6:19,21 7:3,5,12,16,18,20
8:2,24 9:8,17 12:22 14:2,5,8
14:15,21 16:7,24 17:15,15
18:11,14,24 19:4,16,19 21:7
21:19,22 24:11,22 30:1,1 31:9
31:11,15,20,2 3 32:2,8,19,22
32:24 33:4 34:4,23 35:2 36:4
36:19 37:3,5,12,17,22 38:9
39:3 41:19 42:18,24 44:13
45:5,23 47:15,22 48:3 49:22
50:13 51:15,18 54:3,9,21
55:16 56:4 57:8,10 59:22 64:5
64:24 65:24 66:2,12 76:3,16
77:7 78:6,23 80:3 81:12 82:25
84:16,24 85:9 87:1,17 88:20
89:5 90:15 91:11 92:15 93:1,3
93:23 94:4,14,24 96:2 97:1,13
97:15 98:11,22,25 100:24
101:1 102:10,21 103:4,16,22
104:3,6,8,22 105:1,6,17,20,22
105:25 106:8,20 107:7,12
108:2,24 110:1,19,20,22
111:17,19 112:1,7,11,12,14,17
112:20,24 113:10,11,14,16,16
114:3,15,25 115:1,1,23
116:17 117:3,10,11,14 118:15
120:2,17,24 121:8,14,22,25
122:16,24 123:3,6,10,25
124:3,6,9,23 125:6,15 126:14
126:18,21 128:7 129:23 131:6
141:20 146:9 149:18,22,24
150:3,14 151:1,4,14 152:3,16
153:17,25 154:8 155:10,14,18
155:25 156:6,11,16,20,25
157:16 158:8 159:1,12 160:11
161:5,19,24 162:2,7,19 163:7
163:11,16 164:9,23 165:16,24
166:8,12 167:16 168:6 169:21
171:2 174:8,19 175:4,12,18
176:3,8 177:10,25 178:11,20
179:13,24 180:8 182:25 185:8
185:13 186:10,15 187:16
188:17 189:14 190:3 192:20
196:14 198:14 199:25 200:8
200:10,14,15,17,21,2 4 201:23
202:23 203:2,7,10,17 204:7
204:10 206:14 209:7,18 210:4
211:3,5 212:15,24 213:4,9,18
213:19 214:2,17 215:10,22
216:4 217:2,4,18 218:2,10
220:18 221:14 222:8,12,17,24
223:3,10 225:18,22 226:5,19
226:19 227:3 228:9 230:14,17
230:20 231:1,12,19 232:21
234:4,8 235:3,9,25 236:1,2
**HONORABLE** 1:10
**Honor's** 15:21 17:6,18 102:17
113:4 214:21 232:23 233:2
**hope** 90:9 130:24 131:1,3
**hoping** 152:18 218:16
**Hornbook** 119:5,7

**hospital** 9:13
**hotly** 144:25
**hour** 54:18 119:13 164:8
**hours** 103:8
**huge** 45:5,11 47:11 88:4,4 214:4
214:4
**huh** 192:19 218:9
**Huhman** 50:21
**humble** 38:19
**humidity** 45:17,20 138:11
**hundred** 8:17 9:24 10:19 11:23
41:8 93:15 139:13,17
**hundreds** 40:25 139:9 171:16
208:3
**hurt** 12:10 87:4 148:7
**Hustler** 50:19
**hypothetical** 182:1

---

**I**

**idea** 32:20 85:20 144:20 163:4
175:11
**ideal** 106:25
**ideas** 42:5 49:12
**identical** 118:25
**identification** 5:12 194:8 210:11
**identified** 43:7 90:8 211:20
212:21
**identify** 90:9 177:23 210:21
211:18
**identity** 170:6
**ignition** 188:2 207:7,11,22,23,24
222:19 224:8,13 228:22
229:19
**ignorance** 162:25
**III** 16:19 17:5,16
**III.A.2.h** 16:18
**illegal** 169:9 170:2,6 190:7 199:1
**Illinois** 3:3
**illusory** 21:6
**images** 40:8,18
**Imagine** 144:3
**imminently** 221:4
**impact** 33:17 44:21 122:5
141:14 145:3 187:11 207:7
213:21
**impacted** 47:7
**impetus** 52:7
**implementation** 30:10
**implementing** 38:4
**importance** 43:23
**important** 38:7 46:19 48:12 67:1
67:25 80:11 81:13 122:23,24
131:8 150:14 156:8 157:19
160:15 164:22 166:15 210:10
221:21 235:15
**impose** 145:15
**imposed** 78:16
**imposes** 194:18
**imposing** 194:19
**impressions** 47:10
**impressive** 44:24 48:14
**improperly** 114:16
**improve** 32:20 36:12 38:14
59:18
**improving** 41:15
**inability** 216:7 220:13
**inappropriate** 124:16
**inbound** 47:12
**Inc** 4:1 176:15
**incentive** 29:12,14 45:4 56:15
**incentivize** 29:1
**incident** 227:1,5,16
**incidentally** 148:18
**include** 18:12,21 21:16 22:2
47:8 61:15 109:24 158:12
**included** 58:2,3 92:19 166:5
172:23 173:1 210:5
**includes** 101:20 111:11 158:21
**including** 62:10 78:18 83:15

104:14 117:4 127:20 157:24
158:17 159:10 204:15
**inclusion** 20:6
**incompatible** 208:12
**incomplete** 159:6
**inconsequential** 133:2 137:17
**Inconsequentiality** 132:19
137:15 139:2 143:10,14
**inconsistent** 180:24 187:1,2
**incorporated** 50:8 73:4 159:25
160:12,13
**incorporates** 154:4
**incorrect** 63:7
**incorrectly** 72:7
**increase** 33:20 39:21 49:12
**increased** 197:16
**increases** 45:18
**incredibly** 48:4 68:15
**incur** 135:20
**Indeed** 82:22 97:22
**independent** 38:1,8 81:23 82:1,2
87:5,13 133:19 134:18 186:23
188:15,15 193:6
**Indian** 132:11
**indicated** 45:11 91:2 230:20
**indicating** 32:13
**indirect** 46:4
**individual** 34:16 39:1 40:21
109:15,16 158:5 166:20 196:9
**individualized** 182:11
**individually** 15:4 55:25 182:18
182:20
**individuals** 31:25 32:9 33:19
34:1,12,16 39:13 74:22
146:24 159:15,17
**inducing** 160:22
**Industries** 169:23
**industry** 38:20 82:21
**inefficiencies** 148:4
**inevitably** 221:2
**inexpensive** 83:6
**infer** 81:7,8 221:23
**inferior** 160:24
**inflated** 202:20 220:24
**inflator** 20:12,16,19,2 5 21:1,8,8
21:18 26:7 82:17 83:14,19,24
184:3,9,13 185:18,21,25
197:22,25 204:20 205:7,8
**inflators** 27:5 39:16 67:12 68:22
70:7,9 74:24 75:6,10 79:13
81:24 82:22 83:21 133:8
138:8 160:25 161:3 166:25
183:25 184:2,9,16 202:10
204:16,20
**inflator's** 184:11
**influential** 42:11
**inform** 165:20
**information** 15:12 28:25 39:17
39:19,24 40:1 72:3 77:22 78:1
79:17 84:2,8 88:4,5,13,14
89:16 91:5 139:1 145:17
158:6,14 159:6,11 160:5,10
161:2 167:4 202:1,2,9 210:13
**inherent** 136:20 147:21
**inherit** 119:6
**inheriting** 119:4
**initial** 124:25 200:18 202:15,21
218:14 219:9
**initiation** 48:10
**injured** 201:4,9,24 202:11,14,14
202:23,24 227:6
**injurious** 201:3
**injury** 61:3 68:25 95:8,22,24
97:9,12 98:12,16 201:2,14
202:7 203:4 208:19 218:3,5
222:5 224:16 225:22,25
229:21,23
**innocent** 153:2 173:12
**innovations** 47:5

**innovative** 43:12
**inquire** 158:20,24
**installation** 83:21
**installed** 68:22 70:9 75:6
**instance** 163:21
**instances** 83:2
**instead** 11:18 124:22 214:6
217:6
**instructions** 15:21 100:20
**insufficient** 15:12 168:14 169:19
176:25 177:25
**insurance** 178:24 201:21
**integrated** 38:23
**integrative** 46:20
**intend** 211:8
**intent** 116:14
**intention** 205:23
**intentional** 176:19,22
**interest** 136:21 216:2 218:1,3,11
218:12,18 219:18 220:16
222:5
**interesting** 19:7,8 52:9 161:25
230:10
**interfere** 146:17
**interfering** 146:19,20
**internal** 146:25 158:18
**interpretation** 229:13,21 231:8
234:20
**interpreted** 186:10 197:2 233:11
**interpreters** 6:5
**interrupt** 114:7,8,10
**intertwined** 75:13
**interview** 161:14,14
**interviews** 157:25 159:14
**intra-class** 25:11 51:7
**introduce** 175:12
**introductory** 51:20,21
**inure** 144:10
**inures** 144:12
**inverse** 202:7
**investigating** 192:3
**investigation** 87:13 157:24
161:13
**investigations** 158:19
**investment** 220:9
**inviting** 6:13
**involved** 9:5 37:25 48:6 79:8
97:15 169:6 170:4 196:4
208:4,5 212:10 216:15 225:19
225:20
**involvement** 44:15 158:6
**involves** 139:17 234:7
**involving** 97:16 145:23 172:16
184:20 221:14
**Iqbal** 153:11 162:2
**Iraq** 11:2
**ironic** 26:12
**ironically** 25:14
**irrelevant** 138:1,6 217:25
**issue** 10:25 15:24 19:3 20:5
38:25 54:14 62:19 63:5,13,16
65:23 66:13,13,16 68:21,23
74:8 77:22 79:5,6 84:15,16
86:17 90:24 91:12,12,13,16
96:21 98:14 100:21,22,24
102:18,18,21 104:18,22 105:8
105:10,10,12 110:21 111:19
114:2 116:25 118:17 123:12
123:13 126:2 127:22,24
130:25 131:5 133:9 139:10,19
141:13,13 147:22 149:16
151:19 152:23 153:3 163:10
169:7 170:3 181:10 182:22
186:18 187:18,19,20 191:9
200:15,19 204:11 205:3,9,9
206:10,10,2 3 208:15 209:17
209:19 215:8 216:12 223:7
224:1 226:3 227:2,10 231:7
232:22 235:15

**issues** 9:6,10 12:21 52:1 55:23
62:3 66:25 67:1,5,11 68:13
70:16 75:13 83:15 84:18
107:14 116:23 118:17 120:25
128:2 129:15 130:4,21 131:19
133:16 136:6 137:11 140:11
147:25 148:1,19 164:22 217:8
229:1 232:21

**issuing** 185:4

**Italy** 181:25

**IV** 2:4

---

**J**

**J** 2:20,21

**jail** 67:10

**Jaime** 3:5 66:11

**JAMES** 3:14

**Jan** 2:9 7:5,12 8:3

**Jansma** 3:22 120:2,5,17,17,21
120:24 121:8,10,14,16,22,25
122:3,6,9,13,19,2 4 123:3,10
124:3,12,15 125:9,11 126:14
126:16,21,24 127:13

**January** 157:21 160:1 187:18

**Jeeps** 74:19

**Jersey** 111:25

**Jesse** 222:23

**job** 132:14,15 137:3

**John** 2:20,21 7:20 24:22

**joint** 151:6

**joke** 68:18

**JPML** 99:10,23,23

**Jr** 4:11 236:11

**judge** 1:11 12:1,2 19:18 42:12
59:9 61:20,21,23 67:14 71:2,2
78:16,20 98:10 99:12 109:5
110:10,13 112:22 121:20
127:13 129:4 142:7 152:24
156:4 168:23 175:8,8 179:6
181:3 187:11 189:6 193:6
194:16 195:24 198:5 208:11
210:1,2 222:23 223:21 224:13
225:2 226:6

**judged** 48:17

**judges** 148:6 151:20 230:3 232:7

**judgment** 52:9 71:12 91:10 97:4
107:23 134:3,4 151:23 152:1
160:13 168:17 180:10 186:19
186:20 188:13 232:13

**judicata** 145:11 147:5

**judicial** 130:19 148:19 162:4

**judiciary** 13:9

**July** 83:17 140:9

**June** 148:23

**Juneau** 4:5,6 31:18,19,21 32:6
35:16,18 36:16,18,25 37:3,5,5
37:12,16 41:19,22,25 42:18
42:21,24 43:2 44:10,13 45:2,5
45:8,20 46:25 47:3 50:1,12,13
50:15 146:22

**Juneau's** 59:18

**jurisdiction** 19:24 61:11 62:11
102:20 105:9 108:17,18,22
109:20 110:8 111:13 112:2,17
112:18 113:7,7,15,22 114:2,4
114:5 115:11,12 116:9 117:3
119:4,6 121:4,16,19 122:11
122:15,18 123:4 124:19,25
125:2,5 126:2,5,9 127:11,19
129:17 146:7,8,16 147:21,23
152:12 157:3 163:22 164:16
164:18 177:3

**jurisdictional** 21:23 122:13
131:9

**jurisdictions** 164:5

**jurists** 110:15

**jury** 97:2 100:23 104:20 147:12
182:13,16 209:14 232:12

**just** 8:4 12:1 13:22 15:3 19:3

---

22:11 23:21 24:11 33:8 35:2
36:11 37:16 38:21 39:1 40:16
41:5,5 42:16,16,1 7 43:13 44:4
45:23 46:18 47:1,19 48:25
49:10 51:18 56:12 57:18
59:16,19 62:15 63:5,20,23
64:2 67:21 69:2,15 73:23
74:21 77:18 78:18 82:7 84:23
85:14 89:11,18 90:8,15 93:8
96:7 97:9 100:14 104:8,16
110:18,23 113:9 118:18 120:2
121:1 122:21,25 125:25
126:18 130:4 134:24 137:4
138:1 141:21 143:6 145:2,23
146:1 147:19 149:4 154:2
155:13 156:6 159:3,23 161:24
162:1,19 163:6 166:9 167:22
175:13 176:7 177:5 182:12,25
184:7 185:16 189:16 191:2,5
194:14 195:2,11 196:13
199:19 203:2,24 207:21
210:11 211:9,17 215:12
218:20 222:15,18 226:20
228:11,20 229:5,19 235:10

**justice** 136:22 160:2 192:4,6,9
196:25

---

**K**

**K** 24:20

**Kansas** 56:11 221:14

**Kearney** 50:19

**keep** 45:12 64:18 65:14,14
108:22 161:19 179:16 228:7

**kept** 154:9 233:20

**key** 48:8 68:23 73:25 74:14
82:20,23 213:21

**kidding** 42:17

**kill** 213:16 214:7,12,25 217:6

**kind** 9:9 12:15 20:8 22:14 37:14
42:9,12 58:17,23 61:4,10,21
62:12,23 67:22 73:20 110:3
120:18 123:12 125:5 135:10
136:17 139:22 141:17 162:25
167:9 179:17 180:9 192:18
209:11 211:4 212:20 216:19
217:16 220:19 223:8 224:18
228:5 235:20

**kinds** 67:10 91:22 127:7 208:21

**King** 71:2 208:17,24 224:1
229:4

**Kirk** 24:12 31:18 41:17,20

**Kirkland** 3:2

**Kleckner** 24:12,20 31:18 41:18
41:20

**knew** 25:1 69:18 70:8 74:15,24
75:5 76:6 77:18 81:23,24 83:4
85:14 87:5 88:22 89:12,13
96:16,24 97:2 167:14,17
168:5 182:3,5,7 186:1 188:15
190:21 195:20 196:8 209:4
217:7

**know** 6:13 7:7 9:9,9 10:12,18,24
11:1,7,22 12:1,19,20,22,24
13:23 15:17 20:18,21 21:9
25:1,25,25 26:5,21,23,24
27:10 28:6 30:5,18 31:1 33:8
34:9 35:21,22 36:23 41:17,25
42:11,11 43:6 51:24 54:8
56:24 57:2 58:16,22 59:10,17
60:13 61:22 63:19 64:8,13,15
64:20 65:2 67:3,4,21 68:17,22
69:17 70:8 71:9,9,21,22,23,23
72:14,17,19 74:4,6,7,8,9
75:14 76:6 77:10 79:9 85:4,6
85:19,22,24 86:17 87:11,13
88:22,24,25 89:1,4,13 90:6,13
90:13,14 93:4,10 96:22 97:2
97:15 99:17 100:6,9,13,14,14
104:14 107:16 108:16 110:1

---

112:13,25 113:2 114:17,21
115:25 117:13,19,21 118:15
119:22,22 123:15 125:10
126:10,11,1 1 127:10 130:5
131:21 134:6 137:4 139:20
140:5 142:23 143:11 144:18
144:19,22,22,5 146:5,8
147:1 149:15 151:22 152:8,9
152:12 153:16,17,20 155:21
155:25 162:2 163:23 169:3
171:16 174:24 175:3 176:6
178:20,21 180:13 181:12,17
181:22 186:7 187:25 188:6
189:15,16,1 7 193:13 194:2,9
194:25 198:21,25 199:4,20
200:2,7 204:17 205:1 206:3
207:5,6,8 211:2 212:1 217:13
219:24 220:23 221:6 222:13
222:25 223:8,16,17,19,20
224:20 225:16 226,4 226:2,2
227:15,24 228:13,17,25
229:14 231:9,17 232:1,8,13
232:14 233:12,18 234:11,13
234:13 235:1,22

**knowing** 190:24 191:1,2 229:5

**knowingly** 160:21

**knowledge** 44:6 50:4 82:20
85:11 88:23 89:20 158:19
159:9 168:9,10 174:25 175:1
183:2,2 186:12,23 188:15
193:7 199:14 212:10 217:8
227:18

**known** 96:19,19 162:21 167:10
167:11,12,15,1 7 182:4 227:3
227:18

**knows** 45:17 55:16 56:24 58:7
77:16 85:17 144:16 145:8

---

**L**

**L** 2:9,12,16

**lack** 177:9 202:24 204:23

**Lafayette** 4:7

**laid** 30:1 164:15 165:18 167:8

**Lane** 2:21

**language** 13:16 41:3 68:15

**languages** 40:19

**Lanham** 209:21,22 210:4,16,20
212:22 213:21 214:1 215:18
215:24 216:20,23 217:1,9,11
218:2,12,18,2 3 219:3,18
220:2,8 221:4,5,6,8,10,18,20
221:21,23 222:3,5

