**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>          Old Carco LLC, *et al.,*<br><br>               Debtors. | **FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 09-50002 (MG)<br><br>Jointly Administered |

## MEMORANDUM OPINION AND ORDER PERMISSIVELY ABSTAINING FROM DECIDING THE MOTION TO ENFORCE

*A P P E A R A N C E S :*

GIBBONS P.C.
*Attorneys for FCA US LLC*
One Pennsylvania Plaza, 37th Floor
New York, New York 10119
By:    Robert K. Malone, Esq.
         Brett S. Theisen, Esq. (NJ Ofc)

CLARK HILL PLC
*Attorneys for FCA in MDL Action*
500 Woodward Avenue, #3500
Detroit, Michigan 48226
By:    John Berg, Esq.

PODHURST ORSECK, P.A.
*Attorneys for MDL Plaintiffs*
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
By:    Peter Prieto, Esq.
         Matthew P. Weinshall, Esq.

       -and-

STUTZMAN BROMBERG ESSERMAN PLIFKA
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
By:    Peter D'Apice, Esq.
         Sander L. Esserman, Esq.
         Kaitlyn Fletcher, Esq.

**MARTIN GLENN**
**United States Bankruptcy Judge**

This opinion addresses important issues about the gatekeeping role of a bankruptcy court that is asked to interpret and enforce a section 363 sale order that provided for a free and clear sale of a debtor's assets. FCA US LLC's ("FCA"), the section 363 purchaser of most of Old Chrysler's assets, is a defendant in a multi-district litigation involving Takata airbags that is pending in a federal district court in Florida. FCA raised the free and clear sale issue with the Florida district court in 2015, and again in a motion to dismiss filed in the Florida district court in 2018. As explained below, this Court and the Florida district court have concurrent jurisdiction to interpret the sale order. The Florida district court granted FCA's motion to dismiss in part and denied it in part, but the district court decision is not a final judgment. Dissatisfied with the result in Florida, FCA now asks this Court to enforce the sale order and bar the claims against FCA in the multi-district case. The plaintiffs make clear that their claims against FCA are based solely on FCA's post-sale conduct and not on any alleged conduct of pre-bankruptcy Chrysler. The Court concludes below that FCA should only get one bite at the apple; the Court therefore applies permissive abstention under 28 U.S.C. § 1334(c)(1), declines to interpret the sale order and denies the motion to enforce filed in this Court.

## I.   BACKGROUND

### A.   The Motion to Enforce

Pending before the Court is FCA's motion to enforce ("Motion," ECF Doc. # 8560) the *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief* ("Sale Order," ECF Doc. # 3232). The Motion

2

arises from a June 1, 2020 order that granted in part and denied in part FCA's motion to dismiss

("MDL Order," Takata MDL ECF Doc. # 3839) filed in the multi-district litigation *In re Takata*

*Airbag Product Liability Litigation*, MDL No. 15-02599, Economic Loss No. 14-24009 (S.D.

Fla.) (the "Takata MDL") currently pending before Judge Federico A. Moreno in the United

States District Court for the Southern District of Florida (the "MDL Court").

The Motion is opposed by Plaintiffs, Chair Lead Counsel, Lead Counsel, and Plaintiffs'

Steering Committee in the Takata MDL, on behalf of the named plaintiffs in two putative class

actions in the Takata MDL before Judge Moreno and subject to eventual class certification on

behalf of others similarly situated (collectively, "Plaintiffs"). ("Opposition," ECF Doc. # 8568).

FCA filed a reply in further support of the Motion and in response to the Opposition. ("Reply,"

ECF Doc. # 8572.)

### B.    The Sale Order

On April 30, 2009, Chrysler, Inc. and certain of its affiliated debtors and debtors in

possession (collectively, "Old Chrysler") filed chapter 11 petitions in this Court. (Motion ¶ 8.)

Upon commencing their chapter 11 cases, Old Chrysler focused on an expedited sale of certain

assets to FCA's predecessor (then known as New CarCo Acquisition LLC) (the "Sale"). (*Id.* ¶

9.) On April 30, 2009, FCA entered into a Master Transaction Agreement (as amended, the

"MTA") by and among FCA, Fiat S.p.A., Old Carco, and certain other sellers identified therein.

(*Id.*)

On May 27, 2009, FCA was the successful bidder in Old Chrysler's asset sale. (*Id.* ¶ 11.)

On June 1, 2009, the Court entered the Sale Order granting the Sale Motion and approving the

transaction as set forth in the MTA. (*Id.*; Sale Order.) The Sale closed on June 10, 2009 (the

"Closing Date" or "Closing"). (Motion ¶ 12.) The Sale Order authorized the transfer of the

3

purchased assets "free and clear of all Claims except for Assumed Liabilities [as defined in the

MTA]." (Sale Order ¶ 9.) The Sale Order provided that:

> Except for the Assumed Liabilities expressly set forth in the Purchase Agreement or described therein or Claims against any Purchased Company, none of the Purchaser, its successors or assigns or any of their respective affiliates shall have any liability for any Claim that (a) arose prior to the Closing Date, (b) relates to the production of vehicles prior to the Closing Date or (c) otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing Date. The Purchaser shall not be deemed, as a result of any action taken in connection with the Purchase Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or the acquisition of the Purchased Assets to: (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations arising under the Assumed Agreements from and after the Closing); (b) have, de facto, or otherwise, merged with or into the Debtors; or (c) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors. Without limiting the foregoing, the Purchaser shall not have any successor, derivative or vicarious liabilities of any kind or character for any Claims, including, but not limited to, on any theory of successor or transferee liability, de facto merger or continuity, environmental, labor and employment, products or antitrust liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

(*Id*. ¶ 35.) The Sale Order further provides that, except for any expressly Assumed Liabilities,

FCA:

> shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of successor or transferee liability now existing or hereafter arising.

(*Id*. ¶ 39.)