**large** 29:16 44:1 159:16

**largely** 221:17

**larger** 143:14 185:4

**LaSalle** 3:2

**last** 12:15 30:6,15,17 32:22
38:21 48:25 53:5 55:1,10,14
57:25 58:10,20 59:10 65:8
66:25 100:21 119:3 141:21
142:21 143:1 159:1 160:11
162:19 177:10 191:11 195:13
203:7 212:9 220:17

**late** 69:8 184:23 209:11

**later** 32:20 50:11,16 56:23 92:11
151:5 184:6

**Lauderdale** 98:7,9,10

**law** 2:21 6:14 51:11 57:13 61:25
109:8,10,18 119:5 122:5,7
145:13 164:12 165:16 168:8
174:22 175:6 176:3,25 177:13
178:1 186:8 188:23,25 195:10
208:17,18,20,2 5 218:6 224:2
219:11 233:23

**lawsuit** 8:12 13:2,4 163:23
181:24 227:5

**lawyer** 6:8 17:8 62:17 65:9
94:17 124:2,3 162:6 172:22

**lawyers** 6:4 12:16 17:16 18:10
23:2,5 24:2 51:16 56:11,15,16

---

57:2 59:12 64:14 135:21
136:1 149:23

**lay** 142:6

**lead** 25:22,24 26:6,11,20,21,24
180:20,20,2 5 184:11

**leading** 203:4

**lean** 59:5

**learned** 230:8

**learners** 41:16

**learning** 38:17

**leased** 197:19

**least** 10:18,21 11:25 19:4,5
30:15 31:2 59:13 66:24 67:6
67:13 68:1 69:17 70:5,16
104:5 115:9 130:12 134:1
135:17 157:1 167:10 188:22
201:1 229:3

**leave** 28:1 60:6,8 119:16 152:7
199:18 235:1,20

**leaves** 28:1

**leaving** 142:21 143:1

**lectern** 36:24,25

**led** 188:2 202:10

**left** 29:11 49:18,19 62:2 107:24
120:25 129:12 201:19 206:10
221:3 222:11 231:13 235:5

**legacy** 150:18 192:5

**length** 73:10

**lengthy** 159:22

**Lenny** 149:22 222:14

**LEONID** 3:1

**less** 11:15 22:11,17 23:2,5 54:16
54:17 55:7,20 56:13 63:4
96:13,20 107:10 144:4 151:21
181:14

**let** 31:14,21 32:7 35:2 36:23
40:12 46:16,22 49:16 63:1
65:5 72:14 74:21 77:6 87:15
88:2 102:7 117:23 118:7,8,18
120:7 121:21 128:20 129:20
132:13 137:3 149:4 161:24
179:24 182:16,25 185:12
189:4,15 191:5,25 193:16
194:14 196:13 224:25 228:4
230:13 234:11

**letter** 40:9 44:14,24 166:18

**letterhead** 43:22

**letters** 40:18 41:4 43:21,22 44:1
44:21 75:9,17 235:8

**letting** 33:8

**let's** 6:2 11:14,24 36:9,14 71:14
78:9 79:5,19 84:25 90:14 92:5
100:16 104:16 107:22 115:9
129:7 163:4 168:15 182:1
201:8

**level** 39:15 212:20 223:18

**Lexecon** 109:12,25 110:5

**Lexmark** 215:22 216:18 221:9
221:19

**LIABILITY** 1:5

**liable** 156:9 213:23

**liberally** 196:23 197:3

**lie** 188:24

**lied** 86:1,1 189:21,25 191:7

**lies** 85:15

**life** 46:19 214:7

**lifeline** 185:10,11

**light** 153:12 163:14 209:13

**like** 7:9 9:15 10:25 12:6 15:13
18:4,6 19:7,10,22 20:8 22:13
22:14 24:1,15 25:5,6,7,12
26:11,13 27:13,14 31:16 32:8
34:15 35:19 37:16 38:23 40:8
40:18 42:9 43:13 46:17,18
47:22 50:2 53:18 56:11 57:3
58:9 61:21,21 62:24 68:17,18
71:4 72:23 74:11,23 77:15
85:17 87:22 93:8 94:10 97:14
101:15 102:8 107:11 110:9

113:11,17 117:5,8 122:10
124:9 127:23 129:9 130:4
132:17 137:15 138:24 143:22
143:22 151:8 156:24 162:9
171:21 172:22 173:14 174:14
176:2 177:10 179:4,14,15,16
179:17 181:21 186:15 192:18
192:20 199:20 200:2 203:20
205:7 207:10,21 208:14 223:8
227:12 228:9 232:4 233:24
likes 118:16
limit 185:1,20
limited 21:13 158:12,22 159:10
Lincoln 50:21
line 5:13,13 10:13 48:20 77:11
156:12 158:9 159:7 160:6
192:22 206:8
lines 154:4
link 68:24 70:8 75:4 192:25
List 31:24
listed 198:2
listen 34:16 35:11 79:14 137:21
lists 143:4
literally 40:25 204:21 212:20
221:3 226:11
litigate 56:21
litigated 56:3 123:13 227:8
litigation 1:6 88:9 132:25 141:14
222:19 224:9 227:15
little 8:14 10:24 27:3 42:10
43:13 60:4 68:8 70:17 109:14
120:19 121:13 123:16 128:12
129:3 142:8,9 161:25 163:19
163:21 174:19 181:25 228:4
230:22
live 20:2 39:9
lives 54:9
LLC 2:13 3:5,10 66:12 102:15
LLC'S 1:9
LLP 1:23 2:1,5 3:2,6,11,14,18
3:22 4:2
loaner 20:10 21:18,20,23 22:9
22:20 23:24
lobby 50:10
local 46:5,16 99:11
locate 71:20
located 158:2
Locust 218:19
lodestar 30:4,5,7,11,25
long 19:25 20:1,3 55:17 60:3
62:6 127:21 130:6,10 131:10
132:9 139:20 140:4 150:23
183:14 185:15 198:5,18 199:8
202:1,2 219:11 228:6,6 230:2
longer 55:17 89:10 119:23 129:3
166:7,10 219:16
long-term 133:7 198:17
look 13:8 17:18 19:4 22:7 24:25
28:22 36:5 53:6 56:11 67:16
68:11 70:12 71:6,16 72:23
73:4 75:2,11 76:1 89:14 95:14
99:5 127:3 146:8,15 154:24
154:25 155:1 163:20 177:20
179:7 180:18 186:11 188:7
189:21 190:19 198:16,22
201:8 203:2,2 210:17 211:6
223:10 227:24 228:2 230:12
232:13
looked 21:7 40:23 66:25 131:11
154:9 169:5 172:23 188:6
190:17,18 203:17
looking 35:10 66:22 70:11,15
147:16 154:9,18 162:3 163:15
180:17 232:15,19,20
looks 46:18 146:10 226:6
Los 3:20
lose 148:8 220:21 229:22
losing 185:14
loss 97:20,21,2 1 125:15,21 126:9

220:22 225:23
losses 222:6
lost 195:23,23 202:20 203:6
218:5 219:16 220:3 221:3
226:16 227:6
lot 8:16 10:7,19 12:5 14:18 19:7
24:25 32:3 34:12 39:23 43:25
45:8 48:6 49:13,14,16,19 51:1
51:2 60:13,14,23 62:23 67:5
77:25 78:6 83:1 109:22
110:15 114:7 117:8 122:1
132:23 137:15,17 140:11
143:23 147:6 155:12,13,14,21
167:4,23 180:9 181:18 188:17
206:18 208:2,5 230:8 235:5
235:19
loud 55:9 58:10
Louisiana 4:7 44:7,16,19,22
137:13
love 60:8 71:13 76:16 125:24
137:13
low 30:12
lower 30:3 54:14 56:5 199:6,8
lowest 31:2,3
LSU 44:12
lump 21:24
lumped 175:19 176:16
lumping 176:12
lunch 119:12,13 125:22 126:11
128:21
luncheon 128:24
lying 190:5

## M

M 2:8
made 6:20 15:5,19 24:8,16 27:4
33:9,12 38:22 47:6 48:10,13
48:15 52:2,2,15 53:3,4,7
55:14 70:14 79:22 80:18
81:12 85:3 89:19 95:20 97:17
104:13 122:4 127:21 163:13
168:13 169:9 177:17 180:3,11
191:18 200:17 203:8 207:2
210:14 219:17 227:24 230:8
230:17 233:22
Mafia 181:20,23 182:3
magic 42:13
mail 38:23 40:18 46:14,18 47:8
207:19
mailing 39:19
mailings 198:2
mails 198:2
main 1:23 2:2 4:2 75:2,18 80:4
87:7,10 138:7 213:16
maintain 19:23
maintained 231:22
Majchrzak 50:23
major 83:9
majority 177:20
make 14:18 20:20 22:24 23:21
27:10 28:22,25 32:7 33:19
34:12 47:1 49:16 50:2 52:17
53:2 64:13 65:5,6,10 69:10
71:4 72:6 74:2,7,11 76:11
76:14 79:5 84:23 85:10 88:17
95:18 100:21,24 106:23
107:18 117:5 118:14 126:23
127:19 131:13,14,1 6 143:6,25
144:1 149:8 155:23 162:1
166:9 174:12 175:20,22
177:10 181:3 185:12 191:5
196:12 200:25 203:10,21
209:13 210:13 216:14 218:22
219:1 220:10,13 223:10 235:4
maker 80:10
makes 24:12 65:13 71:14 75:11
76:6 92:6 117:21 118:5,19
119:1 121:21 134:7 153:19
170:2 201:12 209:1 213:13
217:19 229:24 230:11 232:1

making 9:11 45:5 97:18 102:18
187:22 211:13 215:17 220:23
Mallow 3:18 128:7,9 179:13,13
200:8,8,13 230:14,15,17,24
231:1,11,16,1 9 232:21 233:2
234:4,8,12,14,1 9 235:3,6
236:1
manageable 116:13
Managed 193:18,24 196:25
229:12
management 48:4
managing 148:20
mandated 10:1
mandates 8:6
manifestation 68:7,9 95:21
98:17
manifested 95:22
manner 38:23 46:13
manufacturers 200:14 202:3
203:18 204:2 231:5,6,20
manufacturing 185:3 227:10
many 9:11 25:15 43:10,10 51:24
57:12 90:5 105:19 115:21,25
138:17,20 143:4 174:1 197:10
198:4,12 199:14 225:25,25
227:25
March 132:8
Marcus 195:24
marital 40:3
Mark 50:22
marked 5:12 155:19 231:3
market 83:6 214:12 216:8
219:12 220:3,5 221:2,15,16
marketing 10:24 31:25 46:4
marketplace 199:7
mass 38:24 46:4,13 49:24
Massachusetts 2:22
massive 49:8 181:4
Master 1:3 67:20 70:5 79:7,14
79:20 80:2,12,17,1 8 81:9 86:6
123:17 127:5,8 191:13,16
192:16
Master's 79:23 86:14
match 184:1 199:21,23
material 49:8
mathematically 21:25
Matt 6:19
matter 6:11 57:13 66:10 103:19
148:25 160:6 178:1 188:25
236:8
matters 111:19
MATTHEW  1:14
maxim 190:2
maximize 37:22
maximized 197:12
may 12:17 20:2 25:17 26:6
28:17,17 30:22 40:9,15 48:3
51:17 54:25 62:12,25 63:7
75:11,15,16 81:14,21 83:8,11
97:16 98:25 106:24 109:5,18
110:20 119:16 125:18 130:23
134:13 139:14 140:14 145:17
148:9,14,18 149:13,13 152:2
155:23 158:20,24 179:17
185:19 186:23 190:3,21 191:7
198:25 200:6 210:3 213:20,20
213:23 214:7 226:17 234:7
maybe 13:7 26:6 30:9,18 41:5
42:14,22 73:25 89:6 99:4
104:13,16 110:13 120:10,11
125:23 134:12 167:21,21
181:24 190:22 206:6 232:8,8
233:25
Mazda 141:10 150:19
McGlown 50:20
McGuireWoods 2:5
MDL 1:2 55:18 99:3,12 100:25
107:13 111:5 113:12,12
115:17 117:16 118:6 119:5

122:9 208:4
mean 10:12 11:3 12:5 15:9 26:3
26:13 28:4 34:3 35:9 54:9
56:11 59:1 69:7 74:11,19 76:8
77:11 85:21 86:20,24 87:12
107:19 108:21 109:23 119:23
122:9 134:3 137:15 145:4
152:23,24 178:2 187:22
205:17 206:14,22 207:16
208:3 213:11 216:17 217:10
217:14 220:23,25 233:20
meaning 75:5 124:20 181:19
meaningless 73:20
means 6:15 28:9 30:7,12 31:4
86:24 129:12 134:19 141:15
148:7,9 180:4,7,7,9 199:4
206:2
meant 65:1 233:8,13
measure 43:9 49:3
measurement 38:16 48:15
mechanism 67:17
media 38:24 39:20 46:5,13,20
180:15,16,18
meet 37:25 42:5 82:20 83:1,3,12
93:20,22,24 125:3
meeting 45:16 60:17 74:24
83:20 163:3 173:23
meetings 45:14 140:1
member 10:16 20:25 22:15 24:4
24:8 195:25 197:17 208:24
229:5
members 10:11 20:23 23:2 96:3
96:25 109:21 196:7,8 197:8
197:13,13 208:23 209:3
memo 57:24 58:3
Menifee 2:10
mentioned 46:8 59:6 62:11,20
62:21 64:7,9 155:23 165:14
175:13 195:12 215:8
mentioning 163:24
Mercedes 66:12 74:20 76:13
82:7,15,20,21,2 2 83:4,7,11,13
83:14,18,21,2 3 89:11 111:25
150:12 180:1 194:11 195:7
199:12
Mercedes-Benz 3:5 61:2,5 65:21
155:8
mere 103:8
merely 210:3
merit 75:13
meritorious 136:25
merits 112:11 133:18
Merry 60:5
message 40:20 41:2 53:1
messages 40:7
messenger 53:1
met 37:24 42:19 44:6,13 47:24
90:18,19 93:22 94:13
method 192:13
methods 28:5
Mexican 194:19
Mexico 194:18
Miami 1:6,16 3:7 4:11,12 52:5
103:3,19 236:12,12
Michael 3:18 179:13 200:8
230:15
Michigan 104:5 106:15 111:23
111:24 115:14,20 156:5
157:23
microphone 7:25 14:7 63:25
212:25
Midafternoon 127:13
midmorning 65:7
might 14:12 26:9,10 46:17
104:12 146:6
Miles 2:4 7:16,17 64:24
milk 16:12
million 8:13,17 9:23,25 10:4,5,8
10:19 11:18,18,19,22,23

15:13,14 17:2,2,19 21:13,16
22:24,25 23:13 24:7 30:5,7,12
47:6,8,8,9,9 55:5 69:8 70:2,2
79:19 139:17 143:22,23
145:23 157:8 161:18 188:3
**millions** 86:8 135:18 138:21
139:11 161:13
**mind** 166:15
**minds** 59:8 173:23
**mine** 210:3
**Miner** 1:18 7:3,3 141:19,19
142:2,11,14,18,21,2 5 143:6,13
143:18,20 144:1,6,12,19
145:5,8 146:4,20,2 5 147:4,8
**minimis** 56:5
**minimizing** 13:23
**minor** 228:20
**minuscule** 23:20,22,23 24:5
**minute** 225:12
**minutes** 33:6,17 34:6 35:1 63:10
65:13 120:9 153:5 230:12
**miserably** 9:11
**misfired** 98:4
**misheard** 171:4
**misleading** 69:16 74:16 84:2,7
151:7 159:6 210:12,15,18
**misled** 67:7,11 70:7
**misrepresent** 173:2
**misrepresentation** 214:5
**misrepresentations** 85:3 177:17
201:10,13 202:17 220:25
222:18
**misrepresented** 86:2 96:17
188:5 217:12 228:10,23
**misrepresenting** 190:15 228:15
228:20
**misrepresents** 213:22 215:1
**missed** 15:6 33:11 70:22
**missing** 63:7 94:5 170:22
**Mississippi** 45:15
**misspoke** 235:11
**mistake** 53:17 104:13 221:23
**misunderstand** 89:6
**Mobil** 199:5
**modeled** 188:21,23
**models** 82:21
**modest** 132:13 137:3
**modification** 231:2,7
**modified** 73:14 78:17 87:14 91:1
221:16 234:22
**modify** 12:4,5 74:2 76:5,21 77:1
78:9 145:15
**modifying** 78:13,14 230:20
233:3
**module** 82:16 83:15,15
**Mohawk** 169:23 171:20 196:12
196:13,15,16,1 7 197:2
**mom-and-pops** 204:18,18
**monetary** 8:15
**money** 10:7,11,15,16 11:12,13
17:24 18:11 22:11,18 23:3
25:20 28:12 29:1 81:3 86:3,4
86:20 142:6 155:12,13,14
160:22 174:12 187:7 189:8,9
191:22 192:10,14,15 196:12
220:21,23 229:22
**monies** 80:25 81:5
**monitor** 38:2 43:8 44:5,18 47:25
**monitored** 43:6
**month** 7:2 144:21
**monthly** 140:1,1
**months** 37:13 47:6 48:9,25 49:2
49:17,18 130:12,21,23,25
131:1,4 134:15,20,22,23
135:20 136:18 137:10 141:24
142:2,6 148:22 149:9,9,14,16
**Monty** 29:20
**moot** 64:3
**morally** 232:6