The Sale Order contains an injunction directing that "all persons and entities . . . holding

Claims . . . arising under or out of, in connection with, or in any way relating to, the Debtors, the

Purchased Assets, [or] the operation of the business prior to Closing," except for Assumed

4

Liabilities, are "forever barred, estopped and permanently enjoined from asserting such Claims against [FCA]." (*Id*. ¶ 12.) On November 19, 2009, the Court entered an order approving an amendment to the MTA that expanded the scope of assumed liabilities relating to Product Liability Claims to include certain motor vehicle accident claims involving vehicles sold by Old Chrysler before Closing. (Motion ¶ 14; ECF Doc. # 5988.) On April 23, 2010, the Court entered the confirmation order with respect to Old Chrysler's second amended joint plan of liquidation. ("Plan," ECF Doc. # 6875.)

   C.    **The Takata MDL**

   The Takata MDL consolidates allegations of economic loss and personal injury related to airbags manufactured by Takata Corporation and TK Holdings and equipped in vehicles manufactured, sold, and distributed by numerous car makers, including Old Chrysler and FCA. (Motion ¶ 17.) FCA vehicles were equipped with Takata airbags containing ammonium nitrate, which creates a small explosion to inflate the airbags during a crash. (*Id*.) Plaintiffs in the Takata MDL are purchasers of vehicles manufactured and sold both pre-and post-Sale. (*Id.*) Plaintiffs contend that when exposed to high heat and humidity, the explosion is more forceful and can cause injuries. (*Id*.) Approximately two dozen individuals are known to have died and hundreds have been injured because of the Takata defect that auto manufacturers failed to disclose. (Opposition ¶ 12.) The Plaintiffs allege that those who purchased or leased these vehicles understood them to be equipped with a reliable safety device and, had they known of the defect, they would not have purchased FCA vehicles, or would have paid less for them. (*Id.*, *see also* Motion ¶ 17.)

As it pertains to FCA, the Takata MDL is split into two actions: the *Boyd* "Consumer Action" and the *Butler* "Recycler Action." (Motion ¶ 18.)[1]  In the complaints before the MDL Court, the Plaintiffs assert claims against FCA related to (i) Old Chrysler vehicles manufactured and sold prior to the Closing Date, and (ii) vehicles manufactured and sold by FCA after the Closing Date.  (*Id.*)

Initially, the Consumer Complaint advanced claims of thirty-three named plaintiffs— seven of whom purchased vehicles manufactured by Old Chrysler—and putative class members under (i) the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 (a "lemon law"), (ii) Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (iii) various states' common law (for fraud, unjust enrichment and negligence), and (iv) various states' statutory consumer protection laws, including for breach of implied warranty.  (*Id.* ¶ 19.)  The MDL Court dismissed (i) all of the Magnuson-Moss Warranty Act claims and (ii) all of the RICO claims. (*Id.* ¶ 20.)  While some of the state law claims were dismissed, there are surviving claims against FCA for unjust enrichment, fraud, negligence, breach of implied warranty, and other statutory consumer protection violations.  (*Id.*)  The current operative Consumer and Recycler Complaints eliminate the counts dismissed by the MDL Court.  (*Id.*)  Fact discovery in the Consumer Action spanned more than three years.  (*Id.* ¶ 22.)  The Consumer Plaintiffs' purported classes include purchasers of used vehicles manufactured by Old Chrysler prior to the June 10, 2009 Closing. (*Id.* ¶ 29.)

---

[1]    Plaintiffs filed their original claims against FCA in a combined complaint, but thereafter the MDL Court ordered that the Consumer and Recycler claims be split, and Plaintiffs filed (i) an Amended Complaint in the Consumer action against only FCA (as amended, the "Consumer Complaint," Takata MDL ECF Doc. # 4024) and (ii) an Amended Complaint in the Recycler action against FCA and other car makers (as amended, the "Recycler Complaint," Takata MDL ECF Doc. # 4045, and together with the Consumer Complaint, the "Complaints"). (Motion ¶ 18.)

The Recycler Action advanced claims of nine named plaintiffs (seven of which purchased vehicles manufactured by Old Chrysler) and putative class members under (i) RICO, (ii) the Lanham Act, 15 U.S.C. § 1501, (iii) various states' common law fraud statutes, and (iv) various states' consumer protection statutes. (*Id*. ¶ 24.) On March 9, 2021, the MDL Court issued an order in the Recycler Action (Takata MDL ECF Doc. # 3965) dismissing (i) the Lanham Act claims in full, and (ii) otherwise followed the rulings it had made in the Consumer Action by dismissing the RICO claims, but sustaining most state law fraud and consumer protection claims. (*Id*. ¶ 25.) The MDL Court also dismissed FCA entirely for lack of personal jurisdiction in Florida, but the Recycler Plaintiffs were permitted to amend their complaint. (*Id.*) The Plaintiffs' second amended complaint is subject to a renewed motion to dismiss for lack of personal jurisdiction that is fully briefed and remains pending. (*Id*.) The fact discovery deadline for the Recycler Action was January 10, 2022. (*Id*.) FCA asserts that the Recycler Plaintiffs' purported classes include purchasers of used vehicles manufactured by Old Chrysler prior to the June 10, 2009 Closing. (*Id.* ¶ 31.)

### D.    FCA's Sale Order Argument in the Takata MDL

On June 24, 2015, FCA filed a pleading in the Takata MDL that makes the following reference to the Sale Order:

> Plaintiffs' request that this Court allow them to "temporarily" abandon the claims against FCA US and let the transferor courts deal with them later is a clear attempt to thwart FCA US's expressed intent to be finally dismissed with prejudice from these proceedings based on a "Sale Order" which bars the claims previously asserted against it. FCA US formally advised the few plaintiffs who previously asserted some claims against it that: their claims are barred by a Sale Order entered by the United States Bankruptcy Court for the Southern District of New York; and if the claims are not voluntarily dismissed FCA US will seek transfer to the Bankruptcy Court which issued the Sale Order.

("FCA US LLC's Initial Opposition," Takata MDL ECF Doc. # 590 at 4.)