**more** 9:18 10:7,11,15,16 11:12
11:15 18:8 23:3 25:2 26:24
27:14 30:14,19,2 2 38:25 40:8
41:8 42:8 45:8 49:16 56:25
59:17 62:24 63:4 64:22 67:15
69:19 70:17 71:2,3 77:12
88:18 90:18 91:21 93:10,11
93:11,18 94:20,21,21 97:11
107:9,9 111:13 116:13 119:9
123:1,2 128:11,12 143:21,22
146:6 151:22 153:6 167:10
175:15 181:15 182:11 186:5
187:8 189:9 191:5 192:17
197:19,20,22 199:12 201:4
202:13,23,24 208:2 220:20
222:6 232:9
**Moreno** 1:10 103:3,19
**morning** 6:21 7:3,18,20 14:8
24:22 31:9 37:3,4 60:17,24
63:15 66:11 139:18 143:2
146:13 152:18 154:6 155:23
177:3 230:18 233:3
**most** 11:17 13:5,7 39:11 122:23
122:24 140:7 190:22 199:12
221:21 232:7,16 233:2
**mostly** 39:7 72:24
**motion** 1:9 6:9,15 24:12 60:3
71:8,12 75:8,9 77:12 92:4
105:25 112:15 122:10,14
125:17 129:19 135:12 138:9
141:22,22 150:1,22,25 151:23
152:5,17 156:19 161:6,20
165:15 168:16,17,18,22
169:25 170:9,11,19,20,25
171:1,7,8,23 172:5 178:22
189:19 200:14,16,1 8 226:24
228:2 230:1,4,15
**motions** 1:10 30:21 54:17 60:11
60:21 62:1,9 64:3,14,15
114:14 116:10 136:13 140:24
142:8 150:23 151:20
**motivate** 29:16
**motor** 2:4 3:18 7:16 43:17 133:2
**Motors** 1:9 3:1 61:7 111:24
116:22 129:18 130:4 136:11
142:13,17 144:11 145:4
149:20 150:12 153:1 154:7,8
154:11 155:8,16,16 175:25
207:6 212:19 222:19 223:7
235:9
**move** 6:4 17:24 39:10 59:20 92:5
107:4,10 162:3
**moved** 111:15
**moving** 19:12 29:25 49:9
**much** 6:5 9:18 10:16 11:13
23:11,12,16 42:21 45:17
50:12,13 58:21 60:2,4 63:2,3
71:1 72:11,20 89:16 93:14
119:11 123:12 134:21 143:14
149:18 153:2,14 224:5,15
226:12
**Mulholland** 50:22
**multidistrict** 60:12 62:24 63:4
99:7 102:24 103:2,5,12,16
104:1,19,25 105:13,15 106:7
112:8,22 116:14 117:9 120:8
121:9 122:2,5
**multiple** 49:6 82:21 144:2,2
**multiplicities** 201:6
**multiplicity** 203:9
**multiplier** 30:13,13,14 31:1,2
**multi-step** 219:6
**multi-year** 161:13
**must** 83:1 95:7 112:12 123:4
177:16 195:1
**mutually** 181:9 191:9
**M-a-j-c-h-r-z-a-k** 50:24

**N**

**name** 7:11 14:20 37:1,5 39:6
62:18 63:11 66:9,11 98:15,17
102:14 120:15,17 209:18
213:2
**named** 79:17 148:15 227:5
**names** 66:8 119:18
**narrow** 233:6
**national** 46:5 61:8 109:19
124:18 125:5 129:20
**nationals** 194:19
**nationwide** 108:2 110:4 111:13
125:1
**nature** 197:21,24
**nay** 12:4,9,9,1 1 16:24
**nearing** 137:5
**nearly** 47:9 162:10
**necessarily** 92:12 201:9
**necessary** 71:6 77:1 108:4
210:16 211:18,23
**need** 26:8 27:4 76:9 78:12 80:14
81:9 85:10 86:6 92:4 116:10
129:10,14 134:17 135:23
167:24 173:22 174:22 181:2
185:16 187:18 191:15 198:9
201:1 204:2 222:18 231:22,24
231:25
**needed** 63:9 108:19,19 129:12
235:10
**needs** 21:24 59:25 97:14 100:24
107:20 108:3 129:8 201:1
**negate** 186:23 187:19
**negates** 190:1
**negative** 232:2
**negotiated** 25:22
**Neither** 133:16
**never** 41:25 70:21 77:10 80:18
81:1 91:11 98:4,4 125:4 134:6
146:20 157:2,9 180:1 191:23
200:6 203:20 204:19 214:25
216:17 220:4,4,5 223:16
224:6 226:2 228:8,15,19
**new** 1:24 2:2 3:12,12,1 5 42:4
60:5 62:7,8 66:22,22,23 88:7
88:10 98:10 99:2,15 111:24
113:5 116:3 122:5,6 133:23
140:8 151:15 155:7 167:5,7
168:1 171:18 176:21 182:1
184:14 185:22 189:19 191:25
192:3,7,8 194:7 195:18
199:17 222:21,23 233:18
**newly** 166:3 167:3 173:25 178:8
**news** 46:16
**next** 21:2 24:21 35:9 63:11 92:4
115:8 132:7 143:2 212:6
**NHTSA** 8:6 10:1 13:11,13,16
27:22 38:1 47:25 132:13,19
133:9,15,16 135:4,14 136:4,9
137:3,8,11 138:1,10,12,25
140:2,2,17 141:4,9,11,12
142:2 144:16 145:1,14,18,21
146:20,21,25 147:11 166:19
174:2 227:7,7,14 235:13
**NHTSA's** 146:17
**nice** 129:6 131:21 146:5 235:11
**nine** 21:17
**ninth** 65:12
**Nissan** 4:1 119:19 150:19 209:19
211:17 212:3,4,11
**nitrate** 68:13,16,18 82:11,15,22
83:5 138:8 183:25 184:2,3
225:14 227:2,19
**nobody** 14:11 18:8 65:2 170:7
**Noldan** 185:24
**nominal** 9:23
**nominees** 42:14
**nonconformances** 184:20
**nonconforming** 160:24
**none** 26:10 53:22 88:5,9 89:2
147:24 192:8

**nonmoving** 147:23
**nonperforming** 160:24
**nonprivileged** 158:5
**nonusers** 204:1
**non-Florida** 99:22,24 100:20
107:2,17 112:18 118:3 119:1
**non-monetary** 8:16 10:15 20:7
21:17 57:12,17
**non-tangible** 58:2
**normal** 69:12 169:15 172:16
208:20
**normally** 43:25 140:4
**North** 3:2 4:1,11 129:4 236:12
**Northeast** 2:17
**Norton** 3:22
**note** 164:20 210:10
**notebook** 63:14 64:5 119:17
**notebooks** 63:8,11
**noted** 164:18,21
**notes** 24:25 179:22
**nothing** 28:9 53:18 75:10 77:16
86:4 89:10 90:18 108:25
109:1,12 119:24 130:9,11
132:5 151:8 205:21 206:24
222:6 223:2 225:13 227:18
228:13
**notice** 18:24 19:1,11 26:25 27:2
27:6,8,9 32:11 99:23 103:13
175:13
**notices** 20:22
**notified** 184:5
**notion** 68:12,24
**notwithstanding** 69:25 70:1,3,4
**November** 131:12,15 132:7,19
144:20,21
**number** 1:2,3 21:2 25:4 43:3,6
51:24 56:3,6 63:11 85:10
107:13,14,16 111:6 117:23
122:19 124:23,24 126:8
131:18 134:11 139:4,12 143:9
143:14,15,21,2 4 144:23 145:5
150:14 154:16,20 180:12
200:16 202:12,13 227:7
228:12,22 229:6
**numbers** 39:20 138:23 139:9
143:12 188:7
**numerous** 39:23 212:1
**N.W** 3:15

**O**

**oath** 32:17
**object** 8:1 24:6,9 27:9 103:23,24
103:24 121:11,13,14,18
**objected** 22:19 50:21 103:2
104:7 187:10
**objecting** 103:24 121:15,16
**objection** 10:10 13:12 20:6 53:3
58:16
**objections** 8:19 9:2 15:22,23,25
51:12 53:7 59:4 106:6
**objective** 226:20
**objector** 2:8,11,16,20 7:6,13,19
7:21,23 14:6 15:8 24:23 50:14
52:11,12
**objectors** 7:25 12:20 14:18 15:9
15:20 50:17 51:5,24 52:7,13
52:20,21 53:3,6 59:13,14
**objector's** 54:10
**objects** 103:13
**obligation** 17:18 28:10 158:21
158:22
**obligations** 133:3 158:10
**observed** 38:19
**observer** 6:15
**obtain** 160:21
**obviate** 101:16
**obviates** 80:14 81:9 191:14
**obviously** 59:4 61:15 62:3 67:1
94:25 109:14,17 110:11 141:1

146:12 151:17 172:22 211:20
217:13 226:8 232:11
**occasion** 59:6 100:8
**occasions** 57:12
**occupants** 213:16 214:7,13
**occurred** 180:14 184:24
**occurring** 220:3
**occurs** 209:24
**Oconee** 14:16,25
**October** 161:22
**OEM** 46:12 79:24 80:5,9,15
81:10 87:16 150:18 151:7
166:22 191:15,18,23
**OEMs** 37:25 38:10,13,16 41:6
43:19 44:15 45:23 46:3 47:15
47:25 49:7,20 66:22 67:7,8,11
68:13,20,22 70:1,4,16 79:11
80:14 84:3,8,9,12,12,15 85:16
85:24 141:9 150:18 156:9
160:23,25 161:3,10 162:21
166:3 167:3,5,6,7,7 168:1
169:10,14 178:8 191:14
231:11
**off** 22:15,15,17 28:1,1 42:9
45:25 60:10,24 75:16 142:6
143:7 146:2 151:25 165:22
183:22 207:25 232:17
**office** 45:23 157:23 158:20 160:8
198:7
**OFFICER** 128:23 236:3
**officers** 158:17
**offices** 2:21 157:25 158:4,23,24
159:9
**office's** 157:22
**official** 4:10 43:22 236:11
**often** 39:11
**oh** 16:9 19:14 20:2 24:16 28:9
29:18 31:17 35:23 36:3 42:21
49:25 54:6 71:13,21 74:23
105:14 109:6 119:18 123:1
126:15 130:13 149:10 155:22
164:7 165:25 167:14 169:1
174:24 178:20 180:19 198:11
199:20 223:5 227:17 228:13
**Oil** 199:5
**okay** 6:17 7:9,11,14 11:14 14:6
14:13,20,24 15:10 16:4,6,10
18:4 19:14 23:7,21 24:18,19
24:24 25:1 28:17 29:19 30:21
30:22 31:5,6,14 35:5,15,23
36:14 41:23 42:2 47:1 51:16
54:2,7 55:3 57:6 58:22 64:11
64:12 65:25 67:24 72:21
75:20,21 76:12,14,25 79:18
84:25 88:16 91:20 92:17 93:7
93:17,24 95:5,12 101:2 102:9
102:12,16 105:2 106:21
107:22 111:11 113:25 114:11
116:4 117:25 120:22 122:1,17
123:11 126:17 127:14 128:20
129:12,17 130:1 135:1,7
137:13 145:7 147:3 148:6
150:13 151:18 152:11 153:9
154:15 155:4,9,15 156:8
165:13 166:16 167:18 168:12
172:3 173:7,14,1,5 174:18
178:10 179:11 182:1 183:20
186:20 188:21 189:11 192:21
200:12 209:16 211:6,17
212:25 213:5,10 214:15 215:8
216:23 223:22,2,5 225:3,15
228:14,21 235:8,23
**old** 39:12,13 93:15 164:2 185:22
**older** 39:11 175:5 225:17
**omission** 210:13,15 213:21
214:4 215:20
**omissions** 201:10,13 202:18
**omit** 213:14
**omits** 204:24

**omitted** 166:19
**once** 41:11 56:16 60:3 63:14
94:23 97:6 99:11 144:8 180:1
193:11 202:9
**one** 8:19 12:8 13:5 15:19 17:20
20:18,18 25:16 30:8,18,22
33:11 34:16 45:3,5 46:1,12
48:18 51:24 52:8 54:10 56:3,6
56:9 57:16 62:18 63:6 64:20
64:21,22,24,2,5 70:24,25 71:2
72:24 75:23 76:21 78:25
79:10 80:6,8 83:4 84:18,23
85:10 95:19 96:3 98:21 99:14
102:19 104:13,16 105:9,18
107:2,11,13,15,18,2 1 110:25
113:1 114:18 116:2 117:23,25
118:22 119:3 120:2,12 122:21
122:21,25 123:1,5 124:23
125:8,12,23 126:8 132:11
134:11 136:10 137:4 138:6,7
140:19 141:2 143:4,5 147:9
147:19 148:15,16 150:14
152:13 154:14 155:19 157:2,2
159:1,16 160:6 162:1,19
166:19 167:25 168:1 169:2
171:21 172:2 175:1 180:12
182:24,24 184:7,25,25 185:12
185:13 187:12 192:3 194:12
195:6,11 198:3 199:6 201:1
202:12 206:23 207:9 208:22
212:3 214:18,19 215:24
216:15 217:3 220:18 223:4,20
224:5,23 225:1,7 226:18
228:12,22 229:1,4,6,7 230:6
232:5,19,22,2 2 233:10
**ones** 24:2 52:1 61:12 64:6 73:19
79:3 88:7,10 125:14 127:20
141:3 192:5,5 212:1
**one-third** 8:18 25:23 28:18
**ongoing** 44:20 208:9
**only** 8:14 9:7 11:17 12:23 15:5
18:9 19:8 22:3,20 25:21 34:23
35:19 48:9 50:2 53:18 58:4
64:5 71:2 72:22 81:4 87:9
88:12 90:24 92:14 93:6,8,9
109:8 112:8 120:24 125:6,8
125:12,14 127:2,4,5,18
128:19 140:19 141:2,3 148:15
150:15,22 151:3,3 154:14
161:15,16 163:17 164:9
175:15,17 182:7 190:22
195:14 204:11 207:17 208:23
209:24 210:8 221:7,25 222:2
223:20 224:15,15 229:25
230:11 231:25 232:13
**open** 32:4 210:3 233:14
**opened** 69:16 94:3
**opening** 234:6
**open-minded** 210:1,2
**operating** 89:21
**operation** 47:11
**operational** 38:16
**opinion** 24:13 25:19,20 30:13
38:19 48:11 146:9 168:23
173:15 223:21 225:16 226:22
**opinions** 24:12 71:10 226:6
**opponent** 53:24 153:23
**opponents** 53:21 59:13,13 71:25
85:6 102:7 134:16 137:21
**opponent's** 109:1
**opportunity** 33:12 153:3 206:17
231:20 234:10
**opposed** 41:4
**opposing** 103:19
**opposition** 200:13,20 201:12
202:16
**Opt** 9:16
**optimistic** 130:24
**option** 17:16

**opt-out** 27:9
**oral** 32:18 128:19 230:9,9
**orally** 59:16 129:16
**order** 8:7 13:11 15:22 18:13,22
19:5 27:24 28:7 60:18 61:11
73:12 76:5,5,20,22 78:8,9,13
78:13,16 80:22 87:15 88:25
90:25 91:11 94:2,7 101:4
105:14 114:22 124:25 129:7
129:20 150:23,25 151:12,24
152:1 154:3,23 155:6 160:13
180:24 189:12 209:25 225:1
225:24 230:18,21 231:2
232:22 233:4,9 234:9,14,23
**ordered** 121:12 181:1 189:5
**ordering** 181:3
**orders** 59:22 73:15 89:2 232:9
**ordinary** 169:6,18 170:8,17
171:19 187:25 188:4,10
204:12
**organize** 114:22
**original** 80:9 88:9 96:21 150:18
160:17 163:25 181:19 192:5
**originalist** 233:12
**originally** 180:14 181:17 208:16
**Orleans** 42:4
**Orseck** 1:15
**Ortega** 130:20
**other** 8:16,20 12:19,20 13:11
14:6 23:11 25:6,16 26:9,10,11
28:24 30:10 31:23 38:7 39:17
41:12 42:9 44:20,23 50:14
52:1 58:4,15 59:19 62:15 64:6
64:7,10 67:11,25 68:13 69:22
74:16 77:21 79:6 86:17 87:25
92:18 98:17 100:13 102:22
108:1,3,6,7,8,11,17,1 8 111:8
114:18 115:21,25 117:8
122:20 126:5 128:2 130:15,18
135:25 136:11,13,14,18 137:4
138:12 140:22,23 141:8,8
142:7,12 150:17 152:6,14
158:23 160:22 161:1 164:5
165:2,11,12 167:7,23 171:22
173:19 179:12 180:22 181:15
182:24 185:13 189:10 190:5,5
190:8,13,17,18,19,20,21
193:21,22 194:2,13,25 195:5
199:6,8,9 201:17,23 205:20
206:18 208:24 217:8 220:1
222:1 228:18 229:18 231:5,6
233:10,13
**others** 16:21 25:2,8 26:25 74:8
96:1 142:16 152:7 204:16
212:13 234:3
**otherwise** 28:12 34:20 161:4
197:21,24
**ourselves** 79:19
**out** 9:16 10:5,17,20 14:12 23:23
30:1 41:4 42:3 43:11,21 44:14
44:24 45:8 46:3,15 49:7 50:10
50:10 53:6 54:10 61:16 62:16
63:8 71:10 77:6 87:16 95:12
98:3 100:16 102:7 106:5
107:24 109:13 110:18 125:22
133:22,22 134:14,16 137:13
148:15 149:16 159:20 162:22
164:15 165:18,19 166:1,11
167:8 175:16 177:14 180:17
190:8 199:6 202:1,3,9 205:22
214:8 217:18 220:21 221:2
225:9 231:10,15,18 232:3,15
232:16,17 235:12,14
**outbound** 38:24 47:9
**outer** 227:11
**outlier** 229:16,19
**outlined** 48:3
**outreach** 8:17 9:25 10:2,17
11:16 13:8,21 18:3,4,6,7

20:10 25:7,19 26:8,19 27:8,14
27:16,25 28:11,16 32:20
33:13,18,22,2 4 34:1,13,24
36:12 37:21 38:6,12,23 40:25
41:14 42:15 43:4 47:4,7,17
51:1 53:25 54:8 59:17,19
**outset** 173:17
**outside** 14:17 47:17 146:10
162:7,8
**outsiders** 29:22
**outstanding** 40:1
**out-of-pocket** 224:7 225:5,8,11
**over** 8:14 19:24 30:13 41:7
42:22 47:6,6,8 58:20 65:11
69:8 82:16 91:23 112:17,18
113:7 117:4 119:4 121:20
127:19 134:1 135:20 137:7
150:4 159:3 183:7 196:14
204:18 219:11 227:12
**overall** 48:17 189:11
**overcome** 40:21
**overlooks** 213:12
**overly** 184:10
**overpaid** 96:3,10
**overpaying** 229:23
**overpayment** 97:20 98:6 229:10
**overrule** 15:25
**overruled** 59:5
**oversight** 17:20 38:7
**overview** 47:3,23
**overwhelmingly** 74:18
**over-pressurization** 82:16
**Owens** 2:9 7:13 8:3 14:1 227:6
**own** 47:16 55:11 77:2,3 83:13
183:11 219:1 233:11,12
**owned** 206:3
**owner** 39:18
**owners** 39:10 47:7 181:25
**o'clock** 200:5 209:12