A little over three years later, on August 20, 2018, FCA filed its motion to dismiss. ("MTD," Takata MDL ECF Doc. # 2983.)  In the MTD, FCA asked the MDL Court to dismiss all of the named-Consumer Plaintiffs' claims pursuant to the Sale Order arguing that none of Plaintiffs' claims fell under the narrow categories of Assumed Liabilities and should therefore be barred by the Sale Order.  (MTD at 5, 36–37, *see also* Motion ¶ 21.)  On June 1, 2020, the MDL Court declined to dismiss any of the Consumer Plaintiffs' claims under the Sale Order, finding that "application of the Sale Order is claim specific," and that it would not rule on the "all or nothing" argument advanced by FCA because the issue of FCA's post-Closing conduct was for summary judgment or trial.  (MDL Order at 41–43.)

### E.    The Timing of FCA's Motion to Enforce

On September 30, 2021, more than one year after the MDL Order was issued, FCA filed the Motion in this Court seeking to enforce the Sale Order to prohibit and enjoin the Plaintiffs from continuing to pursue MDL Claims (defined below) against FCA in the Takata MDL for economic loss resulting from Plaintiffs' post-Closing purchases of vehicles manufactured by Old Chrysler prior to the Closing Date.  (Motion ¶ 34.)

In the Motion, FCA contends that despite the limitations set forth in the MTA, the Sale Order, and related documents—and this Court's rulings enforcing the limitations in the Sale Order—Plaintiffs seek to impose liabilities on FCA.  (*Id*. ¶ 2.)  FCA also states that this Court holds a "gatekeeper" role with respect to the Sale Order and the Takata MDL and must set the guideposts for the MDL Court by deciding what claims and allegations get through the "gate." (*Id.* ¶ 1.)  Their basis for this argument is that the Sale Order was entered by this Court and is governed by Second Circuit law.  (*Id.*)

8

FCA asserts that Plaintiffs seek to broaden their claims to include those that relate to Old Chrysler vehicles alleged to have defective Takata airbags, including statutory consumer protection laws, breach of implied warranty, negligence, fraud, and unjust enrichment claims (collectively, the "MDL Claims"). (*Id*. ¶ 3.) FCA states that the MDL Claims are for economic losses only as no Plaintiff has experienced personal injuries. (*Id*.) FCA also contends that, assuming Old Chrysler had a duty to warn obligation, that obligation is not part of the Assumed Liabilities under the Sale Order and MTA. (*Id.* ¶ 6.) FCA argues that the proximate cause of Plaintiff's economic loss claims was Old Chrysler's failure—not any subsequent act or omission of FCA. (*Id*.)

In their Opposition, the Plaintiffs assert that the Sale Order does not cut off FCA's liability for its own wrongful post-closing conduct. (Opposition ¶ 1.) They further assert that FCA aims to broaden the effect of the Sale Order to immunize FCA from the consequences of its post-Closing conduct. (*Id*.) Plaintiffs argue that the Motion is "an attempted second bite at the apple" by FCA because FCA filed the MTD based on the Sale Order in the Takata MDL over three years ago. (*Id.* ¶ 3.) The Plaintiffs assert that the MDL Court properly construed the terms of the Sale Order when it declined to dismiss Plaintiffs' economic damages claims based on the Sale Order. (*Id.*) The Plaintiffs add that, for this reason, the Motion should be denied on the grounds of issue preclusion. (*Id.*)

The Plaintiffs also contend that FCA's argument that Plaintiffs' economic loss claims were not among the assumed liabilities in the 363 sale ignores the fact that all the named Plaintiffs acquired their affected vehicles after the Closing. (*Id.*) Plaintiffs assert that FCA failed to refute their contention that Plaintiffs' economic damages claims are based entirely on FCA's conduct, and that the Motion contains conclusory assertions that Plaintiffs' allegations

"inextricably" link Old Chrysler and FCA which were rejected by the MDL Court. (*Id.* ¶ 7.)

Ultimately, the Plaintiffs argue that the current Complaints before the MDL Court should pass

through the bankruptcy gate because the alleged cause of action is based on post-closing

wrongful conduct. (*Id.* ¶ 27.)

In its Reply, FCA argues that the Sale Order was heavily negotiated among the parties in

interest with numerous objections filed on behalf of potential warranty claimants, lemon-law

claimants, and other consumer claimants. (Reply ¶ 1.)  FCA contends that Plaintiffs' economic

loss claims are predicated on defects that originated and "relate[] to the production of vehicles

prior to the Closing Date" and such economic loss claims were not carved out in the Sale Order..

(*Id.* ¶¶ 2, 8.)  FCA argues that it is the Plaintiffs who seek the proverbial "second bite" in

adjudicating the limit of Assumed Liabilities. (*Id.* ¶ 3.)

At the Hearing, FCA's Counsel agreed that this Court and the MDL Court have

concurrent jurisdiction to decide whether the Plaintiffs' claims against FCA are barred by the

Sale Order. ("Hearing Transcript," ECF Doc. # 8575 at 14:12–15.)  Since FCA previously raised

its arguments about the Sale Order in the MDL Court, I asked both FCA's counsel and Plaintiffs'

counsel whether this Court should permissively abstain from deciding the issue. (*Id.* at 18:16–

21, 34:3–6.)  Notably, FCA's Counsel stated that it is within the purview of the court to

permissively abstain. (*Id.* at 18:22–24.)  Additionally, I asked FCA's counsel the following

question: "Why didn't New Chrysler bring this issue to the bankruptcy court in 2015 when it first

put in a pleading in the MDL or in 2018 when it raised the issue in the motion to dismiss before

Judge Moreno?" (*Id.* at 22:6–9.)  FCA's counsel stated it would be "pure conjecture" to answer

the question because the record reflects that he was brought in as counsel in August 2021 to

10

replace FCA's prior counsel.  (*Id.* at 22:10–13.)  FCA's counsel later stated that FCA waited

until "after discovery was closed" to bring the Motion to the bankruptcy court.  (*Id.* at 35:21–23.)