---

**P**

**P** 1:14
**pace** 129:21
**package** 154:18
**packet** 154:21
**page** 5:2,13,13 80:2 131:18
154:3,21 155:1 156:7,11
157:20 158:8 159:2,23 161:22
217:23 234:16
**pages** 69:8 70:2 93:15,16 135:18
135:18 154:14 161:13 229:20
229:20
**paid** 46:6 96:20 157:8 188:8
205:8 224:5,15 226:12 234:5
**painted** 233:25
**panel** 62:24 63:4 99:7 102:24
103:2,6,12,16 104:1,25
105:10,13,16 113:12 116:14
120:8 121:9,20 122:5
**paper** 151:11
**papers** 15:19 67:5 113:15
164:15 165:18 167:8 169:22
**parade** 34:20
**paradigm** 221:6
**paragraph** 71:17 80:2 82:3,8,10
82:14,19 83:8,11,23 154:3
158:12 160:14 176:10,18,21
183:21 184:8,17,21 185:18
197:7 214:21
**paragraphs** 175:14,16,17
183:16,18,22 186:5,6
**parallel** 193:20,22 194:15,22,24
**parallelism** 168:11 199:2,2,10
**Pardon** 143:18
**parent** 40:12 158:15
**Parkway** 2:13
**paroled** 37:15
**part** 10:20 21:24 29:2 34:3
37:14 54:24,25 58:25 63:3

73:2,8 89:20 90:25 91:13
111:4,5 143:17,19,20 145:24
160:1 170:7 173:5 193:7
194:23 195:19 201:11 203:23
205:18 225:9 227:11,11
234:25,25
**participated** 160:21 161:11
187:25 188:1
**particular** 8:17 9:21 13:8 40:21
43:15,23 44:19 63:16 70:17
75:12 80:15 81:10 90:8,10,10
90:10 106:13,22 127:23
130:22 166:20 169:6 170:23
191:15 210:11 215:17 219:25
**particularity** 176:7 177:9
**particularly** 45:21 138:7 177:12
231:11
**parties** 15:24 17:5 27:7 28:21
37:8,11 38:1 41:9 136:8 160:3
161:18 202:23,24
**partly** 145:8
**partner** 199:25
**parts** 26:6 49:6 190:8,18,21
203:19 204:3,15 220:6
**party** 12:1 69:8 147:24 202:14
205:10
**pass** 61:16 62:16 63:8,10 161:16
161:16
**passed** 181:18
**passengers** 185:22
**passing** 64:18,24 65:14
**past** 6:12 19:5,6 39:23 41:1 47:6
49:17 59:5 152:19 233:15
**pasted** 15:23 226:10,11
**PASTOR-HERNANDEZ** 4:10
236:10
**patient** 235:24
**Patrick** 4:5 31:18,19,21 32:6
35:16,18 37:5
**pattern** 198:1,3
**Paul** 2:17 7:22 31:9
**pay** 161:17 181:1 188:3 204:2
**paying** 11:19
**payment** 52:12,15 203:13,14
**payments** 17:6,14 18:2 21:14
23:9,18 203:9
**penalized** 181:23
**pendent** 108:18 112:18
**pending** 114:14 133:21 139:22
144:17
**Penthouse** 1:20
**Pentz** 2:20,21 7:20,20 24:22,22
25:3,9,13 26:5,10,15,19,23
27:2,7,14,17,20,2 2 28:5,9,15
28:20 29:8,10,12,16,20,22,25
30:18,22,24 31:6
**people** 9:13,14 12:17 23:15
25:23 26:9,10,11 27:17 29:2
29:17,18 32:3 35:12 39:8,22
40:6 41:4 42:5 46:11 49:24
58:22 60:13 63:14 67:9 71:23
86:3 91:16 92:18 96:18
124:10 128:5 129:7 132:3
142:13 143:3,5 144:14 147:15
148:9 189:7 195:19 196:20
198:18,20 199:12,17 200:3
208:3 216:7 217:6,6 220:21
232:4 234:5 235:5,7
**per** 43:11 71:22 100:20 195:7
**perceive** 139:16
**percent** 8:14 10:6 21:15 30:14
44:23 48:25 49:2 55:1,5,15,16
55:18 56:5 57:8,9,10 58:7,9
59:12,14,15
**percentage** 22:8 30:2 31:3 48:18
51:11 58:5
**percentages** 48:12
**perfect** 123:5
**perfected** 123:6

**perfectly** 199:7
**perform** 41:12 167:1 215:17
**performance** 82:23 83:15,19
**performed** 225:14
**perhaps** 104:18 180:22
**period** 137:6 140:7 148:12
160:16 183:7 219:11 221:17
227:13
**Perkowski** 2:20 7:21 24:23
**permissible** 28:17 112:20
**permission** 37:20
**permits** 99:10
**Perry** 2:4 7:17
**person** 52:8 84:23 90:10 147:15
177:18,22,24 226:12
**personal** 61:11 62:11 105:9
122:14,17 124:18 126:2,5
127:19 129:17 163:21 164:16
177:3 208:19 225:22,25
228:12,14
**personalize** 40:20
**personally** 19:9 44:6 45:16
**person's** 226:12
**perspective** 41:6 48:4,5,5,7,7
**persuasive** 134:7
**Peter** 1:13 6:19 51:19
**petition** 132:18 138:17 139:1
140:7,9 145:25
**petitions** 131:5 133:1,21,22,22
137:14,17 138:13,18,22 139:3
139:11,19,21 140:20 142:3
143:9,13 144:17,20,24,25
145:18 147:1 148:17,18,19
235:14
**phase** 115:9
**phenomenal** 44:3
**philosophers** 198:15
**Phoenix** 197:1
**phone** 38:24
**PI** 229:6
**pick** 27:25 63:6 110:13,18
**picking** 8:7 141:21
**picks** 27:25
**picture** 163:20
**piece** 20:16 128:13 151:11
**pieces** 40:18 43:10 46:14 47:8
**piggybacks** 8:5
**pills** 16:12
**pincite** 178:23 179:7
**ping-pong** 199:20,23 228:8
**place** 47:21 49:14 91:23 95:4
99:21 101:5 111:19 121:23
162:10 177:17,22 187:17
193:5 234:9,23
**placed** 98:5 101:19,25 102:2
114:13,22
**places** 114:24
**plaintiff** 51:14 61:23 76:2 95:2,7
96:18,19 107:11 116:12
173:11 218:2
**plaintiffs** 1:13 6:18,20,22 7:4
8:10 12:13,16,23 14:18 17:9
24:2 25:22,25 26:6,11,14,20
26:22,24 27:24 35:6 51:19
57:2 61:5 64:20,22,25 65:21
68:12,25 78:14 97:19,20 98:3
99:22,24 100:19 101:12
102:19 104:9 107:2,3,8,17,18
107:21 109:21 110:8 111:20
112:13,16 113:2,13 115:24
117:5,12 118:3,3,7,12,24,25
119:1,20 132:13 133:17 134:5
134:22,24 135:2,3,11,13,18
136:3,6 138:5,7 139:7 140:8
140:10,12 141:8,9,19 145:10
145:12,22,22 148:16 150:2,2
153:12 155:22 156:9 157:1
161:18,19 162:20 163:22
164:16 166:18 169:8,22,24

170:23 173:17 176:24 177:5
177:16 179:9 181:7 187:10
200:16,19,22 201:23 202:15
202:20,21,22 203:12 212:23
213:4 219:3 224:4,25 225:7
226:10,22 234:9
**plan** 10:19 46:12
**plans** 13:18 36:12
**platform** 138:19 144:7 146:1
**plausibility** 70:13 89:22 90:19
162:1 163:14 165:10
**plausible** 153:12 161:8 162:4,4
191:6
**play** 46:7 90:14 177:2
**players** 60:4
**Plaza** 2:5
**plea** 67:4,6,7,14,16,2 2 69:25
74:16 75:18 78:20 79:4,8,9,15
79:17,17 81:13,19,20 149:21
150:16 152:17,20,22,25 153:7
153:12,19 154:1,2,5,13
155:15,22 156:2 159:20 160:1
161:9 162:9 163:14 165:2,8
186:9,14,16,2 1 187:17 188:6
188:14 207:2,12
**plead** 78:18 125:1
**pleading** 62:12 68:8 124:25
125:4 175:12 176:9 177:2,5,7
180:15 200:1
**pleadings** 63:19 69:24 97:25
119:25 127:21 128:19 171:24
180:18
**pled** 69:15 73:19 77:13 78:15
84:5,9,22 112:14 150:16,20
153:12 157:5,5 180:19 187:4
**plenary** 113:6 114:4
**plenty** 63:13 69:6 135:20
**plus** 111:8 119:11 225:25
**pocket** 189:8
**Podhurst** 1:14,15 6:20
**Poertner** 57:25
**point** 15:5,19 17:10 24:11,17
38:21 43:14 53:2 61:19 68:11
69:22 72:22 73:25 75:12
76:19 88:12 95:19 99:1
100:21 117:6 119:3 123:5
124:23,24,24 126:23,25
127:18 131:8,25 137:4 141:21
145:17,20 147:14,20 151:11
151:14 152:3 162:1,12,19
164:9 165:9 166:1 170:16
171:14 177:10 178:2 179:6
180:3 181:22 201:19 202:10
202:11,13 203:7 213:17,18
214:24 217:18,19 223:3,10
225:12,24 226:18,19
**pointed** 178:6 235:12
**pointing** 166:11 169:12
**points** 46:3 163:13 190:5 220:18
222:12,17 228:11,20
**policy** 56:7,9
**pool** 11:11
**poorly** 41:12
**population** 40:2
**portion** 16:20 22:9 28:16 29:17
30:9 206:7
**posed** 66:13,21
**position** 81:17,21 84:19,20
133:7 181:5 207:25,25 232:23
**possible** 46:14 197:11
**post** 40:7,18 41:4 42:16 46:17
**postpone** 133:14
**posture** 137:8
**pot** 18:10 192:14,14
**potential** 38:25
**potentially** 117:4,6 138:21
185:20
**power** 12:1
**practical** 37:23

**practice** 107:13 162:9 190:8
**practices** 145:13
**precise** 131:5 147:15 177:16
**precluding** 51:7
**predicate** 156:9
**predict** 145:9
**predominance** 51:9
**preemptive** 179:17
**prefer** 36:24 171:10,12
**preference** 41:3
**prejudice** 134:24 136:3 147:23
**preliminary** 15:21 17:15
**premature** 97:25 108:15 152:2
**premise** 112:11
**premised** 188:19
**prepared** 49:23 68:12 111:16
113:16
**present** 8:3 39:16 51:25 158:16
**presentation** 14:19 32:7 35:24
36:1
**presented** 47:22
**preserve** 62:6
**pressed** 224:12
**presumably** 26:1,3
**pretrial** 100:25 106:14 107:20
115:18 118:6,7
**pretty** 42:5 44:24 54:3 60:20
152:4 174:22 213:1,5
**preventing** 40:10
**previously** 9:3 89:19 95:21
98:16 164:23 209:25
**pre-approval** 83:24
**price** 184:1 202:20
**prices** 199:7,9
**Prieto** 1:13 6:19,19 51:15,18,19
51:23 52:6,22,24 53:5,10,12
53:14,16,18,22,2 5 54:3,8,20
54:23,25 55:4,13 57:2,5,7,21
57:23 58:19,25 59:22 63:21
63:23 64:1,5,10,12,19 65:23
76:3,8,10,13,2 3 77:1,3,5,7,21
77:25 78:4,6,10,2 3 79:1,4,6
80:8,21,23,25 81:4,8,20 82:2
82:5,7,13 84:4,9,12,14,16,19
84:22 85:3,9,13,19,2 3 86:1,5
86:10,12,14,17,2 1 87:1,3,9,11
87:17,20,22,25 88:2,12,17,20
89:5,16,21,24 90:2,4,7,12,15
90:18,22 91:3,9,11,15,19,25
92:3,7,10,12,14,19,22,2 4 93:1
93:6,13,19,22 94:4,6,9,12,16
94:24 95:1,11,16,1 8 96:2,5,9
96:16,24 97:6,9 98:2,8,11,14
98:22 99:8 100:3,7,9,12,17
101:6,10,14,16,21,2 5 102:2,5
106:23 107:1,7,12 108:2,8,11
108:15,24 109:7,10,14 110:1
110:4,7,15,19,2 1 113:9
117:13,14,16,20,2 3 118:1,5,14
118:22 119:3 120:10,12
123:13,16,19,22,2 5 125:12,14
125:21,24 126:1,4,8,18 127:2
127:10,16,18 128:2 131:9,16
132:4,5 154:5 155:10 161:21
162:6 172:23 173:24 179:15
179:20,22 180:5,7,10 181:9
181:11,14 182:5,7,9,15,19,22
182:25 183:17,21 185:7,12,16
185:24 186:15,22 187:2,7,10
187:15 188:21 189:4,7,13,18
190:12,14,18,2 0 191:1,3,21
192:12,14,20,22,2 5 193:6,9,13
194:1,5,9,14 195:4,6 196:17
196:19 197:6 198:14,16
199:25 204:10 205:12,14,17
206:13,17,22 207:4,8,11,14,16
207:21 208:9,13,15 209:3
221:3 222:20 223:1 225:19
226:25 227:17 228:9,15,19,22

229:1,15,18 230:24 231:7 235:25
**Prieto's** 152:18
**prima** 125:1
**primarily** 122:21
**primary** 146:7,8,16 147:21,23 178:4 200:13
**principal** 99:20
**principle** 190:7
**principles** 80:5
**printer** 216:8
**prior** 9:3 20:19 83:4,13,20 89:2 125:16 135:19 150:15 224:19 225:1
**prioritized** 135:3,13
**priority** 40:23,24 41:1 107:5
**private** 162:9 221:21
**privilege** 158:14
**probably** 11:2 22:13 29:18,19 36:11 42:4 54:15 59:5 60:23 71:2 72:19 76:23 93:19 104:14 110:12 151:21 153:15 170:22 179:5,5 213:17 215:6 217:16 221:21
**problem** 12:24 20:3 25:25 39:11 40:15 52:24 71:8 72:5 76:17 77:5,7 85:14 91:4 105:25 106:1 114:9 134:7,10 149:19 151:2 180:14 183:11 185:2 220:16 222:25 223:9 225:6 230:1 235:18
**problems** 12:20 77:12 82:18 83:19 90:1 129:10 164:19 168:5 184:10 186:1
**procedural** 137:8
**procedure** 234:8,24
**procedures** 49:14
**proceed** 115:16,17 129:21,22 136:7 140:23,24 145:23,25
**proceeded** 144:3 160:6
**proceeding** 141:17 146:16,18 148:4
**proceedings** 1:9 6:1 65:18 100:25 115:18 129:2 236:8
**proceeds** 135:5 190:7,9
**process** 10:2 24:3 28:21 38:5,14 43:8,8 45:17 47:23,24 48:3,10 48:15 67:20 70:5 105:11 137:5 140:3,6 144:19 146:17 146:22,23 174:1
**produced** 69:9 88:6,7,7,8,10 173:25 192:4,6,8
**producer** 221:15
**producing** 158:2 174:2
**product** 204:24,25 213:23 215:2 216:21,25,2,5 217:12 218:25 218:25 219:2 221:1
**production** 71:20
**productions** 135:4,14,19
**products** 1:5 201:15 203:22 216:24 219:10
**professional** 14:18 15:7,20
**professors** 198:15
**proffer** 32:8,12 33:3
**proffered** 33:4
**profitability** 197:12
**profits** 220:3
**program** 8:17 9:25 10:3,18,20 10:22 11:16,17 13:8 18:3,4,6 18:7 20:10,11 25:7,12,19 26:19 27:8,14,16,2,5 28:11,16 32:20 33:14,18,20,23,24 34:1 34:13,24 36:13 37:8,14 40:6 42:15 48:17 49:1,1 50:8,25 51:2,4,6 54:9 59:17
**Programs** 37:21 38:6,12,23 41:14 47:4
**progress** 48:10 49:9,12 55:8 135:17 139:24

**progressing** 139:23
**prohibited** 201:19
**prohibits** 229:23
**promise** 122:25 156:25 160:11 199:22
**promoted** 220:11
**promptly** 158:1
**prong** 210:11
**proof** 87:7
**propellant** 82:18
**propellent** 83:6,6
**property** 224:11 229:23
**proposal** 118:19
**proposed** 6:17 80:4 95:7
**proposition** 69:22 74:15 75:3,4 75:18
**prosecuted** 55:25 159:16,18,21
**prosecution** 159:8,15 208:6
**prosecutor** 162:9 181:2 198:6
**protect** 221:25 232:1
**protecting** 129:22
**protection** 62:8 157:11 210:5 215:19 217:20,25
**Protective** 73:12,15 76:20,22 78:8,9 91:11 230:18,21 231:2 232:22 233:4 234:9,23
**protects** 218:23
**prove** 69:3 77:17,19,2,1 86:10 87:5 89:12,13 91:17 123:4 217:7
**proved** 33:4 43:12 218:6
**proven** 160:8
**proves** 88:23
**provide** 29:6,12 47:3 51:3,4,6 158:22 159:14
**provided** 38:9 84:2,7 167:6 169:13
**provides** 159:5 210:6
**providing** 25:14 158:5
**provisions** 124:4 157:17 188:22
**proximate** 179:14 200:21,25 201:5 202:25 203:8 204:4,11 204:13,23 205:1,9 206:8,9,22 206:25 219:7
**proximately** 222:6
**PSAN** 160:25
**PSC** 47:25
**PSD** 83:24
**public** 8:9,10 38:24 46:4 73:5 74:3 76:11,14 77:14,14 89:19 91:5 226:21 227:20
**publication** 44:5
**publications** 13:11,15 46:21
**Puhalla** 61:1 65:20,20 175:14 176:10
**pumped** 45:21
**purchase** 160:23 203:24 219:10 219:10
**purchased** 96:20,25 161:4 201:20 202:18,19,19 203:20 203:22 217:24
**purchaser** 169:16 216:1 218:13
**purchasers** 200:18,19 202:15,21 204:1 210:7 219:5,23 221:14
**purchasing** 201:20
**pure** 215:20
**purported** 21:17
**purpose** 118:6 196:11 197:10,18 197:13 166:13 167:19 224:16
**purposes** 22:8 97:10,12 113:9 117:4 166:13 167:19 224:16
**pursuant** 111:16 124:19 155:14 158:12 159:12
**pursue** 134:5 142:11 205:23
**pursued** 203:12 204:5
**push** 10:24 45:5 75:16 193:10
**pushed** 209:4
**pushing** 45:12 219:20
**put** 11:4 14:13 16:13 17:17