## II.    LEGAL STANDARD

### A.    Jurisdiction

The district courts have original and exclusive jurisdiction of bankruptcy cases, and

original but not exclusive jurisdiction of civil proceedings arising under title 11, or arising in or

related to cases under title 11.  28 U.S.C. § 1334(a) & (b).  Bankruptcy court jurisdiction is

derivative of district court jurisdiction, with cases and proceedings referred to the bankruptcy

courts under each district's order of reference.  28 U.S.C. § 157(a).  Section 157 of the Judicial

Code (title 28) divides proceedings into "core" and "non-core," with the bankruptcy courts

having broader authority to adjudicate core proceedings.  *In re Residential Cap., LLC*, 515 B.R.

52, 61 (Bankr. S.D.N.Y. 2014).  Core proceedings are those that are found to be "arising under"

the Bankruptcy Code or "arising in" a bankruptcy case.  *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d

104, 108–09 (2d Cir.2006); *see also* 28 U.S.C. § 157(b).  Proceedings "arising under" the

Bankruptcy Code are those "that clearly invoke substantive rights created by federal bankruptcy

law."  *MBNA Am. Bank, N.A.*, 436 F.3d at 108–09.  Proceedings "arising in" a bankruptcy case

are those "claims that are not based on any right expressly created by [the Bankruptcy Code], but

nevertheless, would have no existence outside of the bankruptcy."  *Baker v. Simpson*, 613 F.3d

346, 350–51 (2d Cir.2010) (quotation marks omitted).  A case is a core proceeding "[1] if it

invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature,

could arise only in the context of a bankruptcy case."  *Halper v. Halper*, 164 F.3d 830, 836 (3d

Cir. 1999) (quoting *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171 (3d Cir. 1996)).

A case can be a core proceeding if its resolution turns on the interpretation of the bankruptcy court's sale order. *See e.g.*, *In re Petrie Retail, Inc.*, 304 F.3d 223, 229–30 (2d Cir. 2002) ("[T]he dispute in this case was based on rights established in the sale order. Orders approving the sale of property are core bankruptcy proceedings.") (internal quotations omitted); *In re Allegheny Health, Educ. & Research Found.*, 383 F.3d 169, 176 (3d Cir. 2004) ("[W]e hold that the bankruptcy court correctly determined that the suit was a core proceeding because it required the court to interpret and give effect to its previous sale orders."). *See also Elliott v. General Motors LLC*, 829 F.3d 135, 153–54 (2d Cir. 2016) (stating that "[a] bankruptcy court's decision to interpret and enforce a prior sale order falls under this formulation of 'arising in' jurisdiction" and finding "the bankruptcy court had jurisdiction to interpret and enforce the Sale Order.").

Bankruptcy court jurisdiction has additional limiting factors. *In re Park Ave. Radiologists, P.C.*, 450 B.R. 461, 467 (Bankr. S.D.N.Y. 2011) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995)). After plan confirmation, it is generally understood that "the bankruptcy court's jurisdiction shrinks." *In re Gen. Media, Inc.*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005). To establish post-confirmation jurisdiction in bankruptcy court, a party "invoking the bankruptcy court's post-confirmation jurisdiction must satisfy two requirements." *Id*. First, the matter requires a "close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan..." *Id*. Second, the chapter 11 plan "must provide for the retention of jurisdiction over the dispute." *Id.* at 73–74. Each of these requirements is satisfied in this matter—the dispute involves the interpretation and enforcement of the Sale Order, and the

12

confirmed chapter 11 plan includes a retention of jurisdiction clause.[2]  (Plan ¶ 75.)  There have

been multiple occasions since the Plan was confirmed when this Court has been asked to

interpret and enforce the Sale Order and Plan.  *See, e.g., Goodall v. Chrysler, Inc. (In re Old

Carco LLC),* 2018 WL 3854047 (Bankr. S.D.N.Y. Aug. 10, 2018); *Burton v. Chrysler Group

LLC (In re Old Carco LLC),* 492 B.R. 392 (Bankr. S.D.N.Y. 2013); *Dearden v. FCA US LLC (In

re Old Carco LLC)* 582 B.R. 838 (Bankr. S.D.N.Y. 2018).

But it is equally important that non-bankruptcy courts have concurrent jurisdiction to

consider issues arising from sale orders.  *See In re Old Carco*, 603 B.R. 877, 883–84 (S.D.N.Y.

2019) ("[I]t is true that the Alabama state court has concurrent jurisdiction to consider issues

presented by the Sale Order and the MTA.").  The retention of jurisdiction clause in this case

does not purport to provide exclusive jurisdiction to the Bankruptcy Court to interpret and

enforce the Sale Order.[3]

---

[2]        Here, the Sale Order did not contain an exclusive jurisdiction provision.  The Sale Order provides:

> This Court retains jurisdiction to interpret, implement and enforce the terms and
> provisions of this Sale Order including to compel delivery of the Purchased
> Assets, to protect the Purchaser against any Claims and to enter any orders under
> sections 105, 363 or 365 (or other applicable provisions) of the Bankruptcy Code
> to transfer the Purchased Assets and the Assumed Agreements to the Purchaser.

(Sale Order ¶ 59.)

[3]        Even where a sale order contains exclusive jurisdiction language, the Second Circuit has held that there is
*not* exclusive jurisdiction in the bankruptcy courts; rather, jurisdiction is concurrent.  *See In re Haven Eldercare,
LLC*, 503 F. App'x 13, 15 (2d Cir. 2012) (holding that "[f]irst, despite the wording of the Sale Order, the bankruptcy
court's jurisdiction was concurrent rather than exclusive, because 28 U.S.C. § 1334(b) provides bankruptcy courts
with 'original but not exclusive jurisdiction' over claims . . . which are related to bankruptcy proceedings").  For
example, the Motors Liquidation (previously known as General Motors) sale order purports to provide the
Bankruptcy Court with exclusive jurisdiction to interpret and enforce the sale order.  But a court order can neither
confer jurisdiction on a court that is not provided by statute, nor can it strip another court of jurisdiction provided by
applicable law.