32:17 42:17 49:14 51:20 54:6 57:24 59:24 62:18,22 63:11 63:11,12 66:4 75:17 78:2,10 88:18,20,21 89:16 90:6 91:1,3 103:10 104:16 106:14 111:20 142:16 143:7 145:1,9,21 149:3 163:4 175:23 185:19 193:1 213:20 214:8 218:12,17
**putative** 68:25
**puts** 8:24 71:3 80:17 181:4 189:8
**putting** 49:7 88:19 146:2
**Python** 209:20
**P.A** 1:15,19
**p.m** 128:24 129:2 236:4

---

## Q

**quality** 39:6 213:22 215:1
**quantify** 206:24
**quasi** 141:23
**question** 18:17 35:19,20,23,25 36:6 53:25 66:4,21,23 69:12 72:16,20 95:19 97:2,4 102:17 102:19 104:6,8 105:4,6,8 110:21 111:10,18 114:3 131:6 132:12 149:24 153:10 169:8 181:1 186:4 222:24 223:4
**questions** 34:11 36:8 49:10 58:15 156:24
**quibble** 84:4
**quibbles** 143:21
**quick** 147:20
**quickly** 122:25 153:22 156:6 159:24 235:23
**quiet** 114:8
**quite** 67:9 69:8 148:19 179:4
**quote** 57:18 82:9 124:9 158:11 161:20 179:8 184:3,4,5 189:18 191:13,17 196:10,13 197:7 202:9 224:10
**quoted** 87:22 189:22
**quotes** 78:5 80:17 191:20,21
**quoting** 124:12 152:18

---

## R

**R** 2:20 236:6
**racketeering** 152:6 174:21 190:25 198:1,3
**raise** 14:10 85:11 100:21 131:5 199:6,9
**raised** 8:7,8 9:3 83:14 105:9,12 131:6 163:23 164:14 184:15 204:11
**raising** 167:23 234:2
**Ralph** 59:7
**ranging** 145:12
**Raoul** 66:15
**rapid** 129:21
**rate** 23:14 24:5 33:20 43:9
**rates** 44:22 48:13
**rather** 98:19 102:22 103:25 106:4,7,9 185:20
**Ray** 172:3,12 195:21 196:5
**Raymond** 50:22
**Re** 1:5 193:17,23 196:24
**reach** 9:14 38:3 39:22,23 40:21 47:18 50:10 124:17 190:3
**reached** 45:8 52:10 78:10 79:20 205:21
**react** 165:15
**reactivate** 106:13 114:13
**reacts** 40:6
**read** 13:14 16:9,16 19:7,14 28:1 53:11 68:16 82:5 179:23 185:12 225:1 234:15
**reader** 229:13
**reading** 19:10 48:16 58:20 86:12 86:14 196:14
**ready** 71:14 106:15 136:18

148:23 149:2
**real** 12:13 39:14,14 45:6,6 70:15 141:13,13 164:18
**reality** 56:12
**realize** 8:24
**really** 6:3 9:7 12:2,18 27:8 37:14 44:9 52:25 53:22 63:6 65:8 66:16,21 67:2 68:9,10,23 69:12 70:11 79:8 85:25 88:24 92:9 95:21 104:1,20 109:2 121:1 131:8,14 132:10,10 134:11 137:22 142:25 146:1,4 146:7 150:14 153:3,11 162:20 164:22 165:8,9,18,20 169:8 169:12 186:7 206:9,17,23 209:13 220:20 231:25 232:9
**realm** 162:7
**reason** 17:22 26:25 32:16,18,19 51:24 60:7 102:18 104:12 110:11 111:18 116:24 122:17 123:8 141:6 144:15 148:4 149:15 152:4,16 161:5 166:11 171:9,14 183:6 195:23 201:5 203:8,21 219:7 222:3 224:2 225:9 232:4
**reasonable** 11:24 15:14 51:10 55:18 57:7,9 58:7,9 59:14 134:13 160:8
**reasoning** 56:17
**reasons** 39:7 51:10 56:7,9 78:24 91:12 122:19 143:6 150:5 165:3 183:12
**Reath** 4:2
**recall** 13:19 24:4 38:20 39:2,12 40:14 43:24 44:21 46:17 83:9 133:3 138:23 139:4,8 143:11 143:16,24 145:15,15 185:4,20 201:16 202:10 203:24 220:12 225:13,14 227:7,7,13,20
**recalled** 202:4 203:19 219:15 225:11
**recalls** 139:2,10 201:18
**receive** 46:17
**received** 5:12 40:25 43:10 44:4 47:12 80:25 99:12 197:20
**recent** 97:16 140:7 165:17
**recently** 88:7,8
**receptive** 49:11
**recess** 65:17 128:24
**recipient** 43:4
**recitation** 160:12 161:10
**recklessness** 217:16
**recognition** 44:6
**recognized** 60:9 83:12
**recognizing** 164:22
**recommendation** 80:13 191:14
**recommendations** 13:17
**recommended** 28:7 123:18,19 123:22 127:5
**Reconsideration** 64:15
**record** 50:18 60:10 91:5 158:23 187:16 235:11,17
**records** 88:8,10 92:15 192:4,6,9 193:2
**recover** 80:10 202:5 203:23,23 220:2
**recoveries** 201:7 203:12
**recovery** 203:11
**recruiters** 170:2,5
**recycled** 201:18
**recycler** 120:24 125:16 201:23 202:15 206:5 209:24 231:16
**recyclers** 125:3 127:24 179:14 200:11,23 201:8,8,14,17,19 202:4,24 203:5,11,13,18,22 204:5,9,14,17 205:5,6,21,23 205:25 210:20 214:21 217:20 217:23 218:4 222:3
**recycling** 207:1

**red** 206:23
**redraft** 175:22
**reduce** 9:20 12:22 17:2 64:4
148:3
**reduced** 12:16 50:24 55:2,4,11
59:10,11 83:7
**reduction** 55:6
**refer** 61:12 141:9,10 168:24
171:22 210:22
**reference** 74:22 78:4,6 79:1
92:21 160:1 179:9 229:20
**referenced** 73:9 90:7
**references** 154:4
**referencing** 175:15
**referring** 161:20
**reflect** 174:16
**reflected** 73:10
**reflecting** 83:18
**regard** 35:1
**regarding** 63:5 76:9 212:13
234:14
**regardless** 133:15 136:5,5
138:11 143:16
**registration** 39:4,8,17 43:18
**regular** 46:15 173:13
**regulators** 151:7 167:5 169:18
**regurgitating** 61:20
**reimbursement** 21:13
**reject** 16:17,20
**rejected** 52:3 141:11 144:24
188:25 224:10 229:12,15
**relate** 175:17
**related** 24:12 30:10,11 39:15
163:17 177:8 182:21 185:8
217:8 230:15,16,17,18,19
231:4,5
**relates** 177:11 183:23 200:22
211:14 231:2 234:21
**relating** 158:5 159:11
**relation** 201:2
**relations** 38:24 46:5
**relationship** 169:15 202:6,8
233:8
**relative** 41:12 43:10
**relax** 34:25 35:3
**relevant** 137:22 138:4 157:20
158:4
**reliably** 21:22
**relief** 20:7 21:17
**reluctant** 151:21,22
**rely** 102:20 169:22 176:8 201:13
**remain** 107:23
**remains** 151:19
**remarkable** 44:22
**remedial** 196:24 197:2
**remedies** 38:18 47:19 210:6
**remedy** 8:6 9:10 13:11,20 27:24
28:7 133:3 138:25
**remember** 54:25 83:9 97:16
98:25 100:5 179:1 180:14,19
187:3 208:4 209:15 228:2
**remembered** 126:18
**reminded** 56:19
**reminds** 220:19
**remiss** 49:5
**remote** 204:1
**remotely** 151:18
**remove** 230:21 233:4
**removing** 233:3
**rendered** 210:15
**Renee** 3:1 130:3 235:9
**rental** 10:20,21 11:17 25:12,13
25:14,17 29:3 50:25 51:5
**repackaged** 95:21
**repair** 21:3 39:5 40:10,13,16
44:22 225:14
**repaired** 20:21 48:24 49:2
**repairs** 37:23 47:13 133:3
**repeat** 15:18

**repeatedly** 83:23
**replace** 21:3 26:7 27:4
**replaced** 21:1 26:17 27:18 58:23
**replacement** 20:25 26:6 29:3
**reply** 217:23 227:4
**report** 36:2,13 37:18 44:18
49:23 50:16 86:15 139:1
184:18
**reported** 4:9 44:17 48:12 184:21
**reporter** 4:10 9:12 60:7,8 63:9
65:5 66:7 80:7 114:11 119:15
128:11 236:11
**Reporter's** 5:4
**reporting** 157:24 158:10
**reports** 48:13,16 161:1
**represent** 8:1 14:15,22 62:18
63:12 66:10,12 102:15 103:21
120:15,18 130:2,3 211:12
213:2
**representation** 179:8 212:4
219:1,17
**representations** 210:14 211:22
211:24
**representatives** 58:13
**represented** 192:8
**representing** 123:9 213:3
**reputation** 218:3
**request** 35:3 37:10 52:14 59:10
70:20,21 79:23 99:25 117:3
137:2 158:23 235:15
**requested** 58:12 141:9 148:11
149:8
**requesting** 58:14
**requests** 141:10
**require** 13:17,18,22 99:11 222:1
**required** 97:12 115:7 159:13,13
159:14,14 161:17 170:6
177:13 222:6
**requirement** 147:20 177:11
203:8 204:4,13 216:17 217:10
**requires** 6:14 18:13,23 27:23
176:3 196:12 210:11
**requiring** 13:17 93:3
**res** 145:10 147:5
**Research** 145:1
**researched** 99:9
**resell** 204:25 205:7 218:14,16,17
**residual** 21:14 23:9
**resolution** 206:15
**resolve** 206:14,19
**resolved** 206:11 225:25 227:9
**resolves** 126:2
**resources** 136:8
**respect** 67:12 70:7,18 103:7
112:3,16 113:4,8 133:7
158:15 163:14 166:1 167:3
169:14 172:14 174:21 177:22
194:10
**respectful** 71:11
**respective** 38:8
**respects** 190:14,23 191:7
**respond** 43:5 73:22 76:2 141:20
199:19 204:9,10
**responds** 75:23
**response** 43:11 51:14 53:8
102:17 138:9 141:10
**responses** 36:7 38:18 48:21
**responsibility** 37:7 157:6
**responsible** 177:18,24
**rest** 45:14 119:25
**restitution** 67:17 70:6 78:16
79:24 80:5,22 86:19 88:25
154:3,6 155:5,14 157:8,8
160:13 181:1,4 189:5,12
**restraints** 38:3
**result** 38:4 80:19 112:2 201:14
201:15,20,24 202:17 203:19
204:24 208:6 210:15 217:1
218:21 219:14 227:12

**results** 11:12 37:19 44:3,10
45:10 49:15 161:3 167:4
169:14 184:6,13,18
**retired** 41:11 178:19
**return** 23:14
**reveal** 91:7
**revealing** 91:4
**revenue** 197:12,16
**review** 41:9
**reviewed** 85:24 88:8
**revisit** 130:21
**revisiting** 166:9
**revive** 118:22
**reward** 35:8,13
**rewarded** 162:10
**Richard** 2:1 213:3
**Richmond** 2:2
**RICO** 75:15 84:24,25 107:16
108:2,4,22 109:19,24 110:9
111:11 112:5,6,6,10,12,14,16
113:9,17,18,19,24 114:1
116:15 118:13 122:20,21
123:3,6 124:5,20,23 145:14
149:21 150:2,6,15,19,21
151:9 152:5,6,7,13 156:10
157:1,5,7,10,1 4 161:6 163:1
163:17,18,20 164:14,17
165:16,22 166:2 167:19,22,25
168:14 169:19 170:24 171:17
172:14,25 173:6 175:3 178:17
178:21 179:12 181:3,15,16
183:5,6,8,9 188:18,21,25
189:13,15 190:24 191:4
193:14,19 195:6,8 196:14,19
196:20 197:8,13,14,17 198:4
198:5,7,10,10,12,16,1 9 200:11
200:22 201:3,11,24,25 202:6
204:5,11,12 205:17 206:9
208:12,16,22 223:11,18 224:2
224:11,14,16,2 1 226:4,17,18
229:2,11,13,21,3 234:7
**rid** 109:24
**ride** 143:2
**ridiculous** 93:12 233:24
**right** 7:9,15,24 8:20 11:2 13:25
14:3 16:10 18:16 19:10 20:3,9
21:10 24:1,10,19 25:8,9 26:9
26:23 27:1,2,5,9,11 28:15
29:17 31:4,4,7,19,22 46:23
57:21 58:18,24 59:2 62:2,6
65:15,15,19 66:5 67:16 68:8
68:14,17 69:4 70:8 72:21
73:17 74:3,13,13,13 75:22
76:1,7,16 77:12,18 84:3,3
85:8,16 90:11 91:14,15 92:2,6
94:3,8,9,23 95:6 97:8 100:23
101:21 102:6,24 103:18
104:16 105:5 106:16 110:5,12
110:14 113:5 115:13 116:24
117:20,25,25 118:21 119:2,8
119:21 120:9 121:7,9,18
125:9,11 126:13 127:10,16
128:10,13 131:13 133:24
135:11 137:19 138:15,23
139:8,10,22 141:15,15 143:4
146:3 147:3,13 148:2 149:3
149:17,20 150:20 152:6,9,15
153:4,23 155:17,20 156:15,21
157:10,19 159:16 163:17
165:7 166:7 168:8,13 170:6
170:18 171:18 172:10 173:11
173:20 175:1,5,25 176:4
177:1 178:9 179:11 180:4,12
180:21 181:20 195:9 197:5
199:16 209:15,22 210:11 211:10
216:19,21 219:24 220:17
222:7 223:19,23 224:5,7
226:5 227:23 231:17 232:2,15
232:23 233:1,24 234:3,17

**righty** 50:9
**ripe** 101:1
**rise** 128:23 236:3
**risk** 30:15,15 31:1 39:15 45:18
54:16
**risky** 31:2
**Rites** 2:21
**road** 39:19 46:1 49:1
**rob** 189:7
**Robert** 178:17
**robust** 141:12 165:16
**rodeo** 188:11
**roles** 196:10
**roll** 46:3
**room** 50:11 63:13
**Rose** 3:22
**Rosenbaum** 194:16
**Rothstein** 2:17 7:22,22 31:9,10
31:13,15,19,23 32:2,8,11,15
32:19,22,24 33:4,8,12,16,24
34:3,7,9,15,19,2 3 35:5,10,15
35:18,23 36:2,4,7,11,19,22
**roughly** 11:22 37:13
**round** 142:14
**roundly** 141:11
**routes** 43:4
**routine** 41:5
**RPR** 4:10 236:10
**RSVP** 143:5
**rule** 16:24 17:21 19:3,19 34:25
51:9 52:6,8 59:21 62:1 63:18
69:4 70:12 85:7 119:9 122:4
122:13 126:19 128:4,18 136:5
137:1 142:8 144:20,22,23
145:3,5,20 147:1 177:11
186:16 199:24 200:15 230:3
232:16 235:22,23,23
**ruled** 59:15 62:10 66:25 68:10
105:13 112:23 123:17 125:19
131:7 142:3 164:23
**rules** 35:3 99:11 106:17 123:23
133:15,16 138:12 140:24
145:21
**ruling** 63:18 145:14,18 224:19
230:17
**rulings** 137:2 147:10 230:4
**run** 76:19 207:25
**rupture** 184:12,19
**ruptured** 227:1
**ruptures** 68:4,21 184:11 185:3
**rush** 140:17 148:4
**Ryan** 123:17

---

**S**

**S** 1:14 3:10 4:1 215:22
**safe** 93:21 96:17 212:18 215:4
**safeguard** 212:7
**safety** 61:9 98:3,5 129:20 133:2
133:7 185:21 212:12,19 215:5
216:11,12,15
**saleable** 219:16
**sales** 197:16 201:15,19 218:4,5,5
218:11 220:3,10,12,13 221:3
**same** 20:8 22:15 23:2 42:7,13
48:2 52:1 55:23 58:5 66:25
72:3 81:17 83:23 95:20 96:1
96:15 97:17 107:8,14 111:7
115:22 116:7 117:8 126:12
131:19 137:8,19 139:22 156:9
156:13 188:9 195:11,16
198:24,25 201:7 202:25 203:1
203:4,4,5,9,11,15,15,16
205:12 206:2,6 207:4 222:15
224:4 226:11 234:16
**San** 3:24 120:21 126:11
**sanctions** 78:16
**sat** 120:13
**Satisfactory** 235:3
**satisfy** 176:5 177:5

save 28:12 46:19 179:11
saves 54:9
saving 214:7 217:6
saw 11:3 60:20
saying 10:10 12:11 21:6 22:3,5
    22:20,23 50:21 51:5,21 53:6
    72:6 75:10 78:7,20 84:6,7
    86:20 91:18 100:5 109:7
    110:3 112:16 121:2 140:17
    145:2 157:11 163:4 174:25
    206:4 215:12 221:5
says 35:21 36:9 54:11 80:12
    103:20 154:22 156:18 159:3
    161:24 162:2 168:22 191:16
    193:4 212:5 213:22 214:5
    221:22 223:21 229:22 233:13
scale 46:10
Schedule 155:2
scheduled 47:12
scheme 160:21 176:19,22 182:10
    182:14 190:2 196:8 197:16
    209:4
Schiller 1:23 2:1
school 175:6,7
scienter 174:23 175:11,20,21
    176:6,24
scientific 28:21 133:5
scope 185:2,20 197:21,24
scrap 166:25
screw 179:2
se 71:22
seal 77:15,16 232:24,25 233:23
sealed 70:22 71:5,6 89:10,10,11
    90:25 231:24,25 232:4,19
    233:9,14,19
sealing 71:1,2
season 44:11
seat 36:14,20
second 8:8 31:12 53:2 54:2,4,6
    55:6 65:10 121:20 122:25
    123:1 132:4 143:5 146:15
    149:8,23 150:16 152:3 174:20
    178:17 182:2 185:13 200:24
    201:4 222:14,16 223:23
    225:12 226:3,5 229:11 234:25
secondary 201:15 216:7 219:12
secret 85:16,17 151:6 167:1
    232:3,10 233:20
secrets 232:1
section 16:18,18 17:4,16 18:20
    160:7
sections 175:23
Security 128:23 170:5 236:3
see 6:13 13:16 18:11 20:3 42:5
    42:13 43:25 52:16 63:5,14
    70:13,24 77:15 90:9 103:13
    105:13 114:10 125:10 126:25
    129:5,7 131:12 134:10 145:19
    148:24 149:12,16 154:11
    155:7 169:16 175:9 180:13
    185:10,14 193:17 209:13
    231:9,14,23,25
seeing 95:20
seek 23:15 203:11
seeking 111:21 203:5,13,14
    220:2
seem 48:3
seems 12:6 24:1 35:8 54:15
    58:17 73:10 85:17 89:3 94:10
    117:8 129:15 132:17 137:15
    180:24 189:16 213:1,5
seen 47:13 220:1
sees 14:11 209:14
segment 40:19 46:16
segments 40:2,5,5,9
selfish 183:12
self-evident 68:14
self-interested 190:5
sell 10:24 197:10 201:17 202:5