### B.      Bankruptcy Court's "Gatekeeper Role"

In prior decisions involving motions to enforce sale orders, this Court has used the term

"gatekeeper" to describe and distinguish the Court's role from that of the nonbankruptcy court

presiding over the underlying actions.  For instance, in *Dearden v. FCA US LLC (In re Old*

*Carco LLC)*, the Court discussed the legal standard that governs a motion to dismiss pursuant to

Federal Rule of Civil Procedures 12(b)(6), and went on to state:

> While these principles apply to the [motion to dismiss], the Court's
> role is more limited.  It acts as a "gatekeeper," and must determine
> whether the Amended Complaint purports to allege a claim that is
> barred by the Sale Order or the MTA, as amended.  If the claim
> passes the gate, the non-bankruptcy court presiding over the action
> must decide if any surviving claim is a legally sufficient claim under
> applicable non-bankruptcy law.

582 B.R. 838, 843 (Bankr. S.D.N.Y. 2018) (citing *In re Motors Liquidation Co.*, 568 B.R. 217,

222 (Bankr. S.D.N.Y. 2017), *aff'd*, 590 B.R. 39 (S.D.N.Y. 2018), *aff'd*, 943 F.3d 125 (2d Cir.

2019), and *aff'd*, 792 F. App'x 28 (2d Cir. 2019), and *aff'd*, 957 F.3d 357 (2d Cir. 2020)); *see*

*also Goodall v. Chrysler, Inc. (In re Old Carco LLC)*, 2018 WL 3854047, at *4 (Bankr.

S.D.N.Y. Aug. 10, 2018) (citing *Bennett v. FCA US LLC (In re Old Carco LLC)*, Adv. Pro. No.

18–01035 (SMB), 2018 WL 3155115, at *5 (Bankr. S.D.N.Y. June 26, 2018) and *Dearden*, 582

B.R. at 843–44).[4]

The critical question now is whether this Court must (or even may) undertake its

"gatekeeper" role in connection with the Takata MDL which has been pending before Judge

Moreno for many years, and in which he has already ruled (but not on a final basis) on FCA's

---

[4]      While neither the Motors Liquidation [GM] case nor Old Carco [Chrysler] case was pending before me at
the critical stages when the cases were filed, section 363 sales were approved, and chapter 11 plans confirmed,
Motors Liquidation was transferred to me in 2016 and Old Carco was transferred to me in 2021.  Consequently, I am
the "gatekeeper" in what remains of both cases now.

arguments that the Sale Order bars the Plaintiffs claims against FCA.[5]  The Court concludes

below, in the exercise of discretion, that this is an appropriate matter in which to apply

permissive abstention under 28 U.S.C. § 1334(c)(1) and to defer the decision to the MDL Court.

## C.    Permissive Abstention

Permissive abstention may be raised *sua sponte* by the Court notwithstanding the absence

of a motion by either the FCA or the Plaintiffs.  *See In Little Rest Twelve, Inc. v. Visan*, 458 B.R.

44, 60 (S.D.N.Y. 2011).  The Court raised the issue of permissive abstention with counsel at the

Hearing.

In determining whether a court should permissively abstain from a case, the court looks

to 28 U.S.C. § 1334 which states in relevant part:

> (c)(1) Except with respect to a case under chapter 15 of title 11,
> nothing in this section prevents a district court in the interest of
> justice, or in the interest of comity with State courts or respect for
> State law, from abstaining from hearing a particular proceeding
> arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).  Under this section, permissive abstention is left to the bankruptcy

court's discretion.  *In re Petrie Retail, Inc.*, 304 F.3d 223, 232 (2d Cir. 2002); *see also In re*

*Cody, Inc.*, 281 B.R. 182, 190 (S.D.N.Y. 2002), *aff'd in part, appeal dismissed in part*, 338 F.3d

89 (2d Cir. 2003) (noting that 28 U.S.C. § 1334 "codifies the permissive abstention doctrine and

demonstrate[s] the intent of Congress that concerns of comity and judicial convenience should be

met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary

exercise of abstention when appropriate in a particular case.").  However, this Court has

recognized "that 'Supreme Court precedent suggests that the federal courts should be sparing in

---

[5]     There may be circumstances in which preclusion principles are a complete bar to a bankruptcy court
undertaking its gatekeeping function where the non-bankruptcy court has entered a final order or judgment deciding
the issues.  But here, the MDL Court expressly decided that it decision is not final and the issue can again  be raised
by FCA on a motion for summary judgment.

the exercise of discretionary abstention.'" *In re Metromedia Fiber Network, Inc.*, 299 B.R. 251,

280 (Bankr. S.D.N.Y. 2003) (quoting *Texaco Inc., v. Sanders (In re Texaco Inc.)*, 182 B.R. 937,

946 (Bankr.S.D.N.Y.1995)).

In deciding whether to abstain under 28 U.S.C. 1334(c)(1), courts "weigh considerations

of comity and federalism, judicial economy, and efficiency, including:

> (1) the effect or lack thereof on the efficient administration of the
> estate if a Court recommends abstention, (2) the extent to which
> state law issues predominate over bankruptcy issues, (3) the
> difficulty or unsettled nature of the applicable state law, (4) the
> presence of a related proceeding commenced in state court or other
> nonbankruptcy court, (5) the jurisdictional basis, if any, other than
> 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the
> proceeding to the main bankruptcy case, (7) the substance rather
> than form of an asserted 'core' proceeding, (8) the feasibility of
> severing state law claims from core bankruptcy matters to allow
> judgments to be entered in state court with enforcement left to the
> bankruptcy court, (9) the burden on the court's docket, (10) the
> likelihood that the commencement of the proceeding in a
> bankruptcy court involves forum shopping by one of the parties,
> (11) the existence of a right to a jury trial, and (12) the presence in
> the proceeding of nondebtor parties.

*Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 512–13 (S.D.N.Y. 2015); *In re Portrait

Corp. of Am., Inc.*, 406 B.R. 637, 641–42 (Bankr. S.D.N.Y. 2009) (citing *Rosetta Res. Operating

LP Calpine Corp. v. Pogo Producing Co. (In re Calpine Corp.)*, 361 B.R. 665, 669 (Bankr.