204:3,15,20,2 2 216:8,9 218:6
selling 213:17,18
sells 206:5
Senate 42:15
send 43:21 44:24 54:10 63:1
    103:2 106:15 107:25 110:15
    121:19,20
sending 41:4 46:15
sends 105:13
senior 6:23
sense 26:17 64:13 92:6 96:13
    106:23 107:19 117:21 118:5
    118:20 119:11 221:11 234:8
    143:7,25 144:1 162:5 180:22
    203:21 226:9 232:2 235:4
sent 44:14,16 53:6 83:18 105:2
    107:24,25 108:3,25 109:1,2,9
    109:12
sentence 18:21 198:8
sentences 62:19
sentencing 156:1 187:11 198:9
separate 106:4 111:6,6 116:10
    116:11,20 143:24 176:12,15
    205:4,5,24,25
separately 55:25 56:3 106:6
    116:9,9,15 175:16 182:20
    194:4,6 205:23
September 131:7 187:17
series 34:11 66:22 159:1
serious 82:17
seriousness 48:2
serve 48:14 124:22 125:16
served 126:9 142:1 197:10 198:3
service 123:5,6,23 124:4,6,19
    126:7 127:4,5,7,8
serving 37:13 124:23
SESSION 129:1
set 8:8 45:14 66:22 82:21 87:16
    135:21,23 149:2,23 159:11
    160:9 164:3 165:19 177:14
    222:14
sets 165:9
Setting 147:22
settle 22:1 56:13,15,25 57:3,7
    64:2 117:24 125:23 126:3
    230:3
settled 56:22,23 125:18,20
    231:12 233:15 234:5
settlement 1:9 6:17 8:4,5,13,18
    8:20 9:6,7,15,18,24 10:4,5,6
    11:17 12:12 13:10,16 16:7,8
    16:17,23 17:1,5,14,17,19,25
    18:12,23 19:24 22:2,6,10 24:8
    25:15,21,23 28:16 29:6 30:3
    30:11 34:4 37:8 38:3 51:25
    52:10 55:23 58:3,11 64:3
    203:3,10
settlements 8:9 25:7 28:25 30:10
    37:22 38:8 47:6 52:2 55:1,8
    56:8,9,14 58:5 59:20 205:20
settles 56:21
settling 37:8 38:1,10,13 41:6
seven 37:13 48:9,25 49:2,17
    116:15 139:8 154:4
seventh 30:23,24 54:15
several 13:12 38:10 41:7 47:6
    58:20 83:2 122:22 136:25
    139:17 184:14 210:7 212:9
    229:20
shape 87:4
share 107:14 190:7
shared 184:12 197:14
shares 220:20
sharing 197:15
shells 91:22
Shield 177:14
shifted 125:4
short 143:7 149:5
shortage 26:5

shorter 144:4
shotgun 91:22
show 89:19 95:7 173:22 178:7
    193:2
showing 184:18
shrapnel 184:5
shrift 149:5
sic 154:16 184:23
side 7:10 62:17 64:25 75:17
sides 61:7 64:17 65:1 139:16
Sidley 3:18
sign 14:12 32:13 73:16 75:17
    232:8,9
signed 33:2 73:14 128:5 200:3
    222:10
significant 34:24 46:9 48:15
    58:2 139:19 143:15 184:15
significantly 10:18 33:21
signs 82:16,17
similar 15:15 20:7 25:8 45:11
    140:6 158:9 212:14,15
similarities 40:2
similarly 25:24 26:15,17
simple 150:5 153:19
simplify 147:24 181:21
simplifying 54:17
simply 39:13 40:14 41:4 83:3
    95:18 107:17 188:10 194:10
    212:11
since 8:22 11:3 35:16 39:14
    40:24 48:9 80:24 96:22
    120:13 125:3 132:20 178:14
    178:21 200:4 209:5 235:19
single 48:15 53:3 80:6,8,10
    117:17 163:2 177:24 203:18
    225:7
singly 46:12
sir 36:16 41:22
sits 65:3 129:4
sitting 7:6 34:10 49:10 65:2 67:2
    106:1
situated 25:24 26:15,18
situation 105:20 122:9 141:4,12
    217:15 219:4 220:9
six 30:10 52:2 116:15 130:12,21
    130:23,25 131:1,3 134:15,20
    134:22,23 135:20 136:18
    137:10 142:6 148:22 149:9,9
    149:14,15 150:17 175:15,16
six-month 134:10 141:16 206:20
skip 159:3 160:6
Slow 80:7 82:12
small 59:8 206:6
smaller 28:16,16
smart 64:16 162:6
smarter 175:6
Smith 3:11 129:23 130:3,3,8,11
    130:14,18,24 131:3,15,25
    132:10,12,16,18,22 133:12,15
    133:21,25 134:4,21 135:2,6,8
    135:11,16,25 136:3,14,16,20
    136:24 137:17,20,25 138:5,16
    138:18,21,24 139:6,10,16,23
    140:1,5,16,21,23 141:3,8
    147:11,14,19 148:3,11,14,24
    149:1,4,7,12,18,23 225:10
    235:9,9 236:2
social 39:20 170:5 180:16,18
sold 197:19,22 212:10
solely 69:21 231:2
solution 9:15 100:14
some 6:3 9:6,6 12:17,20,21,24
    15:23 23:3 25:2 26:6 28:20
    29:1 34:10 37:16 39:12 40:12
    41:6,11 42:5,22 45:1 46:22
    47:17 49:10 50:17 51:5,6
    55:22,22,23 56:16 58:20,20
    58:22 59:4 60:4 61:11 62:7,9
    66:7,25 68:18 70:18 71:10

76:19 78:10 81:2 84:9,12 85:1
    85:3,4,5 86:3 87:12 89:7 90:4
    97:16 107:23,23 110:14,17
    117:5 118:12 119:22 129:7
    135:25 142:9,9 143:3 145:17
    145:20 148:9,15,15,18 151:10
    151:11 152:6,10 153:20,25
    155:24 157:11 159:3 161:25
    162:13 163:13 164:18 170:7
    176:8 180:22 181:22 185:7,9
    190:3,14,22 191:7 192:13
    200:2 209:10 212:5 214:23
    218:21 219:8 225:24 228:4,18
    230:9 232:14 233:20
somebody 59:25 85:14,15
    204:23 214:5 220:19
somehow 181:23 192:1 234:7
someone 49:11 50:3,3 58:24
    60:25 63:15,17,19 65:10
    67:21 68:3 72:15 75:22 76:18
    86:8 119:25 129:9,16 142:23
    143:1 152:2 175:5 187:10
    232:10 233:13
something 7:1 11:5 15:6 19:9,10
    32:23 36:3,15 46:17 70:17
    72:7 86:24,25 88:2 92:8 94:5
    94:11,12,17 107:24 127:15
    128:4,19 129:16,18 130:7
    137:11 141:16 144:16 157:3
    162:3,21,22 170:22 172:23
    180:4,7,7 182:3 189:8 199:1
    204:12 209:19,23 214:19
    226:17,22 227:12,14 230:6
    231:24 232:2,19 233:15,18,19
    235:11
sometimes 9:10 35:12 39:7,8
    49:6 71:4 72:6 93:13 120:12
    143:3 180:17 228:3 230:3
somewhat 26:11
somewhere 44:7 45:9
son 42:12,20 175:7
soon 30:24 119:16
sooner 140:13,15
sophisticated 10:2
sorry 13:3 14:14 33:11,25 60:2
    65:23 70:23 80:8 82:13 98:8
    102:11 105:6 115:25 119:14
    123:19 128:9,11 129:3 130:1
    138:16 139:9 150:25 170:14
    171:1,2,4 174:6 213:1
sort 13:23 18:13 19:5 74:14
    100:22 107:14 118:1 146:4
    155:24 159:16
sound 74:11 113:11 187:8
sounds 117:5 166:23 173:14
source 45:11
sources 39:17,21
South 2:2 3:6 199:5
southern 1:1 45:15 61:13 98:20
    222:21,23
so-called 84:3 98:16 101:10
    181:4 192:7
so-to-speak 41:11
Spalding 208:18,24 224:2 229:4
speak 6:6,8,11,13 9:7 12:21 14:6
    32:6,7 41:24 45:21 49:15
    61:14,17 62:17,21 64:6,23
    72:23 102:9 162:8 178:12
    200:7 212:22
speakers 6:13
speaking 15:3
spec 203:23 204:3
special 4:5 37:6 67:20 70:5 79:6
    79:14,20,23 80:2,11,17,18
    81:8 86:6,14 123:17 127:5,8
    191:13,16 192:16
specialized 147:16
specialty 164:11
specific 13:20 18:9 43:3 46:22

63:5 69:5,19 71:18 85:7,12,13
87:16 91:21,23 94:20 96:2
98:11 113:21 114:2 126:8
138:18,19 151:11,13 179:8
191:18 210:17,21 215:16
226:16
**specifically** 53:5 57:17 61:2
71:16 85:22 87:21 96:10
182:17 183:1,1 193:7,9
199:13
**specifications** 83:1,3
**specificity** 92:1 93:2 97:11 177:9
**specifics** 94:23
**specify** 177:21
**speculate** 219:13
**speculating** 218:16
**speculative** 208:12
**spend** 43:13 162:14
**spent** 13:21 22:17 28:13 37:16
155:21
**Spirit** 172:3,12 173:3 195:21
196:2,5
**spite** 44:10
**split** 205:24
**splitting** 62:12 118:19
**spoke** 33:13 60:9
**spoken** 41:21,25 200:3,6 230:24
**stability** 184:9
**stage** 37:18 62:5 68:8 77:16
164:3 186:16
**stagger** 139:12
**staggered** 138:24
**stamped** 73:6
**stand** 36:24 68:4 133:17 189:16
**standard** 58:17,19 70:3,12,12,13
89:22 90:19 93:19,20,24
94:13 153:18 167:24
**standards** 82:21 83:13,20
165:19 188:5
**standing** 62:11 66:3,13,14 67:21
68:24 72:19 75:9,13 76:15
91:17 95:22,23 97:10,19
98:16,19 231:6
**standpoint** 34:23
**stands** 80:9 113:10
**star** 224:9
**Stars** 3:19
**start** 11:6 44:7 45:9 51:19 95:12
132:15 142:12,14 159:24
165:22 167:11 183:22
**started** 44:7 223:6
**starting** 144:15
**starts** 223:1
**state** 15:1 37:1 39:4,9,16 43:16
43:20,22 44:14 61:20 62:8
66:8,9 109:8,10,18 120:15
140:8 145:12,13 202:16
211:23 213:1 217:22 218:12
**statement** 95:13 155:24 156:2
158:7 159:24,25 177:18
190:20 212:8,10,11 213:13
215:13 233:3
**statements** 177:16 210:12
212:13,21 215:4
**states** 1:1,11 4:10 11:2 42:15
43:20 44:19,20,23 45:6,7,8,9
45:10,15 79:25 156:3 160:2,3
236:11
**statistic** 44:25 49:3 175:18
**statistical** 47:3 49:23
**statistics** 46:22 153:15,17
**status** 6:23 40:3
**statute** 20:10 110:9 123:4,5
124:18,20 127:21 157:11
175:3 196:24 197:2 210:4,6
215:19 216:17 217:20,25
219:23
**statutes** 62:9 145:13
**stay** 1:9 61:8 129:19 130:4 131:7

132:13,13 134:10 135:5,9,10
135:10,13 136:15 137:3 141:1
141:2,16,20,22,23 146:6
147:21,24 148:11,22 149:9,9
206:20
**stayed** 148:21 184:13
**staying** 134:7
**stays** 130:15,19 234:23
**stealing** 29:23
**Steeh** 156:4
**STENOGRAPHICALLY** 4:9
**step** 133:1
**steps** 49:14 198:14
**Steve** 120:17
**STEVEN** 3:22
**still** 10:6,24 16:16 22:7 39:18
72:12 112:16 124:4 125:15
131:1,3 135:16 145:22 151:19
178:19 186:2,21 208:9 223:14
231:20,21 235:5,8
**stipulate** 160:4
**stir** 230:22
**stock** 220:20,24
**stop** 145:22
**stores** 181:25
**story** 185:19 190:22
**straightforward** 40:8 150:5
161:6
**Street** 1:15,23 2:2,6,17 3:11,23
4:2,6
**stretches** 160:17
**stretching** 213:25
**strict** 229:13
**striking** 138:7
**stronger** 151:24
**structured** 24:3
**stuck** 205:7
**stuff** 42:8 74:16 152:14 232:16
**Stumphauzer** 123:17
**stupid** 68:18
**Subaru** 150:19 212:14
**subject** 67:19 139:11 143:13,15
148:17,17 159:8 203:24
209:25 234:21
**submission** 161:1
**submissions** 137:6 140:2,8
**submit** 13:18 34:17 50:6 59:24
112:20 114:16 177:24
**submitted** 36:2 113:15 233:5,6
**subsequent** 200:18 203:24
**subset** 106:2
**substance** 72:8 152:21
**substantial** 48:10 51:3,4,6
**substantially** 12:17 59:10 137:6
159:19
**substantive** 193:14
**success** 43:9,9 48:17
**successful** 43:16
**successive** 30:3 55:20 56:8 58:5
**successively** 56:14
**Sudbury** 2:22
**sudden** 109:6 181:24
**sue** 140:15
**sued** 181:6,7,22 182:2 203:18
**sues** 61:23
**suffered** 68:25 95:8 184:22
201:14 202:7 205:4,5
**sufficient** 91:18 92:19 97:19
118:9 166:13 176:7 218:11
**sufficiently** 109:4 152:23,24,25
**suggested** 18:13 63:20,22 190:2
**suggesting** 11:25 18:12 202:3
**suggestion** 13:23 63:20,21
**Suhana** 3:10 163:11
**suing** 182:3 218:20 219:16
**suit** 202:23
**Suite** 1:16 2:14 3:7,15,23 4:3,7
4:11 236:12
**Sullivan** 3:11,14 102:14 163:12

164:11
**sum** 21:24
**summarize** 16:13 32:25
**summarized** 33:1
**summary** 15:14 71:12 82:9
91:10 97:4 107:23 134:3,4
151:23,25 168:17 180:10
186:18,20 188:13 232:13
**sun** 209:10,11
**sundown** 230:13
**super** 107:4
**Superseding** 160:10
**supervise** 19:22
**supervision** 17:7
**supplement** 53:6 187:16
**supplemental** 31:24 108:18,22
**supplier** 169:15 221:10,11
**supplying** 170:5
**support** 51:4 74:15 75:4 133:6
**supposed** 28:21 34:22 146:15
**Supreme** 21:11 110:5 196:20
201:6 203:7 215:23 221:9
**sure** 7:6 23:21 31:13 47:1 50:9
54:13 59:8 68:3 72:6 74:21
93:6 110:12 131:13 136:23
137:18 147:15 166:9 185:12
198:6 206:2 209:13 227:25
231:12
**suspect** 64:21 231:17
**suspense** 101:19 102:3 103:10
106:1,14 111:22 114:13,23
118:23
**sustained** 98:4 111:14 221:10
**switch** 188:3 207:11,23,23,24
222:19 224:9,13 228:22
229:19
**switcheroo** 60:4
**Syngenta** 221:13
**system** 122:5 142:19
**systems** 160:23

---

**T**

**T** 236:6,6
**table** 5:1 7:6,8 66:4 135:22
143:2
**tackling** 48:1,1
**tagalong** 99:23 100:18 102:24
**tagged** 105:7 112:21
**tag-in** 105:11
**Takata** 1:5 6:3 38:1 44:21 46:17
67:7,11 69:6,25 70:6 73:18
74:16,22 75:10 76:23 77:8,9
78:11,15 79:2,8,10,11,15,25
81:13,21,24 82:11,15,20 83:1
83:1,3,5,18 84:1,4,22 85:2,4
86:1,7 87:5 88:5,14 90:4
92:20 149:21 150:1,15 151:3
152:19 155:24 156:7 157:5,21
158:10 159:12,17 160:3,4,7
160:20,22,23 161:15,17 163:3
165:2,8 166:3,18,22 167:1
168:1 169:14 173:23 174:15
178:8 180:19,25 182:10,14
183:2,24 184:1,12,16,17,17,22
185:1,3,6,8,19 186:2,9,13,16
186:23 187:4 188:15 190:13
190:14,21 191:7,24 194:5
195:2,9,20 196:9 197:22
199:13 202:3 205:13,16 227:1
227:10 230:19 231:3,5 234:21
**Takata's** 79:12,13 80:16 81:11
83:19 91:16 173:24 174:2,8
174:10,16,17 184:1,2,8
188:14 191:17,19 193:2
200:15,17
**Takata/Ford** 6:2
**take** 10:5,17,20 16:12 27:17
63:24 84:10 100:22 106:5
108:10 113:25 120:16 129:8