S.D.N.Y. 2007)); *In re 610 W. 142 Owners Corp.*, 1999 WL 294995 (S.D.N.Y. May 11, 1999)

(citing *In re Craft Architectural Metals Corp.*, 115 B.R. 423, 432 (E.D.N.Y.1989) (quoting *In re

Republic Reader's Serv. Inc.*, 81 B.R. 422, 429 (Bankr.S.D.Tex.1987)). Courts assessing

possible permissive abstention have considered one or more of these factors, and not necessarily

all twelve. *In re Tronox*, 603 B.R. 712, 726 (Bankr. S.D.N.Y. 2019) (citing *In re Cody, Inc.*, 281

B.R. 182, 190 (S.D.N.Y. 2002)). A court thus "need not plod through a discussion of each factor

in the laundry lists developed in prior decisions." *In re Tronox*, 603 B.R. at 726 (internal

quotation marks omitted).

A court may permissively abstain under section 1334(c)(1) "in favor of another federal

court or tribunal, just as it can abstain in favor of a state court." *In re Motors Liquidation Co.*,

457 B.R. 276, 288–89 (Bankr. S.D.N.Y. 2011) (abstaining in favor of another federal court); *see*

*also In re Dana Corp., Inc.*, No. 06-10354 BRL, 2011 WL 6259640, at *3 n.4 (Bankr. S.D.N.Y.

Dec. 15, 2011) (same); *In re Lear Corp.*, No. 0914326 ALG, 2009 WL 3191369, at *3 (Bankr.

S.D.N.Y. Sept. 24, 2009) (same).

## III.    DISCUSSION

### A.    This Court's Jurisdiction Over This Proceeding is Not Exclusive

The Motion addresses the Sale Order which authorized the transfer of the purchased

assets "free and clear of all Claims except for Assumed Liabilities [as defined in the MTA]."

(Sale Order ¶ 9.)  Generally, sale orders "approving the sale of property other than property

resulting from claims brought by the estate against persons who have not filed claims against the

estate" constitute "proceedings."  28 U.S.C. § 157(b)(2)(N).  Therefore, this matter constitutes a

proceeding, not a case, and this Court does not have exclusive jurisdiction over this Sale Order

proceeding.[6]

However, while this Court does not have exclusive jurisdiction to interpret the Sale

Order, the issues raised by the Motion are "core," as to which the Court maintains jurisdiction

---

[6]    The Sale Order also does not contain language retaining exclusive jurisdiction.  As explained above, even if
sale orders contain exclusive jurisdiction language, the bankruptcy courts only have concurrent jurisdiction.  *See,*
*supra,* n.3.

post-plan confirmation.[7]  This Court has post-confirmation jurisdiction because the enforcement

of the Sale Order directly affects the interpretation of the confirmed plan, which satisfies the

"close nexus" test for post-confirmation jurisdiction.  *In re Gen. Media, Inc.*, 335 B.R. at 73.  It

is generally understood that bankruptcy courts have jurisdiction over core proceedings such as

interpreting their own orders.  *See In re Atari, Inc.*, No. 13-10176 (JLG), 2016 WL 1618346, at

*6 (Bankr. S.D.N.Y. Apr. 20, 2016) (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151

(2009)) (noting bankruptcy courts "plainly ha[ve] jurisdiction to interpret and enforce [their] own

prior orders"); *In re Portrait Corp. of Am., Inc.*, 406 B.R. at 641 (finding interpretation and

enforcement of sale order to be a core proceeding and stating that "[i]t does not matter that the

Debtor's chapter 11 plan has been confirmed").  Further, there is clear language retaining

jurisdiction to interpret the Sale Order.  (Sale Order ¶ 59, "This Court retains jurisdiction to

interpret, implement and enforce the terms and provisions of [the] Sale Order.")

　　While this Court has jurisdiction to interpret the Sale Order, the MDL Court has

concurrent jurisdiction.  *See In re Old Carco*, 603 B.R. at 883–84 (noting "the Alabama state

court ha[d] concurrent jurisdiction to consider issues presented by the Sale Order"); *see In re*

*Haven Eldercare, LLC*, 503 F. App'x at 15 (finding original but not exclusive jurisdiction over

bankruptcy claims and affirming the district court's ruling).  In most circumstances, a bankruptcy

court that has approved a section 363 sale is in the best position to interpret its own order,

particularly as to the scope and meaning of a "free and clear" sale provision.  This is primarily a

bankruptcy law issue that has figured importantly in many bankruptcy cases.  Often, it is the

nonbankruptcy court that has asked for the bankruptcy court in exercising its gatekeeping

---

[7]　　In the Motion, FCA asserts that this Court has jurisdiction to interpret and enforce the Sale Order and the
Plaintiffs do not dispute the Court's jurisdiction.  (Motion ¶ 33).  Additionally, neither party contends that the Court
has exclusive jurisdiction.

function to determine the scope and effect of the free and clear sale provision. *See, e.g., Goodall*, 2018 WL 3854047, at *4; *Burton v. Chrysler Group LLC (In re Old Carco LLC)*, 492 B.R. at 395 (Bankr. S.D.N.Y. 2013); and *Dearden v. FCA US LLC* (*In re Old Carco LLC*)*,* 582 B.R. at 840.  Other times, the section 363 purchaser, faced with claims in a nonbankruptcy court that it believes are barred by a free and clear sale order, files a motion in the bankruptcy court to enforce the sale order before the claims in nonbankruptcy court have proceeded very far. *See, e.g., In re Motors Liquidation Co.*, 568 B.R. at 222; *see also Overton v. Chrysler Grp.* LLC, No. 2:17-CV-01983-RDP, 2018 WL 847772, at *8 (N.D. Ala. Feb. 13, 2018). But those are very different circumstances than the history presented here.  FCA raised the issue of the free and clear sale provision in the MDL Court as early as 2015, and it filed the MTD on those grounds in 2018, leading to the MTD Order in 2020.  A bankruptcy court does not sit in review of decisions of nonbankruptcy courts.  FCA may be disappointed with the results it has achieved so far from its chosen path, but that cannot justify its effort now in this Court.