132:2,3 140:4 153:5 162:10
187:5 212:3 217:21 220:8
228:11 230:2
**taken** 47:21 65:17 70:1 94:8
111:25 113:3 128:24
**takes** 57:10 78:2 92:2 94:19
189:9 228:6
**taking** 33:10 102:13 142:12
**talk** 20:9,10 31:21 50:16 63:6
65:19,22,25 66:1,2 84:25 96:7
111:16 113:16 119:19 122:19
122:20,25 127:12,14 131:24
149:21 151:10 152:5,13 154:7
167:4 172:9 174:20 199:8,9
199:17 200:10
**talked** 34:5 43:2 48:19 162:13
163:21,22 164:4 166:21,24
168:3 173:17,24 174:19 177:3
177:4 186:8,9,9 195:2 223:6
**talking** 18:9 22:4 28:17 44:18
49:17 50:4 74:25 89:5,9
109:15,16,19 113:12 120:5
125:3 137:18 138:14 139:7
155:21 157:3,10,11,14 165:22
167:22 169:13 193:22 194:2
194:25 199:13 207:11 210:24
223:1,6 225:10 232:25 233:2
**talks** 159:2 187:24,24 218:19
**taller** 14:10
**tangible** 158:24
**target** 49:9
**targeted** 46:13 47:7
**taught** 175:6
**Taurus** 57:24
**tax** 194:18
**team** 11:5
**tearing** 82:16,17 83:16,16
**technology** 173:1 184:13 185:18
185:25
**Telecommunications** 218:19
**telephone** 39:20
**television** 46:6
**tell** 8:1,9 14:20 19:11 20:20 23:3
26:8 27:17 42:2,6 43:21 44:9
71:19 72:24 89:4 117:15,25
119:22 120:1 122:8 129:24
130:1 139:20,24 140:6 147:10
161:24 165:5 168:4 169:11
172:19 178:17 180:11 182:17
189:10 193:16 211:7 213:5
214:6 223:23,24 228:9 235:22
**telling** 81:24 87:6 101:6 175:18
188:16 190:22
**temples** 65:4
**tend** 110:15
**tendency** 184:11 233:18
**tends** 215:7
**tens** 86:8
**term** 18:10,12
**terms** 17:24 18:22,23 33:13,17
43:9,11 55:22 57:8 84:24
85:13 87:23 93:14 97:15
108:17 167:24 168:3 172:17
174:22 175:19 205:17 206:14
**territorial** 124:17
**territory** 226:20
**test** 23:25 84:2 124:18 161:2
167:4 169:14
**testable** 215:16
**tested** 184:1
**testify** 24:14,15
**testimony** 32:9,25 33:5 35:1
**testing** 38:15 41:15 48:22 81:22
82:19 83:25 151:6 162:22
184:8,18
**Texas** 3:24 4:3 45:15
**thank** 6:5 8:2 14:5 24:10,19 31:6
31:7 36:20 42:21 45:17 50:9
50:12,13,14 60:2,4 126:22

128:21,22 130:8 149:18,19
163:7,8 178:9 199:16 204:7,8
222:8,9 227:22 235:3,24,25
236:1,2
**their** 10:6 11:22 13:19 14:19
15:19 20:20,25 26:1,7 27:5,18
29:2,4,17 30:4,5,11,25 32:25
33:5 34:25 39:8 44:4 47:16
50:6 51:2 54:15 58:23 66:8
69:23,24,24 80:25 81:3 84:19
91:12,13 93:6,8 96:10 97:22
101:10,10 109:17 111:20
113:14 125:4 127:3 132:15
136:8 138:6 140:8 141:10,22
169:17,22 175:20 177:5,6,9
180:24 183:11 186:23 187:7
188:6 190:7 191:22 193:7
196:9 197:12 199:6 200:20
201:12,15 202:16,17 203:12
203:22,24 205:3,7 213:20
214:12 215:1 217:22,23
218:14 219:7,17,25 220:11,25
221:1 223:7
**themselves** 25:24 49:15 73:11
88:24 96:23 159:20 190:4
194:23 202:16 219:10
**theoretically** 97:23
**theories** 138:7 224:5,25
**theory** 96:11 208:18 224:12,12
225:4,5,6
**They'd** 181:5
**thieves** 84:24 190:3
**thing** 15:19 16:9 20:8,13,18 21:4
23:2 35:7 42:3,7,25 49:3,18
53:18 58:18 65:6,10 67:25
72:25 76:4 81:13 87:10,15
94:2 96:15 106:25 116:7
117:8 134:13 137:19 146:15
157:19 160:11 162:24,25
186:7 192:3 198:25,25 201:4
205:20 216:19 233:10 235:18
**things** 15:9,15 19:7 23:3 28:6,10
28:11 35:12 41:23 46:11
48:21 50:7 51:1,23 59:9 60:17
61:16 62:13 72:24 77:15
81:22 85:15 103:12 134:19
147:6 160:22 161:7,8,25
178:11 193:22 201:1 206:18
207:8 227:25 228:5,17 229:25
230:2 231:25 232:4,14 233:19
233:23
**think** 6:6 9:2,7 11:8 12:2,9,19
13:8 15:14 16:16 18:21 19:4
20:14 21:6,12 23:3,15 25:21
27:2 29:16 33:17 34:12 37:15
41:13 42:16 45:6 51:23 52:7
52:13,16,19 54:3 58:10,17
60:14 63:7 69:6 71:1,3,17
72:18 73:24 77:8,24 78:10
81:4 86:17 88:21 90:18 92:7
93:11,13 94:6,13,22,24 95:25
97:13 105:16 108:4,15,16,24
109:7,17,20 110:4,7 116:19
117:14 118:11,14,16 119:8
120:22 123:25 126:1,4 127:10
127:16,18 129:15 130:9,19,25
131:4,9,16 135:23 136:2,20
138:5 143:7 144:12,15,24
148:15,24 149:7,24 150:4
152:3,4,13,22 153:4,4,10,14
153:18,18 154:21 155:11,22
156:14,16 159:1 161:5 163:4
163:13,15,19,24 164:1,3
165:1,2,8,11 166:14 169:21
171:6 174:22 178:20 179:4,6
179:16 180:14 181:14,20
182:1 187:17,17 188:8 190:11
190:12 191:9 192:22 198:14
198:16,20 200:4 206:22 207:8

208:23 213:16,24,25 214:4,11
215:11 217:4,16 220:1 222:24
222:25 223:2 225:24 227:23
231:19,24 232:7 233:12
234:15,19
**thinking** 94:17 119:10
**thinks** 95:2 226:3
**third** 7:8 27:24 38:12 154:10,21
155:1 159:7 171:21 172:2
225:4,5,6
**Thomas** 196:25
**thoroughly** 130:5
**though** 20:3 22:5 28:24 42:10,15
43:1 46:23 55:21 59:6 61:20
65:11 74:14 117:15 135:12
137:14 148:14 170:13,15,21
179:6,18 180:4,9 181:2
208:14 216:15 229:25 230:12
**thought** 15:6 32:18 37:17 49:25
52:4 54:18 61:6,14,15 64:25
102:7 131:22,25 196:15
206:13 209:5
**thoughts** 50:6
**thousand** 139:13,17 175:15
**thousands** 139:4,9
**thread** 193:17
**three** 7:2 17:13 40:14 42:14
62:20,20 64:7,8 75:9 80:4
99:18 131:8,8 139:2 141:23
142:2 146:14 150:1 151:15
154:18 168:24 169:1 183:22
210:19 224:5,7,25
**three-quarters** 143:22
**threw** 228:17
**through** 13:12 38:15,23 40:24
41:1 43:8 44:14 49:19 60:23
67:10 68:11 70:4,5 77:19,21
124:7,7 131:19 135:21 153:5
153:7 154:9 156:6 157:17
160:20,25 162:14 164:7
165:23 179:25 194:17 196:12
198:1 210:9 211:8,21 212:2
214:22 227:14,15 229:20
**throw** 46:18 177:6
**thrown** 107:23
**tie** 46:20
**time** 12:15 32:17 36:17 37:17
40:13 43:13 54:14,16 55:6,8
55:10,14 58:10 62:23 63:4
67:1 70:9 72:9 75:6 93:25
94:15 98:19 99:1 102:13
104:16 116:12 118:10 119:9
119:11 121:13 124:11 128:3
128:12 131:13 137:9 139:21
139:22 142:1,6 143:2,7
150:21,24 155:21 156:13
157:4 159:3,23 160:16 162:14
166:13 177:17,21 188:9 198:5
198:18 219:11 221:17
**timely** 157:25
**times** 189:24 226:11
**timing** 117:16
**tired** 119:16
**today** 49:14 50:5 51:25 52:3
93:17 102:13 111:17 114:15
147:8 148:22 149:25 152:8
180:16,16 234:15
**together** 46:11,20,21 48:22
79:18 104:17 116:11 168:1
173:1 175:19 176:12,16 177:6
178:25 182:9 183:3,10 185:19
**told** 14:22 19:17 47:5 55:24 56:9
79:7 81:22 89:14 98:24 99:2
103:25 184:2 186:23 204:19
205:24
**toner** 216:6,8
**top** 13:6 46:2 66:21 107:5
**topics** 64:6 152:13 175:2
**total** 11:11 28:18 30:4,5 47:19

57:10 153:1
**totality** 41:9
**totally** 13:2,4 70:11 143:12
148:13,14 176:20 184:4 205:4
**touch** 39:22 41:17 146:11
**touched** 163:19
**tourists** 194:18
**towards** 46:23,24 59:5 215:7
**Toyota** 56:2 150:18
**traceability** 98:15
**traceable** 61:3 95:8 96:14
**tracing** 98:14
**track** 72:7 205:24 225:23,23
**tracks** 13:16 142:20 144:2 206:1
**trade** 145:13 232:1,3,10 233:20
**trading** 220:24
**tradition** 122:9
**train** 142:24 149:3
**transcript** 100:6 161:22
**transcription** 236:8
**transcripts** 68:16 100:4
**transfer** 42:22 99:12 104:7
112:22 121:11 122:2,10,12
**transferee** 119:6
**transferor** 100:23 119:4,7
122:15
**transferred** 99:6 101:13,18
102:23 103:1,10,11 105:8,22
106:7 110:11,23,25 111:22
114:7,22 115:14 121:6,12
**translations** 158:3
**transmitted** 167:1
**transparent** 71:3
**Transportation** 61:9 129:20
**treats** 196:19 221:24
**treble** 198:12
**trial** 9:12,14 91:8 101:1 104:20
106:15 117:6 118:10 160:7
180:10 186:19 187:19 188:13
189:19 192:23 193:1 209:14
231:15
**trials** 7:2
**trick** 72:16 188:5
**tried** 39:16 101:2 113:3 118:18
124:8,22 127:6,8 155:22
188:14,17 220:6
**trouble** 94:23 118:11 140:17
**true** 10:14 12:2 13:21 25:18 30:9
39:18 66:24 68:20 81:23
84:11 94:22 103:14 110:19
150:5 160:5 161:2 189:24
202:9 229:3
**truly** 193:1
**Trust** 66:19
**truth** 200:21 220:21,22 221:1
**truthful** 158:21 159:13
**truthfully** 158:13 159:19
**try** 39:17,21 59:21 108:4,19,19
108:22 109:20 113:10 118:12
119:24 136:6,23 164:17 168:1
175:20 176:24 177:5 190:8
206:18 219:6 235:23
**trying** 39:22 40:21 68:9 100:22
102:19 120:5 142:9 167:13
216:9 222:24 223:3
**turn** 190:16 203:25
**turned** 184:4
**turning** 20:5 71:11 219:23
**turns** 149:16
**twice** 144:8,14 148:10
**two** 9:5 16:6 31:15,23 32:9
33:19 34:12,16 40:13 51:20
51:23 55:1 56:7,23 57:15,23
57:23 62:18 63:8,11 64:19
65:1 72:24 74:21 80:5 99:3,18
107:1,16 118:2,19,23,25
120:8 124:24 126:5 132:17,21
132:21,22,22,3 133:9 137:5
137:9 139:22 140:10 142:20

143:3,6 144:21 147:17 148:6
148:21 150:4 151:5,6,7 161:7
161:7 178:11 184:24 185:12
195:19,19 196:8 197:9 198:4
201:1 202:13 205:25 209:3
220:18 222:12,17 224:6,8
226:19 228:11,16,20 229:3,3
232:21
**Twombly** 153:11,15
**two-month** 227:13
**two-track** 142:18
**tying** 48:22
**type** 130:17 170:17 172:16
176:23 178:7 203:4,6 215:17
221:7 233:20
**types** 166:5,12 203:16
**typical** 51:8 113:12 169:18
**typically** 103:15

**U**

**U** 215:22
**ultimate** 48:23 218:14
**ultimately** 133:6 156:3 211:18
219:11,14
**unaffected** 145:24
**unclear** 79:4 137:1
**uncomfortable** 181:12
**under** 8:6 16:24 17:14,24 18:23
19:19 28:10 32:17 38:7 43:22
47:4 51:9,11 69:4 73:12 85:7
89:21 99:15 108:17 109:19
121:17 123:5,6,23 124:4,22
124:23 127:7,20 143:16 146:7
146:15 147:20 153:11,11
156:10 186:16 193:14 195:10
206:9 210:16 211:23 215:18
218:2,12 221:4,7 224:14
229:11 232:24,25 233:23
234:9
**undergraduate** 175:7
**underlying** 122:20 198:17
**underneath** 63:12
**understand** 31:4 68:2 69:8 85:1
88:13 89:8 102:6 107:9
112:13 113:18 115:1 117:20
140:11 149:6,17 157:17
171:20 196:20 232:18,23
233:24
**understanding** 38:25 94:11
231:1
**understands** 82:25
**understood** 104:18
**undertaken** 173:12
**unduly** 146:17
**unfair** 210:5 221:24 222:1
**unfortunately** 16:9 32:4 66:16
73:17
**uniform** 138:8
**unilateral** 155:24 156:2
**unilaterally** 134:24
**unique** 38:19 127:1 141:3
219:25
**United** 1:1,11 4:10 11:2 42:15
79:25 156:3 160:2,3 236:11
**universe** 233:7
**unjust** 157:12
**unknown** 84:12,13
**unlawful** 169:10 188:12 193:21
199:3 229:24
**unless** 63:15,17,19 104:1 129:16
231:14 232:10
**unlike** 25:15,23 140:10 225:19
**Unocal** 124:15,22
**unprecedented** 132:24 141:4,5
**unravel** 100:12 118:2
**unreasonable** 54:4
**unrelated** 13:2,4
**unsafe** 214:10 216:21,24,25
**unstable** 184:3

**U**

until 6:15 42:11 56:21 68:6 128:4 132:8 160:14,19 201:18 227:25 230:13 235:1
unusual 25:21 26:12 180:6 216:19
update 39:8
updated 39:19
updates 140:1
upheld 113:18 114:1 157:5,7 221:17
upset 58:23
urge 29:25
urgency 26:1 40:14
USA 3:5 66:12
use 29:1 63:1 88:13 124:10 136:20 138:5 145:20 162:4 170:5 196:15,16 198:10 232:17 234:9
used 41:10 68:13,15 83:5 93:16 93:18 196:2 198:7,8 204:3 209:20 219:12 227:12
useful 212:7
usefulness 97:21
useless 20:14,15 21:5,7,20,21 23:3
using 39:25 172:17
usually 64:16 95:12 110:14 156:23 216:20
utilize 111:21
utmost 48:2
U.S 83:20 157:22 189:22 195:13 196:20 198:7 221:22 236:11
U.S.C 193:14

**V**

v 177:14
vacancies 42:13
valuation 10:4
value 8:10 9:18,20,24 12:12,13 21:17,23 22:22 23:25 54:1 57:10 97:21 202:21 203:6 220:24 224:6,15 226:12
valued 27:21 57:12,13,14,18
Vance 4:1 121:20 209:18
variables 82:23
variety 39:7,17
various 58:3 68:16 116:23 198:2
vast 176:16 177:20
vehemently 112:13
vehicle 20:11 21:8,21 22:9 29:4 39:8 40:23 133:2 184:22 206:6 212:5 214:7 226:12
vehicles 21:18,23 22:20 33:20 37:24 38:11 39:5,10,11,12,14 43:17 44:16 45:25 47:7 48:24 49:1 68:5,23 82:10,14 83:22 137:23 138:14,17,19 139:5,17 144:7 145:16,24,24,2,5 148:16 184:25 185:22 197:11,20,20 201:21 202:15,18,19 203:10 203:11,15,19,22 204:1 206:3 206:3 212:6,9 214:12 217:5 217:24 218:15 219:11,13,15 220:9,10 225:10
vein 212:15
vendor 48:5
vendors 48:6 49:7 173:1 196:1,3
verbiage 73:10
verdict 33:10
verifiable 226:21
verifiably 227:4
verify 29:20
versus 57:16,24,25 79:25 124:13 124:21 139:17 172:3,12 189:22 195:13,21 196:5 197:1
very 6:5 19:7 28:2,4 34:16 41:13 42:21 43:8,13,16 45:17 46:11 48:12 50:1,12,13 57:18 60:2

61:17 66:25 67:1 71:1,11 75:19 95:18 96:2,16 98:11 103:12 131:21,23,25 145:9 149:18 150:5,5 153:22 156:6 159:22 162:6 163:13 165:16 165:17,24 167:24 168:8 169:11,18 175:13,18 176:25 177:21 180:11 181:12 183:1 193:7,9 204:12,13 209:14 213:16,18 222:12,12,17 226:9 228:20 233:6 235:11
viable 166:7
victim 80:15,17 81:11 84:15 86:7,9 88:25 153:2 156:13 160:23 173:4 187:12 189:3 191:17,19,24 192:16 193:1,2
victims 67:8 77:18 78:20,22,25 79:2,16,22 80:19 84:20 86:19 96:22 157:7 180:2,24 181:1,4 181:5,6,21,22 187:1 189:11 192:1,2,7 201:4
victory 133:14
view 93:25,25 94:19 95:15 108:25 109:1 116:13,16 165:20 178:3 222:18
violate 78:8
violated 76:20 119:9 210:8
violation 17:18 77:13 159:9 178:4 217:1 220:8
violations 159:10
Virginia 2:6 111:24
visit 129:4
vogue 187:4
voice 120:18
Volkswagen 3:9 61:2,5 65:20 68:2,3 75:5,23 89:12 95:14,25 96:4,7,9 116:21 150:12 151:10 155:8 163:12 175:24 176:11,11,13,14,14,1,8 177:23 197:7,19,23 212:14
Volkswagen/Takata 197:8,13 197:14,17
voluntarily 108:9,11
VW  99:4 111:25 180:1 183:1,18 188:3,6,12 195:7,18 199:12 223:6
VW's 187:24