### B.    The Court Will Exercise Permissive Abstention[8]

The Court raised whether it should permissively abstain *sua sponte* at the Hearing.[9]  For the following reasons, this Court will exercise its discretion and apply permissive abstention.

---

[8]     "Collateral estoppel, or issue preclusion, is a doctrine which prohibits the litigation of any issue that was previously litigated and decided." *Armonk Snack Mart, Inc. v. Robert Porpora Realty Corp. (In re Armonk Snack Mart, Inc.)*, 2018 WL 2225008, *4 (S.D.N.Y. May 15, 2018) (citing *Hoblock v. Albany County Board of Elections*, 422 F.3d 77, 94 (2d Cir. 2005).  Issue preclusion is not applicable in this case.  The Plaintiffs argue that "FCA is collaterally estopped from revisiting, through the Motion, the MDL Court's refusal to dismiss Plaintiffs' economic damages claims based on the Sale Order, having previously litigated the same issue there and having been afforded a full and fair opportunity to be heard."  (Opposition ¶ 17.)  However, for collateral estoppel to apply, a "final judgment" on the merits must have been entered.  In the MDL Order, Judge Moreno specifically states that "*[f]or now*, the Court declines to dismiss any of the Plaintiffs' claims under the Sale Order.  *FCA may, however, renew claim-specific arguments at summary judgment*."  (MDL Order at 43 (emphasis added).)  The MDL Order is not a final judgment on the applicability of the Sale Order to the Plaintiffs' MDL Claims.  *See Zdanok v. Glidden Co.*, 327 F.2d 944, 955 (2d Cir. 1964).

[9]     "In light of the history that shows that New Chrysler chose to litigate this issue before Judge Moreno, certainly no later than 2018 with its motion to dismiss, but apparently, having raised the issue in the MDL at least as

Courts in this district consider twelve factors when determining whether to permissively abstain under section 1334(c)(1). *See Delaware Tr. Co.*, 534 B.R. at 512–13; *In re Portrait Corp. of Am., Inc.*, 406 B.R. at 641–42 (deciding, in the exercise of discretion under 28 U.S.C. § 1334(c)(1), to permissibly abstain from interpreting sale order). It does not appear that all of the twelve factors are present here, and not all of them need to be applied. *See In re Tronox*, 603 B.R. at 726. A majority of the factors are present and favor abstention.

  1.  <u>Applying the Permissive Abstention Factors</u>

Factors two and three, the extent to which non-bankruptcy law issues predominate over bankruptcy issues and the difficulty of the applicable non-bankruptcy law, have been met. At this point well-settled law recognizes that independent claims against a section 363 purchaser based on the purchaser's post-sale conduct are not barred by a free and clear provision in a sale order. *See In re Motors Liquidation Co.*, 457 B.R. at 288–89; *see also In re Old Carco*, 603 B.R. at 883–84 (S.D.N.Y. 2019). Whether Plaintiffs can prove at summary judgment or trial that FCA's post-closing conduct was a proximate cause of their economic losses has not been decided and it predominates over bankruptcy issues in the Takata MDL. (MDL Order at 43.)

Factor six, the degree of relatedness or remoteness of the proceedings to the main bankruptcy case, favors abstention here. There is a related proceeding pending in the MDL Court, a non-bankruptcy court. More than 10 years after the Old Chrysler bankruptcy case was

---

early as 2015[,]that it's appropriate for the bankruptcy court now to abstain from addressing the ruling. I'll give you a chance to respond." (Hearing Transcript at 18:16–21.)" As provided above, permissive abstention may be raised *sua sponte* by this Court notwithstanding the absence of a motion by either the FCA or the Plaintiffs. *See In Little Rest Twelve, Inc.*, 458 B.R. at 60. Additionally, FCA specifically agreed that permissive abstention is permissible. In the December 2, 2021 hearing, FCA's counsel stated "Your Honor, that of course, is within your purview that if you believe that you should abstain either mandatory or permissive abstention, you have that right." (Hearing Transcript at 18:22–24.)

filed in this Court and the 363 sale was approved, the issues pending in the MDL Court are

remote from the main bankruptcy case and will not affect the success of the reorganization.

Factor ten, the likelihood that the proceeding involves forum shopping, weighs in favor

of abstaining.  FCA chose the MDL Court as the first forum in which to raise the free and clear

sale issues.   (*See* FCA US LLC's Initial Opposition).  Now, *years later*, apparently dissatisfied

with its results so far, and having switched counsel, FCA hardly presents a sympathetic case

when asking this Court to exercise its gatekeeping role.  At no point did FCA argue that this

Court should decide the issue until now, well after FCA filed its MTD in 2018.  (MTD at 1.)

Moreover, FCA's MTD was granted a "full and fair opportunity to be heard" by the MDL Court.

(Opposition ¶ 3.)

Factor eleven, the existence of a right to a jury trial, weighs in favor of abstaining.  The

right to a jury trial still exists in the MDL Court in determining what the proximate cause for

Plaintiffs' economic loss claims are.  (MDL Order at 43.)  *See Badilla v. Midwest Air Traffic

Control Service, Inc*., 8 F.4th 105, 135 (2d Cir. 2021) ("[I]ssues of proximate cause are generally

fact matters to be resolved by a jury." (citations omitted).)