**W**

W 2:4
wait 6:15 56:20 68:6 121:19 137:10 139:14 149:15 182:2 185:14 227:25
waited 130:6 139:20 228:6
waiting 136:4
waive 73:21 76:10 78:18 82:23 127:4
waived 78:15,17 83:2 127:5
Waldo 59:7
walk 42:3
want 6:4,12 9:10,13,20 10:24 12:18 16:11,12,1 3 17:8,12 20:1 22:24 23:22,23 24:14 25:11 26:25 30:20 32:4,17 34:14 35:13,17,17,18,2 5 36:6 36:11,15,21 42:12 45:1 47:1 51:13,14 52:16,19,25 53:2 53:13 56:18 60:7,15,18 61:16 62:13,15,17,19 63:1,5,6,17 65:3,5,2 5 66:18 67:2 69:2,22 70:25 71:11,11,5 72:6 73:15,23 73:25 74:5,11 75:11,15,17 76:18,18 78:8 87:13 88:17 89:18 91:20,22 92:25 93:1,10 94:21 96:7 98:19,20 99:14 100:9,16 102:23 103:1,18 104:1 105:15 106:19 112:4 110:6 113:6 113:13,13 114:6 114:12 115:4,6 116:8 119:10

120:2,15 123:11 126:11 127:17,18 128:5,19 129:10,18 131:13,22 133:14 136:6,7 141:1 144:13,13 145:17 149:5 151:22 153:5,6 154:5,24,25 155:1 157:16 161:19 162:1,8 162:14 164:20 165:22 166:1,4 166:9 167:9,10 171:7 173:16 174:5,7,20 175:11 176:7 178:16 179:11,19,21,22 183:14,18 186:6,13 191:6 193:13 194:10 196:11,16 199:17,19,25 200:10 210:2 218:8 223:10 228:1 232:17 233:13,14 234:9,17
wanted 23:21 31:17 32:6 50:15 60:16,18,20,22,5 61:1,4,10 89:9 99:18 101:16 105:16 115:1 126:23 129:5 161:15 178:13,18 187:8 190:15 198:8 199:25 200:20 235:10
wants 12:2,7 14:6 59:23 60:6 64:17,22 65:19,22 66:1 75:23 89:17 90:22 100:4 111:17 119:19 120:1 129:16 141:2,16 149:20 187:16 200:7 204:9 235:20
war 11:2 222:11
warm 16:12 52:5
warranty 20:11,15,24 21:1 22:11,20 23:24 57:11 58:1
Washington 3:16
wasn't 33:7 45:22 50:22 66:24 67:21 79:8 86:23 175:5 192:17 195:22 196:15 208:5 208:10,10 216:10 220:22,23
waste 25:20 136:8
water 2:9 12:7 45:1
Watergate 74:12
wave 73:23
way 2:9 6:13,23 13:9 14:13 15:17 20:20 21:11,22 23:25 52:9 62:12 69:3 74:7 77:19 86:23 87:4,24 88:22 89:15 91:20 103:15 105:14,18 106:7 106:9 112:23 115:23 116:13 118:17,17 136:10,17 141:17 141:23 143:23 144:5 146:2 148:24 149:8 163:22 174:24 175:23 176:8 177:4 179:5 187:21 190:17,18,19 210:8 211:6 214:11 225:1 229:14,25 230:4,5,6,7 231:13 232:3,5 233:11
ways 38:10 104:15 144:24 145:6 210:7
Wealth 40:3
wealthy 9:12
weapons 97:17
weather 52:5 120:18
website 44:5 196:1,4 212:8,10
wedding 132:1,2,9 142:22 143:1 143:3
weddings 132:11
week 32:22 49:6,6 59:21
weeks 65:8
weight 180:12 226:5,8
Weinshall 1:14 6:19 200:1
weird 135:9
Welcome 7:14
well 9:7,23 10:14,17 11:24 12:11 14:12 20:22 22:5 23:15 26:5 26:15,24 27:7,14,17,20,25 28:5 29:8,10 30:18,24 31:23 33:24 34:3,9,19 36:7 38:1,11 46:6 51:21 58:12 67:13 69:2,4 69:21 70:21 71:22,25 72:2 73:23 74:6 80:20 81:18 87:22 88:4,7,11 91:7 92:25 94:21 97:6 100:11,22 101:4,16,23

103:11 104:3 106:24 108:8,15 110:10 114:14 115:21 117:7 117:15,22 119:8 123:13 125:22 126:4 127:16 130:11 131:4 134:6,17,21 138:3 140:14 143:11 146:9,12,17 152:8,22 153:23 154:11,18 155:13,24 165:19 166:11 167:9 173:22 178:21 179:6 181:10 183:17 187:2,25 188:11 191:21 192:10 193:4 194:12 196:17 205:17 207:16 211:4 212:1 221:5 223:8,14 223:17,20 224:20 226:23 227:17 231:11,14 232:15,21
went 13:12 31:1 33:16 35:6 43:10 82:22 125:6,7 175:7 182:12 183:12 194:17 198:1
were 6:1 9:2,24 10:23 11:3 12:25 17:15 18:11 24:2 25:16 28:10 32:12,13 34:10 37:10 38:13 44:22 49:14 50:17,18 51:6,8 51:10 52:2,5 55:24 56:3 65:18 67:19 68:12,13,20,22 70:9,9 72:18 73:15 74:17,17 75:6,6 79:2,16,22 80:19 81:25 83:19 84:19 85:3 86:1 88:14 89:14 90:7,25 96:17 98:24 99:6,8 100:3 112:12,15,20 114:4 118:22 119:25 124:12 125:6 127:2,4,24 128:2 129:2 134:23 135:13 138:4 139:12 140:10 141:11 143:8 144:15 144:20 150:15 156:1 157:3,8 159:15 160:17 161:4 164:4,5 164:14 166:5,13 167:8 172:11 172:13 173:5 179:22 180:2,23 181:20 182:2,4,14 184:15 186:1 192:1 193:21 194:18,19 194:22,22 195:19,19 196:1,4 199:13 201:17,19,19,24 202:4 204:19 205:22 206:1 208:2,3 208:5,12 209:5 212:10 219:15 219:15 220:23,24 221:2 222:24 225:24 229:3,5 230:20 232:14
weren't 88:11,24 90:8 91:13,17 124:2 173:8 193:22 201:18
West 1:15
Westfall 2:9 7:5,5,8,12,12 8:2,3 8:21,24 9:2,5,17,21,23 10:14 10:17 11:7,10,14,16,12 12:11 12:19 13:3,7,10,15 14:2,5 15:16 27:22
Westlaw 224:9
we'll 36:20,23 63:8 93:22 94:13 107:5 120:7,14 142:14 148:6 150:15 223:16 226:2 228:8 232:18 235:1
we're 6:17 16:6 19:11 22:20,23 28:17 40:1 42:4 43:7 45:12,18 45:20 46:2,3,7,21 47:18,20 49:7,11 53:1 55:8,9,14,19 57:2,7,8 58:6,8,9 60:11 63:13 63:14 64:24 65:16 66:12 68:8 68:9,10 69:7 70:15 71:11 74:24 87:4 89:5 91:5 96:21 100:13 102:12,18 103:18 106:11 107:1,19 109:15,16 118:23 120:25 121:2,3,13,16 123:16 131:16 137:10,18 139:7 140:17 141:17 142:11 142:14 146:19,20,21 148:23 149:14 151:21,22 152:8,19 157:10,10,11,14,18 164:7 167:22 174:11 176:23 181:6 186:4 187:21 220:6,16 225:11 230:12 232:22,24 233:2 234:15
we've 39:24 47:4,5,6 58:12

60:13 61:11 71:20 72:7 75:8
82:2 85:23 88:8,21 90:18,19
90:20 92:19 93:22 94:13
95:18 96:2,24 98:22 107:16
126:21 127:21 180:11 191:8
192:5 206:8,13,17,18 220:1
222:4 227:19
whatsoever 223:2
whichever 232:17
while 48:14 52:10 98:18 133:21
193:11 213:12 217:18 220:23
White 3:6
whited 232:16
whole 16:9 49:24 53:19 98:14
107:25 118:5 119:3 122:5
144:23 145:5 148:20 173:15
197:4 204:11
wholly 173:12
Widow 2:21
Wilkie 4:11 236:11
William 50:23
willing 41:24 49:13 57:7 63:16
63:24 76:10 91:6 104:4 135:9
174:11
willingness 59:18
win 133:11,12,13 148:8
window 109:13 159:20
winds 206:5
wire 156:8 207:18
wires 198:2
wire/mail 86:22
wisdom 50:6
wish 7:1 60:9 64:6 76:2 200:3
wished 66:15
wishes 50:15 62:17 65:9 163:9
209:9 222:10
withdraw 53:15
withdraws 52:11
witness 31:24 36:24
witnesses 31:15,24 34:21 209:12
Wittie 4:1 209:18,18,2,3 210:3
210:25 211:2,8,11,13,16,18
212:1,4,15,19 215:10,12,16,22
216:1,4,6,12,16,2 2 218:10
219:22,25
woman 227:5
won 54:24
wonder 153:15 198:11
woods 187:23
word 42:17 70:22 94:1 146:21
217:21 220:17 232:17
words 38:7 42:9 124:10 131:22
137:14 138:4 180:1 193:21
201:17,23 208:14 222:1
226:11 233:11,12,13
work 8:6 41:15 49:19 54:16
106:18 107:9,10,10 142:7
146:24 147:12 208:2
worked 47:24 173:1
workers 170:2
working 6:25,25 38:14,15 49:4
65:8 119:15 132:20 133:9
workings 146:25
works 12:25 41:15 103:16
139:25 144:18
world 35:8,9,10 70:15 100:7
232:16
worry 69:10 148:5 235:16
worse 22:15 59:8 62:5 124:14
139:14 180:22
worst 53:23 54:2,4,6
worth 11:18 21:23 56:5 69:15
96:13 163:24 220:20
worthless 22:10 23:24
wouldn't 24:6 34:9 44:9 73:16
87:18 92:4 95:3 101:21 110:6
114:23 122:2 162:16 168:7
174:14 182:16 189:12
Wow 86:11,16

wreath 14:13
Wright 2:17 7:23 31:10
write 22:13 234:17 235:8
writing 32:10,18 33:1 34:18
36:3,4 42:7 53:9,10 59:16
60:22 61:19 126:20,21 195:24
196:25
writings 51:7
written 13:18 15:23 16:1 22:14
61:25 63:10 177:19 194:16
wrong 28:8 48:16 54:19 75:10
88:19 89:14 90:17,18 100:2,3
100:6,8 106:21 107:6 117:14
132:5,5 137:25 205:10 223:21
227:11
wrongdoer 180:21,25,25
wrongful 172:19 183:7 198:17
wrongly 104:19
wrote 14:3 16:1 36:10 50:16
146:9 173:15 178:17

---

**X**

X 21:2

---

**Y**

yards 167:1
yea 12:4,9 16:23
yeah 16:16 23:19 28:19 29:10
55:11 88:24 102:11 113:24,25
114:10 147:12 153:21 162:17
179:1 181:17 206:16 207:13
207:15 211:1 213:7 217:9
year 36:8 57:25 60:5 80:21
81:15 134:25 207:22
years 21:2 27:10 39:12 56:19
59:9 69:15 70:1 131:8,8
132:17,21,21,22,22,2 3 133:9
137:5,9 139:22 140:10 144:21
146:14 147:17 148:6 150:1
151:15 173:18 174:3,3 183:4
183:4,4,8,10,10,1 0 186:3,3,3
188:18 191:11 192:3 196:14
196:22,22,22 199:14 200:16
204:14,14 207:22,22 209:4
212:9 226:3
yesterday 33:6,10
yield 63:16
York 1:24 3:12,12,15 182:1
222:21,23
Youndt 50:23
young 40:13

---

**Z**

zone 216:2 218:1,18 219:18
220:15 222:5

---

**S**

$100 29:15
$140 21:13
$150 11:18
$18 30:7
$200 10:4,5
$250 50:21
$299 24:7
$300 8:13 9:23
$5,000 58:14,24
$500 50:22
$70 55:5
$74 15:13
$75 11:18
$8 188:8
$800 79:19
$850 157:8 161:17
$900 188:3

---

**0**

01776 2:22
03755 2:2

---

**1**

1 40:24 88:23 154:3 217:23
227:4
1st 2:17 52:6,23 80:1
1,135 175:14
1,188,000 47:13
1.4 70:2
1:00 119:11
1:10 128:13,24
10 30:12,14 69:8 70:2 82:8,10,14
184:8
10,000 58:21
10:03 6:1
10004 3:12
1018 4:6
102 183:21
103 183:21
10504 1:24
1060 169:4
1088 24:25
11 1:7 82:19
11:30 65:7,17
11:53 65:18
116 177:15
12 178:2 201:12
12(b)(1) 75:9
12(b)(6) 75:16 111:16
121 30:7
125 3:11
1252 169:24
1283 178:23
1293 178:24 179:7
13 74:18 80:2 160:1
13-3 1:5 4:11 236:12
13.5 47:8
13.9 57:10
1310 131:18
1335 124:9
1340 172:4
136 221:22
1364 177:15
139 30:5
14 184:17
14th 50:11
14V372 227:7
14-24009 25:2
14-24009-CV-MORENO 1:3
140 21:15 22:24
1407 100:24
15 72:7 74:18 83:24 184:21
230:11
15th 144:21
15-2599 1:2
15-2599-MD-MORENO 1:3
16-CR-2081004 80:1
17th 3:19
1700 3:15
1717 4:2
175 44:23
18 158:8 193:14 224:9
183 71:17 82:6 83:8,11
185 71:17 82:6 83:23
19 2:21 39:12 160:14
19.5 47:8
1962(c) 193:15
1962(d) 178:2 193:15
1999 3:19 184:6

---

**2**

2 88:23 154:3,14,22,24,2 5 156:7
2.5 31:1
2:15 119:21
2:45 128:12,20
20 8:14 55:4 93:16 131:18
20th 141:23
20,000 135:17
200 3:6
2000 160:14,19 184:9

---

**I**

I 40:24 88:23 154:3 217:23
227:4

---

20006 3:16
2003 83:8,8,10,1 1 184:23
2005 83:17 169:23 212:5
2007 184:9
2008 50:21
201 186:17
2011 184:21
2013 184:24 227:1
2014 83:9 184:24 215:23 225:18
227:1
2015 131:7 160:15,19 161:22
212:9
2016 99:2 131:15 132:7,19
144:21,21 157:21 213:19
224:9 225:16
2017 99:3 160:2 169:4 187:3,17
187:18
2018 1:7 80:1 132:8 140:9
150:21 187:3
202 4:7
202-293-6330 3:17
202-956-6960 3:16
205 124:8
21 211:4,5,6,25
210-224-5575 3:24
210-270-7205 3:25
2100 3:23
212 176:21
212-291-9608 3:13
212-558-4647 3:12
23 16:24 17:21 19:3,19 51:9 52:6
59:2
23219 2:6
236 5:4
24 47:9 48:25 49:2
25 1:15 10:6,8 21:15 55:15,16,18
55:19 56:5 57:8,9 58:7 59:12
59:14,14
255 1:19
26 2:2
272 197:7
28 157:21
281 176:10,18
2920 2:14
29896 2:9

---

**3**

3 40:24 88:23
3,000 225:24
3:08 129:2
30 55:1,4,8,9,1 5 58:9 131:17
188:18
300 3:2,23 22:25
3032 138:9
30328 2:14
305-358-2382 1:17
305-358-2800 1:17
305-358-5744 3:8
305-476-7400 1:21
305-476-7444 1:21
305-995-5259 3:8
305.523.5118 4:12 236:12
306 185:18
3091 16:14
30982 154:16,20
31 225:9
310-595-9488 3:20
310-595-9501 3:21
3108 14:4
312-862-2200 3:4
312-862-2954 3:3
314 71:17 82:6
32 59:9 148:15 188:20 225:7,10
226:9,11
32nd 225:12
32601 2:18
33128 4:12 236:12
33130 1:16
33131 3:7

**33134** 1:20
**333** 1:23
**337-269-0052** 4:8
**337-269-0061** 4:8
**35** 15:14 17:2
**352-374-7133** 2:19
**352-376-7650** 2:18
**365,000** 47:12
**37** 11:19,21
**3920353** 224:9

---
**4**
---

**4** 138:9
**4(k)(2)** 123:23
**40** 11:4 23:13
**400** 4:11 236:12
**400,000** 135:17
**411** 169:24
**44** 49:17
**45** 33:6,16 34:5
**469-327-0860** 4:4
**469-357-2537** 4:4
**4900** 3:7

---
**5**
---

**5** 80:2
**5,000** 58:17,19
**5:30** 227:24
**5:45** 236:4
**50** 17:19 161:23
**500** 41:7,10
**5400** 4:3

---
**6**
---

**6** 2:13 47:9
**60** 11:22
**603-643-9010** 2:3
**603-643-9090** 2:3
**605** 178:23
**60654** 3:3
**626** 2:17
**63** 47:6
**643,000** 47:12
**650-281-3003** 2:10

---
**7**
---

**7** 30:13 41:1 156:11 157:20
**70** 229:20
**700** 3:15
**700,000** 139:8,12 143:8,12
   145:24
**70503** 4:7
**706-042-6750** 2:15
**706-508-4000** 2:15
**71** 229:20
**74** 17:2
**75201** 4:3
**78205** 3:24

---
**8**
---

**800** 1:16 2:6 43:3,5
**804-775-1000** 2:7
**804-775-1061** 2:7
**826** 161:22
**836** 172:4
**847** 214:21
**851** 169:4

---
**9**
---

**9** 41:1 85:7 183:21
**9(b)** 69:5 70:12 153:11 177:11
**90067** 3:20
**914-749-8200** 1:24
**914-749-8300** 1:25
**92584** 2:10
**978-261-5725** 2:22
**978-405-5161** 2:23