2.      FCA's Request for This Court To Assume Its "Gatekeeper" Role Does
                Not Weigh Against the Court's Decision To Permissively Abstain

FCA's request for this Court to assume its "gatekeeper" role does not prevent the Court

from permissively abstaining.  (Motion ¶ 5; *see also id.* ¶ 1 (citing *Goodall*, 2018 WL 3854047,

at *4.)  In prior decisions where the Court exercised its gatekeeper function, it usually did so

after the nonbankruptcy court transferred the case to this Court to interpret the Sale Order.  For

example, in *Burton*, which FCA cites numerous times in its Motion and its Reply, the United

States District Court for the District of Delaware transferred the plaintiffs' pending class action

suit against New Chrysler to this Court for this Court to determine the effect of the Sale Order on

the plaintiffs' claims. *Burton v. Chrysler Group LLC (In re Old Carco LLC)*, 492 B.R. 392, 395 (Bankr. S.D.N.Y. 2013). Similarly, in *Goodall*, which FCA cites in support of its assertion that this Court should exercise its gatekeeper role, the United States District Court for the Central District of Illinois granted New Chrysler's motion to transfer the litigation to the United States District Court for the Southern District of New York, which referred the case to this Court to interpret the Sale Order. *Goodall*, 2018 WL 3854047, at *3; *see also Dearden*, 582 B.R. at 840 (noting that "the Pennsylvania District Court severed the claims against New Chrysler, and transferred the Plaintiff's action to the United States District Court for the Southern District of New York for reference to this Court solely to interpret the Sale Order"); *Bennett v. FCA US LLC (In re Old Carco LLC)*, 587 B.R. 809, 812 (Bankr. S.D.N.Y. 2018) (stating that the United States District Court for the District of Utah granted New Chrysler's motion to transfer the civil action to this Court to interpret and enforce the Sale Order). Unlike those cases, FCA did not request the MDL Court to transfer the Plaintiffs claims to this Court and the MDL Court did not do so on its own.

A prior decision in which the case was not transferred to this Court also counsels against this Court exercising its gatekeeper function here. In *Overton*, plaintiffs Overton and Graham sued New Chrysler and other defendants in the Circuit Court of Jefferson County, Alabama ("Alabama State Court") for claims arising from a car accident with fatal and non-fatal injuries. *In re Old Carco LLC*, 593 B.R. 182, 187 (Bankr. S.D.N.Y. 2018), *aff'd*, 603 B.R. 877 (S.D.N.Y. 2019), *aff'd*, 809 F. App'x 36 (2d Cir. 2020). New Chrysler removed the action to the United States District Court for the Northern District of Alabama ("Alabama District Court") and moved to sever claims and transfer venue to the United States District Court for the Southern District of New York for referral to this Court. *Id.* On February 13, 2018, the Alabama District Court

declined to transfer the case and remanded it to the Alabama State Court. *Overton v. Chrysler Grp. LLC*, No. 2:17-CV-01983-RDP, 2018 WL 847772, at *8 (N.D. Ala. Feb. 13, 2018). On March 12, 2018, New Chrysler filed a motion to enforce the Sale Order with this Court and the Court exercised its gatekeeper role to determine whether the claims asserted against New Chrysler were barred by the Sale Order. *In re Old Carco LLC*, 593 B.R. at 188, 189.

Key facts distinguish *Overton* from the facts present here. First, New Chrysler did not ask the Alabama District Court to interpret whether the Sale Order barred the plaintiffs' claims, and the Alabama District Court did not issue a ruling whether the plaintiffs' claims were barred by the Sale Order and instead left it for the Alabama State Court to decide.[10] *Overton*, 2018 WL 847772, at *7. Second, New Chrysler filed the motion to enforce the Sale Order in this Court less than one month after the Alabama District Court's decision. *See In re Old Carco LLC*, 593 B.R. at 188. Here, FCA argued before the MDL Court that the Sale Order barred the Plaintiffs' claims. (MTD at 45, *see also* Motion ¶ 21.) The MDL Court specifically analyzed the issue and found that the "application of the Sale order is claim specific" and it would not rule on the "all or nothing" argument advanced by FCA. (MDL Order at 41–43.) Additionally, the Motion was filed three years after FCA's MTD and more than one year after the MDL Order. (*See* Motion; *see* MTD; *see* MDL Order.)

Finally, the Court is not persuaded by FCA's statement that this Court "is best positioned to decide what claims and allegations get through the 'gate'" and "must set the guideposts for the" MDL Court. (Motion ¶ 1.) First, the MDL Court has concurrent jurisdiction. Second, FCA has frequently left it to nonbankruptcy courts to exercise the "gatekeeping" function. *See*

---

[10]   The Alabama District Court did indicate in a footnote that it believed the claims of one of the two plaintiffs (plaintiff Graham) were not governed by the Sale Order. 2018 WL 847772, at *5 n.6. However, the Alabama District Court left it for the Alabama State Court to decide the issue.

*Castleman v. FCA US LLC*, No. 2:18-cv-00342-JNP-PMW, 2019 WL 1406611, at *4 (D. Utah Mar. 28, 2019) ("The Sale Order is not so broad as to preclude FCA's liability for post-Sale duty to warn."); *Holland v. FCA U.S. LLC*, No. 1:15 CV 121, 2015 WL 5172996, at *5 (N.D. Ohio Sept. 3, 2015) ("[T]his case is not one that argues liability simply because FCA is a successor to Old Chrysler, but rather whether FCA had a duty to act based on knowledge it acquired and actions it took post Sale Order . . . ."). Third, FCA filed its MTD in the MDL Court in 2018 and did not file the Motion in this Court until three years later, and more than one year after the MDL Court denied its Sale Order arguments. (*See* MTD at 1; MDL Order at 45.).[11]

## IV.    CONCLUSION

This Court will **PERMISSIVELY ABSTAIN** under 28 U.S.C. § 1334(c)(1).

Accordingly, the Motion is **DENIED.**

Dated:    January 27, 2022
          New York, New York

_Martin Glenn_
MARTIN GLENN
United States Bankruptcy Judge

---

[11]    Moreover, FCA was unable to locate any case where a bankruptcy court exercised its "gatekeeper" role after the same argument was made to the state or federal court in which the underlying action was pending. *See* ECF Doc. # 8576 at 10:14-19. FCA responded to the Court's question "[C]an you point me to any cases in which a bankruptcy court exercising the gatekeeper role has been asked to enforce a sale order after the same argument was made by the same party to the state or federal court in which the underlying action was pending?" (Transcript at 10:14–18.) FCA's counsel stated "Off the top of my head, your Honor, no." (*Id.* at 10:19.)